

UNITED STATES DISTRIC COURT

NORTHERN DISTRICT OF ILLINOIS

**FILED**

MAR 1 1 2008  **NH**
Mar 11, 2008
**MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT**

_____DIVISION

SAKIE SCOTT                 )

                                     )

V                               )

ILLINOIS STATE MEDICAL INSURANCE SERVICES

08CV1457
JUDGE ZAGEL
MAGISTRATE JUDGE COX

**COMPLAINT**

## DISCRIMINATION, HARASSMENT, RETALIATION, HOSTILE WORK ENVIRONMENT, UNLAWFUL DISCHARGE:

1.     For purposes of this Complaint, Illinois State Medical Insurance Services, Inc. shall be hereinafter referred to as "ISMIE". Laura Hutchinson shall be referred to as "Hutchinson". Sheila Coghlan shall be referred to hereinafter as "Coghlan". Jacinth Stokes shall be referred to as "Stokes". Donna Gentiles-Karas shall be referred in her capacity as Assistant Vice President of "Human Resources".

2.     Plaintiff began employment with ISMIE on July 1, 2004 as an Underwriting Secretary. Plaintiff remained in same position throughout employment until February 20, 2008. Plaintiff received first evaluation (6 months) in December 2004. Evaluation was standard language for a new employee. **(See Exhibit    )**

3.      Plaintiff received first annual review dated July 1, 2005. Hutchinson's first negative remarks were related to "distractions, occasional errors and socializing in the department". **(See Exhibit    ).** Hutchinson didn't realize that issues came up on a regular basis which caused Plaintiff to have contact with the underwriters, technicians and mail room staff to discuss business. This was explained to Hutchinson on numerous occasions. Because the office consisted of 7 ft. individual cubicles, it was easier to directly approach that individual rather than telephone.

4. Plaintiff states that there was no further work related communication between July 2005 and September, 2005 that was significant. Plaintiff contacted Human Resources and scheduled an interview for the Underwriting Technician position that became available. Even though the "selection committee" consisted of four individuals, Hutchinson and Coghlan were the two main individuals with the most influence on the decision making process because of their positions in the department as Assistant Vice President and the fact that they are **close friends that dined together daily**.

5.      The first interview was scheduled for October 11, 2005. Coghlan and Hutchinson cancelled without any notice to Plaintiff, even though Hutchinson was the immediate supervisor to Plaintiff. When Plaintiff arrived at Hutchinson's and Coghlan's office and found it empty, Plaintiff e-mailed them for an explanation. No response was given from Hutchinson and Coghlan that day. (See Exhibit   )

        Christine Majerik of Human Resources called to say that the meeting was cancelled. The interview was scheduled for a couple of days later which resulted in a



negative outcome for the Plaintiff. The interview was conducted with Frode Brudvik, a former employee, Michi Smith, Laura Hutchinson and Sheila Coghlan.

6. On October 24, 2005, Plaintiff was notified by Human Resources (Christine Majerik) that the job was given to another individual, Pamela Phelps, (a younger Caucasian female), from outside of the company. Plaintiff sent an email to Human Resources questioning the decision. Christine Majerik responded that no reason was given. Plaintiff could only surmise that Coghlan and Hutchinson conspired together to hire a Caucasian to fill the position and succeeded in their efforts to discriminate against Plaintiff. Hutchinson who had daily contact with the Plaintiff never made any comments on the decision. (See Exhibit   )

7. On February   2006, a position became available in the claims department as a Claims Representative. Plaintiff interviewed with the Kelly Kehoe, Manager and Christine Renfrow, Assistant Vice President of the Claims department. Both interviews went extremely well and the conversation all but assured the Plaintiff that she had the position since she had over 20 years experience in the legal field and fit the job description. Sometime between February 24, and March 1st, Hutchinson spoke with Kehoe and/or Renfrow of the Claims department and gave them such a negative report on Plaintiff that the job was given to another individual. This individual was another younger, Caucasian female from outside of the company. The Plaintiff's contends that her life experience (age 50), 20 years previous experience in the legal field as a Certified Paralegal/Legal Assistant from Roosevelt University,   and part-time Grant Accountant at

3

Chicago State University, should have qualified for the entry level position in the claims department. (See Exhibit   )

8.   On March 5, 2006, Plaintiff received a telephone call from Greg Davis and Kelly Kehoe stating that Hutchinson had indeed blocked the transfer. Plaintiff was in "awe" of the decision and went to Hutchinson's office to inquire about the negative information that was given in her response to the transfer. Hutchinson stated that "you still have issues with your work". When Plaintiff questioned Hutchinson about what she was referring to, Hutchinson remained silent. Plaintiff was at this point beginning to feel uneasy about Hutchinson as an immediate supervisor and her ability to communicate more effectively with staff members.

9.   Kehoe and Renfrow tried to intervene on behalf of the Plaintiff by consulting with Tim Saunders, Vice President of Claims, but were informed that there was nothing he could do to override Hutchinson's remarks which ultimately precluded the Plaintiff from transferring out of the underwriting department.

10.   Again, there were no negative discussions between Plaintiff and Hutchinson. Plaintiff was sure that the upcoming evaluation would be **"TRUE AND CORRECT"**. One week prior to Plaintiff's evaluation in July, 2006) Plaintiff processed 567 loss history letters in two days (an extraordinary amount of work from one individual). This effort not noted on the upcoming evaluation and even though Hutchinson's initial reaction was "shock" at the fact that the work was complete. **(See Exhibit   )**

4

11.   There were numerous requests made by Plaintiff of Hutchinson to assist others with their backlog of work.  Plaintiff was also responsible for a myriad of backup duties during the absence of her co-worker, Carol Smith that included; incoming mail, processing faxes, end of day and mailing previous invoice, that she would sometimes be responsible for **IN ADDITION** to her normal daily tasks.  (Exhibit    )

12.   Management met with staff to discuss an upcoming unit luncheon in early December, 2006.  At the luncheon it was stated that the staff **"was not to order two entrees"**.  The purpose of this discussion because of an employee, Tanya Moorer, who ordered two separate entrees from the previous unit luncheon.  On December 11, 2006, the office attended the luncheon.  At the luncheon, Plaintiff ordered a "surf and turf".  After the luncheon, Keith Evans reported back to Hutchinson that the Plaintiff ordered a "surf and turf" meal.  (See reference to this action further in this Complaint in ¶12  )

13.   Plaintiff was called into the office at 4:15pm, and asked to close the door and grilled about the lunch that was ordered.  Hutchinson asked the Plaintiff why she ordered a "surf and turf".  Plaintiff explained to Hutchinson that "surf and turf" was not considered two separate entrees and that cost of the meal was never discussed at the prior meeting, rather the number of entrees ordered by each individual.  Plaintiff also explained to Hutchinson that there were no additional appetizers, drinks, or desserts ordered like the others which would make up the price difference.  Plaintiff also advised Hutchinson that if price were an issue, it should have been mentioned in the meeting.

14.   Further, Plaintiff contends that ISMIE spends thousands of dollars on food for their employees several times a year and that price was never an issue, but rather another

way for Hutchinson to display her tactics of harassment. Plaintiff stated that ISMIE's
wasteful spending of money on food on various meetings make it impossible for
Hutchinson to question one lunch ordered by a staff member. At the end of the meeting,
Hutchinson actually asked the Plaintiff "did you finish the meal"? (Witnesses: Edna
McLauren, Charlotte Jackson, and Georgia Thompson who are employed in the meeting
services department.)

15.    Hutchinson's continued negative remarks regarding the Plaintiff's work, constant
tactics of harassment and creation of a hostile work environment prompted the Plaintiff to
lodge a complaint against Hutchinson with Human Resources on December 14, 2006
covering a series of events that occurred between 07/2004 and 12/06. **(See Exhibit    )**

16.    On January 11, 2007. Plaintiff received an email from Human Resources stating
that the investigation was complete. When Plaintiff asked for documentation regarding
the investigation, Plaintiff was emailed by Donna Gentiles-Karas that this information
was confidential and that there was no documentation that could be given to the Plaintiff
regarding the Complaint.

In January **2008**, while reviewing the response from ISMIE's attorneys, Plaintiff
realized that ISMIE had placed Hutchinson's response to the complaint lodged in
**DECEMBER 14, 2006** in the Plaintiff's EEOC file. Hutchinson's memo to Human
Resources was never intended for the Plaintiff to ever review. **(See Exhibit    )**

17.    Plaintiff states that there is no **REAL** evidence that Hutchinson actually typed this
response in answer to the Complaint filed in December 2006 since this document was

6



never revealed to the Plaintiff. Why would Human Resources conceal this document from the Plaintiff.

18.    Hutchinson's "Memo to File" is filled with erroneous statements.  See below: **(See Exhibit  )**

"¶1.  Hutchinson states that she has no recollection of the first interview scheduled.  Hutchinson's statement is untrue. **(See Exhibit  )**

"¶2.  Hutchinson states that "Sakie's **responsibility is to provide secretarial support to me**".  As stated above in this complaint, I have never been Hutchinson's secretary in the 3 ½ yrs. with ISMIE.  My primary task was to process new business screening and loss history letters. **(See Exhibit   Activity log, and training schedule)** Hutchinson's statement is untrue.

Hutchinson created tasks that were demeaning to Plaintiff in an effort to further humiliate Plaintiff in the department such as:.  "coming to her office five times a day just to "check in" even if there were outstanding issues and to deliver Xerox paper to her office"  These tasks constantly removed the Plaintiff from her daily flow of work. Plaintiff was not Hutchinson's "personal secretary", but rather a new business screener.  (Note: When Plaintiff's duties changed in July of 2007, Carol Smith, a causasian female,  took over the task of typing weekly PUMA minutes for Hutchinson.  Plaintiff asked if she had to transport reams of Xerox paper into Hutchinson's office and the response was "no".) Hutchinson even scheduled Plaintiff to move equipment when the Plaintiff was out of the office on vacation.   **Exhibit ( )**  (Witness:  Carol Smith)

It was a known fact in the entire office that Plaintiff had double bypass surgery recently and could not lift items as stated due to the unstable angina that the Plaintiff suffered with occasionally.

Hutchinson continued to make such requests on Plaintiff.  In December, 2007, sent another email to Plaintiff to remove boxes of paper which weighed at least 50-100lbs lbs, even though there were at least 15 men in the department and the **Plaintiff was on vacation that day**. Plaintiff had to solicit the assistance of Blake, Sullivan, Davis and Schmidt on several occasions.  **(See Exhibit forthcoming)**

"¶ 3."  Plaintiff states there were never documents typed for Hutchinson created initially by Plaintiff as stated in the memo.  The documents that Hutchinson refers to are one page documents that were "EDITED"  and consisted of making additions or deletions weekly according to the meeting.  On occasion Ronald Koves, Underwriter would generate the changes to be made on this document.  Documents summaries reveal the history of each document and the number of times that it was accessed on each occurrence.  Plaintiff contends that the number of revisions usually consisted of two times per occurrence.  Initial access to open and second time accessed to open and send to Hutchinson and the rest of staff.

No document was ever created "initially" by Plaintiff because all of the documentation in the system were created by previous employees in that position. Plaintiff basically typed one document per week.  Other documents typed consisted of "boilerplate language" which only required the addition of a physician name, date,

*etc….Hutchinson seemed to be "out of touch" with the Plaintiff actual duties (See Exhibit   ).*

*"¶ 4",  Hutchinson states that the Plaintiff needed to "focus more on her work and less distractions on the floor".  Plaintiff states that it was explained to Hutchinson consistently that these "social distractions' were work related and that it was the easiest way to communicate with other staff members especially when the Underwriting department went paperless.*

*"¶5."  did not know how to react in situations that involved controversial matters. Hutchinson never contacted the other individual in the Plaintiff's cubicle. A witness Carol Smith, who initially sat next to Plaintiff in the same corridor, heard the two employees in the cubicle having conversation.  Plaintiff contends that Hutchinson lacked the supervisory skills to handle this matter in a more effective manner.  Because of Hutchinson's actions in this matter, there was more of a hostile work environment created with Plaintiff, Willet Welch and **Keith Evans**. Fall out from this action is indicated in Paragraph 12 of this Complaint.*

*¶ 6.  Hutchinson states that Michi Smith had conversations with Jon Olson, Sean Sullivan and Terry Moore on November 21, 2006, and that the Plaintiff was "totally distracting" because of "loud noise, personal calls and cell phone usage during business hours." Plaintiff contends that Hutchinson's statements in this paragraph have embellished the truth to make it appear that Plaintiff was creating a "partylike" atmosphere on a regular basis.  Plaintiff contends that the phone activity that were heard by others were prefabricated statements.   Plaintiff contends that Olson did move his desk immediately*

*after the Plaintiff moved to the next cubicle. Plaintiff also states that because she ws in*

*such close proximity to Olson prior to the move, if Plaintiff was so "disruptive" during*

***three*** *years of employment with ISMIE, something would have been mentioned before*

*2007. Plaintiff also states that this statement in Hutchinson's "Memo" is questionable*

*because of the other individuals in the same corridor weren't questioned: (Deborah*

*Connie, Wendy Roberson and Beth McNicholas.*

*Plaintiff also contends that Sullivan was guilty of the same accusation himself as*

*stated in the above paragraph. Sullivan, Welch, and Schmidt engaged in "partylike"*

*activity continuously. (Witnesses to this activity were Deborah Connie, Carol Smith,*

*Brenda Cowens, Jamie Donovan, Sarah Maddock, Wendy Roberson, just to name a few.*

*Hutchinson's accusations are unfounded in this paragraph. Plaintiff was located furthest*

*from the rest of the staff on the end wall where no one else was located for constant*

*"socializing". Hutchinson was oblivious to the actions that occurred in the department*

*as a whole since her office was located in another section of the floor.*

*¶9 and 10. Refer to the statements made in Paragraph 12 and 12 of this Complaint. (See*

*memo dated December 14, 2006)*

19.    Plaintiff received another evaluation from Hutchinson on July 2007 which
deteriorated even further in content and percentage of raise. Hutchinson listed tasks on
the evaluation which did not belong to Plaintiff. The number of items marked in the
"Does Not Meet Expectations" category DRAMATICALLY since the 2006 evaluation.

Plaintiff questioned Hutchinson to find out why she never received any type of disciplinary action if the work had deteriorated so heavily during the list year. (See Exhibit ).

20.    Hutchinson tried to give the illusion that "typing" was the primary task of the Plaintiff and the typing precluded the Plaintiff from achieving higher standards from within the department.   Plaintiff questioned Hutchinson about the remaining negative remarks during evaluation even stating that "maybe you have the wrong evaluation".  As a "manager in training" Stokes was allowed to **witness** the discussion between Plaintiff and Hutchinson but not allowed to intervene since she had no **PRIOR** or **"REAL"** authority over Plaintiff.  Plaintiff realized that Hutchinson was trying to justify the actions taken to preclude the Plaintiff from advancement into the Underwriting technician position recently.  Stokes was not considered a **viable** candidate to make decisions or pass judgment on employees as a "trainee." (See Exhibit   )

21.    Plaintiff states that on the few occasions that she tried to approach Stokes, she was reprimanded by Hutchinson that she was only to report to her and not STOKES.

22.    Hutchinson was questioned about the decrease in raise by one point since the prior evaluation, Hutchinson responded that "it is not lower", which indicates that Hutchinson's overall intentions were to keep the Plaintiff from advancing in the company and department. (WITNESS:  Jacinth Stokes)

23.    Plaintiff applied for the position of Underwriting Technician for a second time, which would have been a promotion in the Underwriting department.  On June 29,

2007, Plaintiff was granted an interview with **no advance notice**. Hutchinson was also present at the meeting which showed a conflict of interest since she was Plaintiff's immediate supervisor and had a complaint lodged against her.

23.    Plaintiff states that during the interview, Coghlan exhibited a very condescending attitude, occasionally glancing at Hutchinson for her reaction.

24.    Plaintiff contends that during the interview for the Underwriting Technician position, Coghlan was very curt and crude. Coghlan began asking questions that were not relevant to the job at all. Coghlan took time to make ensure that the questions that she did ask relating to the position were the ones that could not be answered unless a person was trained in that position or with a "person from the inside" to "prep" them with the answers of such confidential information. **(See Exhibit  )**

1. "What goes on the Prep side of the folder?"
2. "Why didn't you ask to be trained in Greg's position prior to his departure"?
3. "Why haven't you applied for anything outside of the Underwriting department"?
4. "Aren't you in a nursing program in school"?
5. "What school do you attend"?
6. "What classes are you taking?

25.    On several occasions, Plaintiff tried to answer questions posed by Coghlan, however, before Plaintiff could begin to answer a question, would interject with another question. Coghlan became so belligerent during the interview that Plaintiff didn't get a chance to comment on any other questions before being rushed out of the office.  Further, the remaining questions were only issues that Davis, himself, would know since he was

Coghlan's **"personal secretary" occasionally** running errands that sometimes included transporting Coghlan's expensive jewelry for repairs.

26.    Plaintiff states that Coghlan continued to "reprimand" and "humiliate" Plaintiff in front of her close friend and confidante, Hutchinson during the interview process. At the end of Coghlan's interview turned **"interrogation"**, Coghlan asked Hutchinson if she wanted to add anything. Hutchinson replied "Aren't you taking a biology class?"

27.    On July 1, 2007, Plaintiff received a **predated** letter for June 20, 2007 stating that they had selected another individual for the position. When the Plaintiff realized this **June 20, 2007, ONE WEEK PRIOR TO THE INTERVIEW**, it became clear that Hutchinson, Human Resources and Coghlan had previous knowledge that Plaintiff wasn't going to be promoted since the **interview date was June 29, 2007**. Plaintiff states that her co-worker and personal friend, Davis, had confided in Coghlan that Plaintiff was going to apply for the position since other questions were **ONLY** known to Davis.  **(See Exhibit   )**

28.    Even though Plaintiff was more than qualified and experienced for the position, Hutchinson and Coghlan conspired to deny Plaintiff the promotion for a second time. Blake (caucasian) is a personal friend and neighbor of Coghlan's. Because Blake had no office work experience, Coghlan had to assist him in completing his employment application. (Witnesses: Donna Gentiles-Karas, Receptionist, Sheila Coghlan, Laura Hutchinson) Blake's sister is Coghlan's babysitter. (See Exhibit  ) Plaintiff also contends that the position was actually a secretarial position and that only recently did it

13

become upgraded to Technician after Davis had exceeded the amount of money that could be paid to a secretary. (See exhibit - resumes)

29.    Plaintiff contends Coghlan and Hutchinson are BEST friends on the job which was a conflict of interest for the interview held by the two individuals to act in their capacity collectively. Witnesses (Underwriting and Claims employees).

30.    Plaintiff states that Hutchinson conspired with Sheila Coghlan to keep Plaintiff from obtaining the position of Underwriting Technician that became open in June 15, 2007. Plaintiff contends that Davis' position only reported to Sheila Coghlan for typing and/or **very private, personal projects and PREP was strictly confidential because of the HIPPA act** .

31.    Plaintiff contends that Coghlan was a personal friend of the employee, Greg Davis, that departed from "ISMIE" on July 15, 2007. Plaintiff discussed the possibility of applying for the position that he was vacating. Mr. Davis informed the Plaintiff that Coghlan had already decided who she was going to bring in to fill the vacancy PRIOR to the posting at work. Plaintiff still felt that it was their right to still try and pursue the position even though Coghlan chose to hire her neighbor and personal friend, Bill Blake.

32.    After an illness on January 7, 2008 to January 9, 2008, Plaintiff returned to work with a doctor's note for the two days taken off even though a note was not warranted until the employee was off more than 3 days. Plaintiff was directed three times

to have the physician rewrite the doctor's statement upon returning to the office.

(Witnesses: Joy, Dr. Prem Hammond Clinic.)

33.    During the Plaintiff's time off, Hutchinson telephone various family
members that contributed to an additional amount of stress on the family members. Also,
during Plaintiff's time off, Hutchinson and Stokes met with the underwriters and
technicians to have them alert Stokes of any mistakes made in the New Business
Screening that Plaintiff processed. (Witnesses: Brenda Cowens, Tanya Moorer, Willet
Welch and Underwriters present at that time)

### UNLAWFUL DISCHARGE

34.    On January 21, 2008, Plaintiff got ill after work and received a doctor's
statement which was faxed to HR. Plaintiff is a heart bypass patient. Plaintiff's mother
called in sick for the Plaintiff and spoke with Hutchinson on January 22nd, 2008 and
stated Plaintiff was going to be out sick indefinitely.

35.    Plaintiff telephone and stated that the time off would be extended to
January 28th, after a visit to the cardiologist. Plaintiff faxed a doctor's statement to
Human Resources "Until Further Notice" for a return date. HR advised that Plaintiff
would have to get forms signed for Short Term Disability.   Negligence on behalf of the
cardiologist left the Plaintiff no other choice but to try and seek another provider to treat
the above normal blood pressure.

36.    On February 13, 2008, Plaintiff visited a nurse practitioner in the cardiac
unit. The disability forms were signed by Brian Kraus, C-FNP and faxed to the Human

Resources department. ISMIE refused to accept the forms and Plaintiff was terminated.
**(See Exhibit  )**

37.    Defendant willfully lied in the Letter of Termination to stating that "on February 14, 2008, a call was placed to Hammond Clinic and that they spoke with Ms Susan Archie, confirming that Brian Kraus was not a doctor, he was a nurse practitioner." (Exhibit  )

38.    On Thursday, February 20, 2008, Plaintiff personally drove to the Hammond Clinic and confronted Ms. Susan Archie regarding the statement that was in the Letter of Termination.

39.    On Friday,   2008, MS. Cathy Zackiewicz, the head of Patient Services at Hammond Clinic, telephoned the Plaintiff stating that "no one in her office had spoken with anyone with ISMIE", and that she was "outraged that ISMIE would try and implicate Hammond Clinic what they were trying to finalize with Plaintiff's regard to employment" in this web of deception. A letter was sent to ISMIE, Human Resources stating the same and a copy is attached to this complaint hereto. (Exhibit   ).

**EEOC**
**COGHLAN'S AFFIDAVIT**

40. On September 27, 2007, Plaintiff filed a formal complaint with EEOC against ISMIE.

41. Coghlan submitted an **unsigned and un-notarized affidavit to EEOC** which is an evidence of the conspiracy and discrimination she and Hutchinson were a involved

in to keep Plaintiff from advancing. Plaintiff contends that this Affidavit is not a legal document. However exhibits are included to show cause.  (See Exhibit   )

## HUTCHINSON'S AFFIDAVIT IN RESPONSE TO EEOC CHARGE UPON REVIEW 11/ 9/2007

42.  At times,  Hutchinson seemed "out of touch" as evidenced in the Affidavit submitted to EEOC.  Hutchinson's  lists several tasks that WERE NOT the responsibilities of the Plaintiff.  **(See Activity Log)**

> *  *incoming correspondence (Carol Smith)*
> **screen loss letters (Sarah Maddock and Corliss Benedict)*
> **mailing documents (Mail room)*
> **rate sheets (technicians)*
> **copy applications (mailroom and publications)*
>
> *¶7 – Harassment see complaint by Plaintiff*
>
> *¶8 On several occasions Plaintiff tried to advise Hutchinson of backlogs created by Deborah Connie (temporary) in the loss history indexing but was denied a chance to help rectify the situation.  (Witness:  Sarah Maddock and Carol Smith, Deborah Connie (Temporary)  Hutchinson stating that it was "the temp's responsibility).  This was happening on a regular basis.*
>
> *¶Hutchinson sites work performance problems continuously over 3 ½ years in every evaluation, however Plaintiff never received any type of disciplinary action from Hutchinson.  Hutchinson was capable of termination as evidenced by first Underwriting*

17

technician hired in place of Plaintiff, Pamela Phelps in October, 2005.

¶10.    Hutchinson states "a pattern of tardiness" that she herself was guilty of during the Plaintiff's entire employment with ISMIE. Hutchinson start time was 8:30am but on every occasion reported to work at approximately 8:50am. Everyday except on Thursdays when she had a 9:00 am meeting to attend. Hutchinson did however change her habits during the unsubstantiated probation that Plaintiff was placed on November 5, 2007. During this time Hutchinson literally raced in past Plaintiff desk at 8:00 am in an attempt to "catch" Plaintiff with late arrivals as evidenced by the (Electronic Key Device ("FOBS")

43.    Hutchinson became obsessed with trying to find any and everything negative she could find in an effort to "write up" Plaintiff.

2004-2005
1. work performance problems
2. serious concern
3. consistent errors
4. tardiness created additional work for Hutchinson and staff
2005-2006
i.  constant tardiness
ii.  improve time and organization skills
iii.  too many distractions and socializing, **yet Hutchinson suggests to interrupt flow of work to report to her office 5 times daily.**
2006-2007
1. continued work problems
2. poor quality of work
3. additional of absenteeism
4. constant socializing throughout day

inconsistent statements: "Backup work done well but regular tasks constantly errored.

## SUMMATION:

44.    Hutchinson deliberately and willfully orchestrated an act or discrimination and harassment to keep the Plaintiff in the same entry level position for 3 ½ years.

45.    Plaintiff contends that during the entire 3 ½ years of employment with Illinois State Medical Services, Hutchinson conspired with various individuals to prevent Plaintiff from promoting or transferring within the company.

46.    Plaintiff contends that sometime around July 1, 2007, Hutchinson solicited the assistance of a newly appointed manager, Jacinth Stokes to assist in her acts of harassment and conspiracy, "witch-hunt" against the Plaintiff.

47.    Hutchinson embellished the truth on all evaluations since 2004-2006 and blatantly lied on the 2007, only reporting  negative remarks on evaluations annually in an effort to make the Plaintiff appear incapable of holding any other position with "ISMIE".

48.    Hutchinson and Stokes personally went out of their way to harass the Plaintiff until illness overcame the Plaintiff on January 21, 2008.   (See Exhibit )

49.    Plaintiff states that Coghlan submitted an unsigned and un-notarized affidavit to EEOC in response to the complaint.  In that complaint, Coghlan:

19

50.    Plaintiff contends that Coghlan knew very well that was no time for cross training unless it is initiated by a manager.  Further, Coghlan knew that Plaintiff could never "shirk" her own responsibilities to train for Davis' position prior to his announcement for departure.  Further, Davis was more than an employee, he was a close friend of Coghlan's.  Davis and Coghlan shared outside activities that included concerts, shows, drinks, and dinner.

51.    Plaintiff further states that because Greg Davis was a personal friend, she knew how undecided he was about leaving his position.  Further, when Greg Davis left ISMIE, it was one of the busiest times of the year for screening new business applications Plaintiff's primary task.

52.    Plaintiff contends that Hutchinson's allegations stated in all evaluations were "erroneous" statements and that if any of this were true, Hutchinson would have taken some type of disciplinary actions after three years pursuant to ISMIE's policies.

53.    Plaintiff contends that Hutchinson never proceeding with any type of disciplinary action until a complaint was filed with EEOC in October, 2007.

54.    Plaintiff states that she found an unsigned and undated warning form in the file while reviewing documents for this case.  Plaintiff states that Hutchinson and Donna Gentiles-Karas, Human Resources conspired to generate a "bogus" warning.  Plaintiff never received such warning, but found the unsigned document in the file review from EEOC with no date. (See Exhibit    )

20

55.     Plaintiff requested one day off "unpaid" on November 21, 2007 to attend a
doctors appointment.  When Plaintiff realized from the manual that this was not
possible, the request was rescinded, although provisions had been made by others
to travel even though there was no more accrue time available.  Plaintiff was
willing to go along with Hutchinson's advice.  Unfortunately, this was not enough
for Hutchinson and Human Resources conspired to write up a Notice of
Corrective Action on November 5, 2008. for probation based on excessive
absenteeism  even though Plaintiff **had not EXCEEDED ANY** allotted time off
for the year. (See Exhibit  ).  Plaintiff became so frustrated at this "pitiful" attempt
at harassment she refused to sign the document.  In three years, Plaintiff had never
received any type of disciplinary action from ISMIE.  EEOC Complaint 10/2007.

56.     Hutchinson is responsible for the Plaintiff losing her livelihood, life
insurance, health insurance, 401k and sense of pride taken at ISMIE.

57.     Hutchinson is responsible for the deterioration in the Plaintiff's health as a
prior heart bypass patient.  Plaintiff advised Hutchinson of her health situation
and the consequences of daily stress that she was subjected to on a regular basis.

58.     Hutchinson retaliated against Plaintiff after formal complaint was made in
December of 2006.  No PRIOR disciplinary actions (warnings or probation), were
ever taken against employee **UNTIL 2007)**

59.     Plaintiff discovered a memo placed in the EEOC file that was not shared with Plaintiff prior to EEOC Complaint.  (See exhibit    ) Email to HR regarding Complaint.

60.     Evidence of harassment is listed in Hutchinson's memo in the second paragraph stating that Plaintiff should "restock Hutchinson's paper at her desk", a task that no one else provided, even in Scott's absence and "she needs to come into my office several times a day".

61.     Hutchinson continued to lower the Plaintiff's raises by a tenth.  When Plaintiff brought this to Hutchinson's attention, Hutchinson wasn't even aware of the fact that the raise was lower than the previous year.  (Witness Stokes, who was present at Scott's evaluation witnessed this).

62.     Plaintiff states that while placed on the "bogus" probation on November 5, 2007,   Hutchinson purposely changed her daily pattern of tardiness to arrive at work from 8:50am to 7:45-8:00am arrival time in an effort to harass Plaintiff further.  Daily monitoring of the electronic key used by the company should have been sufficient evidence of arrival.  Hutchinson only monitored Plaintiff's arrival time and no one else's in the department from November 5, 2007 to January 1, 2008 which indicated a additional form of harassment.

63. In Hutchinson's quest to keep the Plaintiff from advancing or transferring

from of the department, all measures were taken, to include conspiracy.

64.    Plaintiff **later learned** that Defendant had placed a "warning in the EEOC file with their response to Plaintiff's Complaint that was never received. (See Exhibit  ) The "warning was never signed or dated, and when Plaintiff asked for a copy of the entire personnel file, it was not included in the documentation.  In _____, ISMIE states in their response to EEOC that they never gave the Plaintiff the "Warning" because they didn't want it to appear retaliatory".  (See Exhibit  )

65.    Plaintiff contends that ISMIE practices discrimination in their hiring and promoting practices.

66.    As of October 25, 2007.  (See Exhibit   ).  Plaintiff states that there were 221 caucasian employees and  26 black employees.  From 04/2006 to 11/06 there were a total of 29 "new hires (2 were black and 31 promotions – 0 – black)" (Approximate)  (See Exhibit   )

67.    All **mailroom staff (black), each consistently denied requests for promotions**:

Sheila Farmer, Samantha Dancy, Lisa Ferguson,  (3 black clerks)

68.    Deborah Harris (temporary employee), black, also applied for the same position of Underwriting Technician in 2007.  However, her emails to interview for the position were never acknowledged.  **(See Exhibit    )**

69.    Plaintiff sought out the assistance of Human Resources to try and resolve this matter.  However, there was no response to email. **(See Exhibit   ).**

23

70. Plaintiff states that Hutchinson and Stokes collectively went out of their way to build a case against Plaintiff. Plaintiff states that this constant and daily harassment was a direct result of the stress that created by these two individuals.

71. Plaintiff states that because Hutchinson and Stokes were so vicious and malicious in their attempts, they had no other regard for the other underwriting staff members in further creating a hostile work environment.

**PRAYER**

WHEREFORE, plaintiff requests this Honorable Court respectfully award the Plaintiff an amount of $1,000,000 (One Million) dollars for the damages suffered above in this Complaint.

Respectfully,

Sakie Scott

Sakie Scott
416 Merrill Avenue
Calumet City, IL 60409
sakiescott@hotmail.com
(708) 539-8253

24

# Partial Exhibit List

Performance Review 12/04

Performance Review 07/05

Email regarding cancellation of interview dated

Email dated 10/24/05 regarding reason for denial of promotion to U/W Technician

Job Description for UW Secretary and Technician

Scott Resume

Complaint against Laura Hutchinson dated December 14, 2006

Phone Directory

Typing 1/8/07-06/21/07

Backlog Documentation

Notice of Probation – 11/05/07

Internal Application for promotion

Greg Davis Resume (07/07)

Declination Letter dated 06/20/07 **one week PRIOR** to (Interview date 06/29/07)

Promotions and transfers

Correlation between Sheila Coghlan and Bill Blake (neighbors and close friends)

Notice of Corrective Action for tardiness

Secretary support duties (Sarah Maddock)

Tuition Reimbursement (No response)

Deborah's Email from HR (No response until 2 weeks later)

Extraordinary figures

Job Descriptions (High school diploma)

Laura Hutchinson Affidavit

Sheila Coghlan Affidavit (Unsigned)

Emails:

Interview dated October 11, 2005

To HR reason for declination 10/24/05

HR Hostile Work Environment

Hutchinson's Memo dated 12/20/06 to Human Resources regarding Sakie's work (Plaintiff not copied on memo) after complaint.

# BEERMANN
# SWERDLOVE

LLP

___

ATTORNEYS

| | | | |
|---|---|---|---|
| Lawrence B. Barczky | Michael C. Craven | Howard A. London | Stephanie G. Sadow |
| Alvin R. Becker | Howard C. Emmerman | Katarinna McBride | Catherine M. Stone |
| Miles N. Beermann | Thomas T. Field | Kathryn L. Mickelson | Jacqueline J. Torshen |
| Erin J. Bognar | Lyle S. Genin | Maribeth Olenski | Shana L. Vitek |
| Julie P. Brett | Katherine A. Grosh | Stefania Pialis | Jessica L. Winkler |
| Deane B. Brown | Pamela J. Huhil | Jared B. Pinkus | William Woloshin |
| Bradley T. Cheskes | Herbert A. Kessel | James M. Quigley | William A. Zolla II |

OF COUNSEL:
Nathan B. Swerdlove

*1958* 50th *2008*

# ANNIVERSARY

March 5, 2008

## VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED
## AND REGULAR MAIL

Ms. Kathleen N. Zackiewicz, RN
Director of Patient Services
Hammond Clinic LLC
7905 Calumet Avenue
Munster, Indiana 46321

   Re:  <u>Sakie Scott</u>

Dear Ms. Zackiewicz:

   Please be advised that I am an attorney with the law firm of Beermann Swerdlove LLP and we represent Illinois State Medical Insurance Services, Inc. (**"ISMIS"**). The following is in response to your letter dated February 25, 2008 to Donna Gentile-Karas.

   On January 29, 2008, Ms. Sakie Scott advised Human Resources at ISMIS that she was instructed by her physician Dr. Martini at the Hammond Clinic that she was not to return to work without further notice due to a "heart condition." Pursuant to ISMIS Company policy, Ms. Scott was provided certain documents to complete in order to take medical leave and short term disability, including a Certification of Physician Form. The Certification of Physician form states on the form in bold-face type "TO BE COMPLETED BY PHYSICIAN."

   As of February 4, 2008, ISMIS had still not received a completed Certification of Physician form for Ms. Scott. On February 4, 2008, Ms. Donna Gentile-Karas, Assistant Vice-President, Human Resources at ISMIS, sent directly to Dr. Mohamed Martini via facsimile and U.S. Mail a detailed letter requesting that Dr. Martini complete the Certification of Physician form that was enclosed with the letter and provide the information requested therein via mail or fax. Also enclosed with the letter was a copy of the Hammond Clinic LLC HIPAA Disclosure/Disability Department form that was signed by Ms. Scott and an Authorization for Medical Records and Report signed by Ms. Scott. No response was ever received from Dr. Martini.

161 NORTH CLARK STREET · SUITE 2600 · CHICAGO, ILLINOIS 60601 · TELEPHONE (312)621-9700 · FACSIMILE (312)621-0909 · WWW.BEERMANNLAW.COM

1700 GREEN BAY ROAD · SUITE 200 · HIGHLAND PARK, ILLINOIS 60035 · TELEPHONE (847)681-9600 *(BY APPOINTMENT ONLY)*

# BEERMANN
# SWERDLOVE

LLP

ATTORNEYS

Ms. Kathleen N. Zackiewicz, RN
March 5, 2008
Page 2

On February 14, 2008, Ms. Scott faxed to ISMIS the Certification of Physician form; however, it was completed by Brian Kraus. ISMIS had no prior documentation reflecting that Brian Kraus was treating Ms. Scott, nor was there anything on the form to indicate that Mr. Kraus was a physician.

On February 14, 2008, I called the Hammond Clinic at (219)836-5800. I was attempting to contact Dr. Martini's office and I was told by someone at your administrative offices that no one in Dr. Martini's office was available. I was then directed to Susan Archie.

I identified myself to Ms. Archie and advised her that I was an attorney representing ISMIS. I advised her that an employee of ISMIS, Ms. Sakie Scott was being treated at the Hammond Clinic and that ISMIS was processing Ms. Scott's documentation for medical leave and for short term disability. I advised Ms. Scott that Ms. Scott had submitted to ISMIS a Certification of Physician form that was completed by Brian Kraus. I advised Ms. Archie that I needed to confirm that Brian Kraus was a physician. Ms. Archie advised me that Brian Kraus is not a physician and that he is a nurse practitioner. I advised Ms. Archie that ISMIS was advised that Ms. Scott was being treated by Dr. Martini and that ISMIS had received a prior note signed by Dr. Martini. I then inquired as to why Brian Kraus as opposed to Dr. Martini signed a form titled "Certification of Physician" that specifically contained instructions that it was to be completed by a physician. Ms. Archie responded that she did not know and could not understand why the physician did not complete the form. I then asked Ms. Archie if the Hammond Clinic had a policy that specifically permitted nurse practitioners to complete Certification of Physician forms. Ms. Archie advised that she was unaware of any such policy.

I advised Ms. Archie that pursuant to the ISMIS policy, a Certification of Physician form had to be completed by a physician in order to process an employee request for medical leave and short term disability. I advised Ms. Archie that ISMIS had not received a properly completed Certification of Physician form from Dr. Martini and that in the event no such documentation was promptly provided to ISMIS, the medical leave request and short term disability request could not be processed for Ms. Scott. I requested that Ms. Archie direct me to someone at the Hammond Clinic who could ensure that the Certification of Physician form was properly completed by a physician. Ms. Archie advised me that she would look into this matter and that someone would follow up with me.

As of February 20, 2008, ISMIS did not receive a completed Certification of Physician form for Sakie Scott from Dr. Martini, nor did ISMIS receive a completed Certification of Physician form completed by a physician. No one at the Hammond Clinic ever contacted me to advise me that your Nurse Practitioner's complete and sign Disability forms and that is your policy. More importantly, no one at the Hammond Clinic has ever advised me, Ms. Gentile-Karas or anyone at ISMIS why a form titled "Certification of Physician Form" that states in

# BEERMANN
# SWERDLOVE

LLP

ATTORNEYS

Ms. Kathleen N. Zackiewicz, RN
March 5, 2008
Page 3

bold-face type "**TO BE COMPLETED BY PHYSICIAN**" could not be completed by a physician at the Hammond Clinic and promptly returned to ISMIS as requested.

    If you have any further questions regarding this matter, please contact me directly.

        Yours very truly,

        BEERMANN SWERDLOVE LLP

        Stefania Pialis

cc:   Al Allphin
      Laura Hutchinson
      Donna Gentile-Karas
      Sakie Scott

# Hammond Clinic LLC

February 25, 2008

7905 Calumet Avenue, Munster, Indiana 46321    219/836 5800
11355 West 97th Lane, St. John, Indiana 46373    219/365 5577
9800 Vanderaart St. Munster, Indiana 46321    219/934 9800

Donna Gentile-Karas
Assistant Vice President, Human Resources
20 North Michigan, Suite 700
Chicago, Illinois  60602

RE:    Sakie Scott
       416 Merrill
       Calumet City, Illinois  60409

Dear Ms. Gentile-Karas:

Our above named patient has brought to our attention that she received a letter of termination from Illinois State Medical Insurance Services, Inc., her employer.

There is an erroneous statement in Ms. Scott's Notice of Corrective Action. That statement is a follows: "A telephone call was placed to the Hammond Clinic Administrative offices and Ms. Susan Archie confirmed that Brian Kraus was not a doctor, he was a nurse practitioner. Ms. Archie also confirmed that it is not the policy or practice of the Hammond Clinic to have nurse practitioners complete physician certification forms and that those forms should be completed by a physician."

Susan Archie denies speaking to anyone from your company. Our Nurse Practitioners at Hammond Clinic indeed do complete and sign Disability forms and that has been our policy for years.

If you have any questions, I can be reached directly at 219-836-4653.

Sincerely,
HAMMOND CLINIC LLC

Kathleen M. Zackiewicz, RN
Director of Patient Services

Susan Archie
Supervisor/HIPAA
Compliance Officer
Disclosure & Disability

Cc:    Alan Allphin
       Laura Hutchinson
       Sakie Scott

*Illinois State Medical Insurance Services, Inc.*



**MANAGERS OF THE ISMIE MUTUAL INSURANCE COMPANY**

February 20, 2008

**VIA FEDERAL EXPRESS**
**OVERNIGHT DELIVERY**

Ms. Sakie Scott

Dear Ms. Scott:

Due to your excessive absenteeism and resulting failure to adequately perform your job your employment with Illinois State Medical Insurance Services, Inc. has been terminated effective today February 20, 2008. Enclosed please find the Notice of Corrective Action Form setting forth in greater detail the basis for your termination.

Any personal belongings that were in your desk will be sent to your home address. Please note that COBRA information is enclosed and on March 5, 2008 Illinois State Medical Insurance Services, Inc. will send out to you via mail a check representing the balance of your vacation pay.

Sincerely,

Donna Gentile-Karas
Assistant Vice President, Human Resources

Enclosures

cc:     Alan Allphin
        Laura Hutchinson
        File

**Illinois State Medical Society    Illinois State Medical Insurance Services, Inc.**
**ISMIE Mutual Insurance Company**

## NOTICE OF CORRECTIVE ACTION

Name:  **Sakie Scott**                                    Division:  **C**

Job Title:  **Underwriting Secretary**                    Date:  **2/20/08**

---

**Corrective Acton Taken:**

     X     Termination

**Performance or behavior in need of correction:**

As of January 29, 2008, Sakie Scott utilized one (1) vacation day, five (5) personal days, and five (5) sick days in 2008.

On January 29, 2008, Ms. Scott contacted her supervisor Laura Hutchinson and advised her that she would be absent indefinitely due to medical issues.  On January 29, 2008, Donna Gentile-Karas, the Assistant Vice President of Human Resources spoke with Ms. Scott via telephone and advised her that she was eligible for short term disability and Family and Medical Leave ("FMLA"); however, Ms. Scott would have to complete and provide the information required in the forms and the policies in order to be eligible for either short term disability or FMLA leave.

On January 29, 2008, Human Resources sent Ms. Scott via facsimile the Leave Act Request Form and requested that Ms. Scott complete the form and have the Certification of Physician filled out by her treating physician and returned to Human Resources immediately.

On February 4, 2008, Human Resources received via facsimile the Certification of Physician form completed by Ms. Scott as opposed to a physician as required by the Company policy.

On February 4, 2008, Human Resources sent a letter via facsimile to Dr. Mohammed Martini of Hammond Clinic, Sakie Scott's treating physician requesting that Dr. Martini complete and return the Certification of Physician form.  Enclosed with the letter were a Certification of Physician form and a copy of the Authorization for Medical Records and Reports signed by Sakie Scott. Human Resources has not received anything from Dr. Martini.

Ms. Gentile-Karas has had numerous telephone conversations with Ms. Scott advising her that in order to get paid for short-term disability or to take leave pursuant to the FMLA, Ms. Scott must provide a Certification of Physician form completed by her treating physician.

On February 6, 2008, Human Resources sent a letter to Ms. Scott via regular mail and certified mail with detailed instructions of the documentation required in order to process the FMLA leave or short term disability for Ms. Scott. Enclosed with that letter were copies of the Company's Short Term Disability policy, the Company's FMLA policy and the letter sent to Dr. Martini.

On February 12, 2008, Human Resources had still not received a signed Certification of Physician form from Sakie Scott or Dr. Martini. On February 12, 2008, Human Resources sent via Federal Express overnight delivery another letter to Sakie Scott advising her that she has still not provided a fully completed Leave Act Request Form or Certification of Physician form as required to process the FMLA leave request or short term disability and further advising her that if these documents are not received, she will be subject to disciplinary action up to and including termination. The February 12, 2008 letter enclosed a copy of the February 6, 2008 letter and copies of the Company's FMLA policy and short term disability policy.

On February 13, 2008, Ms. Gentile-Karas spoke with Sakie Scott via telephone. Sakie Scott confirmed that she had received both the February 6, 2008 letter and the February 12, 2008 letter from Human Resources. Ms. Gentile-Karas advised Ms. Scott that it was imperative that Ms. Scott provide the Certification of Physician form completed by Dr. Martini, her treating physician immediately.

On February 14, 2008, Human Resources received via fax a Certification of Physician form for Sakie Scott completed by Brian Kraus. Brian Kraus was not previously identified by Sakie Scott as her treating physician. A telephone call was placed to the Hammond Clinic Administrative offices and Ms. Susan Archie confirmed that Brian Kraus was not a doctor, he was a nurse practitioner. Ms. Archie also confirmed that it is not the policy or practice of the Hammond Clinic to have nurse practitioners complete physician certification forms and that those forms should be completed by a physician.

On February 15, 2008, Ms. Gentile-Karas advised Ms. Scott via telephone that the Certification of Physician form that she submitted was unacceptable because it was not completed by a physician.

As of February 19, 2008, Ms. Scott has been absent from work over 4 weeks/21 working days without any indication that she plans to return to work and Human Resources has not received a fully completed Leave Act Request Form with a Certification of Physician completed by a physician. Ms. Scott has not submitted any documentation proving that she is under the active care of a physician identifying the diagnosis/nature of a serious health condition or disability or the expected duration of the serious health condition or disability as required by the Company's short-term disability policy and the Company's FMLA policy.

Because of Sakie Scott's egregious abuse of the required attendance policy and resulting inability to perform her duties, Sakie Scott's employment is terminated effective immediately.

*Illinois State Medical Insurance Services, Inc.*



**MANAGERS OF THE ISMIE MUTUAL INSURANCE COMPANY**

February 12, 2008

**VIA FEDERAL EXPRESS**
**OVERNIGHT DELIVERY**

Ms. Sakie Scott

Re:    Medical Leave

Dear Ms. Scott:

Enclosed herewith please find a copy of my letter to you dated February 6, 2008.  Please be advised that as of today, I have not received any response from you nor have I received the fully completed Leave Act Request Form or Certification of Physician as required.  Please send me the fully completed Leave Act Request Form and Certification of Physician immediately; otherwise, we will have no option but to proceed with disciplinary action up to and including termination.

Sincerely,

Donna Gentile-Karas
Assistant Vice President, Human Resources

Enclosures

cc:    Alan Allphin
       Laura Hutchinson
       File

*Illinois State Medical Insurance Services, Inc.*

# ISMIS

**MANAGERS OF THE ISMIE MUTUAL INSURANCE COMPANY**

February 6, 2008

Ms. Sakie Scott

Re:    Medical Leave

Dear Ms. Scott:

I am writing to request you to provide a completed Leave Act Request Form including a fully completed Certification of Physician. You have been on medical leave since January 21, 2008. On January 21, 2008, you advised that you would be returning to work on January 29, 2008. On January 28, 2008, you advised that you would be on medical leave indefinitely. On January 29, 2008, I sent you via facsimile the Leave Act Request Form and requested that you complete the form and return it to me. On February 4, 2008, I received from you via facsimile a partially completed Leave Act Request Form that was not completed by a physician as required. The Certification of Physician section was partially completed by you, it was not signed by a physician and various questions were left blank.

Please be advised that Human Resources cannot process a request for Medical Leave without a fully completed Leave Act Request Form and certification of your health condition by your treating physician. Please provide the completed documentation no later than **February 8, 2008**.

Enclosed with this letter, please find a copy of the Illinois State Medical Insurance Service, Inc. (**"ISMIS"**) Family and Medical Leave policy and Short-Term Disability policy for your information. Please note that in order to be eligible for Medical Leave, you must complete a Leave Act Request form and provide certification of your serious health condition. In order to be eligible for Short-Term Disability you must submit proof that you are under the active care of a physician and such proof must including the diagnosis, the nature of the disability and the expected duration of the disability. Furthermore, in order to demonstrate eligibility for Medical Leave and/or Short-Term Disability, a note from your attending physician must be provided every 14 working days while on Medical Leave or Short-Term Disability.

Enclosed herewith please find a copy of my letter to Dr. Martini, requesting that he provide information regarding your disability so that Human Resources can process your Leave Act Request Form. Please be advised that it is **not** Human Resources' obligation to obtain this information, it is your obligation to provide the necessary documentation forthwith. You have been on leave for two weeks and Human Resources has yet to receive the requisite information to process your request. If I do not receive this information forthwith I will be unable to process your Leave Act Request Form, and I will be unable to process any request for Short-Term Disability.

Please contact me if you have any questions.

Sincerely,

Donna Gentile-Karas
Assistant Vice President, Human Resources


Enclosures


cc:     Alan Allphin
        Laura Hutchinson
        File

| INDEX: | VI.A-5 | PAGE: | 1 of 1 |
| SECTION: | BENEFITS – INSURANCE | EFFECTIVE: | August 16, 1982 |
| SUBJECT: | SHORT-TERM DISABILITY (STD) | REVISED: | July 1, 2004 |

## POLICY:

Employees are eligible for short-term disability (STD) coverage the first of the month following one year of employment.

STD provides an employee with 60% of their base salary during the medical leave period described below:

To qualify for short-term disability, the employee must:

- Be disabled for a minimum of five consecutive working days.

- Submit proof that they are under the active care of a physician. Such proof shall include the diagnosis/nature and expected duration of the disability;

- Demonstrate eligibility every 14 working days by submitting a note from their attending physician which includes the information immediately above. Demonstration of eligibility for STD due to maternity will be waived for the first six weeks. At that time, eligibility must be demonstrated by submitting a note from the attending physician, and then every 14 working days thereafter.

- If requested, employee shall authorize the Company to obtain additional medical information;

- Upon return to work, employee must submit a release from their attending physician describing work limitations, if any.

The STD period of 90 calendar days is retroactive to the date of eligibility and is offset by accumulated sick time, i.e., an employee with 10 days sick time will use those 10 days for the first 10 working days of the 90-day period. The balance of their 90 day period will provide payment at 60% of their base salary. Employee must exhaust accumulated sick time. The employee may choose to retain up to three sick days for use after disability.

There can only be one STD period for the same illness within a 12 month time frame.

All earned vacation and other personal benefits are preserved during STD, unless an employee chooses to use such time thereby foregoing the STD 60% payment. The employee would then receive full pay for the amount of vacation and/or personal time used. However, additional time will not be earned.

All insurance benefits will be maintained during STD.

The cost of STD coverage is paid by the Company.

*Medical Insurance Services, Inc.*

# ISMIS
**MANAGERS OF THE ISMIE MUTUAL INSURANCE COMPANY**

February 4, 2008

**VIA FACSIMILE TO (219)836-4646**
**AND U.S. MAIL**

Dr. Mohamad Martini
Hammond Clinic LLC
7905 Calumet Avenue
Munster, IN, 46321

      Re:    Patient Sakie Scott

Dear Dr. Martini:

      I am the Vice President of Human Resources for Illinois State Medical Insurance Services, Inc. ("ISMIS"). I recently received a Family Medical Leave Act Request Form from Ms. Sakie Scott, an employee of ISMIS. Ms. Scott has indicated that she is currently under your care. Enclosed with this letter you will find a Certification of Physician form which has been signed by Ms. Scott and must be completed by a physician. Please complete the enclosed Certification of Physician form and return to me via facsimile to (312)782-2850 and mail. Enclosed you will also find a copy of the Hammond Clinic LLC HIPAA Disclosure/Disability Department form that has been signed by Ms. Scott.

      Please be advised that we require the following information to be provided:

(1)    diagnosis/nature of disability;
(2)    date disability began;
(3)    whether patient is currently able to work;
(4)    the estimated duration of the disability/inability to work;
(5)    whether patient can return to light/restricted work;
(6)    describe the restrictions and limitations (if any):
(7)    the estimated duration of light/restricted work (if applicable):
(8)    your name, address, telephone number, fax number and date.

Please note that Ms. Scott cannot be approved for Family Medical Leave until ISMIS receives the Certification of Physician form completed in its entirety and signed by you. Please also note that written verification of continued disability must be submitted by Ms. Scott every fifteen (15) days and that a written release to return to work must be submitted upon Ms. Scott's return to work.

If you have any questions regarding the completion of the Certification of Physician form please contact me directly.

Yours very truly,

Illinois State Medical Insurance Services, Inc.

Donna Gentile-Karas

cc:    Sakie Scott

Enclosures

*Illinois State Medical Insurance Services, Inc.*



**MANAGERS OF THE ISMIE MUTUAL INSURANCE COMPANY**

February 4, 2008

**VIA FACSIMILE TO (219)836-4646**
**AND U.S. MAIL**

Dr. Mohamad Martini
Hammond Clinic LLC
7905 Calumet Avenue
Munster, IN, 46321

      Re:   <u>Patient Sakie Scott</u>

Dear Dr. Martini:

     I am the Vice President of Human Resources for Illinois State Medical Insurance Services, Inc. ("**ISMIS**"). I recently received a Family Medical Leave Act Request Form from Ms. Sakie Scott, an employee of ISMIS. Ms. Scott has indicated that she is currently under your care. Enclosed with this letter you will find a Certification of Physician form which has been signed by Ms. Scott and must be completed by a physician. Please complete the enclosed Certification of Physician form and return to me via facsimile to (312)782-2850 and mail. Enclosed you will also find a copy of the Hammond Clinic LLC HIPAA Disclosure/Disability Department form that has been signed by Ms. Scott.

     Please be advised that we require the following information to be provided:

     (1)    diagnosis/nature of disability;
     (2)    date disability began;
     (3)    whether patient is currently able to work;
     (4)    the estimated duration of the disability/inability to work;
     (5)    whether patient can return to light/restricted work;
     (6)    describe the restrictions and limitations (if any);
     (7)    the estimated duration of light/restricted work (if applicable);
     (8)    your name, address, telephone number, fax number and date.

Please note that Ms. Scott cannot be approved for Family Medical Leave until ISMIS receives the Certification of Physician form completed in its entirety and signed by you. Please also note that written verification of continued disability must be submitted by Ms. Scott every fifteen (15) days and that a written release to return to work must be submitted upon Ms. Scott's return to work.

If you have any questions regarding the completion of the Certification of Physician form please contact me directly.

Yours very truly,

Illinois State Medical Insurance Services, Inc.

Donna Gentile-Karas

cc:    Sakie Scott

Enclosures



# Hammond Clinic LLC

## HIPAA DISCLOSURE / DISABILITY DEPARTMENT

## REQUEST FOR THE COMPLETION OF PATIENT FORMS

DATE 2/4/08                CHART # _____

NAME Salue Soott

SOCIAL SECURITY NUMBER 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

DATE OF BIRTH 12/20/56

PHYSICIAN TO SIGN FORM MARTINI

Stressed Cardiac

INJURY OR (ILLNESS)    DATE OF ONSET 1/21/08        SAKIE FILLED IN DATES
(Circle)
1ST DAY OF DISABILITY 1/21/08 __ RETURN TO WORK 4/21/08

HOSPITAL (IF APPLICABLE) __

ADMISSION DATE _____ DISCHARGE DATE _____

### PLEASE ALLOW 5 TO 7 WORKING DAYS FOR COMPLETION OF FORM(S)

FAX TO: Il State Meat Ins Services ATTENTION: Donna Reyes   Gentles

MAIL TO: 312 782 2850

PICK UP: (PLEASE CIRCLE)
SPECIALTY CENTER    FAMILY WELLNESS ____ ST. JOHN ____

Sallie Soott

### PATIENT SIGNATURE
*(Only the patient may sign in accordance with Indiana and Federal law)*

| Payment - check # _____ | cash 10.00 |
| --- | --- |
| Amount collected 10.00 | date 2-4-08 |
| Employee Signature Lae | |

Form 30169 - revised 3/05



**Hammond Clinic LLC**

☐ 7905 Calumet Avenue     Munster, Indiana 46321     Telephone 219-836-5800
☐ 9800 Valparaiso Court     Munster, Indiana 46321     Telephone 219-934-9800
☐ 11355 West 97th Lane     St. John, Indiana 46373     Telephone 219-365-5577

ATTN: SAKIE SCOTT

FACSIMILE COVER SHEET

TO: _____ COMPANY NAME: _____

FAX NUMBER: 312-782-2023

FROM: Liz RN / Dr. Prem

SUBJECT: back to work note

DATE: 1/10/08     TIME: 4:00p

NUMBER OF PAGES (including cover sheet): _____

If there are any problems with this transmission, please contact: _____

---

**Hammond Clinic LLC**

7905 CALUMET AVENUE
MUNSTER, INDIANA 46321
PHONE (219) 836-5800
www.hammondclinic.com

DATE 1/10/08

TO: whom it may concern
       NAME OF FIRM

MR.
MRS.
MISS Sakie Scott _____ HAS BEEN UNDER OUR

CARE SINCE 1/7/08 FOR chest pain AND IS

NOW RELEASED TO RETURN TO WORK ON 1/10/08

Dr. Prem /E Garcia RN , M.D.

Form No. 30090

onging to the
r entity named
n to any other
less otherwise
sure, copying,
I. If you have
se documents.

1/01/03

6

# H Hammond Clinic LLC

P000103106  01/22/08 8340935
P07262074  10:16  murphyju
UNIC/HMO/J634
SCOTT SAKIE A     08420580
416 MERRILL
CALUMET CITY IL 60409
SCOTT, GREGORY T
708-555-4202  12/20/56

AGE: 51   SEX: M / F   LMP:
WT:              B/P: 180
TEMP: 98.5  P: 64  RESP: 16

FAMILY DR. _Prem_    Time called to room: 10 35

ALLERGIES: Latex yes/no   Current Medications

1. PCN
2.
3.
4.

Current Medications:
1. Toprol X2 100mg BID
2. micardis 80 mg
3. HCTZ 10 mg.
4. lexapro 10mg

5. ___
6. ___
7. ___
8. ___

CC/HPI: To chest pain, occ. short of breath x 2 day. Stated on scale 1-10 pain is "just mild discomfort"

ROS:

Past/Family/Social/History

Examination:

Assessment:

Plan:

Pulse OX 97%

Disposition: RTW date: _____
Dr. # _____   Physician Signature: _____
REF COORD: ( ) YES  ( ) NO
F/U Appt: _____   Date: _____
Time: _____   Dr.: _____
Nurse's Sig.: _____

The top copy of the form will be sent to Medical Records for posting in the patient's chart, the second copy will be sent to the primary care doctor, and the third copy is for Urgent Care. If the information has to go to Ref Coord, she will get the top copy first and then forward it to Medical Records.

Form 31094

|  | | 2 | 3 | 4 | 5 | 6 | 7 | 8 |

| DATE | DR. NO. | PROGRESS NOTES |
|---|---|---|
| Consult Note from Dr. Reviewed by | 111 | 02-04-08 Pt here for B/P check |
| | | No problems c̄ meds. B/P 170/104 |
| | | P-60. Pt brought FMLA paper it |
| | | advised her to take them to |
| | | Disability depart. Dr Martini advised to add Norvasc 5 mg ī Po ○, |
| | | call to 708-868-5669. Pt verbally understandy it Pt needed an |
| | | appt. appt made for 2-18-08 for B/P check |

P000103108  02/04/08 8345826
P07262074  10:18    rays
UNTC/HMO/J634
SCOTT GAKIL S
CALUMET CITY IL 60409
SCOTT, GREGORY T
708 519-4205  12/20/56    111

| 2-18-08 | 954 | Screen pre/post & DLCO testing done today. -K. Conery, RRT, CPFT |

# Hammond Clinic – Cardiology Clinic

P00010313    01/28/08 7654837
P07262074    16:22    reisd
UNIC/RMO/J634
SCOTT SAKIE A        08420580
416 MERRILL
CALUMET CITY IL 60409
SCOTT, GREGORY T
708-689-9303   12/20/56      111

| Date | Age | Progress Notes |
|---|---|---|
| | | |

Allergies: ✓

Medications See List - Reviewed ✓

Ht:   Wt:   B/P:   P: 64 R:   T:

190/100

Consultation Requested by and Information Sent to:

Reason for visit:

CC:

Social H: ETOH      Occupation      Sub Abuse      Tobacco — Years      Packs      Quit

Past H:

DM    HTN    Dyslipidemia    (CAD)    (CABG)    PTCA

CVA    CA    COPD    Asthma    BPH    Arthritis    PVD

HPI:

| | | | | | Pain in: |
|---|---|---|---|---|---|
| Chest Pain | Y / N | Dizziness | Y / N | | Shoulder Y / N |
| SOB | Y / N | LOC | Y / N | | Arms Y / N |
| DOE | Y / N | Presyncope | Y / N | | Neck Y / N |
| PND | Y / N | Leg Swelling | Y / N | | Jaw Y / N |
| Orthopnea | Y / N | Cough | Y / N | | Back Y / N |
| Palpitation | Y / N | Claudication | Y / N | | |

Details:

Records Reviewed:    Labs Reviewed:    X rays Reviewed:    Stress Test Reviewed:    Echo Reviewed:

Fam H: M-    F-    B-    S-    MGM    MGF    PGM    PGF

ROS:  Sheet Reviewed ( )   Date

| Constitutional | Eyes | ENT | Resp | CV | GU | GI | Neuro | Musc/Skel | Skin | Psych |
|---|---|---|---|---|---|---|---|---|---|---|
| Fatigue | Discharge | Earache | Cough | Chest Pain | Dysuria | Abd Pain | Confusion | Back Pain | Abscess | Anxiety |
| Fever | Itch | Hoarseness | Dyspnea | Diaphoresis | Frequency | Constipation | Headache | Gout | Eczema | Depression |
| Night sweats | Pain | Nasal Disch | Hemoptysis | DOE | Hematuria | Diarrhea | Parasthesia | Joint Pain | Itch | Insomnia |
| Weakness | Photophobia | Sore throat | Wheeze | Orthopnea | Vag Blood | Emesis | Seizures | Joint Swell | Rash | Nevous |
| Wt. Gain | Swelling | Tinnitus | Sputum | Palpitation | Vag. Disch | Melena | Weakness | Myalgia | Ulcers | Forgetful |
| Wt Loss | Loss of Vision | Vertigo | | | ED | Nausea/vomiting | | Redness | Bruising | |

Details:

Form 30063    Rev 12/04

Fax sent by   :

**ISMIE Mutual Insurance Co., Inc.**
**Illinois State Medical Insurance Services, Inc.**
**Illinois State Medical Society**

## CERTIFICATION OF PHYSICIAN

This Certification of Physician form must be completed in order for disability benefits to be approved and processed. Part I is to the completed by the employee, and Part II is to be completed by the attending physician.

### PART I:  TO BE COMPLETED BY EMPLOYEE:

Name:

Address:

Home Phone Number:

Social Security
Number:                                    -1092

#### Authorization for Medical Records and Reports

I, _____ hereby authorize my physician and any other person associated with my physician, to give to the representative of Illinois State Medical Insurance Services, Inc. any and all information which may be requested regarding my physical condition and treatment rendered and if necessary, allow them, or any physician appointed by them, to examine any x-ray pictures taken of me, or records regarding my condition or treatment.

_____                    2/1/08
Signature                                    Date

### PART II: TO BE COMPLETED BY PHYSICIAN:

Patient's Name                    _Sallie Scott_

Diagnosis/Nature of Disability    _1/21/08_

Date Disability Began →    DIAGNOSIS: UNCONTROLLED HYPERTENSION;
ATYPICAL CHEST PAIN; CAD / CABG.

Is patient currently able to work?            NO

Estimated duration of disability/inability to work?    FROM 01/21/08 TO 2/19/08

Can patient return to light/restricted work?           NO

Describe restrictions and limitations    _gets dizzy due to her_
_high blood pressure_

Estimated duration of light/restricted work    _till blood pressure_
_is better_

Physician Signature _____    Date  2/13/08

Print Name    MOHAMAD MARTINI, MD.

Address    7905 CALUMET AVE.
MUNSTER, IN 46321

Phone Number    219-836-5800    Fax Number  219-836-4684

**Note to Physician:**  Written verification of continued disability must be submitted by employee every 15 days.  Also, a written release to return to work must be submitted upon employee's return to work.

**Return Completed form to:**

Human Resources
Illinois State Medical Insurance Services, Inc.
20 N. Michigan Avenue, Suite 700
Chicago, IL  60602

or Fax (312) 782-2850

**ISMIE Mutual Insurance Co., Inc.**
**Illinois State Medical Insurance Services, Inc.**
**Illinois State Medical Society**

## CERTIFICATION OF PHYSICIAN

This Certification of Physician form must be completed in order for disability benefits to be approved and processed. Part I is to the completed by the employee, and Part II is to be completed by the attending physician.

### PART I: TO BE COMPLETED BY EMPLOYEE:

Name: _Sakie Scott_

Address:

Home Phone Number:

Social Security
Number: _1092_

### Authorization for Medical Records and Reports

I, _Sakie Scott_ hereby authorize my physician and any other person associated with my physician, to give to the representative of Illinois State Medical Insurance Services, Inc. any and all information which may be requested regarding my physical condition and treatment rendered and if necessary, allow them, or any physician appointed by them, to examine any x-ray pictures taken of me, or records regarding my condition or treatment.

_Brian J. Kraus FNPC_                                    _2/13/08_
Signature                                                 Date

### PART II: TO BE COMPLETED BY PHYSICIAN:

Patient's Name                          _SAKIE SCOTT_

Diagnosis/Nature of Disability          _UNSTABLE Angina vs Angina + CAD, SP CABG. Hypertension_

Date Disability Began                   _JAN 21, 2008_
                                        _UNKNOWN_

Is patient currently able to work? _NOT AT CURRENT TIME_

Estimated duration of disability/inability to work? _Unknown at present_

Can patient return to light/restricted work? _will determine post testing_

    Describe restrictions and limitations _will determine post testing_

    Estimated duration of light/restricted work _Unknown at present_

Physician  Signature  _Brian Kraus FNP_  Date  _2/1/08_

Print Name  _Brian J. Kraus Cardiology_

Address  _7905 Calumet Ave. Munster In. 4634_

Phone Number  _219-836-5800_  Fax Number

**Note to Physician:**  Written verification of continued disability must be submitted by employee every
15 days.  Also, a written release to return to work must be submitted upon
employee's return to work.

**Return Completed form to:**

Human Resources
Illinois State Medical Insurance Services, Inc.
20 N. Michigan Avenue, Suite 700
Chicago, IL  60602

or Fax (312) 782-2850

Hutchinson
AFFIDAVIT

STATE OF ILLINOIS    )
                   ) SS
COUNTY OF C O O K   )

## AFFIDAVIT OF LAURA HUTCHINSON

I, the undersigned Laura Hutchinson having been duly sworn upon oath, depose and state as follows:

1.    I am an Assistant Vice-President in the Underwriting Division for Illinois State Medical Insurance Services, Inc. (**"ISMIS"**).

2.    My date of birth is October 30, 1949, I am Caucasian and I am a woman.

3.    I have been employed with ISMIS for 30 years. I began my employment as an Underwriting Coordinator and have also held the position of Underwriting Support Supervisor.

### I.   EMPLOYMENT OF SAKIE SCOTT WITH ISMIS

4.    I interviewed and hired Sakie Scott to fill the position of Underwriting Secretary in the Underwriting Division. Ms. Scott began her employment with ISMIS on July 1, 2004.

5.    The basic function of an Underwriting Secretary is to provide secretarial support services to the Underwriting Division. More specifically, the job duties and responsibilities include the following:

(a)    Provides support services to the Underwriting Staff which includes telephone backup, word processing, photocopying, faxing, preparing clinical proposal folders and look up of proposal physician information

(b)    Enter group profiles for the submission;

(c)    Screen and process Claim History and Certificates of Insurance requests for policyholders;

(d)    Screen new business applications, incoming correspondence and Underwriting Profile Update forms, and copy applications for mailing with policy documents;

(e)    Accept simple new business applications and mailing documents;

(f)    Distribute computer output, process request for new business kits and other informational material and Certificate of Mailing letters;

(g)    Maintain inventory of division's supplies and prepare purchase orders;

(h)    Establish and maintain broker identification information for applicable policy computer records and underwriting files;

(i)    Enter policyholder data into the computer system (e.g. rate sheets, action requests;

(j)    Provide quality serve to policyholders and staff;

(k)    Additional duties and responsibilities as required.

(the **"Underwriting Secretary Position Description"**). A true and accurate copy of the Underwriting Secretary Position Description is attached hereto and incorporated herewith as **Exhibit "A"**.

6.    I have been Ms. Scott's supervisor since she began her employment with ISMIS to the present. Included in the responsibility of providing support services to the Underwriting Staff was providing secretarial support services to me.

7.    I have never harassed Ms. Scott during her employment with ISMIS in any manner. I have never discriminated against her on the basis of her age, gender or race. I have communicated and interacted with Ms. Scott in the same manner in which I communicate and interact with all employees who report to me and all employees at ISMIS.

8.    Throughout Ms. Scott's employment with ISMIS, I have attempted to support her in her position and made recommendations to assist her in the performance of her job duties and to assist her in meeting the expectations of the position of Underwriting Secretary.

## II.    HISTORY OF SAKIE SCOTT WORK PERFORMANCE AND PERFORMANCE EVALUATIONS

9.    When Ms. Scott had been employed with ISMIS for approximately one year, I observed consistent patterns of work performance problems. More specifically, the quality of Ms. Scott's work including typing output and new business screening diminished. It became apparent that Ms. Scott was not proof reading her work. This was a serious concern to me because the documents that were typed by Ms. Scott for me included letters, reports and memoranda, that were circulated within the Division and to outside brokers. The consistent errors reflected poorly upon me, the Underwriting Department and ISMIS. Moreover, the

2

consistent pattern of poor work product quality and errors created additional work for me and took up a considerable amount of my time. Furthermore, errors made by Ms. Scott in relation to screening new business applicants, processing claims history reports, etc., negatively impacted the work of other staff.

10.　During the first year of Ms. Scott's employment I also observed a consistent pattern of tardiness. Ms. Scott did not arrive to work on time consistently.

### A.　2005 Performance Evaluation

11.　It is the regular practice for all management level employees at ISMIS to prepare annual Performance Evaluation Forms, evaluating the performance of all employees that report directly to them. The Performance Evaluation Forms are then discussed with each employee individually and filed in each employees personnel file.

12.　In the regular course of business, after the completion of Ms. Scott's first year of employment with ISMIS, I prepared a Performance Evaluation Form dated July 18, 2005 for the review period of December 2004 through June 2005 ("**2005 Performance Evaluation**") evaluating Ms. Scott's job performance. A true and accurate copy of the 2005 Performance Evaluation is attached hereto and incorporated herewith as **Exhibit "B"**.

13.　In the 2005 Performance Evaluation, with respect to the category "produces quality work within established time frames", I noted that Ms. Scott did not meet expectations. During the first year of Ms. Scott's employment I observed a constant pattern of tardiness. Ms. Scott did not arrive at work on time consistently.

14.　In the 2005 Performance Evaluation, I indicated that "Sakie needs to concentrate on improving her time management and organizational skills. Also she needs to proof her work consistently before she passes it along. To assist in improving her performance, she needs to

3

develop a daily task schedule and adhere to it. Also, she will need to meet daily with me at 9 am, 11 am, 2 pm and 4 pm to discuss her work issues."

15.    The performance issues noted in the 2005 Performance Evaluation were objective observations made about the quality of Ms. Scott's work and were not influenced in any way by a discriminatory motive. Rather than pursue disciplinary action at that time, I made a commitment to attempt to assist Ms. Scott in achieving success in her position. The performance issues were addressed directly with Ms. Scott on July 26, 2005 during a performance evaluation meeting. During that meeting, I explained the basis for my comments, I outlined the expectations of the position and made recommendations to assist Ms. Scott in meeting expectations. I did not observe that Ms. Scott took issue with any of the comments in the 2005 Performance Evaluation.

### B.    2006 Performance Evaluation

16.    The problems with Ms. Scott's work performance continued through the following year. The issues with the poor quality of Ms. Scott's work continued. Additionally, I began to observe patterns of consistent absenteeism and constant socializing throughout the work day. Ms. Scott's desk is situated in a cubicle that is located in an open area. Various other members of the Underwriting Division have desks close to Ms. Scott's in the open floor area. I received repeated complaints from certain members of the Underwriting Division about the Ms. Scott's socializing which created a distraction for others in the Division. People congregated by Ms. Scott's cubicle and engaged in fairly loud, non-work related social discussions that were distracting to other members in the Division. Ms. Scott also regularly visited the cubicles of others for the purpose of socializing. I was advised that two Underwriters, Sean Sullivan and Jon Olson had complained that Ms. Scott's behavior was very loud, distracting and interfered with

4

their ability to do their work. Eventually, Jon Olson was moved to a cubicle further away from Ms. Scott.

17. In the regular course of business, after Ms. Scott's second year of employment with ISMIS, I prepared a Performance Evaluation Form dated August 4, 2006 for the review period of July 2005 through July 2006 (**"2006 Performance Evaluation"**) evaluating Ms. Scott's job performance. A true and accurate copy of the 2006 Performance Evaluation is attached hereto and incorporated herewith as **Exhibit "C"**.

18. In the 2006 Performance Evaluation, with respect to the category "produces quality work within established time frames", I noted that Ms. Scott did not meet expectations. During the second year of Ms. Scott's employment I observed a constant pattern of socializing that distracted Ms. Scott from her work. In addition, I received various complaints from other members of the Underwriting Division regarding the Ms. Scott's constant socializing and its distracting affect on their work.

19. In the 2006 Performance Evaluation, I indicated that "[t]he quality of Sakie's work still needs more improvement. She needs to proof and double check each item she works on consistently so that it becomes part of her normal routine. Reducing social distractions would help in this regard." I further noted that "Sakie needs to avoid distractions and concentrate on the work in front of her. I suggest that she reorganize her cubicle and Microsoft In Box to help her in this area. Also, the transition to Imaging should help Sakie's performance over the next year."

20. The performance issues noted in the 2006 Performance Evaluation were objective observations made about the quality of Ms. Scott's work and were not influenced in any way by a discriminatory motive. Again, rather than pursue disciplinary action at that time, I continued to

attempt to assist Ms. Scott in achieving success in her position. I felt that if Ms. Scott reduced the social distractions, she would have sufficient time to focus on the quality of her work. The performance issues were addressed directly with Ms. Scott on August 16, 2006 in a performance evaluation meeting and I again outlined the expectations of the position and made recommendations to assist Ms. Scott in meeting those expectations.

### C.   2007 Performance Evaluation

21.     The problems with Ms. Scott's work performance continued through the following year. The quality of Ms. Scott's work did not improve as there were continually errors in her work product including the documents, letters, reports and memoranda that she typed for me. As Ms. Scott began her third year of employment, I felt that she should have acquired a sufficient knowledge of underwriting and the procedures in the Underwriting Division to identify issues and problems and suggest solutions. Ms. Scott rarely did so and never attempted to participate in resolving problems or issues.

22.     Increasingly during her employment with ISMIS, Ms. Scott reduced her communication and interaction with me. I had repeatedly indicated that Ms. Scott should meet with me at least four times during the day: 9 am, 11 am, 2 pm and 4 pm. The purpose for these daily meetings was to assign work, address issues and problems, monitor work flow, and provide an opportunity to discuss work in order to minimize errors. I had also hoped that by meeting on a regular basis throughout the day, it would provide me with a teaching opportunity to assist Ms. Scott with work and performance related issues and it would further provide a forum where Ms. Scott could give me feedback on how she was doing. Ms. Scott resisted and did not follow through on the proposed meeting schedule and often went an entire day to a number of days without meeting with me.

23.    During the course of her employment with ISMIS, I also observed that on a regular basis, Ms. Scott did not read e-mails that I sent her. Often times, hours would go by before she would read an e-mail I sent her, sometimes days and on various occasions, Ms. Scott would delete e-mails that I sent her without reading them. On one particular day, Ms. Scott deleted over twenty-one (21) e-mails sent by me without reading them. True and accurate copies of e-mail message receipts confirming that Ms. Scott had deleted e-mails from me without reading them are attached hereto and incorporated herewith as **Exhibit "D"**.

24.    It is the general business practice at ISMIS for employees of the company to communicate regarding work related issues via e-mail. As Ms. Scott failed to meet with me on a regular basis, e-mail communication was the only other way in which I could give Ms. Scott information that she needed. Because she was not reading e-mails from me for extended periods of time or in some cases deleting e-mails from me, she was missing important information.

25.    In the regular course of business, after Ms. Scott's third year of employment with ISMIS, I prepared a Performance Evaluation Form dated July 6, 2007 for the review period of July 2006 through July 2007 (**"2007 Performance Evaluation"**) evaluating Ms. Scott's job performance. A true and accurate copy of the 2006 Performance Evaluation is attached hereto and incorporated herewith as **Exhibit "E"**.

26.    In the 2007 Performance Evaluation, with respect to the category "provides daily secretarial services to the AVP, Support; assists in the quarterly commission process. Expectations include accurate typing and proofing, solid knowledge of office procedures and equipment and a professional telephone style" I noted that Ms. Scott did not meet expectations. In the 2007 Performance Evaluation during the third year of Ms. Scott's employment I observed that Ms. Scott resisted regular verbal communication with me contrary to the specific request

7

made in the 2006 Performance Evaluation. Ms. Scott's resistance to communicate with me verbally and Ms. Scott's resistance to reading e-mails from me negatively impacted her ability to provide any daily secretarial support services to me. Additionally, I continued to observe constant problems with the quality of Ms. Scott's work. Ms. Scott's work normally contained various errors and typos.

27. In the 2007 Performance Evaluation, with respect to the category "maintains ongoing communication with supervisor", I noted that Ms. Scott "does not meet expectations." In the 2007 Performance Evaluation, I indicated that "[n]umerous informal verbal communications have not become part of Sakie's daily routine, as was requested in last year's review.

28. In the 2007 Performance Evaluation, with respect to the category "produces quality work within established time frames", I noted "does not meet expectations." In the 2007 Performance Evaluation, I indicated that "[t]he quality of Sakie's work in the area of secretarial support has not improved over last year. As previously stated, she needed to consistently proof and double check each item she worked on, so that it became part of her normal routine." I also made the following comments in the 2007 Performance Evaluation, "[t]here are two items that Sakie does need to address. The first is reading and/or responding to e-mails and voice mails quickly. The other issue is to remain logged onto her computer programs until the end of each work day."

29. The performance issues noted in the 2007 Performance Evaluation were objective observations made about the quality of Ms. Scott's work and were not influenced in any way by a discriminatory motive. Again, rather than pursue disciplinary action at that time, I continued to attempt to assist Ms. Scott in achieving success in her position. In an effort to assist Ms. Scott, I

8

reduced some of Ms. Scott's responsibilities to provide her additional time to execute her work more effectively. Also, due to the resistance Ms. Scott had to communicating with me on a daily basis, I removed that from her job duties and responsibilities. In the 2007 Performance Evaluation I noted as follows, "[t]o provide Sakie with an opportunity to improve her job performance, some of her responsibilities will be adjusted. She will 1) process requests for loss histories and Certificates of Insurance on active policies; 2) order and maintain the division's office supplies; 3) learn the procedure for indexing all incoming requests for loss histories. Other changes may be implemented after training on items 2 and 3 have been completed. Lastly, she will no longer be responsible for providing secretarial support to the AVP, Support." I also indicated that, "As stated last year, Sakie possesses the abilities to improve her performance by focusing on her daily tasks. Hopefully her new work assignments will provide the opportunity to do better."

30.    On July 12, 2007, I met with Ms. Scott to present and discuss the 2007 Performance Evaluation. Also present during the meeting was Jacinth Stokes. Ms. Stokes is the Underwriting Support Manager and she participated in the meeting to gain experience conducting employee performance evaluations. Once Ms. Scott read the 2007 Performance Evaluation I observed she became visibly upset. Every time I attempted to address an issue, she interrupted and stated that "it was not right". I was not able to discuss the 2007 Performance Evaluation with Ms. Scott point by point because she became increasingly upset and hostile as the meeting proceeded. Initially, Ms. Scott refused to sign the 2007 Performance Evaluation; however, I explained that her signature did not denote her agreement with the document; it only confirmed that she received it. Ms. Scott thereafter signed the 2007 Performance Evaluation and indicated that she would write a rebuttal. To date I have not received a rebuttal from Ms. Scott.

9

31.    The performance issues noted in the 2007 Performance Evaluation were objective observations made about the quality of Ms. Scott's work and were not influenced in any way by a discriminatory motive. My intent through the process of preparing all Ms. Scott's Performance Evaluations was to objectively identify and address problems with work performance and to make recommendations to correct the problems and assist Ms. Scott in the performance of the duties and responsibilities of the Underwriting Secretary position.

### D.    Continuing Problems With Ms. Scott's Work Performance

32.    The problems with Ms. Scott's work quality and performance have continued. I had hoped that by not having to do secretarial support work for me that Ms. Scott would be able to focus more directly on her work quality. I have received one complaint from the Underwriting Support Manager, Ms. Jacinth Stokes, regarding the quality of Ms. Scott's work and her periodic failure to properly screen new applicants. A true and accurate copy of the e-mail exchange between Ms. Stokes and Ms. Scott documenting the most recent complaint I have received regarding Ms. Scott's performance is attached hereto and incorporated herewith as **Exhibit "F"**.

33.    As Ms. Scott's direct supervisor, when I am apprised of errors with Ms. Scott's work, as with any employees that report directly to me, it is my responsibility to bring the issue to Ms. Scott's attention, determine the basis for the error and make recommendations to correct the error and avoid future errors. I have continued to address errors with Ms. Scott's work directly with Ms. Scott.

34.    During the month of October 2007, I have received additional complaints from Ms. Jacinth Stokes regarding Ms. Scott's failure to properly screen new applicants. Ms. Scott opened an underwriting file for a new client, a 38-year old doctor and assigned the new client the

10

file of a former client, a 71-year old doctor who practiced in a completely different specialty. Ms. Stokes was the underwriter on the file and noticed the error and brought it to Ms. Scott's attention.

35.     New applicant screening is one of the primary functions of Ms. Scott's job and it wastes a considerable amount of underwriter time if the applications are not properly screened. On October 23, 2007, Ms. Stokes and I met with Ms. Scott to determine what happened and she admitted that she missed the relevant information.

## III.    SAKIE SCOTT'S COMPLAINT OF HARASSMENT

36.     In December 2006, I was advised by the Assistant Vice President of Human Resources, Ms. Gentile-Karas that Ms. Scott made a complaint against me specifically for harassment and/or discrimination and that Ms. Gentile-Karas was going to investigate the complaint. As part of the investigation, I was interviewed by Ms. Gentile-Karas. I was also provided with a copy of the December 14, 2006 memo from Ms. Scott and asked to respond to the allegations made therein. I drafted a memo dated December 20, 2006 responding to the allegations made by Ms. Scott. A true and accurate copy of the December 14, 2006 memo is attached hereto and incorporated herewith as **Exhibit "G"**.

37.     There was no discriminatory motive in any of my dealings with Ms. Scott. I will respond to each allegation in turn as follows:

(i)     With respect to Ms. Scott's application for the position of Underwriting Technician in September of 2005, I did not take any action to prevent Ms. Scott from obtaining this position. Ms. Scott was interviewed by four individuals. She was interviewed by myself and Sheila Coglan, the Assistant Vice President Underwriting and she was interviewed separately by Michi Smith, the Director of Underwriting and Frode Brudvik an Underwriting

Manager (the **"2005 Selection Team"**). I have no recollection of any interviews with Ms. Scott being cancelled or rescheduled, but if that occurred, I don't believe that had any adverse impact on her ability to get the position. The Underwriting Technician's position is a stressful, multi-faceted position that works for the Underwriters. When Ms. Scott completed an internal application for this position she authorized the release of her personnel file for review to be considered in the selection process. The others involved in the selection process, Ms. Coglan, Ms. Smith and Mr. Brudvik were concerned after reviewing Ms. Scott's personnel file about the quality of Ms. Scott's work and her tardiness. The 2005 Selection Team was also concerned because during the interview process Ms. Scott had no idea what the position of Underwriting Technician involved. Because the Underwriting Technician position was significantly more demanding, involved more sophisticated work, required that work be completed by strict deadlines and was generally more time consuming, the entire 2005 Selection Team, including myself felt that Ms. Scott would not be a good fit for the position. The candidate that was selected, Ms. Pam Phelps had a strong resume and was very enthusiastic and motivated about the position.

(ii)     With respect to Ms. Scott's application for the position of Claims Service Representative in February of 2006, I was not in any way involved in the interview or selection process. That position reports to an entirely different department. I was contacted by Chris Renfro in Claims after she had reviewed Ms. Scott's personnel file to discuss Ms. Scott's last review and the issues related to the quality of Ms. Scott's work. I advised Ms. Renfro that I felt that Ms. Scott could improve the quality of her work if she proofed it. I had no other discussions with Ms. Renfro about Ms. Scott and had no other involvement with the interview process for the Claims Service Representative position.

(iii)    With respect to Ms. Scott's complaint about my request that she come into my office four times per day, I have repeatedly requested that Ms. Scott meet with me several times as one of Ms. Scott's responsibilities was to provide secretarial support for me and in order to do that she was required to sort my In-Box, perform typing and various assignments for me which required explanation and discussion. I repeatedly advised Ms. Scott that regular daily meetings with me were necessary for the following reasons: (1) delegate and explain work assignments; (2) address issues and problems she may encounter with assignments; (3) allow me to monitor her work flow and quantity; (4) provide an opportunity for discussion and clarification to avoid and minimize errors; (5) provide a forum for me to teach and assist Ms. Scott so that she could improve her work. Ms. Scott continually resisted meeting with me.

(iv)    With respect to Ms. Scott's complaint that Keith Evans and Willet Welch were in her cubicle. I spoke with Mr. Evans and he advised me that he and Ms. Welch were standing just outside Ms. Scott's cubicle having a conversation and that they were not in her area. I relayed that information to Ms. Scott. She disagreed with the explanation given to me by Mr. Evans and became visibly upset that I did not take further action to punish them. Ms. Scott made no complaint that anything was taken from cubicle nor did she make a complaint of any wrongdoing or any violation of company policy, so I did not have any basis to proceed with any disciplinary action against Mr. Evans or Ms. Welch. There was no basis for me to pursue this issue further.

(v)    With respect to Ms. Scott's excessive socializing and distracting behavior, I was advised by other members of the Management Team that Ms. Scott's behavior was "totally distracting" because of the loud social activity in her cubicle, personal telephone calls and cell phone usage during business hours. Jon Olson and Sean Sullivan specifically made complaints about Ms. Scott's behavior and John Olson was relocated because Ms. Scott's conduct was so

WITnesses: Wendy Roberson, Beth mNicholas, DOUG HuNTLEY, SEBORAH CONME

13



distracting to him. As Ms. Scott's supervisor, it was my duty and responsibility to address this issue with Ms. Scott which I did. On November 21, 2006, in my office I discussed this issue with Ms. Scott and she denied that any socializing was occurring. I told her she needed to curtail any distracting socializing and we would follow up in a couple of weeks. Ms. Scott was already scheduled to take Wednesday November 22, 2006 off as it was the Wednesday before Thanksgiving. On Monday November 27, 2006, Ms. Scott's son called to say that Ms. Scott was in urgent care and was having trouble breathing. I did not hear from Ms. Scott the morning of Tuesday November 28, 2006, so I called and left a message. Ms. Scott called at 11:00 am and said she had an abnormal EKG and would not be in the following day. Ms. Scott returned to the office on Thursday November 30, 2006; however she said she was ill with the flu and left at 1:00 p.m. Additionally, the individuals who were socializing with Ms. Scott were spoken to by their supervisors.

(vi)     With respect to Ms. Scott's lunch order at the unit luncheon at Gibsons Steakhouse, I did have a discussion with her on December 11, 2006 regarding the cost of her order. Jacinth Stokes and I had a meeting with the support staff on December 8, 2006 to discuss a special project and during that meeting I made a statement about the Underwriting Division's quarterly staff lunches. I stated that the lunches were started to foster a team spirit in the division and to show appreciation for Physician First Service. I stated that the lunches are a perk that we do not want to lose and advised staff to order what they like, but to please not order multiples or more than they can eat. I reminded staff that this was a business lunch. On December 11, 2006, after the lunch at Gibson's, I was advised by Keith Evans that Ms. Scott had ordered the surf and turf which cost $96.00, by far more expensive then anyone else's order. Thereafter management including myself, Mr. Evans, Ms. Stokes, Ms. Smith and Ms. Coghlan discussed the cost of the

14

luncheon and issue about the cost of Ms. Scott's order was raised. The management group concluded that as Ms. Scott's direct supervisor, I should speak to Ms. Scott about this. I called Ms. Scott into my office on December 11, 2006 and reminded her of my statement to support staff and Ms. Scott did not believe she had done anything inappropriate. I tried to explain that she missed the spirit of what I had tried to convey. My discussion with Ms. Scott was not for some discriminatory purpose nor did it have any discriminatory motive. I addressed this issue with her only after it was brought to the attention of the management team and they determined that Ms. Scott ordered something beyond what was appropriate under the circumstances and because I am Ms. Scott's direct superior, it was incumbent upon me to address the issue with her.

## III.    SAKIE SCOTT'S APPLICATION FOR POSITION OF UNDERWRITING TECHNICIAN

38.    In June 2007, a position became open for Underwriting Technician and the position reported directly to Sheila Coghlan, an Assistant Vice President, Underwriting.

39.    The Underwriting Technician position is a fast-paced and sometimes high-pressure job that involves rating new business applications, processing quotes, policy change requests, renewals, cancellations, etc. This particular position also coordinates and provides all support work for the PREP Committee meetings that involve a significant amount of work. The PREP Committee is a committee that consists of physicians who review other physician-insureds. There are approximately 20-25 submissions that go to PREP Committee per month and the preparation and support work for the PREP Committee meetings and materials is very detailed and involved. Finally, this position also provides secretarial support to Sheila Coghlan.

40.    As a general rule, management level employees in the Underwriting Division participate in interviewing and hiring for positions in the Underwriting Division. There were four people involved in selection and interviewing process for the Underwriting Technician

15

position: Sheila Coghlan, Michi Smith, Jacinth Stokes and myself (the "2007 Selection Team"). Ms. Coghlan and I jointly interviewed Ms. Scott and Ms. Smith and Ms. Stokes jointly interviewed Ms. Scott. Ms. Coghlan made the ultimate decision regarding whom to hire as the position reported directly to her; however, after the interviews were completed, Ms. Coghlan, Ms. Smith, Ms. Stokes and I conferred to discuss our assessment of the candidates and make recommendations.

41.    There were two candidates for the position: William Blake and Sakie Scott. Mr. Blake is a University of Illinois graduate who presented and interviewed very well. He was articulate, enthusiastic and professional. It was apparent that Mr. Blake had done a fair amount of research on ISMIS and the position. He tested well and was experienced with excel and creating spreadsheets which was necessary for the position. Mr. Blake had prior experience with Midwest Bank & Trust Company where he had a significant amount of experience in customer service. His customer service background was relevant to the position of Underwriting Technician because this person would have significant interaction with the physicians on the PREP Committee.

42.    When Ms. Scott completed the internal application for the position of Underwriting Technician she authorized the release of her personnel file for review to be considered in the selection process. Ms. Coghlan, Ms. Smith and Ms. Stokes all reviewed Ms. Scott's personnel file.

43.    During my interview with Ms. Scott, she did not exhibit any enthusiasm or interest in the position. Ms. Scott made no effort to sell herself or to demonstrate why she was a good candidate for the position. Ms. Coglan asked Ms. Scott about her prior reviews to give her an opportunity to address the specific issues raised in her performance evaluations and Ms.

16

Scott's response was that she did not agree with her most recent performance evaluation and that she was in the process of writing a rebuttal and did not comment further.

44.    The position of Underwriting Technician was held for years by Greg Davis who was a very good friend of Ms. Scott's. Mr. Davis provided three to four weeks notice of his resignation, so the entire division was aware well in advance of Mr. Davis' departure from ISMIS. It was surprising to me and Ms. Coghlan that Ms. Scott had no understanding of what the position of Underwriting Technician entailed. Ms. Scott was completely unable to articulate the requirements of the position or provide any reasons why she would be a good candidate for the position. This raised further concern considering that: (i) Ms. Scott had been working in the Underwriting Division for over three years; and (ii) Ms. Scott has received staff meeting minutes in which the status of the PREP Committee and Mr. Davis' job responsibilities were set forth in detail.

45.    After both candidates were interviewed, Ms. Coghlan, Ms. Smith, Ms. Stokes and I conferred to discuss the candidates. Generally, the 2007 Selection Team questioned why Ms. Scott applied for the position of the Underwriting Technician as she did not know what the position entailed and was unable to articulate the duties and responsibilities of the job. The decision as to who to hire was ultimately made by Ms. Coghlan as this position reported directly to her; however, we engaged in discussions about the strengths and weaknesses of both candidates. The general consensus was that Mr. Blake was the stronger candidate as he had a solid educational background, a solid grade point average and strong customer service experience. Mr. Blake communicated a strong interest in the position and ISMIS and communicated a great deal of enthusiasm. The 2007 Selection Team was concerned about Ms. Scott's ability to handle the pace and the pressure of the Underwriting Technician position.

17

There were concerns about the quality of Ms. Scott's work and the communication problems noted in her 2007 Performance Evaluation. The general consensus was that giving Ms. Scott the position of Underwriting Technician would be setting her up for failure. There was never any discussion or consideration given to Ms. Scott's age, race or gender in making the decision to offer the position to Mr. Blake. I did not recommend that Ms. Scott be hired and my recommendation was based entirely on my observations of the quality of Ms. Scott's work.

## IV. SAKIE SCOTT TARDINESS, ABSENTEEISM AND UNSCHEDULED TIME OFF

46.    In my absence, Ms. Scott reports directly to Jacinth Stokes. I have observed that during days I was scheduled to be out of the office, Ms. Scott would leave early or take unscheduled time off.

47.    Both Ms. Stokes and I observed a more frequent and regular pattern of Ms. Scott arriving to work late, leaving early and taking unscheduled time off during July, August and September of 2007. This became increasingly burdensome to the other members of the support staff that were required to cover for Ms. Scott when she was not present. Additionally, there was one occasion when Ms. Scott had logged out of her programs and left the office early without seeking prior approval from anyone or advising anyone. Ms. Scott's tardiness, leaving early and unscheduled time has increased dramatically over the past four months such that she had very little personal and vacation time available but continued taking time off.

48.    In late September, I became aware that Ms. Scott had very little available time left. As of September 30, 2007, Ms. Scott had zero sick time, 0.75 personal time and 21.5 hours of vacation time remaining until January 1, 2008; however, Ms. Scott continued taking unscheduled time off. A true and accurate copy of Ms. Scott's Personnel Record up through September 30, 2007 is attached hereto and incorporated herewith as **Exhibit "H"**. I was aware

18

that ISMIS does not have a policy for unpaid leave and that if an employee takes time beyond what is allotted in sick days, personnel days and vacation days, that employee is subject to disciplinary action including termination. For that reason, I consulted with Ms. Donna Gentile-Karas regarding how I should approach this issue with Ms. Scott.

49. Ms. Gentile-Karas confirmed that the problem was severe and was in violation of the ISMIS policy. Ms. Gentile-Karas also checked Ms. Scott's personnel record to discover that as of September 30, 2007 Ms. Scott had only 0.75 hours of personal time remaining and 21.50 hours of vacation time remaining. Ms. Gentile-Karas advised me that once Ms. Scott used up all her accrued time she would have to be put on probation as is company policy; therefore, she suggested that I give Ms. Scott a written warning to remind her the few hours of time she has available and to warn her of the potential for disciplinary action in the event she used up all her time.

50. In early October 2007, I was in the midst of working with Ms. Gentile-Karas at preparing a Notice of Corrective Action Form pursuant to ISMIS Disciplinary Policy to provide Ms. Scott a written warning. A true and accurate copy of the Notice of Corrective Action Form that was prepared for Ms. Scott in early October 2007 is attached hereto and incorporated herewith as **Exhibit "I"**.

51. The October 2007 Notice of Corrective Action Form noted that Ms. Scott was going to be given a written warning and the performance or behavior in need of correction indicated as follows, "Since 7/19/07, Sakie has been absent 3 days, has arrived late on 6 days and has left work early on 3 days. Sakie has zero sick time, 0.75 personal time and 14 hours vacation time remaining until 1/1/08." The action required to correct this performance or behavior was noted as follows, "Sakie needs to end her unscheduled time off as it is burdensome to the other

19

support staff who must cover her work when she is not here. Also, Sakie needs to understand that if she uses all her earned time off, future absenteeism will require further disciplinary action."

52.    While we were in the process of finalizing the October Notice of Corrective Action form, ISMIS received notice of Ms. Scott's EEOC Complaint. Ms. Gentile-Karas and I decided not to give Ms. Scott the written warning, as we did not want the written warning to be perceived as being in retaliation for Ms. Scott's filing the EEOC Complaint.

53.    Ms. Scott continued to take unscheduled time off through October and by the end of October 2007, Ms. Scott used up all available accrued time. Ms. Scott has zero sick time, zero personal time and zero vacation time. A true and accurate copy of Ms. Scott's Personnel Record as of 10/31/07 is attached hereto and incorporated herewith as **Exhibit "J"**. From July 2007 to October 2007, Ms. Scott has arrived late to work without prior notice on the following dates: July 25, August 1, 16, 30, September 5, 20, 27, October 11, 12, and 18. From July 2007 to October 2007, Ms. Scott has made last minute requests to leave early on the following dates: July 19, 27, August 28 and October 4. There was one occasion when others have advised me that they observed Ms. Scott's computer logged off, and she was absent from her desk well before the end of the work day. From July 2007 to October 2007, Ms. Scott has take last minute time off or simply not come into work on the following dates: August 6, 20, September 4, 6, October 8 and 31. A true and accurate copy of a memorandum I prepared documenting Ms. Scott's unscheduled time off from July 2007 through October 2007 is attached hereto and incorporated herewith as **Exhibit "K"**.

54.    On November 1, 2007, Ms. Scott sent me an e-mail that acknowledged that she had no time remaining and requested unpaid time off. Ms. Scott later sent an e-mail that

acknowledged that she was unable to take unpaid leave and requested that she be permitted to start work early in order to accrue time so that she could take additional time off. I was uncertain if ISMIS had any such policy or would allow such an arrangement so I contacted Ms. Gentile-Karas in Human Resources. True and accurate copies of the e-mail exchange between Ms. Scott and I noting Ms. Scott's request is attached hereto and incorporated herewith as **Exhibit "L"**.

55.    Ms. Gentile-Karas reviewed with us ISMIS' policy with respect to sick time, personal time and vacation time and confirmed that employees cannot show a negative balance in their sick accruals, personal accruals and vacation accruals. Ms. Gentile-Karas also confirmed that employees are prohibited from using more sick hours, personal hours or vacation hours than they have in their account and directed us to the Sick and Personal Time Policy and the Vacation Policy in the ISMIS Policy and Procedure Manual. True and accurate copies of the ISMIS policies regarding sick time, personal time and vacation time are attached hereto and incorporated herewith as **Exhibit "M"**.

56.    Ms. Gentile-Karas advised that the ISMIS policy is that once an employee utilizes all remaining sick, personal and vacation time, that employee must be put on probation. Ms. Gentile-Karas directed us to the ISMIS Progressive Discipline/Probation/Termination Policy in the ISMIS Policy and Procedure Manual that cites as a basis for termination excessive tardiness and absenteeism.    A true and accurate copy of the ISMIS policy regarding progressive discipline, probation and termination are attached hereto and incorporated herewith as **Exhibit "N"**.

57.    Ms. Gentile-Karas advised me that one other employee at ISMIS utilized all her sick, personal and vacation time this year and was immediately put on probation as a result. Ms. Gentile-Karas advised that it is necessary that ISMIS treat all similarly-situation employees in a

21

consistent manner; therefore, a Notice of Corrective Action form must be prepared for Ms. Scott

and she must be put on probation.                WarNING Skipped

58.    Ms. Gentile-Karas and I thereafter prepared a Notice of Corrective Action form
which places Ms. Scott on probation due to excessive absenteeism and the fact that Ms. Scott has
utilized all of her personal, sick and vacation days until January 1, 2008. A true and accurate
copy of the Notice of Corrective Action form is attached hereto and incorporated herewith as
**Exhibit "O"**.

59.    On November 5, 2007 Ms. Stokes and I met with Ms. Scott to advise her that she
was being put on probation due to the fact that she had utilized all of her accrued time. Ms. Scott
expressed anger and refused to sign the Notice of Corrective Action Form. Ms. Scott also
demanded a meeting with Human Resources. True and accurate copies of e-mail
communications between Ms. Stokes, Ms. Gentile-Karas and I regarding Ms. Scott's
probationary meeting are attached hereto as **Exhibit "P"**.

60.    On November 6, 2007, Ms. Stokes, Ms. Scott and I met with Ms. Gentile-Karas.
Ms. Gentile-Karas explained the following: (i) at it was ISMIS policy that an employee is not
permitted to take unpaid leave; (ii) employees are not permitted to have a negative balance in
their sick accruals, personal accruals and vacation accruals; (iii) employees are prohibited from
using more sick hours, personal hours or vacation hours than they have in their account; and (iv)
it is ISMIS policy that once an employee utilizes all remaining sick, personal and vacation time,
that employee must be put on probation as in the event the that employee takes any more time,
that employee will be subject to discipline include termination.

61.    The Notice of Corrective Action form placing Ms. Scott on probation is a direct
result of Ms. Scott's use of all her accrued time and is consistent with ISMIS's policy and the

22

manner in which similarly situated employees have been treated. There was no discriminatory or retaliatory motive to the placing Ms. Scott on probation. In fact if we did not do so, it would be unfair to the other ISMIS employee that is currently on probation for the exact same conduct.

62.     The decision to take disciplinary action with Ms. Scott was in no way retaliation for Ms. Scott's EEOC Charge of Discrimination and was not motivated by discriminatory intent. First, Ms. Scott's unscheduled time off and tardiness is a violation of ISMIS policy and she has no accrued time off left. Second, ISMIS must treat all similarly situation employees in the same manner and apply its policies evenly to all employees.

63.     I have personal knowledge of the facts set forth in this affidavit, and if called as a witness in this case, could and would competently testify thereto.

FURTHER AFFIANT SAYETH NAUGHT.

_Laura C. Hutchinson_
Laura Hutchinson

Subscribed and Sworn Before Me On
This _12_ day of November, 2007

_Carol L. Sebastian_
Notary Public

**"OFFICIAL SEAL"**
Carol L. Sebastian
Notary Public, State of Illinois
My Commission Expires Jan. 27, 2008

24

BOBHLAN
AFFIDAVIT

STATE OF ILLINOIS       )
                            ) SS
COUNTY OF C O O K.    )

## AFFIDAVIT OF SHEILA COGHLAN

I, the undersigned SheilaB.Coghlan having been duly sworn upon oath, depose and state as follows:

1.     I am the Assistant Vice-President, Underwriting - Technical for Illinois State Medical Insurance Services, Inc. (**"ISMIS"**).

2.     My date of birth is January 19, 1961. I am Caucasian and I am a woman.

3.     I have been employed with ISMIS since October 6, 1986 and have held prior positions with ISMIS as Underwriting Supervisor and Underwriter.

4.     Ms. Sakie Scott does not report directly to me.

5.     I have been involved in interviewing and evaluating Ms. Scott for the position of Underwriting Technician on two separate occasions.

## I.    2005 UNDERWRITING TECHNICIAN POSITION

6.     In September 2005, the Underwriting Division had an opening for an Underwriting Technician position. This particular position worked with and supported the Underwriters and reported directly to an Underwriting Manager.

7.     It is customary in the Underwriting Division that all management level positions usually Assistant Vice Presidents and Directors/ Managers interview candidates for the position of Underwriter or Underwriting Technician. There were four individuals involved in the selection process: me, Laura Hutchinson, Michi Smith and Frode Brudvik (the **"2005 Selection Team"**).

8.      For the Underwriting Technician position in 2005, we received two applications, one from Ms. Sakie Scott and one from Ms. Pamela Phelps.

9.      Ms. Scott completed an Internal Application For Posted Position in which she signed and authorized the review of her personnel file. A true and accurate copy of Ms. Scott's application is attached hereto and incorporated herewith as **Exhibit "A"**.

10.      During the selection process, the Selection Team reviewed the applicant resumes, test results and conducted interviews. Ms. Scott was an internal candidate so the 2005 Selection Team also reviewed Ms. Scott's personnel file. There were sections of Ms. Scott's Performance Evaluation where she did not meet expectations and raised some concern for me and for others on the 2005 Selection Team. More specifically, there were issues with the quality of Ms. Scott's work product, punctuality, time management and organizational skills and communication. Ms. Scott's Performance Evaluation was problematic because the Underwriting Technician essentially does all the legwork for the Underwriter and is under strict deadlines. Strong time management skills, organizational skills and effective communication are essential to that position.

11.      During the interview process, I interviewed Ms. Scott together with Laura Hutchinson and Michi Smith interviewed Ms. Scott together with Frode Brudvik. During my interview with Ms. Scott, Ms. Scott was unable to answer basic questions regarding the duties and responsibilities of the position of Underwriting Technician. This raised additional concerns for me as it demonstrated that she did not read the position description nor did she take any time to research the position or ask any questions. Additionally, the Underwriting Technician position is a very intense and demanding position and I was concerned that she may not have been prepared for the demands of the position.

2

12.    Ms. Phelps interviewed very well; she was articulate, professional and very enthusiastic about the position.

13.    When Ms. Hutchinson, Ms. Smith and Mr. Brudvik and I evaluated and discussed the two candidates we were all in agreement that we could not offer the position of Underwriting Technician to Ms. Scott because she was not achieving in her current position and the Underwriting Technician position is significantly more demanding then the Underwriting Secretary position. On the other hand, Ms. Phelps was qualified for the position, interviewed very well and there were no concerns raised about her during the interview process. The 2005 Selection Team was all in agreement that the position should be offered to Ms. Phelps.

14.    During the selection process for the Underwriting Technician position in 2005 there was absolutely no discussion about the age, gender or race of the candidates and those factors did not play any part in the selection of the candidate.

## II.    2007 UNDERWRITING TECHNICIAN POSITION

15.    In June 2007, the Underwriting Technician reporting directly to me, Mr. Greg Davis gave his notice that he was resigning; therefore, the Underwriting Division had an opening for an Underwriting Technician position. This particular position worked with and reported directly to me.

16.    The basic function of the Underwriting Technician position was to provide technical assistance to the Underwriter with appropriate approval to insure that the day-to-day activities are handled in a timely manner. The specific responsibilities of this position were very involved because there are added job duties. The specific responsibilities of the position are as follows:

(a)    General technical support including answering the Underwriting Hunt Line;
(b)    Rates all new business applications and issues required documentation.

3

(c) Processes individual quotes and non-premium bearing changes;

(d) Process all mid-term policy change requests by the Underwriters and Broker of Record Letters and issuing proper policy documentation;

(e) Processes individual renewals, Moonlighting Resident and Off-Cycle no change renewals and pre-renewal projects as needed;

(f) Reviews part-time rating applications and supplemental information for the evaluation of physician's initial request for or maintaining part-time status. Duties also include providing an initial recommendation for part-time status;

(g) Coordinates the renewal process on assigned clinic and corporation accounts by screening renewal applications, producing and screening renewal packets and other evaluation tools used by the underwriter for evaluating the renewal terms of existing business. After renewing policies, reviews renewal documents for errors;

(h) Processes Voluntary Cancellations and tail requests;

(i) Types agendas, handle mail outs, coordinate meetings, and distribute reports for PREP and Committee on Underwriting;

(j) Screen incoming PREP materials, maintain spreadsheets, statistical reports, and coordinate monthly board report;

(k) Provide secretarial support to the Vice President of Underwriting when required;

(l) Additional responsibilities as required.

("**Underwriting Technician Position Description**"). A true and accurate copy of the

Underwriting Technician Position Description is attached hereto and incorporated herewith as

**Exhibit "B"**.

17.    The particular position supports the PREP Committee that is a committee of

physicians that meets on a monthly basis to review physician-insured files. The PREP

Committee is very demanding and the support work for the PREP Committee is very involved

and time consuming. Additionally, the members of the PREP Committee are all physicians so

professionalism, strong communication skills and attention to detail are very important for this

position.

18.    Mr. Davis had given me one month's notice that he was leaving the company and

was scheduled to leave ISMIS on June 29, 2007. The start date for this position was July 1,

2007.

4

19.    I had originally only received one application and resume for the position, that of an outside applicant, Mr. William Blake. A true and accurate copy of Mr. Blake's resume is attached hereto and incorporated herewith as **Exhibit "C"**.

20.    Mr. Blake was a graduate of the University of Illinois. Mr. Blake had work experience as a legal assistant and as a universal banker for Midwest Bank & Trust Company.

*3 mos.*

21.    It is customary in the Underwriting Division that all management level positions usually Assistant Vice Presidents and Directors interview candidates for the position of Underwriter or Underwriting Technician. There were four individuals involved in the selection process: me, Laura Hutchinson, Michi Smith and Jacinth Stokes (the **"2007 Selection Team"**).

22.    Mr. Blake interviewed with Ms. Hutchinson and me. He then interviewed separately with Ms. Smith and Ms. Stokes.

23.    During his interview with Ms. Hutchinson and me, Mr. Blake presented and interviewed very well as he was articulate, professional and very interested in the Underwriting Technician position. Although Mr. Blake was an outside applicant, it was apparent during the interview that he had done a considerable amount of research about ISMIS and the position which demonstrated to me that he was eager, prepared and took initiative.

24.    On June 29, 2007, just prior to the expiration of the deadline for applications, Ms. Scott submitted an Internal Application For Posted Position for the Underwriting Technician. With the Internal Application For Posted Position, Ms. Scott signed and authorized the review of her personnel file. A true and accurate copy of Ms. Scott's application is attached hereto and incorporated herewith as **Exhibit "D"**.

25.    Prior to interviewing Ms. Scott, I reviewed her resume and her personnel file.

26.    Ms. Scott's personnel file raised some concerns for me. I had recalled when she had previously interviewed for an Underwriting Technician position that there were negative points and a few "does not meet expectations" noted in certain categories in her Performance Evaluations. During the two years since the prior interview her Performance Evaluations showed no improvement. Ms. Scott's most recent Performance Evaluations contained "does not meet expectations" noted in three (3) separate categories. The quality of Ms. Scott's work showed no improvement and her Performance Evaluations noted problems with providing secretarial support and communication problems.

27.    Ms. Scott interviewed with Ms. Hutchinson and me. She then interviewed separately with Ms. Smith and Ms. Stokes.

28.    During the interview with Ms. Hutchinson and me, I asked Ms. Scott to go over her work assignment in detail and she advised me that she takes the application for new business, reviews the application and enters the data into the computer. Ms. Scott's answers indicated to me that the support work she is currently doing is fairly basic. I attempted to determine from Ms. Scott if she exercised any independent decision making; however, it was apparent from her responses that she was unable to figure out fairly basic, routine issues. For example, Ms. Scott stated that if a doctor applied for another policy she would question an Underwriter to determine whether there was a need for a new policy number Considering Ms. Scott had been screening and entering data for new business applications for three years, I would have expected her to have some understanding of how the underwriter determines whether there is a need for a second policy number because there are limited situations that require a second number. While she would still need an underwriters approval in this situation, she should be able to present the situation to the underwriter for approval rather than continuing to have no understanding of the

6

process and simply making an inquiry to an Underwriter. Her responses on this issue did not reflect the level of independent decision making required of the Tech position, and reflected a lack of progression in her current position.

29.    During the interview, I asked Ms. Scott to address her Performance Evaluations and to tell us why she should be promoted to Underwriting Technician. Ms. Scott's response was that she did not agree with her most recent Performance Evaluation and was in the process of writing a rebuttal.

30.    During the interview, I asked Ms. Scott what other functions other than new business screening she performs. Ms. Scott answered that she handled commissions. She stated that she prepares commission letters, gets the checks and mails them out. I found out later from Ms. Hutchinson that Ms. Hutchinson prepares the letters and Ms. Scott essentially puts the letters in the envelopes and mails them out.

31.    During the interview, I asked Ms. Scott what she has learned about the position and the responsibilities and duties of the Underwriting Technician. Ms. Scott could not answer the question. She stated that she did not have the time to investigate the position. This response was most concerning to me. I could not understand why Ms. Scott applied for a position she knew nothing about, nor did she make any effort to discover anything about the position in preparation for the interview. It was surprising to me that Ms. Scott did not know what the position of Underwriting Technician involved when she and Greg Davis, the person who held the position previously, were very good friends and ate lunch together regularly. It was equally surprising that Ms. Scott knew nothing of the position when she had been working in the Underwriting Division for over three years and Mr. Davis' job function in relation to the PREP Committee was very apparent.

7

32.     Given Ms. Scott's Performance Evaluations and her responses to my questions, I did not believe Ms. Scott was the most qualified person for this position; in fact, I did not get the impression from Ms. Scott that she really wanted the position.

33.     Although the ultimate decision as to who would be hired for the Underwriting Technician position would be strongly based on my opionion, , I did not make a recommendation to the VP of Underwriting until speaking with the 2007 Selection Team to obtain their feedback. The general consensus from the entire 2007 Selection Team was that Ms. Scott should not be hired for the position of Underwriting Technician. Other members of the 2007 Selection Team voiced the following concerns to me: (i) she was completely unaware of the job duties and responsibilities; (ii) she misrepresented her involvement in relation to certain projects for example the commission letters; (ii) she was unable to demonstrate or articulate any reason for a promotion; (iii) her current job duties were very basic compared to the requirements of the Underwriting Technician responsibilities and she was not performing well in her current position; (iv) she made no effort to find out about the position or do any research into the position requirements; and (v) she expressed no enthusiasm for or interest in the position.

34.     The general consensus among the 2007 Selection Team was that if we hired Ms. Scott for the position of Underwriting Technician we would be setting her up for failure and that would not be fair to her or to the Underwriting Division.

35.     Ms. Scott's age, race or gender was not discussed during the selection process and did not in any way factor into the selection process. There was no discriminatory motive behind my selection of Mr. Blake, nor did I feel as though anyone else was acting with any discriminatory motive. Everyone on the 2007 Selection Team gave objective, sound reasons for

8

recommending Mr. Blake for the position of Underwriting Technician and not recommending Ms. Scott.

      36.     I have personal knowledge of the facts set forth in this affidavit, and if called as a witness in this matter, could and would competently testify thereto.

      FURTHER AFFIANT SAYETH NAUGHT.


                              \_\_\_\_\_ \_\_\_\_ \_\_\_\_\_. \_\_\_\_ \_\_\_\_. \_\_

                                Sheila B. Coghlan


Subscribed and Sworn Before Me On
This \_\_ \_\_ day of November, 2007


\_\_ \_\_\_\_\_ \_\_\_\_ \_\_\_\_ \_\_\_\_ \_\_\_. .
Notary Public

9

# BEERMANN
# SWERDLOVE

## LLP

### ATTORNEYS

| | | | |
|---|---|---|---|
| Lawrence R. Barezky | Michael C. Craven | Herbert A. Kessel | Catherine M. Stone |
| Alvin R. Becker | Howard C. Emmerman | Howard A. London | Jacqueline J. Torshen |
| Miles N. Beermann | Thomas T. Field | Katarinna McBride | Shana L. Vitek |
| Erin J. Bognar | Lyle S. Geniu | Maribeth Olenski | William Woloshin |
| Julie P. Brett | Katherine A. Grosh | Stefania Piulis | William A. Zolla II |
| Deane B. Brown | Kathryn L. Homburger | James M. Quigley | OF COUNSEL |
| Bradley T. Cheskes | Pamela J. Hutul | Stephanie G. Sadow | Nathan B. Swerdlove |

November 9, 2007

U.S. Equal Employment
 Opportunity Comission
500 West Madison Street
Suite 2800
Chicago, Illinois 60661

RECEIVED EEOC
NOV 13 2007
CHICAGO DISTRICT OFC

Attention:   Sylvia Bustos
             Investigator Support Assistant

Re:   EEOC Charge No. 440-2007-08184
      Complainant:  Sakie Scott
      Respondent:   Illinois State Medical Insurance Services

Dear Ms. Bustos:

The following is the Response of Illinois State Medical Insurance Services (**"ISMIS"**) to the Complainant, Sakie Scott's charge of employment discrimination on the basis of race and sex, in violation of Title VII of the Civil Rights Act of 1964, as amended and on the basis of age in violation of the Age Discrimination Act of 1967, as amended (the **"Charge"**).

## I.   POSITION OF ILLINOIS STATE MEDICAL INSURANCE SERVICES

ISMIS refutes the Charge made by Ms. Scott. Ms. Scott has not been subjected to any harassment by her supervisor nor has she been discriminated against on any basis. ISMIS has a Non Discrimination Policy that prohibits race, color, religion, sex, sexual orientation, age, national origin, and physical or mental disability unrelated to the individual's qualifications for the job from being used as the basis for any personnel decisions. (See ISMIS Non Discrimination Statement, Exh. 1, Exh. A). ISMIS also has a General/Sexual Harassment policy that further prohibits "hostile remarks or actions regarding employee race, color, religion, sex, age, national origin, or mental or physical disability." (See ISMIS General/Sexual Harassment Policy, Exh. 1, Exh. G). Pursuant to the General/Sexual Harassment Policy, ISMIS' Assistant Vice President for Human Resources, Donna Gentile-Karas conducted an investigation into the charge of discrimination made by Ms. Scott and determined that there was no evidence that Ms. Scott had been subjected to harassment by her supervisor. (Exh. 1, ¶¶ 13-18). Furthermore, there was no evidence to support that Ms. Scott was discriminated against in her application for the position of Underwriting Technician. (Exh. 2, Exh. 3, Exh. 4, Exh. 5). Ms. Gentile-Karas'

161 NORTH CLARK STREET • SUITE 2600 • CHICAGO, ILLINOIS 60601 • TELEPHONE (312)621-9700 • FACSIMILE (312)621-0909 • WWW.BEERMANNLAW.COM

1700 GREEN BAY ROAD • SUITE 200 • HIGHLAND PARK, ILLINOIS 60035 • TELEPHONE (847)681-9600 (BY APPOINTMENT ONLY)

# BEERMANN
# SWERDLOVE

LLP

ATTORNEYS

U.S. Equal Employment
Opportunity Comission
November 9, 2007
Page 2

investigation revealed that Ms. Scott has not been treated differently than other employees at ISMIS due to her age, gender or race. (Exh. 1 ¶¶ 13-18).

**II.    BACKGROUND FACTS**

Ms. Scott was hired by Laura Hutchinson, an Assistant Vice President of Underwriting to fill the position of Underwriting Secretary in July 1, 2004 and to provide secretarial support for Ms. Hutchinson. Ms. Hutchinson has been Ms. Scott's direct supervisor since she began at ISMIS. (Exh. 1, Exh. B, Exh. 2 ¶4). The job responsibilities of Underwriting Secretary include the following:

(a)    Provide support services to the Underwriting Staff which includes telephone backup, word processing, photocopying, faxing, preparing clinical proposal folders and look up of proposal physician information

(b)    Enter group profiles for the submission;

(c)    Screen and process Claim History and Certificates of Insurance requests for policyholders;

(d)    Screen new business applications, incoming correspondence and Underwriting Profile Update forms, and copy applications for mailing with policy documents;

(e)    Accept simple new business applications and mailing documents;

(f)    Distribute computer output, process request for new business kits and other informational material and Certificate of Mailing letters;

(g)    Maintain inventory of division's supplies and prepare purchase orders;

(h)    Establish and maintain broker identification information for applicable policy computer records and underwriting files;

(i)    Enter policyholder data into the computer system (e.g. rate sheets, action requests;

(j)    Provide quality serve to policyholders and staff;

(k)    Additional duties and responsibilities as required.

(the "Underwriting Secretary Position Description"). (Exh. 1, Exh. C, and Exh. 2, Exh. A).

**A.    HISTORY OF SAKIE SCOTT PERFORMANCE AND INTERACTION WITH SUPERVISOR**

There have been problems with the quality of Ms. Scott's work through-out her employment with ISMIS and on every performance review Ms. Scott did not meet expectations with respect to certain categories of her work as outlined in her Performance Evaluations in 2005, 2006 and 2007. (Exh. 1, Exh. D and Exh. 2, Exhs. B, C, E). There have also been issues with tardiness, excessive absenteeism, and various other issues set forth in Ms. Scott's Performance Evaluations in 2005, 2006, and 2007. *Id.* The ISMIS Progressive Disciplinary

**BEERMANN**
**SWERDLOVE**

LLP

ATTORNEYS

U.S. Equal Employment
Opportunity Comission
November 9, 2007
Page 3

Policy provides that "any conduct in its view that results in unsatisfactory work performance or interferes with or adversely affects employment is grounds for disciplinary action." (Exh. 1, Exh. E). The ISMIS Progressive Disciplinary Policy also provides that unsatisfactory work performance, excessive tardiness, and absenteeism are grounds for termination. *Id.*

Rather than pursue disciplinary measures pursuant to the ISMIS Progressive Disciplinary Policy, Ms. Hutchinson made recommendations and adjustments to Ms. Scott's duties to assist Ms. Scott in improving her work performance. (Exh. 1, Exh. D). For example, Ms. Hutchinson recommended that Ms. Scott develop a daily task schedule and adhere to it including meeting with Ms. Hutchinson daily at 9 am, 11 am, 2 pm and 4 pm to address work issues. Ms. Hutchinson recommended Ms. Scott reorganize her cubicle and Microsoft In Box to assist Ms. Scott in concentrating on her work. Furthermore, the Underwriting Division made a transition to imaging that should have further streamlined Ms. Scott's work. Finally, when prior recommendations and adjustments were unsuccessful, Ms. Hutchinson adjusted Ms. Scott's responsibilities so that Ms. Scott no longer had to provide secretarial support for Ms. Hutchinson, which reduced Ms. Scott's workload. (Exh. 2 ¶¶9-36).

On December 14, 2006, Ms. Scott made an internal complaint to Human Resources at ISMIS alleging that she was being harassed by her supervisor Ms. Hutchinson. (Exh. 1, Exh. F). At that time, the Assistant Vice President of ISMIS, Ms. Gentile-Karas conducted a thorough investigation of all allegations made by Ms. Scott. (Exh. 1 ¶¶13-18). As part of Ms. Gentile-Karas' investigation, she interviewed various individuals in the Underwriting Division, the Claims Division and all individuals identified in Ms. Scott's complaint. Ms. Gentile-Karas discovered no evidence to support any finding of harassment of discrimination against Ms. Scott by Ms. Hutchinson. (Exh. 1 ¶18).

Since Ms. Scott's internal complaint of harassment, Ms. Jacinth Stokes, the Underwriting Support Manager has participated in Ms. Scott's Performance Evaluation and any and all discussions with Ms. Scott regarding problems with the quality of her work. (Exh. 3). Additionally, Ms. Gentile-Karas has been consulted with and overseen any issues relating to Ms. Scott's employment. (Exh. 1).

**B.    MS. SCOTT APPLICATIONS FOR OTHER POSITIONS AT ISMIS**

Ms. Scott alleged in her complaint against Ms. Hutchinson that Ms. Hutchinson "blocked" her "transfer" to other positions at ISMIS. While employed with ISMIS, Ms. Scott has applied internally for three (3) positions: (1) Underwriting Technician on September 20, 2005; (2) Claims Service Representative on February 22, 2006; and (3) Underwriting Technician on June 29, 2007. All three positions would constitute promotions from Ms. Scott's current position. With respect to the two Underwriting Technician positions, Ms. Hutchinson was on a

# BEERMANN
# SWERDLOVE

LLP

ATTORNEYS

U.S. Equal Employment
Opportunity Comission
November 9, 2007
Page 4

selection team with three other individuals and with respect to the Claims Service Representative position, Ms. Hutchinson was not in any way part of the selection or hiring process. (Exh. 2, Exh. 3, Exh. 4, Exh. 5).

Ms. Scott was not selected for any of the positions for which she applied because all members of the selection teams in all three instances did not feel that Ms. Scott was the best-qualified person for those positions. In all three instances, the members of the selection teams were concerned about Ms. Scott's consistent performance problems as set forth in her Performance Evaluations. Moreover, with respect to positions for Underwriting Technician, during the interviews for both positions, Ms. Scott did not understand nor could she articulate the duties and responsibilities of the position. The members of the three different selection teams confirmed that age, gender nor race were discussed during the selection or interview process and did not factor into the selection process. With respect to the most recent application submitted by Ms. Scott for the position of Underwriting Technician, the final recommendation was made by Sheila Coghlan, another Assistant Vice President in Underwriting. (Exh. 2, Exh. 3, Exh. 4, Exh. 5).

There was no factual basis to support Ms. Scott's allegations that any of the decisions not to promote Ms. Scott were the result of Ms. Hutchinson "blocking" those promotions, nor was there any factual basis to support that age, gender or race factored into the selection process.

**II.     NOTICE OF CORRECTIVE ACTION AND PROBATION FOR USE OF ALL ACCRUED TIME**

Both Ms. Stokes and Ms. Hutchinson a observed more frequent and regular pattern of Ms. Scott arriving to work late, leaving early and taking unscheduled time off during July, August and September of 2007. Ms. Scott's tardiness, leaving early and unscheduled time off became increasingly burdensome to the other members of the support staff that were required to cover for Ms. Scott when she was not present. As a result, as of September 30, 2007, Ms. Scott had zero sick time, 0.75 personal time and 21.5 hours of vacation time remaining until January 1, 2008; however, Ms. Scott continued taking unscheduled time off. (Exh. 1 ¶¶19-36, Exh. 2 ¶¶47-61, Exh. 3 ¶¶28-34).

ISMIS does not have a policy for unpaid leave and if an employee takes time beyond what is allotted in sick days, personnel days and vacation days, that employee is subject to disciplinary action including termination. (Exh. 1, Exh. Q). Ms. Hutchinson consulted with Ms. Gentile-Karas regarding how to approach this issue with Ms. Scott. (Exh. 1 ¶¶19-36, Exh. 2 ¶¶47-61). Ms. Gentile-Karas confirmed that the problem was severe and was in violation of the ISMIS policy and further advised Ms. Hutchinson that once an employee uses up all his/her accrued time s/he would have to be put on probation pursuant to company policy. Ms. Gentile-Karas suggested that Ms. Hutchinson give Ms. Scott a written warning to remind her the few

# BEERMANN
# SWERDLOVE

LLP

————————

ATTORNEYS

hours of time she has available and to warn her of the potential for disciplinary action in the event she used up all her time.

In early October 2007, while Ms. Hutchinson and Ms. Gentile-Karas were finalizing a Notice of Corrective Action Form pursuant to ISMIS Disciplinary Policy to provide Ms. Scott a written warning, ISMIS received notice of Ms. Scott's EEOC Complaint. The Notice of Corrective Action and written warning were not provided to Ms. Scott at that time, as there were concerns that it may be perceived as retaliatory. Ms. Scott continued to take unscheduled time off through October and by the end of October 2007, Ms. Scott used up all available accrued time. Ms. Scott has zero sick time, zero personal time and zero vacation time. From July 2007 to October 2007, Ms. Scott has arrived late to work without prior notice on the following dates: July 25, August 1, 6, 30, September 5, 19, 27, October 11, 12, and 18. From July 2007 to October 2007, Ms. Scott has made last minute requests to leave early on the following dates: July 19, 27, August 28 and October 4. From July 2007 to October 2007, Ms. Scott has taken last minute time off or simply not come into work on the following dates: August 6, 20, September 4, 6, October 8. (Exh. 1 ¶¶19-36, Exh. 2 ¶¶47-61, Exh. 3 ¶¶28-34).

On November 2, 2007, Ms. Scott sent Ms. Hutchinson an e-mail that acknowledged that she had no time remaining and requested unpaid time off. Ms. Scott later sent an e-mail that acknowledged that she was unable to take unpaid leave and requested that she be permitted to start work early in order to accrue time so that she could take additional time off. Ms. Hutchinson consulted with Ms. Gentile-Karas regarding whether ISMIS had such a policy. The ISMIS sick time, personal time and vacation time policies prohibit employees from using more sick hours, personal hours or vacation hours than they have in their account. Furthermore, ISMIS has placed employees who have utilized all accrued time on probation. Presently, one ISMIS employee is on probation through the end of 2007 for having utilized all her sick, personal and vacation time this year. (Exh. 1 ¶¶19-36, Exh. 2 ¶¶47-61, Exh. 3 ¶¶28-34).

In the interest of treating all similarly situation employees equally, Ms. Hutchinson was instructed to prepare a Notice of Corrective Action placing Ms. Scott on probation for excessive absenteeism and utilizing all her accrued time. The Notice of Corrective Action was reviewed and approved by Ms. Gentile-Karas to confirm that it was consistent with the Notice of Corrective Action given to the ISMIS employee currently on probation for the same policy violation. The Notice of Corrective Action was also reviewed and approved by the Division Vice President All Alphin.. (Exh. 1 ¶¶19-36, Exh. 2 ¶¶47-61, Exh. 3 ¶¶28-34).

On November 5, 2007 Ms. Hutchinson and Ms. Stokes met with Ms. Scott to advise her that she was being put on probation due to the fact that she had utilized all of her accrued time. Ms. Scott demanded a meeting with Human Resources. On November 6, 2007, Ms. Stokes, Ms. Scott and Ms. Hutchinson met with Ms. Gentile-Karas and Ms. Gentile-Karas explained the

# BEERMANN
# SWERDLOVE

LLP

ATTORNEYS

U.S. Equal Employment
Opportunity Comission
November 9, 2007
Page 6

following: (i) that it was ISMIS policy that an employee is not permitted to take unpaid leave; (ii) employees are not permitted to have a negative balance in their sick accruals, personal accruals and vacation accruals; (iii) employees are prohibited from using more sick hours, personal hours or vacation hours than they have in their account; and (iv) it is ISMIS policy that once an employee utilizes all remaining sick, personal and vacation time, that employee must be put on probation because in the event the that employee takes any additional time off, that employee will be subject to discipline include termination. (Exh. 1 ¶¶19-36, Exh. 2 ¶¶47-61, Exh. 3 ¶¶28-34).

The Notice of Corrective Action form placing Ms. Scott on probation is a direct result of Ms. Scott's use of all her accrued time and is consistent with ISMIS's policy and the manner in which similarly situated employees have been treated. There was no discriminatory or retaliatory motive for placing Ms. Scott on probation. If ISMIS did not do so, it would be unfair and potentially discriminatory to the other ISMIS employee that is currently on probation for the exact same conduct.

### III.  EVALUATION OF DISCRIMINATION CLAIMS

ISMIS is committed to its policy of providing and maintaining an environment free of harassment and discrimination. ISMIS prohibits the use of race, color, religion, sex, sexual orientation, age, national origin, and physical or mental disability unrelated to the individual's qualifications for the job to be used as a basis for personnel decisions. ISMIS enforces these policies by conducting seminars and training programs for its management level personnel and through Human Resource supervision. When a complaint of harassment or discrimination is made as it was in this case, the complaint is taken very seriously and an immediate and thorough investigation is performed.

In this case, Ms. Gentile-Karas performed a very thorough investigation of Ms. Scott's claim of harassment against Ms. Hutchinson and was unable to find any evidence to support Ms. Scott's claim. There were no facts to support that Ms. Scott was being harassed or treated differently because of her age, gender or race. There were issues with the quality of Ms. Scott's work that Ms. Hutchinson has been attempting to assist Ms. Scott in improving over the past three years and Ms. Gentile-Karas confirmed from others in the Underwriting Division that the issues with the quality of Ms. Scott's work were legitimate. Ms. Gentile-Karas also confirmed through her investigation that Ms. Hutchinson did not take any action to "block" Ms. Scott's advancement in the company. The decisions made not to promote Ms. Scott to Underwriting Technician and Claims Service Representative were made by selection teams pursuant to objective criteria.

# BEERMANN
# SWERDLOVE

LLP

ATTORNEYS

U.S. Equal Employment
Opportunity Comission
November 9, 2007
Page 7

Since Ms. Scott's internal complaint of harassment was made, all personnel evaluations and decisions regarding Ms. Scott have been made in conjunction with or witnessed by Ms. Stokes, another management level employee in Underwriting and made in consultation with Ms. Gentile-Karas. The reason for these measures was to verify that ISMIS policies are being followed in a fair and even handed manner and to confirm that Ms. Hutchinson was not acting with any retaliatory motive.

## IV.    EXHIBITS

Attached to ISMIS' Response as support for its position and incorporated herewith are the following affidavits and exhibits:

**Exhibit 1**    **Affidavit of Donna Gentile-Karas,**
*Assistant Vice President Human Resources*
- **Exh. A**    ISMIS Non Discrimination Statement
- **Exh. B**    June 8, 2004 Welcome Letter to Sakie Scott
- **Exh. C**    Underwriting Secretary Position Description
- **Exh. D**    Sakie Scott Performance Evaluations
- **Exh. E**    ISMIS Progressive Discipline/Probation/Termination Policy
- **Exh. F**    Sakie Scott December 14, 2006 Memo
- **Exh. G**    ISMIS General/Sexual Harassment Policy
- **Exh. H**    Laura Hutchinson December 20, 2006 Memo
- **Exh. I**    Internal Application For Underwriting Technician (9/20/05)
- **Exh. J**    Internal Application For Claims Service Representative
- **Exh. K**    1/11/07 e-mail from Donna Gentile-Karas to Sakie Scott
- **Exh. L**    Sakie Scott Personnel Record as of 9/30/07
- **Exh. M**    Notice of Corrective Action for Sakie Scott - written warning
- **Exh. N**    Sakie Scott Personnel Record as of 10/31/07
- **Exh. O**    Memo re Sakie Scott tardiness and time off with back-up e-mails
- **Exh. P**    11/1/07 e-mails between Sakie Scott and Laura Hutchinson regarding unpaid leave
- **Exh. Q**    ISMIS Sick and Personal Time Policy and Vacation Time Policy
- **Exh. R**    Notice of Corrective Action dated 11/5/07

# BEERMANN
# SWERDLOVE

LLP

ATTORNEYS

U.S. Equal Employment
Opportunity Comission
November 9, 2007
Page 8

**Exhibit 2**  **Affidavit of Laura Hutchinson**
*Assistant Vice President Underwriting*
- **Exh. A**  Position Description for Underwriting Secretary
- **Exh. B**  Sakie Scott Performance Evaluation (7/18/05)
- **Exh. C**  Sakie Scott Performance Evaluation (8/4/06)
- **Exh. D**  E-mail message deletion confirmations
- **Exh. E**  Sakie Scott Performance Evaluation (7/6/07)
- **Exh. F**  10/23/07 e-mail from Jacinth Stokes regarding Sakie Scott errors
- **Exh. G**  Sakie Scott December 20, 2006 Memo
- **Exh. H**  Sakie Scott Personnel Record as of 9/30/07
- **Exh. I**  Notice of Corrective Action for written warning
- **Exh. J**  Sakie Scott Personnel Record as of 10/31/07
- **Exh. K**  Memo re Sakie Scott tardiness and time off with back-up e-mails
- **Exh. L**  11/1/07 e-mails between Sakie Scott and Laura Hutchinson regarding unpaid leave
- **Exh. M**  ISMIS Sick and Personal Time Policy and Vacation Time Policy
- **Exh. N**  ISMIS Progressive Discipline/Probation/Termination Policy
- **Exh. O**  Notice of Corrective Action dated 11/5/07
- **Exh. P**  11/6/07 e-mail from Jacinth Stokes to Laura Hutchinson and Donna Gentile-Karas

**Exhibit 3**  **Affidavit of Jacinth Stokes**
*Underwriting Support Manager*
- **Exh. A**  10/23/07 e-mail from Jacinth Stokes regarding Sakie Scott errors
- **Exh. B**  7/12/07 e-mail from Jacinth Stokes regarding Sakie Scott Performance Evaluation meeting
- **Exh. C**  6/14/07 e-mail from Jacinth Stokes regarding Sakie Scott absence
- **Exh. D**  6/28/07 e-mail from Jacinth Stokes regarding Sakie Scott early departure
- **Exh. E**  11/6/07 e-mail from Jacinth Stokes to Laura Hutchinson and Donna Gentile-Karas

# BEERMANN SWERDLOVE

LLP

ATTORNEYS

U.S. Equal Employment
Opportunity Comission
November 9, 2007
Page 9

**Exhibit 4**    **Affidavit of Sheila Coglan**
*Assistant Vice President, Underwriting - Technical*
- **Exh. A**    Internal Application For Posted Position for Underwriting Technician (9/20/05)
- **Exh. B**    Underwriting Technician Position Description
- **Exh. C**    William H. Blake resume
- **Exh. D**    Internal Application For Posted Position for Underwriting Technician (6/29/07)

**Exhibit 5**    **Affidavit of Michi Smith**
*Director, Underwriting*

## V.    CONCLUSION

The Charge of discrimination filed by Ms. Scott is totally without merit, as evidenced by the attached exhibits and supporting affidavits. If you require anything further, please do not hesitate to contact Lyle Genin and Stefania Pialis of Beermann Swerdlove LLP, the attorneys for Illinois State Medical Insurance Services, Inc. at (312)621-9700.

Yours very truly,

BEERMANN SWERDLOVE LLP

Stefania Pialis

Enclosure

# INTER

# OFFICE

# MEMO

**To:**       Donna Gentile-Karas
**From:**     Laura C. Hutchinson
**Subject:**  Sakie Scott's Memo of 12/14/06
**Date:**     December 20, 2006

---

Below are my comments regarding items in Sakie's memo.

Sakie was interviewed for the Underwriting Technician position by Sheila Coghlan and I; however, I have no recollection that the original appointment was cancelled and that we conducted the interview without any notice to her.

One of Sakie's job responsibilities is to provide secretarial support to me (e.g. sort my In Box, typing, stock paper for my printer). To provide that support she needs to come into my office several times a day. It would also give her the opportunity to discuss her work with me and ask any questions she may have.

After Sakie's interview with Claims, Christine Renfro did call me to discuss Sakie's last review, especially the problem with quality. I stated it was mostly a proofing issue that could be improved.

On 7/26/05 during Sakie's first annual review, I discussed the need for her to "focus more on her work and less on distractions on the floor". We had another conversation on 5/25/06 that she needed to reduce social distractions in order to concentrate on the quality of the work at her desk.

I did ask Keith Evans if he and Willet Welch were in Sakie's cubicle for some reason. He indicated that they had been standing just outside of her cubicle having a conversation. He was sure that they were not in her area, but said that it might have looked like they were. I did relay that information to Sakie. She disagreed with the explanation I gave her, but I told her that there was nothing more I could do.

On 11/21/06, Michi Smith had conversations with Sean Sullivan, Jon Olson and Terry Moore regarding Sakie conduct since she moved into her new cubicle in late September. I then met with Michi, Jon and Sean. They told me that her behavior is "totally distracting" because of the loud social activity in her cubicle, personal calls and cell phone usage during business hours. I then called Sakie into my office to discuss these issues. She denied that any of it is occurring. I told her that she needed

**EXHIBIT**

G

ALL-STATE LEGAL®

Page 2
December 20, 2006

to curtail any distracting socializing and that we would discuss the situation again in 2 weeks to see if there was improvement. Sakie was scheduled off the next day, the Wednesday before Thanksgiving.

On Monday 11/27/06, Sakie's son called to say that his mother was at urgent care; she was having trouble breathing. The next morning I did not hear from Sakie, so I called her and left a message. She called back at 11 am and told me that she had an abnormal EKG and would not be at work the next day.

She returned to the office on Thursday 11/30/06, but became ill with the flu and went home at 1 pm .

Jacinth Stokes and I had a meeting with the support staff on 12/8/06 to discuss a special project that they would all be involved in. Before the meeting ended, I made a statement about Underwriting's quarterly staff lunches. "These lunches were started to foster a team spirit in the division and to show appreciation for Physician First Service. They are a perk that we do not want to lose. You may order what you like, but please do not order multiples or more than you can eat. Remember that this is a business lunch….".

On 12/11/06 after the second group returned from lunch at Gibson's, I was told by Keith Evans that Sakie had ordered the surf and turf which cost $96., by far more expensive than anyone else's order. Management (myself, Keith, Jacinth, Michi and Sheila) discussed this issue and we concluded that I needed to speak to Sakie. I called her into my office and said that we needed to discussed the holiday luncheon. I asked her if her remembered my statement to the support staff . She did, but did not believe that she had done anything inappropriate. I tried to explain that she missed the spirit of what I had tried to convey.

Lanna C. Hutchinson



MEMO TO FILE -- Sakie A. Scott

07/03/07......The office closed early due to the holiday. As Sakie was leaving I stopped her to ask the status of her work, since she was scheduled off for 3 days after the 4th. She said she was all caught up with new business and the check requests for commission were in my In Box. When I returned to the office on Thursday there were e-mails from Sakie sent on the 4th (e-mail copies attached).

07/12/07......Gave Sakie her review.

07/16/07......Called Sakie around 9 am to ask her to complete her Time Sheet; received e-mail from Sakie at 1:21 pm that she had applied for the U/W Technician position (e-mail copy attached).

07/17/07......Sheila Coghlan and I interviewed Sakie for Greg Davis' position; also spoke to Sakie regarding an Underwriting file she incorrectly gave to Jacinth yesterday (e-mail copy attached).

07/19/07......Sakie requested to leave early today at 3:30 pm (e-mail copy attached).

07/25/07......Late arrival at 9:05 am due to transportation problems (e-mail copy attached); also, Sakie deleted 21 e-mails from me that she had not read.

07/26/07......Received "Request for Tuition Reimbursement" for 2 classes Sakie took last year. *Original given — No Response*

07/27/07......Sakie requested to leave early today at 3:45 pm (e-mail copy attached).

08/01/07......Late arrival at 11:36 am due to a family emergency (e-mail copy attached).

08/06/07......Sakie called in sick. She only has 5.5 hours of sick time left to cover this day.

08/16/07......Late arrival at 9:15 am due to power outage; at 2:34 pm Sakie requested tomorrow off as a vacation day (e-mail copy attached).

08/20/07......Sakie called to say that she would not be in because she "couldn't get back to Chicago on time".

08/21/07......Sakie requested Sept. 4th as a vacation day (e-mail copy attached) for hospital tests. Later changed to Sept. 6th.

08/28/07......Sakie requested to leave early today at 3:30 pm (e-mail copy attached).

08/30/07......Late arrival at 8:45 am due to accident on freeway (e-mail copy attached).

09/04/07......Sakie called in to say she wouldn't be in due to a "family emergency". She told me later that her father-in-law is near death and she went to visit him in Indianapolis.

09/05/07......Late arrival at 9:50 am due to "transportation problems".

09/19/07......Sakie requested a vacation day for Oct. 8th.

09/20/07......Late arrival at 8:45 am due to the bus breaking down.

09/26/07......Sakie requested 2 hours personal time for tomorrow 8:15 to 10:15 am (e-mail attached).

09/27/07......Sakie arrived at 11:45 am instead of 10:15 am (e-mail attached).

10/01/07......I had to ask Sakie to correct her time sheet that was due today. The entries for Sept. 27 and 28 were incorrect.

10/04/07......Sakie requested to leave early tomorrow at 3:30 pm.

10/09/07......Sakie came in to work this day, even though she had scheduled it as a vacation day.

10/11/07......Late arrival at 8:40 am due to traffic (e-mail attached).

10/12/07......Jacinth saw Sakie arrive at 8:40 am. I asked Sakie if she was late and she said that she was 10 minutes late not 25 minutes. E-mail attached regarding changing her work schedule.

10/15/07......Four batches of loss history letters were put into the File Room bin without the yellow sheets filled out. Two were done by Sakie and two by Deborah Connie. Also, Sean brought to my attention a loss history error on # 61578, Dr. Didluch. — *IF Sakie didn't FILL OUT SHEET HOW DOES LCH KNOW*

10/17/07......New Business error on Dr. Khaja # 64519 (e-mail attached)

*IT WAS SOOT'S MISTAKE*

10/18/07......Late arrival at 9:15 am due to power outage at her home (e-mail attached).

10/19/07......New Business error on Dr. Ahn # 03567 (e-mail attached)

10/24/07......Sakie requested to leave an hour early on Friday, October 26th (e-mail attached).

10/26/07......Sakie requested to leave an additional half hour early today (e-mail attached).

10/31/07......Sakie called in sick today.

11/01/07......I had to ask Sakie to correct her time sheet regarding 10/31/07 (e-mail attached). Sakie requested an unpaid day off for November 21st, the day before Thanksgiving (e-mail attached). Loss History error on Dr. Rohail #26969 (e-mail attached). New Business error on Irma Mendez, CRNA (e-mail attached).

11/02/07......Loss History error on Dr. Kirby #64707 (e-mail attached). BOR work flow error (copy attached).

11/05/07......Met with Sakie at 4:15 pm to place her on probation (Jacinth was present).

11/06/07......Sakie, Jacinth and I met with Donna at 9:30 am to discuss the probation document.

11/07/07......no verbal communication

11/08/07......no verbal communication; also Sakie deleted 6 unread e-mails. *EMAIL ON "AUTOPREVIEW" STATUS*

11/09/07......no verbal communication

File Date: _March 11, 2008_

Case No: _08cv 1457_

ATTACHMENT # _1_

EXHIBIT _____

TAB (DESCRIPTION)

_Separated warning - Discriminatory Hiring & Prom,_

**Illinois State Medical Society       Illinois State Medical Insurance Services, Inc.**
**ISMIE Mutual Insurance Company**

## NOTICE OF CORRECTIVE ACTION

Name:  __Sakie A. Scott__                                    Division:  __C__

Job Title:  __Underwriting Secretary__                Date:  __01/14/08__

---

**Corrective Action Taken:**
- ☒ Warning
- ☐ Probation
- ☐ Termination

**Performance or behavior in need of correction:**
Since July, 2007, Sakie has been tardy 13 times.

**Action required to correct this performance or behavior:**
Sakie needs to start work on time each day.  She is required to send an e-mail to her supervisor each day to confirm that she arrived on time. If an e-mail is not sent it is understood that she was tardy and it will be counted as such. Further tardiness may result in additional disciplinary action up to and including termination.

**Employee Explanation:**

---

Employee Signature: _____          Date: _____
(Acknowledges receipt of corrective action, but does not necessarily indicate agreement)

Supervisor Signature: _Kama C. Hutchinson_          Date: _1/14/08_

Signature: _____          Date: _1/14/08_
Division Vice President

Signature: _____          Date: _1/14/08_
Assistant Vice President, Human Resources

original = Human Resources          copy = employee          copy = Immediate Supervisor

Saki has stated that she
is not allowed to sign this
document.
    I am signing as a witness
to her receiving this.          Jannoth Som

**MEMORANDUM**

DATE:     January 11, 2008

FROM:     Laura C. Hutchinson
          Assistant Vice President, Underwriting
          ISMIE Mutual Insurance Company

RE:       SAKIE SCOTT (Start time: 8:15 am; End time: 4:30pm)
          Tardiness and leaving early which constitutes unsatisfactory work
          performance and behavior pursuant to the Company Progressive
          Discipline Policy.

*after '07 evaluation & EEOC complaint*

| | DATE | ACTION |
|---|---|---|
| 1 | 07/25/07 | Late arrival at 9:05 — *NO lunch* |
| 2 | 07/19/07 | Sakie requested to leave early - 3:30 pm — *NO lunch* |
| 3 | 07/27/07 | Sakie requested to leave early - 3:45 pm — *NO lunch* |
| 4 | 08/01/07 | Late arrival at 11:36 am — *Personal time — No lunch* |
| 5 | 08/16/07 | Late arrival at 9:15 am — *NO lunch* |
| 6 | 08/28/07 | Sakie requested to leave early - 3:30 pm — *made up on lunch* |
| 7 | 08/30/07 | Late arrival at 8:45 am — *late 4:45 pm* |
| 8 | 09/05/07 | Late arrival at 9:50 am — *no lunch — stayed late* |
| 9 | 09/20/07 | Late arrival at 8:45 am — *No lunch* |
| 10 | 0927/07 | Late arrival. Sakie requested 2 hours personal time for tomorrow 8:15 to 10:15 am Sakie arrived at 11:45 am instead of 10:15 am. *My accrued time* |
| 11 | 10/11/07 | Late arrival at 8:40 am — *made up lunch time* |
| 12 | 10/12/07 | Jacinth saw Sakie arrive at 8:40 am. I asked Sakie if she was late and she said that she was 10 minutes late not 25 minutes — *OK* |
| 13 | 10/18/07 | Late arrival at 9:15 am — *NO lunch* |
| 14 | 11/16/07 | Late arrival at 8:49 am — *NOT documented* |
| 15 | 11/30/07 | Late arrival at 8:20 am — *NOT documented* |
| 16 | 1/10/08 | Late arrival at 8:35 am — |

*Bus ticket turned IN*



**Scott Sakie**

| | |
|---|---|
| **From:** | Scott Sakie |
| **Sent:** | Monday, December 03, 2007 11:24 AM |
| **To:** | Gentile-Karas Donna |
| **Subject:** | Working Environment |

Dear Donna,

I feel that I have been placed in a hostile work environment.  On Friday, I was four minutes tardy and confronted by Laura Hutchinson before I arrived at my desk requesting that I send her an email of my arrival time. Since I have been placed on probation, I feel that I have been placed under unwarranted stress by "constant surveillance".  No one in this company is scrutinized to this level.  I am suffering from stress related angina and sometimes find it difficult to breath comfortably without feeling the pressure in my chest.  I am a heart patient that has undergone double bypass surgery and cannot be subjected to this type of work environment.  I am not going to take off anytime because I do value my job, but just felt that you should be aware of the situation that is being created.  I do not feel this behavior is warranted in that there have been no violations been made as far as the accusation made on my "probation document" that was written up on November 5, 2007.

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL  60602
(312) 853-1617
(312) 782-2023 FAX

Illinois State Medical Society      Illinois State Medical Insurance Services, Inc.
ISMIE Mutual Insurance Company

## NOTICE OF CORRECTIVE ACTION

Name:  Sakie A. Scott                                    Division:   C

Job Title:   Underwriting Secretary                      Date:   11/05/07

**Corrective Action Taken:**
☐ Warning
☒ Probation
☐ Termination

**Performance or behavior in need of correction:**
Excessive absenteeism - employee has utilized all of her personal, sick and vacation days and has no available days through 01/01/08.  Company policies attached.

**Action required to correct this performance or behavior:**
Cannot be late, leave early or take time off for any reason, other than company scheduled holidays, between now and 01/01/08.  Further absenteeism is subject to disciplinary action, including termination of employment.

**Employee Explanation:**

Employee Signature: _____    Date: _____
(Acknowledges receipt of corrective action, but does not necessarily indicate agreement)

Supervisor Signature: _Janna L. Hutchinson_              Date: _11/5/07_

Signature: _____              Date: _11/5/07_
Division Vice President

Signature: _____              Date: _11/5/07_
Assistant Vice President, Human Resources

original = Human Resources          copy = employee          copy = Immediate Supervisor

Sakie refused to sign probation document.
She has a copy.       Jacinth C Stubs.

**Scott Sakie**

| | |
|---|---|
| **From:** | Hutchinson Laura |
| **Sent:** | Thursday, November 01, 2007 3:26 PM |
| **To:** | Scott Sakie |
| **Subject:** | RE: REVISED: FW: UNPAID DAY |

Sakie, you are correct regarding unpaid time off.
I don't believe we have a company policy that would allow you to do what you propose.
However, I will check with Human Resources and get back to you.

Laura C. Hutchinson
Assistant Vice President, Underwriting
ISMIE Mutual Insurance Company
312.580.6458 (Direct)
312.782.2023 (Fax)

**From:** Scott Sakie
**Sent:** Thursday, November 01, 2007 10:43 AM
**To:** Hutchinson Laura
**Subject:** REVISED: FW: UNPAID DAY

LAURA, I UNDERSTAND WE CAN'T TAKE UNPAID TIME OFF.
NEW REQUEST, I WOULD LIKE TO COME IN EARLY/AND OR LEAVE LATER OR SKIP LUNCH IF WORK PERMITS,
(WITH A VERIFICATION BY EMAIL TO YOU), TO ACCUMULATE TIME TAKEN FOR NOVEMBER 21, 2007. THANK
YOU.

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL 60602
(312) 853-1617
(312) 782-2023 FAX

**From:** Scott Sakie
**Sent:** Thursday, November 01, 2007 8:54 AM
**To:** Hutchinson Laura
**Subject:** UNPAID DAY

LAURA, I WILL NEED TO TAKE OFF ON WEDNESDAY, NOVEMBER 21, 2007 FOR AN UNPAID DAY.

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL 60602
(312) 853-1617
(312) 782-2023 FAX

1

**Illinois State Medical Insurance Services**
**ISMIE Mutual Insurance Company**
**Illinois State Medical Society**
**Personnel Record As of**
**10/31/2007**

**Employee #:** 10343

**Name:** Sakie A Scott
**Title:** UW Secretary
**Address1:** 669 Clyde Avenue
**Address2:** #2N
**City:** Calumet City
**State:** IL
**Zip:** 60409
**Contact:** Lena Powell
*Aunt* (708)868-8919
**Marital Status:** Married
**Spouse name:** Gregory Scott
**Full (F,4,3,O):** FULL TIME
**Exempt (E/N):** NON-EXEMPT
**Years Employed:** 3

**Division:** Underwriting
**Phone Number:** (708)539-8253
**2nd Phone Number:**
**Cell Phone Number:** (708)539-4204
**Home Email:** sakiescott@hotmail.com

**Hire Date:** 7/1/2004
**Review Date:** 7/1/2008
**Earn Date:** 7/1/2004

| Insurance Type | Insurance Carrier | Effective Date | Coverage |
|---|---|---|---|
| Health & MM: | UNICARE HMO | 8/1/2004 | D - Dependent |
| Dental: | AMERITAS | 8/1/2004 | D - Dependent |
| Grp Life & Acc: | LINCOLN FINANCIAL | 8/1/2004 | |
| Vol. Life: | | | |
| Short Term Dis: | SELF-INSURED | 7/1/2005 | |
| Long Term Dis: | LINCOLN FINANCIAL | 7/1/2005 | |

### Retirement Plan

**Entry Date:** 8/1/2005     **Vested Date:** 7/1/2007     **Percent Vested:** 100.00%

**Short Term Dis Used:** 0
**Paid Absence Used:** 3.75
**Exempt Overtime:** 0
**Year To Date Vacation Loss:** 0
**Vacation Loss Total:** 0

| | Last YR Balance | Current Earned | Total Earned | Current Used | Balance |
|---|---|---|---|---|---|
| Holidays: | 0.00 | 37.50 | 37.50 | 37.50 | 0.00 |
| Personal: | 0.00 | 45.00 | 45.00 | 45.00 | 0.00 |
| Sick Hours: | 0.00 | 60.00 | 60.00 | 60.00 | 0.00 |
| Vacation | 0.00 | 112.50 | 112.50 | 112.50 | 0.00 |

*Right here not excessive* (handwritten)

**Illinois State Medical Society    Illinois State Medical Insurance Services, Inc.
ISMIE Mutual Insurance Company**

## NOTICE OF CORRECTIVE ACTION

Name:  Sakie A. Scott _____     Division:   C _____

Job Title:  Underwriting Secretary _____     Date: _____

---

**Corrective Action Taken:**
- ☒ Warning
- ☐ Probation
- ☐ Termination

**Performance or behavior in need of correction:**

Since 07/19/07, Sakie has been absent 3 days, has arrived late on 6 days and has left work early on 3 days.

Sakie has zero sick time, .75 personal time and 14 hours vacation time remaining until 1/1/08.

**Action required to correct this performance or behavior:**

Sakie needs to end her unscheduled time off as it is burdensome to the other support staff who must cover her work when she is not here.  Also, Sakie needs to understand that if she uses all her earned time off, future absenteeism will require further disciplinary action.

**Employee Explanation:**

---

Employee Signature: _____     Date: _____
(Acknowledges receipt of corrective action, but does not necessarily indicate agreement)

Supervisor Signature: _____     Date: _____

Signature: _____     Date: _____
            **Division Vice President**

Signature: _____     Date: _____
            **Assistant Vice President, Human Resources**

original = Human Resources          copy = employee          copy = Immediate Supervisor



| | | | |
|---|---|---|---|
| **INDEX:** | **IV-5** | **PAGE:** | **1 of 2** |
| **SECTION:** | **EMPLOYMENT** | **EFFECTIVE:** | February 1, 2003 |
| **SUBJECT:** | **PROGRESSIVE DISCIPLINE / PROBATION/TERMINATION** | **REVISED:** | |

## POLICY:

All employees shall be expected to comply with the standards of work performance and personal conduct and behavior while employed by the Company. It is the policy of the Company that any conduct in its view that results in unsatisfactory work performance or interferes with or adversely affects employment is grounds for disciplinary action ranging from verbal/written warnings to immediate discharge. Depending on the conduct, disciplinary steps may be enforced by the following methods: verbal/written warnings, probation, and/or termination. To that end the Company has installed a system of progressive discipline. Progressive discipline is a means for changing unsatisfactory work performance, conduct or behavior, and for motivating and encouraging employees who demonstrate difficulty in following the standards of the Company.

## PROCEDURES:

1. Corrective action generally follows the course outlined herein. Factors that may be considered in ascertaining the appropriate steps are the seriousness of the offense and prior corrective measures imposed.

   - <u>Warning</u>: Any deficiency or negative action on the employee's part should be discussed with such employee and documented in writing.

   - <u>Probation</u>: A period of time to be determined on a case by case basis in which an employee's deficiency or negative action will be closely monitored and evaluated. Further disciplinary action may be taken during this period if improvement is not forthcoming, up to and including termination. If an employee's annual evaluation comes due during a probation period, the evaluation and corresponding pay increase, if any, shall be delayed until the employee successfully completes the probation period. Any pay increase **shall not** be retroactive but rather, shall be effective with start of the pay period immediately following the post-probation period.

     Probation shall also be appropriate when an employee receives between 25% and 49% of "Does Not Meet Expectations" on their Performance Evaluation or if at any time a Supervisor feels that an employee's work performance is unsatisfactory. Probation requires the approval of the division vice president.

   - Termination:

     (a) In the event the employee has not corrected the deficiency or negative action following a probation, he or she may be subject to termination of employment.

     (b) In addition, an employee may be terminated immediately, as a result of, unsatisfactory work performance or for behavior which management deems

# ISMIS

**MANAGERS OF THE ISMIE MUTUAL INSURANCE COMPANY**

June 20, 2007

Dear Sakie:

Thank you for expressing your interest in the Underwriting Tech position. However, we have selected another candidate for this position.

Sincerely,

*Chris Majerik*

Chris Majerik
Human Resources Specialist

# Illinois State Medical Society
## Illinois State Medical Insurance Services, Inc.
### Performance Evaluation Form
### Non-Supervisory

| | | | |
|---|---|---|---|
| EMPLOYEE NAME | Sakie A. Scott | DATE | 7/6/07 |
| CURRENT TITLE | U/W Secretary | DIVISION | C |
| CURRENT STATUS | Non-Exempt | HIRE DATE | 7/1/04 |
| EVALUATOR | L. Hutchinson | EVALUATION PERIOD | 7/06-7/07 |

*To the evaluator:*

The above employee has received a Performance Self Evaluation Form and has been asked to submit an assessment of accomplishments and areas for improvement within two weeks. The employee self evaluation form is optional. However, any information the employee wishes to provide should be returned directly to you and submitted with the other portions of the evaluation.

Please complete all of the sections. If an item does not apply to an employee, indicate by checking the appropriate box. Feel free to attach additional information if necessary. In your evaluation, consider objectives achieved, quality of work, contributions to the company and any special knowledge or skills demonstrated by the employee during this evaluation period. Where the employee has failed to meet expectations, please be specific and include any supporting documents.

When the evaluation has been completed, please submit it to your Division Director or Vice President for the appropriate signatures. It will then be returned to you for discussion with the employee. After the evaluation has been discussed, reviewed and signed by the employee, it should be forwarded to the Office of Human Resources for processing.

*Definitions of Performance Levels:*

- **EXCEEDS EXPECTATIONS:** Exceptional performance maintained in key areas of accountability and consistently makes significant contributions above and beyond what is expected.

- **MEETS EXPECTATIONS:** Fully proficient performance in key areas of accountability.

- **DOES NOT MEET EXPECTATIONS:** Job performance deficient in most key areas of accountability.

When determining the appropriate performance level of the employee during the evaluation period, the phrase "key areas of accountability" is important. The evaluator takes into account:

1. Areas of responsibility and performance measures.

2. How the employee is rated against the criteria described in the evaluation form.

3. Other established objectives, activities or achievements for which the employee should be recognized.

1

## OBJECTIVES

Using the employee's previous performance evaluation or job description as a guide, list objectives and expected results. For each objective, check off the employee's performance level during this evaluation period. Please consider the employee's self evaluation when completing this section. Feel free to add as many objectives as necessary to accurately reflect the performance objectives of each employee.

### PERFORMANCE LEVEL

| OBJECTIVES AND EXPECTED RESULTS: | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations |
|---|---|---|---|
| 1. Screens and distributes incoming new business applications and submissions. Also responsible for entering information from iMIS and maintaining the division's supply of new business kits. Expectations include accurate information provided to staff in a timely manner, correct data entry in PUMA and proper use of ImageRight work flow procedure. | ☐ | ☒ | ☐ |
| 2. Provides daily secretarial services to the AVP, Support; assists in the quarterly commission process. Expectations include accurate typing and proofing, solid knowledge of office procedures and equipment and a professional telephone style. | ☐ | ☐ | ☒ |
| 3. Processes requests for loss history letters on cancelled policies. Expectations are a proper handling of these requests within the required time frame. | ☐ | ☒ | ☐ |
| 4. Provides backup to the other secretaries if the workload is heavy or in their absence. The main area of responsibility is incoming mail, renewal applications and part-time audits. Expectations are good time management, organization and a positive attitude. | ☐ | ☒ | ☐ |
| 5. n/a | ☐ | ☐ | ☐ |
| 6. n/a | ☐ | ☐ | ☐ |
| 7. n/a | ☐ | ☐ | ☐ |

## KNOWLEDGE AND SKILLS ASSESSMENT

**A.    COMMUNICATION:** How well does the employee communicate with others both within the company and with other organizations? Check off the performance level and comment on the following applicable areas at the bottom of the page.

### PERFORMANCE LEVEL

| | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations | Not Applicable |
|---|---|---|---|---|
| writes clearly and concisely | ☐ | ☒ | ☐ | ☐ |
| communicates verbal information clearly and effectively | ☐ | ☒ | ☐ | ☐ |
| maintains ongoing communication with supervisor | ☐ | ☐ | ☒ | ☐ |
| maintains ongoing communication with others | ☐ | ☒ | ☐ | ☐ |
| maintains effective communication with other units within the company | ☐ | ☒ | ☐ | ☐ |
| listens effectively and follows work instructions | ☐ | ☒ | ☐ | ☐ |

Evaluator's Comments:

Numerous informal verbal communications have not become part of Sakie's daily routine, as was requested in last year's review.

## KNOWLEDGE AND SKILLS ASSESSMENT

B.     **PROBLEM SOLVING:** How effective is the employee in identifying, analyzing and solving problems? Evaluate the employee's ability to reach logical conclusions based on the evidence available. Check off the performance level and comment on the following applicable areas at the bottom of the page.

### PERFORMANCE LEVEL

| | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations | Not Applicable |
|---|:---:|:---:|:---:|:---:|
| • identifies and diagnoses problems | ☐ | ☒ | ☐ | ☐ |
| • considers all reasonable alternatives and develops effective solutions | ☐ | ☒ | ☐ | ☐ |
| • analyzes and interprets data, integrating information from various sources, using the appropriate level of detail | ☐ | ☒ | ☐ | ☐ |
| • uses practical procedures and knowledge to achieve objectives | ☐ | ☒ | ☐ | ☐ |

Evaluator's Comments:

## KNOWLEDGE AND SKILLS ASSESSMENT

C.    **TASK MANAGEMENT:** How effective is the employee in setting goals, establishing controls, and monitoring progress for himself/herself and work unit?  Check off the performance level and comment on the following applicable areas at the bottom of the page.

### PERFORMANCE LEVEL

| | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations | Not Applicable |
|---|---|---|---|---|
| works effectively on multiple assignments at the same time | ☐ | ☒ | ☐ | ☐ |
| uses initiative and resourcefulness in achieving objectives | ☐ | ☒ | ☐ | ☐ |
| uses all available resources effectively to achieve objectives | ☐ | ☒ | ☐ | ☐ |
| produces quality work within established time frames | ☐ | ☐ | ☒ | ☐ |
| produces expected quantity of work within established time frames | ☐ | ☒ | ☐ | ☐ |
| exhibits flexibility under pressure | ☐ | ☒ | ☐ | ☐ |
| works responsibly and independently with given supervision | ☐ | ☒ | ☐ | ☐ |

Evaluator's Comments:

The quality of Sakie's work in the area of secretarial support has not improved over last year.  As previously stated, she needed to consistently proof and double check each item she worked on, so that it became part of her normal routine.  However, it has been noted that she has reduced the social distractions around her. Also, her volume of work is acceptable.

## KNOWLEDGE AND SKILLS ASSESSMENT

**D.**    **SERVICE:** How service-oriented is the employee?  Does the employee effectively service internal and external contacts?  Check off the performance level and comment on the following applicable areas at the bottom of the page.  Please use the comment section to give your overall collective impression of service attitude, expressions of service activities and other service issues that you have.

### PERFORMANCE LEVEL

| | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations | Not Applicable |
|---|---|---|---|---|
| • maintains an approachable attitude and image | ☐ | ☒ | ☐ | ☐ |
| • responds timely to written documentation and requests | ☐ | ☒ | ☐ | ☐ |
| • responds timely to oral requests | ☐ | ☒ | ☐ | ☐ |
| • actively follows up on service requests or referrals | ☐ | ☒ | ☐ | ☐ |
| • patient and pleasant while assisting others | ☐ | ☒ | ☐ | ☐ |
| • offers to "pitch in" and help others | ☐ | ☒ | ☐ | ☐ |
| • able to offer suggestions and direct if unable to help | ☐ | ☒ | ☐ | ☐ |
| • adherence to company policies | ☐ | ☒ | ☐ | ☐ |

Evaluator's Comments:        *carol backup*

Sakie performs her backup duties (i.e. indexing the mail, renewal applications and part-time audits) well and in a timely manner.  Also, she does pitch in to assist her co-worker in processing requests for loss histories on active policies.

There are two items though that Sakie does need to address.  The first is reading and/or responding to e-mails and voice mails quickly.  The other issue is to remain logged onto her computer programs until the end of each work day.

## OBJECTIVES FOR NEXT EVALUATION PERIOD

Using the job description and department goals as a guide, what specific projects, activities and results do you expect for the employee over the next evaluation period?  Include specific areas for development.  Also explain if the objectives as noted in the last evaluation have changed.

The objectives on this review are the same as last year's.

## DEVELOPMENT

1.      What work related experiences, training or education did the employee complete during this evaluation period that you feel helped to develop his/her performance?

2.      What work related experiences, training or education do you feel would help the employee in *addition of duties* his/her future job performance?

To provide Sakie with an opportunity to improve her job performance, some of her responsibilities will be adjusted.  She will 1) process requests for loss histories and Certificates of Insurance on active policies; 2) order and maintain the division's office supplies; 3) learn the procedure for indexing all incoming requests for loss histories. Other changes may be implemented after training on items 2 and 3 have been completed. Lastly, she will no longer be responsible for providing secretarial services to the AVP, Support.

*Cant Justify.*

## ADDITIONAL COMMENTS

Evaluator's Comments (Include items to be discussed during the evaluation that are not specifically included in previous parts of this evaluation):

As stated last year, Sakie possesses the abilities to improve her performance by focusing on her daily tasks. Hopefully her new work assignments will provide the opportunity to do better.

Employee's Comments:

8

My evaluation was discussed with me:

_____

_____
                                    Date

*[signature]*

7/12/07

W/ Rebuttal
forthcoming

Approvals:

_____ LCH _____  7/6/07 _____
                                    Date

_____
                                    Date

_____ AMF _____  7/6/07 _____
                                    Date

9

# PERSONNEL ACTION REPORT

☐ HIRE       ☐ POSITION CHANGE       ☐ TERMINATION

☒ SALARY CHANGE       ☐ PROMOTION       ☐ RESIGNATION

EMPLOYEE NAME:   Sakie A. Scott       EMPLOYEE #:   10343

DIVISION:   C       PRESENT TITLE:   Underwriting Secretary

NEW TITLE: _____

STATUS:    ☐ EXEMPT    ☒ NON-EXEMPT

| | |
|---|---|
| HIRE DATE: 7/1/04 | |
| CURRENT REVIEW DATE: | 7/1/07 |
| CURRENT ANNUAL SALARY: | $35,300. |
| RECOMMENDED $ INCREASE: | $ 1,000.    RECOMMENDED % INCREASE: 2.8 |
| NEW ANNUAL SALARY: | $36,300. |
| EFFECTIVE DATE: | 7/1/07 |
| NEXT REVIEW DATE: | 7/1/08 |

- For Payroll Use Only -

Current Semi   $

New Semi   $

Difference   $

APPROVED: _LCH_   7/6/07
        DATE:
    _MM_   7/6/07
        DATE:

- Human Resources Use Only -

☐ EVP
☐ SIGNATURES
☐ SYSTEM & REVIEW LIST
☐ SALARY LIST
☐ ACTION
☐ PAYROLL
☐ FILE
☐ MEMO
☐ JOB DESCRIPTION
☐ INSURANCE (IF APPLICABLE)
     NEW MED. AMT. _____ NEW DENT. AMT. _____

CC: ☐ AVP,HR
    ☐ HRS

REV: 4/2004

## ADDITIONAL COMMENTS

Evaluator's Comments (Include items to be discussed during the evaluation that are not specifically included in previous parts of this evaluation):

As stated last year, Sakie posseses the abilities to improve her performance by focusing on her daily tasks. Hopefully her new work assignments will provide the opportunity to do better.

Employee's Comments:

My evaluation was discussed with me:

_____
_____ Date

7/12/07

W/ Rebuttal
forthcoming

Approvals:

LCH                    7/6/07
                          Date

_____
                          Date

AM          7/6/07
                          Date

# PERSONNEL ACTION REPORT

☐ HIRE

☒ SALARY CHANGE

☐ POSITION CHANGE

☐ PROMOTION

☐ TERMINATION

☐ RESIGNATION

EMPLOYEE NAME:  Sakie A. Scott

EMPLOYEE #:  10343

DIVISION:  C

PRESENT TITLE:  Underwriting Secretary

NEW TITLE:

STATUS:    ☐ EXEMPT    ☒ NON-EXEMPT

| | |
|---|---|
| HIRE DATE:  7/1/04 | |
| CURRENT REVIEW DATE: | 7/1/07 |
| CURRENT ANNUAL SALARY: | $35,300. |
| RECOMMENDED $ INCREASE: | $ 1,000.    RECOMMENDED % INCREASE:  2.8 |
| NEW ANNUAL SALARY: | $36,300. |
| EFFECTIVE DATE: | 7/1/07 |
| NEXT REVIEW DATE: | 7/1/08 |

**· For Payroll Use Only ·**

Current Semi    $

New Semi    $

Difference    $

APPROVED:  _LCH_    7/6/07
DATE:

_amb_    7/6/07
DATE:

**· Human Resources Use Only ·**

☐ EVP
☐ SIGNATURES
☐ SYSTEM & REVIEW LIST
☐ SALARY LIST
☐ ACTION
☐ PAYROLL
☐ FILE
☐ MEMO
☐ JOB DESCRIPTION
☐ INSURANCE (IF APPLICABLE)
    NEW MED. AMT. _____    NEW DENT. AMT. _____

CC:  ☐ AVP,HR
     ☐ HRS

REV: 4/2004

Email to
HR
Assistace

**Scott Sakie**

| | |
|---|---|
| From: | Scott Sakie |
| Sent: | Monday, December 03, 2007 11:24 AM |
| To: | Gentile-Karas Donna |
| Subject: | Working Environment |

Dear Donna,

I feel that I have been placed in a hostile work environment. On Friday, I was four minutes tardy and confronted by Laura Hutchinson before I arrived at my desk requesting that I send her an email of my arrival time. Since I have been placed on probation, I feel that I have been placed under unwarranted stress by "constant surveillance". No one in this company is scrutinized to this level. I am suffering from stress related angina and sometimes find it difficult to breath comfortably without feeling the pressure in my chest. I am a heart patient that has undergone double bypass surgery and cannot be subjected to this type of work environment. I am not going to take off anytime because I do value my job, but just felt that you should be aware of the situation that is being created. I do not feel this behavior is warranted in that there have been no violations been made as far as the accusation made on my "probation document" that was written up on November 5, 2007.


**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL 60602
(312) 853-1617
(312) 782-2023 FAX

1

**From: Sakie A. Scott**
**To:    ISMIE Human Resources**
**Date: December 14, 2006**
**Re:    Complaint regarding Ms. Hutchinson (Hereinafter referred to as "Hutchinson")**

September 20, 2005 – Turned in application for position of Underwriting Technician.

Oct. , 11, 2006 - I was supposed to interview with Hutchinson and Coghlan, but the interview was cancelled without notice. I was granted the interview by Hutchinson and Coghlan the following week without notice or time to prepare. I was notified by Human Resources (Christine Majerik), on October 24, 2006 that I did not get the position.

Feb. 15, 2006 – Called Brenda Cowens desk looking for me. I was in the restroom (10:30 a.m.) Hutchinson was waiting for me at my desk at 10:40 a.m. when I was returning from restroom.

February 22, 2006- Turned in application for position of CSR (claims)

Feb. 23, 2006-Asked me to come into her office. She stated that I come to her office 4-5 times a day. (Harassment)

Feb. 24, 2006 – Interviewed with Chris Majerik for CSR position

Feb. 24th – Met with Christine Renfrow

March 1st- Turned down for position

March 1, 2006 – Called Carol at 9:30 am looking for me when I was in the restroom.

Mar 5, 2006 – Received an anonymous phone call that Hutchinson blocked my transfer.


March 31, 2006 – Called into office to state that I should keep coming to her office 4 times a day.

March 27, 2006 – turned down for claims representative which I was more than qualified for. Interviewed with Christine Renfrow and Kelly Kehoe.

From 07/01/05 – 05/25/06 – Nothing said regarding my socializing.

One week prior to my evaluation in August 2006, I processed 564 loss history letters which indicates how much work I can generate in the department in a matter of 2 days, yet my evaluations always contradict this fact.

August 24, 2006- I was returning to my desk from going to the restroom when I caught Keith Evans and Willet Welch coming out of my cubicle. When I inquired about the nature of their



being in my cubicle, Ms. Welch told me that they were not in my office. I asked Ms. Hutchinson if I could speak with her before the end of day. At approximately 11:30, we had the conversation and I told her that I caught Keith Evans and Willet Welch coming out of my cubicle. She explained to me that she would ask Evans about the incident. At approximately 3:45 pm, Hutchinson called me into her office and to my surprise told me that Evans' response was that he was not in my cubicle. When I explained to her that I actually saw them, nothing else was said regarding the matter. I left the office feeling as though I was totally dismissed.

On Nov 22, 2006, at 4:00 pm, I was called into Hutchinson's office. She asked me to close the door and sit down. She proceeded to tell me that someone had come into her office and told her that I was talking too loud and that they couldn't perform their job duties all during the day. I asked what she was talking about. She stated that she had spoken to me several times about socializing. Prior to this discussion, I hadn't been advised of a socializing problem since August 24, 2006 during my evaluation. Hutchins stated that she was not stationed in my area, therefore, she couldn't hear me if this were true. Again, I explained to her that I was not talking to anyone and that I was stationed at my desk except for the conversation that Robin and I had at my desk regarding decorations for department. Further, I asked her if this were true wouldn't someone else have complained way before 4:10pm that evening. I was told that she would be watching me for the next couple of weeks.

After leaving the office I suffered an angina attack and I was ill for the entire Thanksgiving Day weekend. On Monday, November 27, 2006, I went to the doctor for a check-up because of the angina attack. I was given a prescription of Xanax for future occurrences. I am a heart patient and cannot be subjected to such episodes of harassment and treated in such an inhuman manner.

Dec. 11, 2006, Attended a unit luncheon at Gibson steakhouse. After the luncheon, I was called into Ms. Hutchinson's office. She asked me to close the door. Once seated she asked me what I had ordered for lunch. I explained to her that I ordered a "surf and turf" which consisted of a steak and medallion. No appetizer and no dessert. She asked me if I knew how much it cost and I explained to her that I only reviewed the menu for the meal and not the price. She informed me of the price of $92 and asked me if I had looked around to see what everyone else had ordered. She stated to me that that was the reason that she had the conversation with us during a meeting on Thursday not to order two entrees. I explained to her that I had only ordered one entrée which was the "surf and turf". I was reprimanded for ordering this dish, when it was clearly stated at the meeting to order what we wanted. She then asked me if I ate all of my food and I replied yes. I offered to pay for the difference between my meal and the other meals. I also explained to her that others had ordered appetizers, and desserts that couldn't have been that much more than my meal. I departed from her office without further word.

During the Prepping Project, everyone with the exception of me, was able to work overtime during their lunch. During the last few weeks, Hutchinson finally approved me to work some hours during prepping time. (Date)???

Others aware of the harassment that I have gone through include: All of the Technicians, U/W secretaries and some Underwriters.

SUMMATION: I feel as though I am being discriminated againstby L. Hutchinson in the Underwriting department. I also feel that Ms. Hutchinson has blocked my opportunity to advance or transfer to other positions at ISMIE, and that this will continue to be the case in the future as long as I am under her supervision. I am talked at rather than spoken to in most situations that I have to deal Ms. Hutchinson.

Claims Representative – I have been a Certified Paralegal in the areas of Real Estate, Corporate Law, and Probate law for the over 20 years and I feel that I was more than qualified for both of the positions that became available at the aforementioned time.

Chicago, IL  60602
(312) 853-1617
(312) 782-2023 FAX

---

**From:** Gentile-Karas Donna
**Sent:** Thursday, January 11, 2007 11:20 AM
**To:** Scott Sakie
**Cc:** Allphin Alan; Role Diana
**Subject:** Investigation

Hello Sakie,
As per your request, I have investigated your claim of harassment.  As you are aware, the Company takes the matter of harassment very seriously and has a zero-tolerance policy in regards to it.  As such, the compiled results of the investigation find that no evidence of harassment can be identified at this time.

Should you have any questions please feel free to call me at extension 2375.

Donna Gentile-Karas
Assistant Vice President, Human Resources
Illinois State Medical Insurance Services, Inc.
phone :(312) 551-2375
fax: (312) 782-2850

## Scott Sakie

**From:** Scott Sakie

**Sent:** Tuesday, January 16, 2007 8:41 AM

**To:** Gentile-Karas Donna

**Subject:** Investigation regarding complaint against L. Hutchinson filed on Dec 22, 2006

Hi Donna, thank you for the response regarding the above matter. At your convenience, I would like to get a copy of the results on this investigation.   Thank you.

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL  60602
(312) 853-1617
(312) 782-2023 FAX

---

**From:** Gentile-Karas Donna
**Sent:** Thursday, January 11, 2007 11:20 AM
**To:** Scott Sakie
**Cc:** Allphin Alan; Role Diana
**Subject:** Investigation

Hello Sakie,
As per your request, I have investigated your claim of harassment. As you are aware, the Company takes the matter of harassment very seriously and has a zero-tolerance policy in regards to it. As such, the compiled results of the investigation find that no evidence of harassment can be identified at this time.

Should you have any questions please feel free to call me at extension 2375.

Donna Gentile-Karas
Assistant Vice President, Human Resources
Illinois State Medical Insurance Services, Inc.
phone :(312) 551-2375
fax: (312) 782-2650

# Illinois State Medical Society
## Illinois State Medical Insurance Services, Inc.
### Performance Evaluation Form
### Non-Supervisory

| | | | |
|---|---|---|---|
| EMPLOYEE NAME | Sakie A. Scott | DATE | 8/4/06 |
| CURRENT TITLE | U/W Secretary | DIVISION | C |
| CURRENT STATUS | Non-Exempt | HIRE DATE | ~~6/16/04~~ 7/1/04 |
| EVALUATOR | L. Hutchinson | EVALUATION PERIOD | 7/05-7/06 |

*To the evaluator:*

The above employee has received a Performance Self Evaluation Form and has been asked to submit an assessment of accomplishments and areas for improvement within two weeks. The employee self evaluation form is optional. However, any information the employee wishes to provide should be returned directly to you and submitted with the other portions of the evaluation.

Please complete all of the sections. If an item does not apply to an employee, indicate by checking the appropriate box. Feel free to attach additional information if necessary. In your evaluation, consider objectives achieved, quality of work, contributions to the company and any special knowledge or skills demonstrated by the employee during this evaluation period. Where the employee has failed to meet expectations, please be specific and include any supporting documents.

When the evaluation has been completed, please submit it to your Division Director or Vice President for the appropriate signatures. It will then be returned to you for discussion with the employee. After the evaluation has been discussed, reviewed and signed by the employee, it should be forwarded to the Office of Human Resources for processing.

*Definitions of Performance Levels:*

- **EXCEEDS EXPECTATIONS:** Exceptional performance maintained in key areas of accountability and consistently makes significant contributions above and beyond what is expected.

- **MEETS EXPECTATIONS:** Fully proficient performance in key areas of accountability.

- **DOES NOT MEET EXPECTATIONS:** Job performance deficient in most key areas of accountability.

When determining the appropriate performance level of the employee during the evaluation period, the phrase "key areas of accountability" is important. The evaluator takes into account:

1. Areas of responsibility and performance measures.

2. How the employee is rated against the criteria described in the evaluation form.

3. Other established objectives, activities or achievements for which the employee should be recognized.

86

## OBJECTIVES

Using the employee's previous performance evaluation or job description as a guide, list objectives and expected results. For each objective, check off the employee's performance level during this evaluation period. Please consider the employee's self evaluation when completing this section. Feel free to add as many objectives as necessary to accurately reflect the performance objectives of each employee.

### PERFORMANCE LEVEL

| OBJECTIVES AND EXPECTED RESULTS: | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations |
|---|---|---|---|
| 1.Screens and distributes incoming new business applications; sets up computer records and underwriting files. Also, responsible for maintaining the division's supply of new business kits. Expectations are that accurate information is provided to staff in a timely manner, correct data entry and an indepth knowledge of applicable computer programs. | ☐ | ☒ | ☐ |
| 2.Provides secretarial services to the AVP, Support; assists in the quarterly commission process. Expectations include accurate typing, solid knowledge of office procedures and equipment and a professional telephone style. | ☐ | ☒ | ☐ |
| 3.Processes requests for loss history letters on cancelled policies. Expectations are a proper handling of these within the required timeframe. | ☐ | ☒ | ☐ |
| 4.Provides backup to the other secretaries if workload is heavy or a priority or in their absence. The main area of responsibility is incoming correspondence. Expectations include good time management, organization and a positive attitude. | ☐ | ☒ | ☐ |
| 5.N/A | ☐ | ☐ | ☐ |
| 6.N/A | ☐ | ☐ | ☐ |
| 7.N/A | ☐ | ☐ | ☐ |

2

## KNOWLEDGE AND SKILLS ASSESSMENT

A.   **COMMUNICATION:** How well does the employee communicate with others both within the company and with other organizations?  Check off the performance level and comment on the following applicable areas at the bottom of the page.

### PERFORMANCE LEVEL

| | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations | Not Applicable |
|---|---|---|---|---|
| • writes clearly and concisely | ☐ | ☒ | ☐ | ☐ |
| • communicates verbal information clearly and effectively | ☐ | ☒ | ☐ | ☐ |
| • maintains ongoing communication with supervisor | ☐ | ☒ | ☐ | ☐ |
| • maintains ongoing communication with others | ☐ | ☒ | ☐ | ☐ |
| • maintains effective communication with other units within the company | ☐ | ☒ | ☐ | ☐ |
| • listens effectively and follows work instructions | ☐ | ☒ | ☐ | ☐ |

Evaluator's Comments:

Numerous informal verbal communications should be part of her daily routine.

3

## KNOWLEDGE AND SKILLS ASSESSMENT

**B.** **PROBLEM SOLVING:** How effective is the employee in identifying, analyzing and solving problems? Evaluate the employee's ability to reach logical conclusions based on the evidence available. Check off the performance level and comment on the following applicable areas at the bottom of the page.

### PERFORMANCE LEVEL

|  | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations | Not Applicable |
|---|---|---|---|---|
| • identifies and diagnoses problems | ☐ | ☒ | ☐ | ☐ |
| • considers all reasonable alternatives and develops effective solutions | ☐ | ☒ | ☐ | ☐ |
| • analyzes and interprets data, integrating information from various sources, using the appropriate level of detail | ☐ | ☒ | ☐ | ☐ |
| • uses practical procedures and knowledge to achieve objectives | ☐ | ☒ | ☐ | ☐ |

Evaluator's Comments:

In addition to asking questions, Sakic needs to make recommendations regarding issues that come up.

4

# KNOWLEDGE AND SKILLS ASSESSMENT

C. **TASK MANAGEMENT:** How effective is the employee in setting goals, establishing controls, and monitoring progress for himself/herself and work unit? Check off the performance level and comment on the following applicable areas at the bottom of the page.

## PERFORMANCE LEVEL

|  | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations | Not Applicable |
|---|---|---|---|---|
| • works effectively on multiple assignments at the same time | ☐ | ☒ | ☐ | ☐ |
| • uses initiative and resourcefulness in achieving objectives | ☐ | ☒ | ☐ | ☐ |
| • uses all available resources effectively to achieve objectives | ☐ | ☒ | ☐ | ☐ |
| • produces quality work within established time frames | ☐ | ☐ | ☒ | ☐ |
| • produces expected quantity of work within established time frames | ☐ | ☒ | ☐ | ☐ |
| • exhibits flexibility under pressure | ☐ | ☒ | ☐ | ☐ |
| • works responsibly and independently with given supervision | ☐ | ☒ | ☐ | ☐ |

Evaluator's Comments:

The quality of Sakie's work still needs more improvement. She needs to proof and double check each item she works on consistently so that it becomes part of her normal routine. Reducing social distractions would help in this regard. The volume of work Sakie produces is acceptable.

5

## KNOWLEDGE AND SKILLS ASSESSMENT

**D.**  **SERVICE:** How service-oriented is the employee? Does the employee effectively service internal and external contacts? Check off the performance level and comment on the following applicable areas at the bottom of the page. Please use the comment section to give your overall collective impression of service attitude, expressions of service activities and other service issues that you have.

### PERFORMANCE LEVEL

| | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations | Not Applicable |
|---|---|---|---|---|
| maintains an approachable attitude and image | ☐ | ☒ | ☐ | ☐ |
| responds timely to written documentation and requests | ☐ | ☒ | ☐ | ☐ |
| responds timely to oral requests | ☐ | ☒ | ☐ | ☐ |
| actively follows up on service requests or referrals | ☐ | ☒ | ☐ | ☐ |
| patient and pleasant while assisting others | ☐ | ☒ | ☐ | ☐ |
| offers to "pitch in" and help others | ☐ | ☒ | ☐ | ☐ |
| able to offer suggestions and direct if unable to help | ☐ | ☒ | ☐ | ☐ |
| adherence to company policies | ☐ | ☒ | ☐ | ☐ |

Evaluator's Comments:

Sakie's attendance, personal calls and internet usage remain acceptable and her punctuality has improved.

6

# OBJECTIVES FOR NEXT EVALUATION PERIOD

Using the job description and department goals as a guide, what specific projects, activities and results do you expect for the employee over the next evaluation period? Include specific areas for development. Also explain if the objectives as noted in the last evaluation have changed.

The objectives have remained the same.

# DEVELOPMENT

1.     What work related experiences, training or education did the employee complete during this evaluation period that you feel helped to develop his/her performance?

Not applicable at this time.

2.     What work related experiences, training or education do you feel would help the employee in his/her future job performance?

Sakie needs to avoid distractions and concentrate on the work in front of her. I suggest that she reorganize her cubicle and Microsoft In Box to help her in this area. Also, the transition to Imaging should help Sakie's performance over the next year.

## ADDITIONAL COMMENTS

Evaluator's Comments (Include items to be discussed during the evaluation that are not specifically included in previous parts of this evaluation):

Sakie participated in the preparation of Underwriting files for back scanning for the past several months and continues to do so, helping the Division stay on its timetable for implementation.

I believe that Sakie has the ability to improve her performance. She needs to stay focused on the tasks at hand.

Employee's Comments:

My evaluation was discussed with me:    8/16/06
_____
                                    Date

Approvals:

_____ 8/4/06
                                    Date

_____
                                    Date

_____ 8/14/06
                                    Date

# Illinois State Medical Society
## Illinois State Medical Insurance Services, Inc.
### Employee Self Evaluation Form

NAME _Sahee Scott_       DATE _6/2/06_

TITLE _Secretary_        EVALUATION PERIOD _7/1/06_

DIVISION _C_             EVALUATOR _L. HUTCHINSON_

*To the employee:*

The performance evaluation takes place when you and your supervisor discuss your job and how you are doing.

## THIS SELF EVALUATION IS OPTIONAL

If you choose to complete this evaluation, return it to your supervisor by: _____ . Your supervisor is also completing a form, and during your appraisal interview, both evaluations will be discussed.

[X] Please check here if you do not wish to complete this evaluation. Sign below and return to your supervisor by the date indicated above.

Signature _Sahee Scott_            Date _6/2/06_

*ACCOMPLISHMENTS/AREAS FOR DEVELOPMENT:*

Using your job responsibilities and objectives established within your division, please describe your accomplishments and contributions to your division and the company during this evaluation period. What were the expected results? To what extent did you exceed, meet or not meet the expected results? Also describe specific areas of performance that you would like to develop.

1.    Please rate yourself on the following areas and list any areas you feel need improvement:

a) job knowledge:

b) productivity & quality of work:

c) flexibility & response to working demands:

d) working relations with others (include peers, supervisors, internal & external contacts):

e) adherence to company policies:

2.    What work-related experiences, training or education did you complete during this evaluation period that you feel helped to develop your performance?

3.    What work-related experiences, training or education do you feel would help you in your future performance?

4.    What other performance matters would you like to share with your supervisor?

## POSITION DESCRIPTION

## ILLINOIS STATE MEDICAL SOCIETY

**Position Title:**  Underwriting Secretary

**Status:**  Non-Exempt

**Division:**  Underwriting

**Reports to:**  AVP, Support

### Basic Function

To provide secretarial support services to the Underwriting Division.

### Specific Position Responsibilities

- Provides support services to the Underwriting Staff which includes telephone backup, word processing, photocopying, and faxing.
- Screens and processes Loss History and Certificates of Insurance requests for policyholders.
- Screens new business applications, incoming correspondence and Underwriting Profile Update forms; copies applications for mailing with policy documents.
- Distributes computer output, processes requests for new business kits and other informational materials and handles Certificate of Mailing letters.
- Maintains inventory of division's supplies and prepares purchase orders.
- Investigates and processes returned mail.
- Enters policyholder data into the computer system (e.g., rate sheets).
- Provides quality service to policyholders and staff.
- Additional duties and responsibilities as required.

### Internal Contacts

Finance, File Room, Information Systems, Claims, Mail Room, Print Shop and ISMS Membership.

### External Contacts

Illinois Department of Professional Regulations, hospitals, physicians and their office staff, county medical societies and managed care entities.

### Desirable Qualifications and Experience

High school diploma. Accurate typing, word processing and spreadsheet skills required. Excellent organization and communication skills with professional telephone demeanor. Detail-oriented individual. Experience with data entry and windows based computer systems. One to two years secretarial and/or customer service experience. Team player, hardworking, flexible, and willingness to pitch in.

# Illinois State Medical Society
# Illinois State Medical Insurance Services, Inc.
## Performance Evaluation Form
## Non-Supervisory

| | | | |
|---|---|---|---|
| EMPLOYEE NAME | S. Scott | DATE | 7/18/05 |
| CURRENT TITLE | U/W Secretary | DIVISION | C |
| CURRENT STATUS | Non-Exempt | HIRE DATE | 6/16/04 |
| EVALUATOR | L. Hutchinson | EVALUATION PERIOD | 12/04-6/05 |

*To the evaluator:*

The above employee has received a Performance Self Evaluation Form and has been asked to submit an assessment of accomplishments and areas for improvement within two weeks. The employee self evaluation form is optional. However, any information the employee wishes to provide should be returned directly to you and submitted with the other portions of the evaluation.

Please complete all of the sections. If an item does not apply to an employee, indicate by checking the appropriate box. Feel free to attach additional information if necessary. In your evaluation, consider objectives achieved, quality of work, contributions to the company and any special knowledge or skills demonstrated by the employee during this evaluation period. Where the employee has failed to meet expectations, please be specific and include any supporting documents.

When the evaluation has been completed, please submit it to your Division Director or Vice President for the appropriate signatures. It will then be returned to you for discussion with the employee. After the evaluation has been discussed, reviewed and signed by the employee, it should be forwarded to the Office of Human Resources for processing.

*Definitions of Performance Levels:*

- **EXCEEDS EXPECTATIONS:** Exceptional performance maintained in key areas of accountability and consistently makes significant contributions above and beyond what is expected.

- **MEETS EXPECTATIONS:** Fully proficient performance in key areas of accountability.

- **DOES NOT MEET EXPECTATIONS:** Job performance deficient in most key areas of accountability.

When determining the appropriate performance level of the employee during the evaluation period, the phrase "key areas of accountability" is important. The evaluator takes into account:

1. Areas of responsibility and performance measures.

2. How the employee is rated against the criteria described in the evaluation form.

3. Other established objectives, activities or achievements for which the employee should be recognized.

1

## OBJECTIVES

Using the employee's previous performance evaluation or job description as a guide, list objectives and expected results. For each objective, check off the employee's performance level during this evaluation period. Please consider the employee's self evaluation when completing this section. Feel free to add as many objectives as necessary to accurately reflect the performance objectives of each employee.

PERFORMANCE LEVEL

| OBJECTIVES AND EXPECTED RESULTS: | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations |
|---|---|---|---|
| 1.Screens and distributes incoming new business applications; sets up computer record and underwriting file. Also processes incoming correspondence, including faxes and e-mails. Expectations are that accurate information is provided to staff in a timely fashion, correct data entry and an indepth knowledge of applicable computer programs. | ☐ | ☒ | ☐ |
| 2.Provides secretarial services to the AVP, Support; assists in the quarterly commission process. Expectations are professional phone etiquette, accurate typing and a solid knowledge of office procedures and equipment. | ☐ | ☒ | ☐ |
| 3.Processes request for loss histories and certificates of insurance. Expectations are a proper handling of these within the required timeframe. | ☐ | ☒ | ☐ |
| 4.Provides backup to the other secretaries if workload is heavy or a priority or in their absence. Expectations are good time management, organization and a positive attitude. | ☐ | ☒ | ☐ |
| 5.n/a | ☐ | ☐ | ☐ |
| 6.n/a | ☐ | ☐ | ☐ |
| 7.n/a | ☐ | ☐ | ☐ |

2

## KNOWLEDGE AND SKILLS ASSESSMENT

A.  **COMMUNICATION:** How well does the employee communicate with others both within the company and with other organizations?  Check off the performance level and comment on the following applicable areas at the bottom of the page.

**PERFORMANCE LEVEL**

| | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations | Not Applicable |
|---|---|---|---|---|
| • writes clearly and concisely | ☐ | ☐ | ☐ | ☒ |
| • communicates verbal information clearly and effectively | ☐ | ☒ | ☐ | ☐ |
| • maintains ongoing communication with supervisor | ☐ | ☒ | ☐ | ☐ |
| • maintains ongoing communication with others | ☐ | ☒ | ☐ | ☐ |
| • maintains effective communication with other units within the company | ☐ | ☒ | ☐ | ☐ |
| • listens effectively and follows work instructions | ☐ | ☒ | ☐ | ☐ |

Evaluator's Comments:

# KNOWLEDGE AND SKILLS ASSESSMENT

**B.**  **PROBLEM SOLVING:**  How effective is the employee in identifying, analyzing and solving problems?  Evaluate the employee's ability to reach logical conclusions based on the evidence available.  Check off the performance level and comment on the following applicable areas at the bottom of the page.

## PERFORMANCE LEVEL

|  | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations | Not Applicable |
|---|:---:|:---:|:---:|:---:|
| • identifies and diagnoses problems | ☐ | ☐ | ☐ | ☒ |
| • considers all reasonable alternatives and develops effective solutions | ☐ | ☒ | ☐ | ☐ |
| • analyzes and interprets data, integrating information from various sources, using the appropriate level of detail | ☐ | ☒ | ☐ | ☐ |
| • uses practical procedures and knowledge to achieve objectives | ☐ | ☒ | ☐ | ☐ |

Evaluator's Comments:

## KNOWLEDGE AND SKILLS ASSESSMENT

C.    **TASK MANAGEMENT:** How effective is the employee in setting goals, establishing controls, and monitoring progress for himself/herself and work unit? Check off the performance level and comment on the following applicable areas at the bottom of the page.

### PERFORMANCE LEVEL

| | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations | Not Applicable |
|---|---|---|---|---|
| works effectively on multiple assignments at the same time | ☐ | ☒ | ☐ | ☐ |
| uses initiative and resourcefulness in achieving objectives | ☐ | ☐ | ☐ | ☒ |
| uses all available resources effectively to achieve objectives | ☐ | ☒ | ☐ | ☐ |
| produces quality work within established time frames | ☐ | ☐ | ☒ | ☐ |
| produces expected quantity of work within established time frames | ☐ | ☒ | ☐ | ☐ |
| exhibits flexibility under pressure | ☐ | ☒ | ☐ | ☐ |
| works responsibly and independently with given supervision | ☐ | ☒ | ☐ | ☐ |

Evaluator's Comments:

The quality of Sakie's work (i.e. typing output and new business screening) has diminished during this review period. The quantity of work is still acceptable, but she needs to balance the work volume with the quality by double-checking and proofing more carefully.

## KNOWLEDGE AND SKILLS ASSESSMENT

D.    **SERVICE:**  How service-oriented is the employee?  Does the employee effectively service internal and external contacts?  Check off the performance level and comment on the following applicable areas at the bottom of the page.  Please use the comment section to give your overall collective impression of service attitude, expressions of service activities and other service issues that you have.

### PERFORMANCE LEVEL

| | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations | Not Applicable |
|---|---|---|---|---|
| • maintains an approachable attitude and image | ☐ | ☒ | ☐ | ☐ |
| • responds timely to written documentation and requests | ☐ | ☒ | ☐ | ☐ |
| • responds timely to oral requests | ☐ | ☒ | ☐ | ☐ |
| • actively follows up on service requests or referrals | ☐ | ☒ | ☐ | ☐ |
| • patient and pleasant while assisting others | ☐ | ☒ | ☐ | ☐ |
| • offers to "pitch in" and help others | ☐ | ☒ | ☐ | ☐ |
| • able to offer suggestions and direct if unable to help | ☐ | ☐ | ☐ | ☒ |
| • adherence to company policies | ☐ | ☒ | ☐ | ☐ |

Evaluator's Comments:

Sakie's attendance, personal calls and internet usage are acceptable; however, her punctuality needs improvement.

6

## OBJECTIVES FOR NEXT EVALUATION PERIOD

Using the job description and department goals as a guide, what specific projects, activities and results do you expect for the employee over the next evaluation period? Include specific areas for development. Also explain if the objectives as noted in the last evaluation have changed.

The objectives are the same from the last review.

## DEVELOPMENT

1.      What work related experiences, training or education did the employee complete during this evaluation period that you feel helped to develop his/her performance?

Not applicable at this time.

2.      What work related experiences, training or education do you feel would help the employee in his/her future job performance?

Sakie needs to concentrate on improving her time management and organizational skills. Also, she needs to proof her work consistently before she passes it along. To assist in improving her performance, she needs to develop a daily task schedule and adhere to it. Also, she will need to meet daily with me at 9 am, 11 am, 2 pm and 4 pm. to discuss her work issues.

*What work issues?*

7

## ADDITIONAL COMMENTS

Evaluator's Comments (Include items to be discussed during the evaluation that are not specifically included in previous parts of this evaluation):

I believe that Sakie can improve her performance. She has a pleasant personality, but needs to focus more on her work and less on distractions on the floor.

Employee's Comments:

My evaluation was discussed with me:

_____ 7/26/05
                                   Date

**Approvals:**

_Janna C. Hutchinson_    7/8/05
                                     Date

_____ 7/25/05
                                     Date

_____
                                     Date

## Illinois State Medical Society
## Illinois State Medical Insurance Services, Inc.
## Employee Self Evaluation Form

| | | | |
|---|---|---|---|
| NAME | Sakie Scott | DATE | 06/14/05 |
| TITLE | UW Secretary | EVALUATION PERIOD | 07/01/05 |
| DIVISION | C | EVALUATOR | Laura Hutchinson |

*To the employee:*

The performance evaluation takes place when you and your supervisor discuss your job and how you are doing.

### THIS SELF EVALUATION IS OPTIONAL

If you choose to complete this evaluation, return it to your supervisor by: _____ . Your supervisor is also completing a form, and during your appraisal interview, both evaluations will be discussed.

☐ Please check here if you do not wish to complete this evaluation. Sign below and return to your supervisor by the date indicated above.

Signature _____ Date _____

*ACCOMPLISHMENTS/AREAS FOR DEVELOPMENT:*

Using your job responsibilities and objectives established within your division, please describe your accomplishments and contributions to your division and the company during this evaluation period. What were the expected results? To what extent did you exceed, meet or not meet the expected results? Also describe specific areas of performance that you would like to develop.

1.    Please rate yourself on the following areas and list any areas you feel need improvement:

a) job knowledge:

I feel that I have a working knowledge of the work assignments give to me.

b) productivity & quality of work:

I am able to ususally complete assignments on a daily basis.

c)  flexibility & response to working demands:

I am flexible and able to adapt to any situation.

d)  working relations with others (include peers, supervisors, internal & external contacts):

I feel that I have a very positive working relationship with my peers, supervisor and other contacts.

e)  adherence to company policies:

I adhere to company policies to the best of my knowledge.

2.    What work-related experiences, training or education did you complete during this evaluation period that you feel helped to develop your performance?

Organizational workshop.  I feel this workshop enhanced my ability to keep things organized when working.

3.    What work-related experiences, training or education do you feel would help you in your future performance?

More advanced knowledge of Excel, and review of other positions.

4.    What other performance matters would you like to share with your supervisor?

It has been a real pleasure working with ISMIE.  My co-workers have been extremely helpful during this past year in assisting me with different situations as they arise.

# POSITION DESCRIPTION

## ILLINOIS STATE MEDICAL SOCIETY

**Position Title:**   Underwriting Secretary

**Status:**   Non-Exempt

**Division:**   Underwriting

**Reports to:**   Underwriting ~~Supervisor~~ Manager AVP, or Support ~~Supervisor~~ as determined

### Basic Function

To provide secretarial support services to the Underwriting Division.

### Specific Position Responsibilities

- Provides support services to the Underwriting Staff which includes telephone backup, word processing, photocopying, faxing and preparation of clinic proposal folders and look up of proposal physician information.
- Enter group profiles for the submission.
- Screens and processes Claim History and Certificates of Insurance requests for policyholders.
- Screens new business applications, incoming correspondence and Underwriting Profile Update forms; copies applications for mailing with policy documents.
- Accepting simple new business applications and mailing documents.
- Distributes computer output, processes requests for new business kits and other informational materials and handles Certificate of Mailing letters.
- Maintains inventory of division's supplies and prepares purchase orders.
- Establishes and maintains broker identification information for applicable policy computer records and underwriting files.
- Enters policyholder data into the computer system (e.g., rate sheets, action requests).
- Provides quality service to policyholders and staff.
- Additional duties and responsibilities as required.

### Internal Contacts

Finance, File Room, Information Systems, Claims, Mail Room, Print Shop and ISMS Membership.

Job Description subject to continuous changes

Evaluation
06/11 - 12/16/04

A

# Illinois State Medical Society
## Illinois State Medical Insurance Services, Inc.
### Performance Evaluation Form
### Non-Supervisory

| | | | | |
|---|---|---|---|---|
| EMPLOYEE NAME | Sakie A. Scott | DATE | 12/28/04 | |
| CURRENT TITLE | U/W Secretary | DIVISION | C | |
| CURRENT STATUS | Non-Exempt | HIRE DATE | 6/16/04 | |
| EVALUATOR | Laura Hutchinson *LdH* | EVALUATION PERIOD | 6/16-12/16/04 | |

*To the evaluator:*

The above employee has received a Performance Self Evaluation Form and has been asked to submit an assessment of accomplishments and areas for improvement within two weeks. The employee self evaluation form is optional. However, any information the employee wishes to provide should be returned directly to you and submitted with the other portions of the evaluation.

Please complete all of the sections. If an item does not apply to an employee, indicate by checking the appropriate box. Feel free to attach additional information if necessary. In your evaluation, consider objectives achieved, quality of work, contributions to the company and any special knowledge or skills demonstrated by the employee during this evaluation period. Where the employee has failed to meet expectations, please be specific and include any supporting documents.

When the evaluation has been completed, please submit it to your Division Director or Vice President for the appropriate signatures. It will then be returned to you for discussion with the employee. After the evaluation has been discussed, reviewed and signed by the employee, it should be forwarded to the Office of Human Resources for processing.

*Definitions of Performance Levels:*

- **EXCEEDS EXPECTATIONS:** Exceptional performance maintained in key areas of accountability and consistently makes significant contributions above and beyond what is expected.

- **MEETS EXPECTATIONS:** Fully proficient performance in key areas of accountability.

- **DOES NOT MEET EXPECTATIONS:** Job performance deficient in most key areas of accountability.

When determining the appropriate performance level of the employee during the evaluation period, the phrase "key areas of accountability" is important. The evaluator takes into account:

1.   Areas of responsibility and performance measures.

2.   How the employee is rated against the criteria described in the evaluation form.

3.   Other established objectives, activities or achievements for which the employee should be recognized.



## OBJECTIVES

Using the employee's previous performance evaluation or job description as a guide, list objectives and expected results. For each objective, check off the employee's performance level during this evaluation period. Please consider the employee's self evaluation when completing this section. Feel free to add as many objectives as necessary to accurately reflect the performance objectives of each employee.

**PERFORMANCE LEVEL**

| OBJECTIVES AND EXPECTED RESULTS: | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations |
|---|---|---|---|
| 1. Screens and distributes incoming new business applications; sets up computer record and underwriting file. Also processes incoming correspondence, including faxes and e-mails. Expectations are that accurate information is provided to staff in a timely fashion, correct data entry and an indepth knowledge of applicable computer programs. | ☐ | ☒ | ☐ |
| 2. Provides secretarial services to the AVP, Support; assists in the quarterly commission process. Expectations are professional phone etiquette, accurate typing and a solid knowledge of office procedures and equipment. | ☐ | ☒ | ☐ |
| 3. Processes request for loss histories and certificates of insurance. Expectations are a proper handling of these within the required timeframe. | ☐ | ☒ | ☐ |
| 4. Provides backup to the other secretaries if workload is heavy or a priority or in their absence. Expectations are good time management, organization and a positive attitude. | ☐ | ☒ | ☐ |
| 5. n/a | ☐ | ☐ | ☐ |
| 6. n/a | ☐ | ☐ | ☐ |
| 7. n/a | ☐ | ☐ | ☐ |

2

## KNOWLEDGE AND SKILLS ASSESSMENT

A.  **COMMUNICATION:** How well does the employee communicate with others both within the company and with other organizations? Check off the performance level and comment on the following applicable areas at the bottom of the page.

### PERFORMANCE LEVEL

| | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations | Not Applicable |
|---|---|---|---|---|
| • writes clearly and concisely | ☐ | ☐ | ☐ | ☒ |
| • communicates verbal information clearly and effectively | ☐ | ☒ | ☐ | ☐ |
| • maintains ongoing communication with supervisor | ☐ | ☒ | ☐ | ☐ |
| • maintains ongoing communication with others | ☐ | ☒ | ☐ | ☐ |
| • maintains effective communication with other units within the company | ☐ | ☒ | ☐ | ☐ |
| • listens effectively and follows work instructions | ☐ | ☒ | ☐ | ☐ |

Evaluator's Comments:

Sakic communicates in a pleasant and professional manner.

3

## KNOWLEDGE AND SKILLS ASSESSMENT

**B.**     **PROBLEM SOLVING:**  How effective is the employee in identifying, analyzing and solving problems?  Evaluate the employee's ability to reach logical conclusions based on the evidence available.  Check off the performance level and comment on the following applicable areas at the bottom of the page.

**PERFORMANCE LEVEL**

| | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations | Not Applicable |
|---|---|---|---|---|
| identifies and diagnoses problems | ☐ | ☐ | ☐ | ☒ |
| considers all reasonable alternatives and develops effective solutions | ☐ | ☒ | ☐ | ☐ |
| analyzes and interprets data, integrating information from various sources, using the appropriate level of detail | ☐ | ☒ | ☐ | ☐ |
| uses practical procedures and knowledge to achieve objectives | ☐ | ☒ | ☐ | ☐ |

Evaluator's Comments:

As a new employee, Sakie recognizes when she needs to ask for clarification of a procedure or if something is out of the ordinary.

## KNOWLEDGE AND SKILLS ASSESSMENT

**C.** **TASK MANAGEMENT:** How effective is the employee in setting goals, establishing controls, and monitoring progress for himself/herself and work unit? Check off the performance level and comment on the following applicable areas at the bottom of the page.

### PERFORMANCE LEVEL

| | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations | Not Applicable |
|---|---|---|---|---|
| • works effectively on multiple assignments at the same time | ☐ | ☒ | ☐ | ☐ |
| • uses initiative and resourcefulness in achieving objectives | ☐ | ☐ | ☐ | ☒ |
| • uses all available resources effectively to achieve objectives | ☐ | ☒ | ☐ | ☐ |
| • produces quality work within established time frames | ☐ | ☒ | ☐ | ☐ |
| • produces expected quantity of work within established time frames | ☐ | ☒ | ☐ | ☐ |
| • exhibits flexibility under pressure | ☐ | ☒ | ☐ | ☐ |
| • works responsibly and independently with given supervision | ☐ | ☒ | ☐ | ☐ |

Evaluator's Comments:

Sakic has completed the majority of her training and is managing her current duties well.

5



# KNOWLEDGE AND SKILLS ASSESSMENT

**D.**   **SERVICE:**  How service-oriented is the employee?  Does the employee effectively service internal and external contacts?  Check off the performance level and comment on the following applicable areas at the bottom of the page.  Please use the comment section to give your overall collective impression of service attitude, expressions of service activities and other service issues that you have.

## PERFORMANCE LEVEL

| | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations | Not Applicable |
|---|---|---|---|---|
| • maintains an approachable attitude and image | ☐ | ☒ | ☐ | ☐ |
| • responds timely to written documentation and requests | ☐ | ☒ | ☐ | ☐ |
| • responds timely to oral requests | ☐ | ☒ | ☐ | ☐ |
| • actively follows up on service requests or referrals | ☐ | ☒ | ☐ | ☐ |
| • patient and pleasant while assisting others | ☐ | ☒ | ☐ | ☐ |
| • offers to "pitch in" and help others | ☐ | ☒ | ☐ | ☐ |
| • able to offer suggestions and direct if unable to help | ☐ | ☐ | ☐ | ☒ |
| • adherence to company policies | ☐ | ☒ | ☐ | ☐ |

Evaluator's Comments:

Sakic's punctuality and attendance are good; personal telephone calls and internet usage are minimal.

6

## OBJECTIVES FOR NEXT EVALUATION PERIOD

Using the job description and department goals as a guide, what specific projects, activities and results do you expect for the employee over the next evaluation period? Include specific areas for development. Also explain if the objectives as noted in the last evaluation have changed.

Sakie will continue on with her training during our busy July 1 renewal season.

## DEVELOPMENT

1.     What work related experiences, training or education did the employee complete during this evaluation period that you feel helped to develop his/her performance?

in training during first 6 months

2.     What work related experiences, training or education do you feel would help the employee in his/her future job performance?

continued training in all aspects of support work

## ADDITIONAL COMMENTS

Evaluator's Comments (Include items to be discussed during the evaluation that are not specifically included in previous parts of this evaluation):

Sakie has a positive attitude toward her work and a helpful disposition toward her peers and management.

Employee's Comments:

My evaluation was discussed with me:

_____ 1/3/05
                            Date

**Approvals:**

_____ 1/3/05
                            Date

_____
                            Date

_____
                            Date

# Illinois State Medical Society
## Illinois State Medical Insurance Services, Inc.
### Employee Self Evaluation Form

NAME    Sakie Scott          DATE   12/20/04

TITLE    Underwriting Secretary      EVALUATION PERIOD   7/1/04-12/31/04

DIVISION   C          EVALUATOR   Laura Hutchinson

*To the employee:*

The performance evaluation takes place when you and your supervisor discuss your job and how you are doing.

### THIS SELF EVALUATION IS OPTIONAL

If you choose to complete this evaluation, return it to your supervisor by: _____ . Your supervisor is also completing a form, and during your appraisal interview, both evaluations will be discussed.

☐ Please check here if you do not wish to complete this evaluation. Sign below and return to your supervisor by the date indicated above.

Signature _____    Date _____

*ACCOMPLISHMENTS/AREAS FOR DEVELOPMENT:*

Using your job responsibilities and objectives established within your division, please describe your accomplishments and contributions to your division and the company during this evaluation period. What were the expected results? To what extent did you exceed, meet or not meet the expected results? Also describe specific areas of performance that you would like to develop.

During these past 6 months, I feel that I have brought a positive attitude towards my job responsibilities. I feel that my timeliness in processing new business has helped to keep our unit on a positive level with our relationships with doctors, brokers and other outside entities. I hope that the expected results were to be able to process my work in a timely manner. I would like to become more efficient with Microsoft Word and Microsoft Excel. In the future, I will work on improving my proofreading skills.

1. **Please rate yourself on the following areas and list any areas you feel need improvement:**

a. **Job knowledge:**

I feel that I have a working knowledge of my day-to-day responsibilities. I feel quite comfortable in processing New Biz applications, Certificate of Mailing, Reinitializing policies, and Loss History letters. I also feel comfortable when processing back-up work for Carol which includes the Correspondence, Faxes, and End of Day.

b. **productivity and quality of work:**

I feel that I am able to keep up with the flow of work. Usually I am able to process all incoming New Biz applications in a single day as well as typing assignments. I have never been behind or had a significant back log of work in my Inbox from the previous day unless I am working on another specific assignment. I also need to slow down and proofread my work a little more closely at times.

c. **flexibility and response to working demands:**

I am able to feel requests at the given time unless there is an unusual circumstance which might require my immediate attention.

d. **working relations with others (include peers, supervisors, internal and external contacts):**

My co-workers are some of the nicest people I've been around and that makes it easy for me to interact with them on a professional and personal level.

e. **adherence to company policies:**

I feel that I do implement company policies in all of the tasks that I perform.

2. **What work-related experiences, training or education do you feel would help you in your future performance?**

I feel that I could use extra training in Microsoft Excel.

3. **What other performance matters would you like to share with your supervisor?**

I would just like to thank my supervisor for allowing me this opportunity to join the underwriting division. I really enjoy my job and I feel when you enjoy your job, you are able to perform your duties in a positive way.

Z:\secrtary\scott\SakiesEvaluation

# INTEROFFICE MEMO

**DATE:**      July 1, 2004

**TO:**        Sakie Scott

**FROM:**      Laura C. Hutchinson

**SUBJECT:**   Training Schedule 7/1/04 to 7/30/04

| Date | Activity | Trainer | Time |
|------|----------|---------|------|
| 7/1/04 | Orientation | Hutchinson | |
| | Introductions and Tour of Various Departments | Benedict | |
| | Lunch | | @11:30 p.m. |
| | Telephone System Overview | Stevan | @ 2:00 p.m. |
| | PC Overview | Hartman | @ 3:00 p.m. |
| | Telephone Support | Benedict | |
| 7/2/04 to 7/16/04 | New Business Screening | Donovan | @ 8:30 a.m. |
| | Lunch | | @11:30 a.m. |
| | Telephone Support | Benedict | @12:30 p.m. |
| | Certificate of Mailing and New Business Kits | Benedict | @ 3:00 p.m. |
| 7/19/04 to 7/30/04 | Loss History Requests (Active Polices) and New Business | Donovan | @ 8:30 a.m. |
| | Lunch | | @ 11:30 a.m. |
| | Certificate of Mailing and New Business Kits | Benedict | @ 3:00 p.m. |

Z:\secrtary\Smith_Carol\hutchisoncorrespondence\sakietraining.doc

Report Run Date:    Monday, November 26, 2007
Report Run Time:    11:27:56AM

# Holiday Address List

| Name | Address | Phone | Spouse |
|------|---------|-------|--------|
| Adams, Cheryl A | 48 Dogwood Court,  Calumet City, IL 60409 | (708)849-5894 | |
| Albin, Susan L | 910 Suffield,  Northbrook, IL 60062 | (847)272-8559 | ; |
| Allphin, Alan J | 5828 Webster Street,  Downers Grove, IL 60516 | (630)810-0196 | King, Carole |
| Anderson-Miller, Julia | 1426 West Carmen,  Chicago, IL 60640 | (773)275-8156 | Miller, Bruce I. |
| Argyris, Spero G | 1032 Lakewood Drive,  Bartlett, IL 60103 | (630)289-7233 | Argyris, Pamela |
| Artemann, Marcia K | 1660 N. LaSalle Drive, Apt. 2012  Chicago, IL 60614 | (312)440-9927 | |
| Barnes, Melvin L | 14222 S. La Salle St.,  Riverdale, IL 60670 | (708)250-8218 | |
| Beguristain, Michelle M | 1154 Cougar Run,  Manteno, IL 60950 | (815)468-7198 | Beguristain, Carlos M |
| Benbennick, Richard J | 1239 N Race,  Arlington Heights, IL 60004 | (847)463-6122 | Benbennick, Brenda |
| Benedict, Corliss | 2300 Windsor Mall,  Park Ridge, IL 60068 | (847)698-2734 | ~ ~ |
| Bennett, Janet E | 11237 Heather Dr.,  Dawson, IL 62520 | (217)364-9258 | Bennett, Michael D. |
| Bennett-Douse, Brenda G | 1111 South Laflin, Unit # 1604  Chicago, IL 60607 | (312)733-5379 | Douse, Jerome |
| Bentley, David A | 3026 N. Halsted, #3C  Chicago, IL 60657 | (309)648-8282 | |
| Blake, William H | 15941 Haven Avenue,  Orland Park, IL 60487 | (708)460-8298 | |
| Bleeden, Sarah | 924 N. Noble St., Apt. 2R  CHICAGO, IL 60622 | (773)339-7598 | |
| Block, Carl H | 302 Uvedale Rd.,  Riverside, IL 60546 | (708)442-7422 | Block, Joanna |
| Boone, Holly A | 14151 Chicago Bloomington Tr.,  Lockport, IL 60491 | (708)301-0225 | ~, ~ |
| Bosie, Lou W | 990 Brittin Place,  Sherman, IL 62684 | (217)496-2911 | Bosie, Steve |

| Name | Address | Phone | Spouse |
|------|---------|-------|--------|
| Brattstrom, Maria Veronica | 17949 Hood Avenue,   Homewood, IL  60430 | (708)960-4066 | Brattstrom, Sandor |
| Brubaker, Sharon | 3307 W. 78th Place,   Merrillville, IN  46410 | (219)736-0501 | Brubaker, Dennis |
| Bukowiecki, Joanne | 6835 Forestview Drive,   Oak Forest, IL  60452 | (708)535-9562 | Bukowiecki, Kenneth |
| Bules, Gina | 1811 N. 72nd Court,   Elmwood Park, IL  60707 | (708)583-0415 | Bules, Rick |
| Burnett, Alison A | 1624 S. Noble Ave.,   Springfield, IL  62704 | (217)787-6679 | |
| Byrne, Laura M | 10923 S. Longwood Drive, #3  Chicago, IL  60643 | (708)612-3977 | |
| Calhoun, Evelyn | 14129 Parrish Avenue,   Cedar Lake, IN  46303 | (219)374-9894 | Calhoun, Joey |
| Campbell, Terence L | 5532 S. Everett,   Chicago, IL  60637 | (773)752-2763 | |
| Carli, Giovanna | 10528 Ridge Cove, Unit 22A  Chicago Ridge, IL  60415 | (708)361-9697 | |
| Che, Peter | 210 Coyote Trail,   Cary, IL  60013 | (847)830-6881 | Che, Nee pen-lin |
| Chmielewski, Eileen | 123 Harrington Ave., Apt. 1B  Crown Point, IN  46307 | (219)472-1713 | |
| Clement, Katherine | 2431 Oakland Circle, Apt. A  Morris, IL  60450 | (815)955-5950 | |
| Clinkert, Jr., William L | 1365 N. County Line Road,   Michigan City, IN  46360 | (219)210-3356 | Clinkert, Lynne |
| Coghlan, Sheila B | 17341 Grange,   Orland Park, IL  60462 | (708)479-8905 | Green, Bruce |
| Combes, Lisa Marie T | 525 W. Hawthorne Place, #208  Chicago, IL  60657 | (773)975-5680 | |
| Cook, Gail B | 465 Turtle Dove Dr.,   Sherman, IL  62684 | (217)496-3399 | |
| Correa, Maria R | 1912 Nottingham Road,   Woodridge, IL  60517 | (630)541-8478 | Correa, Marc |
| Cowan, Lisa D | 2352 East 70th Street, Apt. 3E  Chicago, IL  60649 | (773)955-8935 | Cowan, Alexander |
| Cowens, Brenda | 15516 S. Drexel,   Dolton, IL  60419 | (708)849-7689 | |
| Dancy, Samantha | 6221 S. Morgan,   Chicago, IL  60621 | (773)470-6303 | |
| Daniello, Theresa K | 231 Hillcrest Avenue,   Addison, IL  60101 | (630)941-9145 | Daniello, Chuck |

15941 HAVEN AVENUE · ORLAND HILLS, IL 60487
PHONE 708-307-2455 OR (708) 460-8298 · E-MAIL WHBLAKE@GMAIL.COM

# WILLIAM H. BLAKE

## OBJECTIVE

To obtain a position in the business of insurance, in order to increase my knowledge of the industry and allow me to apply my education towards future positions in the field

## RELATED EXPERIENCE

June 2004–August 2004       *3 mos.*       James, Gustafson, & Thompson, Ltd
Naperville, Illinois
**Legal Assistant**
- Typed up subpoenas
- Filed motions at the Cook County, Will County, and DuPage County courthouses
- Created organized records of pleadings from previous cases

## EDUCATION

August 2003- May 2005        University of Illinois at Urbana-Champaign
Urbana, Illinois
**Bachelor of Science in Political Science**
- Grade Point Average: 3.02/4.0

August 2001- May 2003        University of Illinois at Chicago
Chicago, Illinois

## OTHER EXPERIENCE

Sept 2006- present       *1 yr.*       Midwest Bank & Trust Company
Downers Grove, Illinois
**Universal Banker**
- Functioning as both a teller and a personal banker
- Providing high quality customer service through processing financial transactions as well as referring customers to bank services
- Opening new depository and certificate accounts

Aug 2002 – Sept 2006       *4 yrs*       Bakers Square
Orland Park, Illinois
**Server**
- Communicated with customers and co-workers to provide the best possible dining experience


COPY


EXHIBIT
C
ALL-STATE LEGAL

# GREG DAVIS

722 Ward Parkway, Apt. 201
Kansas City, MO 64112
312-545-6207

## EMPLOYMENT

### ISMIE MUTUAL INSURANCE COMPANY
*Underwriting Technician - May 1998 – July 13, 2007*
Provide administrative support for the two Assistant Vice Presidents, Technical and Administrative of Underwriting. Duties include: processing and proofreading reports and correspondence; maintain vital statistical reports including the Closed Claim Reporting system. Prepare agendas and distribute reports for PREP Committee and Committee on Underwriting while coordinating with Meeting Services for the smooth flow of those meetings. I maintain and distribute insurance policies and billing to our policyholders for Professional Liability Insurance and Employment Practice Liability Insurance. Screen incoming PREP materials (QR's, Closed Claim Reports) and set-up Risk Management Records. Provides direct customer service to policyholders by guiding incoming phone calls on the hunt line. Provide back-up to the Secretary of the Vice President of Underwriting.

### EVEREN SECURITIES
*Administrative Assistant - March 1997 - April 1998*
Administrative support for the two Vice Presidents of Corporate Technology and their direct reports. I planned their daily calendar. Set-up meetings, took minutes at the meetings and followed-up on any action items. Met with potential vendors. Made travel arrangements, did their expense reports and other administrative duties when needed. Receptionist duties. Kept supplies for a department of 60 people as well as providing staff support. Responsible for providing daily and monthly Open Ticket Reports.

### IVY APARTMENTS - SENIOR RETIREMENT HOME
*Night Time Office Manager/Assistant to the Director - November 1997 - April 1998 (Part-Time)*
Responsible for night time security. Monitoring the emergency call button that each resident had in their apartment. Receptionist duties. Receive incoming rent checks, sort the mail. Assist the nursing staff with residents on an as needed basis.

### INFORMATION RESOURCES
*Manager - National Product Library - May 1989 - June 1996*
Managed the day to day operations of the department. Responsible for over 200 clients. Responsible for the on time completion of imaging and quality control of all images going into the National Product Library as well as Inventory Control. Trained new personnel on image taking, all aspects of photography. Did on site photo shoots for clients. Responsible for opening a new office in Arkansas. I did the hiring and firing of personnel when needed.

### UNITED STATES AIR FORCE - *Administrative Assistant/Law Enforcement Specialist- 1979 - 1985*

## EDUCATION

Chicago School of Insurance - Introduction to Underwriting - 2000
American Management Association - The Efficient Assistant - 1999
University of Maryland - Political Science - 1980 - 1985
I attended college while I was in the Air Force stationed at Dover AFT, Delaware and continued my education while overseas at Ramstein AFB, Germany.
Butler High School - Graduated 1978

## SKILLS

- Power Point, Harvard Graphics, Visio, and Adobe Photoshop.
- Corel Work Perfect, Lotus 123 and Excel. MS Office 2000.
- I had worked in the accounting departments of an Import Company and for the Teachers Association.
- Attended several management and administrative classes and seminars while in the Air Force and working as Manager of Information Resources.
- I'm a certified CPR instructor and trained in home health care.

(7/12/07)

## Scott Sakie

| | |
|---|---|
| **From:** | Hutchinson Laura |
| **Sent:** | Friday, August 17, 2007 5:19 PM |
| **To:** | Scott Sakie |
| **Subject:** | Typewriter |

Please move the typewriter from the Library to the cubicle behind you.
Thx.

Laura C. Hutchinson
Assistant Vice President, Underwriting
ISMIE Mutual Insurance Company
312.580.6458 (Direct)
312.782.2023 (Fax)

*(OFF) vacation*

*arrival*

**Restock Laura's Watermark paper – Recurring Appointment**

File    Edit    View    Insert    Format    Tools    Actions    Help

Save and Close    |    |    Recurrence...    |    Invite Attendees    |    |    X    |    |

Appointment    |    Scheduling    |

Occurs every Friday effective 10/8/2004 from 12:30 PM to 1:00 PM (GMT-06:00) Central Time (US & Canada).
The appointment occurs in the past.

Subject:    Restock Laura's Watermark paper

Location:    [                    ]    Label:    [ ] None

Start time:    Fri 9/21/2007    1:30 PM    [ ] All day event
End time:    Fri 9/21/2007    2:00 PM

[✓] Reminder:    15 minutes    [ ]    Show time as:    ■ Busy

Contacts...    |    |    Categories...    |    |    Private

# ACTIVITY LOG
## @
## 06/25/07

*June 18*

**SAKIE SCOTT**

Overtime: 0

| DAY | | NEW BUS. APPS. | FILES PREPPED AND SCANNED | LOSS HISTORIES | TYPING | RETURN LOSS HX | SUBMISSION | RENEWAL APPS (BACKUP) | PART TIME APPS (BACKUP) | MAIL (BACKUP) | MIS ENTRIES |
|---|---|---|---|---|---|---|---|---|---|---|---|
| MONDAY | 18 | 14 | | | | | 4 | | | | |
| TUESDAY | 19 | 7 | | | | | 1 | | | | |
| WEDNESDAY | 20 | 12 | | | | | 1 | | | | |
| THURSDAY | 21 | 8 | 2 | 124 | 1 | | 1 | | | | |
| FRIDAY | 22 | 8 | | | | | 2 | | | | |
| TOTAL | | 49 | 2 | 124 | 1 | | 9 | | | | 0 |

Other Work: 0

Carryover Work: 3 applications
1 submission

**ACTIVITY LOG**
**@**
**07/02/07**

**SAKIE SCOTT**

Overtime: 0

| DAY | | NEW BUS. APPS. | FILES PREPPED AND SCANNED | LOSS HISTORIES | TYPING | RETURN LOSS IX | SUBMISSION | RENEWAL APPS (BACKUP) | PART TIME APPS. (BACKUP) | MAIL (BACKUP) | MIS ENTRIES |
|---|---|---|---|---|---|---|---|---|---|---|---|
| MONDAY | 25 | 7 | | 20 | | | 2 | | | | |
| TUESDAY | 26 | 13 | 2 | 17 | | | 2 | | | | |
| WEDNESDAY | 27 | 17 | | 4 | | | 1 | | | | |
| THURSDAY | 28 | 10 | 2 | 4 | 1 | | | | | | |
| FRIDAY | 29 | 7 | | 82 | | | 7 | | | | |
| TOTAL | | 54 | 4 | 127 | 1 | 0 | 12 | 0 | 0 | 0 | 0 |

Other Work: 0

Carryover Work: 2 applications

UNDERWRITING SECRETARY

WEEKLY ACTIVITY LOG – WEEK OF:  Monday, January 22, 2007

Sakie A. Scott

| Jan, 2006 | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail (Backup) | New Business Documents Mailed | Return Loss History Ltrs. | Renewal Applications (Backup) |
|---|---|---|---|---|---|---|---|---|---|
| MON | 22 | 3 | | | | | | | |
| TUES | 23 | 8 | | | | | | | |
| WED | 24 | 4 | | | | | | | |
| THUR | 25 | 1 | | | | | | | |
| FRI | 26 | 0 | | 113 | | | 4 | | |
| TOTAL | | 16 | 0 | 113 | 1 | 0 | 4 | 0 | 0 |

Other Work:                                    Carryover: 0 application
Training with Gina on New Biz-

Z:\secrtary\scott\activitylog

UNDERWRITING SECRETARY
WEEKLY ACTIVITY LOG – WEEK OF:   Monday, July 24, 2006

Sakie A. Scott

Overtime:   .6 hours

| July 31, 2006 | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail | Conversion of 4 to 6 sided folders for prepping |
|---|---|---|---|---|---|---|---|
| MON | 31 | | | | | 6 | |
| TUES | 1 | | | | | 6 | |
| WED | 2 | 5 | | | | | |
| THUR | 3 | | | | 1 | | |
| FRI | 4 | | 2 | | | | |
| | | | | | | | |
| TOTAL | | 20 | 2 | 567 | 1 | 14 | 0 |

Other Work:                                Carryover:  75 Membership Entries

Print Reports*-

Carol's backup – Monday and Tuesday

Z:\secrtary\scott\activitylog

| ! | D | 0 | **From** | **Subject** | | **Received** | **Size** | |
|---|---|---|---|---|---|---|---|---|

**Subject: New Employee Announcement (30 items, 5 unread)**

| | | | | |
|---|---|---|---|---|
| Majerik C... | New Employee Announcement | | Tue 4/11/2006 11:45 AM | 4 KB |

We are pleased to announce the addition of the following new employee:
Marcia Arnemann has joined ISMS/ISMIS/ISMIE Mutual as Secretary to Vice President and General Counsel in the Legal Services Division. She is working under the d...

| | | | | |
|---|---|---|---|---|
| Majerik C... | New Employee Announcement | | Tue 4/11/2006 11:38 AM | 4 KB |

We are pleased to announce the addition of the following new employee:
Renee Jablonski has joined ISMS/ISMIS/ISMIE Mutual as Claims Service Representative in the Claims Division. She is working under the direction of Kelly Kehoe an...

| | | | | |
|---|---|---|---|---|
| Gentile-K... | New Employee Announcement | | Fri 3/24/2006 9:43 AM | 6 KB |

We are pleased to announce the addition of the following new employees:
Laura Peterson has joined ISMS/ISMIS/ISMIE Mutual as Education Staff Specialist in the Education Division. She is working under the direction of Marcella Hollinger and is sta...

| | | | | |
|---|---|---|---|---|
| Majerik C... | New Employee Announcement | | Fri 2/3/2006 9:32 AM | 4 KB |

We are pleased to announce the addition of the following new employee:
Helen Hoesley has joined ISMS/ISMIS/ISMIE Mutual as Secretary to Vice President in the Internal Audit Division. She is working under the direction of Jim Skinne...

| | | | | |
|---|---|---|---|---|
| Majerik C... | New Employee Announcement | | Fri 1/6/2006 2:13 PM | 7 KB |

We are pleased to introduce Mr. Richard R. King who has joined our organizations in the capacity of Vice President and General Counsel of ISMS and ISMIE Mutual. Mr. King brings to ISMS and ISMIE extensive credentials and a wealth of experience in I...

| | | | | |
|---|---|---|---|---|
| Majerik C... | New Employee Announcement | | Wed 1/4/2006 12:07 PM | 4 KB |

We are pleased to announce the addition of the following new employee:
Julie Powers has joined ISMS/ISMIS/ISMIE Mutual as Secretary to Vice President in the Health Policy Research and Advocacy Division. She is working under the dir...

| | | | | |
|---|---|---|---|---|
| **Majerik ...** | **New Employee Announcement** | | **Tue 11/8/2005 4:1...** | **4 KB** |

We are pleased to announce the addition of the following new employee:
Patrick Gallagher has joined ISMS/ISMIS/ISMIE Mutual as VP Health Policy Research and Advocacy in the Health Policy Research and Advocacy Division. He is workin...

| | | | | |
|---|---|---|---|---|
| Majerik C... | New Employee Announcement | | Thu 10/20/2005 9:14 ... | 4 KB |

We are pleased to announce the addition of the following new employee:
Kristina Hall has joined ISMS/ISMIS/ISMIE Mutual as Website Coordinator in the Communications Division. She is working under the direction of Rebecca Swanson and is stationed ...

| | | | | |
|---|---|---|---|---|
| Majerik C... | New Employee Announcement | | Thu 10/13/2005 2:36 PM | 4 KB |

We are pleased to announce the addition of the following new employee:
Gregory Wideman has joined ISMS/ISMIS/ISMIE Mutual as Underwriter in the Underwriting Division. He is working under the direction of Frode Brudvik and is stationed on the sixt...

| | | | | |
|---|---|---|---|---|
| Majerik C... | New Employee Announcement | | Mon 10/10/2005 2:02 ... | 4 KB |

We are pleased to announce the addition of the following new employee:
Sarah Young has joined ISMS/ISMIS/ISMIE Mutual as Member Outreach Coordinator in the Marketing/Membership Division. She is working under the direction of Jim Jacobsohn and is ...

| | | | | |
|---|---|---|---|---|
| Majerik C... | New Employee Announcement | | Mon 10/10/2005 1:51 ... | 4 KB |

We are pleased to announce the addition of the following new employee:
Lauren Rueber has joined ISMS/ISMIS/ISMIE Mutual as Secretary, VP Management Services in the Human Resources Division. She is working under the direction of Diana Role and is ...

| | | | | |
|---|---|---|---|---|
| Majerik C... | New Employee Announcement | | Mon 10/10/2005 1:45 ... | 4 KB |

We are pleased to announce the addition of the following new employee:
Sarah Maddock has joined ISMS/ISMIS/ISMIE Mutual as Underwriting Secretary in the Underwriting Division. She is working under the direction of Laura Hutchinson and is statione...

| | | | | |
|---|---|---|---|---|
| Majerik C... | New Employee Announcement | | Tue 9/6/2005 9:32 AM | 4 KB |

We are pleased to announce the addition of the following new employee:
Carmen Sallay has joined ISMS/ISMIS/ISMIE Mutual as Internal Auditor in the Internal Audit Division. She is working under the direction of Doug Batchelder and is stationed on ...

| | | | | |
|---|---|---|---|---|
| Majerik C... | New Employee Announcement | | Tue 8/16/2005 2:49 PM | 4 KB |

We are pleased to announce the addition of the following new employee:
Charlene Vander Zanden has joined ISMS/ISMIS/ISMIE Mutual as Underwriter Trainee in the Underwriting Division. She is working under the direction of Frode Brudvik and is stat...

| | | | | |
|---|---|---|---|---|
| Majerik C... | New Employee Announcement | | Tue 8/16/2005 2:42 PM | 4 KB |

We are pleased to announce the addition of the following new employee:
Beth McNicholas has joined ISMS/ISMIS/ISMIE Mutual as Underwriter Trainee in the Underwriting Division. She is working under the direction of Frode Brudvik and is stationed on...

*PROMOTIONS —*

Scott Sakic

*NEW HIRE —*

4/11/2006 11:47 AM

| ! | 🗋 | 0 | From | Subject | | Received | Size | |
|---|---|---|---|---|---|---|---|---|

Majerik C...  New Employee Announcement — Tue 7/19/2005 12:43 PM  6 KB
We are extremely pleased to announce the addition of a new senior staff member to ISMIE Mutual's management team, responsible for overseeing our financial and reinsurance divisions and for coordinating these functions across divisional lines. The position...

Majerik C...  New Employee Announcement — Thu 7/7/2005 8:41 AM  4 KB
We are pleased to announce the addition of the following new employee:
Jim Myhre has joined ISMS/ISMIS/ISMIE Mutual as Statistical Analyst in the Internal Audit Division.  He is working under the direction of Jim Skinner and is stationed on the el...

**Majerik ...  New Employee Announcement** — **Mon 6/20/2005 9:5...  4 KB**
We are pleased to announce the addition of the following new employee:
Lisa Marie Combes has joined ISMS/ISMIS/ISMIE Mutual as Senior Accountant in the Finance Division.  She is working under the direction of Angela Walsh and is stationed on the s...

Majerik C...  New Employee Announcement — Thu 6/2/2005 10:58 AM  4 KB
We are pleased to announce the addition of the following new employee:
Nelle Bradley has joined ISMS/ISMIS/ISMIE Mutual as Meeting Planner in the Risk Management Division.  She is working under the direction of Donna Locasto and is stationed on th...

Majerik C...  New Employee Announcement — Mon 4/25/2005 9:18 AM  4 KB
We are pleased to announce the addition of the following new employee:
Heather Ebert has joined ISMS/ISMIS/ISMIE Mutual as Claims Service Representative in the Claims Division.  She is working under the direction of Kelly Kehoe and is stationed on...

Majerik C...  New Employee Announcement — Wed 3/30/2005 2:00 PM  4 KB
We are pleased to announce the addition of the following new employee:
William Burns has joined ISMS/ISMIS/ISMIE Mutual as Senior Professional Liability Analyst in the Claims Division.  He is working under the direction of Chris Leone and is stati...

Majerik C...  New Employee Announcement — Wed 3/30/2005 1:52 PM  4 KB
We are pleased to announce the addition of the following new employee:
Steven O'Rorke has joined ISMS/ISMIS/ISMIE Mutual as Senior Financial Analyst in the Finance Division.  He is working under the direction of Bud Gross and is stationed on the s...

Majerik C...  New Employee Announcement — Mon 3/21/2005 12:03 ...  4 KB
We are pleased to announce the addition of the following new employee:
Sarah Adams has joined ISMS/ISMIS/ISMIE Mutual as Secretary to VP  Management Services in the Human Resources Division.  She is working under the direction of Diana Role and is...

Majerik C...  New Employee Announcement — Thu 2/3/2005 12:03 PM  4 KB
We are pleased to announce the addition of the following new employee:
Sarah Renfrow has joined ISMS/ISMIS/ISMIE Mutual as Professional Liability Analyst Trainee in the Claims Division.  She is working under the direction of Jeff Beth and is stati...

Majerik C...  New Employee Announcement — Thu 2/3/2005 11:52 AM  4 KB
We are pleased to announce the addition of the following new employee:
Katie Smith has joined ISMS/ISMIS/ISMIE Mutual as Professional Liability Analyst Trainee in the Claims Division.  She is working under the direction of Michelle Stenzel and is ...

Majerik C...  New Employee Announcement — Fri 1/14/2005 3:10 PM  4 KB
We are pleased to announce the addition of the following new employee:
Sheila Farmer has joined ISMS/ISMIS/ISMIE Mutual as Records Clerk in the Claims Division.  She is working under the direction of Rodney Ward and is stationed on the sixth floor.  S...

Majerik C...  New Employee Announcement — Mon 11/15/2004 9:40 ...  4 KB
We are pleased to announce the addition of the following new employee:
Krystin Daniello has joined ISMS/ISMIS/ISMIE Mutual as Claims Service Representative in the Claims Division.  She is working under the direction of Kelly Kehoe and is stationed on ...

**Majerik ...  New Employee Announcement** — **Mon 11/8/2004 11:...  4 KB**
We are pleased to announce the addition of the following new employee:
Dan Deutschman has joined ISMS/ISMIS/ISMIE Mutual as Professional Liability Analyst in the Claims Division.  He is working under the direction of Tom Witham and is stationed in Spr...

**Majerik ...  New Employee Announcement** — **Mon 11/8/2004 11:...  4 KB**
We are pleased to announce the addition of the following new employee:
Nicole Dykas has joined ISMS/ISMIS/ISMIE Mutual as Professional Liability Analyst in the Claims Division.  She is working under the direction of Sandra Nuzzo and is stationed on th...

**Majerik ...  New Employee Announcement** — **Mon 11/8/2004 11:...  4 KB**
We are pleased to announce the addition of the following new employee:
Laura Byrne has joined ISMS/ISMIS/ISMIE Mutual as Professional Liability Analyst in the Claims Division.  She is working under the direction of Jeff Beth and is stationed on the si...

Subject: Kevin Riordan and Karen Roosey (1 item)

| ! | ☐ | ⊘ | **From** | **Subject** | **Received** | **Size** |
|---|---|---|---|---|---|---|

| | Brudvik F... | FW: Kevin Riordan and Karen Roosey | Fri 7/8/2005 4:00 PM | 1 KB |

We have been advised that Karen Roosey and Kevin Riordan are no longer affiliated with MARSH. Therefore, please keep in mind they are no longer authorized to conduct business on behalf of Marsh clients.
If you have any questions, please let me know....

**Subject: iMIS Record Added (1 item)**

| | Member ... | iMIS Record Added | Mon 6/6/2005 1:53 PM | 641 B |

We have found a match for your record: Cohanim, Nooshin
iMIS ID: 14214
Policy Number: 56156

**Subject: Employee Title Change (1 item)**

| | Majerik C... | Employee Title Change | Tue 3/1/2005 8:45 AM | 3 KB |

Sarah Christensen, Alice Hayner, and Emily Vetter have changed position titles to Project Coordinators in the Specialties Division. Their previous titles were Administrative Coordinators.
cc:    Harold L. Jensen, M.D....

**Subject: Employee Promotion (29 items, 5 unread)**

| | **Majerik ...** | **Employee Promotion** | **Tue 4/11/2006 8:3...  3 KB** |

We are pleased to announce that Brian Murphy has been promoted to Senior Risk Management Specialist in the Risk Management Division. Brian has been with ISMS/ISMIS/ISMIE Mutual since April 2000, most recently as Risk Management Specialist.
Please jo...

| | Majerik C... | Employee Promotion | Wed 2/8/2006 12:03 PM  3 KB |

We are pleased to announce that Jacinth Stokes has been promoted to Underwriting Support Manager in the Underwriting Division. Jacinth has been with ISMS/ISMIS/ISMIE Mutual since March 1999, most recently as Underwriter.
Please join us in congratula...

| | Majerik C... | Employee Promotion | Wed 2/8/2006 12:00 PM  3 KB |

We are pleased to announce that Michi Smith has been promoted to Director, Underwriting in the Underwriting Division. Michi has been with ISMS/ISMIS/ISMIE Mutual since August 1992, most recently as Underwriting Manager.
Please join us in congratulatin...

| | Majerik C... | Employee Promotion | Wed 2/8/2006 11:57 AM  3 KB |

We are pleased to announce that Keith Evans has been promoted to Senior Director, Underwriting and Business Development in the Underwriting Division. Keith has been with ISMS/ISMIS/ISMIE Mutual since October 1989, most recently as Director, Business Deve...

| | Majerik C... | Employee Promotion | Mon 1/16/2006 9:27 AM  3 KB |

We are pleased to announce that Ingrid Hubbard has been promoted to Risk Management Technology Specialist in the Risk Management Division. Ingrid has been with ISMS/ISMIS/ISMIE Mutual since January 2003, most recently as Office Assessment Coordinator....

| | **Majerik ...** | **Employee Promotion** | **Wed 11/30/2005 1...  3 KB** |

We are pleased to announce that Marcella Hollinger has been promoted to Director of Risk Management Program Development in the Risk Management Division. Marcella has been with ISMS/ISMIS/ISMIE Mutual since June 2000, most recently as Director of Educat...

| | Majerik C... | Employee Promotion | Wed 11/30/2005 11:4...  3 KB |

We are pleased to announce that Maria Marioni has been promoted to Executive Secretary to Senior Vice President in the Administration Division. Maria has been with ISMS/ISMIS/ISMIE Mutual since December 1990, most recently as Health Policy Research and...

| | Majerik C... | Employee Promotion | Thu 11/17/2005 3:34 PM  3 KB |

We are pleased to announce that Thea Hickey has been promoted to Assistant Director, Accounting in the Finance Division. Thea has been with ISMS/ISMIS/ISMIE Mutual since May 1997, most recently as Accounting Supervisor.
Please join us in congratulat...

| | Majerik C... | Employee Promotion | Wed 11/16/2005 9:17 ...  3 KB |

We are pleased to announce that Ed Thiemann has been promoted to Project Manager in the Information Systems Division. Ed has been with ISMS/ISMIS/ISMIE Mutual since April 1996, most recently as Project Specialist.
Please join us in congratulating Ed...

| | **Majerik ...** | **Employee Promotion** | **Tue 11/15/2005 1:...  3 KB** |

We are pleased to announce that Keri Staley has been promoted to Senior Programmer Analyst in the Information Systems Division. Keri has been with ISMS/ISMIS/ISMIE Mutual since November 2002, most recently as Programmer Analyst.
Please join us in co...

| | Majerik C... | Employee Promotion | Thu 10/20/2005 12:06...  3 KB |

We are pleased to announce that Pat Jiardina has been promoted to Senior Professional Liability Analyst in the Claims Division. Pat has been with ISMS/ISMIS/ISMIE Mutual since October 2002, most recently as Professional Liability Analyst.
Please joi...

| | **Majerik ...** | **Employee Promotion** | **Thu 10/20/2005 12...  3 KB** |

We are pleased to announce that Eric Gleason has been promoted to Audit Specialist in the Internal Audit Division. Eric has been with ISMS/ISMIS/ISMIE Mutual since July 1996, most recently as Senior Internal Auditor.
Please join us in congratulating...

| ! | 🗅 | 0 | **From**     **Subject** | **Received** | **Size** |
|---|---|---|---|---|---|

Majerik C...  Employee Promotion — Thu 10/20/2005 9:24 ...  3 KB
We are pleased to announce that Katie Gilfillan has been promoted to Senior Risk Management Development Specialist in the Risk Management Division. Katie has been with ISMS/ISMIS/ISMIE Mutual since October 2004, most recently as Risk Management Develop...

Majerik C...  Employee Promotion — Thu 10/20/2005 9:21 ...  3 KB
We are pleased to announce that Lori O'Connor has been promoted to Communications Coordinator in the Communications Division. Lori has been with ISMS/ISMIS/ISMIE Mutual since September 2002, most recently as Secretary.
Please join us in congratulati...

Majerik C...  Employee Promotion — Wed 10/5/2005 3:32 PM  3 KB
We are pleased to announce that Ruby St. James has been promoted to Senior Professional Liability Analyst in the Claims Division. Ruby has been with ISMS/ISMIS/ISMIE Mutual since October 2001, most recently as Professional Liability Analyst.
Please ...

Majerik C...  Employee Promotion — Mon 9/19/2005 9:00 AM  3 KB
We are pleased to announce that Stephen Murphy has been promoted to Senior Risk Management Development Specialist in the Risk Management Division. Stephen has been with ISMS/ISMIS/ISMIE Mutual since September 2002, most recently as Risk Management Deve...

Majerik C...  Employee Promotion — Mon 7/18/2005 9:28 AM  3 KB
We are pleased to announce that Sandy Roche has been promoted to Membership Coordinator in the Membership Services Division. Sandy has been with ISMS/ISMIS/ISMIE Mutual since June 2004, most recently as Secretary, Purchasing.
Please join us in congr...

**Majerik ...  Employee Promotion — Mon 6/20/2005 10:... 3 KB**
We are pleased to announce that Jamie Donovan has been promoted to Underwriting Trainee in the Underwriting Division. Jamie has been with ISMS/ISMIS/ISMIE Mutual since March 2002, most recently as Underwriting Technician.
Please join us in congratul...

Majerik C...  Employee Promotion — Wed 5/18/2005 10:10 ...  3 KB
We are pleased to announce that Yunjie Liu has been promoted to Systems Programmer in the Information Systems Division. Yunjie has been with ISMS/ISMIS/ISMIE Mutual since April 2001, most recently as Programmer Analyst.
Please join us in congratulat...

Majerik C...  Employee Promotion — Mon 5/16/2005 8:38 AM  3 KB
We are pleased to announce that Spero Argyris has been promoted to Senior Underwriter in the Underwriting Division. Spero has been with ISMS/ISMIS/ISMIE Mutual since May 1996, most recently as Underwriter.
Please join us in congratulating Spero on h...

Majerik C...  Employee Promotion — Mon 5/2/2005 10:40 AM  3 KB
We are pleased to announce that Ron Marchionna has been promoted to Assistant Vice President (Reinsurance) in the Internal Audit Division. Ron has been with ISMS/ISMIS/ISMIE Mutual since March 1988, most recently as Audit Specialist.
Please join us ...

Majerik C...  Employee Promotion — Fri 4/29/2005 9:22 AM   3 KB
We are pleased to announce that Kelley Elwood has been promoted to Director, Media Relations and Officer Outreach in the Communications Division. Kelley has been with ISMS/ISMIS/ISMIE Mutual since November 1995, most recently as Assistant Director, Com...

Majerik C...  Employee Promotion — Mon 4/18/2005 11:53 ...  3 KB
We are pleased to announce that Rhonda Sturm has been promoted to Senior Professional Liability Analyst in the Claims Division. Rhonda has been with ISMS/ISMIS/ISMIE Mutual since April 2002, most recently as Professional Liability Analyst.
Please jo...

Majerik C...  Employee Promotion — Tue 4/12/2005 12:37 PM  2 KB
We are pleased to announce that Jennifer Fitzgerald has been promoted to Senior Professional Liability Analyst in the Claims Division. Jennifer has been with ISMS/ISMIS/ISMIE Mutual since April 2002, most recently as Professional Liability Analyst....

Majerik C...  Employee Promotion — Tue 4/12/2005 11:51 AM  2 KB
We are pleased to announce that LuAnn Minogue has been promoted to Professional Liability Specialist in the Claims Division. LuAnn has been with ISMS/ISMIS/ISMIE Mutual since June 1997, most recently as Professional Liability Analyst.
Please join us...

Majerik C...  Employee Promotion — Tue 4/12/2005 11:45 AM  2 KB
We are pleased to announce that Debbie O'Brien has been promoted to Technical Services Assistant in the Information Systems Division. Debbie has been with ISMS/ISMIS/ISMIE Mutual since February 2001, most recently as Administrative Coordinator.
Plea...

Majerik C...  Employee Promotion — Mon 2/7/2005 3:22 PM   2 KB
We are pleased to announce that Keith Evans has been promoted to Director of Business Development in the Underwriting Division. Keith Evans has been with ISMS/ISMIS/ISMIE Mutual since October 1989, most recently as Assistant Director of Business Develo...

Majerik C...  Employee Promotion — Wed 11/17/2004 3:10 ...  965 B
We are pleased to announce that Theresa Daniello has been promoted to Senior Professional Liability Analyst in the Claims Division. Theresa Daniello has been with ISMS/ISMIS/ISMIE Mutual since November 2000, most recently as Professional Liability A...

| | From    Subject | Received ▽ | Size ▽ |
|---|---|---|---|

Hutchinso... Training Schedule — Tue 10/3/2006 11:51 ... 3 KB

The Mini Office sessions will now take place in the Training Room on the 2nd floor.
Laura C. Hutchinson
Assistant Vice President, Underwriting

**Majerik ... Employee Departure** — **Mon 10/2/2006 9:3... 3 KB**

Sharon Collins of Claims has left employment with ISMS/ISMIS/ISMIE Mutual. Please refer calls to Rodney Ward at extension 6176.
    cc: Harold L. Jensen, M.D.
        Alfred J. Clementi, M.D.

Allphin Alan ImageRight Training — Fri 9/29/2006 3:34 PM    3 KB

All of you received your ImageRight training schedule at Thursday's staff meeting. This schedule has been designed in an effort to maintain phone coverage, as well as wisely utilizing our training time and the expertise of the Image Right personnel. For...

**Majerik ... New Employee Announcement** — **Fri 9/29/2006 11:5... 4 KB**

We are pleased to announce the addition of the following new employee:
James Lee has joined ISMS/ISMIS/ISMIE Mutual as Programmer/Analyst in the Information Systems Division. He is working under the direction of Keri Staley and is ...

**Hutchin... Underwriting Mail** — **Fri 9/29/2006 9:33... 5 KB**

Don:
Beginning on Monday, October 2nd, please arrange to have all of Underwriting's mail delivered in a bin to the File Room.
They will be handling it on a permanent basis.

Gentile-K... Fall Event — Thu 9/28/2006 4:37 PM   6 KB

ARE YOU READY FOR SOME FUN?
That must mean that it is time to go bowling! And that is just what the Employee Recognition Committee has planned for you! The Company fall event will be held on Friday, November 3, 2006 at 10pm Bowling Lounge. A...

**Majerik ... Employee Promotion** — **Wed 9/20/2006 12... 3 KB**

We are pleased to announce that Carissa McKenna has been promoted to Professional Liability Analyst in the Claims Division. Carissa has been with ISMS/ISMIS/ISMIE Mutual since March 2006, most recently as Professional Liability Analyst Trainee.
Please...

**Maes St... Infinity problems** — **Mon 9/18/2006 5:3... 12 KB**

Yesterday I/S rolled out a new version of Infinity dated 9-15-06.
However, there are a few outstanding issues with Notes Filter and Notes Editor that occurred while Infinity was testing. Remember, if the Note Filter screen displays "blank" a...

Majerik C... New Employee Announcement — *MAIS DUTIES* Tue 9/12/2006 10:01 ... 4 KB

We are pleased to announce the addition of the following new employee:
Charlotte Johnson joined ISMS/ISMIS/ISMIE Mutual as Meeting Services Assistant in the Meeting and Travel Services Division. She is working under the directi...

**Majerik ... Employee Departure** — **Fri 9/8/2006 8:19 ... 3 KB**

Sarah Christensen of Medical Association Management has left employment with ISMS/ISMIS/ISMIE Mutual. Please refer calls to Laura Downes at extension 2480.
    cc: Harold L. Jensen, M.D.

**Bules Gi... FW: Important Underwriting Information** — **Thu 9/7/2006 2:05 ... 117 KB**

This e-mail was just sent to all ISMIE Producers.
Gina Bules Secretary to Vice President, Underwriting ISMIE Mutual Insurance Company
20 North Michigan Avenue, Suite 700

**Maes St... Infinity Upgrade 9-7-06 5:00PM** — **Thu 9/7/2006 11:3... 7 KB**

If you do not utilize Infinity you can disregard this e-mail.
An Infinity upgrade is scheduled for tonight beginning at 5:00PM. Please make sure that you have Infinity closed prior to leaving this evening. Infinity will be unavailable until 6:00AM...

**Majerik ... Employee Promotion** — **Fri 9/1/2006 11:40... 3 KB**

We are pleased to announce that Beth McNicholas has been promoted to Underwriter in the Underwriting Division. Beth has been with ISMS/ISMIS/ISMIE Mutual since August 2005, most recently as Underwriting Trainee.
Please join us in congratulating Beth...

**Majerik ... Employee Promotion** — **Fri 9/1/2006 9:45 ... 3 KB**

We are pleased to announce that Jennifer Mroz has been promoted to Professional Liability Analyst in the Claims Division. Jennifer has been with ISMS/ISMIS/ISMIE Mutual since December 2002, most recently as Professional Liability Analyst Trainee.
Pl...

**Majerik ... Employee Promotion** — **Fri 9/1/2006 9:44 ... 3 KB**

We are pleased to announce that Mike Urso has been promoted to Senior Professional Liability Analyst in the Claims Division. Mike has been with ISMS/ISMIS/ISMIE Mutual since August 2003, most recently as Professional Liability Analyst.
Please join u...

**Majerik ... Employee Departure** — **Thu 8/31/2006 9:3... 3 KB**

Kristen Miller of Communications has left employment with ISMS/ISMIS/ISMIE Mutual. Please refer calls to Rebecca Miller at extension 6450.
    cc: Harold L. Jensen, M.D.

| ! | ⌂ | 0 | From | Subject | Received | Size | ▽ |
|---|---|---|------|---------|----------|------|---|
| | ✉ | | Majerik C... | Employee Promotion | Fri 11/12/2004 2:46 PM | 929 B | |

We are pleased to announce that Michelle Kairies Stenzel has been promoted to Claims Manager in the Claims Division. Michelle has been with ISMS/ISMIS/ISMIE Mutual since November 2002, most recently as Senior Professional Liability Analyst. Please j...

**Subject: Employee Position Change (1 item)**

| | ✉ | | Majerik C... | Employee Position Change | Mon 1/16/2006 9:43 AM | 3 KB | |

Nelle Bradley has changed job positions to Risk Management Office Assessment and Meeting Coordinator in the Risk Management Division. Nelle has been with ISMS/ISMIS/ISMIE Mutual since June 2005, most recently as Risk Management Meeting Planner....

**Subject: Employee Departure (22 items, 2 unread)**

| | ✉ | | Majerik C... | Employee Departure | Thu 2/2/2006 8:54 AM | 3 KB | |

Dan Deutschman of Claims has left employment with ISMS/ISMIS/ISMIE Mutual. Please refer calls to Tom Witham at extension 3026.
cc: Harold L. Jensen, M.D.
Alfred J. Clementi, M.D.

| | ✉ | | **Majerik ...** | **Employee Departure** | **Mon 1/23/2006 2:5...** | **3 KB** | |

Frode Brudvik of Underwriting has left employment with ISMS/ISMIS/ISMIE Mutual. Please refer calls to Sheila Coghlan at extension 2451.
cc: Harold L. Jensen, M.D.

| | ✉ | | Majerik C... | Employee Departure | Wed 1/4/2006 8:40 AM | 3 KB | |

Bill Burns of Claims has left employment with ISMS/ISMIS/ISMIE Mutual. Please refer calls to Terese Souders at extension 6468.
cc: Harold L. Jensen, M.D.
Alfred J. Clementi, M.D.

| | ✉ | | Majerik C... | Employee Departure | Wed 1/4/2006 8:39 AM | 3 KB | |

Steve Watson of Claims has left employment with ISMS/ISMIS/ISMIE Mutual. Please refer calls to Rodney Ward at extension 6176.
cc: Harold L. Jensen, M.D.
Alfred J. Clementi, M.D.

| | ✉ | | Majerik C... | Employee Departure | Thu 12/8/2005 2:28 PM | 3 KB | |

Ayanna Allen of Claims has left employment with ISMS/ISMIS/ISMIE Mutual. Please refer calls to Terese Souders at extension 6468.
cc: Harold L. Jensen, M.D.
Alfred J. Clementi, M.D.

| | ✉ | | McGuire ... | Employee Departure | Wed 11/9/2005 8:52 AM | 4 KB | |

Carolyn Lau of Internal Audit has left employment with ISMS/ISMIS/ISMIE Mutual.
Please refer calls to Doug Batchelder at extension 6176.
cc:     Harold L. Jensen, M.D.

| | ✉ | | Majerik C... | Employee Departure | Mon 10/24/2005 9:01 ... | 3 KB | |

Donna Wilson of Risk Management has left employment with ISMS/ISMIS/ISMIE Mutual. Please refer calls to Audrey Vanagunas at extension 2465.
cc: Harold L. Jensen, M.D.

| | ✉ | | Majerik C... | Employee Departure | Mon 10/3/2005 12:19 ... | 3 KB | |

Bobbi Kehoe of Finance has left employment with ISMS/ISMIS/ISMIE Mutual. Please refer calls to Bud Gross at extension 2454.
cc: Harold L. Jensen, M.D.
Alfred J. Clementi, M.D.

| | ✉ | | Majerik C... | Employee Departure | Mon 10/3/2005 11:44 ... | 3 KB | |

Cherie Lewis of Claims has left employment with ISMS/ISMIS/ISMIE Mutual. Please refer calls to Michelle Stenzel at extension 2478.
cc: Harold L. Jensen, M.D.
Alfred J. Clementi, M.D.

| | ✉ | | Majerik C... | Employee Departure | Tue 9/27/2005 10:38 AM | 3 KB | |

Albert Gapasin of Underwriting has left employment with ISMS/ISMIS/ISMIE Mutual. Please refer calls to Michi Smith at extension 6498.
cc: Harold L. Jensen, M.D.
Alfred J. Clementi, M.D.

| | ✉ | | Majerik C... | Employee Departure | Mon 9/19/2005 8:54 AM | 3 KB | |

Joe Madura of Underwriting has left employment with ISMS/ISMIS/ISMIE Mutual. Please refer calls to Laura Hutchinson at extension 6458.
cc: Harold L. Jensen, M.D.

| | ✉ | | Majerik C... | Employee Departure | Thu 9/8/2005 11:06 AM | 3 KB | |

Charlene Vander Zanden of Underwriting has left employment with ISMS/ISMIS/ISMIE Mutual. Please refer calls to Frode Brudvik at extension 6445.
cc: Harold L. Jensen, M.D.

| | ✉ | | Majerik C... | Employee Departure | Mon 8/1/2005 8:43 AM | 3 KB | |

Beth Weiss of Internal Audit has left employment with ISMS/ISMIS/ISMIE Mutual. Please refer calls to Jim Skinner at extension 2406.
cc: Harold L. Jensen, M.D.
Alfred J. Clementi, M.D.

| ! | □ | ∅ | From    Subject | Received | Size |
|---|---|---|---|---|---|

**Hutchinso... FW: HIGH PRIORITY - ImageRight** — Wed 10/25/2006 8:36 ... 8 KB
> Please have this done this morning and let us know the result.
> Laura C. Hutchinson Assistant Vice President, Underwriting ISMIE Mutual Insurance Company
> 312.580.6458 (Direct)

**Cowan L... Reopened File Scanned** — Wed 10/25/2006 7:... 1 KB
> 24844 is scanned <end>

**Bules Gina   Revised Producer List** — Tue 10/24/2006 3:05 ... 116 KB
> I have just been informed that John Lappe has joined R.T. Nelson as a licensed producer. He has been added to the attached list so
> please replace the one sent earlier with the attached.
> Gina Bules Underwriting Division ISMIE Mutual Insurance Co...

**Bules Gina   Attached Producer List** — Tue 10/24/2006 2:35 ... 116 KB
> Please note two revisions on the attached list:
> 1) The fax number for Marsh USA has been changed; and
> 2) Commission Checks for Behnke & Company should now be sent to the attention of Sally Manning as opposed to Ted Miller.

**Majerik ... Employee Promotion** — Tue 10/24/2006 10:... 4 KB
> We are pleased to announce that David Lorenz has been promoted to Senior Programmer Analyst in the Information Systems Division.
> David has been with ISMS/ISMIS/ISMIE Mutual since October 2002, most recently as Programmer Analyst.
> Please join us in c...

**Cowan Lisa   REOPEN SCAN FILES** — Mon 10/23/2006 3:34 ... 2 KB
> Hi Sakie
> Your files are scanned  16101 & 25775 <end>

**Thiemann... RE: HIGH PRIORITY - 63698** — Mon 10/23/2006 11:2... 5 KB
> Please do a shut down and restart and then try again.
> Microsoft word on your computer is giving an error
> Please let me know if this corrects the issue

**Thiemann... RE: HIGH PRIORITY - 63698** — Mon 10/23/2006 11:2... 4 KB
> What error are you getting?
>
> From: Scott Sakie

**Thiemann... RE: HIGH PRIORITY - 63698** — Mon 10/23/2006 11:0... 4 KB
> Sakie, I am able to open this, what problem are you having?
>
> From: Hutchinson Laura

**Majerik ... Employee Departure** — Mon 10/23/2006 8:... 4 KB
> Nelle Bradley of Risk Management has left employment with ISMS/ISMIS/ISMIE Mutual. Please refer calls to Donna Locasto at extension
> 1627.
>         cc: Harold L. Jensen, M.D.

**Cowan Lisa   Reopen File** — Thu 10/19/2006 4:09 ... 2 KB
> Hi Sakie file 15492 is scanned <end>

**Cowan Lisa** — Fri 10/13/2006 8:45 AM  2 KB
> Hi Sakie
> Your files are scanned 14893   63348   and 40273 <end>

**Gentile-K...   Policy Manual Additions/Leave Form** — Thu 10/12/2006 4:22 ... 8 KB
> October 10, 2006
> To:     All Employees
> From:  Donna Gentile-Karas

**Maddock ... Loss History Return Envelopes** — Tue 10/10/2006 4:55 ... 8 KB
> Hello Everyone-
> As you know, many of the loss history requests we receive through the mail come with pre-addressed return envelopes. Before the
> ImageRight takeover, these envelopes were stapled to the back of the request when opened and mailed al...

**Madura ... RE: Loss History Letters** — Mon 10/9/2006 10:... 4 KB
> Will do. Deborah and I will determine any extra paper loss histories (given to us last week) this morning, give you any inactives and
> forward the ImageRight task to you.

**Maes Steve  RE: Barcode** — Thu 10/5/2006 12:43 ... 3 KB
> Sakie,
> There is no need for any more barcodes. The file room people that scan know how to do it without a barcode.
> Thanks,

**Majerik C...  New Employee Announcement** — Tue 10/3/2006 3:34 PM  4 KB
> We are pleased to announce the addition of the following new employee:
> Melvin Barnes has joined ISMS/ISMIS/ISMIE Mutual as a Risk Management Specialist in the Risk Management Division. He is working
> under the direction of Michelle ...

**Benedict ...  underwriting workflow.doc** — Tue 10/3/2006 1:12 PM  105 KB

| ! | 🗋 | 📎 | From | Subject | | Received | Size |
|---|---|---|---|---|---|---|---|

Smith Car... Correspondence????
*Mon 11/13/2006 2:01 ... 2 KB*
I have received in the underwriting mail workflow four pages (9 through 12) of an application. The only clue from whom this information came from is that it was faxed from a Kinkos in Plainfield. If any one has an idea of what policy this would be!...
*Mon 11/13/2006 9:39 ... 8 KB*

Nowel Ka... FW: Dr. Charles Roller #63668
Hi Sakie,
I just got a call on this, the office is requesting proof of coverage. If you could reinitialize the policy this morning, I would appreciate it. Thanks!
*Fri 11/10/2006 3:59 PM  5 KB*

Nowel Ka... Dr. Charles Roller #63668
Hi Sakie,
Can you reinitialize this policy and let Tanya know when its complete? His new business submission is ok to accept. I have completed an AR in PUMA.
*Fri 11/10/2006 1:25 PM  2 KB*

Cowan Lisa  file scanned
25978 <end>
*Thu 11/9/2006 8:05 AM  4 KB*

Majerik C... New Employee Announcement
We are pleased to announce the addition of the following new employee:
David Wichmann  has joined ISMS/ISMIS/ISMIE Mutual as Controller in the Finance Division.  He is working under the direction of Bud Gross and is stationed on the...
*Wed 11/8/2006 4:... 4 KB*

Majerik ... Employee Promotion
We are pleased to announce that Nicole Dykas has been promoted to Senior Professional Liability Analyst in the Claims Division.  Nicole has been with ISMS/ISMIS/ISMIE Mutual since November 2004, most recently as Professional Liability Analyst. Please j...
*Wed 11/8/2006 11:27 ... 9 KB*

Gentile-K... Holiday Event
Please join us for lunch, fun, music, dancing, and gifts to celebrate the holiday season!
Where:     The Mid America Club (located in the Aon Building)
200 East Randolph Drive...
*Tue 11/7/2006 3:43 PM  2 KB*

Cowan Lisa  SCANNED FILES
62816  32430 <end>
*Mon 11/6/2006 7:56 AM  2 KB*

Cowan Lisa  FILE SCANNED
GOOD MORNING
YOUR FILE IS SCANNED 38584 <end>
*Thu 11/2/2006 3:01 PM  7 KB*

Maddock ... New Business Applications
Hi Sakie-
Here is a list of New Business Applications I completed while you were out.  I was unable to submit the Outlook Form for any of them. My Outlook won't do that for some reason.  I'll have to ask you who to call to fix it when you get bac...
*Thu 11/2/2006 10:33 ... 4 KB*

Cowens B... RE: Autumn Sheese-63716
NO

From: Scott Sakie
*Thu 11/2/2006 8:4... 4 KB*

Majerik ... Employee Promotion
We are pleased to announce that Tracey Printen has been promoted to Assistant Director in the Health Policy Research and Advocacy Division.  Tracey has been with ISMS/ISMIS/ISMIE Mutual since October 2001, most recently as Research Associate. Please jo...
*Wed 11/1/2006 11:38 ... 1 KB*

Cowan Lisa  file scann
50250    16101 <end>
*Mon 10/30/2006 4:... 2 KB*

**Date: Older**

Cowan L... reopened file
62330      this is scanned <end>
*Mon 10/30/2006 2:... 635 KB*

RightFa... Your fax has been successfully sent to Kathy Mecham at 1-618-244-3832.
Your fax has been successfully sent to Kathy Mecham at 1-618-244-3832.
-------------------------------------
Time: 10/30/2006 2:30:55 PM
*Fri 10/27/2006 4:54 PM  5 KB*

Cowan Lisa  REOPENED FILE SCAN
HI Sakie
These files are scanned 08918
62815
*Fri 10/27/2006 11:... 6 KB*

Hutchin... FW: Hunt Line Adjustments
We can now return to normal ...
The Techs are back in hunt and the Specialists can be out.
Also, the "time off hunt" schedule is active again.
*Wed 10/25/2006 11:5... 4 KB*

Wideman... Missing Applications
Hey Sakie,
Below are the names of the physician's applications for Infinity Healthcare (#54259) that seem to be missing or have not been scanned. Please let me know what you come up with when you have a chance.

Scott Sakie
2
12/19/2006 4:15 PM

1/06 -12/14/06   e/c     PROMOTIONS = 29

NH 19

| ! □ ⊘ From   Subject | Received | Size |
|---|---|---|
| **Date: Last Week** | | |

**Renfro ...   Beatrice Ward** — Thu 12/14/2006 8:... 2 KB

It is with sadness that I inform you that Rodney Ward's mother, Beatrice, passed away early this morning.  Once additional information regarding the services is known, I will pass it along.     <end>

Majerik C...   New Employee Announcement — Tue 12/12/2006 3:41 ... 4 KB

We are pleased to announce the addition of the following new employee:
Linda Stormont has joined ISMS/ISMIS/ISMIE Mutual as Senior Writer in the Communications Division.  She is working under the direction of Rebecca Swanson and is ...

**Date: Two Weeks Ago**

**Hutchin...   RE: Early Dismissal** — Mon 12/4/2006 1:5... 5 KB

Okay
Laura C. Hutchinson Assistant Vice President, Underwriting ISMIE Mutual Insurance Company
312.580.6458 (Direct)

**Date: Three Weeks Ago**

Roberson...   Chirag Patel, M.D.  #63654 — Wed 11/29/2006 4:37 ... 3 KB

Sakie,
Please re-initialize the captioned policy and send to Brenda for re-rating.  New effective date is 12/04/06.
Thanks.

Maddock ...   New Business Applications — Tue 11/28/2006 5:36 ... 5 KB

Sakie-
This is a list of applications I processed today.  They were not entered in outlook.
Learie R. Lindsay, M.D. – 63766

**Majerik ...   New Employee Announcement** — Tue 11/28/2006 12... 4 KB

We are pleased to announce the addition of the following new employee:
Roni Pressler has joined ISMS/ISMIS/ISMIE Mutual as Assistant Vice President, Marketing in the Marketing Division.  She is working under the direction of Cheryl ...

Maddock ...   New Business Applications — Mon 11/27/2006 6:01 ... 6 KB

Sakie-
This is a list of applications I processed today.  They were not entered in outlook.
L.M. Prasad, M.D., S.C. - 63761

**Date: Last Month**

Majerik C...   New Employee Announcement — Tue 11/21/2006 9:12 ... 4 KB

We are pleased to announce the addition of the following new employee:
Teresa Neufeld has joined ISMS/ISMIS/ISMIE Mutual as Vice President, PBT in the Administration Division.  She is working under the direction of John Washburn and...

**Hutchin...   Sarah will not be in today.** — Fri 11/17/2006 9:0... 3 KB

Laura C. Hutchinson
Assistant Vice President, Underwriting
ISMIE Mutual Insurance Company

McGuire ...   Important Timesheet and Payroll Processing Information — Wed 11/15/2006 3:45 ... 154 KB

Cowan Lisa  FILE SCANNED — Wed 11/15/2006 3:21 ... 2 KB

62878   09766   YOUR FILES ARE SCANNED <end>

**Stokes J...   FW: Cancellation Requests - Correspondence Screening** — Wed 11/15/2006 1... 6 KB

Sakie, can I get the updated cancellation spreadsheet?  The techs should have it updated by now.
Thanks.
Jacinth

Hutchinso...   Cancellation Requests - Correspondence Screening — Wed 11/15/2006 9:41 ... 5 KB

Carol and Sakie:
Please forward all requests for cancellation to Corliss for handling.
This revised work distribution will be in effect from today through January 1, 2007.

Nowel Ka...   RE: Dr. Charles Roller #63668 — Tue 11/14/2006 8:46 ... 11 KB

Don't worry, I already had it taken care of.  I forgot that you were out yesterday.
Thanks!

**Stokes J...   Sarah will not be in today.** — Tue 11/14/2006 8:... 4 KB

Jacinth E. Stokes
Underwriting Support Manager
ISMIE Mutual Insurance Company

Maddock ...   New Business Applications — Mon 11/13/2006 5:13 ... 7 KB

Hi Sakie-
Here is a list of New Business Applications I completed while you were out.  I was unable to submit the Outlook Form for any of them.
My Outlook won't do that for some reason.  I'll have to ask you who to call to fix it when you get bac...

| ! □ ❂ | **From**   **Subject** | **Received** ▽ | **Size** ▽ |
|---|---|---|---|

Fowler Ron  PUMA Executable 4.1 — Wed 8/23/2006 9:51 AM  3 KB

When you logged in this morning, you should have received PUMA version 4.1.  This version includes:
-ImageRight buttons have been moved to the top toolbar
-Opening up ImageRight will open the policy in the UWTG drawer instead of the UPU drawer...

Majerik C...  New Employee Announcement — Mon 8/21/2006 9:13 AM  4 KB

We are pleased to announce the addition of the following new employee:
David Bentley has joined ISMS/ISMIS/ISMIE Mutual as Professional Liability Analyst in the Claims Division.  He is working under the direction of Chris Leone and ...

Majerik C...  New Employee Announcement — Mon 8/21/2006 9:07 AM  4 KB

We are pleased to announce the addition of the following new employee:
Rita LePard has joined ISMS/ISMIS/ISMIE Mutual as Education Staff Specialist in the Education Division.  She is working under the direction of Marcella Hollinger...

Hutchinso...  Broker E-Mail Addresses — Thu 8/17/2006 4:18 PM  31 KB

All of our current broker e-mail addresses may now be added to your Outlook address book. Attached is a document which explains how to do it.
Any changes to the master list will be updated by Gina.

Majerik ...  **Employee Promotion** — **Thu 8/17/2006 12:...  3 KB**

We are pleased to announce that Emily Logue has been promoted to Senior Professional Liability Analyst in the Claims Division.  Emily has been with ISMS/ISMIS/ISMIE Mutual since August 2004, most recently as Professional Liability Analyst.
Please joi...

Majerik ...  **Employee Departure** — **Wed 8/16/2006 11...  3 KB**

Davis DeNazarie of Internal Audit has left employment with ISMS/ISMIS/ISMIE Mutual.  Please refer calls to Jim Skinner at extension 2406.
cc: Harold L. Jensen, M.D.

Majerik C...  New Employee Announcement — Thu 8/10/2006 10:03 ...  4 KB

We are pleased to announce the addition of the following new employee:
Laurie Peacock has joined ISMS/ISMIS/ISMIE Mutual as Director, Media Relations and Officer Outreach in the Communications Division.  She is working under the dir...

Hutchin...  **Additional Temp Secretary** — **Tue 8/8/2006 5:32 ...  3 KB**

Joe Madura has returned from England and will be working with us for a few months.
He will sit in the cubicle outside of Robin's office.
Laura C. Hutchinson

Majerik C...  Employee Promotion — Tue 8/8/2006 9:07 AM  3 KB

We are pleased to announce that Henry Naditz has been promoted to Senior Programmer Analyst in the Information Systems Division.  Henry has been with ISMS/ISMIS/ISMIE Mutual since July 1999, most recently as Programmer Analyst.
Please join us in cong...

Majerik ...  **Employee Promotion** — **Tue 8/1/2006 11:5...  3 KB**

We are pleased to announce that Jamie Donovan has been promoted to Underwriter in the Underwriting Division.  Jamie has been with ISMS/ISMIS/ISMIE Mutual since March 2002, most recently as Underwriting Trainee.
Please join us in congratulating Jamie ...

Hutchinso...  FW: Individual Certs — Fri 7/28/2006 11:26 AM  63 KB

Please make a note on the list that Advocate wants the certs for each of their locations produced in alpha order for Renewal 2007.

From: Hutchinson Laura

Majerik ...  **Employee Promotion** — **Wed 7/19/2006 3:...  3 KB**

We are pleased to announce that Jenifer Haas has been promoted to Senior Professional Liability Analyst in the Claims Division.  Jenifer has been with ISMS/ISMIS/ISMIE Mutual since July 2003, most recently as Professional Liability Analyst.
Please jo...

Majerik ...  **Employee Departure** — **Mon 7/10/2006 10:...  3 KB**

Jennifer Sysio of Claims has left employment with ISMS/ISMIS/ISMIE Mutual.  Please refer calls to Steve Warren at extension 2453.
cc: Harold L. Jensen, M.D.
Alfred J. Clementi, M.D.

Majerik ...  **Employee Departure** — **Mon 7/10/2006 10:...  3 KB**

Laura Peterson of Education has left employment with ISMS/ISMIS/ISMIE Mutual.  Please refer calls to Marcella Hollinger at extension 6442.
cc: Harold L. Jensen, M.D.

Majerik ...  **Employee Promotion** — **Thu 7/6/2006 9:14 ...  3 KB**

We are pleased to announce that Keri Staley has been promoted to Project Manager in the Information Systems Division.  Keri has been with ISMS/ISMIS/ISMIE Mutual since November 2002, most recently as Senior Programmer / Analyst.
Please join us in con...

Majerik ...  **Employee Promotion** — **Thu 7/6/2006 9:04 ...  3 KB**

We are pleased to announce that Theresa Manyik has been promoted to Senior Programmer Analyst in the Information Systems Division.  Theresa has been with ISMS/ISMIS/ISMIE Mutual since June 2001, most recently as Programmer Analyst.
Please join us in ...

| ! ▢ 0 From | Subject | Received | Size |
|---|---|---|---|

**Majerik ...  Employee Promotion**  —  Tue 4/11/2006 8:3...  3 KB

We are pleased to announce that Brian Murphy has been promoted to Senior Risk Management Specialist in the Risk Management Division. Brian has been with ISMS/ISMIS/ISMIE Mutual since April 2000, most recently as Risk Management Specialist. Please jo...

Hutchinso...  Conversion of 4 Sided Files  —  Mon 4/3/2006 3:32 PM  4 KB

Please look for references to "Letter #1, Letter #2 , Letter #3" on the 4 sided files.
If you find any, they must be indicated on the 6 sided files you are converting to.
NOTE: After all the conversions and prepping are done, we will nee...

Hutchinso...  Spreadsheets  —  Fri 3/31/2006 5:27 PM  3 KB

Sakie:
From now on please give Jacinth the cancellation and part-time spreadsheets each Monday.
Laura C. Hutchinson

**Hutchin...  Sarah will not be in today.**  —  Tue 3/28/2006 8:5...  3 KB

Laura C. Hutchinson
Assistant Vice President, Underwriting
ISMIE Mutual Insurance Company

Gentile-K...  New Employee Announcement  —  Fri 3/24/2006 9:43 AM  6 KB

We are pleased to announce the addition of the following new employees:
Laura Peterson has joined ISMS/ISMIS/ISMIE Mutual as Education Staff Specialist in the Education Division. She is working under the direction of Marcella Hollinger and is sta...

Hutchinso...  FW: End of Day Distribution Procedure  —  Fri 3/17/2006 12:01 PM  73 KB

Please keep for your reference.
Laura C. Hutchinson
Assistant Vice President, Underwriting

Majerik C...  Employee Promotion  —  Wed 2/8/2006 12:03 PM  3 KB

We are pleased to announce that Jacinth Stokes has been promoted to Underwriting Support Manager in the Underwriting Division. Jacinth has been with ISMS/ISMIS/ISMIE Mutual since March 1999, most recently as Underwriter.
Please join us in congratula...

Majerik C...  Employee Promotion  —  Wed 2/8/2006 12:00 PM  3 KB

We are pleased to announce that Michi Smith has been promoted to Director, Underwriting in the Underwriting Division. Michi has been with ISMS/ISMIS/ISMIE Mutual since August 1992, most recently as Underwriting Manager.
Please join us in congratulatin...

Majerik C...  Employee Promotion  —  Wed 2/8/2006 11:57 AM  3 KB

We are pleased to announce that Keith Evans has been promoted to Senior Director, Underwriting and Business Development in the Underwriting Division. Keith has been with ISMS/ISMIS/ISMIE Mutual since October 1989, most recently as Director, Business Deve...

Majerik C...  New Employee Announcement  —  Fri 2/3/2006 9:32 AM  4 KB

We are pleased to announce the addition of the following new employee:
Helen Hoesley has joined ISMS/ISMIS/ISMIE Mutual as Secretary to Vice President in the Internal Audit Division. She is working under the direction of Jim Skinne...

Majerik C...  Employee Departure  —  Thu 2/2/2006 8:54 AM  3 KB

Dan Deutschman of Claims has left employment with ISMS/ISMIS/ISMIE Mutual. Please refer calls to Tom Witham at extension 3026.
cc: Harold L. Jensen, M.D.
Alfred J. Clementi, M.D.

**Majerik ...  Employee Departure**  —  Mon 1/23/2006 2:5...  3 KB

Frode Brudvik of Underwriting has left employment with ISMS/ISMIS/ISMIE Mutual. Please refer calls to Sheila Coghlan at extension 2451.
cc: Harold L. Jensen, M.D.

Majerik C...  Employee Position Change  —  Mon 1/16/2006 9:43 AM  3 KB

Nelle Bradley has changed job positions to Risk Management Office Assessment and Meeting Coordinator in the Risk Management Division. Nelle has been with ISMIE Mutual since June 2005, most recently as Risk Management Meeting Planner....

Majerik C...  Employee Promotion  —  Mon 1/16/2006 9:27 AM  3 KB

We are pleased to announce that Ingrid Hubbard has been promoted to Risk Management Technology Specialist in the Risk Management Division. Ingrid has been with ISMS/ISMIS/ISMIE Mutual since January 2003, most recently as Office Assessment Coordinator....

Majerik C...  New Employee Announcement  —  Fri 1/6/2006 2:13 PM  7 KB

We are pleased to introduce Mr. Richard R. King who has joined our organizations in the capacity of Vice President and General Counsel of ISMS and ISMIE Mutual. Mr. King brings to ISMS and ISMIE extensive credentials and a wealth of experience in l...

Majerik C...  New Employee Announcement  —  Wed 1/4/2006 12:07 PM  4 KB

We are pleased to announce the addition of the following new employee:
Julie Powers has joined ISMS/ISMIS/ISMIE Mutual as Secretary to Vice President in the Health Policy Research and Advocacy Division. She is working under the dir...

Majerik C...  Employee Departure  —  Wed 1/4/2006 8:40 AM  3 KB

Bill Burns of Claims has left employment with ISMS/ISMIS/ISMIE Mutual. Please refer calls to Terese Souders at extension 6468.
cc: Harold L. Jensen, M.D.
Alfred J. Clementi, M.D.

| !D 0 From | Subject | Received | Size |
|---|---|---|---|

**From: Majerik Christine (20 items, 9 unread)**

**Majerik Christi... Employee Promotion** — Tue 10/9/2007 2:03 PM — 5 KB
We are pleased to announce that Shirley Martin has been promoted to Project Manager in the Information Systems Division. Shirley has been with ISMS/ISMIS/ISMIE Mutual since April 2000, most recently as Programmer Analyst Specialist.
Please j...

**Majerik Christi... Employee Promotion** — Mon 10/8/2007 3:41 PM — 4 KB
We are pleased to announce that Jon Olson has been promoted to Underwriting Specialist in the Underwriting Division. Jon has been with ISMS/ISMIS/ISMIE Mutual since May 2002, most recently as Senior Underwriter.
Please join us In congratulating J...

Majerik Christine    Employee Promotion — Mon 10/8/2007 12:24 PM — 4 KB
We are pleased to announce that Sarah Maddock has been promoted to Underwriting Technician in the Underwriting Division. Sarah has been with ISMS/ISMIS/ISMIE Mutual since October 2005, most recently as Underwriting Secretary.
Please join us ...

**Majerik Christi... Employee Promotion** — Fri 10/5/2007 4:21 PM — 4 KB
We are pleased to announce that Ingrid Hubbard has been promoted to Senior Risk Management Development Specialist in the Risk Management Division. Ingrid has been with ISMS/ISMIS/ISMIE Mutual since January 2003, most recently as Risk Management Technolog...

Majerik Christine    New Employee Announcement — Wed 10/3/2007 10:58 AM — 5 KB
We are pleased to announce the addition of the following new employee:
Walton Soriano has joined ISMS/ISMIS/ISMIE Mutual as Technical Services Assistant in the Information Systems Division. He is working under the direction of Tom ...

Majerik Christine    New Employee Announcement — Wed 10/3/2007 10:48 AM — 5 KB
We are pleased to announce the addition of the following new employee:
Meghan O'Donnell has joined ISMS/ISMIS/ISMIE Mutual as HR/Payroll Coordinator in the Human Resources Division. She is working under the direction of Donna Genti...

Majerik Christine    Employee Promotion — Wed 10/3/2007 9:55 AM — 4 KB
We are pleased to announce that Lauren Rueber has been promoted to Management Services Assistant in the Human Resources Division. Lauren has been with ISMS/ISMIS/ISMIE Mutual since October 2005, most recently as Secretary, VP Management Services....

**Majerik Christi... Employee Departure** — Fri 9/28/2007 9:16 AM — 4 KB
LuAnn Minogue of Claims has left employment with ISMIE Mutual/ISMIS/ISMS. Please refer calls to Terese Souders at extension 6468.
CC:        Harold L. Jensen, M.D.
           Alfred J. Clementi, M.D.

Majerik Christine    Employee Departure — Thu 9/27/2007 9:47 AM — 4 KB
Keri Staley of Information Systems has left employment with ISMIE Mutual/ISMIS/ISMS. Please refer calls to Carl Block at extension 2429.
CC:        Harold L. Jensen, M.D.

**Majerik Christi... Employee Promotion** — Fri 9/21/2007 10:14 AM — 4 KB
We are pleased to announce that John Maszinski has been promoted to Director, Administration and Planning in the Governmental Affairs Division. John has been with ISMS/ISMIS/ISMIE Mutual since September 2004, most recently as Assistant Director, Adm...

Majerik Christine    New Employee Announcement — Tue 9/18/2007 12:33 PM — 5 KB
We are pleased to announce the addition of the following new employee:
Brenda Bennett-Douse has joined ISMS/ISMIS/ISMIE Mutual as Programmer Analyst in the Information Systems Division. She is working under the direction of Hugh Fr...

**Majerik Christi... Employee Promotion** — Wed 8/29/2007 9:20 AM — 4 KB
We are pleased to announce that Lisa Marie Combes has been promoted to Senior Accountant/Investment Accountant in the Finance Division. Lisa has been with ISMS/ISMIS/ISMIE Mutual since June 2005, most recently as Senior Accountant.
Please jo...

Majerik Christine    Employee Promotion — Fri 8/17/2007 8:08 AM — 4 KB
We are pleased to announce that Harry Hausoul has been promoted to Senior Professional Liability Analyst in the Claims Division. Harry has been with ISMS/ISMIS/ISMIE Mutual since August 2003, most recently as Professional Liability Analyst.
Pleas...

Majerik Christine    Employee Departure — Thu 8/16/2007 8:45 AM — 4 KB
Krystin Daniello of Claims has left employment with ISMIE Mutual/ISMIS/ISMS. Please refer calls to Kelly Kehoe at extension 2428.
CC:        Harold L. Jensen, M.D.
           Alfred J. Clementi, M.D.

**Majerik Christi... Employee Departure** — Fri 8/10/2007 9:00 AM — 4 KB
Andrea Hebbring of Finance has left employment with ISMIE Mutual/ISMIS/ISMS. Please refer calls to Angela Walsh at extension 6446.
CC:        Harold L. Jensen, M.D.
           Alfred J. Clementi, M.D.

| ! | □ | ᵍ | From | Subject | Received | ▽ | Size | ▽ |
|---|---|---|------|---------|----------|---|------|---|

Smith Car... **Correspondence????**                                           Mon 11/13/2006 2:01 ... 2 KB
   I have received in the underwriting mail workflow four pages (9 through 12) of an application.  The only clue from whom this information
   came from is that it was faxed from a Kinkos in Plainfield.  If any one has an idea of what policy this would be!...

Nowel Ka... **FW: Dr. Charles Roller #63668**                                 Mon 11/13/2006 9:39 ... 8 KB
   Hi Sakie,
   I just got a call on this, the office is requesting proof of coverage.  If you could reinitialize the policy this morning, I would appreciate it.
   Thanks!

Nowel Ka... **Dr. Charles Roller #63668**                                     Fri 11/10/2006 3:59 PM  5 KB
   Hi Sakie,
   Can you reinitialize this policy and let Tanya know when its complete?  His new business submission is ok to accept.  I have completed an
   AR in PUMA.

Cowan Lisa **file scanned**                                                   Fri 11/10/2006 1:25 PM  2 KB
   25978 <end>

Majerik C... **New Employee Announcement**                                    Thu 11/9/2006 8:05 AM  4 KB
   We are pleased to announce the addition of the following new employee:
   David Wichmann  has joined ISMS/ISMIS/ISMIE Mutual as Controller in the Finance Division.  He is working under the direction of Bud
   Gross and is stationed on the...

Majerik ... **Employee Promotion**                                            **Wed 11/8/2006 4:... 4 KB**
   We are pleased to announce that Nicole Dykas has been promoted to Senior Professional Liability Analyst in the Claims Division.  Nicole
   has been with ISMS/ISMIS/ISMIE Mutual since November 2004, most recently as Professional Liability Analyst.
   Please j...

Gentile-K... **Holiday Event**                                               Wed 11/8/2006 11:27 ... 9 KB
   Please join us for lunch, fun, music, dancing, and gifts to celebrate the holiday season!
        Where:      The Mid America Club (located in the Aon Building)
                    200 East Randolph Drive...

Cowan Lisa **SCANNED FILES**                                                  Tue 11/7/2006 3:43 PM  2 KB
   62816  32430 <end>

Cowan Lisa **FILE SCANNED**                                                   Mon 11/6/2006 7:56 AM  2 KB
   GOOD MORNING
   YOUR FILE IS SCANNED 38584 <end>

Maddock ... **New Business Applications**                                     Thu 11/2/2006 3:01 PM  7 KB
   Hi Sakie-
   Here is a list of New Business Applications I completed while you were out.  I was unable to submit the Outlook Form for any of them.
   My Outlook won't do that for some reason.  I'll have to ask you who to call to fix it when you get bac...

Cowens B... **RE: Autumn Sheese-63716**                                       Thu 11/2/2006 10:33 ... 4 KB
   NO

   From: Scott Sakie

Majerik ... **Employee Promotion**                                            **Thu 11/2/2006 8:4... 4 KB**
   We are pleased to announce that Tracey Printen has been promoted to Assistant Director in the Health Policy Research and Advocacy
   Division.  Tracey has been with ISMS/ISMIS/ISMIE Mutual since October 2001, most recently as Research Associate.
   Please jo...

Cowan Lisa **file scann**                                                     Wed 11/1/2006 11:38 ... 1 KB
   50250    16101 <end>

**Date: Older**

Cowan L... **reopened file**                                                 **Mon 10/30/2006 4:... 2 KB**
   62330        this is scanned <end>

RightFa... **Your fax has been successfully sent to Kathy Mecham at 1-618-244-3832.**   **Mon 10/30/2006 2:... 635 B**
   Your fax has been successfully sent to Kathy Mecham at 1-618-244-3832.
   ----------------------------------------------------------
   Time: 10/30/2006 2:30:55 PM

Cowan Lisa **REOPENED FILE SCAN**                                             Fri 10/27/2006 4:54 PM  5 KB
   HI Sakie
   These files are scanned 08918
                    62815

Hutchin... **FW: Hunt Line Adjustments**                                      **Fri 10/27/2006 11:... 6 KB**
   We can now return to normal ...
   The Techs are back in hunt and the Specialists can be out.
   Also, the "time off hunt" schedule is active again.

Wideman... **Missing Applications**                                           Wed 10/25/2006 11:5... 4 KB
   Hey Sakie,
   Below are the names of the physician's applications for Infinity Healthcare (#54259) that seem to be missing or have not been scanned.
   Please let me know what you come up with when you have a chance.

**File Date:** March 11, 2008

**Case No:** 08cv 1457

**ATTACHMENT #** 2

**EXHIBIT** _____

**TAB (DESCRIPTION)**
Sarah's Backlog - Resumes, Tech, Letter of Ref,
Emails

ImageRight Workflow - To Do List

LOSS HISTORY    ALL    Sarah Maddock

| | | | | |
|---|---|---|---|---|
| LOSS HISTORY - AHP | BENEDICT | LOSS HISTORY | 25538 | Loss History | 12/26/2007 9:25:29 AM | 12/26/2007 |
| LOSS HISTORY - ACTIVE POL BENEDICT | LOSS HISTORY | 32674 | Loss History | 12/26/2007 9:25:29 AM | 12/26/2007 |
| LOSS HISTORY - PEORIA MEL BENEDICT | LOSS HISTORY | 46448 | Loss History | 12/26/2007 9:30:10 AM | 12/26/2007 |
| LOSS HISTORY - PEORIA MEL BENEDICT | LOSS HISTORY | 40325 | Loss History | 12/26/2007 9:30:11 AM | 12/26/2007 |
| LOSS HISTORY - ACTIVE POL BENEDICT | LOSS HISTORY | 32284 | Loss History | 12/26/2007 9:30:13 AM | 12/26/2007 |
| LOSS HISTORY - ACTIVE POL BENEDICT | LOSS HISTORY | 61557 | Loss History | 12/26/2007 9:30:19 AM | 12/26/2007 |
| LOSS HISTORY - AHP | BENEDICT | LOSS HISTORY | 22051 | Loss History | 12/26/2007 9:33:44 AM | 12/26/2007 |
| LOSS HISTORY - ACTIVE POL BENEDICT | LOSS HISTORY | 02838 | Loss History | 12/26/2007 9:33:47 AM | 12/26/2007 |
| LOSS HISTORY - ACTIVE POL BENEDICT | LOSS HISTORY | 11093 | IMPORTED FROM PRINT | 12/26/2007 10:16:54 AM | 12/26/2007 |
| LOSS HISTORY - NON-INSURA BENEDICT | LOSS HISTORY | 34039 | IMPORTED FROM PRINT | 12/26/2007 11:11:31 AM | 12/26/2007 |
| LOSS HISTORY - ACTIVE POL BENEDICT | LOSS HISTORY | 62630 | IMPORTED FROM PRINT | 12/26/2007 12:30:53 PM | 12/26/2007 |
| LOSS HISTORY - ACTIVE POL BENEDICT | LOSS HISTORY | 4.2309 | IMPORTED FROM PRINT | 12/26/2007 12:38:14 PM | 12/26/2007 |
| LOSS HISTORY - AHP | BENEDICT | LOSS HISTORY | 52011 | IMPORTED FROM PRINT | 8:44:15 AM | 12/27/2007 |
| LOSS HISTORY - NON-INSUR( BENEDICT | AMY LYNN W/EI | Loss History | 12/27/2007 10:22:51 AM | 12/27/2007 |
| LOSS HISTORY - AHP | BENEDICT | 07472 | Loss History | 12/27/2007 10:22:53 AM | 12/27/2007 |
| LOSS HISTORY - PEORIA MEL BENEDICT | 16313 | Loss History | 12/27/2007 10:22:59 AM | 12/27/2007 |
| LOSS HISTORY - PEORIA MEL BENEDICT | 42260 | Loss History | 12/27/2007 10:23:00 AM | 12/27/2007 |
| LOSS HISTORY - PEORIA MEL BENEDICT | 07560 | Loss History | 12/27/2007 10:23:02 AM | 12/27/2007 |
| LOSS HISTORY - AHP | BENEDICT | 06512 | IMPORTED FROM PRINT | 12/27/2007 11:14:50 AM | 12/27/2007 |
| LOSS HISTORY - AHP | BENEDICT | 61015 | IMPORTED FROM PRINT | 12/27/2007 3:36:40 PM | 12/27/2007 |

Case 1:08-cv-01517 Document 1-13 Filed 03/13/2008 Page 1 of 1

Dec. 27, 2007

# Active Tasks    Flow: LOSS HISTORY    Step: ALL    User: Sarah Maddock

| step | From | flow | file_no | description | date_initiated | availabledate |
|------|------|------|---------|-------------|----------------|----------------|
| LOSS HISTORY - PEOR | BENEDICT | LOSS HISTOR | 14381 | Peoria - Active | 12/6/2007 9:21:57 A | 12/6/2007 9:21: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSSHISTOR | 20226 | Active | 12/10/2007 1:25:5( | 12/11/2007 11: |
| LOSS HISTORY - NON-I | BENEDICT | LOSS HISTOR | 56024 | IPT | 12/10/2007 1:50:42 | 12/11/2007 11: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSSHISTOR | 64622 | Active | 12/10/2007 3:09:44 | 12/11/2007 11: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSSHISTOR | 49769 | Active | 12/10/2007 3:31:28 | 12/11/2007 12: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSSHISTOR | 26392 | Active | 12/11/2007 9:01:47 | 12/12/2007 12: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 19517 | Active | 12/11/2007 9:05:18 | 12/11/2007 12: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSSHISTOR | 14203 | Active | 12/11/2007 10:58:2 | 12/11/2007 12: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 11770 | Active | 12/11/2007 11:05:4 | 12/11/2007 12: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSSHISTOR | 61624 | Active | 12/11/2007 11:05:5 | 12/11/2007 12: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 00713 | Active | 12/11/2007 11:06:5! | 12/11/2007 1:1( |
| LOSS HISTORY - ACTIV | BENEDICT | LOSSHISTOR | 24701 | Active | 12/11/2007 11:09:3 | 12/11/2007 1:1( |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 11530 | Active | 12/11/2007 11:10:3! | 12/11/2007 1:11 |
| LOSS HISTORY - ACTIV | BENEDICT | LOSSHISTOR | 44720 | Active | 12/11/2007 11:20:3 | 12/11/2007 1:21 |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 07865 | Active | 12/11/2007 1:10:00 | 12/11/2007 1:3( |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 24456 | Active | 12/11/2007 2:57:27 | 12/12/2007 10: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 21628 | Active | 12/12/2007 8:49:04 | 12/12/2007 10: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 59853 | Active | 12/12/2007 9:00:48 | 12/12/2007 10: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 48752 | Active | 12/12/2007 10:24:2 | 12/12/2007 1:14 |
| LOSS HISTORY - ACTIV | BENEDICT | LOSSHISTOR | 30156 | Active | 12/12/2007 10:24:2 | 12/12/2007 1:11 |
| S HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 36101 | Active | 12/12/2007 10:24:2 | 12/12/2007 1:16 |
| LOSS HISTORY - ACTIV | BENEDICT | LOSSHISTOR | 60814 | Active | 12/12/2007 10:24:3 | 12/12/2007 1:2( |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 22808 | Active | 12/12/2007 10:24:3: | 12/12/2007 1:2: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSSHISTOR | 22976 | Active | 12/12/2007 10:24:3! | 12/12/2007 1:1: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 62296 | Active | 12/12/2007 10:53:1! | 12/12/2007 1:3( |
| LOSS HISTORY - ACTIV | BENEDICT | LOSSHISTOR | 55676 | Active | 12/12/2007 11:14:39 | 12/12/2007 8:5! |
| LOSS HISTORY - ACTIV | BENEDICT | LOSSHISTOR | 26209 | Active | 12/12/2007 8:01:46 | 12/13/2007 8:58 |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 64311 | Active | 12/13/2007 9:45:3- | 12/13/2007 9:50 |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 52608 | Active | 12/13/2007 10:03:2 | 12/13/2007 3:0: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSSHISTOR | 22899 | Active | 12/13/2007 10:08:3! | 12/13/2007 3:0! |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 64643 | Active | 12/13/2007 10:08:3: | 12/13/2007 3:14 |

Active Tasks   Flow: LOSS HISTORY   Step: ALL   User: Sarah Maddock

Dec 27, 2007

| step | From | flow | file_no | description | date_initiated | availabledate |
|---|---|---|---|---|---|---|
| LOSS HISTORY - PEOR | BENEDICT | LOSS HISTOR | 36400 | Peoria - Active | 12/13/2007 10:08:5( | 12/13/2007 3:0( |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 10834 | Peoria - Active | 12/13/2007 3:07:36 | 12/13/2007 3:38 |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 57018 | Active | 12/13/2007 3:07:30 | 12/13/2007 3:40: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 52913 | Active | 12/14/2007 10:57:3( | 12/14/2007 12:4 |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 45010 | Active | 12/14/2007 10:57:4( | 12/14/2007 12:2 |
| LOSS HISTORY - PEOR | SMITHC | LOSS HISTOR | 41108 | Active | 12/14/2007 10:57:4 | 12/14/2007 12:8 |
| LOSS HISTORY - PEOR | BENEDICT | LOSS HISTOR | 25766 | Peoria - Active | 12/14/2007 10:57:5( | 12/14/2007 10:5 |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 82374 | Active | 12/14/2007 10:57:5 | 12/14/2007 10:5 |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 60740 | Active | 12/17/2007 11:13:2 | 12/14/2007 12:4 |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 62283 | Active | 12/17/2007 11:13:4 | 12/17/2007 11: |
| LOSS HISTORY - ACTIV | MOORER | LOSS HISTOR | 26209 | Active | 12/17/2007 11:28:5 | 12/17/2007 11: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 57774 | Active | 12/17/2007 11:28:5 | 12/17/2007 12: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 25830 | Active | 12/17/2007 11:40:5 | 12/17/2007 12: |
| LOSS HISTORY - PEOR | BENEDICT | LOSS HISTOR | 11701 | Peoria - Active | 12/17/2007 11:41:0: | 12/17/2007 12: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 19517 | Active | 12/17/2007 11:41:0: | 12/17/2007 12: |
| LOSS HISTORY - PEOR | BENEDICT | LOSS HISTOR | 17680 | Peoria - Active | 12/17/2007 11:41:0 | 12/17/2007 1:2: |
| LOSS HISTORY - ACTIV | MOORER | LOSS HISTOR | 94346 | Active | 12/17/2007 11:41:0 | 12/17/2007 1:2: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 64696 | Active | 12/17/2007 7:40:24 | 12/18/2007 9:4: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 52894 | Active | 12/18/2007 10:06:0 | 12/18/2007 10: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 11347 | Active | 12/18/2007 10:21:2: | 12/18/2007 11:( |
| LOSS HISTORY - ACTIV | NOWELL | LOSS HISTOR | 33138 | Affp Confirmation o| 12/18/2007 10:21:3! | 12/18/2007 11:" |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 09009 | Active | 12/18/2007 11:25:3: | 12/18/2007 12:4 |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 04692 | Active | 12/18/2007 10:21:3! | 12/18/2007 11:( |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 07981 | Active | 12/18/2007 1:02:4: | 12/18/2007 1:0 |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 53627 | Active | 12/18/2007 3:37:14 | 12/18/2007 4:1 |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 61978 | Active | 12/18/2007 3:37:1 | 12/18/2007 4:1 |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 52866 | Active | 12/18/2007 3:37:1 | 12/18/2007 4:1 |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 12496 | Active | 12/18/2007 3:37:19 | 12/18/2007 4:11 |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 82923 | Active | 12/18/2007 3:40:5 | 12/18/2007 |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 26129 | Active | 12/19/2007 12:22:1: | 12/19/2007 12:4 |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 41981 | Active | 12/19/2007 12:22:1: | 12/19/2007 3:5! |

Case 1:08-cv-01457   Document 13   Filed 03/11/2008   Page 6 of 69

| step | From | flow | file_no | description | date_initiated | availabledate |
|---|---|---|---|---|---|---|
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 64398 | Active | 12/20/2007 8:15:28 | 12/20/2007 11: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 19462 | IMPORTED FROM P | 12/20/2007 9:46:03 | 12/20/2007 2:1 |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 33300 | Loss History | 12/20/2007 11:03:31 | 12/20/2007 2:22 |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 22164 | Loss History | 12/20/2007 11:03:4 | 12/20/2007 2:2 |
| LOSS HISTORY - PEOR | BENEDICT | LOSS HISTOR | 03855 | Loss History | 12/20/2007 11:03:44 | 12/20/2007 2:3 |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 08425 | Loss History | 12/20/2007 11:03:4 | 12/20/2007 2:3 |
| LOSS HISTORY - AHP | BENEDICT | LOSS HISTOR | 15448 | Loss History | 12/20/2007 10:55:5 | 12/20/2007 2:3 |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 00713 | Loss History | 12/21/2007 10:55:54 | 12/21/2007 1:3 |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 61442 | Loss History | 12/21/2007 11:03:4 | 12/21/2007 2:1 |
| LOSS HISTORY - AHP | BENEDICT | LOSS HISTOR | 81015 | Loss History | 12/21/2007 11:06:1 | 12/21/2007 1:4 |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 23625 | IMPORTED FROM P | 12/21/2007 2:47:29 | 12/20/2007 2:44 |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 32546 | IMPORTED FROM F | 12/26/2007 8:15-03 | 12/26/2007 9:4 |
| LOSS HISTORY - NON | BENEDICT | LOSS HISTOR | 63523 | IMPORTED FROM F | 12/21/2007 11:06:1 | 12/26/2007 9:4 |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 62046 | Loss History | 12/26/2007 9:25:18 | 12/26/2007 9:5 |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 06512 | IMPORTED FROM F | 12/26/2007 9:25:26 | 12/26/2007 9:5 |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 62214 | Loss History | 12/26/2007 9:25:28 | 12/26/2007 9:5 |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 21402 | IMPORTED FROM P | 12/26/2007 10:41:1 | 12/26/2007 10: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 43330 | IMPORTED FROM P | 12/21/2007 10:41:1 | 12/26/2007 10: |
| LOSS HISTORY - AHP | BENEDICT | LOSS HISTOR | 25558 | Loss History | 12/26/2007 9:25:29 | 12/26/2007 9:5 |
| LOSS HISTORY - AHP | BENEDICT | LOSS HISTOR | 25558 | Loss History | 12/26/2007 9:25:29 | 12/26/2007 10: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 41526 | Loss History | 12/26/2007 9:30:13 | 12/26/2007 9:5 |
| LOSS HISTORY - PEOR | BENEDICT | LOSS HISTOR | 46448 | Loss History | 12/26/2007 9:30:10 | 12/26/2007 10: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 32654 | Loss History | 12/26/2007 9:30:10 | 12/26/2007 10: |
| LOSS HISTORY - PEOR | BENEDICT | LOSS HISTOR | 40326 | Loss History | 12/26/2007 9:30:10 | 12/26/2007 10: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 38284 | Loss History | 12/26/2007 9:30:13 | 12/26/2007 10: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 61557 | Loss History | 12/26/2007 9:33:44 | 12/26/2007 10: |
| LOSS HISTORY - AHP | BENEDICT | LOSS HISTOR | 22061 | Loss History | 12/26/2007 9:33:44 | 12/26/2007 11: |
| LOSS HISTORY - AHP | BENEDICT | LOSS HISTOR | 02838 | Loss History | 12/26/2007 9:33:44 | 12/26/2007 11: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 11093 | IMPORTED FROM P | 12/26/2007 1:30 | 12/26/2007 1:3( |

Active Tasks   Flow: LOSS HISTORY   Step: ALL   User: Sarah Maddock

Dec 27, 2007

| step | From | flow | file_no | description | date_initiated | availabledate |
|---|---|---|---|---|---|---|
| LOSS HISTORY - NON-I | BENEDICT | LOSS HISTOR | 34339 | IMPORTED FROM P | 12/26/2007 11:5 | 12/26/2007 11: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 62830 | IMPORTED FROM P | 12/26/2007 12:30:5 | 12/26/2007 3:1 |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 42800 | IMPORTED FROM P | 12/26/2007 1:29: | 12/26/2007 4:3 |
| LOSS HISTORY - AHP | BENEDICT | LOSS HISTOR | 52011 | IMPORTED FROM P | 12/27/2007 8:44:15 | 12/27/2007 10: |
| LOSS HISTORY - NON | BENEDICT | LOSS HISTOR | ANALYNN | LOSS HISTORY | 12/27/2007 9:35 | 12/27/2007 |
| LOSS HISTORY - AHP | BENEDICT | LOSS HISTOR | 07472 | Loss History | 12/27/2007 10:22:5 | 12/27/2007 11: |
| LOSS HISTORY - PEOR | BENEDICT | LOSS HISTOR | 03845 | Loss History | 12/27/2007 10:23:0 | 12/27/2007 11: |
| LOSS HISTORY - PEOR | BENEDICT | LOSS HISTOR | 42260 | Loss History | 12/27/2007 10:23:0 | 12/27/2007 11: |
| LOSS HISTORY - PEOR | BENEDICT | LOSS HISTOR | 05560 | LOSS HISTORY | 12/27/2007 11:1 | 12/27/2007 11: |
| LOSS HISTORY - AHP | BENEDICT | LOSS HISTOR | 06512 | IMPORTED FROM F | 12/27/2007 11:14:5 | 12/27/2007 1:1 |
| LOSS HISTORY - AHP | BENEDICT | LOSS HISTOR | 61616 | IMPORTED FROM | 12/27/2007 8:3:0 | 12/27/2007 8:5 |

## Scott Sakie

**From:**    Hutchinson Laura
**Sent:**    Wednesday, January 16, 2008 8:51 AM
**To:**    Scott Sakie
**Subject:** Pending Work

There are 2 new business from yesterday that should be worked on.
Please process as a priority.

Laura C. Hutchinson
Assistant Vice President, Underwriting
ISMIE Mutual Insurance Company
312.580.6458 (Direct)
312.782.2023 (Fax)

1/18/2008

(312) 782-2023 FAX

---

**From:** Stokes Jacinth
**Sent:** Friday, January 18, 2008 9:55 AM
**To:** Scott Sakie
**Subject:** FW: Pending Work

Hi Sakie,

Is there are reason why these submissions have not been processed yet? Let me know if you are having any issues with these.

Thanks.

# Jacinth

---

**From:** Hutchinson Laura
**Sent:** Thursday, January 17, 2008 4:07 PM
**To:** Scott Sakie
**Cc:** Stokes Jacinth
**Subject:** Pending Work

Sakie:

There are 2 submissions and 1 new business from this morning that you should have processed today. Please make them a priority when you start work tomorrow morning.

Laura C. Hutchinson
Assistant Vice President, Underwriting
ISMIE Mutual Insurance Company
312.580.6458 (Direct)
312.782.2023 (Fax)

*[handwritten: Not assigned / see image right / page]*

## Scott Sakie

| | |
|---|---|
| **From:** | Scott Sakie |
| **Sent:** | Friday, January 18, 2008 11:17 AM |
| **To:** | Stokes Jacinth |
| **Cc:** | Hutchinson Laura |
| **Subject:** | RE: Pending Work |

Jacinth and Laura:
Both tasks 64958 and 64957 were sent to me this morning.

Please note that if I am currently working on another task, it is possible that you will find items periodically throughout the day in either the new business workflow or submission workflow. It has always been my daily procedure that once I clear out these workflows, I begin to process some of my other work. I have noticed an influx of emails regarding pending work during the last few days. If there is another procedure that you would like me to follow, let's please discuss, (maybe certain times). I do not need to be constantly reminded throughout the day as to whether I have work pending. I always check the system.



If I am currently working on another task, it is possible that you will find items periodically throughout the day in either the new business workflow or submissions. It has always been my daily procedure that once I clear out these workflows, I begin to process some of my other work. I have noticed an influx of emails regarding pending work during the last few days. If there is another procedure that you would like me to follow, let's please discuss, (Maybe certain times). I do not need to be constantly reminded throughout the day as to whether I have work pending. I always check the system.

Sakie Aneshia Scott
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL. 60602
(312) 853-1617

1/18/2008



If I am currently working on another task, it is possible that you will find items periodically throughout the day in either the new business workflow or submissions. It has always been my daily procedure that once I clear out these workflows, I begin to process some of my other work. I have noticed an influx of emails regarding pending work during the last few days. If there is another procedure that you would like me to follow, let's please discuss, (Maybe certain times). I do not need to be constantly reminded throughout the day as to whether I have work pending. I always check the system.

Sakie Aneshia Scott
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL  60602
(312) 853-1617

1/18/2008

## Scott Sakie

| | |
|---|---|
| **From:** | Stokes Jacinth |
| **Sent:** | Friday, January 18, 2008 3:11 PM |
| **To:** | Scott Sakie |
| **Cc:** | Hutchinson Laura |
| **Subject:** | RE: Pending Work |

As an FYI, when tasks, including Submission and New Business, are in ImageRight, the temporary number can be looked up to see how far they have been processed. This morning when I looked at the two outstanding submissions, they still had a temporary number and were in the Submission Materials Workflow. This means they were not being looked at even though they came in the door on the morning of January 17. There is no need for Management to wait until you clear out your workflow. The Submission and New Business are a priority and would go before loss histories and supplies. If you are working on something else you need to let me know.

Lastly, it is the responsibility of Underwriting Management to insure that the work in this Division is processed in a timely manner. If there is any question, then the proper staff will need to be notified. Therefore, I do not need you to tell me whether you need to be reminded or not, that is my job, and I also check the system.

Thank you.


## Jacinth

**From:** Scott Sakie
**Sent:** Friday, January 18, 2008 11:17 AM
**To:** Stokes Jacinth
**Cc:** Hutchinson Laura
**Subject:** RE: Pending Work

**Jacinth and Laura:**
**Both tasks 64958 and 64957 were sent to me this morning.**

**Please note that if I am currently working on another task, it is possible that you will find items periodically throughout the day in either the new business workflow or submission workflow. It has always been my daily procedure that once I clear out these workflows, I begin to process some of my other work. I have noticed an influx of emails regarding pending work during the last few days. If there is another procedure that you would like me to follow, let's please discuss, (maybe certain times). I do not need to be constantly reminded throughout the day as to whether I have work pending. I always check the system.**

**Scott Sakie**

| | |
|---|---|
| **From:** | Stokes Jacinth |
| **Sent:** | Friday, January 18, 2008 9:55 AM |
| **To:** | Scott Sakie |
| **Subject:** | FW: Pending Work |

Hi Sakie,

Is there are reason why these submissions have not been processed yet? Let me know if you are having any issues with these.

Thanks.

## Jacinth

**From:** Hutchinson Laura
**Sent:** Thursday, January 17, 2008 4:07 PM
**To:** Scott Sakie
**Cc:** Stokes Jacinth
**Subject:** Pending Work

Sakie:

There are 2 submissions and 1 new business from this morning that you should have processed today. Please make them a priority when you start work tomorrow morning.

Laura C. Hutchinson
Assistant Vice President, Underwriting
ISMIE Mutual Insurance Company
312.580.6458 (Direct)
312.782.2023 (Fax)

## Scott Sakie

**From:** Stokes Jacinth
**Sent:** Friday, January 18, 2008 9:55 AM
**To:** Scott Sakie
**Subject:** FW: Pending Work

Hi Sakie,

Is there are reason why these submissions have not been processed yet? Let me know if you are having any issues with these.

Thanks.

## Jacinth

**From:** Hutchinson Laura
**Sent:** Thursday, January 17, 2008 4:07 PM
**To:** Scott Sakie
**Cc:** Stokes Jacinth
**Subject:** Pending Work

Sakie:

There are 2 submissions and 1 new business from this morning that you should have processed today. Please make them a priority when you start work tomorrow morning.

Laura C. Hutchinson
Assistant Vice President, Underwriting
ISMIE Mutual Insurance Company
312.580.6458 (Direct)
312.782.2023 (Fax)

## Scott Sakie

**From:** Stokes Jacinth

**Sent:** Friday, January 18, 2008 9:55 AM

**To:** Scott Sakie

**Subject:** FW: Pending Work

Hi Sakie,

Is there are reason why these submissions have not been processed yet? Let me know if you are having any issues with these.

Thanks.

## Jacinth

**From:** Hutchinson Laura
**Sent:** Thursday, January 17, 2008 4:07 PM
**To:** Scott Sakie
**Cc:** Stokes Jacinth
**Subject:** Pending Work

Sakie:

There are 2 submissions and 1 new business from this morning that you should have processed today. Please make them a priority when you start work tomorrow morning.

Laura C. Hutchinson
Assistant Vice President, Underwriting
ISMIE Mutual Insurance Company
312.580.6458 (Direct)
312.782.2023 (Fax)

*minutes*

*Doc. Summ*

# Memorandum

| | |
|---|---|
| **Date:** | April 12, 2007 |
| **To:** | Block; Fowler; Fritz; Maes; Thiemann |
| **Cc:** | Allphin; Coghlan; Evans; Koves; Smith; Stokes |
| **From:** | Laura C. Hutchinson |
| **Subject:** | Minutes of PUMA Meeting on April 12, 2007 |

1. **Imaging Project**: The fix for Renewal packet headings has been assigned to a programmer.   Also, establish a PREP Workflow – implementation target date is now May 1st.

2. **Companion Endorsements**: Automate the addition and deletion of these endorsements.  In testing with Ron Fowler.  Target date is June 1st.

3. **Renewal Letters:** A tail quote will need to be a part of the renewal letters for all policies.  For clinics, provide a quote for the corporation and each of the physicians.

4. **Dividend Plan:** Calculate at first $1m; determine continuous coverage at the account level; do not include PCF amount.  April 1st is the cut-off date for entering retro changes and reinstatements back into the 07/05 and 07/06 policy years.  Free Medical Clinic policies will be included.

5. **PUMA Quote Letters**: Quote letters for individuals are done and groups should be done today.  Keith to review test data tomorrow.

6. **Non-Renewal Pending Flag**: E-mail sent to Thiemann 03/13/07; has been assigned to a programmer. Still being worked on.

7. **Commission:** Commission on renewals on or after 07/01/07 should be increased to 8.5%.  To be implemented after this quarter.

8. **PUMA Letters**: E-mail to Thiemann 03/29/07 to add 5 letters to the table.  Corrections are with the programmer.

   **Absent:** Allphin, Block, Maes



**PUMA Minutes041207.doc Properties**

General | Summary | Statistics | Contents | Custom |

Created:    Thursday, April 12, 2007 9:27:00 AM
Modified:    Thursday, April 12, 2007 8:27:57 AM
Accessed:    Monday, December 03, 2007 9:27:17 AM
Printed:    Thursday, April 12, 2007 9:27:00 AM

Last saved by:    scott
Revision number:    2
Total editing time:    0 Minutes

Statistics:

| Statistic name | Value |
| --- | --- |
| Pages: | 1 |
| Paragraphs: | 15 |
| Lines: | 41 |
| Words: | 241 |
| Characters: | 1246 |
| Characters (with spaces): | 1506 |

OK      Cancel

# Memorandum

| | |
|---|---|
| **Date:** | March 15, 2007 |
| **To:** | Block; Fowler; Fritz; Maes; Thiemann |
| **Cc:** | Allphin; Coghlan; Evans; Koves; Smith; Stokes |
| **From:** | Laura C. Hutchinson |
| **Subject:** | Minutes of PUMA Meeting on March 15, 2007 |

1. **Imaging Project:** The fix for Renewal packet headings is pending.    Also, establish a PREP Workflow – implementation target date is April 1st.

2. **Companion Endorsements**: Automate the addition and deletion of these endorsements. In testing with Ron Fowler.

3. **Renewal Letters:** A tail quote will need to be a part of the renewal letters for all policies. For clinics, provide a quote for the corporation and each of the physicians. Target date is 04/01/07.

4. **Dividend Plan:** Calculate at first $1m; determine continuous coverage at the account level; do not include PCF amount. April 1st is the cut-off date for entering retro changes and reinstatements.

5. **Policy Status Types:** Submission Pending Report will be in the next executable.

6. **Access to PUMA and ImageRight outside of office:** Steve Maes is proceeding with implementation for U/W Management by mid-March.

7. **New PUMA Reports for Allphin:**    New Business and Cancellations; excel spreadsheet; corrections have been sent to the programmer. Another report has been added - Clinic Tracking.

8. **PUMA Quote Letters:** Keith distributed quote letters for individuals and groups. Has been assigned to a programmer. Target date is March 16th.

**Absent:** Block and Koves



**PUMA Minutes 031507.doc Properties**

General | Summary | Statistics | Contents | Custom

PUMA Minutes 031507.doc

Type:        Microsoft Word 97-2003 Document
Location:    Z:\secrtary\1SCOTT SAKIE\PUMAMinutes\2006 PUMA
Size:        31.5KB (32,256 bytes)

MS-DOS name:   PUSD1A~1.DOC
Created:       Thursday, March 15, 2007 12:46:54 PM
Modified:      Thursday, March 15, 2007 1:46:13 PM
Accessed:      Wednesday, November 28, 2007 4:15:13 PM

Attributes:   ☐ Read-only   ☐ Hidden
              ☑ Archive     ☐ System

OK          Cancel

# Memorandum

| | |
|---|---|
| **Date:** | March 1, 2007 |
| **To:** | Block; Fowler; Fritz; Maes; Thiemann |
| **Cc:** | Allphin; Coghlan; Evans; Koves; Smith; Stokes |
| **From:** | Laura C. Hutchinson |
| **Subject:** | Minutes of PUMA Meeting on March 1, 2007 |

1. **Imaging Project**: There is one pending issue: the Renewal packet (headings).   Also, establish a PREP Workflow - implementation target date is April 1st.

2. **Web Site**: March 15th announced in E-News to policyholders and the brokers.

3. **Companion Endorsements**: Automate the addition and deletion of these endorsements. In testing with Ron Fowler.

4. **SIR/Infinity (Keith):** Currently on hold. Design memo has been sent to Steve Maes; billing questions for Claims from IS are still pending answers.

5. **Renewal Letters:** A tail quote will need to be a part of the renewal letters for all policies.  For clinics, provide a quote for the corporation and each of the physicians.  Target date is 04/01/07.

6. **Dividend Plan:** We continued discussion of implementation issues:  calculate at first $1m; determine continuous coverage at the account level; do not include PCF amount.  April 1st is the cut-off date for entering retro changes and reinstatements.

7. **Policy Status Types:** The submission binder issue was discussed; Claims should be sent an e-mail notification.  Address to Kelly Kehoe and cc:  Christine Renfro, Larry Szatkowski and Keith Evans.

8. **Access to PUMA and ImageRight outside of office:** Steve Maes is proceeding with implementation for U/W Management by mid-March.

9. **New PUMA Reports for Allphin:**   New Business and Cancellations; excel spreadsheet; target date is 03/01/07.  In testing with Ron Fowler.  Another report has been added - Clinic Tracking.

10. **PUMA Quote Letters**: Keith distributed quote letters for individuals and groups.  Has been assigned to a programmer.


**Absent:** Fritz





**PUMA Minutes030107.doc Properties**

General | Summary | Statistics | Contents | Custom |

Created:    Thursday, March 01, 2007 1:01:00 PM
Modified:   Thursday, March 01, 2007 1:01:38 PM
Accessed:   Monday, December 03, 2007 9:21:36 AM
Printed:    Thursday, March 01, 2007 12:57:00 PM

Last saved by:    scott
Revision number:  2
Total editing time:  4 Minutes

Statistics:

| Statistic name | Value |
| --- | --- |
| Pages: | 2 |
| Paragraphs: | 17 |
| Lines: | 52 |
| Words: | 279 |
| Characters: | 1504 |
| Characters (with spaces): | 1803 |

OK        Cancel



## Active Task Assigned Report
User: : Sakie Scott
Flow: NEW BUSINESS Step: NEW BUSINESS - INDEX

View Report Description

### Total Task Assigned: 2

| Number | User Name | File Number | Drawer | Document type | Date Initiated | Available Date | Description | Start Time | Current | Future | Hold |
|--------|-----------|-------------|--------|---------------|----------------|----------------|-------------|------------|---------|--------|------|
| 1 | Sakie Scott | 64732 | Underwriting | Insured Correspondence | 11/6/2007 9:03:33 AM | 11/16/2007 3:27:58 PM | Reintialize please | 11/16/2007 3:27:31 PM | x | | |
| 2 | Sakie Scott | 64740 | Underwriting | Miscellaneous | 11/19/2007 7:40:50 AM | 11/19/2007 9:20:28 AM | Please reinitialize- see comment from Jon | 11/19/2007 9:20:28 AM | x | | |
| Totals | | | | | | | | | 2 | 0 | 0 |

Version: 3.4.1.5060

Show SQL Statement

**Scott Sakie**

| | |
|---|---|
| **From:** | Scott Sakie |
| **Sent:** | Monday, November 19, 2007 2:26 PM |
| **To:** | Hutchinson Laura |
| **Subject:** | Task Assigned: #64740 - Mategrano |

This task needs to be reinitialized tomorrow.

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL 60602
(312) 853-1617
(312) 782-2023 FAX

1

**Scott Sakie**

| | |
|---|---|
| **From:** | Scott Sakie |
| **Sent:** | Monday, November 19, 2007 2:24 PM |
| **To:** | Hutchinson Laura |
| **Cc:** | Moorer Tanya; Wideman Greg |
| **Subject:** | #64732 - Congress International |

FYI:  Prior balance will not allow me to reinitialize this policy.  Tanya is looking into matter and will let me know when to reinitialize.

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL  60602
(312) 853-1617
(312) 782-2023 FAX

1



# Active Task Assigned Report
**User: : Sakie Scott**
**Flow: UW MAIL Step: INDEX**

View Report Description

### Total Task Assigned: 1

| Number | User Name | File Number | Drawer | Document type | Date Initiated | Available Date | Description | Start Time | Current | | |
|--------|-----------|-------------|--------|---------------|----------------|----------------|-------------|-----------|---------|---|---|
| 1 | Sakie Scott | 06840 | Underwriting | Insured Correspondence | 12/7/2007 1:28:33 PM | 12/7/2007 3:02:33 PM | IMPORTED FROM PRINT DRIVER | 12/7/2007 3:02:33 PM | X | | |
| Totals | | | | | | | | | 1 | 0 | 0 |

Version 4.1.5060

Show SOI Statement

*Sakie*
*Please handle.*



# Active Task Assigned Report
### User: : Sakie Scott
### Flow: UW MAIL Step: INDEX

Monday, November 05, 2007

View Report Description

## Total Task Assigned: 1

| Number | User Name | File Number | Drawer | Document type | Date Initiated | Available Date | Description | Start Time | Current | Future | Hold |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Sakie Scott | 153024 | Underwriting | Insured Correspondence | 10/31/2007 3:45:18 PM | 11/1/2007 2:02:59 PM | IMPORTED FROM PRINT DRIVER | 11/1/2007 2:02:59 PM | x | | |
| Totals | | | | | | | | | 1 | 0 | 0 |

Version 5 4 1 5060

Show SQL Statement

ImageRight In Process Report



Monday, November 19, 2007

### Active Task Assigned Report
User: : Sakie Scott
Flow: NEW BUSINESS Step: NEW BUSINESS - INDEX

View Report Description

#### Total Task Assigned: 2

| Number | User Name | File Number | Drawer | Document type | Date Initiated | Available Date | Description | Start Time | Current | Future | Hold |
|--------|-----------|-------------|--------|---------------|----------------|----------------|-------------|-----------|---------|--------|------|
| 1 | Sakie Scott | 64732 | Underwriting | Insured Correspondence | 11/6/2007 9:03:33 AM | 11/16/2007 3:27:58 PM | Reinitialize please | 11/16/2007 3:27:31 PM | x | | |
| 2 | Sakie Scott | 64740 | Underwriting | Miscellaneous | 11/19/2007 7:40:50 AM | 11/19/2007 9:20:28 AM | Please reinitialize-see comment from Jon | 11/19/2007 9:20:28 AM | x | | |
| Totals | | | | | | | | | 2 | 0 | 0 |

Version 3.4.1.5060

Show SQL Statement

## Scott Sakie

**From:**        Scott Sakie
**Sent:**        Monday, November 19, 2007 2:26 PM
**To:**          Hutchinson Laura
**Subject:**     Task Assigned:  #64740  - Mategrano

This task needs to be reinitialized tomorrow.

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL  60602
(312) 853-1617
(312) 782-2023 FAX

**Scott Sakie**

| | |
|---|---|
| **From:** | Scott Sakie |
| **Sent:** | Monday, November 19, 2007 2:24 PM |
| **To:** | Hutchinson Laura |
| **Cc:** | Moorer Tanya; Wideman Greg |
| **Subject:** | #64732 - Congress International |

FYI:  Prior balance will not allow me to reinitialize this policy.  Tanya is looking into matter and will let me know when to reinitialize.

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL  60602
(312) 853-1617
(312) 782-2023 FAX



## Active Task Assigned Report
### User: : Sakie Scott
### Flow: UW MAIL Step: INDEX

Modify December 10, 2002

View Report Description

### Total Task Assigned: 1

| Number | User Name | File Number | Drawer | Document type | Date Initiated | Available Date | Description | Start Time | Current | Future | Hold |
|--------|-----------|-------------|--------|---------------|----------------|----------------|-------------|----------|---------|--------|------|
| 1 | Sakie Scott | 06840 | Underwriting | Insured Correspondence | 12/7/2007 1:28:33 PM | 12/7/2007 3:02:33 PM | IMPORTED FROM PRINT DRIVER | 12/7/2007 3:02:33 PM | x | | |
| Totals | | | | | | | | | 1 | 0 | 0 |

Version 3.4.1.5060

Show SOE Statement

*Sakie*
*Please Randle.*

ImageRight In Process Report●                                    Page 1 of 1



Monday, November 05, 2007

## Active Task Assigned Report
User: : Sakie Scott
Flow: UW MAIL Step: INDEX

View Report Description

### Total Task Assigned: 1

| Number | User Name | File Number | Drawer | Document type | Date Initiated | Available Date | Description | Start Time | Current | Future | Hold |
|--------|-----------|-------------|--------|---------------|----------------|----------------|-------------|-----------|---------|--------|------|
| 1 | Sakie Scott | ~153024 | Underwriting | Insured Correspondence | 10/31/2007 3:45:18 PM | 11/1/2007 2:02:59 PM | IMPORTED FROM PRINT DRIVER | 11/1/2007 2:02:59 PM | x | | |
| Totals | | | | | | | | | 1 | 0 | 0 |

Version 3.4.1.5060

Show SQL Statement

ImageRight In Process Report



## Active Task Assigned Report
User: : Sakie Scott
Flow: NEW BUSINESS Step: NEW BUSINESS - INDEX

Monday, November 19, 2007

View Report Description

### Total Task Assigned: 2

| Number | User Name | File Number | Drawer | Document type | Date Initiated | Available Date | Description | Start Time | Current | Future | Hold |
|--------|-----------|-------------|--------|---------------|----------------|----------------|-------------|------------|---------|--------|------|
| 1 | Sakie Scott | 64732 | Underwriting | Insured Correspondence | 11/6/2007 9:03:33 AM | 11/16/2007 3:27:58 PM | Reinitialize please | 11/16/2007 3:27:31 PM | x | | |
| 2 | Sakie Scott | 64740 | Underwriting | Miscellaneous | 11/19/2007 7:40:50 AM | 11/19/2007 9:20:28 AM | Please reinitialize- see comment from Jon | 11/19/2007 9:20:28 AM | x | | |
| Totals | | | | | | | | | 2 | 0 | 0 |

Version: 3.4.1.5060

Show SOL Statement

**Scott Sakie**

| | |
|---|---|
| **From:** | Scott Sakie |
| **Sent:** | Monday, November 19, 2007 2:26 PM |
| **To:** | Hutchinson Laura |
| **Subject:** | Task Assigned: #64740 - Mategrano |

This task needs to be reinitialized tomorrow.

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL 60602
(312) 853-1617
(312) 782-2023 FAX

## Scott Sakie

| | |
|---|---|
| **From:** | Scott Sakie |
| **Sent:** | Monday, November 19, 2007 2:24 PM |
| **To:** | Hutchinson Laura |
| **Cc:** | Moorer Tanya; Wideman Greg |
| **Subject:** | #64732 - Congress International |

FYI: Prior balance will not allow me to reinitialize this policy. Tanya is looking into matter and will let me know when to reinitialize.

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL 60602
(312) 853-1617
(312) 782-2023 FAX

ImageRight In Process Report



## Active Task Assigned Report
**User: : Sakie Scott**
**Flow: UW MAIL Step: INDEX**

View Report Description

### Total Task Assigned: 1

| Number | User Name | File Number | Drawer | Document type | Date Initiated | Available Date | Description | Start Time | Current | Future | Held |
|--------|-----------|-------------|--------|---------------|----------------|----------------|-------------|-----------|---------|--------|------|
| 1 | Sakie Scott | 06840 | Underwriting | Insured Correspondence | 12/7/2007 1:28:33 PM | 12/7/2007 3:02:33 PM | IMPORTED FROM PRINT DRIVER | 12/7/2007 3:02:33 PM | x | | |
| Totals | | | | | | | | | 1 | 0 | 0 |

Version 3.4.1.5060

Show SQL Statement

*Sakie*
*Please handle .*

ImageRight In Process Report                                                      Page 1 of 1



**Active Task Assigned Report**
User: : Sakie Scott
Flow: UW MAIL Step: INDEX

Monday, November 05, 2007

View Report Description

Total Task Assigned: 1

| Number | User Name | File Number | Drawer | Document type | Date Initiated | Available Date | Description | Start Time | Current | Future | Hold |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Sakie Scott | ~153024 | Underwriting | Insured Correspondence | 10/31/2007 3:45:18 PM | 11/1/2007 2:02:59 PM | IMPORTED FROM PRINT DRIVER | 11/1/2007 2:02:59 PM | x | | |
| Totals | | | | | | | | | 1 | 0 | 0 |

Version: 3.1.1.5080

Show SQL Statement



### Active Task Assigned Report
User: : Sakie Scott
Flow: NEW BUSINESS Step: NEW BUSINESS - INDEX

View Report Description

**Total Task Assigned: 2**

| Number | User Name | File Number | Drawer | Document type | Date Initiated | Available Date | Description | Start Time | Current | Future | Hold |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Sakie Scott | 64732 | Underwriting | Insured Correspondence | 11/6/2007 9:03:33 AM | 11/16/2007 3:27:58 PM | Reintialize please | 11/16/2007 3:27:31 PM | x | | |
| 2 | Sakie Scott | 64740 | Underwriting | Miscellaneous | 11/19/2007 7:40:50 AM | 11/19/2007 9:20:28 AM | Please reinitialize see comment from Jon | 11/19/2007 9:20:28 AM | x | | |
| Totals | | | | | | | | | 2 | 0 | 0 |

Version 3.4.1.5060

Show SQL Statement

**Scott Sakie**

| | |
|---|---|
| **From:** | Scott Sakie |
| **Sent:** | Monday, November 19, 2007 2:26 PM |
| **To:** | Hutchinson Laura |
| **Subject:** | Task Assigned:  #64740  - Mategrano |

This task needs to be reinitialized tomorrow.

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL  60602
(312) 853-1617
(312) 782-2023 FAX

1

**Scott Sakie**

| | |
|---|---|
| **From:** | Scott Sakie |
| **Sent:** | Monday, November 19, 2007 2:24 PM |
| **To:** | Hutchinson Laura |
| **Cc:** | Moorer Tanya; Wideman Greg |
| **Subject:** | #64732 - Congress International |

FYI: Prior balance will not allow me to reinitialize this policy. Tanya is looking into matter and will let me know when to reinitialize.

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL 60602
(312) 853-1617
(312) 782-2023 FAX

ImageRight In Process Report



Monday, December 10, 2007

## Active Task Assigned Report
### User : : Sakie Scott
### Flow: UW MAIL Step: INDEX

View Report Description

### Total Task Assigned: 1

| Number | User Name | File Number | Drawer | Document type | Date Initiated | Available Date | Description | Start Time | Current | Future | Hold |
|--------|-----------|-------------|--------|---------------|----------------|----------------|-------------|-----------|---------|--------|------|
| 1 | Sakie Scott | 06840 | Underwriting | Insured Correspondence | 12/7/2007 1:28:33 PM | 12/7/2007 3:02:33 PM | IMPORTED FROM PRINT DRIVER | 12/7/2007 3:02:33 PM | x | | |
| Totals | | | | | | | | | 1 | 0 | 0 |

Version 3.4.1.5060

Show SQL Statement

*Sakie*
*Please handle .*

ImageRight In Process Report



## Active Task Assigned Report
### User: : Sakie Scott
### Flow: UW MAIL Step: INDEX

Monday, November 05, 2007

View Report Description

### Total Task Assigned: 1

| Number | User Name | File Number | Drawer | Document type | Date Initiated | Available Date | Description | Start Time | Current | Future | Hold |
|--------|-----------|-------------|--------|---------------|----------------|----------------|-------------|----------|---------|--------|------|
| 1 | Sakie Scott | ~153024 | Underwriting | Insured Correspondence | 10/31/2007 3:45:18 PM | 11/1/2007 2:02:59 PM | IMPORTED FROM PRINT DRIVER | 11/1/2007 2:02:59 PM | x | | |
| Totals | | | | | | | | | 1 | 0 | 0 |

Version, 3.4.1.5060

Show SQL Statement

| ! | 🗋 | 0 | From | Subject | | Received | | Size | |
|---|---|---|------|---------|---|----------|---|------|---|

**Date: Older**

Hutchinson Laura    RE: Time off       Wed 9/26/2007 9:50 AM    4 KB
Okay 2 hours personal time. This will leave a balance of .75 hours.
Laura C. Hutchinson Assistant Vice President, Underwriting ISMIE Mutual Insurance Company
312.580.6458 (Direct)

**Hutchinson L...    RE: Request for Vacation Day**      **Wed 9/19/2007 9:50 AM   4 KB**
Okay
Laura C. Hutchinson Assistant Vice President, Underwriting ISMIE Mutual Insurance Company
312.580.6458 (Direct)

Scott Sakie    Revised Time Off Request      Tue 12/19/2006 10:26 AM   3 KB
Laura, I would like to use two personal days for Thursday and Friday, January 4 – 5 , 2007. Thank you.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL
60602 (312...

Scott Sakie    Time Off      Tue 12/19/2006 9:33 AM   3 KB
I would like to use my last two hours of vacation time on Friday, December 22, 2006, departing at 2:30 p.m.
I would like to request January 4-5, 2007 off for testing during week. Will use 2 vacation days for time taken.
Sakie Aneshia Scott Underw...

Scott Sakie    FW: Early Dismissal      Wed 12/6/2006 9:05 AM   4 KB
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL
60602 (312) 853 1617 (312) 782-2023 FAX

Scott Sakie    Early Dismissal      Wed 12/6/2006 8:56 AM   3 KB
Doctor had emergency procedure. Appointment cancelled for today. I have been rescheduled to December 18th. Will need to leave at
1:30. Please dock 2 hours pay, will not take lunch.  Total time requested is 3 hours.
Sakie Aneshia Scott Underwritin...

Scott Sakie    RE: Early Dismissal      Mon 12/4/2006 1:35 PM   4 KB
I will skip my lunch (1 hour) and use .25 for vacation time.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL
60602 (312) 853-1617 (312) 782-2023 FAX

Scott Sakie    RE: Early Dismissal      Mon 12/4/2006 1:31 PM   4 KB
I will skip my lunch and be docked for the .25. time.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL
60602 (312) 853-1617 (312) 782-2023 FAX

Scott Sakie    Revised FW: Early Dismissal      Mon 12/4/2006 12:40 PM   4 KB
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL
60602 (312) 853-1617 (312) 782-2023 FAX

Scott Sakie    Early Dismissal      Mon 12/4/2006 12:39 PM   928 B
I need to leave at 3:00 pm on Wednesday, December 6, 2006, to see my cardiologist regarding my ekg.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL
60602 (312) 85...

Scott Sakie    Late Arrival      Thu 8/24/2006 9:07 AM   3 KB
I will work through my lunch today to make up for travel time if that's ok.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL
60602 (312) 853-1617 (312) 782-2023 F...

Scott Sakie    Late Arrival      Fri 7/14/2006 9:09 AM   3 KB
Laura, I will stay and work to make up my 45 minutes this evening. If there are no tasks then I will deduct .45 minutes from my
personal time. Thank you.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North ...

Scott Sakie    Time Off      Wed 6/21/2006 3:44 PM   3 KB
I will need to come in a little later tomorrow because of blood test. I should be in a little after 10:30. I will not be taking a lunch and
using 1.25 hours of Personal Time.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services...

Scott Sakie    Vacation      Fri 4/7/2006 9:33 AM   3 KB
I would like to take June 5-9 (Monday through Friday) for vacation. Thank you.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL
60602 (312) 853-1617 (312) 782-20...

Scott Sakie    Time Off      Wed 4/5/2006 8:58 AM   3 KB
I would like to take off ½ vacation day on Friday, April 14th and 1 vacation day on Monday, April 17th. Thank you.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL ...

Scott Sakie    RE: Early Departure      Thu 1/26/2006 11:14 AM   3 KB
9:00
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL
60602 (312) 853-1617 (312) 782-2023 FAX

| ! | □ | ⭘ | **From** | **Subject** | **Received** ▼ | **Size** ▼ |
|---|---|---|---|---|---|---|

Scott Sakie        Early Departure                                                    Thu 1/26/2006 9:29 AM        3 KB
   Laura, I can stay until 1:25 today instead of 12:25.
   Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL
   60602 (312) 853-1617 (312) 782-2023 FAX <end>

Scott Sakie        Time off                                                          Fri 1/20/2006 10:00 AM       3 KB
   No more time is needed for my husband unless an emergency arises. My son is scheduled for outpatient surgery on Thursday, January
   26th at the Hammond Indiana clinic. According to the doctor, they will inject him with steroids and stitch his ear. We wil...

Scott Sakie        RE: Early Departure                                               Thu 1/19/2006 11:20 AM       4 KB
   Thank you.
   Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL
   60602 (312) 853-1617 (312) 782-2023 FAX

Scott Sakie        Early Departure                                                   Wed 1/18/2006 3:55 PM        3 KB
   Laura, may I skip my lunch tomorrow and leave at 3:00. Will also work through lunch on Friday.
   All test results are in for husband. Meet with Doctor. Thank you.
   Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twen...

Scott Sakie        Early Departure                                                   Thu 1/12/2006 9:43 AM        3 KB
   Laura, may I please leave at 3:30 p.m. today to go to hospital. Will skip lunch. Thanks.
   Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL
   60602 (312) 853-1617

Scott Sakie        Time Off                                                          Wed 1/4/2006 9:59 AM         3 KB
   I would like to take off Monday, January 16th for a personal day. Thank you.
   Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL
   60602 (312) 853-1617 (312) 782-2023...

Scott Sakie        RE: Early Departure                                               Fri 12/23/2005 1:18 PM       3 KB
   Thank you.
   Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL
   60602 (312) 853-1617 (312) 782-2023 FAX

Scott Sakie        Early Departure                                                   Fri 12/23/2005 9:14 AM       3 KB
   Laura, may I please leave at 3:25 this afternoon if there is nothing pending?
   Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL
   60602 (312) 853-1617 (312) 782-2023...

Scott Sakie        RE: Time Off                                                      Thu 12/15/2005 12:31 PM      3 KB
   Thank you.
   Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL
   60602 (312) 853-1617 (312) 782-2023 FAX

Scott Sakie        Time Off                                                          Tue 12/13/2005 2:37 PM       3 KB
   Laura, may I please have December 27th , Tuesday off for a vacation day?
   Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL
   60602 (312) 853-1617 (312) 782-2023 FAX

Scott Sakie        Early Departure                                                   Fri 12/2/2005 11:16 AM       3 KB
   Frode, I am leaving at 3:30 and skipping my lunch to go to the hospital for this cold. I feel to bad.. Thank you.
   Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL ...

Scott Sakie        Early Departure                                                   Wed 11/30/2005 9:42 AM       3 KB
   Michi, I have to go to the doctor today because she won't prescribe any medicine for my congestion without seeing me first because I am
   a heart patient. I will skip my lunch today and leave at 3:30 p.m. Thank you.
   Sakie Aneshia Scott Underwriting Di...

Scott Sakie        Time off                                                         Tue 11/15/2005 10:48 AM      3 KB
   Laura, I need to take off November 23rd , if that's ok. If not, I will try to make some other arrangements. Thanks.
   Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, I....

Scott Sakie        Time                                                             Fri 10/28/2005 9:00 AM       3 KB
   Michi, I need to leave at 3:30 and skip lunch. The insurance company would not approve my prescription that my doctor doubled up on,
   so I have to go to the clinic to get samples before they leave. Thanks.
   Sakie Aneshia Scott Underwriting Division...

Scott Sakie        Time Off                                                         Fri 10/14/2005 11:21 AM      3 KB
   Laura I need to take off Monday, November 7th for a vacation day. If I can, I'll try to make it in the afternoon. If not, I'll call. Thank
   you.
   Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Mich...

Scott Sakie        Time off                                                         Tue 10/11/2005 11:22 AM      3 KB
   Laura, I need to take off for 2 hours on Monday. Hope to arrive between 11:00 and noon. I will skip lunch on Tuesday and Wednesday
   to make up.
   Dr. needs to discuss my tests with me. Thanks.

| ! □ 0 From | Subject | Received | Size |
|---|---|---|---|
| Scott Sakie | RE: Revised Time Off | Tue 12/21/2004 12:21 PM | 4 KB |

Thank you.
-----Original Message-----
From: Hutchinson Laura

| Scott Sakie | Revised | Tue 12/21/2004 10:10 AM | 2 KB |

Laura, I forgot that it was the end of the quarter.
I will ask my doctor to reschedule my tests for following week if that's ok and I would still like to request to leave early Dec. 29th, Mon, Tues and Wed time-off. (Jan. 10th, - Jan....

| Scott Sakie | Time Off | Tue 12/21/2004 9:58 AM | 2 KB |

May I leave at 1:30 on December 29th f.for follow-up visit.  I don't generally take a lunch hour anyway.  The cold weather is too much for me most of the time.  I will gladly make this time up or stay afterwards if the need arises.
Also, i will n...

| Scott Sakie | RE: Time Off | Thu 12/2/2004 10:51 AM | 4 KB |

Thank you.
---  Original Message-----
From: Hutchinson Laura

| Scott Sakie | Time Off | Thu 12/2/2004 10:20 AM | 2 KB |

Laura, may I please leave at 2:10 pm on Dec 16th, have to see my cardiologist.  Will not take a lunch break during Carol's absence to make up time.
Thank you. <end>

| Scott Sakie | FW: Personal Day | Fri 11/12/2004 8:53 AM | 3 KB |

-----Original Message-----
From: Scott Sakie
Sent: Thursday, November 11, 2004 8:38 AM

| Scott Sakie | Certificate of Mailing | Mon 8/30/2004 9:26 AM | 4 KB |

Hi Corliss,
I have to go to the doctor today,leaving at noon.  Can you do the COM for me?  If not, whom shall I ask?
Have a Great Day.

| ! | ☐ | ⑧ | From | Subject | Received | ▽ | Size | ▽ |
|---|---|---|------|---------|----------|---|------|---|

**Date: Three Weeks Ago**

☐ Hutchinson L...    RE: 1/2 hour makeup time    **Fri 11/16/2007 4:43 ...   4 KB**
Okay
Laura C. Hutchinson Assistant Vice President, Underwriting ISMIE Mutual Insurance Company
312.580.6458 (Direct)

**Date: Older**

☐ Hutchinson L...    RE: Late Arrival    **Thu 10/11/2007 8:5...   4 KB**
Okay
Laura C. Hutchinson Assistant Vice President, Underwriting ISMIE Mutual Insurance Company
312.580.6458 (Direct)

Hutchinson Laura    RE: Extended time off    Thu 10/4/2007 4:17 PM    4 KB
Okay. Please note that after these 2 vacation days are used, you will have a zero balance of personal, sick and vacation time until 1/1/08.
Laura C. Hutchinson Assistant Vice President, Underwriting ISMIE Mutual Insurance Company
312.580.6458 (Dire...

☐ Hutchinson L...    RE: EARLY dISMISSAL    **Thu 10/4/2007 11:0...   4 KB**
Okay
Laura C. Hutchinson Assistant Vice President, Underwriting ISMIE Mutual Insurance Company
312.580.6458 (Direct)

Hutchinson Laura    Revised, Late Arrival    Wed 8/1/2007 11:58 AM    3 KB
Jacinth, I am in 11:36 am.
Laura, this time off is for personal time and no lunch on Aug 1st .  (2.75 hours)
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL  606...

Hutchinson Laura    RE: Revised Time Off    Wed 5/2/2007 9:43 AM    4 KB
Okay
Laura C. Hutchinson Assistant Vice President, Underwriting ISMIE Mutual Insurance Company
312.580.6458 (Direct)

Scott Sakie    Revised Departure Time    Fri 4/6/2007 7:43 AM    3 KB
Laura, I need to change my departure time today for 2:15pm to get to service.
No lunch will be taken and will use remainder for vacation time. I am starting today at 7:45am. Thank you.
Sakie Aneshia Scott Underwriting Division Illinois State Med...

Scott Sakie    Vacation time    Mon 4/2/2007 12:16 PM    3 KB
Laura:  I would like to leave early at 3:30 p.m on April 6th, Friday (no lunch) and take off on April 9, 2007 (Monday) for vacation.  Thank you.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Av...

Scott Sakie    Late Arrival    Wed 3/21/2007 9:43 AM    3 KB
I am in.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617 (312) 782-2023 FAX <end>

Scott Sakie    RE: Late Arrival    Tue 3/20/2007 4:22 PM    5 KB
Ok.  Will do.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617 (312) 782-2023 FAX

Scott Sakie    Late Arrival    Tue 3/20/2007 4:20 PM    3 KB
Laura, I would like to come in at approximately 9:30, Tuesday, March 21, 2007. I will not take a lunch.
Thanks.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL  6...

Scott Sakie    Early dismissal    Wed 2/14/2007 11:14 AM    3 KB
Michi, can I leave at 3:30 p.m. I parked on a partial snowbank at station, want to make sure I can get out before dark. Thanks.  I am not taking  lunch.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North M...

Scott Sakie    Vacation time    Mon 2/5/2007 4:09 PM    3 KB
Laura, I would like to take off Monday, February 12, and Tuesday, February 20.  Thank you.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617 (...

Scott Sakie    Late Arrival    Mon 1/22/2007 12:03 PM    3 KB
Laura, I would like to use 3 hours of vacation time.  Will start work now.  NO lunch.  Thanks.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-161...

Scott Sakie    Personal Day    Tue 1/2/2007 8:32 AM    3 KB
I would like to take off January 15, 2006, Monday as a Personal Day.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617 (312) 782-2023 FAX...

| | From | Subject | Received | Size |
|---|---|---|---|---|
| | Scott Sakie | RE: Revised FW: Early Dismissal | Mon 12/4/2006 1:21 PM | 5 KB |

Added "December 6, 2006".
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617 (312) 782-2023 FAX

| | Scott Sakie | RE: Doctors statement | Mon 12/4/2006 8:37 AM | 5 KB |

Thank you.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617 (312) 782-2023 FAX

| | Scott Sakie | Vacation Day- November 22, 2006 | Tue 11/14/2006 3:56 PM | 3 KB |

Laura, May I please have November 22nd, next Wednesday off for a vacation day? Thank you.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617 (...

| | Scott Sakie | November 17th | Tue 11/14/2006 3:48 PM | 3 KB |

Laura, May I please take Wednesday, November 22nd off for a Vacation Day.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617 (312) 782-2023 FAX...

| | Scott Sakie | I am in. | Fri 9/29/2006 10:32 AM | 3 KB |

Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617 (312) 782-2023 FAX <end>

| | Scott Sakie | Personal time | Mon 9/25/2006 9:47 AM | 3 KB |

Laura, I need to sign financial aid release for my son for school.  Can I leave at 4:00 p.m. today?
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 85...

| | Scott Sakie | RE: S Scott | Fri 9/22/2006 9:57 AM | 5 KB |

Thank you.
Sakie Aneshia Scott
Underwriting Division

| | Scott Sakie | Early Departure | Wed 6/28/2006 1:37 PM | 3 KB |

Laura, I would like to leave at 3:00pm on Friday, June 30th.  Something was found on my mother's kidney in test.  I am meeting her at doctor's office.  No lunch.  (Personal Time ½ hour) Thank you.
Sakie Aneshia Scott Underwriting Division Illinois St...

| | Scott Sakie | RE: Time off | Mon 4/24/2006 3:08 PM | 3 KB |

Vacation thank you.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617 (312) 782-2023 FAX

| | Scott Sakie | Time off | Mon 4/24/2006 2:02 PM | 3 KB |

I need to get the results of the bone scan that they took on my foot Thursday, April 27th  They wouldn't give them to me over the telephone.  I need to leave at 3:00 on Thursday.  Thank you.
Sakie Aneshia Scott Underwriting Division Illinois State M...

| | Scott Sakie | Vacation Time | Thu 4/13/2006 8:41 AM | 3 KB |

I would like to take Monday through Friday June 5-9 off for vacation.  Thank you.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617 (312) 782-...

| | Scott Sakie | RE: Early Departure | Mon 4/10/2006 11:15 AM | 6 KB |

Thank you, enjoy your Monday as well.
Sakie Aneshia Scott
Underwriting Division

| | Scott Sakie | Early Departure | Mon 4/10/2006 10:47 AM | 3 KB |

Hi Ms. Shepherd, I have to leave class early tomorrow to go back to work.  Can I take the test right at 7 and leave right afterwards.  Thanks.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenu...

| | Scott Sakie | RE: Vacation | Mon 4/10/2006 9:19 AM | 3 KB |

Thanks.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617 (312) 782-2023 FAX

| | Scott Sakie | Time Off | Mon 4/3/2006 8:49 AM | 3 KB |

I have to leave at 2:00 on April 5th, Wednesday regarding my foot.  I am not taking a lunch and will use 1 hour personal time.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700

| | Scott Sakie | RE: Calling in sick | Fri 3/31/2006 8:37 AM | 4 KB |

Okay.
Sakie Aneshia Scott
Underwriting Division

| ! 🗋 📎 | From | Subject | Received | Size |
|---|---|---|---|---|

Scott Sakie   Early Departure   Tue 3/28/2006 3:57 PM   3 KB

Laura, I don't feel well. May I leave at 4:15. Thank you.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617 (312) 782-2023 FAX <end>

Scott Sakie   RE: Telephone Coverage During Luncheon   Thu 3/23/2006 5:20 PM   4 KB

I'll stay from 12:30 to 1:30
Sakie Aneshia Scott
Underwriting Division

Scott Sakie   Time Off   Tue 3/21/2006 11:50 AM   3 KB

May I leave at 12:00 on Monday, March 27th ?   ½ personal day.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617 (312) 782-2023 FAX <end>

Scott Sakie   RE: Early Departure   Mon 1/30/2006 3:08 PM   4 KB

Ok. I'll take ½ day for personal.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617 (312) 782-2023 FAX

Scott Sakie   Early Departure   Mon 1/30/2006 2:15 PM   3 KB

Laura, I need to leave at 1:25 on next Monday, February 6th to have my son's stitches removed. I will work through my lunches to make up time. Thank you.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty No...

Scott Sakie   Early Departure   Thu 10/13/2005 8:27 AM   3 KB

Laura, the train no longer makes the stop that I need to get to Indiana on time, due to low ridership. I have to take the 1:35 bus instead. Need to leave at 1:30. So sorry for the inconvenience. Thanks.
Sakie Aneshia Scott Underwriting Division I...

Scott Sakie   Personal Day   Thu 11/11/2004 8:38 AM   2 KB

Laura,
May I please have Wednesday, November 24th off for a Personal Day. I checked the calendar. No one that is directly linked to my work for the day is out. Thanks. <end>

Scott Sakie   Time off   Wed 10/27/2004 8:36 AM   2 KB

Laura,
May I please request a personal day for Monday, November 1st? Sean and Albert are the only ones scheduled off on our side.
Also, may I skip lunch and wait to pick up my medicine at Walgreens when the pharmacist has it ready this af...

Scott Sakie   Dental Appointment   Mon 10/18/2004 9:31 AM   2 KB

Laura, I have a dental appointment on Thursday, October 21st at 5:00 p.m. Will need to leave at 3:00 p.m. for the 3:15 train. I will not go to lunch for that hour taken.
Thank you. <end>

Scott Sakie   Sick Day   Wed 9/8/2004 8:27 AM   2 KB

Melissa,
Sorry, I forgot to let you know that I took a sick day on August 27th. Please note in my personnel records. Laura was out on vacation and the time sheet had already gone in for the time period. Thanks. <end>

Scott Sakie   Doctor's Appointment on August 31, 2004   Tue 8/24/2004 8:54 AM   2 KB

Dear Laura,
On August 30th, next Monday, I have to go to the doctor for my follow up to new medicine. Because blood work is involved, I will need to leave midday. Shortly after 12:00 p.m. To make up for the hours, I worked through my lunch yest...

**Jamie Donovan**

# UNDERWRITING TECHNICIAN
## WEEKLY ACTIVITY LOG

Please complete by Monday, 9:00 am

Overtime Hours: _____

| August 2004 | | Locum Tenens | AHP Change | Suspended Coverage | Cancellations Received | BORs Processed |
|---|---|---|---|---|---|---|
| Mon. | 23 | 1 | 1 | 0 | 0 | 0 |
| Tues. | 24 | 0 | 7 | 0 | 0 | 0 |
| Wed. | 25 | 1 | 0 | 0 | 5 | 0 |
| Thur. | 26 | 1 | 1 | 1 | 11 | 0 |
| Fri. | 27 | 0 | 0 | 0 | 1 | 0 |
| Totals | | 3 | 9 | 1 | 17 | 0 |

**Other Activities**

7 AHP Letters (M), 3 Peoria Med Soc Letters (M), 1 Peoria Med (W), 11 AHPs (W)

# UNDERWRITING TECHNICIAN
## WEEKLY ACTIVITY LOG

Overtime Hours: _____

**Jamie Donovan**

Please complete by Monday, 9:00 am

| August/September 2004 | Locum Tenens | AHP Change | Suspended Coverage | Cancellations Received | BORs Processed |
|---|---|---|---|---|---|
| Mon. 30 | 1 | 2 | 0 | 0 | 0 |
| Tues. 31 | 0 | 2 | 0 | 0 | 0 |
| Wed. 1 | | | Sick Day | | |
| Thur. 2 | 2 | 1 | 1 | 0 | 0 |
| Fri. 3 | 1 | 2 | 1 | 0 | 0 |
| Totals | 4 | 7 | 2 | 0 | 0 |

**Other Activities**

9/1/05 Off-cycle Prep (Th, F), Peoria Medical Society requests (1-Th, 1-F),

**SECRETARY**
Weekly Activity Log

Name:

**Sarah Maddock**

| 10-10-05 to 10-15-05 | Loss Histories Screened | New Biz Mailings | Manual Loss Histories | Bryn Mawr LH | Returned Mail | UW Profiles | Dup Doc Req |
|---|---|---|---|---|---|---|---|
| Monday | | 2 | | | | | |
| Tuesday | | 2 | | | 10 | | 2 |
| Wednesday | | 1 | 5 | | | | |
| Thursday | 1 | | 9 | | | | 1 |
| Friday | 30 | | 10 | | | | |
| Totals | 31 | 5 | 24 | 0 | 10 | 0 | 3 |

Total Documents Typed:

| GW | JS | FB | LS | RS | JD | SA | Total |
|---|---|---|---|---|---|---|---|
| | | 3 | | | | | |
| | | 2 | | | | | |
| | | 7 | 2 | | | | |
| | | 2 | 2 | | | | |
| | | | | 1 | | | |
| 0 | 0 | 14 | 2 | 1 | 0 | 0 | 17 |

**Projects Worked On:** Filing renewal documents (Brenda) - 20; Request cases and file Certificate of Insurance (Frode);

Greg coverage - finish PREP letters, file charges; order supplies

Reception desk coverage.

Overtime:

**Carryover Assignments:**

| | |
|---|---|
| Request for COI | |
| New Biz Mailings | |
| Letters/memos to be typed | |
| Document Requests | |
| Part-time Ltrs | |
| Loss Histories | XXX |

**Other Activities:**

# SECRETARY
## Weekly Activity Log

Name:

**Sarah Madduck**

| 12-26-05 to 12-30-05 | Loss Histories Screened | New Biz Mailings | Policy Renewal Doc | AHP Loss Histories | Bryn Mawr LH | Returned Mail | UPC Return for Address | U/W Profiles | Dup Doc Req |
|---|---|---|---|---|---|---|---|---|---|
| Monday | CLOSED FOR HOLIDAY | | | | | | | | |
| Tuesday | PERSONAL DAY | | | | | | | | |
| Wednesday | 76 | | | | | | 5 | | |
| Thursday | 25 | | | 22 | | | | | |
| Friday | 11 | 13 | | | | | | | |
| Totals | 112 | 13 | 0 | 22 | 0 | 0 | 5 | 0 | 0 |

**Total Documents Typed:**

| | GW | JS | FB | LS | RS | JD | KN | SA | Total |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| | | | 1 | 1 | | | | 1 | 3 |
| | | 1 | 4 | 2 | | | | | 7 |
| | | | 1 | 1 | | | | | 2 |
| | 0 | 1 | 6 | 4 | 0 | 0 | 0 | 1 | 12 |

**Projects Worked On:** State Board Loss History - 1; Peoria Loss Histories - 6; New Business Training with Sakie

Reception desk coverage:

Overtime:

**Carryover Assignments:**

Request for COI

New Biz Mailings

Letters/memos to be typed

Document Requests

Part-time Ltrs

Loss Histories          XXX

**Other Activities:**

UNDERWRITING SECRETARY
WEEKLY ACTIVITY LOG – WEEK OF:  Monday, April 3, 2006

Sakie A. Scott

April 2006                                                                    Overtime: 0

| April 2006 | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail | Conversion of 4 to 6 sided folders for prepping |
|---|---|---|---|---|---|---|
| MON 3 | 6 | | | | | |
| TUES 4 | 1 | 1 | 23 | | | 4 |
| WED 5 | 0 | | | | | 11 |
| THUR 6 | 7 | | | 1 | | 2 |
| FRI 7 | 2 | | | | | 12 |
| **TOTAL** | 16 | 1 | 23 | 1 | | 29 |

Other Work:                          Carryover: 0

Print Reports*-

Z:sacrtary/scottactivitylog

12/26/05

UNDERWRITING SECRETARY
WEEKLY ACTIVITY LOG – WEEK OF: Monday, December 26, 2005

Sakie A. Scott

Overtime: 0

| December 2005 | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail | UPUs Returned for Signature |
|---|---|---|---|---|---|---|---|
| MON | 26 | HOLIDAY | | | | | |
| TUES | 27 | OFF | | | | | |
| WED | 28 | 4 | | 23 | | | |
| THUR | 29 | 2 | 3 | | | | 33 |
| FRI | 30 | 4 | 3 | | | | |
| | | 10 | 3 | 23 | | | 33 |

Other Work: | | | | | | Carryover:

Print Cancellation Report*-

Training with Sarah 1 hour daily

Z:\secrtary\scott\activitylog

**ACTIVITY LOG**
@
**7/18/2007**

**SAKIE SCOTT**

Overtime: 0

| DAY | NEW BUS. APPS. | FILES PREPPED AND SCANNED | LOSS HISTORIES | TYPING | RETURN LOSS HX | SUBMISSION | RENEWAL APPS (BACKUP) | PARTTIME APPS (BACKUP) | MAIL (BACKUP) | MIS ENTRIES |
|---|---|---|---|---|---|---|---|---|---|---|
| MONDAY 9 | OFF | | | | | | | | | |
| TUESDAY 10 | OFF | | | | | | | | | |
| WEDNESDAY 11 | 13 | | 11 | | | 3 | | | | |
| THURSDAY 12 | 15 | 2 | 3 | 1 | | 3 | | | | |
| FRIDAY 13 | 4 | | 4 | | | 1 | | | | |
| TOTAL | 32 | 2 | 18 | 1 | 0 | 7 | 0 | 0 | 0 | 0 |

Other Work: 0

Carryover Work: 4 APPLICATIONS

Sarah'S

Training

**Scott Sakie**

| | |
|---|---|
| **From:** | Scott Sakie |
| **Sent:** | Monday, November 21, 2005 4:18 PM |
| **To:** | Maddock Sarah |
| **Cc:** | Hutchinson Laura |
| **Subject:** | Loss History Requests |

Sarah, we can train on inactive loss history requests on Tuesday, November 29th from 2:15 to 2:45 and 2:45 to 3:45, on new business screening.   Let me know if you are available.   Thanks.

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL  60602
(312) 853-1617
(312) 782-2023 FAX

1

**Scott Sakie**

| | |
|---|---|
| **From:** | Scott Sakie |
| **Sent:** | Tuesday, November 22, 2005 8:57 AM |
| **To:** | Hutchinson Laura |
| **Subject:** | FW: Loss History Requests and New Business Screening |

I will begin training Sarah on Tuesday regarding the above subject matter.

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL  60602
(312) 853-1617
(312) 782-2023 FAX

**From:** Maddock Sarah
**Sent:** Monday, November 21, 2005 4:28 PM
**To:** Scott Sakie
**Subject:** RE: Loss History Requests

Sakie-

That time on Tuesday is fine with me.
Thanks!

-Sarah

**From:** Scott Sakie
**Sent:** Monday, November 21, 2005 4:18 PM
**To:** Maddock Sarah
**Cc:** Hutchinson Laura
**Subject:** Loss History Requests

Sarah, we can train on inactive loss history requests on Tuesday, November 29th from 2:15 to 2:45 and 2:45 to 3:45, on new business screening.   Let me know if you are available.  Thanks.

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL  60602
(312) 853-1617
(312) 782-2023 FAX

1

**Scott Sakie**

| | |
|---|---|
| **From:** | Scott Sakie |
| **Sent:** | Friday, December 02, 2005 1:47 PM |
| **To:** | Maddock Sarah |
| **Cc:** | Hutchinson Laura |
| **Subject:** | New Biz Training |

Hi Sarah, would you like to train next week from 3:00 to 3:30 everyday until you are comfortable?

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL  60602
(312) 853-1617
(312) 782-2023 FAX

1

**Scott Sakie**

| | |
|---|---|
| **From:** | Scott Sakie |
| **Sent:** | Wednesday, November 30, 2005 9:46 AM |
| **To:** | Maddock Sarah |
| **Subject:** | RE: New Biz Training |

Ok.

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL  60602
(312) 853-1617
(312) 782-2023 FAX

---

**From:** Maddock Sarah
**Sent:** Wednesday, November 30, 2005 9:46 AM
**To:** Scott Sakie
**Subject:** RE: New Biz Training

Sure, I'll come over then.

---

**From:** Scott Sakie
**Sent:** Wednesday, November 30, 2005 9:44 AM
**To:** Maddock Sarah
**Subject:** New Biz Training

Hi Sarah, would you like to train at 10:00 today?

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL  60602
(312) 853-1617
(312) 782-2023 FAX

Received
Ted
Ltr of Ref
Email

**Scott Sakie**

| | |
|---|---|
| **From:** | Scott Sakie |
| **Sent:** | Tuesday, October 11, 2005 11:57 AM |
| **To:** | Hutchinson Laura; Coghlan Sheila |
| **Subject:** | Interview |

Hi Laura and Sheila,

Will I be interviewing today for the U/W Technician position?
**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL 60602
(312) 853-1617
(312) 782-2023 FAX

**Scott Sakle**

| | |
|---|---|
| **From:** | Scott Sakie |
| **Sent:** | Monday, October 24, 2005 1:34 PM |
| **To:** | Majerik Christine |
| **Subject:** | Tech Position |

Hi Chris, is there any documentation in my file as to why I didn't get the position?  If so, may I see it please.  Thanks.

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL  60602
(312) 853-1617
(312) 782-2023 FAX

ROOSEVELT UNIVERSITY
- In Cooperation With -
THE NATIONAL CENTER FOR PARALEGAL TRAINING
Chicago, Illinois



To all persons be it known that

*Sokie Scott*

has satisfied the requirements for the Generalist
course of study as offered by the

COLLEGE OF CONTINUING EDUCATION OF ROOSEVELT UNIVERSITY
LAWYER'S ASSISTANT PROGRAM

In witness whereof we have caused our signatures to be hereunto affixed.

_____
Roosevelt University
College of Continuing Education

_____ President
The National Center for Paralegal Training

March 24, 1990
Date

11 EAST ADAMS
SUITE 1100
CHICAGO, ILLINOIS 60603

# ARNOLD M. FLANK, LIMITED

(312) 360-0527
FAX (312) 360-0547
E-MAIL AMFGOBLUE @AOL.COM

October 9, 2003

To Whom it may Concern:

Sakie Scott has been my Paralegal/Legal Secretary and Administrative Assistant for the past five years.  During that time she managed my office - ordering supplies, maintaining my docket, controlling my document filing and retrieval system and occasionally prepared Invoices for me.  She also has dealt resourcefully and adeptly with bureaucrats.  She has been able to edit and modify the documents which I create, and, on occasion, she provides thoughtful insight as to the appropriate word or phrase.  She has dealt with my clients, both to obtain information, and to answer their questions (without giving legal opinions) when I am not available.  The clients feel comfortable dealing with her, and do not feel that they are being "shunted off" to someone else.

Sakie does not get flustered under pressure.  She understands the need to drop what she is doing, and to adapt to the needs of my clients, who often have legal problems which must be addressed immediately.

Sakie has learned the requirements of a "corporate" and "estate planning" law practice.  This means that she is able to organize the various parts of a transaction, and to make sure that all of the parts are in place before I submit a set of documents to a client.  This skill is transferable to any situation where there are multiple parts that must necessarily be assembled to create a finished product for submission to a client.  Sakie is able to work independently and meet deadlines.  She also has paralegal corporate skills, and can prepare preliminary draft of estate planning documents.

I am sorry that the changing needs of my practice, and the relocation of my practice, will not allow me to bring Sakie with me when I move my office.

Very truly yours,

ARNOLD M. FLANK LIMITED

BY:_____
Arnold M. Flank, President