

UNITED STATES DISTRIC COURT

NORTHERN DISTRICT OF ILLINOIS

LAW DIVISION

FILED
J .N   MAY X 5 2008
Nov 5, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| SAKIE SCOTT, | ) | CIVIL ACTION |
| PLAINTIFF | ) | |
| | ) | |
| | ) | NO. **08CV1457** |
| v | ) | |

ILLINOIS STATE MEDICAL INSURANCE SERVICES ,
DEFENDANT

AMENDED COMPLAINT

DISCRIMINATION, HARASSMENT, RETALIATION, HOSTILE WORK
ENVIRONMENT, UNLAWFUL DISCHARGE, DEFAMATION OF CHARACTER,
FAILURE TO PROMOTE:

1.     For purposes of this Complaint, Illinois State Medical Insurance Services, Inc.

shall be hereinafter referred to as "ISMIE".  Laura Hutchinson shall be referred to

as "Hutchinson".  Sheila Coghlan shall be referred to hereinafter as "Coghlan".

Jacinth Stokes shall be referred to as "Stokes".  Donna Gentiles-Karas shall be

referred in her capacity as Assistant Vice President of "Human Resources".

2.     Plaintiff began employment with ISMIE on July 1, 2004 as an Underwriting

Secretary.  Plaintiff remained in same position throughout employment until

February 20, 2008. Plaintiff received first evaluation (6 months) in December 2004. Evaluation was standard language for a new employee. **(See Exhibit B )**

3.   Plaintiff received first annual review dated July 1, 2005. Hutchinson's first negative remarks were related to "distractions, occasional errors and socializing in the department". **(See Exhibit C )**. Hutchinson didn't realize that issues came up on a regular basis which caused Plaintiff to have contact with the underwriters, technicians and mail room staff to discuss business. This was explained to Hutchinson on numerous occasions. Because the office consisted of 7 ft. individual cubicles, it was easier to directly approach that individual rather than telephone.

4.   Plaintiff states that there was no further work related communication between July 2005 and September, 2005 that was significant. Plaintiff contacted Human Resources and scheduled an interview for the Underwriting Technician position that became available. Even though the "selection committee" consisted of four individuals, Hutchinson and Coghlan were the two main individuals with the most influence on the decision making process because of their positions in the department as Assistant Vice President and the fact that they are **close friends that dined together daily**.

5.   The first interview was scheduled for October 11, 2005. Coghlan and Hutchinson cancelled without any notice to Plaintiff, even though Hutchinson was the immediate supervisor to Plaintiff. When Plaintiff arrived at Hutchinson's and

Coghlan's office and found it empty, Plaintiff e-mailed them for an explanation. No response was given from Hutchinson and Coghlan that day. **(See Exhibit R  )**

6.  Christine Majerik of Human Resources called to say that the meeting was cancelled. The interview was scheduled for a couple of days later which resulted in a negative outcome for the Plaintiff. The interview was conducted with Frode Brudvik, a former employee, Michi Smith, Laura Hutchinson and Sheila Coghlan.

7.  On October 24, 2005, Plaintiff was notified by Human Resources (Christine Majerik) that the job was given to another individual, Pamela Phelps, (a younger Caucasian female), from outside of the company.   Plaintiff sent an email to Human Resources questioning the decision. Christine Majerik responded that no reason was given.  Plaintiff could only surmise that Coghlan and Hutchinson conspired together to hire a Caucasian to fill the position and succeeded in their efforts to discriminate against Plaintiff.  Hutchinson who had daily contact with the Plaintiff never made any comments on the decision. **(See Exhibit  )**

8.  In February of 2006, a position became available in the claims department as a Claims Representative.  Plaintiff interviewed with Kelly Kehoe, Manager and Christine Renfrow, Assistant Vice President of the Claims department.  Both interviews went extremely well and the conversation all but assured the Plaintiff that she had the position since she had over 20 years experience in the legal field and fit the job description.  Sometime between February 24, and March 1st, Hutchinson spoke with Kehoe and/or Renfrow of the Claims department and gave them such a negative report on Plaintiff that the job was given to another

individual. This individual was another younger, Caucasian female from outside of the company. The Plaintiff's contends that her life experience (age 50), 20 years previous experience in the legal field as a Certified Paralegal/Legal Assistant from Roosevelt University, and part-time Grant Accountant experience at Chicago State University, should have qualified for the entry level position in the claims department.

9.    On March 5, 2006, Plaintiff received a telephone call from Greg Davis stating that Hutchinson had blocked the transfer. Kelly Kehoe personally approached the Plaintiff and stated the same regarding Hutchinson's statements blocking the transfer. Plaintiff was in "awe" of the decision and went to Hutchinson's office to inquire about the negative information that was given in her response to the transfer. Hutchinson stated that "you still have issues with your work". When Plaintiff questioned Hutchinson about what she was referring to, Hutchinson remained silent. Plaintiff was at this point beginning to feel uneasy about Hutchinson as an immediate supervisor and her ability to communicate more effectively with staff members.

10.    Kehoe and Renfrow tried to intervene on behalf of the Plaintiff by consulting with Tim Saunders, Vice President of Claims, but were informed that there was nothing he could do to override Hutchinson's remarks which ultimately precluded the Plaintiff from transferring out of the underwriting department. (Witnesses: Kelly Kehoe, Christine Renfrow, Greg Davis and Tim Saunders)

11.     There were no negative discussions between Plaintiff and Hutchinson between
        March '06 and July '06.  Plaintiff was sure that the upcoming evaluation would be
        **"TRUE AND CORRECT"**.  One week prior to Plaintiff's evaluation in July,
        2006) Plaintiff processed 567 loss history letters in two days (an extraordinary
        amount of work from one individual).  This effort was not noted on the upcoming
        evaluation. **(See Exhibit D)**

12.     There were numerous requests made by Plaintiff of Hutchinson to assist others
        with their backlog of work.  Plaintiff was also responsible for a myriad of backup
        duties during the absence of her co-worker, Carol Smith that included; incoming
        mail, processing faxes, end of day and mailing previous invoice, that she would
        sometimes be responsible for **IN ADDITION** to her normal daily tasks.  **(See
        Exhibit Z)**

13.     Management met with staff to discuss an upcoming unit luncheon in early
        December, 2006.  At the luncheon it was stated that the staff **"was not to order
        two entrees"**.  The purpose of this discussion was because of an employee, Tanya
        Moorer, who ordered two separate entrees from the previous unit luncheon at the
        Grand Lux Cafe.  On December 11, 2006, the office attended the luncheon,
        Plaintiff ordered a "surf and turf".  After the luncheon, Keith Evans reported back
        to Hutchinson that the Plaintiff ordered a "surf and turf" meal.  (See reference to
        this action further in this Complaint)

14.     Plaintiff was called into the office at 4:15pm, and asked to close the door and
        grilled about the lunch that was ordered.  Hutchinson asked the Plaintiff why she

ordered a "surf and turf". Plaintiff explained to Hutchinson that a "surf and turf" meal was not considered two separate entrees and that cost of the meal was never discussed at the prior meeting, rather the number of entrees ordered by each individual. Plaintiff also explained to Hutchinson that there were no additional appetizers, drinks, or desserts ordered like the others which would make up the price difference. Plaintiff also advised Hutchinson that if price were an issue, it should have been mentioned in the meeting.

15. Further, Plaintiff contends that ISMIE spends thousands of dollars on food for their employees several times a year and that price has never been an issue, but rather another way for Hutchinson to display her tactics of harassment. Plaintiff stated that ISMIE's wasteful spending of money on food at various meetings make it impossible for Hutchinson to question one lunch ordered by a staff member. At the end of the meeting, Hutchinson actually asked the Plaintiff "did you finish the meal"? (Witnesses: Edna McLauren, Charlotte Jackson, and Georgia Thompson who are employed in the meeting services department.)

16. Hutchinson's continued negative remarks regarding the Plaintiff's work in evaluations, constant tactics of harassment and creation of a hostile work environment prompted the Plaintiff to lodge a complaint against Hutchinson with Human Resources on December 14, 2006 covering a series of events that occurred between 07/2004 and 12/06. **(See Exhibit E)**

17. On January 11, 2007. After inquiring about the status of the Complaint, Plaintiff received an email from Human Resources stating that the investigation was

complete.  When Plaintiff asked for documentation regarding the investigation, Plaintiff was emailed by Donna Gentiles-Karas that this information was confidential and that there was no documentation that could be given to the Plaintiff regarding the Complaint.  **(See Exhibit  )**

18.    Plaintiff received another evaluation from Hutchinson on July  2007 which deteriorated even further in content and percentage of raise.  Hutchinson listed tasks on the evaluation which did not belong to Plaintiff.  The number of items marked in the "Does Not Meet Expectations" category DRAMATICALLY since the 2006 evaluation.

19.    Plaintiff questioned Hutchinson to find out why she never received any type of disciplinary action if the work had deteriorated so heavily during the list year.

20.    Hutchinson tried to give the illusion that "typing" was the primary task of the Plaintiff and that the typing precluded the Plaintiff from achieving higher standards from within the department.   Plaintiff questioned Hutchinson about the remaining negative remarks during evaluation even stating that "maybe you have the wrong evaluation".  As a "manager in training" Stokes was allowed to **witness** the discussion between Plaintiff and Hutchinson but not allowed to intervene since she had no **PRIOR** or **"REAL"** authority over Plaintiff.  Plaintiff realized that Hutchinson was trying to justify the actions taken to preclude the Plaintiff from advancement into the Underwriting technician position recently.  Stokes was not considered a **viable** candidate to make decisions or pass judgment on employees as a "trainee."

7

21.   Plaintiff states that on the few occasions that she tried to approach Stokes, she
was reprimanded by Hutchinson that she was only to report to her and not
STOKES.

22.   Hutchinson was questioned by the Plaintiff about the decrease in raise by one
point since the prior evaluation, Hutchinson responded that "it is not lower",
which indicates that Hutchinson's overall intentions were to keep the Plaintiff
from advancing in the company and department.

23.   Plaintiff applied for the position of Underwriting Technician for a second time,
which would have been a promotion in the Underwriting department.  On June 29,
2007, Plaintiff was granted an interview with **no advance notice**.  Hutchinson
was also present at the meeting which showed a conflict of interest since she was
Plaintiff's immediate supervisor and had a complaint lodged against her.

24.   Plaintiff states that during the interview, Coghlan exhibited a very condescending
attitude, occasionally glancing at Hutchinson for her reaction.

25.   Plaintiff contends that during the interview for the Underwriting Technician
position, Coghlan was very curt and crude.  Coghlan began asking questions that
were not relevant to the job at all.  Coghlan took the time to ensure that the
questions she posed to the Plaintiff were ones that could not be answered unless a
person was trained in that position or to "prep" a person from outside of the
company with the answers of such confidential information.

        1.      *"What goes on the Prep side of the folder?"*

8

2.    *"Why didn't you ask to be trained in Greg's position prior to his departure"?*
3.    *"Why haven't you applied for anything outside of the Underwriting department"?*
4.    *"Aren't you in a nursing program in school"?*
5.    *"What school do you attend"?*
6.    *"What classes are you taking?*

26.    On several occasions, Plaintiff tried to answer questions posed by Coghlan, however, before Plaintiff could begin to answer a question, would interject with another question.  Coghlan became so belligerent during the interview that Plaintiff didn't get a chance to comment on any other questions before being rushed out of the office.   Further, the remaining questions were only issues that Davis, himself, would know since he was Coghlan's **"personal secretary" occasionally** running errands that sometimes included transporting Coghlan's expensive jewelry for repairs.

27.    Plaintiff states that Coghlan continued to "reprimand" and "humiliate" Plaintiff in front of her close friend and confidante, Hutchinson during the interview process.  At the end of Coghlan's interview turned **"interrogation"**, Coghlan asked Hutchinson if she wanted to add anything.  Hutchinson replied "Aren't you taking a biology class?"  This interview had become a "game" between Hutchinson and Coghlan.

28.    On July 1, 2007, Plaintiff received a **PREDATED** letter for June 20, 2007 stating that they had selected another individual for the position (Bill Blake, a causasian).  When the Plaintiff realized this letter was dated **June 20, 2007, ONE WEEK PRIOR TO THE INTERVIEW**, it became clear that Hutchinson, Human

Resources and Coghlan had previous knowledge that Plaintiff wasn't going to be promoted since the **interview date was June 29, 2007, NINE DAYS AFTER THE LETTER WAS WRITTEN**. Plaintiff states that her co-worker and "personal friend", Davis, had indeed confided in Coghlan that Plaintiff was going to apply for the position since other questions were **ONLY** known to Davis.  **(See Exhibit  )**

29.    Plaintiff also states that it was at this time that she realized that Coghlan knew of all of her personal information regarding outside work activity through Greg Davis, the former employee and personal secretary to Coghlan.

30.    Even though Plaintiff was more than qualified and experienced for the position, Hutchinson and Coghlan conspired to deny Plaintiff the promotion for a second time.  Blake (caucasian) is a personal friend and neighbor of Coghlan's.  Because Blake had no office work experience, Coghlan had to assist him in completing his employment application. (Witnesses:  Gentiles-Karas, Brenda, Receptionist, Coghlan, Hutchinson) Blake's sister is Coghlan's babysitter.  Plaintiff also contends that the position was actually a secretarial position and that only recently did it become upgraded to Technician after Davis had exceeded the amount of money that could be paid to a secretary. **(See Exhibit CC )**

31.    Plaintiff contends Coghlan and Hutchinson are "inseparable" on the job which was a conflict of interest for the interview held by the two individuals to act in their capacity collectively.  Witnesses (Underwriting and Claims employees).

32.    Plaintiff states that Hutchinson worked with Coghlan to keep Plaintiff from obtaining the position of Underwriting Technician that became open in June 15, 2007.  Plaintiff contends that Davis' position only reported to Coghlan for typing and/or **very private, personal projects and PREP was strictly confidential because of the HIPPA Act** .

33.    Plaintiff contends that Coghlan was a personal friend of the employee, Davis, that departed from "ISMIE" on July 15, 2007.  Plaintiff discussed the possibility of applying for the position that he was vacating.  Davis informed the Plaintiff that Coghlan had already decided who she was going to bring in to fill the vacancy PRIOR to the job posting at work.  Plaintiff still felt that it was her right to try and pursue the position even though Coghlan chose to hire her neighbor and personal friend, Bill Blake.

34.    Plaintiff requested one day off "unpaid" on November 21, 2007 to attend a doctors appointment.  When Plaintiff realized from the manual that this was not possible, the request was rescinded, although provisions had been made by another employee, Tanya Moorer, to travel abroad in December, 2006 with no accrued time available through a different supervisor, Stokes.

35.    Hutchinson and Gentiles-Karas collaborated together to write up a Notice of Corrective Action on November 5, 2007 for probation based on "excessive absenteeism" even though Plaintiff **HAD NOT EXCEEDED ANY** accrued time off for the year.

36.    Plaintiff sought out the assistance of Human Resources via email in December of 2007, to try and resolve this matter. However, there was no response to email. **(See Exhibit I ).**

37.    Plaintiff states that upon reviewing her file, for further action, she discovered a Notice of Corrective Action form for warning on absenteeism that had been sent in with the response from Defendant.

38.    Plaintiff states that Hutchinson and Gentiles-Karas, Human Resources conspired to generate a "bogus" warning. Plaintiff **never** received such warning and it was **unsigned and undated.** In the letter dated November 9, 2007, from Defendants attorney states that the Plaintiff did was not given the **"warning" because they did not want the action to appear retaliatory"** therefore this disciplinary action was skipped. **(See Exhibit L)**

39.    Plaintiff also discovered a response from Hutchinson which was "supposedly" typed in December of 2006, while reviewing the ISMIE response from ISMIE's attorneys. Plaintiff realized that ISMIE had placed Hutchinson's response to the complaint lodged in **DECEMBER 14, 2006** in the Plaintiff's EEOC file.    **(See Exhibit L)**

40.    Plaintiff states that when she questioned Gentiles-Karas, from Human Resources, her email states that this information was confidential.  **(See Exhibit E)**

12

41.    Plaintiff states that there is no **REAL** evidence that Hutchinson actually typed this response in answer to the Complaint filed in December 2006 since this document was never revealed to the Plaintiff.

42.    Hutchinson's "Memo to File" is filled with erroneous statements.  See below:

**(See Exhibit L)**

*"¶1.  Hutchinson states that she has no recollection of the first interview scheduled.  Hutchinson's statement is untrue. (See Exhibit X )*

*"¶2.  Hutchinson states that "Sakie's responsibility is to provide secretarial support to me".  As stated above in this complaint, I have never been Hutchinson's secretary in the 3 ½ yrs. with ISMIE.  My primary task was to process new business screening and loss history letters.  (See Exhibit Y) Hutchinson's statement is untrue.*

*Hutchinson created tasks that were demeaning to Plaintiff in an effort to further humiliate Plaintiff in the department such as:. "coming to her office five times a day just to "check in" even if there were outstanding issues and to deliver Xerox paper to her office" These tasks constantly removed the Plaintiff from her daily flow of work. Plaintiff was not Hutchinson's "personal secretary", but rather a new business screener. (Note: When Plaintiff's duties changed in July of 2007, Carol Smith, a causasian female,  took over the task of typing weekly PUMA minutes for Hutchinson.  Plaintiff asked if she had to transport reams of Xerox paper into Hutchinson's office and the response was "no".)  Hutchinson even scheduled Plaintiff to move equipment when the Plaintiff was out of the office on vacation.  ( See Exhibit Z)*

*It was a known fact in the entire office that Plaintiff had double bypass surgery recently and could not lift items as stated due to the unstable angina that the Plaintiff suffered with occasionally.*

*Hutchinson continued to make such requests on Plaintiff.  In December, 2007, sent another email to Plaintiff to remove boxes of paper which weighed at least 50-100lbs lbs, even though there were at least 15 men in the department and the Plaintiff was on vacation that day. Plaintiff had to solicit the assistance of Blake, Sullivan, Davis and Schmidt on several occasions.  (See Exhibit Z)*

*"¶ 3."  Plaintiff states there were never documents typed for Hutchinson created initially by Plaintiff as stated in the memo.  The documents that Hutchinson refers to are one page documents that were "EDITED"  and consisted of making*

13

*additions or deletions weekly according to the meeting. On occasion Ronald Koves, Underwriter would generate the changes to be made on this document. Documents summaries reveal the history of each document and the number of times that it was accessed on each occurrence. Plaintiff contends that the number of revisions usually consisted of two times per occurrence. Initial access to open and second time accessed to open and send to Hutchinson and the rest of staff.*

*No document was ever created "initially" by Plaintiff because all of the documentation in the system were created by previous employees in that position. Plaintiff basically typed one document per week. Other documents typed consisted of "boilerplate language" which only required the addition of a physician name, date, etc....Hutchinson seemed to be "out of touch" with the Plaintiff actual duties **(See Exhibit P )**.*

*"¶ 4", Hutchinson states that the Plaintiff needed to "focus more on her work and less distractions on the floor". Plaintiff states that it was explained to Hutchinson consistently that these "social distractions' were work related and that it was the easiest way to communicate with other staff members especially when the Underwriting department went paperless.*

*"¶5." did not know how to react in situations that involved controversial matters. Hutchinson never contacted the other individual in the Plaintiff's cubicle. A witness Carol Smith, who initially sat next to Plaintiff in the same corridor, heard the two employees in the cubicle having conversation. Plaintiff contends that Hutchinson lacked the supervisory skills to handle this matter in a more effective manner. Because of Hutchinson's actions in this matter, there was more of a hostile work environment created with Plaintiff, Willet Welch and **Keith Evans.***

*¶ 6. Hutchinson states that Michi Smith had conversations with Jon Olson, Sean Sullivan and Terry Moore on November 21, 2006, and that the Plaintiff was "totally distracting" because of "loud noise, personal calls and cell phone usage during business hours." Plaintiff contends that Hutchinson's statements in this paragraph have embellished the truth to make it appear that Plaintiff was creating a "partylike" atmosphere on a regular basis. Plaintiff contends that the phone activity that were heard by others were prefabricated statements. Plaintiff contends that Olson did move his desk immediately after the Plaintiff moved to the next cubicle. Plaintiff also states that because she was in such close proximity to Olson prior to the move, if Plaintiff was so "disruptive" during **three** years of employment with ISMIE, something would have been mentioned before 2007. Plaintiff also states that this statement in Hutchinson's "Memo" is questionable because of the **other individuals in the same corridor weren't questioned: (Deborah Connie, Wendy Roberson and Beth McNicholas.***

*Plaintiff also contends that Sullivan was guilty of the same accusation himself as stated in the above paragraph. Sullivan, Welch, and Schmidt engaged in "partylike" activity continuously. (Witnesses to this activity were Deborah*

*Connie, Carol Smith, Brenda Cowens, Jamie Donovan, Sarah Maddock, Wendy Roberson, just to name a few. Hutchinson's accusations are unfounded in this paragraph. Plaintiff was located furthest from the rest of the staff on the end wall where no one else was located for constant "socializing". Hutchinson was oblivious to the actions that occurred in the department as a whole since her office was located in another section of the floor.*

43.    After an illness on January 7, 2008 to January 9, 2008, Plaintiff returned to work with a doctor's note for the two days taken off even though a note was not warranted until the employee was off more than three consecutive days. Plaintiff was directed by Human Resources three times to have the physician rewrite the doctor's statement upon returning to the office. (Witnesses: Joy, Dr. Prem Hammond Clinic.) **(See Exhibit O)**

44.    During the Plaintiff's time off, Hutchinson continuously telephoned various family members that contributed to an additional amount of stress on the family members. Also, during Plaintiff's time off, Hutchinson and Stokes met with the Underwriters and Technicians to have them alert them of any ISSUES made in the New Business Screening that Plaintiff processed contributing further to create a "hostile work environment".

**UNLAWFUL DISCHARGE**

45. On January 21, 2008, Plaintiff took ill from unstable angina and highly elevated blood pressure and received a doctor's statement which was faxed to HR. Plaintiff's mother called in sick for the Plaintiff and spoke with Hutchinson on January 22nd, 2008, and stated Plaintiff was going to be out sick.

46.    Plaintiff telephoned and stated to Hutchinson that the time off would be extended

15

to January 28<sup>th</sup>, after a visit to the cardiologist for follow-up.  Plaintiff faxed a
doctor's statement to Human Resources "Until Further Notice" for a return date.

47. After all accrued time had been allotted, ISMIE, Human Resources, Gentiles-Karas
advised that the Plaintiff would she would have to have forms signed for Short Term
Disability if she would be out indefinitely.

48.     On February 13, 2008, Plaintiff sought a second opinion who had just become
employed with the clinic the week before in the cardiac unit for further medical
treatment.  The Plaintiff's blood pressure was still too elevated to return to work.
Therefore, the short term disability forms were signed by Brian Kraus, C-FNP and
faxed to the Human Resources department.  Defendant refused to accept the forms for
short term disability stating that this he was not a "physician" and then subsequently
the Plaintiff was terminated on February 20, 2008. **(See Exhibit O)**

49. Defendant , Human Resources willfully lied in the Letter of Termination dated
February 20, 2008, stating that "on February 14, 2008, a call was placed to Hammond
Clinic and that they spoke with Ms Susan Archie, employee, confirming that Brian
Kraus was not a doctor, he was a nurse practitioner." **(Exhibit O )**

50. After receiving the letter on February 21, 2008. Plaintiff personally drove to the
Hammond Clinic and confronted Ms. Susan Archie regarding the statement that was
in the Letter of Termination.

51. On Friday, February 25, 2008, Ms.  Cathy Zackiewicz, the head of Patient Services at
Hammond Clinic, telephoned the Plaintiff stating that **"no one in her office had
spoken with anyone with ISMIE"**, and that she was "outraged that the Defendant

16

would try and implicate Hammond Clinic in what appeared to be "some type of finalization of employment" between the Plaintiff and her employer. A letter was sent to ISMIE, Human Resources stating the same and a copy is attached to this complaint hereto. Witnesses: Cathy Zackiewicz and Ms. Susan Archie of Hammond Clinic. **(See Exhibit O).**

52. Plaintiff received **another** letter dated March 5, 2008 from the Defendant's attorney in response to the letter sent to ISMIE from Hammond Clinic. Defendant's attorney states that she "personally" spoke with someone from Hammond Clinic. **(See Exhibit O)**

53. Plaintiff states that there is no mention of this conversation anywhere in the Letter of Termination dated February 20, 2008 from the Defendant (ISMIE).

54. Plaintiff also states that there was never any mention of the attorney's involvement from Human Resources in this matter until the letter was received on March 6, 2008.

55. Plaintiff maintains that Hammond Clinic has denied any conversation or communication of any type with ISMIE regarding this "alleged" conversation between the ISMIE attorney and the Hammond Clinic employee, Ms. Susan Archie, HIPPA Director.

56. Plaintiff states that she is still attending Hammond Clinic for closure in this matter and that as of April 3, 2008, Ms. Zackiewicz still maintains that Hammond Clinic has had no prior conversations with anyone from ISMIE or anyone associated with ISMIE on behalf of the Plaintiff.

### COGHLAN'S AFFIDAVIT

1. On September 27, 2007, Plaintiff filed a formal complaint with EEOC against Defendant.

2. Coghlan submitted an **unsigned and un-notarized affidavit to EEOC** which is an evidence of the collaboration between she and Hutchinson to keep Plaintiff from receiving a promotion. Plaintiff contends that this Affidavit is not a **legal** document since it lacks a signature and date. **(See Exhibit N )**

### HUTCHINSON'S AFFIDAVIT

1. At times, Hutchinson seemed "out of touch" as evidenced in the Affidavit submitted to EEOC. Hutchinson's lists several tasks that **WERE NOT** the responsibilities of the Plaintiff. **(See Exhibit X for 2006 and 2007)**

> *  incoming correspondence (Carol Smith)
> *screen loss letters (Sarah Maddock and Corliss Benedict)
> *mailing documents (Mail room)
> *rate sheets (technicians)
> *copy applications (mailroom and publications)
>
> ¶7 – Harassment see complaint by Plaintiff
>
> ¶8 On several occasions Plaintiff tried to advise Hutchinson of backlogs created by Deborah Connie (temporary) in the loss history indexing but was denied a chance to help rectify the situation. (Witness: Sarah Maddock and Carol Smith, Deborah Connie (Temporary) Hutchinson stating that it was "the temp's responsibility). This was happening on a regular basis.
>
> ¶Hutchinson sites work performance problems continuously over 3 ½ years in every evaluation, however Plaintiff never received any type of disciplinary action from Hutchinson. Hutchinson was capable of termination as evidenced by first Underwriting

18

*technician hired in place of Plaintiff, Pamela Phelps in October, 2005.*

*¶10.    Hutchinson states "a pattern of tardiness" that she herself was guilty of during the Plaintiff's entire employment with ISMIE. Hutchinson start time was 8:30am but on every occasion reported to work at approximately 8:50am. Everyday except on Thursdays when she had a 9:00 am meeting to attend. Hutchinson did however change her habits during the unsubstantiated probation that Plaintiff was placed on November 5, 2007. During this time Hutchinson literally raced in past Plaintiff desk at 8:00 am in an attempt to "catch" Plaintiff with late arrivals as evidenced by the (Electronic Key Device ("FOBS")*

2.    Hutchinson became obsessed with trying to find any and everything negative she

could find in an effort to "write up" the Plaintiff.

2004-2005
1. work performance problems
2. serious concern
3. consistent errors
4. tardiness created additional work for Hutchinson and staff
    2005-2006
    5. constant tardiness
    6. improve time and organization skills
    7. too many distractions and socializing, **yet Hutchinson suggests to interrupt flow of work to report to her office 5 times daily.**

2006-2007
1. continued work problems
2. poor quality of work
3. additional of absenteeism
4. constant socializing throughout day
    inconsistent statements: "Backup work done well but regular tasks constantly erred.

## STOKES AFFIDAVIT

1.    Plaintiff states that because this individual had no authority over Plaintiff,

Affidavit is only included as an Exhibit to this Complaint.

2.    Plaintiff states that Stokes' Affidavit was of a "personal" nature and cannot be considered a **TRUE and CORRECT** accounting of Plaintiff's work history with ISMIE in her role as Manager (July 1, 2007-January, 21, 2008, a period of six months).

3.    Plaintiff also states that Stokes only became Manager of the Underwriting in the summer of 2007 and was in no position to write an Affidavit since Plaintiff was not allowed to consult with her on issues in the Underwriting Division except during the absence of Hutchinson which was no more than 1 week during the time period. **(July 2007 – January 2008)**

4.    Plaintiff states that Stokes was "close friends" with Willet Welch, technician who was involved in the incident that Plaintiff questioned

5.    Further, Plaintiff states that Stokes was still under training with Hutchinson and not qualified to make sound decisions or pass judgment on employees on her own as of January, 21, 2008.

6.    Stokes was merely a witness as to incidents involving Plaintiff and Hutchinson.

7.    Plaintiff was reprimanded by Hutchinson a number of times regarding any discussion between she and Stokes.

8.    Plaintiff states that Stokes' Affidavit is filled with erroneous statements regarding constant loud noise and poor work performance stemming back to when she was first promoted during Plaintiff's employment with ISMIE as an Underwriter trainee, Underwriter and Underwriting Support Manager.  Stokes was responsible for Moorer, Welch, Cowens, and Maddock.

9.    Plaintiff states that the two other support individuals were supervised only by Hutchinson.

10.   Plaintiff also states that all work received by Stokes in the role as Underwriter as submitted and approved for rating FIRST by her technician, Brenda Cowens.

11.   Stokes indicates in her Affidavit that she has "on many occasions discovered errors in her work". In order for Stokes' statement to be "true" would mean that these errors **ALSO** escaped her Underwriting Technician, Cowens who received and approved the work for the next step which is acceptance or declination for the applicant's policy.

12.   Stokes also states that Plaintiff did not read e-mails; however, as stated in this Complaint, the computer remained on "AutoPreview", thereby enabling Plaintiff to read all emails without actually opening the email.

13.   Stokes lists that she could hear conversations, yet her office was more than 50 feet away from the Plaintiff's soundproof cubicle.

14.   Plaintiff states that if this type of disruption was occurring as stated by Stokes, disciplinary action would have been taken outside of the "warnings" including in this Complaint.

15.   Plaintiff also states that even with the "negative remarks" in Stokes' affidavit only one "warning" was issued during the time of July 1, 2004 to February 20, 2008.

16.    Stokes has had no involvement in Plaintiff's evaluation or personnel records during the time of her role as "Manager" and cannot therefore make judgment on any such activity that occurred between Hutchinson and Plaintiff.

17.    Plaintiff also states that Stokes did not mention the **Unsigned and Undated** Notice of Action form regarding "warning" submitted to EEOC by Defendant, more specifically HR and Hutchinson, which is an indication that she was not actually involved in Plaintiff's employment activity.

18.    Plaintiff states that because Stokes has had no personal involvement on a consistent basis, the statement in her Affidavit "

19.    Plaintiff states that Stokes' Affidavit is based on some type of "a negative personal tone taken"..."From my personal observations of Ms. Scott's work performance. The 2007 Performance Evaluation should have been more critical of her work than it was."

20.    Plaintiff states that Stokes' remarks are of a personal nature and not a **TRUE and CORRECT** accounting of work activity.

21.    Plaintiff states that Stokes' remarks in the Affidavit are a direct reflection of her own Underwriting Technician which reveal that there was nothing wrong with Plaintiff's work.

## DEFENDANTS HIRING AND PROMOTING PRACTICES:

1.    Further, Plaintiff contends that Defendant practices discrimination in their hiring and promoting practices.

2. As of October 25, 2007, Plaintiff states that there were 221 caucasian employees and 26 black employees in the Chicago office.  From 04/2006 to 11/06 there were a total of **29** (Caucasian)  new hires, **(2 blacks)** and 31 promotions (Caucasian) and 0  blacks promoted; even though there were blacks that have been in the claims department over 15 years without being promoted to an advanced position) between 04/06 and 11/2006.  **(See Exhibit Y)**

3. Plaintiff states that the **ENTIRE** mailroom staff is black, and that each **clerk** (three black individuals that applied for promotions have been consistently denied requests for promotions namely:  Sheila Farmer, Samantha Dancy, Lisa Ferguson.

4. Deborah Connie (temporary employee), black, also applied for the same position of Underwriting Technician in 2007 as well as other positions.  However, her emails to interview for the position were never acknowledged.  **(See Exhibit V   )**

**SUMMATION**

1. Hutchinson deliberately and willfully orchestrated an act of discrimination and harassment to keep the Plaintiff in the same entry level position for 3 ½ years.

2. Plaintiff contends that during the entire 3 ½ years of employment with Illinois State Medical Services, Hutchinson also collaborated with various individuals to prevent Plaintiff from promoting or transferring within the company.

3.    Plaintiff contends that sometime around July 1, 2007, Hutchinson solicited the assistance of a newly appointed manager, Jacinth Stokes to assist in her acts of harassment and retaliation against the Plaintiff.

4.    Hutchinson listed **UNTRUE** statements on ALL evaluations since 2004-2006 and blatantly lied on the 2007, in an effort to make the Plaintiff appear incapable of holding any other position with "ISMIE" even though all of the positions applied for only requested a **high school diploma or GED**.

5.    Hutchinson and Stokes personally went out of their way to harass the Plaintiff until illness overcame the Plaintiff on January 21, 2008.   **(See Exhibit O )**

6.    Plaintiff contends that Coghlan knew that there was no time for cross training unless it was initiated by a manager.  Further, Coghlan knew that the Plaintiff could never "shirk" her own responsibilities to train for Davis' position prior to his announcement for departure.  Further, Davis was more than an employee, he was a "close friend" of Coghlan's.  Davis and Coghlan shared outside activities together that included concerts, shows, drinks, and dinner.

8.    Plaintiff contends that if Hutchinson felt the statements that she made against Plaintiff were justified, some type of disciplinary actions would have been taken after three years of employment.

9.    Plaintiff contends that Hutchinson never proceeded with any type of disciplinary action until a complaint was filed against her in December of 2006 and with EEOC in October, 2007.

24

10.    Defendants is responsible for the Plaintiff losing her livelihood, life insurance
       policy, health insurance benefits (spouse and child), 401k and sense of pride taken
       at ISMIE.

11.    Defendants is also responsible for the deterioration in the Plaintiff's health as a
       prior heart bypass patient.  Plaintiff advised Hutchinson of her health situation
       and the consequences of daily stress that she was subjected to on a regular basis
       and tried to reach out to Human Resources but was constantly ignored. **(See
       Exhibit E & I )**

12.    Hutchinson retaliated against Plaintiff after formal complaint was made in
       December of 2006 with Human Resources.  No **PRIOR** disciplinary actions
       (warnings or probation), were ever taken against employee **UNTIL 2007)**

13.    Plaintiff discovered a memo placed in the EEOC file that was not shared with her
       prior to the EEOC Complaint even when Plaintiff inquired about the response to
       Human Resources. **(See Exhibit L).**

14.    Evidence of harassment is listed in Hutchinson's memo in the second paragraph
       stating that Plaintiff should "restock Hutchinson's paper at her desk", a task that
       no one else provided.  Plaintiff states that in her **absence** Hutchinson assigned
       tasks of moving equipment even though there were at least 15 men employed in
       the underwriting department.  **(See Exhibit Z)**

15.    Plaintiff states that while placed on the "bogus" probation on November 5, 2007,
       Hutchinson even changed her daily pattern of tardiness to arrive at work from

8:50am to 7:45-8:00am arrival time in an effort to harass Plaintiff further. Daily monitoring of the electronic key used by the company should have been sufficient evidence of arrival. Hutchinson only monitored Plaintiff's arrival time and no one else's in the department from November 5, 2007 to January 1, 2008.

17.    Plaintiff states that the company had a very relaxed atmosphere and that on occasion several employees would come in 10 to 15 minutes late and it was never an issue in the past as long as the time was made up in one form. **(See Exhibit )**

17.    Plaintiff states that in the Defendant's response to EEOC the "Warning" because they didn't want it to appear retaliatory" is evidence of a "collaboration" between Human Resources and Hutchinson. **(See Exhibit )**

18.    Plaintiff states that she trained Sarah Maddock in two of her main tasks in the underwriting division in November of 2005. On October 9, 2007, Maddock was granted a promotion over Plaintiff for the same position that Plaintiff had been trying to advance to for the last three years. **(See Exhibit T)**

19.    Plaintiff also trained Gina Bules, another employee in the underwriting division in the new business screening process for backup.

20.    Plaintiff states that Hutchinson and Stokes collectively went out of their way to try and build a negative case against Plaintiff for termination. Plaintiff states that this constant and daily harassment was a direct result of the stress created by these two individuals.

21.    Plaintiff states that because Hutchinson and Stokes were so vicious and malicious in their attempt to harass the Plaintiff that they conspired to included the entire underwriting department in their escapade with no other regard for the rest of the department by further creating a hostile work environment.

22.    Plaintiff further states that Hutchinson was too much of a "perfectionist" to allow such a poor work performance for a period of 3 ½ years without disciplinary action. (Witness: Underwriting Division Staff )

23.    Plaintiff states that Hutchinson requested that Stokes write an Affidavit indicating the history of Plaintiff's quality of work. In that Affidavit, it is clear of the inexperience of Stokes to provide a **TRUE and CORRECT** accounting of the Plaintiff's work experience in the department by making personal attacks on the Plaintiff.

24.    Plaintiff states that Hutchinson gave the impression to other individuals in the company that she was incapable of handling any other position thereby defaming the character of Plaintiff.

25.    Plaintiff states that the term "physician" as stated in the "Wikipedia.com" reads the definition of physician as "A practitioner of physic, i.e. a specialist in **internal medicine**, especially as opposed to a surgeon; a practitioner who treats with medication rather than with surgery. A medical doctor trained in human medicine. Plaintiff further states that she had every right to seek out any treatment possible in an effort to become cured.

26.     Plaintiff states that the Defendant unlawfully discharged her on February 20, 2008

        after refusing to accept the signature of her medical care provider on the short

        term disability forms submitted by the Plaintiff on February 13, 2008.  (Witness:

        Cathy Zackiewicz, Hammond Clinic)

27.     Plaintiff further states that she had the right to chose another medical provider to

        try and receive the proper treatment for curing the illness.

**PRAYER**

**WHEREFORE**, the Plaintiff respectfully requests that the Honorable court hereby grant

the above referenced damages in the amount of $10,000,000 (ten million dollars) in favor

of the Plaintiff, Sakie A. Scott against the Defendant, Illinois State Medical Insurance

Services, Inc. "ISMIE".

                        Respectfully submitted by:
                                            Sakie Aneshia Scott, pro se

Sakie Aneshia Scott
669 Clyde Avenue #2N
Calumet City, IL  (708) 979-8253
sakiescott@hotmail.com

## Witnesses to Work performance, Harassment, Discrimination Practices

1. Carol Smith (harassment and discrimination)
2. Robin Moss
3. Wendy Roberson (harassment)
4. Sarah Maddock
5. Deborah Connie (harassment, discrimination)
6. Deborah Harris
7. Georgia Thompson (discrimination)
8. Edna McLauren (discrimination)
9. Charlotte Johnson (discrimination)
10. Brenda Johnson (discrimination practices at ISMIE)
11. Donna Gentile-Karas
12. Greg Davis
13. Jacinth Stokes
14. Sheila Coghlan (defamation of character by Hutchinson)
15. Michi Smith
16. Frode Brudvik
17. Willet Welch
18. Larry Szatkowski (work performance)
19. Ron Koves (work performance)
20. Beth McNicholas
21. Sheila Farmer (discrimination)
22. Samantha Dancy (discrimination)
23. Lisa Ferguson (discrimination)
24. Ray Adamore (Clerk 25 years) (discrimination)
25. Karen Shelby (discrimination)
26. Penny Simpson (discrimination)
27. Veronica Evans (discrimination)
28. Kelly Kehoe (defamation of character by Hutchinson)
29. Christine Renfrow (defamation of character by Hutchinson)
30. Tim Saunders (defamation of character by Hutchinson)
31. Greg Wideman, (work performance)
32. Roy Schmidt (work performance
33. Spero Argyris (work performance
34. Katie (work performance)
35. Sean Sullivan (work performance)
36. Doug Huntley (work performance)
37. Jamie Donovan (circle of Friendship)
38. Corliss Benedict

# EXHIBITS

**A.**  Right to Sue letter from EEOC
**B.**  Evaluation 07/01/2004-12/2004 and training schedule for Scott dated 07/01/2004
**C.**  Evaluation 12/04-07/01/2005
**D.**  Evaluation 07/05-07/06
**E.**  Complaint and investigation lodged against Hutchinson and email to HR
**F.**  Evaluation 2006/2007
**G.**  Predated letter from  declining Plaintiff promotion
**H.**  Unsigned and undated notice of corrective action for warning on "excessive absenteism" discovered in EEOC file by Plaintiff & Notice of Corrective Action probation form ; email to Hutchinson; employee personnel record,
**I.**  Email asking HR for assistance
**J.**  Notice of corrective action for work performance "warning" dated 01/14/08
**K.**  Notice of Corrective Action for tardiness"warning" dated 01/14/08
**L.**  Ismie response to EEOC and Hutchinson response
**M.**  Hutchinson affidavit (signed, dated, and notarized
**N.**  COGHLAN affidavit (unsigned, undated, un-notarized.) and inadmissible
**O.**  Request for short term disability
         Letters from ISMIE, 02/04/08, 02/06/08, 02/12/08 and 02/20/08.
         Letter from Hammond Clinic
         Doctors Statements
**P.**  Examples of puma minutes and document summary revealing editing and revision times.
**Q.**  Examples of harrassment by Stokes and Hutchinson
**R.**  Sample time made up through skipped lunch hour which was never an issue prior to 2007
**S.**  Activity logs for Donovan (white), Maddock(white), and plaintiff(black denied)  indicating same type of tasks (other two promoted, Donovan promoted 3 times in 2 years)
**T.**  Emails indicating training times for Maddock as listed.
**U.**  Loss history processing and new business screening procedures
**V.**  Emails from another black, Deborah Connie, applying for U/W Technician position in July 2007.
**W.**  Requests for help by Plaintiff from Hutchinson and examples of same.
**X.**  Activity logs for plaintiff proving untrue statements made by Hutchinson
**Y.**  Examples of hiring and promoting practices practiced by defendant.
**Z.**  Demeaning tasks by Hutchinson to Plaintiff

AA.     Backed up worklog by a month for Sarah Maddock, caucasian. No monitoring by Hutchinson or Stokes  (promoted 10/07)

BB.     Bill Blake resume, new hire, u/w tech, Greg Davis resume, former employee/ U/W Tech.

CC.     Correlation between Sheila and Bill as neighbors

DD.     2006 Incoming Work Log U/W Division including new business applications processed by Plaintiff for 2006

EE.     Stokes Affidavit

FF.     Job description for underwriting technician and underwriting secretary Plaintiff's resume, letter of reference from previous employer and emails to human resources regarding u/w tech. promotion



EEOC Form 161-B (3/98)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To:   CERTIFIED MAIL NO: 7001-2510-0006-0606-8934 C/P <br><br> **Sakle Scott** <br><br> Calumet City, IL 60409 | From:   **Chicago District Office** <br> **500 West Madison St** <br> **Suite 2800** <br> **Chicago, IL 60661** |

☐    *On behalf of person(s) aggrieved whose identity is* <br>      *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2007-08184 | **Sylvia Bustos,** <br> **Investigator Support Asst** | **(312) 353-8783** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice;** or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

☐    More than 180 days have passed since the filing of this charge.

☒    Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒    The EEOC is terminating its processing of this charge.

☐    The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☒    The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐    The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u>** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*John P. Rowe (signature)*         12/11/07

Enclosures(s)                       **John P. Rowe,**           *(Date Mailed)*
                                 **District Director**

cc:      **ILLINOIS STATE MEDICAL INSURANCE SERVICES**

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 440-2007-08184 |

| Illinois Department Of Human Rights | | and EEOC |
|---|---|---|
| State or local Agency, if any | | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Ms. Sakie Scott** | **(708) ** | **12-20-1956** |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| - | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **ILLINOIS STATE MEDICAL INSURANCE SERVICES** | **201-500** | **(312) 782-2749** |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| **20 North Michigan Avenue, Chicago, IL 60602** | | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☐ RETALIATION   ☒ AGE   ☐ DISABILITY   ☐ OTHER *(Specify below.)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| **12-22-2006** | **07-03-2007** |
| ☐ CONTINUING ACTION | |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I began my employment with Respondent on July 1, 2004. My current position is Underwriter Secretary. During my employment, I have been subjected to harassment by my supervisor. Or about June 25, 2007, I applied for an Underwriting Technician position, but not selected.

I believe that I have been discriminated against because of my race, Black, and my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended. I also believe that I have been discriminated against because of my age, 50 (D.O.B. 12/20/1956), in violation of the Age Discrimination in Employment Act of 1967, as amended.

**RECEIVED EEOC**

**SEP 27 2007**

**CHICAGO DISTRICT OFC**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Sep 27, 2007         *(signature)* Date         Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |



# Illinois State Medical Society
## Illinois State Medical Insurance Services, Inc.
## Performance Evaluation Form
## Non-Supervisory

| | | | | |
|---|---|---|---|---|
| EMPLOYEE NAME | S. Scott | DATE | 7/18/05 | |
| CURRENT TITLE | U/W Secretary | DIVISION | C | |
| CURRENT STATUS | Non-Exempt | HIRE DATE | 6/16/04 | |
| EVALUATOR | L. Hutchinson | EVALUATION PERIOD | 12/04-6/05 | |

*To the evaluator:*

The above employee has received a Performance Self Evaluation Form and has been asked to submit an assessment of accomplishments and areas for improvement within two weeks. The employee self evaluation form is optional. However, any information the employee wishes to provide should be returned directly to you and submitted with the other portions of the evaluation.

Please complete all of the sections. If an item does not apply to an employee, indicate by checking the appropriate box. Feel free to attach additional information if necessary. In your evaluation, consider objectives achieved, quality of work, contributions to the company and any special knowledge or skills demonstrated by the employee during this evaluation period. Where the employee has failed to meet expectations, please be specific and include any supporting documents.

When the evaluation has been completed, please submit it to your Division Director or Vice President for the appropriate signatures. It will then be returned to you for discussion with the employee. After the evaluation has been discussed, reviewed and signed by the employee, it should be forwarded to the Office of Human Resources for processing.

*Definitions of Performance Levels:*

- **EXCEEDS EXPECTATIONS:** Exceptional performance maintained in key areas of accountability and consistently makes significant contributions above and beyond what is expected.

- **MEETS EXPECTATIONS:** Fully proficient performance in key areas of accountability.

- **DOES NOT MEET EXPECTATIONS:** Job performance deficient in most key areas of accountability.

When determining the appropriate performance level of the employee during the evaluation period, the phrase "key areas of accountability" is important. The evaluator takes into account:

1. Areas of responsibility and performance measures.

2. How the employee is rated against the criteria described in the evaluation form.

3. Other established objectives, activities or achievements for which the employee should be recognized.

## OBJECTIVES

Using the employee's previous performance evaluation or job description as a guide, list objectives and expected results. For each objective, check off the employee's performance level during this evaluation period. Please consider the employee's self evaluation when completing this section. Feel free to add as many objectives as necessary to accurately reflect the performance objectives of each employee.

PERFORMANCE LEVEL

| OBJECTIVES AND EXPECTED RESULTS: | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations |
|---|---|---|---|
| 1. Screens and distributes incoming new business applications; sets up computer record and underwriting file. Also processes incoming correspondence, including faxes and e-mails. Expectations are that accurate information is provided to staff in a timely fashion, correct data entry and an indepth knowledge of applicable computer programs. | ☐ | ☒ | ☐ |
| 2. Provides secretarial services to the AVP, Support; assists in the quarterly commission process. Expectations are professional phone etiquette, accurate typing and a solid knowledge of office procedures and equipment. | ☐ | ☒ | ☐ |
| 3. Processes request for loss histories and certificates of insurance. Expectations are a proper handling of these within the required timeframe. | ☐ | ☒ | ☐ |
| 4. Provides backup to the other secretaries if workload is heavy or a priority or in their absence. Expectations are good time management, organization and a positive attitude. | ☐ | ☒ | ☐ |
| 5. n/a | ☐ | ☐ | ☐ |
| 6. n/a | ☐ | ☐ | ☐ |
| 7. n/a | ☐ | ☐ | ☐ |



# KNOWLEDGE AND SKILLS ASSESSMENT

**A.**    **COMMUNICATION:** How well does the employee communicate with others both within the company and with other organizations? Check off the performance level and comment on the following applicable areas at the bottom of the page.

### PERFORMANCE LEVEL

| | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations | Not Applicable |
|---|---|---|---|---|
| writes clearly and concisely | ☐ | ☐ | ☐ | ☒ |
| communicates verbal information clearly and effectively | ☐ | ☒ | ☐ | ☐ |
| maintains ongoing communication with supervisor | ☐ | ☒ | ☐ | ☐ |
| maintains ongoing communication with others | ☐ | ☒ | ☐ | ☐ |
| maintains effective communication with other units within the company | ☐ | ☒ | ☐ | ☐ |
| listens effectively and follows work instructions | ☐ | ☒ | ☐ | ☐ |

Evaluator's Comments:



## KNOWLEDGE AND SKILLS ASSESSMENT

**B.    PROBLEM SOLVING:** How effective is the employee in identifying, analyzing and solving problems? Evaluate the employee's ability to reach logical conclusions based on the evidence available. Check off the performance level and comment on the following applicable areas at the bottom of the page.

### PERFORMANCE LEVEL

|  | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations | Not Applicable |
|---|---|---|---|---|
| identifies and diagnoses problems | ☐ | ☐ | ☐ | ☒ |
| considers all reasonable alternatives and develops effective solutions | ☐ | ☒ | ☐ | ☐ |
| analyzes and interprets data, integrating information from various sources, using the appropriate level of detail | ☐ | ☒ | ☐ | ☐ |
| uses practical procedures and knowledge to achieve objectives | ☐ | ☒ | ☐ | ☐ |

Evaluator's Comments:

4



## KNOWLEDGE AND SKILLS ASSESSMENT

**C.**    **TASK MANAGEMENT:** How effective is the employee in setting goals, establishing controls, and monitoring progress for himself/herself and work unit? Check off the performance level and comment on the following applicable areas at the bottom of the page.

### PERFORMANCE LEVEL

| | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations | Not Applicable |
|---|:---:|:---:|:---:|:---:|
| • works effectively on multiple assignments at the same time | ☐ | ☒ | ☐ | ☐ |
| • uses initiative and resourcefulness in achieving objectives | ☐ | ☐ | ☐ | ☒ |
| • uses all available resources effectively to achieve objectives | ☐ | ☒ | ☐ | ☐ |
| • produces quality work within established time frames | ☐ | ☐ | ☒ | ☐ |
| • produces expected quantity of work within established time frames | ☐ | ☒ | ☐ | ☐ |
| • exhibits flexibility under pressure | ☐ | ☒ | ☐ | ☐ |
| • works responsibly and independently with given supervision | ☐ | ☒ | ☐ | ☐ |

Evaluator's Comments:

The quality of Sakie's work (i.e. typing output and new business screening) has diminished during this review period. The quantity of work is still acceptable, but she needs to balance the work volume with the quality by double-checking and proofing more carefully.

## KNOWLEDGE AND SKILLS ASSESSMENT

**D.** **SERVICE:** How service-oriented is the employee? Does the employee effectively service internal and external contacts? Check off the performance level and comment on the following applicable areas at the bottom of the page. Please use the comment section to give your overall collective impression of service attitude, expressions of service activities and other service issues that you have.

### PERFORMANCE LEVEL

|  | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations | Not Applicable |
|---|---|---|---|---|
| maintains an approachable attitude and image | ☐ | ☒ | ☐ | ☐ |
| responds timely to written documentation and requests | ☐ | ☒ | ☐ | ☐ |
| responds timely to oral requests | ☐ | ☒ | ☐ | ☐ |
| actively follows up on service requests or referrals | ☐ | ☒ | ☐ | ☐ |
| patient and pleasant while assisting others | ☐ | ☒ | ☐ | ☐ |
| offers to "pitch in" and help others | ☐ | ☒ | ☐ | ☐ |
| able to offer suggestions and direct if unable to help | ☐ | ☐ | ☐ | ☒ |
| adherence to company policies | ☐ | ☒ | ☐ | ☐ |

Evaluator's Comments:

Sakie's attendence, personal calls and internet usage are acceptable; however, her punctuality needs improvement.

## OBJECTIVES FOR NEXT EVALUATION PERIOD

Using the job description and department goals as a guide, what specific projects, activities and results do you expect for the employee over the next evaluation period? Include specific areas for development. Also explain if the objectives as noted in the last evaluation have changed.

The objectives are the same from the last review.

## DEVELOPMENT

1.      What work related experiences, training or education did the employee complete during this evaluation period that you feel helped to develop his/her performance?

Not applicable at this time.

2.      What work related experiences, training or education do you feel would help the employee in his/her future job performance?

Sakie needs to concentrate on improving her time management and organizational skills. Also, she needs to proof her work consistently before she passes it along. To assist in improving her performance, she needs to develop a daily task schedule and adhere to it. Also, she will need to meet daily with me at 9 am, 11 am, 2 pm and 4 pm. to discuss her work issues.

*What work issues?*

## ADDITIONAL COMMENTS

Evaluator's Comments (Include items to be discussed during the evaluation that are not specifically included in previous parts of this evaluation):

I believe that Sakie can improve her performance.  She has a pleasant personality, but needs to focus more on her work and less on distractions on the floor.

Employee's Comments:

My evaluation was discussed with me:

_____ 1/26/05
                              Date

Approvals:

Jama C. Hutchinson  7/18/05
                        Date

_____ 7/25/05
                              Date

_____
                              Date

9

1.   Please rate yourself on the following areas and list any areas you feel need improvement:

   a) job knowledge:

   I feel that I have a working knowledge of the work assignments give to me.

   b) productivity & quality of work:

   I am able to ususally complete assignments on a daily basis.

   c) flexibility & response to working demands:

   I am flexible and able to adapt to any situation.

   d) working relations with others (include peers, supervisors, internal & external contacts):

   I feel that I have a very positive working relationship with my peers, supervisor and other contacts.

   e) adherence to company policies:

   I adhere to company policies to the best of my knowledge.

2.   What work-related experiences, training or education did you complete during this evaluation period that you feel helped to develop your performance?

   Organizational workshop. I feel this workshop enhanced my ability to keep things organized when working.

3.   What work-related experiences, training or education do you feel would help you in your future performance?

   More advanced knowledge of Excel, and review of other positions.

4.   What other performance matters would you like to share with your supervisor?

   It has been a real pleasure working with ISMIE. My co-workers have been extremely helpful during this past year in assisting me with different situations as they arise.



## Illinois State Medical Society
## Illinois State Medical Insurance Services, Inc.
## Performance Evaluation Form
## Non-Supervisory

| | | | | |
|---|---|---|---|---|
| EMPLOYEE NAME | S. Scott | DATE | 7/18/05 | |
| CURRENT TITLE | U/W Secretary | DIVISION | C | |
| CURRENT STATUS | Non-Exempt | HIRE DATE | 6/16/04 | |
| EVALUATOR | L. Hutchinson | EVALUATION PERIOD | 12/04-6/05 | |

*To the evaluator:*

The above employee has received a Performance Self Evaluation Form and has been asked to submit an assessment of accomplishments and areas for improvement within two weeks. The employee self evaluation form is optional. However, any information the employee wishes to provide should be returned directly to you and submitted with the other portions of the evaluation.

Please complete all of the sections. If an item does not apply to an employee, indicate by checking the appropriate box. Feel free to attach additional information if necessary. In your evaluation, consider objectives achieved, quality of work, contributions to the company and any special knowledge or skills demonstrated by the employee during this evaluation period. Where the employee has failed to meet expectations, please be specific and include any supporting documents.

When the evaluation has been completed, please submit it to your Division Director or Vice President for the appropriate signatures. It will then be returned to you for discussion with the employee. After the evaluation has been discussed, reviewed and signed by the employee, it should be forwarded to the Office of Human Resources for processing.

*Definitions of Performance Levels:*

- **EXCEEDS EXPECTATIONS:** Exceptional performance maintained in key areas of accountability and consistently makes significant contributions above and beyond what is expected.

- **MEETS EXPECTATIONS:** Fully proficient performance in key areas of accountability.

- **DOES NOT MEET EXPECTATIONS:** Job performance deficient in most key areas of accountability.

When determining the appropriate performance level of the employee during the evaluation period, the phrase "key areas of accountability" is important. The evaluator takes into account:

1.  Areas of responsibility and performance measures.

2.  How the employee is rated against the criteria described in the evaluation form.

3.  Other established objectives, activities or achievements for which the employee should be recognized.

# OBJECTIVES

Using the employee's previous performance evaluation or job description as a guide, list objectives and expected results.  For each objective, check off the employee's performance level during this evaluation period.  Please consider the employee's self evaluation when completing this section.  Feel free to add as many objectives as necessary to accurately reflect the performance objectives of each employee.

**PERFORMANCE LEVEL**

| OBJECTIVES AND EXPECTED RESULTS: | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations |
|---|---|---|---|
| 1.Screens and distributes incoming new business applications; sets up computer record and underwriting file.  Also processes incoming correspondence, including faxes and e-mails.  Expectations are that accurate information is provided to staff in a timely fashion, correct data entry and an indepth knowledge of applicable computer programs. | ☐ | ☒ | ☐ |
| 2.Provides secretarial services to the AVP, Support; assists in the quarterly commission process.  Expectations are professional phone etiquette, accurate typing and a solid knowledge of office procedures and equipment. | ☐ | ☒ | ☐ |
| 3.Processes request for loss histories and certificates of insurance.  Expectations are a proper handling of these within the required timeframe. | ☐ | ☒ | ☐ |
| 4.Provides backup to the other secretaries if workload is heavy or a priority or in their absence.  Expectations are good time management, organization and a positive attitude. | ☐ | ☒ | ☐ |
| 5.n/a | ☐ | ☐ | ☐ |
| 6.n/a | ☐ | ☐ | ☐ |
| 7.n/a | ☐ | ☐ | ☐ |

2

## KNOWLEDGE AND SKILLS ASSESSMENT

**A.**    **COMMUNICATION:** How well does the employee communicate with others both within the company and with other organizations? Check off the performance level and comment on the following applicable areas at the bottom of the page.

### PERFORMANCE LEVEL

|  | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations | Not Applicable |
|---|---|---|---|---|
| writes clearly and concisely | ☐ | ☐ | ☐ | ☒ |
| communicates verbal information clearly and effectively | ☐ | ☒ | ☐ | ☐ |
| maintains ongoing communication with supervisor | ☐ | ☒ | ☐ | ☐ |
| maintains ongoing communication with others | ☐ | ☒ | ☐ | ☐ |
| maintains effective communication with other units within the company | ☐ | ☒ | ☐ | ☐ |
| listens effectively and follows work instructions | ☐ | ☒ | ☐ | ☐ |

Evaluator's Comments:

## KNOWLEDGE AND SKILLS ASSESSMENT

**B.**     **PROBLEM SOLVING:** How effective is the employee in identifying, analyzing and solving problems? Evaluate the employee's ability to reach logical conclusions based on the evidence available. Check off the performance level and comment on the following applicable areas at the bottom of the page.

### PERFORMANCE LEVEL

|  | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations | Not Applicable |
|---|:---:|:---:|:---:|:---:|
| • identifies and diagnoses problems | ☐ | ☐ | ☐ | ☒ |
| • considers all reasonable alternatives and develops effective solutions | ☐ | ☒ | ☐ | ☐ |
| • analyzes and interprets data, integrating information from various sources, using the appropriate level of detail | ☐ | ☒ | ☐ | ☐ |
| • uses practical procedures and knowledge to achieve objectives | ☐ | ☒ | ☐ | ☐ |

Evaluator's Comments:

4

## KNOWLEDGE AND SKILLS ASSESSMENT

**C.**    **TASK MANAGEMENT:**  How effective is the employee in setting goals, establishing controls, and monitoring progress for himself/herself and work unit?  Check off the performance level and comment on the following applicable areas at the bottom of the page.

### PERFORMANCE LEVEL

|  | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations | Not Applicable |
|---|:---:|:---:|:---:|:---:|
| works effectively on multiple assignments at the same time | ☐ | ☒ | ☐ | ☐ |
| uses initiative and resourcefulness in achieving objectives | ☐ | ☐ | ☐ | ☒ |
| uses all available resources effectively to achieve objectives | ☐ | ☒ | ☐ | ☐ |
| produces quality work within established time frames | ☐ | ☐ | ☒ | ☐ |
| produces expected quantity of work within established time frames | ☐ | ☒ | ☐ | ☐ |
| exhibits flexibility under pressure | ☐ | ☒ | ☐ | ☐ |
| works responsibly and independently with given supervision | ☐ | ☒ | ☐ | ☐ |

Evaluator's Comments:

The quality of Sakie's work (i.e. typing output and new business screening) has diminished during this review period.  The quantity of work is still acceptable, but she needs to balance the work volume with the quality by double-checking and proofing more carefully.


## KNOWLEDGE AND SKILLS ASSESSMENT

**D.**     **SERVICE:** How service-oriented is the employee? Does the employee effectively service internal and external contacts? Check off the performance level and comment on the following applicable areas at the bottom of the page. Please use the comment section to give your overall collective impression of service attitude, expressions of service activities and other service issues that you have.

### PERFORMANCE LEVEL

| | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations | Not Applicable |
|---|:---:|:---:|:---:|:---:|
| maintains an approachable attitude and image | ☐ | ☒ | ☐ | ☐ |
| responds timely to written documentation and requests | ☐ | ☒ | ☐ | ☐ |
| responds timely to oral requests | ☐ | ☒ | ☐ | ☐ |
| actively follows up on service requests or referrals | ☐ | ☒ | ☐ | ☐ |
| patient and pleasant while assisting others | ☐ | ☒ | ☐ | ☐ |
| offers to "pitch in" and help others | ☐ | ☒ | ☐ | ☐ |
| able to offer suggestions and direct if unable to help | ☐ | ☐ | ☐ | ☒ |
| adherence to company policies | ☐ | ☒ | ☐ | ☐ |

Evaluator's Comments:

Sakie's attendence, personal calls and internet usage are acceptable; however, her punctuality needs improvement.

6

## OBJECTIVES FOR NEXT EVALUATION PERIOD

Using the job description and department goals as a guide, what specific projects, activities and results do you expect for the employee over the next evaluation period? Include specific areas for development. Also explain if the objectives as noted in the last evaluation have changed.

The objectives are the same from the last review.

## DEVELOPMENT

1.    What work related experiences, training or education did the employee complete during this evaluation period that you feel helped to develop his/her performance?

Not applicable at this time.

2.    What work related experiences, training or education do you feel would help the employee in his/her future job performance?

Sakie needs to concentrate on improving her time management and organizational skills. Also, she needs to proof her work consistently before she passes it along. To assist in improving her performance, she needs to develop a daily task schedule and adhere to it. Also, she will need to meet daily with me at 9 am, 11 am, 2 pm and 4 pm. to discuss her work issues.

*What work issues?*

## ADDITIONAL COMMENTS

Evaluator's Comments (Include items to be discussed during the evaluation that are not specifically included in previous parts of this evaluation):

I believe that Sakie can improve her performance.  She has a pleasant personality, but needs to focus more on her work and less on distractions on the floor.

Employee's Comments:

My evaluation was discussed with me:

_____ 1/26/05
                                   Date

Approvals:

_Jana C. Hutchinson_ 7/18/05
                       Date

_____ 7/25/05
                                   Date

_____
                                   Date

9

# Illinois State Medical Society
## Illinois State Medical Insurance Services, Inc.
### Employee Self Evaluation Form

NAME — Sakie Scott

TITLE — UW Secretary

DIVISION — C

DATE — 06/14/05

EVALUATION PERIOD — 07/01/05

EVALUATOR — Laura Hutchinson

*To the employee:*

The performance evaluation takes place when you and your supervisor discuss your job and how you are doing.

### THIS SELF EVALUATION IS OPTIONAL

If you choose to complete this evaluation, return it to your supervisor by: _____ . Your supervisor is also completing a form, and during your appraisal interview, both evaluations will be discussed.

☐ Please check here if you do not wish to complete this evaluation. Sign below and return to your supervisor by the date indicated above.

Signature _____    Date _____

*ACCOMPLISHMENTS/AREAS FOR DEVELOPMENT:*

Using your job responsibilities and objectives established within your division, please describe your accomplishments and contributions to your division and the company during this evaluation period. What were the expected results? To what extent did you exceed, meet or not meet the expected results? Also describe specific areas of performance that you would like to develop.

1.    Please rate yourself on the following areas and list any areas you feel need improvement:

a) job knowledge:

I feel that I have a working knowledge of the work assignments give to me.

b) productivity & quality of work:

I am able to ususally complete assignments on a daily basis.

c)  flexibility & response to working demands:

I am flexible and able to adapt to any situation.

d)  working relations with others (include peers, supervisors, internal & external contacts):

I feel that I have a very positive working relationship with my peers, supervisor and other contacts.

e)  adherence to company policies:

I adhere to company policies to the best of my knowledge.

2.    What work-related experiences, training or education did you complete during this evaluation period that you feel helped to develop your performance?

Organizational workshop.  I feel this workshop enhanced my ability to keep things organized when working.

3.    What work-related experiences, training or education do you feel would help you in your future performance?

More advanced knowledge of Excel, and review of other positions.

4.    What other performance matters would you like to share with your supervisor?

It has been a real pleasure working with ISMIE.  My co-workers have been extremely helpful during this past year in assisting me with different situations as they arise.

## POSITION DESCRIPTION

## ILLINOIS STATE MEDICAL SOCIETY

**Position Title:**     Underwriting Secretary

**Status:**     Non-Exempt

**Division:**     Underwriting

**Reports to:**     Underwriting ~~Supervisor~~ Manager or Support ~~Supervisor~~ AVP, as determined

## Basic Function

To provide secretarial support services to the Underwriting Division.

## Specific Position Responsibilities

- Provides support services to the Underwriting Staff which includes telephone backup, word processing, photocopying, faxing and preparation of clinic proposal folders and look up of proposal physician information.
- Enter group profiles for the submission.
- Screens and processes Claim History and Certificates of Insurance requests for policyholders.
- Screens new business applications, incoming correspondence and Underwriting Profile Update forms; copies applications for mailing with policy documents.
- Accepting simple new business applications and mailing documents.
- Distributes computer output, processes requests for new business kits and other informational materials and handles Certificate of Mailing letters.
- Maintains inventory of division's supplies and prepares purchase orders.
- Establishes and maintains broker identification information for applicable policy computer records and underwriting files.
- Enters policyholder data into the computer system (e.g., rate sheets, action requests).
- Provides quality service to policyholders and staff.
- Additional duties and responsibilities as required.

## Internal Contacts

Finance, File Room, Information Systems, Claims, Mail Room, Print Shop and ISMS Membership.

Job Description subject to continuous changes



# Illinois State Medical Society
## Illinois State Medical Insurance Services, Inc.
## Performance Evaluation Form
## Non-Supervisory

| | | | |
|---|---|---|---|
| EMPLOYEE NAME | Sakie A. Scott | DATE | 8/4/06 |
| CURRENT TITLE | U/W Secretary | DIVISION | C |
| CURRENT STATUS | Non-Exempt | HIRE DATE | ~~6/16/04~~ 7/1/04 |
| EVALUATOR | L. Hutchinson | EVALUATION PERIOD | 7/05-7/06 |

*To the evaluator:*

The above employee has received a Performance Self Evaluation Form and has been asked to submit an assessment of accomplishments and areas for improvement within two weeks. The employee self evaluation form is optional. However, any information the employee wishes to provide should be returned directly to you and submitted with the other portions of the evaluation.

Please complete all of the sections. If an item does not apply to an employee, indicate by checking the appropriate box. Feel free to attach additional information if necessary. In your evaluation, consider objectives achieved, quality of work, contributions to the company and any special knowledge or skills demonstrated by the employee during this evaluation period. Where the employee has failed to meet expectations, please be specific and include any supporting documents.

When the evaluation has been completed, please submit it to your Division Director or Vice President for the appropriate signatures. It will then be returned to you for discussion with the employee. After the evaluation has been discussed, reviewed and signed by the employee, it should be forwarded to the Office of Human Resources for processing.

*Definitions of Performance Levels:*

- **EXCEEDS EXPECTATIONS:** Exceptional performance maintained in key areas of accountability and consistently makes significant contributions above and beyond what is expected.

- **MEETS EXPECTATIONS:** Fully proficient performance in key areas of accountability.

- **DOES NOT MEET EXPECTATIONS:** Job performance deficient in most key areas of accountability.

When determining the appropriate performance level of the employee during the evaluation period, the phrase "key areas of accountability" is important. The evaluator takes into account:

1. Areas of responsibility and performance measures.

2. How the employee is rated against the criteria described in the evaluation form.

3. Other established objectives, activities or achievements for which the employee should be recognized.

# OBJECTIVES

Using the employee's previous performance evaluation or job description as a guide, list objectives and expected results. For each objective, check off the employee's performance level during this evaluation period. Please consider the employee's self evaluation when completing this section. Feel free to add as many objectives as necessary to accurately reflect the performance objectives of each employee.

**PERFORMANCE LEVEL**

| OBJECTIVES AND EXPECTED RESULTS: | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations |
|---|---|---|---|
| 1.Screens and distributes incoming new business applications; sets up computer records and underwriting files. Also, responsible for maintaining the division's supply of new business kits. Expectations are that accurate information is provided to staff in a timely manner, correct data entry and an indepth knowledge of applicable computer programs. | ☐ | ☒ | ☐ |
| 2.Provides secretarial services to the AVP, Support; assists in the quarterly commission process. Expectations include accurate typing, solid knowledge of office procedures and equipment and a professional telephone style. | ☐ | ☒ | ☐ |
| 3.Processes requests for loss history letters on cancelled policies. Expectations are a proper handling of these within the required timeframe. | ☐ | ☒ | ☐ |
| 4.Provides backup to the other secretaries if workload is heavy or a priority or in their absence. The main area of responsibility is incoming correspondence. Expectations include good time management, organization and a positive attitude. | ☐ | ☒ | ☐ |
| 5.N/A | ☐ | ☐ | ☐ |
| 6.N/A | ☐ | ☐ | ☐ |
| 7.N/A | ☐ | ☐ | ☐ |

2

## KNOWLEDGE AND SKILLS ASSESSMENT

A.   **COMMUNICATION:**  How well does the employee communicate with others both within the company and with other organizations?  Check off the performance level and comment on the following applicable areas at the bottom of the page.

**PERFORMANCE LEVEL**

|  | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations | Not Applicable |
|---|---|---|---|---|
| • writes clearly and concisely | ☐ | ☒ | ☐ | ☐ |
| • communicates verbal information clearly and effectively | ☐ | ☒ | ☐ | ☐ |
| • maintains ongoing communication with supervisor | ☐ | ☒ | ☐ | ☐ |
| • maintains ongoing communication with others | ☐ | ☒ | ☐ | ☐ |
| • maintains effective communication with other units within the company | ☐ | ☒ | ☐ | ☐ |
| • listens effectively and follows work instructions | ☐ | ☒ | ☐ | ☐ |

Evaluator's Comments:

Numerous informal verbal communications should be part of her daily routine.



## KNOWLEDGE AND SKILLS ASSESSMENT

**B.**     **PROBLEM SOLVING:** How effective is the employee in identifying, analyzing and solving problems? Evaluate the employee's ability to reach logical conclusions based on the evidence available. Check off the performance level and comment on the following applicable areas at the bottom of the page.

### PERFORMANCE LEVEL

|  | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations | Not Applicable |
|---|:---:|:---:|:---:|:---:|
| • identifies and diagnoses problems | ☐ | ☒ | ☐ | ☐ |
| • considers all reasonable alternatives and develops effective solutions | ☐ | ☒ | ☐ | ☐ |
| • analyzes and interprets data, integrating information from various sources, using the appropriate level of detail | ☐ | ☒ | ☐ | ☐ |
| • uses practical procedures and knowledge to achieve objectives | ☐ | ☒ | ☐ | ☐ |

Evaluator's Comments:

In addition to asking questions, Sakie needs to make recommendations regarding issues that come up.

## KNOWLEDGE AND SKILLS ASSESSMENT

**C.**    **TASK MANAGEMENT:** How effective is the employee in setting goals, establishing controls, and monitoring progress for himself/herself and work unit? Check off the performance level and comment on the following applicable areas at the bottom of the page.

### PERFORMANCE LEVEL

| | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations | Not Applicable |
|---|---|---|---|---|
| works effectively on multiple assignments at the same time | ☐ | ☒ | ☐ | ☐ |
| uses initiative and resourcefulness in achieving objectives | ☐ | ☒ | ☐ | ☐ |
| uses all available resources effectively to achieve objectives | ☐ | ☒ | ☐ | ☐ |
| produces quality work within established time frames | ☐ | ☐ | ☒ | ☐ |
| produces expected quantity of work within established time frames | ☐ | ☒ | ☐ | ☐ |
| exhibits flexibility under pressure | ☐ | ☒ | ☐ | ☐ |
| works responsibly and independently with given supervision | ☐ | ☒ | ☐ | ☐ |

Evaluator's Comments:

The quality of Sakie's work still needs more improvement. She needs to proof and double check each item she works on consistently so that it becomes part of her normal routine. Reducing social distractions would help in this regard. The volume of work Sakie produces is acceptable.

# KNOWLEDGE AND SKILLS ASSESSMENT

D.    **SERVICE:** How service-oriented is the employee? Does the employee effectively service internal and external contacts? Check off the performance level and comment on the following applicable areas at the bottom of the page. Please use the comment section to give your overall collective impression of service attitude, expressions of service activities and other service issues that you have.

## PERFORMANCE LEVEL

|  | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations | Not Applicable |
|---|---|---|---|---|
| maintains an approachable attitude and image | ☐ | ☒ | ☐ | ☐ |
| responds timely to written documentation and requests | ☐ | ☒ | ☐ | ☐ |
| responds timely to oral requests | ☐ | ☒ | ☐ | ☐ |
| actively follows up on service requests or referrals | ☐ | ☒ | ☐ | ☐ |
| patient and pleasant while assisting others | ☐ | ☒ | ☐ | ☐ |
| offers to "pitch in" and help others | ☐ | ☒ | ☐ | ☐ |
| able to offer suggestions and direct if unable to help | ☐ | ☒ | ☐ | ☐ |
| adherence to company policies | ☐ | ☒ | ☐ | ☐ |

Evaluator's Comments:

Sakie's attendance, personal calls and internet usage remain acceptable and her punctuality has improved.

6

## OBJECTIVES FOR NEXT EVALUATION PERIOD

Using the job description and department goals as a guide, what specific projects, activities and results do you expect for the employee over the next evaluation period? Include specific areas for development. Also explain if the objectives as noted in the last evaluation have changed.

The objectives have remained the same.

## DEVELOPMENT

1.      What work related experiences, training or education did the employee complete during this evaluation period that you feel helped to develop his/her performance?

Not applicable at this time.

2.      What work related experiences, training or education do you feel would help the employee in his/her future job performance?

Sakie needs to avoid distractions and concentrate on the work in front of her. I suggest that she reorganize her cubicle and Microsoft In Box to help her in this area. Also, the transition to Imaging should help Sakie's performance over the next year.

## ADDITIONAL COMMENTS

Evaluator's Comments (Include items to be discussed during the evaluation that are not specifically included in previous parts of this evaluation):

Sakie participated in the preparation of Underwriting files for back scanning for the past several months and continues to do so, helping the Division stay on its timetable for implementation.

I believe that Sakie has the ability to improve her performance. She needs to stay focused on the tasks at hand.

Employee's Comments:

My evaluation was discussed with me: _8/16/06_

_____
Date

Approvals:

_Larna C. Hutchinson_ _8/4/06_
_____
Date

_____
Date

_8/14/06_
_____
Date

9

**Illinois State Medical Society**
**Illinois State Medical Insurance Services, Inc.**
**Employee Self Evaluation Form**

NAME _Sahie Scott_     DATE _6/2/06_

TITLE _Secretary_     EVALUATION PERIOD _7/1/06_

DIVISION _C_     EVALUATOR _L. Hutchinson_

*To the employee:*

The performance evaluation takes place when you and your supervisor discuss your job and how you are doing.

### THIS SELF EVALUATION IS OPTIONAL

If you choose to complete this evaluation, return it to your supervisor by: _____ . Your supervisor is also completing a form, and during your appraisal interview, both evaluations will be discussed.

[X] Please check here if you do not wish to complete this evaluation. Sign below and return to your supervisor by the date indicated above.

Signature _Sahie Scott_     Date _6/2/06_

*ACCOMPLISHMENTS/AREAS FOR DEVELOPMENT:*

Using your job responsibilities and objectives established within your division, please describe your accomplishments and contributions to your division and the company during this evaluation period. What were the expected results? To what extent did you exceed, meet or not meet the expected results? Also describe specific areas of performance that you would like to develop.



1.     Please rate yourself on the following areas and list any areas you feel need improvement:

       a) job knowledge:

       b) productivity & quality of work:

       c) flexibility & response to working demands:

       d) working relations with others (include peers, supervisors, internal & external contacts):

       e) adherence to company policies:

2.     What work-related experiences, training or education did you complete during this evaluation period that you feel helped to develop your performance?

3.     What work-related experiences, training or education do you feel would help you in your future performance?

4.     What other performance matters would you like to share with your supervisor?

## POSITION DESCRIPTION

### ILLINOIS STATE MEDICAL SOCIETY

**Position Title:**     Underwriting Secretary

**Status:**     Non-Exempt

**Division:**     Underwriting

**Reports to:**     AVP, Support

### Basic Function

To provide secretarial support services to the Underwriting Division.

### Specific Position Responsibilities

- Provides support services to the Underwriting Staff which includes telephone backup, word processing, photocopying, and faxing.
- Screens and processes Loss History and Certificates of Insurance requests for policyholders.
- Screens new business applications, incoming correspondence and Underwriting Profile Update forms; copies applications for mailing with policy documents.
- Distributes computer output, processes requests for new business kits and other informational materials and handles Certificate of Mailing letters.
- Maintains inventory of division's supplies and prepares purchase orders.
- Investigates and processes returned mail.
- Enters policyholder data into the computer system (e.g., rate sheets).
- Provides quality service to policyholders and staff.
- Additional duties and responsibilities as required.

### Internal Contacts

Finance, File Room, Information Systems, Claims, Mail Room, Print Shop and ISMS Membership.

### External Contacts

Illinois Department of Professional Regulations, hospitals, physicians and their office staff, county medical societies and managed care entities.

### Desirable Qualifications and Experience

High school diploma. Accurate typing, word processing and spreadsheet skills required. Excellent organization and communication skills with professional telephone demeanor. Detail-oriented individual. Experience with data entry and windows based computer systems. One to two years secretarial and/or customer service experience. Team player, hardworking, flexible, and willingness to pitch in.

**From: Sakie A. Scott**
**To:    ISMIE Human Resources**
**Date: December 14, 2006**
**Re:    Complaint regarding Ms. Hutchinson (Hereinafter referred to as "Hutchinson")**

September 20, 2005 – Turned in application for position of Underwriting Technician.

Oct. , 11, 2006 -  I was supposed to interview with Hutchinson and Coghlan, but the interview was cancelled without notice.  I was granted the interview by Hutchinson and Coghlan the following week without notice or time to prepare.  I was notified by Human Resources (Christine Majerik), on October 24, 2006  that I did not get the position.

Feb. 15, 2006 – Called Brenda Cowens desk looking for me.  I was in the restroom (10:30 a.m.) Hutchinson was waiting for me at my desk at 10:40 a.m. when I was returning from restroom.

February 22, 2006- Turned in application for position of CSR (claims)

Feb. 23, 2006-Asked me to come into her office.  She stated that I come to her office 4-5 times a day. (Harassment)

Feb. 24, 2006 – Interviewed with Chris Majerik  for CSR position

Feb. 24th – Met with Christine Renfrow

March 1st- Turned down for position

March 1, 2006 – Called Carol at 9:30 am looking for me when I was in the restroom.

Mar 5, 2006 – Received an anonymous phone call that Hutchinson blocked my transfer.

March 31, 2006 – Called into office to state that I should keep coming to her office 4 times a day.

March 27, 2006 – turned down for claims representative which I was more than qualified for. Interviewed with Christine Renfrow and Kelly Kehoe.

From 07/01/05 – 05/25/06 – Nothing said regarding my socializing.

One week prior to my evaluation in August 2006, I processed 564 loss history letters which indicates how much work I can generate in the department in a matter of 2 days, yet my evaluations always contradict this fact.

August 24, 2006- I was returning to my desk from going to the restroom when I caught Keith Evans and Willet Welch coming out of my cubicle.  When I inquired about the nature of their



being in my cubicle, Ms. Welch told me that they were not in my office. I asked Ms. Hutchinson if I could speak with her before the end of day. At approximately 11:30, we had the conversation and I told her that I caught Keith Evans and Willet Welch coming out of my cubicle. She explained to me that she would ask Evans about the incident. At approximately 3:45 pm, Hutchinson called me into her office and to my surprise told me that Evans' response was that he was not in my cubicle. When I explained to her that I actually saw them, nothing else was said regarding the matter. I left the office feeling as though I was totally dismissed.

On Nov 22, 2006, at 4:00 pm, I was called into Hutchinson's office. She asked me to close the door and sit down. She proceeded to tell me that someone had come into her office and told her that I was talking too loud and that they couldn't perform their job duties all during the day. I asked what she was talking about. She stated that she had spoken to me several times about socializing. Prior to this discussion, I hadn't been advised of a socializing problem since August 24, 2006 during my evaluation. Hutchins stated that she was not stationed in my area, therefore, she couldn't hear me if this were true. Again, I explained to her that I was not talking to anyone and that I was stationed at my desk except for the conversation that Robin and I had at my desk regarding decorations for department. Further, I asked her if this were true wouldn't someone else have complained way before 4:10pm that evening. I was told that she would be watching me for the next couple of weeks.

After leaving the office I suffered an angina attack and I was ill for the entire Thanksgiving Day weekend. On Monday, November 27, 2006, I went to the doctor for a check-up because of the angina attack. I was given a prescription of Xanax for future occurrences. I am a heart patient and cannot be subjected to such episodes of harassment and treated in such an inhuman manner.

Dec. 11, 2006, Attended a unit luncheon at Gibson steakhouse. After the luncheon, I was called into Ms. Hutchinson's office. She asked me to close the door. Once seated she asked me what I had ordered for lunch. I explained to her that I ordered a "surf and turf" which consisted of a steak and medallion. No appetizer and no dessert. She asked me if I knew how much it cost and I explained to her that I only reviewed the menu for the meal and not the price. She informed me of the price of $92 and asked me if I had looked around to see what everyone else had ordered. She stated to me that that was the reason that she had the conversation with us during a meeting on Thursday not to order two entrees. I explained to her that I had only ordered one entrée which was the "surf and turf". I was reprimanded for ordering this dish, when it was clearly stated at the meeting to order what we wanted. She then asked me if I ate all of my food and I replied yes. I offered to pay for the difference between my meal and the other meals. I also explained to her that others had ordered appetizers, and desserts that couldn't have been that much more than my meal. I departed from her office without further word.

During the Prepping Project, everyone with the exception of me, was able to work overtime during their lunch. During the last few weeks, Hutchinson finally approved me to work some hours during prepping time. (Date)???

Others aware of the harassment that I have gone through include: All of the Technicians, U/W secretaries and some Underwriters.

## Scott Sakie

**From:**   Scott Sakie

**Sent:**   Tuesday, January 16, 2007 8:41 AM

**To:**   Gentile-Karas Donna

**Subject:** Investigation regarding complaint against L. Hutchinson filed on Dec 22, 2006

Hi Donna, thank you for the response regarding the above matter. At your convenience, I would like to get a copy of the results on this investigation.   Thank you.

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL  60602
(312) 853-1617
(312) 782-2023 FAX

---

**From:** Gentile-Karas Donna
**Sent:** Thursday, January 11, 2007 11:20 AM
**To:** Scott Sakie
**Cc:** Allphin Alan; Role Diana
**Subject:** Investigation

Hello Sakie,
As per your request, I have investigated your claim of harassment. As you are aware, the Company takes the matter of harassment very seriously and has a zero-tolerance policy in regards to it. As such, the compiled results of the investigation find that no evidence of harassment can be identified at this time.

Should you have any questions please feel free to call me at extension 2375.

Donna Gentile-Karas
Assistant Vice President, Human Resources
Illinois State Medical Insurance Services, Inc.
phone :(312) 551-2375
fax: (312) 782-2850

Chicago, IL 60602
(312) 853-1617
(312) 782-2023 FAX

---

**From:** Gentile-Karas Donna
**Sent:** Thursday, January 11, 2007 11:20 AM
**To:** Scott Sakie
**Cc:** Allphin Alan; Role Diana
**Subject:** Investigation

Hello Sakie,

As per your request, I have investigated your claim of harassment. As you are aware, the Company takes the matter of harassment very seriously and has a zero-tolerance policy in regards to it. As such, the compiled results of the investigation find that no evidence of harassment can be identified at this time.

Should you have any questions please feel free to call me at extension 2375.

Donna Gentile-Karas
Assistant Vice President, Human Resources
Illinois State Medical Insurance Services, Inc.
phone :(312) 551-2375
fax: (312) 782-2850

SUMMATION:  I feel as though I am being discriminated againstby L. Hutchinson in the Underwriting department.  I also feel that Ms. Hutchinson has blocked my opportunity to advance or transfer to other positions at ISMIE, and that this will continue to be the case in the future as long as I am under her supervision.  I am talked at rather than spoken to in most situations that I have to deal Ms. Hutchinson.

Claims Representative – I have been a Certified Paralegal in the areas of Real Estate, Corporate Law, and Probate law for the over 20 years and I feel that I was more than qualified for both of the positions that became available at the aforementioned time.



# Illinois State Medical Society
# Illinois State Medical Insurance Services, Inc.
## Performance Evaluation Form
## Non-Supervisory

| | | | |
|---|---|---|---|
| EMPLOYEE NAME | Sakie A. Scott | DATE | 7/6/07 |
| CURRENT TITLE | U/W Secretary | DIVISION | C |
| CURRENT STATUS | Non-Exempt | HIRE DATE | 7/1/04 |
| EVALUATOR | L. Hutchinson | EVALUATION PERIOD | 7/06-7/07 |

*To the evaluator:*

The above employee has received a Performance Self Evaluation Form and has been asked to submit an assessment of accomplishments and areas for improvement within two weeks. The employee self evaluation form is optional. However, any information the employee wishes to provide should be returned directly to you and submitted with the other portions of the evaluation.

Please complete all of the sections. If an item does not apply to an employee, indicate by checking the appropriate box. Feel free to attach additional information if necessary. In your evaluation, consider objectives achieved, quality of work, contributions to the company and any special knowledge or skills demonstrated by the employee during this evaluation period. Where the employee has failed to meet expectations, please be specific and include any supporting documents.

When the evaluation has been completed, please submit it to your Division Director or Vice President for the appropriate signatures. It will then be returned to you for discussion with the employee. After the evaluation has been discussed, reviewed and signed by the employee, it should be forwarded to the Office of Human Resources for processing.

*Definitions of Performance Levels:*

- **EXCEEDS EXPECTATIONS:** Exceptional performance maintained in key areas of accountability and consistently makes significant contributions above and beyond what is expected.

- **MEETS EXPECTATIONS:** Fully proficient performance in key areas of accountability.

- **DOES NOT MEET EXPECTATIONS:** Job performance deficient in most key areas of accountability.

When determining the appropriate performance level of the employee during the evaluation period, the phrase "key areas of accountability" is important. The evaluator takes into account:

1. Areas of responsibility and performance measures.

2. How the employee is rated against the criteria described in the evaluation form.

3. Other established objectives, activities or achievements for which the employee should be recognized.

# OBJECTIVES

Using the employee's previous performance evaluation or job description as a guide, list objectives and expected results. For each objective, check off the employee's performance level during this evaluation period. Please consider the employee's self evaluation when completing this section. Feel free to add as many objectives as necessary to accurately reflect the performance objectives of each employee.

**PERFORMANCE LEVEL**

| OBJECTIVES AND EXPECTED RESULTS: | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations |
|---|---|---|---|
| 1.Screens and distributes incoming new business applications and submissions. Also responsible for entering information from iMIS and maintaining the division's supply of new business kits. Expectations include accurate information provided to staff in a timely manner, correct data entry in PUMA and proper use of ImageRight work flow procedure. | ☐ | ☒ | ☐ |
| 2.Provides daily secretarial services to the AVP, Support; assists in the quarterly commission process. Expectations include accurate typing and proofing, solid knowledge of office procedures and equipment and a professional telephone style. | ☐ | ☐ | ☒ |
| 3.Processes requests for loss history letters on cancelled policies. Expectations are a proper handling of these requests within the required time frame. | ☐ | ☒ | ☐ |
| 4.Provides backup to the other secretaries if the workload is heavy or in their absence. The main area of responsibility is incoming mail, renewal applications and part-time audits. Expectations are good time management, organization and a positive attitude. | ☐ | ☒ | ☐ |
| 5.n/a | ☐ | ☐ | ☐ |
| 6.n/a | ☐ | ☐ | ☐ |
| 7.n/a | ☐ | ☐ | ☐ |

2

## KNOWLEDGE AND SKILLS ASSESSMENT

A.   **COMMUNICATION:**  How well does the employee communicate with others both within the company and with other organizations?  Check off the performance level and comment on the following applicable areas at the bottom of the page.

### PERFORMANCE LEVEL

|  | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations | Not Applicable |
|---|:---:|:---:|:---:|:---:|
| • writes clearly and concisely | ☐ | ☒ | ☐ | ☐ |
| • communicates verbal information clearly and effectively | ☐ | ☒ | ☐ | ☐ |
| • maintains ongoing communication with supervisor | ☐ | ☐ | ☒ | ☐ |
| • maintains ongoing communication with others | ☐ | ☒ | ☐ | ☐ |
| • maintains effective communication with other units within the company | ☐ | ☒ | ☐ | ☐ |
| • listens effectively and follows work instructions | ☐ | ☒ | ☐ | ☐ |

Evaluator's Comments:

Numerous informal verbal communications have not become part of Sakie's daily routine, as was requested in last year's review.

3

## KNOWLEDGE AND SKILLS ASSESSMENT

**B.**     **PROBLEM SOLVING:** How effective is the employee in identifying, analyzing and solving problems? Evaluate the employee's ability to reach logical conclusions based on the evidence available. Check off the performance level and comment on the following applicable areas at the bottom of the page.

### PERFORMANCE LEVEL

|  | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations | Not Applicable |
|---|---|---|---|---|
| • identifies and diagnoses problems | ☐ | ☒ | ☐ | ☐ |
| • considers all reasonable alternatives and develops effective solutions | ☐ | ☒ | ☐ | ☐ |
| • analyzes and interprets data, integrating information from various sources, using the appropriate level of detail | ☐ | ☒ | ☐ | ☐ |
| • uses practical procedures and knowledge to achieve objectives | ☐ | ☒ | ☐ | ☐ |

Evaluator's Comments:



## KNOWLEDGE AND SKILLS ASSESSMENT

**C.**    **TASK MANAGEMENT:** How effective is the employee in setting goals, establishing controls, and monitoring progress for himself/herself and work unit? Check off the performance level and comment on the following applicable areas at the bottom of the page.

### PERFORMANCE LEVEL

|  | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations | Not Applicable |
|---|---|---|---|---|
| works effectively on multiple assignments at the same time | ☐ | ☒ | ☐ | ☐ |
| uses initiative and resourcefulness in achieving objectives | ☐ | ☒ | ☐ | ☐ |
| uses all available resources effectively to achieve objectives | ☐ | ☒ | ☐ | ☐ |
| produces quality work within established time frames | ☐ | ☐ | ☒ | ☐ |
| produces expected quantity of work within established time frames | ☐ | ☒ | ☐ | ☐ |
| exhibits flexibility under pressure | ☐ | ☒ | ☐ | ☐ |
| works responsibly and independently with given supervision | ☐ | ☒ | ☐ | ☐ |

Evaluator's Comments:

The quality of Sakie's work in the area of secretarial support has not improved over last year. As previously stated, she needed to consistently proof and double check each item she worked on, so that it became part of her normal routine. However, it has been noted that she has reduced the social distractions around her. Also, her volume of work is acceptable.

## KNOWLEDGE AND SKILLS ASSESSMENT

**D.**    **SERVICE:** How service-oriented is the employee?  Does the employee effectively service internal and external contacts?  Check off the performance level and comment on the following applicable areas at the bottom of the page.  Please use the comment section to give your overall collective impression of service attitude, expressions of service activities and other service issues that you have.

### PERFORMANCE LEVEL

|  | Exceeds Expectations | Meets Expectations | Does Not Meet Expectations | Not Applicable |
|---|---|---|---|---|
| maintains an approachable attitude and image | ☐ | ☒ | ☐ | ☐ |
| responds timely to written documentation and requests | ☐ | ☒ | ☐ | ☐ |
| responds timely to oral requests | ☐ | ☒ | ☐ | ☐ |
| actively follows up on service requests or referrals | ☐ | ☒ | ☐ | ☐ |
| patient and pleasant while assisting others | ☐ | ☒ | ☐ | ☐ |
| offers to "pitch in" and help others | ☐ | ☒ | ☐ | ☐ |
| able to offer suggestions and direct if unable to help | ☐ | ☒ | ☐ | ☐ |
| adherence to company policies | ☐ | ☒ | ☐ | ☐ |

Evaluator's Comments:    *Carol backup*

Sakie performs her backup duties (i.e. indexing the mail, renewal applications and part-time audits) well and in a timely manner.  Also, she does pitch in to assist her co-worker in processing requests for loss histories on active policies.

There are two items though that Sakie does need to address.  The first is reading and/or responding to e-mails and voice mails quickly.  The other issue is to remain logged onto her computer programs until the end of each work day.

## OBJECTIVES FOR NEXT EVALUATION PERIOD

Using the job description and department goals as a guide, what specific projects, activities and results do you expect for the employee over the next evaluation period? Include specific areas for development. Also explain if the objectives as noted in the last evaluation have changed.

The objectives on this review are the same as last year's.

## DEVELOPMENT

1.  What work related experiences, training or education did the employee complete during this evaluation period that you feel helped to develop his/her performance?

2.  What work related experiences, training or education do you feel would help the employee in his/her future job performance? *addition of duties*

To provide Sakie with an opportunity to improve her job performance, some of her responsibilities will be adjusted. She will 1) process requests for loss histories and Certificates of Insurance on active policies; 2) order and maintain the division's office supplies; 3) learn the procedure for indexing all incoming requests for loss histories. Other changes may be implemented after training on items 2 and 3 have been completed. Lastly, she will no longer be responsible for providing secretarial services to the AVP, Support.

*cant justify*

7

## ADDITIONAL COMMENTS

Evaluator's Comments (Include items to be discussed during the evaluation that are not specifically included in previous parts of this evaluation):

As stated last year, Sakie posseses the abilities to improve her performance by focusing on her daily tasks. Hopefully her new work assignments will provide the opportunity to do better.

Employee's Comments:

My evaluation was discussed with me:

_____
_____ Date
7/12/07

W/ Rebuttal
forthcoming

Approvals:

_____ LCH _____ 7/6/07 _____
                           Date

_____
                           Date

_____ AM _____ 7/6/07 _____
                           Date

# PERSONNEL ACTION REPORT

☐ HIRE                 ☐ POSITION CHANGE              ☐ TERMINATION

☒ SALARY CHANGE        ☐ PROMOTION                   ☐ RESIGNATION

---

EMPLOYEE NAME:   Sakie A. Scott                    EMPLOYEE #:   10343

DIVISION:   C          PRESENT TITLE:   Underwriting Secretary

                       NEW TITLE:

                       STATUS:    ☐ EXEMPT      ☒ NON-EXEMPT

| | |
|---|---|
| HIRE DATE:   7/1/04 | |
| CURRENT REVIEW DATE: | 7/1/07 |
| CURRENT ANNUAL SALARY: | $35,300. |
| RECOMMENDED $ INCREASE: | $ 1,000.    RECOMMENDED % INCREASE:   2.8 |
| NEW ANNUAL SALARY: | $36,300. |
| EFFECTIVE DATE: | 7/1/07 |
| NEXT REVIEW DATE: | 7/1/08 |

- For Payroll Use Only -

Current Semi     $

New Semi         $

Difference       $

APPROVED:   _LcH_____  7/6/07
                         DATE:
            _mn_____  7/6/07
                         DATE:

- Human Resources Use Only -
☐ EVP
☐ SIGNATURES
☐ SYSTEM & REVIEW LIST
☐ SALARY LIST
☐ ACTION
☐ PAYROLL
☐ FILE
☐ MEMO
☐ JOB DESCRIPTION
☐ INSURANCE (IF APPLICABLE)
   NEW MED. AMT. _____   NEW DENT. AMT. _____

CC: ☐ AVP,HR
    ☐ HRS

REV: 4/2004





**MANAGERS OF THE ISMIE MUTUAL INSURANCE COMPANY**

June 20, 2007

Dear Sakie:

Thank you for expressing your interest in the Underwriting Tech position. However, we have selected another candidate for this position.

Sincerely,

Chris Majerik
Human Resources Specialist



**Illinois State Medical Society    Illinois State Medical Insurance Services, Inc.**
**ISMIE Mutual Insurance Company**

## NOTICE OF CORRECTIVE ACTION

**Name:**  Sakie A. Scott                                    **Division:**   C

**Job Title:**   Underwriting Secretary                      **Date:**

---

**Corrective Action Taken:**
☒ Warning
☐ Probation
☐ Termination

**Performance or behavior in need of correction:**
Since 07/19/07, Sakie has been absent 3 days, has arrived late on 6 days and has left work early on 3 days.
Sakie has zero sick time, .75 personal time and 14 hours vacation time remaining until 1/1/08.

**Action required to correct this performance or behavior:**
Sakie needs to end her unscheduled time off as it is burdensome to the other support staff who must cover her work when she is not here.  Also, Sakie needs to understand that if she uses all her earned time off, future absenteeism will require further disciplinary action.

**Employee Explanation:**

---

**Employee Signature:** _____    **Date:** _____
                    (Acknowledges receipt of corrective action, but does not necessarily indicate agreement)

**Supervisor Signature:** _____    **Date:** _____

**Signature:** _____    **Date:** _____
        **Division Vice President**

**Signature:** _____    **Date:** _____
        **Assistant Vice President,  Human Resources**

        original = Human Resources          copy = employee          copy = Immediate Supervisor



Illinois State Medical Society    Illinois State Medical Insurance Services, Inc.
ISMIE Mutual Insurance Company

## NOTICE OF CORRECTIVE ACTION

**Name:**  Sakie A. Scott                          **Division:**  C

**Job Title:**  Underwriting Secretary             **Date:**  11/05/07

**Corrective Action Taken:**
- ☐ Warning
- ☒ Probation
- ☐ Termination

**Performance or behavior in need of correction:**
Excessive absenteeism - employee has utilized all of her personal, sick and vacation days and has no available days through 01/01/08.  Company policies attached.

**Action required to correct this performance or behavior:**
Cannot be late, leave early or take time off for any reason, other than company scheduled holidays, between now and 01/01/08.  Further absenteeism is subject to disciplinary action, including termination of employment.

**Employee Explanation:**


**Employee Signature:** _____    **Date:** _____
(Acknowledges receipt of corrective action, but does not necessarily indicate agreement)

**Supervisor Signature:** _Laura L. Hutchinson_    **Date:** 11/5/07

**Signature:** _____    **Date:** 11/5/07
Division Vice President

**Signature:** _____    **Date:** 11/5/07
Assistant Vice President, Human Resources

original = Human Resources          copy = employee          copy = Immediate Supervisor

Sakie refused to sign probation document.
She has a copy.    Jacinth E. Stakes.

**Scott Sakie**

| | |
|---|---|
| **From:** | Hutchinson Laura |
| **Sent:** | Thursday, November 01, 2007 3:26 PM |
| **To:** | Scott Sakie |
| **Subject:** | RE: REVISED:  FW: UNPAID DAY |

Sakie, you are correct regarding unpaid time off.
I don't believe we have a company policy that would allow you to do what you propose.
However, I will check with Human Resources and get back to you.

Laura C. Hutchinson
**Assistant Vice President, Underwriting**
**ISMIE Mutual Insurance Company**
312.580.6458 (Direct)
312.782.2023 (Fax)

**From:** Scott Sakie
**Sent:** Thursday, November 01, 2007 10:43 AM
**To:** Hutchinson Laura
**Subject:** REVISED: FW: UNPAID DAY

LAURA, I UNDERSTAND WE CAN'T TAKE UNPAID TIME OFF.
NEW REQUEST, I WOULD LIKE TO COME IN EARLY/AND OR LEAVE LATER OR SKIP LUNCH IF WORK PERMITS,
(WITH A VERIFICATION BY EMAIL TO YOU), TO ACCUMULATE TIME TAKEN FOR NOVEMBER 21, 2007.  THANK
YOU.

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL  60602
(312) 853-1617
(312) 782-2023 FAX

**From:** Scott Sakie
**Sent:** Thursday, November 01, 2007 8:54 AM
**To:** Hutchinson Laura
**Subject:** UNPAID DAY

LAURA, I WILL NEED TO TAKE OFF ON WEDNESDAY, NOVEMBER 21, 2007 FOR AN UNPAID DAY.

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL  60602
(312) 853-1617
(312) 782-2023 FAX

**Illinois State Medical Insurance Services**
**ISMIE Mutual Insurance Company**
**Illinois State Medical Society**
**Personnel Record As of**
**10/31/2007**

**Employee #:** 10343
**Name:** Sakie A Scott
**Title:** UW Secretary
**Address1:** 669 Clyde Avenue
**Address2:** #2N
**City:** Calumet City
**State:** IL
**Zip:** 60409
**Contact:** Lena Powell
*Aunt* (708)868-8919
**Marital Status:** Married
**Spouse name:** Gregory Scott
**Full (F,4,3,O):** FULL TIME
**Exempt (E/N):** NON-EXEMPT
**Years Employed:** 3

**Division:** Underwriting
**Phone Number:** (708)539-8253
**2nd Phone Number:**
**Cell Phone Number:** (708)539-4204
**Home Email:** sakiescott@hotmail.com

**Hire Date:** 7/1/2004
**Review Date:** 7/1/2008
**Earn Date:** 7/1/2004

| Insurance Type | Insurance Carrier | Effective Date | Coverage |
|---|---|---|---|
| Health & MM: | UNICARE HMO | 8/1/2004 | D - Dependent |
| Dental: | AMERITAS | 8/1/2004 | D - Dependent |
| Grp Life & Acc: | LINCOLN FINANCIAL | 8/1/2004 | |
| Vol. Life: | | | |
| Short Term Dis: | SELF-INSURED | 7/1/2005 | |
| Long Term Dis: | LINCOLN FINANCIAL | 7/1/2005 | |

### Retirement Plan

**Entry Date:** 8/1/2005     **Vested Date:** 7/1/2007     **Percent Vested:** 100.00%

**Short Term Dis Used:** 0
**Paid Absence Used:** 3.75
**Exempt Overtime:** 0
**Year To Date Vacation Loss:** 0
**Vacation Loss Total:** 0

| | Last YR Balance | Current Earned | Total Earned | Current Used | Balance |
|---|---|---|---|---|---|
| **Holidays:** | 0.00 | 37.50 | 37.50 | 37.50 | 0.00 |
| **Personal:** | 0.00 | 45.00 | 45.00 | 45.00 | 0.00 |
| **Sick Hours:** | 0.00 | 60.00 | 60.00 | 60.00 | 0.00 |
| **Vacation** | 0.00 | 112.50 | 112.50 | 112.50 | 0.00 |

*Right here*

*not excessive*



| INDEX: | IV-5 | PAGE: | 1 of 2 |
|---|---|---|---|
| SECTION: | EMPLOYMENT | EFFECTIVE: | February 1, 2003 |
| SUBJECT: | PROGRESSIVE DISCIPLINE / PROBATION/TERMINATION | REVISED: | |

## POLICY:

All employees shall be expected to comply with the standards of work performance and personal conduct and behavior while employed by the Company. It is the policy of the Company that any conduct in its view that results in unsatisfactory work performance or interferes with or adversely affects employment is grounds for disciplinary action ranging from verbal/written warnings to immediate discharge. Depending on the conduct, disciplinary steps may be enforced by the following methods: verbal/written warnings, probation, and/or termination. To that end the Company has installed a system of progressive discipline. Progressive discipline is a means for changing unsatisfactory work performance, conduct or behavior, and for motivating and encouraging employees who demonstrate difficulty in following the standards of the Company.

## PROCEDURES:

1. Corrective action generally follows the course outlined herein. Factors that may be considered in ascertaining the appropriate steps are the seriousness of the offense and prior corrective measures imposed.

   - **Warning:** Any deficiency or negative action on the employee's part should be discussed with such employee and documented in writing.

   - **Probation:** A period of time to be determined on a case by case basis in which an employee's deficiency or negative action will be closely monitored and evaluated. Further disciplinary action may be taken during this period if improvement is not forthcoming, up to and including termination. If an employee's annual evaluation comes due during a probation period, the evaluation and corresponding pay increase, if any, shall be delayed until the employee successfully completes the probation period. Any pay increase **shall not** be retroactive but rather, shall be effective with start of the pay period immediately following the post-probation period.

     Probation shall also be appropriate when an employee receives between 25% and 49% of "Does Not Meet Expectations" on their Performance Evaluation or if at any time a Supervisor feels that an employee's work performance is unsatisfactory. Probation requires the approval of the division vice president.

   - **Termination:**

     (a) In the event the employee has not corrected the deficiency or negative action following a probation, he or she may be subject to termination of employment.

     (b) In addition, an employee may be terminated immediately, as a result of, unsatisfactory work performance or for behavior which management deems



**Scott Sakie**

| | |
|---|---|
| **From:** | Scott Sakie |
| **Sent:** | Monday, December 03, 2007 11:24 AM |
| **To:** | Gentile-Karas Donna |
| **Subject:** | Working Environment |

Dear Donna,

I feel that I have been placed in a hostile work environment. On Friday, I was four minutes tardy and confronted by Laura Hutchinson before I arrived at my desk requesting that I send her an email of my arrival time. Since I have been placed on probation, I feel that I have been placed under unwarranted stress by "constant surveillance". No one in this company is scrutinized to this level. I am suffering from stress related angina and sometimes find it difficult to breath comfortably without feeling the pressure in my chest. I am a heart patient that has undergone double bypass surgery and cannot be subjected to this type of work environment. I am not going to take off anytime because I do value my job, but just felt that you should be aware of the situation that is being created. I do not feel this behavior is warranted in that there have been no violations been made as far as the accusation made on my "probation document" that was written up on November 5, 2007.

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL  60602
(312) 853-1617
(312) 782-2023 FAX



**Illinois State Medical Society**    **Illinois State Medical Insurance Services, Inc.**
**ISMIE Mutual Insurance Company**

## NOTICE OF CORRECTIVE ACTION

Name:  Sakie A. Scott                                    Division:   C

Job Title:  Underwriting Secretary                      Date:   01/14/08

---

**Corrective Action Taken:**
☒ Warning
☐ Probation
☐ Termination

**Performance or behavior in need of correction:**
Since October, 2007, Sakie has made 21 errors in the screening and/or setup of New Business applications and submissions and 8 errors in the processing of loss history requests.

**Action required to correct this performance or behavior:**
Sakie needs to follow policies and procedures; seek clarification from her supervisor if she is unsure of proper handling. She should carefully review each piece of work that she processes so that it is correct before she releases it. Further errors may result in additional disciplinary action up to and including termination.

**Employee Explanation:**

---

Employee Signature: _____    Date: _____
(Acknowledges receipt of corrective action, but does not necessarily indicate agreement)

Supervisor Signature: _Anna C. Hutchinson_    Date: _1/14/08_

Signature: _____    Date: _1/14/08_
        **Division Vice President**

Signature: _____    Date: _1/14/08_
        **Assistant Vice President, Human Resources**

original = Human Resources        copy = employee        copy = Immediate Supervisor

*Sakie has stated that she is not allowed to sign any documents. I am signing as a witness to her receiving this.  Jacob Storm*

# MEMORANDUM

**DATE:**     January 11, 2008

**FROM:**     Laura C. Hutchinson
Assistant Vice President, Underwriting
ISMIE Mutual Insurance Company

**RE:**       SAKIE SCOTT
Errors in the screening and setup of new business applications and
submissions and errors in the processing of loss history requests which
have resulted in unsatisfactory work performance and has adversely
impacted the work of underwriters and the functioning and
productivity of the Underwriting Division.

| | DATE ERROR DISCOVERED | ERROR |
|---|---|---|
| 1 | 10/15/07 | Two batches of loss history letters were put into the File Room bin without the yellow sheets filled out. |
| 2 | 10/15/07 | Sean brought to my attention a loss history error on # 61578, Dr. Didluch. |
| 3 | 10/17/07 | New Business error on Dr. Khaja # 64519 *Willett* |
| 4 | 10/19/07 | New Business error on Dr. Ahn # 03567 *Jacinth* |
| 5 | 11/1/07 | Loss History error on Dr. Rohail #26969 *OK* |
| 6 | 11/1/07 | New Business error on Irma Mendez, CRNA |
| 7 | 11/02/07 | Loss History error on Dr. Kirby #64707 |
| 8 | 11/02/07 | BOR work flow error |
| 9 | 11/12/07 | New business error on Dr. Castro #64820 *Tanya* |
| 10 | 11/13/07 | Loss History error on Dr. Sayeed #41372 |
| 11 | 11/13/07 | Loss History error on Dr. Lancilotti |
| 12 | 11/15/07 | New Business error on Dr. Sher *Tanya* |
| 13 | 12/03/07 | New Business error on Dr. Barkin – pharmacist #64866 *Brenda* |
| 14 | 12/04/07 | New Business error on Dr. Ravishankar #21973 *Jacinth* |
| 15 | 12/05/07 | Loss History error on Dr. Kreinbring #58971 |
| 16 | 12/05/07 | New business error on Dr. Peart #64836 *JON* |
| 17 | 12/05/07 | New Business error on Dr. Dominquez – optometrist #64864 *NO DOCTOR* |
| 18 | 12/06/07 | New business errors on Dr. Stokes #64871 *NO Note* |
| 19 | 12/06/07 | New business errors on Jennifer McBride-Schultz, CRNA #64864 *NO SUCH number* |
| 20 | 12/07/07 | ImageRight error on Dr. Cave #63230 *NOT RESPONSIBLE for this* |
| 21 | 12/12/07 | New Business error on Irma Mendez, CRNA #64891 |
| 22 | 12/13/07 | New Business error on Dr. Rana #60620 *TANYA* |
| 23 | 12/13/07 | New Business error on Chicago Anesthesia Associates |

| | DATE ERROR DISCOVERED | ERROR |
|---|---|---|
| | | #64893  *TANYA* |
| 24 | 12/14/07 | New Business error on Dr. Khoransani #64899  *TANYA* |
| 25 | 12/14/07 | New Business error on Dr. Candido #64900  *TANYA* |
| 26 | 12/17/07 | New Business error on Dr. Gorelik #64777  *Willet* |
| 27 | 12/18/07 | Loss History error on Dr. Schrier #41908 |
| 28 | 12/18/07 | Loss History error on Dr. Behr #59321 |
| 29 | 12/27/07 | New Business error on Dr. Flores #56853  *TANYA* |
| 30 | 12/27/07 | New Business #57511 was received December 21, 2007 at 3pm and not processed as of 12/27/07 at 9:50am; e-mail was sent indicating that this was a priority; was not completed until 4pm |
| 31 | 12/28/07 | New Business error on Dr. DeCastro #08403  *TANYA NOT* |
| 32 | 12/28/07 | New Business error on Pamela Edelmuth, CRNA #64916  *NEW BIZ* |
| 33 | 12/28/07 | Did not put the new ISMIE Mutual supplies away which were delivered 12/21/07; Did not get rid of old letterhead from cubicles;  *BILL ASSISTED* Did not order new supplies; Did not hand in her weekly activity log or advise what was pending at her desk prior to 10 day vacation;  *processed* 25 loss history letters were left out on her printer – constitutes a violation of HIPPAA policy. |
| 34 | 1/07/08 | New Business error on Dr. DeBacker #13962 |

*See 12/18/07*

*email*

## Scott Sakie

**From:** Scott Sakie
**Sent:** Friday, October 19, 2007 11:22 AM
**To:** Stokes Jacinth
**Cc:** Hutchinson Laura
**Subject:** RE: New Business - 03567 Charles S. Ahn, MD

No I don't usually check all of this information unless it's New Business since it is coming from the Underwriter or Tech. Please advise on future occurrences.

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL 60602
(312) 853-1617
(312) 782-2023 FAX

---

**From:** Stokes Jacinth
**Sent:** Friday, October 19, 2007 11:20 AM
**To:** Scott Sakie
**Cc:** Hutchinson Laura
**Subject:** New Business - 03567 Charles S. Ahn, MD

Sakie,

I am in the process of reviewing the above captioned New Business Application. This policy number was reinitialized but the applicant's middle initial, birth date and social security number is not that of the reinitialized policy. Are these data elements not normally double-checked before old policy numbers are reinitialized? If not, we should get it added to the list of items that the NB screener should verify.

I will send the task back to you for correction.

Thanks.
Jacinth

*Jacinth E. Stokes*
*Underwriting Support Manager*
*ISMIE Mutual Insurance Company*
*20 N. Michigan Avenue*
*Chicago, IL 60602*
*(312) 580-2498*
*(312) 782-2023 (Fax)*

## Scott Sakie

**From:** Scott Sakie
**Sent:** Friday, October 19, 2007 3:42 PM
**To:** Hutchinson Laura
**Subject:** RE: New Business - 03567 Charles S. Ahn, MD

Okay.

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL  60602
(312) 853-1617
(312) 782-2023 FAX

---

**From:** Hutchinson Laura
**Sent:** Friday, October 19, 2007 3:22 PM
**To:** Stokes Jacinth; Scott Sakie
**Subject:** RE: New Business - 03567 Charles S. Ahn, MD

We will need to discuss this on Monday.

Laura C. Hutchinson
Assistant Vice President, Underwriting
ISMIE Mutual Insurance Company
312.580.6458 (Direct)
312.782.2023 (Fax)

---

**From:** Stokes Jacinth
**Sent:** Friday, October 19, 2007 12:11 PM
**To:** Scott Sakie
**Cc:** Hutchinson Laura
**Subject:** RE: New Business - 03567 Charles S. Ahn, MD

We should still get together this afternoon and discuss the process of what is checked in the screening process. The tech would be concentrating on the right side of the rating worksheet and the actual application. I caught as soon as I started reviewing the app.

Thanks.

## Jacinth

**From:** Scott Sakie
**Sent:** Friday, October 19, 2007 11:38 AM
**To:** Stokes Jacinth
**Cc:** Hutchinson Laura
**Subject:** RE: New Business - 03567 Charles S. Ahn, MD

I just discovered that this was a New Business not re-initialization.   The middle initial got past all of us.  Therefore Policy #03567 should be declined as set up in error.

Sakie Aneshia Scott
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL  60602
(312) 853-1617
(312) 782-2023 FAX

---

**From:** Stokes Jacinth
**Sent:** Friday, October 19, 2007 11:20 AM
**To:** Scott Sakie
**Cc:** Hutchinson Laura
**Subject:** New Business - 03567 Charles S. Ahn, MD

Sakie,

I am in the process of reviewing the above captioned New Business Application.  This policy number was reinitialized but the applicant's middle initial, birth date and social security number is not that of the reinitialized policy.  Are these data elements not normally double-checked before old policy numbers are reinitialized?  If not, we should get it added to the list of items that the NB screener should verify.

I will send the task back to you for correction.

Thanks.
Jacinth

*Jacinth E. Stokes*
*Underwriting Support Manager*
*ISMIE Mutual Insurance Company*
*20 N. Michigan Avenue*
*Chicago, IL  60602*
*(312) 580-2498*
*(312) 782-2023 (Fax)*

**Argyris Spero**

| | |
|---|---|
| **From:** | Argyris Spero |
| **Sent:** | Tuesday, November 13, 2007 7:44 AM |
| **To:** | 'Renate.A.Bayer@marsh.com' |
| **Subject:** | RE: Eric D. Castro, M.D. #64820 (Joining EHC Physicians #23279) |

Renate,

It appears that Dr. Castro may be applying for a 2nd ISMIE policy in addition to th
he has in-force thru another group. There is also the possibility that he may also
retaining coverage for another ER practice activity insured with ERRG. Refer to Q #20 &
you'll see

Spero Argyr
Sr. Underwr
ISMIE Mutua
312-580-243

-----Origin
From: Renat
Sent: Monda
To: Argyris
Subject: Re

Spero,

I will inqu
please elab
regarding e

Thanks.

Renate

Jon, Policy 56402 was "IN FORCE" the Dr. Castro
when I set up a new number for him misreading his
social security. The broker submitted info to Laura
with information to accomodate this recent
application. Should I request to have the second
number declined and process as a "Reapp" or can we
keep the second number In Force. Since you are the
existing UW on 56402, if we are going to keep the
second number in force, I will need to have you
obtain a Mgr. approval. and have Laura decline the
second number. SCOTT 11/13/2007

Subject

Eric D. Castro, M.D. #64820
(Joining EHC Physicians #23279)

## Scott Sakie

**From:** Scott Sakie
**Sent:** Thursday, November 15, 2007 1:04 PM
**To:** Olson Jon
**Cc:** Hutchinson Laura
**Subject:** RE: N/B # 64820 - Dr. Castro

Jon:    I have created another task for Dr. Castro's application.  Please get approval for second number, if needed, and let me know the turnout.  Thank you.

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL  60602
(312) 853-1617
(312) 782-2023 FAX

---

**From:** Olson Jon
**Sent:** Thursday, November 15, 2007 1:01 PM
**To:** Scott Sakie
**Subject:** RE: N/B # 64820 - Dr. Castro

Sakie,

I see your note on the policy, but for some reason Spero has this now and appears to be handling the application. I can't get into his to do list to send it for approval, so maybe we can check with Spero when he gets back.

The second task is in Null and I can't get to it.

**Jon M. Olson**
**Underwriting Specialist**
**(312) 580-6492** Direct
**(312) 782-2023** Fax
**ISMIE Mutual Insurance Company**
**20 N. Michigan Avenue**
**Suite 700**
**Chicago, IL 60602**
**JonOlson@ismie.com**

IMPORTANT THIS E-MAIL IS INTENDED ONLY FOR THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY INFORMED THAT ANY USE, DISCLOSURE, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE OR E-MAIL AND CONFIRM THAT YOU HAVE PURGED THE MESSAGE FROM YOUR COMPUTER SYSTEMS AND DESTROYED ANY PAPER COPIES YOU MAY HAVE MADE. THANK YOU.

**From:** Scott Sakie
**Sent:** Thursday, November 15, 2007 12:57 PM
**To:** Olson Jon
**Cc:** Hutchinson Laura
**Subject:** RE: N/B # 64820 - Dr. Castro

Jon, I sent you the application with a post-it note attached explaining that you were the existing underwriter for policy number 56402 prior to the set up of #64820.   An approval was needed for the second number to be issued.  The reason the first number was not used is because the name was entered in a different manner.  I am forwarding the application back to you for a Mgr approval on second number.  Thank you.



**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL  60602
(312) 853-1617
(312) 782-2023 FAX

---

**From:** Olson Jon
**Sent:** Thursday, November 15, 2007 12:45 PM
**To:** Scott Sakie
**Subject:** RE: N/B # 64820 - Dr. Castro

This is in Spero's to do list.

11/15/2007

**Jon M. Olson**
**Underwriting Specialist**
**(312) 580-6492** Direct
**(312) 782-2023** Fax
**ISMIE Mutual Insurance Company**
**20 N. Michigan Avenue**
**Suite 700**
**Chicago, IL 60602**
**JonOlson@ismie.com**

IMPORTANT: THIS E-MAIL IS INTENDED ONLY FOR THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY INFORMED THAT ANY USE, DISCLOSURE, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE OR E-MAIL AND CONFIRM THAT YOU HAVE PURGED THE MESSAGE FROM YOUR COMPUTER SYSTEMS AND DESTROYED ANY PAPER COPIES YOU MAY HAVE MADE. THANK YOU.

---

**From:** Scott Sakie
**Sent:** Thursday, November 15, 2007 12:41 PM
**To:** Olson Jon
**Subject:** FW: N/B # 64820 - Dr. Castro

Jon: Can you please give me the status of this?

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL 60602
(312) 853-1617
(312) 782-2023 FAX

---

**From:** Hutchinson Laura
**Sent:** Thursday, November 15, 2007 11:46 AM
**To:** Scott Sakie
**Subject:** RE: N/B # 64820 - Dr. Castro

What is the status of this issue?

---

**From:** Scott Sakie
**Sent:** Tuesday, November 13, 2007 9:54 AM
**To:** Hutchinson Laura
**Subject:** RE: N/B # 64820 - Dr. Castro

The name and social security number are changed. I have sent a note to Jon asking him about the policy in force and I am awaiting his response. Will let you know as soon as I get word from Jon regarding whether to leave second policy in force or decline.

---

**From:** Hutchinson Laura

11/15/2007

**Sent:** Monday, November 12, 2007 4:36 PM
**To:** Scott Sakie
**Cc:** Argyris Spero
**Subject:** N/B # 64820 - Dr. Castro

Please see this doctor's PUMA record.
The first name and social security number were not entered correctly. Please fix this information.
Also, this doctor has coverage under # 56402, so you need to determine if he should have a second number assigned.
Let me know either way, as I have received mail from the broker for him.

## Scott Sakie

**From:** Hutchinson Laura
**Sent:** Thursday, November 15, 2007 11:46 AM
**To:** Scott Sakie
**Subject:** RE: N/B # 64820 - Dr. Castro

What is the status of this issue?

**From:** Scott Sakie
**Sent:** Tuesday, November 13, 2007 9:54 AM
**To:** Hutchinson Laura
**Subject:** RE: N/B # 64820 - Dr. Castro

The name and social security number are changed. I have sent a note to Jon asking him about the policy in force and I am awaiting his response. Will let you know as soon as I get word from Jon regarding whether to leave second policy in force or decline.

**From:** Hutchinson Laura
**Sent:** Monday, November 12, 2007 4:36 PM
**To:** Scott Sakie
**Cc:** Argyris Spero
**Subject:** N/B # 64820 - Dr. Castro

Please see this doctor's PUMA record.
The first name and social security number were not entered correctly. Please fix this information.
Also, this doctor has coverage under # 56402, so you need to determine if he should have a second number assigned.
Let me know either way, as I have received mail from the broker for him.

11/15/2007

**20 N. Michigan Avenue**
**Suite 700**
**Chicago, IL 60602**
**JonOlson@ismie.com**

IMPORTANT: THIS E-MAIL IS INTENDED ONLY FOR THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY INFORMED THAT ANY USE, DISCLOSURE, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE OR E-MAIL AND CONFIRM THAT YOU HAVE PURGED THE MESSAGE FROM YOUR COMPUTER SYSTEMS AND DESTROYED ANY PAPER COPIES YOU MAY HAVE MADE. THANK YOU.

**Sent:** Thursday, November 15, 2007 10:31 AM
**To:** Welch Willet
**Cc:** Stokes Jacinth; Olson Jon
**Subject:** RE: Zainab Sher, M.D. / 60833 - S364064

Willet, I don't see the task in Imageright. Please resend tasks.

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL 60602
(312) 853-1617
(312) 782-2023 FAX

---

**From:** Welch Willet
**Sent:** Thursday, November 15, 2007 10:20 AM
**To:** Scott Sakie
**Subject:** FW: Zainab Sher, M.D. / 60833 - S364064

Please let me know what the status of this is. Thank you.

---

**From:** Welch Willet
**Sent:** Tuesday, November 13, 2007 3:55 PM
**To:** Scott Sakie
**Cc:** Stokes Jacinth; Olson Jon
**Subject:** FW: Zainab Sher, M.D. / 60833 - S364064

FYI- Quote has been accepted.
Please set up information in PUMA and let me know when complete. Thank you.

---

**From:** Olson Jon
**Sent:** Tuesday, November 13, 2007 2:16 PM
**To:** Welch Willet
**Subject:** Zainab Sher, M.D. / 60833 - S364064

Willet,

This individual quote has been accepted.

**Jon M. Olson**
**Underwriting Specialist**
**(312) 580-6492** Direct
**(312) 782-2023** Fax
**ISMIE Mutual Insurance Company**
**20 N. Michigan Avenue**
**Suite 700**
**Chicago, IL 60602**
**JonOlson@ismie.com**

11/15/2007

**Scott Sakie**

| | |
|---|---|
| **From:** | Stokes Jacinth |
| **Sent:** | Tuesday, December 04, 2007 11:37 AM |
| **To:** | Scott Sakie |
| **Subject:** | RE: 21973 - Dr. Ravishankar |

No, I have not received it yet.

# Jacinth

---

**From:** Scott Sakie
**Sent:** Tuesday, December 04, 2007 10:34 AM
**To:** Stokes Jacinth
**Subject:** 21973 - Dr. Ravishankar

Did you get this in a task through "Manually Route"? Application "In Force".

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL 60602
(312) 853-1617
(312) 782-2023 FAX

1

**Scott Sakie**

| | |
|---|---|
| **From:** | Scott Sakie |
| **Sent:** | Thursday, December 27, 2007 4:06 PM |
| **To:** | Szatkowski Lawrence |
| **Subject:** | RE: 57511 |

KILL IT????????

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL  60602
(312) 853-1617
(312) 782-2023 FAX

---

**From:** Szatkowski Lawrence
**Sent:** Thursday, December 27, 2007 4:05 PM
**To:** Scott Sakie
**Subject:** RE: 57511

I have a task in submission, correct
You have a task in new biz, incorrect

Lawrence J. Szatkowski
Underwriting Specialist
ISMIE Mutual Insurance Co.
312-580-6469

---

**From:** Scott Sakle
**Sent:** Thursday, December 27, 2007 4:05 PM
**To:** Szatkowski Lawrence
**Subject:** RE: 57511

??????????????????????????????????

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL  60602
(312) 853-1617
(312) 782-2023 FAX

---

**From:** Szatkowski Lawrence
**Sent:** Thursday, December 27, 2007 4:04 PM
**To:** Scott Sakie

**Subject:** RE: 57511

End it

Lawrence J. Szatkowski
Underwriting Specialist
ISMIE Mutual Insurance Co.
312-580-6469

---

**From:** Scott Sakie
**Sent:** Thursday, December 27, 2007 4:02 PM
**To:** Szatkowski Lawrence
**Subject:** RE: 57511

Why is it in the new business workflow????

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL 60602
(312) 853-1617
(312) 782-2023 FAX

---

**From:** Szatkowski Lawrence
**Sent:** Thursday, December 27, 2007 4:02 PM
**To:** Scott Sakie
**Subject:** RE: 57511

I have it as a submission which is correct. I do not know what you have

Lawrence J. Szatkowski
Underwriting Specialist
ISMIE Mutual Insurance Co.
312-580-6469

---

**From:** Scott Sakie
**Sent:** Thursday, December 27, 2007 1:40 PM
**To:** Cowens Brenda; Szatkowski Lawrence
**Subject:** 57511

Why do I have this back in new business?

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL 60602
(312) 853-1617
(312) 782-2023 FAX

SUBJECT: Response to LCH's Warner  DATE: 1/15/08

"Warner 1/14/08

1. Hutchinson has no proof of sheets
   not filled out; more than
   one person processing less hr ttrs

9. not my error - wrong # on prev off - email 4/12

#11. Change of procedure - not error

#12 Refer to Email 11/5/07 @ 10:31; not seen
    in system

#29. Question to Underwriter - not error

33. Pictures of other cubicles in
    violation of HIPAA (6 cubicles)

    Office Supplies form had no
    orders as listed by LCH

    Letterhead paper in boxes Printer
    could not elgt; Blake assisted

31. See email dated @ 11/2/07 @
    4:36 pm to Hutchinson; not
    my fault; previous error in data
    entry.

33. Email to Keith regarding
    Supplies those Hutchinson's

©STUART HALL CO., INC.

SUBJECT:

DATE:

33.

14.

states were not ordered

There was no error with
this policy: See email 12/4/07 a/185 ton

File Date:    _May 5, 2008_

Case No:    _08cv 1457_

ATTACHMENT #    _1_

EXHIBIT    _K through Q_

## TAB (DESCRIPTION)

_____



Illinois State Medical Society     Illinois State Medical Insurance Services, Inc.
ISMIE Mutual Insurance Company

## NOTICE OF CORRECTIVE ACTION

Name:  Sakie A. Scott                                    Division:  C

Job Title:  Underwriting Secretary                       Date:  01/14/08

**Corrective Action Taken:**
☒ Warning
☐ Probation
☐ Termination

**Performance or behavior in need of correction:**
Since July, 2007, Sakie has been tardy 13 times.

**Action required to correct this performance or behavior:**
Sakie needs to start work on time each day.  She is required to send an e-mail to her supervisor each day to confirm that she arrived on time. If an e-mail is not sent it is understood that she was tardy and it will be counted as such. Further tardiness may result in additional disciplinary action up to and including termination.

**Employee Explanation:**

Employee Signature: _____     Date: _____
(Acknowledges receipt of corrective action, but does not necessarily indicate agreement)

Supervisor Signature: _Kanna C. Hutchinson_     Date: _1/14/08_

Signature: _____     Date: _1/14/08_
Division Vice President

Signature: _____     Date: _1/14/08_
Assistant Vice President, Human Resources

original = Human Resources          copy = employee          copy = Immediate Supervisor

Sake has stated that she
is not allowed to sign this
document
    I am signing as a witness
to her receiving this.          Januth Som

**MEMORANDUM**

DATE:   January 11, 2008

FROM:   Laura C. Hutchinson
        Assistant Vice President, Underwriting
        ISMIE Mutual Insurance Company

RE:     SAKIE SCOTT (Start time: 8:15 am; End time: 4:30pm)
        Tardiness and leaving early which constitutes unsatisfactory work
        performance and behavior pursuant to the Company Progressive
        Discipline Policy.

*after '07 evaluation & EEOC complaint*

| | DATE | ACTION |
|---|---|---|
| 1 | 07/25/07 | Late arrival at 9:05 — *NO lunch* |
| 2 | 07/19/07 | Sakie requested to leave early - 3:30 pm — *NO lunch* |
| 3 | 07/27/07 | Sakie requested to leave early - 3:45 pm — *NO lunch* |
| 4 | 08/01/07 | Late arrival at 11:36 am — *Personal time — NO lunch* |
| 5 | 08/16/07 | Late arrival at 9:15 am — *NO lunch* |
| 6 | 08/28/07 | Sakie requested to leave early - 3:30 pm — *made up on lunch* |
| 7 | 08/30/07 | Late arrival at 8:45 am — *late 4:45 pm* |
| 8 | 09/05/07 | Late arrival at 9:50 am — *no lunch — stayed late* |
| 9 | 09/20/07 | Late arrival at 8:45 am — *NO lunch* |
| 10 | 0927/07 | Late arrival. Sakie requested 2 hours personal time for tomorrow 8:15 to 10:15 am Sakie arrived at 11:45 am instead of 10:15 am. *My accrued time* |
| 11 | 10/11/07 | Late arrival at 8:40 am — *made up lunch time* |
| 12 | 10/12/07 | Jacinth saw Sakie arrive at 8:40 am. I asked Sakie if she was late and she said that she was 10 minutes late not 25 minutes — *OK* |
| 13 | 10/18/07 | Late arrival at 9:15 am — *NO lunch* |
| 14 | 11/16/07 | Late arrival at 8:49 am — *NOT DOCUMENTED* |
| 15 | 11/30/07 | Late arrival at 8:20 am — *NOT DOCUMENTED* |
| 16 | 1/10/08 | Late arrival at 8:35 am — |

*BUS ticket turned IN*

*16*

# BEERMANN
# SWERDLOVE

LLP

ATTORNEYS

| | | | |
|---|---|---|---|
| Lawrence R. Barezky | Michael C. Craven | Herbert A. Kessel | Catherine M. Stone |
| Alvin R. Becker | Howard C. Emmerman | Howard A. London | Jacqueline J. Torshen |
| Miles N. Beermann | Thomas T. Field | Katarinna McBride | Shana L. Vitek |
| Erin J. Bognar | Lyle S. Genin | Maribeth Olenski | William Woloshin |
| Julie P. Brett | Katherine A. Grosh | Stefania Pialis | William A. Zolla II |
| Deane B. Brown | Kathryn L. Homburger | James M. Quigley | OF COUNSEL |
| Bradley T. Cheskes | Pamela J. Hutul | Stephanie G. Sadow | Nathan B. Swerdlove |

November 9, 2007

U.S. Equal Employment
 Opportunity Comission
500 West Madison Street
Suite 2800
Chicago, Illinois 60661

Attention:    Sylvia Bustos
              Investigator Support Assistant

Re:    EEOC Charge No. 440-2007-08184
       Complainant:  Sakie Scott
       Respondent:   Illinois State Medical Insurance Services

Dear Ms. Bustos:

The following is the Response of Illinois State Medical Insurance Services (**"ISMIS"**) to the Complainant, Sakie Scott's charge of employment discrimination on the basis of race and sex, in violation of Title VII of the Civil Rights Act of 1964, as amended and on the basis of age in violation of the Age Discrimination Act of 1967, as amended (the **"Charge"**).

## I.    POSITION OF ILLINOIS STATE MEDICAL INSURANCE SERVICES

ISMIS refutes the Charge made by Ms. Scott. Ms. Scott has not been subjected to any harassment by her supervisor nor has she been discriminated against on any basis. ISMIS has a Non Discrimination Policy that prohibits race, color, religion, sex, sexual orientation, age, national origin, and physical or mental disability unrelated to the individual's qualifications for the job from being used as the basis for any personnel decisions. (See ISMIS Non Discrimination Statement, Exh. 1, Exh. A). ISMIS also has a General/Sexual Harassment policy that further prohibits "hostile remarks or actions regarding employee race, color, religion, sex, age, national origin, or mental or physical disability." (See ISMIS General/Sexual Harassment Policy, Exh. 1, Exh. G). Pursuant to the General/Sexual Harassment Policy, ISMIS' Assistant Vice President for Human Resources, Donna Gentile-Karas conducted an investigation into the charge of discrimination made by Ms. Scott and determined that there was no evidence that Ms. Scott had been subjected to harassment by her supervisor. (Exh. 1, ¶¶ 13-18). Furthermore, there was no evidence to support that Ms. Scott was discriminated against in her application for the position of Underwriting Technician. (Exh. 2, Exh. 3, Exh. 4, Exh. 5). Ms. Gentile-Karas'

161 NORTH CLARK STREET · SUITE 2600 · CHICAGO, ILLINOIS 60601 · TELEPHONE (312)621-9700 · FACSIMILE (312)621-0909 · WWW.BEERMANNLAW.COM

1700 GREEN BAY ROAD · SUITE 200 · HIGHLAND PARK, ILLINOIS 60035 · TELEPHONE (847)681-9600 (BY APPOINTMENT ONLY)

RECEIVED EEOC
NOV 13 2007
CHICAGO DISTRICT OFC

# BEERMANN
# SWERDLOVE

### LLP

### ATTORNEYS

U.S. Equal Employment
Opportunity Comission
November 9, 2007
Page 2

investigation revealed that Ms. Scott has not been treated differently than other employees at ISMIS due to her age, gender or race. (Exh. 1 ¶¶ 13-18).

## II.    BACKGROUND FACTS

Ms. Scott was hired by Laura Hutchinson, an Assistant Vice President of Underwriting to fill the position of Underwriting Secretary in July 1, 2004 and to provide secretarial support for Ms. Hutchinson. Ms. Hutchinson has been Ms. Scott's direct supervisor since she began at ISMIS. (Exh. 1, Exh. B, Exh. 2 ¶4). The job responsibilities of Underwriting Secretary include the following:

(a)    Provide support services to the Underwriting Staff which includes telephone backup, word processing, photocopying, faxing, preparing clinical proposal folders and look up of proposal physician information

(b)    Enter group profiles for the submission;

(c)    Screen and process Claim History and Certificates of Insurance requests for policyholders;

(d)    Screen new business applications, incoming correspondence and Underwriting Profile Update forms, and copy applications for mailing with policy documents;

(e)    Accept simple new business applications and mailing documents;

(f)    Distribute computer output, process request for new business kits and other informational material and Certificate of Mailing letters;

(g)    Maintain inventory of division's supplies and prepare purchase orders;

(h)    Establish and maintain broker identification information for applicable policy computer records and underwriting files;

(i)    Enter policyholder data into the computer system (e.g. rate sheets, action requests;

(j)    Provide quality serve to policyholders and staff;

(k)    Additional duties and responsibilities as required.

(the "Underwriting Secretary Position Description"). (Exh. 1, Exh. C, and Exh. 2, Exh. A).

### A.    HISTORY OF SAKIE SCOTT PERFORMANCE AND INTERACTION WITH SUPERVISOR

There have been problems with the quality of Ms. Scott's work through-out her employment with ISMIS and on every performance review Ms. Scott did not meet expectations with respect to certain categories of her work as outlined in her Performance Evaluations in 2005, 2006 and 2007. (Exh. 1, Exh. D and Exh. 2, Exhs. B, C, E). There have also been issues with tardiness, excessive absenteeism, and various other issues set forth in Ms. Scott's Performance Evaluations in 2005, 2006, and 2007. *Id.* The ISMIS Progressive Disciplinary

# BEERMANN
# SWERDLOVE

### LLP

### ATTORNEYS

U.S. Equal Employment
Opportunity Comission
November 9, 2007
Page 3

Policy provides that "any conduct in its view that results in unsatisfactory work performance or interferes with or adversely affects employment is grounds for disciplinary action." (Exh. 1, Exh. E). The ISMIS Progressive Disciplinary Policy also provides that unsatisfactory work performance, excessive tardiness, and absenteeism are grounds for termination. *Id.*

Rather than pursue disciplinary measures pursuant to the ISMIS Progressive Disciplinary Policy, Ms. Hutchinson made recommendations and adjustments to Ms. Scott's duties to assist Ms. Scott in improving her work performance. (Exh. 1, Exh. D). For example, Ms. Hutchinson recommended that Ms. Scott develop a daily task schedule and adhere to it including meeting with Ms. Hutchinson daily at 9 am, 11 am, 2 pm and 4 pm to address work issues. Ms. Hutchinson recommended Ms. Scott reorganize her cubicle and Microsoft In Box to assist Ms. Scott in concentrating on her work. Furthermore, the Underwriting Division made a transition to imaging that should have further streamlined Ms. Scott's work. Finally, when prior recommendations and adjustments were unsuccessful, Ms. Hutchinson adjusted Ms. Scott's responsibilities so that Ms. Scott no longer had to provide secretarial support for Ms. Hutchinson, which reduced Ms. Scott's workload. (Exh. 2 ¶¶9-36).

On December 14, 2006, Ms. Scott made an internal complaint to Human Resources at ISMIS alleging that she was being harassed by her supervisor Ms. Hutchinson. (Exh. 1, Exh. F). At that time, the Assistant Vice President of ISMIS, Ms. Gentile-Karas conducted a thorough investigation of all allegations made by Ms. Scott. (Exh. 1 ¶¶13-18). As part of Ms. Gentile-Karas' investigation, she interviewed various individuals in the Underwriting Division, the Claims Division and all individuals identified in Ms. Scott's complaint. Ms. Gentile-Karas discovered no evidence to support any finding of harassment of discrimination against Ms. Scott by Ms. Hutchinson. (Exh. 1 ¶18).

Since Ms. Scott's internal complaint of harassment, Ms. Jacinth Stokes, the Underwriting Support Manager has participated in Ms. Scott's Performance Evaluation and any and all discussions with Ms. Scott regarding problems with the quality of her work. (Exh. 3). Additionally, Ms. Gentile-Karas has been consulted with and overseen any issues relating to Ms. Scott's employment. (Exh. 1).

### B. MS. SCOTT APPLICATIONS FOR OTHER POSITIONS AT ISMIS

Ms. Scott alleged in her complaint against Ms. Hutchinson that Ms. Hutchinson "blocked" her "transfer" to other positions at ISMIS. While employed with ISMIS, Ms. Scott has applied internally for three (3) positions: (1) Underwriting Technician on September 20, 2005; (2) Claims Service Representative on February 22, 2006; and (3) Underwriting Technician on June 29, 2007. All three positions would constitute promotions from Ms. Scott's current position. With respect to the two Underwriting Technician positions, Ms. Hutchinson was on a

# BEERMANN
# SWERDLOVE

LLP

ATTORNEYS

U.S. Equal Employment
Opportunity Comission
November 9, 2007
Page 4

selection team with three other individuals and with respect to the Claims Service Representative position, Ms. Hutchinson was not in any way part of the selection or hiring process. (Exh. 2, Exh. 3, Exh. 4, Exh. 5).

Ms. Scott was not selected for any of the positions for which she applied because all members of the selection teams in all three instances did not feel that Ms. Scott was the best-qualified person for those positions. In all three instances, the members of the selection teams were concerned about Ms. Scott's consistent performance problems as set forth in her Performance Evaluations. Moreover, with respect to positions for Underwriting Technician, during the interviews for both positions, Ms. Scott did not understand nor could she articulate the duties and responsibilities of the position. The members of the three different selection teams confirmed that age, gender nor race were discussed during the selection or interview process and did not factor into the selection process. With respect to the most recent application submitted by Ms. Scott for the position of Underwriting Technician, the final recommendation was made by Sheila Coghlan, another Assistant Vice President in Underwriting. (Exh. 2, Exh. 3, Exh. 4, Exh. 5).

There was no factual basis to support Ms. Scott's allegations that any of the decisions not to promote Ms. Scott were the result of Ms. Hutchinson "blocking" those promotions, nor was there any factual basis to support that age, gender or race factored into the selection process.

## II.    NOTICE OF CORRECTIVE ACTION AND PROBATION FOR USE OF ALL ACCRUED TIME

Both Ms. Stokes and Ms. Hutchinson a observed more frequent and regular pattern of Ms. Scott arriving to work late, leaving early and taking unscheduled time off during July, August and September of 2007. Ms. Scott's tardiness, leaving early and unscheduled time off became increasingly burdensome to the other members of the support staff that were required to cover for Ms. Scott when she was not present. As a result, as of September 30, 2007, Ms. Scott had zero sick time, 0.75 personal time and 21.5 hours of vacation time remaining until January 1, 2008; however, Ms. Scott continued taking unscheduled time off. (Exh. 1 ¶¶19-36, Exh. 2 ¶¶47-61, Exh. 3 ¶¶28-34).

ISMIS does not have a policy for unpaid leave and if an employee takes time beyond what is allotted in sick days, personnel days and vacation days, that employee is subject to disciplinary action including termination. (Exh. 1, Exh. Q). Ms. Hutchinson consulted with Ms. Gentile-Karas regarding how to approach this issue with Ms. Scott. (Exh. 1 ¶¶19-36, Exh. 2 ¶¶47-61). Ms. Gentile-Karas confirmed that the problem was severe and was in violation of the ISMIS policy and further advised Ms. Hutchinson that once an employee uses up all his/her accrued time s/he would have to be put on probation pursuant to company policy. Ms. Gentile-Karas suggested that Ms. Hutchinson give Ms. Scott a written warning to remind her the few

# BEERMANN
# SWERDLOVE

LLP

ATTORNEYS

U.S. Equal Employment
Opportunity Comission
November 9, 2007
Page 5

hours of time she has available and to warn her of the potential for disciplinary action in the event she used up all her time.

In early October 2007, while Ms. Hutchinson and Ms. Gentile-Karas were finalizing a Notice of Corrective Action Form pursuant to ISMIS Disciplinary Policy to provide Ms. Scott a written warning, ISMIS received notice of Ms. Scott's EEOC Complaint. The Notice of Corrective Action and written warning were not provided to Ms. Scott at that time, as there were concerns that it may be perceived as retaliatory. Ms. Scott continued to take unscheduled time off through October and by the end of October 2007, Ms. Scott used up all available accrued time. Ms. Scott has zero sick time, zero personal time and zero vacation time. From July 2007 to October 2007, Ms. Scott has arrived late to work without prior notice on the following dates: July 25, August 1, 6, 30, September 5, 19, 27, October 11, 12, and 18. From July 2007 to October 2007, Ms. Scott has made last minute requests to leave early on the following dates: July 19, 27, August 28 and October 4. From July 2007 to October 2007, Ms. Scott has taken last minute time off or simply not come into work on the following dates: August 6, 20, September 4, 6, October 8. (Exh. 1 ¶¶19-36, Exh. 2 ¶¶47-61, Exh. 3 ¶¶28-34).

On November 2, 2007, Ms. Scott sent Ms. Hutchinson an e-mail that acknowledged that she had no time remaining and requested unpaid time off. Ms. Scott later sent an e-mail that acknowledged that she was unable to take unpaid leave and requested that she be permitted to start work early in order to accrue time so that she could take additional time off. Ms. Hutchinson consulted with Ms. Gentile-Karas regarding whether ISMIS had such a policy. The ISMIS sick time, personal time and vacation time policies prohibit employees from using more sick hours, personal hours or vacation hours than they have in their account. Furthermore, ISMIS has placed employees who have utilized all accrued time on probation. Presently, one ISMIS employee is on probation through the end of 2007 for having utilized all her sick, personal and vacation time this year. (Exh. 1 ¶¶19-36, Exh. 2 ¶¶47-61, Exh. 3 ¶¶28-34).

In the interest of treating all similarly situation employees equally, Ms. Hutchinson was instructed to prepare a Notice of Corrective Action placing Ms. Scott on probation for excessive absenteeism and utilizing all her accrued time. The Notice of Corrective Action was reviewed and approved by Ms. Gentile-Karas to confirm that it was consistent with the Notice of Corrective Action given to the ISMIS employee currently on probation for the same policy violation. The Notice of Corrective Action was also reviewed and approved by the Division Vice President All Alphin.. (Exh. 1 ¶¶19-36, Exh. 2 ¶¶47-61, Exh. 3 ¶¶28-34).

On November 5, 2007 Ms. Hutchinson and Ms. Stokes met with Ms. Scott to advise her that she was being put on probation due to the fact that she had utilized all of her accrued time. Ms. Scott demanded a meeting with Human Resources. On November 6, 2007, Ms. Stokes, Ms. Scott and Ms. Hutchinson met with Ms. Gentile-Karas and Ms. Gentile-Karas explained the

# BEERMANN
# SWERDLOVE

LLP

ATTORNEYS

U.S. Equal Employment
Opportunity Comission
November 9, 2007
Page 6

following: (i) that it was ISMIS policy that an employee is not permitted to take unpaid leave; (ii) employees are not permitted to have a negative balance in their sick accruals, personal accruals and vacation accruals; (iii) employees are prohibited from using more sick hours, personal hours or vacation hours than they have in their account; and (iv) it is ISMIS policy that once an employee utilizes all remaining sick, personal and vacation time, that employee must be put on probation because in the event the that employee takes any additional time off, that employee will be subject to discipline include termination. (Exh. 1 ¶¶19-36, Exh. 2 ¶¶47-61, Exh. 3 ¶¶28-34).

The Notice of Corrective Action form placing Ms. Scott on probation is a direct result of Ms. Scott's use of all her accrued time and is consistent with ISMIS's policy and the manner in which similarly situated employees have been treated. There was no discriminatory or retaliatory motive for placing Ms. Scott on probation. If ISMIS did not do so, it would be unfair and potentially discriminatory to the other ISMIS employee that is currently on probation for the exact same conduct.

### III.    EVALUATION OF DISCRIMINATION CLAIMS

ISMIS is committed to its policy of providing and maintaining an environment free of harassment and discrimination. ISMIS prohibits the use of race, color, religion, sex, sexual orientation, age, national origin, and physical or mental disability unrelated to the individual's qualifications for the job to be used as a basis for personnel decisions. ISMIS enforces these policies by conducting seminars and training programs for its management level personnel and through Human Resource supervision. When a complaint of harassment or discrimination is made as it was in this case, the complaint is taken very seriously and an immediate and thorough investigation is performed.

In this case, Ms. Gentile-Karas performed a very thorough investigation of Ms. Scott's claim of harassment against Ms. Hutchinson and was unable to find any evidence to support Ms. Scott's claim. There were no facts to support that Ms. Scott was being harassed or treated differently because of her age, gender or race. There were issues with the quality of Ms. Scott's work that Ms. Hutchinson has been attempting to assist Ms. Scott in improving over the past three years and Ms. Gentile-Karas confirmed from others in the Underwriting Division that the issues with the quality of Ms. Scott's work were legitimate. Ms. Gentile-Karas also confirmed through her investigation that Ms. Hutchinson did not take any action to "block" Ms. Scott's advancement in the company. The decisions made not to promote Ms. Scott to Underwriting Technician and Claims Service Representative were made by selection teams pursuant to objective criteria.

# BEERMANN
# SWERDLOVE

**LLP**

ATTORNEYS

U.S. Equal Employment
Opportunity Comission
November 9, 2007
Page 7

Since Ms. Scott's internal complaint of harassment was made, all personnel evaluations and decisions regarding Ms. Scott have been made in conjunction with or witnessed by Ms. Stokes, another management level employee in Underwriting and made in consultation with Ms. Gentile-Karas. The reason for these measures was to verify that ISMIS policies are being followed in a fair and even handed manner and to confirm that Ms. Hutchinson was not acting with any retaliatory motive.

IV.    **EXHIBITS**

Attached to ISMIS' Response as support for its position and incorporated herewith are the following affidavits and exhibits:

**Exhibit 1**    **Affidavit of Donna Gentile-Karas,**
*Assistant Vice President Human Resources*
- **Exh. A**    ISMIS Non Discrimination Statement
- **Exh. B**    June 8, 2004 Welcome Letter to Sakie Scott
- **Exh. C**    Underwriting Secretary Position Description
- **Exh. D**    Sakie Scott Performance Evaluations
- **Exh. E**    ISMIS Progressive Discipline/Probation/Termination Policy
- **Exh. F**    Sakie Scott December 14, 2006 Memo
- **Exh. G**    ISMIS General/Sexual Harassment Policy
- **Exh. H**    Laura Hutchinson December 20, 2006 Memo
- **Exh. I**    Internal Application For Underwriting Technician (9/20/05)
- **Exh. J**    Internal Application For Claims Service Representative
- **Exh. K**    1/11/07 e-mail from Donna Gentile-Karas to Sakie Scott
- **Exh. L**    Sakie Scott Personnel Record as of 9/30/07
- **Exh. M**    Notice of Corrective Action for Sakie Scott – written warning
- **Exh. N**    Sakie Scott Personnel Record as of 10/31/07
- **Exh. O**    Memo re Sakie Scott tardiness and time off with back-up e-mails
- **Exh. P**    11/1/07 e-mails between Sakie Scott and Laura Hutchinson regarding unpaid leave
- **Exh. Q**    ISMIS Sick and Personal Time Policy and Vacation Time Policy
- **Exh. R**    Notice of Corrective Action dated 11/5/07

# BEERMANN
# SWERDLOVE

### LLP

**ATTORNEYS**

U.S. Equal Employment
Opportunity Comission
November 9, 2007
Page 8

**Exhibit 2**      **Affidavit of Laura Hutchinson**
*Assistant Vice President Underwriting*
- **Exh. A**    Position Description for Underwriting Secretary
- **Exh. B**    Sakie Scott Performance Evaluation (7/18/05)
- **Exh. C**    Sakie Scott Performance Evaluation (8/4/06)
- **Exh. D**    E-mail message deletion confirmations
- **Exh. E**    Sakie Scott Performance Evaluation (7/6/07)
- **Exh. F**    10/23/07 e-mail from Jacinth Stokes regarding Sakie Scott errors
- **Exh. G**    Sakie Scott December 20, 2006 Memo
- **Exh. H**    Sakie Scott Personnel Record as of 9/30/07
- **Exh. I**    Notice of Corrective Action for written warning
- **Exh. J**    Sakie Scott Personnel Record as of 10/31/07
- **Exh. K**    Memo re Sakie Scott tardiness and time off with back-up e-mails
- **Exh. L**    11/1/07 e-mails between Sakie Scott and Laura Hutchinson
  regarding unpaid leave
- **Exh. M**    ISMIS Sick and Personal Time Policy and Vacation Time Policy
- **Exh. N**    ISMIS Progressive Discipline/Probation/Termination Policy
- **Exh. O**    Notice of Corrective Action dated 11/5/07
- **Exh. P**    11/6/07 e-mail from Jacinth Stokes to Laura Hutchinson and
  Donna Gentile-Karas

**Exhibit 3**      **Affidavit of Jacinth Stokes**
*Underwriting Support Manager*
- **Exh. A**    10/23/07 e-mail from Jacinth Stokes regarding Sakie Scott errors
- **Exh. B**    7/12/07 e-mail from Jacinth Stokes regarding Sakie Scott
  Performance Evaluation meeting
- **Exh. C**    6/14/07 e-mail from Jacinth Stokes regarding Sakie Scott absence
- **Exh. D**    6/28/07 e-mail from Jacinth Stokes regarding Sakie Scott early
  departure
- **Exh. E**    11/6/07 e-mail from Jacinth Stokes to Laura Hutchinson and
  Donna Gentile-Karas

# BEERMANN
# SWERDLOVE

LLP

ATTORNEYS

U.S. Equal Employment
Opportunity Comission
November 9, 2007
Page 9

**Exhibit 4**   **Affidavit of Sheila Coglan**
*Assistant Vice President, Underwriting - Technical*
- **Exh. A**   Internal Application For Posted Position for Underwriting Technician (9/20/05)
- **Exh. B**   Underwriting Technician Position Description
- **Exh. C**   William H. Blake resume
- **Exh. D**   Internal Application For Posted Position for Underwriting Technician (6/29/07)

**Exhibit 5**   **Affidavit of Michi Smith**
*Director, Underwriting*

**V.**   **CONCLUSION**

The Charge of discrimination filed by Ms. Scott is totally without merit, as evidenced by the attached exhibits and supporting affidavits. If you require anything further, please do not hesitate to contact Lyle Genin and Stefania Pialis of Beermann Swerdlove LLP, the attorneys for Illinois State Medical Insurance Services, Inc. at (312)621-9700.

Yours very truly,

BEERMANN SWERDLOVE LLP

Stefania Pialis

Enclosure



# MEMO

**To:**     Donna Gentile-Karas
**From:**   Laura C. Hutchinson
**Subject:** Sakie Scott's Memo of 12/14/06
**Date:**   December 20, 2006

---

Below are my comments regarding items in Sakie's memo.

Sakie was interviewed for the Underwriting Technician position by Sheila Coghlan and I; however, I have no recollection that the original appointment was cancelled and that we conducted the interview without any notice to her.

One of Sakie's job responsibilities is to provide secretarial support to me (e.g. sort my In Box, typing, stock paper for my printer). To provide that support she needs to come into my office several times a day. It would also give her the opportunity to discuss her work with me and ask any questions she may have.

After Sakie's interview with Claims, Christine Renfro did call me to discuss Sakie's last review, especially the problem with quality. I stated it was mostly a proofing issue that could be improved.

On 7/26/05 during Sakie's first annual review, I discussed the need for her to "focus more on her work and less on distractions on the floor". We had another conversation on 5/25/06 that she needed to reduce social distractions in order to concentrate on the quality of the work at her desk.

I did ask Keith Evans if he and Willet Welch were in Sakie's cubicle for some reason. He indicated that they had been standing just outside of her cubicle having a conversation. He was sure that they were not in her area, but said that it might have looked like they were. I did relay that information to Sakie. She disagreed with the explanation I gave her, but I told her that there was nothing more I could do.

On 11/21/06, Michi Smith had conversations with Sean Sullivan, Jon Olson and Terry Moore regarding Sakie conduct since she moved into her new cubicle in late September. I then met with Michi, Jon and Sean. They told me that her behavior is "totally distracting" because of the loud social activity in her cubicle, personal calls and cell phone usage during business hours. I then called Sakie into my office to discuss these issues. She denied that any of it is occurring. I told her that she needed



EXHIBIT

G

Page 2
December 20, 2006

to curtail any distracting socializing and that we would discuss the situation again in 2 weeks to see if there was improvement. Sakie was scheduled off the next day, the Wednesday before Thanksgiving.

On Monday 11/27/06, Sakie's son called to say that his mother was at urgent care; she was having trouble breathing. The next morning I did not hear from Sakie, so I called her and left a message. She called back at 11 am and told me that she had an abnormal EKG and would not be at work the next day.

She returned to the office on Thursday 11/30/06, but became ill with the flu and went home at 1 pm.

Jacinth Stokes and I had a meeting with the support staff on 12/8/06 to discuss a special project that they would all be involved in. Before the meeting ended, I made a statement about Underwriting's quarterly staff lunches. "These lunches were started to foster a team spirit in the division and to show appreciation for Physician First Service. They are a perk that we do not want to lose. You may order what you like, but please do not order multiples or more than you can eat. Remember that this is a business lunch...".

On 12/11/06 after the second group returned from lunch at Gibson's, I was told by Keith Evans that Sakie had ordered the surf and turf which cost $96., by far more expensive than anyone else's order. Management (myself, Keith, Jacinth, Michi and Sheila) discussed this issue and we concluded that I needed to speak to Sakie. I called her into my office and said that we needed to discussed the holiday luncheon. I asked her if her remembered my statement to the support staff. She did, but did not believe that she had done anything inappropriate. I tried to explain that she missed the spirit of what I had tried to convey.

*Laura C. Hitchinson*



ONLY AFTER COMPLAINT LCH created

MEMO TO FILE – Sakie A. Scott

07/03/07......The office closed early due to the holiday. As Sakie was leaving I stopped her to ask the status of her work, since she was scheduled off for 3 days after the 4th. She said she was all caught up with new business and the check requests for commission were in my In Box. When I returned to the office on Thursday there were e-mails from Sakie sent on the 4th (e-mail copies attached).

07/12/07......Gave Sakie her review.

07/16/07......Called Sakie around 9 am to ask her to complete her Time Sheet; received e-mail from Sakie at 1:21 pm that she had applied for the U/W Technician position (e-mail copy attached).

07/17/07......Sheila Coghlan and I interviewed Sakie for Greg Davis' position; also spoke to Sakie regarding an Underwriting file she incorrectly gave to Jacinth yesterday (e-mail copy attached).

07/19/07......Sakie requested to leave early today at 3:30 pm (e-mail copy attached).

07/25/07......Late arrival at 9:05 am due to transportation problems (e-mail copy attached); also, Sakie deleted 21 e-mails from me that she had not read.

07/26/07......Received "Request for Tuition Reimbursement" for 2 classes Sakie took last year. Original given no response

07/27/07......Sakie requested to leave early today at 3:45 pm (e-mail copy attached).

08/01/07......Late arrival at 11:36 am due to a family emergency (e-mail copy attached).

08/06/07......Sakie called in sick. She only has 5.5 hours of sick time left to cover this day.

08/16/07......Late arrival at 9:15 am due to power outage; at 2:34 pm Sakie requested tomorrow off as a vacation day (e-mail copy attached).

08/20/07......Sakie called to say that she would not be in because she "couldn't get back to Chicago on time".

08/21/07......Sakie requested Sept. 4th as a vacation day (e-mail copy attached) for hospital tests. Later changed to Sept. 6th.

08/28/07......Sakie requested to leave early today at 3:30 pm (e-mail copy attached).

08/30/07......Late arrival at 8:45 am due to accident on freeway (e-mail copy attached).

09/04/07......Sakie called in to say she wouldn't be in due to a "family emergency". She told me later that her father-in-law is near death and she went to visit him in Indianapolis.

09/05/07......Late arrival at 9:50 am due to "transportation problems".

09/19/07......Sakie requested a vacation day for Oct. 8th.

09/20/07......Late arrival at 8:45 am due to the bus breaking down.

09/26/07......Sakie requested 2 hours personal time for tomorrow 8:15 to 10:15 am (e-mail attached).

09/27/07......Sakie arrived at 11:45 am instead of 10:15 am (e-mail attached).

10/01/07......I had to ask Sakie ████ ██ ██ er time sheet that was due today. ██ ██ es for Sept. 27 and 28 were incorrect.

10/04/07......Sakie requested to leave early tomorrow at 3:30 pm.

10/09/07......Sakie came in to work this day, even though she had scheduled it as a vacation day.

10/11/07......Late arrival at 8:40 am due to traffic (e-mail attached).

10/12/07......Jacinth saw Sakie arrive at 8:40 am. I asked Sakie if she was late and she said that she was 10 minutes late not 25 minutes. E-mail attached regarding changing her work schedule.

10/15/07......Four batches of loss history letters were put into the File Room bin without the yellow sheets filled out. Two were done by Sakie and two by Deborah Connie. Also, Sean brought to my attention a loss history error on # 61578, Dr. Didluch.  ← *IF Sakie didn't FILL out SHEET HOW DOES LCH KNOW*

10/17/07......New Business error on Dr. Khaja # 64519 (e-mail attached)    *IT WAS SCOTTS mistake*

10/18/07......Late arrival at 9:15 am due to power outage at her home (e-mail attached).

10/19/07......New Business error on Dr. Ahn # 03567 (e-mail attached)

10/24/07......Sakie requested to leave an hour early on Friday, October 26th (e-mail attached).

10/26/07......Sakie requested to leave an additional half hour early today (e-mail attached).

10/31/07......Sakie called in sick today.

11/01/07......I had to ask Sakie to correct her time sheet regarding 10/31/07 (e-mail attached). Sakie requested an unpaid day off for November 21st, the day before Thanksgiving (e-mail attached). Loss History error on Dr. Rohail #26969 (e-mail attached). New Business error on Irma Mendez, CRNA (e-mail attached).

11/02/07......Loss History error on Dr. Kirby #64707 (e-mail attached). BOR work flow error (copy attached).

11/05/07......Met with Sakie at 4:15 pm to place her on probation (Jacinth was present).

11/06/07......Sakie, Jacinth and I met with Donna at 9:30 am to discuss the probation document.

11/07/07......no verbal communication

11/08/07......no verbal communication; also Sakie deleted 6 unread e-mails.    *EMAIL ON "AUTOPREVIEW STATUS*

11/09/07......no verbal communication



STATE OF ILLINOIS     )
                       ) SS
COUNTY OF C O O K   )

## AFFIDAVIT OF LAURA HUTCHINSON

I, the undersigned Laura Hutchinson having been duly sworn upon oath, depose and state as follows:

1.     I am an Assistant Vice-President in the Underwriting Division for Illinois State Medical Insurance Services, Inc. (**"ISMIS"**).

2.     My date of birth is October 30, 1949, I am Caucasian and I am a woman.

3.     I have been employed with ISMIS for 30 years. I began my employment as an Underwriting Coordinator and have also held the position of Underwriting Support Supervisor.

## I.   EMPLOYMENT OF SAKIE SCOTT WITH ISMIS

4.     I interviewed and hired Sakie Scott to fill the position of Underwriting Secretary in the Underwriting Division. Ms. Scott began her employment with ISMIS on July 1, 2004.

5.     The basic function of an Underwriting Secretary is to provide secretarial support services to the Underwriting Division. More specifically, the job duties and responsibilities include the following:

    (a)    Provides support services to the Underwriting Staff which includes telephone backup, word processing, photocopying, faxing, preparing clinical proposal folders and look up of proposal physician information

    (b)    Enter group profiles for the submission;

    (c)    Screen and process Claim History and Certificates of Insurance requests for policyholders;

    (d)    Screen new business applications, incoming correspondence and Underwriting Profile Update forms, and copy applications for mailing with policy documents;

    (e)    Accept simple new business applications and mailing documents;

    (f)    Distribute computer output, process request for new business kits and other informational material and Certificate of Mailing letters;

    (g)    Maintain inventory of division's supplies and prepare purchase orders;

    (h)    Establish and maintain broker identification information for applicable policy computer records and underwriting files;

(i)     Enter policyholder data into the computer system (e.g. rate sheets, action requests;

(j)     Provide quality serve to policyholders and staff;

(k)     Additional duties and responsibilities as required.

(the "**Underwriting Secretary Position Description**"). A true and accurate copy of the

Underwriting Secretary Position Description is attached hereto and incorporated herewith as

**Exhibit "A"**.

6.     I have been Ms. Scott's supervisor since she began her employment with ISMIS

to the present. Included in the responsibility of providing support services to the Underwriting

Staff was providing secretarial support services to me.

7.     I have never harassed Ms. Scott during her employment with ISMIS in any

manner. I have never discriminated against her on the basis of her age, gender or race. I have

communicated and interacted with Ms. Scott in the same manner in which I communicate and

interact with all employees who report to me and all employees at ISMIS.

8.     Throughout Ms. Scott's employment with ISMIS, I have attempted to support her

in her position and made recommendations to assist her in the performance of her job duties and

to assist her in meeting the expectations of the position of Underwriting Secretary.

**II.    HISTORY OF SAKIE SCOTT WORK PERFORMANCE AND PERFORMANCE EVALUATIONS**

9.     When Ms. Scott had been employed with ISMIS for approximately one year, I

observed consistent patterns of work performance problems. More specifically, the quality of

Ms. Scott's work including typing output and new business screening diminished. It became

apparent that Ms. Scott was not proof reading her work. This was a serious concern to me

because the documents that were typed by Ms. Scott for me included letters, reports and

memoranda, that were circulated within the Division and to outside brokers. The consistent

errors reflected poorly upon me, the Underwriting Department and ISMIS. Moreover, the

2

consistent pattern of poor work product quality and errors created additional work for me and took up a considerable amount of my time. Furthermore, errors made by Ms. Scott in relation to screening new business applicants, processing claims history reports, etc., negatively impacted the work of other staff.

10.    During the first year of Ms. Scott's employment I also observed a consistent pattern of tardiness. Ms. Scott did not arrive to work on time consistently.

**A.    2005 Performance Evaluation**

11.    It is the regular practice for all management level employees at ISMIS to prepare annual Performance Evaluation Forms, evaluating the performance of all employees that report directly to them. The Performance Evaluation Forms are then discussed with each employee individually and filed in each employees personnel file.

12.    In the regular course of business, after the completion of Ms. Scott's first year of employment with ISMIS, I prepared a Performance Evaluation Form dated July 18, 2005 for the review period of December 2004 through June 2005 (**"2005 Performance Evaluation"**) evaluating Ms. Scott's job performance. A true and accurate copy of the 2005 Performance Evaluation is attached hereto and incorporated herewith as **Exhibit "B"**.

13.    In the 2005 Performance Evaluation, with respect to the category "produces quality work within established time frames", I noted that Ms. Scott did not meet expectations. During the first year of Ms. Scott's employment I observed a constant pattern of tardiness. Ms. Scott did not arrive at work on time consistently.

14.    In the 2005 Performance Evaluation, I indicated that "Sakie needs to concentrate on improving her time management and organizational skills. Also she needs to proof her work consistently before she passes it along. To assist in improving her performance, she needs to

3

develop a daily task schedule and adhere to it. Also, she will need to meet daily with me at 9 am, 11 am, 2 pm and 4 pm to discuss her work issues."

15.    The performance issues noted in the 2005 Performance Evaluation were objective observations made about the quality of Ms. Scott's work and were not influenced in any way by a discriminatory motive.    Rather than pursue disciplinary action at that time, I made a commitment to attempt to assist Ms. Scott in achieving success in her position. The performance issues were addressed directly with Ms. Scott on July 26, 2005 during a performance evaluation meeting.    During that meeting, I explained the basis for my comments, I outlined the expectations of the position and made recommendations to assist Ms. Scott in meeting expectations. I did not observe that Ms. Scott took issue with any of the comments in the 2005 Performance Evaluation.

### B.    2006 Performance Evaluation

16.    The problems with Ms. Scott's work performance continued through the following year. The issues with the poor quality of Ms. Scott's work continued. Additionally, I began to observe patterns of consistent absenteeism and constant socializing throughout the work day. Ms. Scott's desk is situated in a cubicle that is located in an open area. Various other members of the Underwriting Division have desks close to Ms. Scott's in the open floor area. I received repeated complaints from certain members of the Underwriting Division about the Ms. Scott's socializing which created a distraction for others in the Division. People congregated by Ms. Scott's cubicle and engaged in fairly loud, non-work related social discussions that were distracting to other members in the Division. Ms. Scott also regularly visited the cubicles of others for the purpose of socializing. I was advised that two Underwriters, Sean Sullivan and Jon Olson had complained that Ms. Scott's behavior was very loud, distracting and interfered with

4

their ability to do their work. Eventually, Jon Olson was moved to a cubicle further away from Ms. Scott.

17.     In the regular course of business, after Ms. Scott's second year of employment with ISMIS, I prepared a Performance Evaluation Form dated August 4, 2006 for the review period of July 2005 through July 2006 (**"2006 Performance Evaluation"**) evaluating Ms. Scott's job performance. A true and accurate copy of the 2006 Performance Evaluation is attached hereto and incorporated herewith as **Exhibit "C"**.

18.     In the 2006 Performance Evaluation, with respect to the category "produces quality work within established time frames", I noted that Ms. Scott did not meet expectations. During the second year of Ms. Scott's employment I observed a constant pattern of socializing that distracted Ms. Scott from her work. In addition, I received various complaints from other members of the Underwriting Division regarding the Ms. Scott's constant socializing and its distracting affect on their work.

19.     In the 2006 Performance Evaluation, I indicated that "[t]he quality of Sakie's work still needs more improvement. She needs to proof and double check each item she works on consistently so that it becomes part of her normal routine. Reducing social distractions would help in this regard." I further noted that "Sakie needs to avoid distractions and concentrate on the work in front of her. I suggest that she reorganize her cubicle and Microsoft In Box to help her in this area. Also, the transition to Imaging should help Sakie's performance over the next year."

20.     The performance issues noted in the 2006 Performance Evaluation were objective observations made about the quality of Ms. Scott's work and were not influenced in any way by a discriminatory motive. Again, rather than pursue disciplinary action at that time, I continued to

5

attempt to assist Ms. Scott in achieving success in her position. I felt that if Ms. Scott reduced the social distractions, she would have sufficient time to focus on the quality of her work. The performance issues were addressed directly with Ms. Scott on August 16, 2006 in a performance evaluation meeting and I again outlined the expectations of the position and made recommendations to assist Ms. Scott in meeting those expectations.

### C.    2007 Performance Evaluation

21.    The problems with Ms. Scott's work performance continued through the following year. The quality of Ms. Scott's work did not improve as there were continually errors in her work product including the documents, letters, reports and memoranda that she typed for me. As Ms. Scott began her third year of employment, I felt that she should have acquired a sufficient knowledge of underwriting and the procedures in the Underwriting Division to identify issues and problems and suggest solutions. Ms. Scott rarely did so and never attempted to participate in resolving problems or issues.

22.    Increasingly during her employment with ISMIS, Ms. Scott reduced her communication and interaction with me. I had repeatedly indicated that Ms. Scott should meet with me at least four times during the day: 9 am, 11 am, 2 pm and 4 pm. The purpose for these daily meetings was to assign work, address issues and problems, monitor work flow, and provide an opportunity to discuss work in order to minimize errors. I had also hoped that by meeting on a regular basis throughout the day, it would provide me with a teaching opportunity to assist Ms. Scott with work and performance related issues and it would further provide a forum where Ms. Scott could give me feedback on how she was doing. Ms. Scott resisted and did not follow through on the proposed meeting schedule and often went an entire day to a number of days without meeting with me.

23.     During the course of her employment with ISMIS, I also observed that on a regular basis, Ms. Scott did not read e-mails that I sent her.  Often times, hours would go by before she would read an e-mail I sent her, sometimes days and on various occasions, Ms. Scott would delete e-mails that I sent her without reading them.  On one particular day, Ms. Scott deleted over twenty-one (21) e-mails sent by me without reading them.  True and accurate copies of e-mail message receipts confirming that Ms. Scott had deleted e-mails from me without reading them are attached hereto and incorporated herewith as **Exhibit "D"**.

24.     It is the general business practice at ISMIS for employees of the company to communicate regarding work related issues via e-mail.  As Ms. Scott failed to meet with me on a regular basis, e-mail communication was the only other way in which I could give Ms. Scott information that she needed.  Because she was not reading e-mails from me for extended periods of time or in some cases deleting e-mails from me, she was missing important information.

25.     In the regular course of business, after Ms. Scott's third year of employment with ISMIS, I prepared a Performance Evaluation Form dated July 6, 2007 for the review period of July 2006 through July 2007 (**"2007 Performance Evaluation"**) evaluating Ms. Scott's job performance.  A true and accurate copy of the 2006 Performance Evaluation is attached hereto and incorporated herewith as **Exhibit "E"**.

26.     In the 2007 Performance Evaluation, with respect to the category "provides daily secretarial services to the AVP, Support; assists in the quarterly commission process.  Expectations include accurate typing and proofing, solid knowledge of office procedures and equipment and a professional telephone style" I noted that Ms. Scott did not meet expectations.  In the 2007 Performance Evaluation during the third year of Ms. Scott's employment I observed that Ms. Scott resisted regular verbal communication with me contrary to the specific request

7

made in the 2006 Performance Evaluation. Ms. Scott's resistance to communicate with me verbally and Ms. Scott's resistance to reading e-mails from me negatively impacted her ability to provide any daily secretarial support services to me. Additionally, I continued to observe constant problems with the quality of Ms. Scott's work. Ms. Scott's work normally contained various errors and typos.

27.    In the 2007 Performance Evaluation, with respect to the category "maintains ongoing communication with supervisor", I noted that Ms. Scott "does not meet expectations." In the 2007 Performance Evaluation, I indicated that "[n]umerous informal verbal communications have not become part of Sakie's daily routine, as was requested in last year's review.

28.    In the 2007 Performance Evaluation, with respect to the category "produces quality work within established time frames", I noted "does not meet expectations." In the 2007 Performance Evaluation, I indicated that "[t]he quality of Sakie's work in the area of secretarial support has not improved over last year. As previously stated, she needed to consistently proof and double check each item she worked on, so that it became part of her normal routine." I also made the following comments in the 2007 Performance Evaluation, "[t]here are two items that Sakie does need to address. The first is reading and/or responding to e-mails and voice mails quickly. The other issue is to remain logged onto her computer programs until the end of each work day."

29.    The performance issues noted in the 2007 Performance Evaluation were objective observations made about the quality of Ms. Scott's work and were not influenced in any way by a discriminatory motive. Again, rather than pursue disciplinary action at that time, I continued to attempt to assist Ms. Scott in achieving success in her position. In an effort to assist Ms. Scott, I

reduced some of Ms. Scott's responsibilities to provide her additional time to execute her work more effectively. Also, due to the resistance Ms. Scott had to communicating with me on a daily basis, I removed that from her job duties and responsibilities. In the 2007 Performance Evaluation I noted as follows, "[t]o provide Sakie with an opportunity to improve her job performance, some of her responsibilities will be adjusted. She will 1) process requests for loss histories and Certificates of Insurance on active policies; 2) order and maintain the division's office supplies; 3) learn the procedure for indexing all incoming requests for loss histories. Other changes may be implemented after training on items 2 and 3 have been completed. Lastly, she will no longer be responsible for providing secretarial support to the AVP, Support." I also indicated that, "As stated last year, Sakie possesses the abilities to improve her performance by focusing on her daily tasks. Hopefully her new work assignments will provide the opportunity to do better."

30.    On July 12, 2007, I met with Ms. Scott to present and discuss the 2007 Performance Evaluation. Also present during the meeting was Jacinth Stokes. Ms. Stokes is the Underwriting Support Manager and she participated in the meeting to gain experience conducting employee performance evaluations. Once Ms. Scott read the 2007 Performance Evaluation I observed she became visibly upset. Every time I attempted to address an issue, she interrupted and stated that "it was not right". I was not able to discuss the 2007 Performance Evaluation with Ms. Scott point by point because she became increasingly upset and hostile as the meeting proceeded. Initially, Ms. Scott refused to sign the 2007 Performance Evaluation; however, I explained that her signature did not denote her agreement with the document; it only confirmed that she received it. Ms. Scott thereafter signed the 2007 Performance Evaluation and indicated that she would write a rebuttal. To date I have not received a rebuttal from Ms. Scott.

31.    The performance issues noted in the 2007 Performance Evaluation were objective observations made about the quality of Ms. Scott's work and were not influenced in any way by a discriminatory motive.  My intent through the process of preparing all Ms. Scott's Performance Evaluations was to objectively identify and address problems with work performance and to make recommendations to correct the problems and assist Ms. Scott in the performance of the duties and responsibilities of the Underwriting Secretary position.

**D.    Continuing Problems With Ms. Scott's Work Performance**

32.    The problems with Ms. Scott's work quality and performance have continued.  I had hoped that by not having to do secretarial support work for me that Ms. Scott would be able to focus more directly on her work quality.  I have received one complaint from the Underwriting Support Manager, Ms. Jacinth Stokes, regarding the quality of Ms. Scott's work and her periodic failure to properly screen new applicants.  A true and accurate copy of the e-mail exchange between Ms. Stokes and Ms. Scott documenting the most recent complaint I have received regarding Ms. Scott's performance is attached hereto and incorporated herewith as **Exhibit "F".**

33.    As Ms. Scott's direct supervisor, when I am apprised of errors with Ms. Scott's work, as with any employees that report directly to me, it is my responsibility to bring the issue to Ms. Scott's attention, determine the basis for the error and make recommendations to correct the error and avoid future errors.  I have continued to address errors with Ms. Scott's work directly with Ms. Scott.

34.    During the month of October 2007, I have received additional complaints from Ms. Jacinth Stokes regarding Ms. Scott's failure to properly screen new applicants.  Ms. Scott opened an underwriting file for a new client, a 38-year old doctor and assigned the new client the

10

file of a former client, a 71-year old doctor who practiced in a completely different specialty. Ms. Stokes was the underwriter on the file and noticed the error and brought it to Ms. Scott's attention.

35.     New applicant screening is one of the primary functions of Ms. Scott's job and it wastes a considerable amount of underwriter time if the applications are not properly screened. On October 23, 2007, Ms. Stokes and I met with Ms. Scott to determine what happened and she admitted that she missed the relevant information.

## III.    SAKIE SCOTT'S COMPLAINT OF HARASSMENT

36.     In December 2006, I was advised by the Assistant Vice President of Human Resources, Ms. Gentile-Karas that Ms. Scott made a complaint against me specifically for harassment and/or discrimination and that Ms. Gentile-Karas was going to investigate the complaint.  As part of the investigation, I was interviewed by Ms. Gentile-Karas.  I was also provided with a copy of the December 14, 2006 memo from Ms. Scott and asked to respond to the allegations made therein.  I drafted a memo dated December 20, 2006 responding to the allegations made by Ms. Scott.  A true and accurate copy of the December 14, 2006 memo is attached hereto and incorporated herewith as **Exhibit "G"**.

37.     There was no discriminatory motive in any of my dealings with Ms. Scott.  I will respond to each allegation in turn as follows:

(i)     With respect to Ms. Scott's application for the position of Underwriting Technician in September of 2005, I did not take any action to prevent Ms. Scott from obtaining this position.  Ms. Scott was interviewed by four individuals.  She was interviewed by myself and Sheila Coglan, the Assistant Vice President Underwriting and she was interviewed separately by Michi Smith, the Director of Underwriting and Frode Brudvik an Underwriting

11

Manager (the **"2005 Selection Team"**). I have no recollection of any interviews with Ms. Scott being cancelled or rescheduled, but if that occurred, I don't believe that had any adverse impact on her ability to get the position. The Underwriting Technician's position is a stressful, multi-faceted position that works for the Underwriters. When Ms. Scott completed an internal application for this position she authorized the release of her personnel file for review to be considered in the selection process. The others involved in the selection process, Ms. Coglan, Ms. Smith and Mr. Brudvik were concerned after reviewing Ms. Scott's personnel file about the quality of Ms. Scott's work and her tardiness. The 2005 Selection Team was also concerned because during the interview process Ms. Scott had no idea what the position of Underwriting Technician involved. Because the Underwriting Technician position was significantly more demanding, involved more sophisticated work, required that work be completed by strict deadlines and was generally more time consuming, the entire 2005 Selection Team, including myself felt that Ms. Scott would not be a good fit for the position. The candidate that was selected, Ms. Pam Phelps had a strong resume and was very enthusiastic and motivated about the position.

(ii)    With respect to Ms. Scott's application for the position of Claims Service Representative in February of 2006, I was not in any way involved in the interview or selection process. That position reports to an entirely different department. I was contacted by Chris Renfro in Claims after she had reviewed Ms. Scott's personnel file to discuss Ms. Scott's last review and the issues related to the quality of Ms. Scott's work. I advised Ms. Renfro that I felt that Ms. Scott could improve the quality of her work if she proofed it. I had no other discussions with Ms. Renfro about Ms. Scott and had no other involvement with the interview process for the Claims Service Representative position.

(iii)　With respect to Ms. Scott's complaint about my request that she come into my office four times per day, I have repeatedly requested that Ms. Scott meet with me several times as one of Ms. Scott's responsibilities was to provide secretarial support for me and in order to do that she was required to sort my In-Box, perform typing and various assignments for me which required explanation and discussion. I repeatedly advised Ms. Scott that regular daily meetings with me were necessary for the following reasons: (1) delegate and explain work assignments; (2) address issues and problems she may encounter with assignments; (3) allow me to monitor her work flow and quantity; (4) provide an opportunity for discussion and clarification to avoid and minimize errors; (5) provide a forum for me to teach and assist Ms. Scott so that she could improve her work. Ms. Scott continually resisted meeting with me.

(iv)　With respect to Ms. Scott's complaint that Keith Evans and Willet Welch were in her cubicle. I spoke with Mr. Evans and he advised me that he and Ms. Welch were standing just outside Ms. Scott's cubicle having a conversation and that they were not in her area. I relayed that information to Ms. Scott. She disagreed with the explanation given to me by Mr. Evans and became visibly upset that I did not take further action to punish them. Ms. Scott made no complaint that anything was taken from cubicle nor did she make a complaint of any wrongdoing or any violation of company policy, so I did not have any basis to proceed with any disciplinary action against Mr. Evans or Ms. Welch. There was no basis for me to pursue this issue further.

(v)　With respect to Ms. Scott's excessive socializing and distracting behavior, I was advised by other members of the Management Team that Ms. Scott's behavior was "totally distracting" because of the loud social activity in her cubicle, personal telephone calls and cell phone usage during business hours. Jon Olson and Sean Sullivan specifically made complaints about Ms. Scott's behavior and John Olson was relocated because Ms. Scott's conduct was so

13

distracting to him.  As Ms. Scott's supervisor, it was my duty and responsibility to address this issue with Ms. Scott which I did.  On November 21, 2006, in my office I discussed this issue with Ms. Scott and she denied that any socializing was occurring.  I told her she needed to curtail any distracting socializing and we would follow up in a couple of weeks.  Ms. Scott was already scheduled to take Wednesday November 22, 2006 off as it was the Wednesday before Thanksgiving.  On Monday November 27, 2006, Ms. Scott's son called to say that Ms. Scott was in urgent care and was having trouble breathing.  I did not hear from Ms. Scott the morning of Tuesday November 28, 2006, so I called and left a message.  Ms. Scott called at 11:00 am and said she had an abnormal EKG and would not be in the following day.  Ms. Scott returned to the office on Thursday November 30, 2006; however she said she was ill with the flu and left at 1:00 p.m.  Additionally, the individuals who were socializing with Ms. Scott were spoken to by their supervisors.

(vi)    With respect to Ms. Scott's lunch order at the unit luncheon at Gibsons Steakhouse, I did have a discussion with her on December 11, 2006 regarding the cost of her order.  Jacinth Stokes and I had a meeting with the support staff on December 8, 2006 to discuss a special project and during that meeting I made a statement about the Underwriting Division's quarterly staff lunches.  I stated that the lunches were started to foster a team spirit in the division and to show appreciation for Physician First Service.  I stated that the lunches are a perk that we do not want to lose and advised staff to order what they like, but to please not order multiples or more than they can eat.  I reminded staff that this was a business lunch.  On December 11, 2006, after the lunch at Gibson's, I was advised by Keith Evans that Ms. Scott had ordered the surf and turf which cost $96.00, by far more expensive then anyone else's order.  Thereafter management including myself, Mr. Evans, Ms. Stokes, Ms. Smith and Ms. Coghlan discussed the cost of the

14

luncheon and issue about the cost of Ms. Scott's order was raised. The management group concluded that as Ms. Scott's direct supervisor, I should speak to Ms. Scott about this. I called Ms. Scott into my office on December 11, 2006 and reminded her of my statement to support staff and Ms. Scott did not believe she had done anything inappropriate. I tried to explain that she missed the spirit of what I had tried to convey. My discussion with Ms. Scott was not for some discriminatory purpose nor did it have any discriminatory motive. I addressed this issue with her only after it was brought to the attention of the management team and they determined that Ms. Scott ordered something beyond what was appropriate under the circumstances and because I am Ms. Scott's direct superior, it was incumbent upon me to address the issue with her.

## III.   SAKIE SCOTT'S APPLICATION FOR POSITION OF UNDERWRITING TECHNICIAN

38.   In June 2007, a position became open for Underwriting Technician and the position reported directly to Sheila Coghlan, an Assistant Vice President, Underwriting.

39.   The Underwriting Technician position is a fast-paced and sometimes high-pressure job that involves rating new business applications, processing quotes, policy change requests, renewals, cancellations, etc. This particular position also coordinates and provides all support work for the PREP Committee meetings that involve a significant amount of work. The PREP Committee is a committee that consists of physicians who review other physician-insureds. There are approximately 20-25 submissions that go to PREP Committee per month and the preparation and support work for the PREP Committee meetings and materials is very detailed and involved. Finally, this position also provides secretarial support to Sheila Coghlan.

40.   As a general rule, management level employees in the Underwriting Division participate in interviewing and hiring for positions in the Underwriting Division. There were four people involved in selection and interviewing process for the Underwriting Technician

15

position: Sheila Coghlan, Michi Smith, Jacinth Stokes and myself (the **"2007 Selection Team"**). Ms. Coghlan and I jointly interviewed Ms. Scott and Ms. Smith and Ms. Stokes jointly interviewed Ms. Scott. Ms. Coghlan made the ultimate decision regarding whom to hire as the position reported directly to her; however, after the interviews were completed, Ms. Coghlan, Ms. Smith, Ms. Stokes and I conferred to discuss our assessment of the candidates and make recommendations.

41. There were two candidates for the position: William Blake and Sakie Scott. Mr. Blake is a University of Illinois graduate who presented and interviewed very well. He was articulate, enthusiastic and professional. It was apparent that Mr. Blake had done a fair amount of research on ISMIS and the position. He tested well and was experienced with excel and creating spreadsheets which was necessary for the position. Mr. Blake had prior experience with Midwest Bank & Trust Company where he had a significant amount of experience in customer service. His customer service background was relevant to the position of Underwriting Technician because this person would have significant interaction with the physicians on the PREP Committee.

42. When Ms. Scott completed the internal application for the position of Underwriting Technician she authorized the release of her personnel file for review to be considered in the selection process. Ms. Coghlan, Ms. Smith and Ms. Stokes all reviewed Ms. Scott's personnel file.

43. During my interview with Ms. Scott, she did not exhibit any enthusiasm or interest in the position. Ms. Scott made no effort to sell herself or to demonstrate why she was a good candidate for the position. Ms. Coglan asked Ms. Scott about her prior reviews to give her an opportunity to address the specific issues raised in her performance evaluations and Ms.

Scott's response was that she did not agree with her most recent performance evaluation and that she was in the process of writing a rebuttal and did not comment further.

44.     The position of Underwriting Technician was held for years by Greg Davis who was a very good friend of Ms. Scott's. Mr. Davis provided three to four weeks notice of his resignation, so the entire division was aware well in advance of Mr. Davis' departure from ISMIS. It was surprising to me and Ms. Coghlan that Ms. Scott had no understanding of what the position of Underwriting Technician entailed. Ms. Scott was completely unable to articulate the requirements of the position or provide any reasons why she would be a good candidate for the position. This raised further concern considering that: (i) Ms. Scott had been working in the Underwriting Division for over three years; and (ii) Ms. Scott has received staff meeting minutes in which the status of the PREP Committee and Mr. Davis' job responsibilities were set forth in detail.

45.     After both candidates were interviewed, Ms. Coghlan, Ms. Smith, Ms. Stokes and I conferred to discuss the candidates. Generally, the 2007 Selection Team questioned why Ms. Scott applied for the position of the Underwriting Technician as she did not know what the position entailed and was unable to articulate the duties and responsibilities of the job. The decision as to who to hire was ultimately made by Ms. Coghlan as this position reported directly to her; however, we engaged in discussions about the strengths and weaknesses of both candidates. The general consensus was that Mr. Blake was the stronger candidate as he had a solid educational background, a solid grade point average and strong customer service experience. Mr. Blake communicated a strong interest in the position and ISMIS and communicated a great deal of enthusiasm. The 2007 Selection Team was concerned about Ms. Scott's ability to handle the pace and the pressure of the Underwriting Technician position.

17

There were concerns about the quality of Ms. Scott's work and the communication problems noted in her 2007 Performance Evaluation. The general consensus was that giving Ms. Scott the position of Underwriting Technician would be setting her up for failure. There was never any discussion or consideration given to Ms. Scott's age, race or gender in making the decision to offer the position to Mr. Blake. I did not recommend that Ms. Scott be hired and my recommendation was based entirely on my observations of the quality of Ms. Scott's work.

## IV.   SAKIE SCOTT TARDINESS, ABSENTEEISM AND UNSCHEDULED TIME OFF

46.    In my absence, Ms. Scott reports directly to Jacinth Stokes. I have observed that during days I was scheduled to be out of the office, Ms. Scott would leave early or take unscheduled time off.

47.    Both Ms. Stokes and I observed a more frequent and regular pattern of Ms. Scott arriving to work late, leaving early and taking unscheduled time off during July, August and September of 2007. This became increasingly burdensome to the other members of the support staff that were required to cover for Ms. Scott when she was not present. Additionally, there was one occasion when Ms. Scott had logged out of her programs and left the office early without seeking prior approval from anyone or advising anyone. Ms. Scott's tardiness, leaving early and unscheduled time has increased dramatically over the past four months such that she had very little personal and vacation time available but continued taking time off.

48.    In late September, I became aware that Ms. Scott had very little available time left. As of September 30, 2007, Ms. Scott had zero sick time, 0.75 personal time and 21.5 hours of vacation time remaining until January 1, 2008; however, Ms. Scott continued taking unscheduled time off. A true and accurate copy of Ms. Scott's Personnel Record up through September 30, 2007 is attached hereto and incorporated herewith as **Exhibit "H"**. I was aware

that ISMIS does not have a policy for unpaid leave and that if an employee takes time beyond what is allotted in sick days, personnel days and vacation days, that employee is subject to disciplinary action including termination. For that reason, I consulted with Ms. Donna Gentile-Karas regarding how I should approach this issue with Ms. Scott.

49. Ms. Gentile-Karas confirmed that the problem was severe and was in violation of the ISMIS policy. Ms. Gentile-Karas also checked Ms. Scott's personnel record to discover that as of September 30, 2007 Ms. Scott had only 0.75 hours of personal time remaining and 21.50 hours of vacation time remaining. Ms. Gentile-Karas advised me that once Ms. Scott used up all her accrued time she would have to be put on probation as is company policy; therefore, she suggested that I give Ms. Scott a written warning to remind her the few hours of time she has available and to warn her of the potential for disciplinary action in the event she used up all her time.

50. In early October 2007, I was in the midst of working with Ms. Gentile-Karas at preparing a Notice of Corrective Action Form pursuant to ISMIS Disciplinary Policy to provide Ms. Scott a written warning. A true and accurate copy of the Notice of Corrective Action Form that was prepared for Ms. Scott in early October 2007 is attached hereto and incorporated herewith as **Exhibit "I"**.

51. The October 2007 Notice of Corrective Action Form noted that Ms. Scott was going to be given a written warning and the performance or behavior in need of correction indicated as follows, "Since 7/19/07, Sakie has been absent 3 days, has arrived late on 6 days and has left work early on 3 days. Sakie has zero sick time, 0.75 personal time and 14 hours vacation time remaining until 1/1/08." The action required to correct this performance or behavior was noted as follows, "Sakie needs to end her unscheduled time off as it is burdensome to the other

19

support staff who must cover her work when she is not here. Also, Sakie needs to understand that if she uses all her earned time off, future absenteeism will require further disciplinary action."

52.     While we were in the process of finalizing the October Notice of Corrective Action form, ISMIS received notice of Ms. Scott's EEOC Complaint. Ms. Gentile-Karas and I decided not to give Ms. Scott the written warning, as we did not want the written warning to be perceived as being in retaliation for Ms. Scott's filing the EEOC Complaint.

53.     Ms. Scott continued to take unscheduled time off through October and by the end of October 2007, Ms. Scott used up all available accrued time. Ms. Scott has zero sick time, zero personal time and zero vacation time. A true and accurate copy of Ms. Scott's Personnel Record as of 10/31/07 is attached hereto and incorporated herewith as **Exhibit "J"**. From July 2007 to October 2007, Ms. Scott has arrived late to work without prior notice on the following dates: July 25, August 1, 16, 30, September 5, 20, 27, October 11, 12, and 18. From July 2007 to October 2007, Ms. Scott has made last minute requests to leave early on the following dates: July 19, 27, August 28 and October 4. There was one occasion when others have advised me that they observed Ms. Scott's computer logged off, and she was absent from her desk well before the end of the work day. From July 2007 to October 2007, Ms. Scott has take last minute time off or simply not come into work on the following dates: August 6, 20, September 4, 6, October 8 and 31. A true and accurate copy of a memorandum I prepared documenting Ms. Scott's unscheduled time off from July 2007 through October 2007 is attached hereto and incorporated herewith as **Exhibit "K"**.

54.     On November 1, 2007, Ms. Scott sent me an e-mail that acknowledged that she had no time remaining and requested unpaid time off. Ms. Scott later sent an e-mail that

20

acknowledged that she was unable to take unpaid leave and requested that she be permitted to start work early in order to accrue time so that she could take additional time off. I was uncertain if ISMIS had any such policy or would allow such an arrangement so I contacted Ms. Gentile-Karas in Human Resources. True and accurate copies of the e-mail exchange between Ms. Scott and I noting Ms. Scott's request is attached hereto and incorporated herewith as **Exhibit "L"**.

55.     Ms. Gentile-Karas reviewed with us ISMIS' policy with respect to sick time, personal time and vacation time and confirmed that employees cannot show a negative balance in their sick accruals, personal accruals and vacation accruals. Ms. Gentile-Karas also confirmed that employees are prohibited from using more sick hours, personal hours or vacation hours than they have in their account and directed us to the Sick and Personal Time Policy and the Vacation Policy in the ISMIS Policy and Procedure Manual. True and accurate copies of the ISMIS policies regarding sick time, personal time and vacation time are attached hereto and incorporated herewith as **Exhibit "M"**.

56.     Ms. Gentile-Karas advised that the ISMIS policy is that once an employee utilizes all remaining sick, personal and vacation time, that employee must be put on probation. Ms. Gentile-Karas directed us to the ISMIS Progressive Discipline/Probation/Termination Policy in the ISMIS Policy and Procedure Manual that cites as a basis for termination excessive tardiness and absenteeism.   A true and accurate copy of the ISMIS policy regarding progressive discipline, probation and termination are attached hereto and incorporated herewith as **Exhibit "N"**.

57.     Ms. Gentile-Karas advised me that one other employee at ISMIS utilized all her sick, personal and vacation time this year and was immediately put on probation as a result. Ms. Gentile-Karas advised that it is necessary that ISMIS treat all similarly-situation employees in a

21

consistent manner; therefore, a Notice of Corrective Action form must be prepared for Ms. Scott and she must be put on probation.

58.     Ms. Gentile-Karas and I thereafter prepared a Notice of Corrective Action form which places Ms. Scott on probation due to excessive absenteeism and the fact that Ms. Scott has utilized all of her personal, sick and vacation days until January 1, 2008. A true and accurate copy of the Notice of Corrective Action form is attached hereto and incorporated herewith as **Exhibit "O"**.

59.     On November 5, 2007 Ms. Stokes and I met with Ms. Scott to advise her that she was being put on probation due to the fact that she had utilized all of her accrued time. Ms. Scott expressed anger and refused to sign the Notice of Corrective Action Form. Ms. Scott also demanded a meeting with Human Resources. True and accurate copies of e-mail communications between Ms. Stokes, Ms. Gentile-Karas and I regarding Ms. Scott's probationary meeting are attached hereto as **Exhibit "P"**.

60.     On November 6, 2007, Ms. Stokes, Ms. Scott and I met with Ms. Gentile-Karas. Ms. Gentile-Karas explained the following: (i) at it was ISMIS policy that an employee is not permitted to take unpaid leave; (ii) employees are not permitted to have a negative balance in their sick accruals, personal accruals and vacation accruals; (iii) employees are prohibited from using more sick hours, personal hours or vacation hours than they have in their account; and (iv) it is ISMIS policy that once an employee utilizes all remaining sick, personal and vacation time, that employee must be put on probation as in the event the that employee takes any more time, that employee will be subject to discipline include termination.

61.     The Notice of Corrective Action form placing Ms. Scott on probation is a direct result of Ms. Scott's use of all her accrued time and is consistent with ISMIS's policy and the

manner in which similarly situated employees have been treated.  There was no discriminatory or retaliatory motive to the placing Ms. Scott on probation.  In fact if we did not do so, it would be unfair to the other ISMIS employee that is currently on probation for the exact same conduct.

62.    The decision to take disciplinary action with Ms. Scott was in no way retaliation for Ms. Scott's EEOC Charge of Discrimination and was not motivated by discriminatory intent. First, Ms. Scott's unscheduled time off and tardiness is a violation of ISMIS policy and she has no accrued time off left. Second, ISMIS must treat all similarly situation employees in the same manner and apply its policies evenly to all employees.

63.    I have personal knowledge of the facts set forth in this affidavit, and if called as a witness in this case, could and would competently testify thereto.

FURTHER AFFIANT SAYETH NAUGHT.

_Laura C. Hutchinson_
Laura Hutchinson

Subscribed and Sworn Before Me On
This _12_ day of November, 2007

_Carol L. Sebastian_
Notary Public

**"OFFICIAL SEAL."**
Carol L. Sebastian
Notary Public, State of Illinois
My Commission Expires Jan. 27, 2008

24



STATE OF ILLINOIS      )
                         ) SS
COUNTY OF C O O K    )

## AFFIDAVIT OF SHEILA COGHLAN

I, the undersigned SheilaB.Coghlan having been duly sworn upon oath, depose and state as follows:

1.      I am the Assistant Vice-President, Underwriting - Technical for Illinois State Medical Insurance Services, Inc. (**"ISMIS"**).

2.      My date of birth is January 19, 1961. I am Caucasian and I am a woman.

3.      I have been employed with ISMIS since October 6, 1986 and have held prior positions with ISMIS as Underwriting Supervisor and Underwriter.

4.      Ms. Sakie Scott does not report directly to me.

5.      I have been involved in interviewing and evaluating Ms. Scott for the position of Underwriting Technician on two separate occasions.

## I.    2005 UNDERWRITING TECHNICIAN POSITION

6.      In September 2005, the Underwriting Division had an opening for an Underwriting Technician position. This particular position worked with and supported the Underwriters and reported directly to an Underwriting Manager.

7.      It is customary in the Underwriting Division that all management level positions usually Assistant Vice Presidents and Directors/ Managers interview candidates for the position of Underwriter or Underwriting Technician. There were four individuals involved in the selection process: me, Laura Hutchinson, Michi Smith and Frode Brudvik (the **"2005 Selection Team"**).

8.     For the Underwriting Technician position in 2005, we received two applications, one from Ms. Sakie Scott and one from Ms. Pamela Phelps.

9.     Ms. Scott completed an Internal Application For Posted Position in which she signed and authorized the review of her personnel file. A true and accurate copy of Ms. Scott's application is attached hereto and incorporated herewith as **Exhibit "A"**.

10.     During the selection process, the Selection Team reviewed the applicant resumes, test results and conducted interviews. Ms. Scott was an internal candidate so the 2005 Selection Team also reviewed Ms. Scott's personnel file. There were sections of Ms. Scott's Performance Evaluation where she did not meet expectations and raised some concern for me and for others on the 2005 Selection Team. More specifically, there were issues with the quality of Ms. Scott's work product, punctuality, time management and organizational skills and communication. Ms. Scott's Performance Evaluation was problematic because the Underwriting Technician essentially does all the legwork for the Underwriter and is under strict deadlines. Strong time management skills, organizational skills and effective communication are essential to that position.

11.     During the interview process, I interviewed Ms. Scott together with Laura Hutchinson and Michi Smith interviewed Ms. Scott together with Frode Brudvik. During my interview with Ms. Scott, Ms. Scott was unable to answer basic questions regarding the duties and responsibilities of the position of Underwriting Technician. This raised additional concerns for me as it demonstrated that she did not read the position description nor did she take any time to research the position or ask any questions. Additionally, the Underwriting Technician position is a very intense and demanding position and I was concerned that she may not have been prepared for the demands of the position.

2

12.     Ms. Phelps interviewed very well; she was articulate, professional and very enthusiastic about the position.

13.     When Ms. Hutchinson, Ms. Smith and Mr. Brudvik and I evaluated and discussed the two candidates we were all in agreement that we could not offer the position of Underwriting Technician to Ms. Scott because she was not achieving in her current position and the Underwriting Technician position is significantly more demanding then the Underwriting Secretary position.  On the other hand, Ms. Phelps was qualified for the position, interviewed very well and there were no concerns raised about her during the interview process.  The 2005 Selection Team was all in agreement that the position should be offered to Ms. Phelps.

14.     During the selection process for the Underwriting Technician position in 2005 there was absolutely no discussion about the age, gender or race of the candidates and those factors did not play any part in the selection of the candidate.

## II.     2007 UNDERWRITING TECHNICIAN POSITION

15.     In June 2007, the Underwriting Technician reporting directly to me, Mr. Greg Davis gave his notice that he was resigning; therefore, the Underwriting Division had an opening for an Underwriting Technician position.  This particular position worked with and reported directly to me.

16.     The basic function of the Underwriting Technician position was to provide technical assistance to the Underwriter with appropriate approval to insure that the day-to-day activities are handled in a timely manner.  The specific responsibilities of this position were very involved because there are added job duties.  The specific responsibilities of the position are as follows:

    (a)     General technical support including answering the Underwriting Hunt Line;
    (b)     Rates all new business applications and issues required documentation.

3

(c)    Processes individual quotes and non-premium bearing changes;
(d)    Process all mid-term policy change requests by the Underwriters and Broker of Record Letters and issuing proper policy documentation;
(e)    Processes individual renewals, Moonlighting Resident and Off-Cycle no change renewals and pre-renewal projects as needed;
(f)    Reviews part-time rating applications and supplemental information for the evaluation of physician's initial request for or maintaining part-time status. Duties also include providing an initial recommendation for part-time status;
(g)    Coordinates the renewal process on assigned clinic and corporation accounts by screening renewal applications, producing and screening renewal packets and other evaluation tools used by the underwriter for evaluating the renewal terms of existing business. After renewing policies, reviews renewal documents for errors;
(h)    Processes Voluntary Cancellations and tail requests;
(i)    Types agendas, handle mail outs, coordinate meetings, and distribute reports for PREP and Committee on Underwriting;
(j)    Screen incoming PREP materials, maintain spreadsheets, statistical reports, and coordinate monthly board report;
(k)    Provide secretarial support to the Vice President of Underwriting when required;
(l)    Additional responsibilities as required.

(**"Underwriting Technician Position Description"**).  A true and accurate copy of the

Underwriting Technician Position Description is attached hereto and incorporated herewith as

**Exhibit "B"**.

17.    The particular position supports the PREP Committee that is a committee of

physicians that meets on a monthly basis to review physician-insured files.  The PREP

Committee is very demanding and the support work for the PREP Committee is very involved

and time consuming.  Additionally, the members of the PREP Committee are all physicians so

professionalism, strong communication skills and attention to detail are very important for this

position.

18.    Mr. Davis had given me one month's notice that he was leaving the company and

was scheduled to leave ISMIS on June 29, 2007.  The start date for this position was July 1,

2007.

4

19.    I had originally only received one application and resume for the position, that of an outside applicant, Mr. William Blake.  A true and accurate copy of Mr. Blake's resume is attached hereto and incorporated herewith as **Exhibit "C"**.

20.    Mr. Blake was a graduate of the University of Illinois.  Mr. Blake had work experience as a legal assistant and as a universal banker for Midwest Bank & Trust Company.

*3 mos.*

21.    It is customary in the Underwriting Division that all management level positions usually Assistant Vice Presidents and Directors interview candidates for the position of Underwriter or Underwriting Technician.  There were four individuals involved in the selection process: me, Laura Hutchinson, Michi Smith and Jacinth Stokes (the **"2007 Selection Team"**).

22.    Mr. Blake interviewed with Ms. Hutchinson and me.  He then interviewed separately with Ms. Smith and Ms. Stokes.

23.    During his interview with Ms. Hutchinson and me, Mr. Blake presented and interviewed very well as he was articulate, professional and very interested in the Underwriting Technician position.  Although Mr. Blake was an outside applicant, it was apparent during the interview that he had done a considerable amount of research about ISMIS and the position which demonstrated to me that he was eager, prepared and took initiative.

24.    On June 29, 2007, just prior to the expiration of the deadline for applications, Ms. Scott submitted an Internal Application For Posted Position for the Underwriting Technician.  With the Internal Application For Posted Position, Ms. Scott signed and authorized the review of her personnel file.  A true and accurate copy of Ms. Scott's application is attached hereto and incorporated herewith as **Exhibit "D"**.

25.    Prior to interviewing Ms. Scott, I reviewed her resume and her personnel file.

5

26.     Ms. Scott's personnel file raised some concerns for me. I had recalled when she had previously interviewed for an Underwriting Technician position that there were negative points and a few "does not meet expectations" noted in certain categories in her Performance Evaluations. During the two years since the prior interview her Performance Evaluations showed no improvement. Ms. Scott's most recent Performance Evaluations contained "does not meet expectations" noted in three (3) separate categories. The quality of Ms. Scott's work showed no improvement and her Performance Evaluations noted problems with providing secretarial support and communication problems.

27.     Ms. Scott interviewed with Ms. Hutchinson and me. She then interviewed separately with Ms. Smith and Ms. Stokes.

28.     During the interview with Ms. Hutchinson and me, I asked Ms. Scott to go over her work assignment in detail and she advised me that she takes the application for new business, reviews the application and enters the data into the computer. Ms. Scott's answers indicated to me that the support work she is currently doing is fairly basic. I attempted to determine from Ms. Scott if she exercised any independent decision making; however, it was apparent from her responses that she was unable to figure out fairly basic, routine issues. For example, Ms. Scott stated that if a doctor applied for another policy she would question an Underwriter to determine whether there was a need for a new policy number Considering Ms. Scott had been screening and entering data for new business applications for three years, I would have expected her to have some understanding of how the underwriter determines whether there is a need for a second policy number because there are limited situations that require a second number. While she would still need an underwriters approval in this situation, she should be able to present the situation to the underwriter for approval rather than continuing to have no understanding of the

process and simply making an inquiry to an Underwriter. Her responses on this issue did not reflect the level of independent decision making required of the Tech position, and reflected a lack of progression in her current position.

29.     During the interview, I asked Ms. Scott to address her Performance Evaluations and to tell us why she should be promoted to Underwriting Technician. Ms. Scott's response was that she did not agree with her most recent Performance Evaluation and was in the process of writing a rebuttal.

30.     During the interview, I asked Ms. Scott what other functions other than new business screening she performs. Ms. Scott answered that she handled commissions. She stated that she prepares commission letters, gets the checks and mails them out. I found out later from Ms. Hutchinson that Ms. Hutchinson prepares the letters and Ms. Scott essentially puts the letters in the envelopes and mails them out.

31.     During the interview, I asked Ms. Scott what she has learned about the position and the responsibilities and duties of the Underwriting Technician. Ms. Scott could not answer the question. She stated that she did not have the time to investigate the position. This response was most concerning to me. I could not understand why Ms. Scott applied for a position she knew nothing about, nor did she make any effort to discover anything about the position in preparation for the interview. It was surprising to me that Ms. Scott did not know what the position of Underwriting Technician involved when she and Greg Davis, the person who held the position previously, were very good friends and ate lunch together regularly. It was equally surprising that Ms. Scott knew nothing of the position when she had been working in the Underwriting Division for over three years and Mr. Davis' job function in relation to the PREP Committee was very apparent.

32. Given Ms. Scott's Performance Evaluations and her responses to my questions, I did not believe Ms. Scott was the most qualified person for this position; in fact, I did not get the impression from Ms. Scott that she really wanted the position.

33. Although the ultimate decision as to who would be hired for the Underwriting Technician position would be strongly based on my opionion, , I did not make a recommendation to the VP of Underwriting until speaking with the 2007 Selection Team to obtain their feedback. The general consensus from the entire 2007 Selection Team was that Ms. Scott should not be hired for the position of Underwriting Technician. Other members of the 2007 Selection Team voiced the following concerns to me: (i) she was completely unaware of the job duties and responsibilities; (ii) she misrepresented her involvement in relation to certain projects for example the commission letters; (ii) she was unable to demonstrate or articulate any reason for a promotion; (iii) her current job duties were very basic compared to the requirements of the Underwriting Technician responsibilities and she was not performing well in her current position; (iv) she made no effort to find out about the position or do any research into the position requirements; and (v) she expressed no enthusiasm for or interest in the position.

34. The general consensus among the 2007 Selection Team was that if we hired Ms. Scott for the position of Underwriting Technician we would be setting her up for failure and that would not be fair to her or to the Underwriting Division.

35. Ms. Scott's age, race or gender was not discussed during the selection process and did not in any way factor into the selection process. There was no discriminatory motive behind my selection of Mr. Blake, nor did I feel as though anyone else was acting with any discriminatory motive. Everyone on the 2007 Selection Team gave objective, sound reasons for

8

recommending Mr. Blake for the position of Underwriting Technician and not recommending Ms. Scott.

36. I have personal knowledge of the facts set forth in this affidavit, and if called as a witness in this matter, could and would competently testify thereto.

FURTHER AFFIANT SAYETH NAUGHT.


_____
Sheila B. Coghlan

Subscribed and Sworn Before Me On
This _____ day of November, 2007


_____
Notary Public

9



# BEERMANN
# SWERDLOVE

### LLP

### ATTORNEYS

| | | | |
|---|---|---|---|
| Lawrence R. Barezky | Michael C. Craven | Howard A. London | Stephanie G. Sadow |
| Alvin R. Becker | Howard C. Emmerman | Katarinna McBride | Catherine M. Stone |
| Miles N. Beermann | Thomas T. Field | Kathryn L. Mickelson | Jacqueline J. Torshen |
| Erin J. Bognar | Lyle S. Genin | Maribeth Olenski | Shana L. Vitek |
| Julie P. Brett | Katherine A. Grosh | Stefania Pialis | Jessica L. Winkler |
| Deane B. Brown | Pamela J. Hutul | Jared B. Pinkus | William Woloshin |
| Bradley T. Cheskes | Herbert A. Kessel | James M. Quigley | William A. Zolla II |

OF COUNSEL
Nathan B. Swerdlove

## 1958 50th 2008
## ANNIVERSARY

March 5, 2008

**VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED
AND REGULAR MAIL**

Ms. Kathleen N. Zackiewicz, RN
Director of Patient Services
Hammond Clinic LLC
7905 Calumet Avenue
Munster, Indiana 46321

     Re:   <u>Sakie Scott</u>

Dear Ms. Zackiewicz:

     Please be advised that I am an attorney with the law firm of Beermann Swerdlove LLP and we represent Illinois State Medical Insurance Services, Inc. (**"ISMIS"**). The following is in response to your letter dated February 25, 2008 to Donna Gentile-Karas.

     On January 29, 2008, Ms. Sakie Scott advised Human Resources at ISMIS that she was instructed by her physician Dr. Martini at the Hammond Clinic that she was not to return to work without further notice due to a "heart condition." Pursuant to ISMIS Company policy, Ms. Scott was provided certain documents to complete in order to take medical leave and short term disability, including a Certification of Physician Form. The Certification of Physician form states on the form in bold-face type "TO BE COMPLETED BY PHYSICIAN."

     As of February 4, 2008, ISMIS had still not received a completed Certification of Physician form for Ms. Scott. On February 4, 2008, Ms. Donna Gentile-Karas, Assistant Vice-President, Human Resources at ISMIS, sent directly to Dr. Mohamed Martini via facsimile and U.S. Mail a detailed letter requesting that Dr. Martini complete the Certification of Physician form that was enclosed with the letter and provide the information requested therein via mail or fax. Also enclosed with the letter was a copy of the Hammond Clinic LLC HIPAA Disclosure/Disability Department form that was signed by Ms. Scott and an Authorization for Medical Records and Report signed by Ms. Scott. No response was ever received from Dr. Martini.

161 NORTH CLARK STREET • SUITE 2600 • CHICAGO, ILLINOIS 60601 • TELEPHONE (312)621-9700 • FACSIMILE (312)621-0909 • WWW.BEERMANNLAW.COM

1700 GREEN BAY ROAD • SUITE 200 • HIGHLAND PARK, ILLINOIS 60035 • TELEPHONE (847)681-9600 *(BY APPOINTMENT ONLY)*



**BEERMANN**
**SWERDLOVE**

LLP

ATTORNEYS

Ms. Kathleen N. Zackiewicz, RN
March 5, 2008
Page 2

On February 14, 2008, Ms. Scott faxed to ISMIS the Certification of Physician form; however, it was completed by Brian Kraus. ISMIS had no prior documentation reflecting that Brian Kraus was treating Ms. Scott, nor was there anything on the form to indicate that Mr. Kraus was a physician.

On February 14, 2008, I called the Hammond Clinic at (219)836-5800. I was attempting to contact Dr. Martini's office and I was told by someone at your administrative offices that no one in Dr. Martini's office was available. I was then directed to Susan Archie.

I identified myself to Ms. Archie and advised her that I was an attorney representing ISMIS. I advised her that an employee of ISMIS, Ms. Sakie Scott was being treated at the Hammond Clinic and that ISMIS was processing Ms. Scott's documentation for medical leave and for short term disability. I advised Ms. Archie that Ms. Scott had submitted to ISMIS a Certification of Physician form that was completed by Brian Kraus. I advised Ms. Archie that I needed to confirm that Brian Kraus was a physician. Ms. Archie advised me that Brian Kraus is not a physician and that he is a nurse practitioner. I advised Ms. Archie that ISMIS was advised that Ms. Scott was being treated by Dr. Martini and that ISMIS had received a prior note signed by Dr. Martini. I then inquired as to why Brian Kraus as opposed to Dr. Martini signed a form titled "Certification of Physician" that specifically contained instructions that it was to be completed by a physician. Ms. Archie responded that she did not know and could not understand why the physician did not complete the form. I then asked Ms. Archie if the Hammond Clinic had a policy that specifically permitted nurse practitioners to complete Certification of Physician forms. Ms. Archie advised that she was unaware of any such policy.

I advised Ms. Archie that pursuant to the ISMIS policy, a Certification of Physician form had to be completed by a physician in order to process an employee request for medical leave and short term disability. I advised Ms. Archie that ISMIS had not received a properly completed Certification of Physician form from Dr. Martini and that in the event no such documentation was promptly provided to ISMIS, the medical leave request and short term disability request could not be processed for Ms. Scott. I requested that Ms. Archie direct me to someone at the Hammond Clinic who could ensure that the Certification of Physician form was properly completed by a physician. Ms. Archie advised me that she would look into this matter and that someone would follow up with me.

As of February 20, 2008, ISMIS did not receive a completed Certification of Physician form for Sakie Scott from Dr. Martini, nor did ISMIS receive a completed Certification of Physician form completed by a physician. No one at the Hammond Clinic ever contacted me to advise me that your Nurse Practitioner's complete and sign Disability forms and that is your policy. More importantly, no one at the Hammond Clinic has ever advised me, Ms. Gentile-Karas or anyone at ISMIS why a form titled "Certification of Physician Form" that states in

# BEERMANN
# SWERDLOVE

LLP

ATTORNEYS

Ms. Kathleen N. Zackiewicz, RN
March 5, 2008
Page 3

bold-face type **"TO BE COMPLETED BY PHYSICIAN"** could not be completed by a physician at the Hammond Clinic and promptly returned to ISMIS as requested.

If you have any further questions regarding this matter, please contact me directly.

Yours very truly,

BEERMANN SWERDLOVE LLP

Stefania Pialis

cc:    Al Allphin
       Laura Hutchinson
       Donna Gentile-Karas
       Sakie Scott

 Hammond Clinic LLC

February 25, 2008

7905 Calumet Avenue, Munster, Indiana 46321    219/836-5800
11355 West 97th Lane, St. John, Indiana 46373    219/365-5577
9800 Valparaiso Ct., Munster, Indiana 46321    219/934-9800

Donna Gentile-Karas
Assistant Vice President, Human Resources
20 North Michigan, Suite 700
Chicago, Illinois  60602

RE:    Sakie Scott
       416 Merrill
       Calumet City, Illinois  60409

Dear Ms. Gentile-Karas:

Our above named patient has brought to our attention that she received a letter of termination from Illinois State Medical Insurance Services, Inc., her employer.

There is an erroneous statement in Ms. Scott's Notice of Corrective Action. That statement is a follows: "A telephone call was placed to the Hammond Clinic Administrative offices and Ms. Susan Archie confirmed that Brian Kraus was not a doctor, he was a nurse practitioner.  Ms. Archie also confirmed that it is not the policy or practice of the Hammond Clinic to have nurse practitioners complete physician certification forms and that those forms should be completed by a physician."

Susan Archic denies speaking to anyone from your company.  Our Nurse Practitioners at Hammond Clinic indeed do complete and sign Disability forms and that has been our policy for years.

If you have any questions, I can be reached directly at 219-836-4653.

Sincerely,
HAMMOND CLINIC LLC

Kathleen M. Zackiewicz, RN
Director of Patient Services

Susan Archie
Supervisor/HIPAA
Compliance Officer
Disclosure & Disability

Cc:    Alan Allphin
       Laura Hutchinson
       Sakie Scott

Medical Director
Cynthia J. Sanders, M.D., FC.C.P.

Administrator
Beverly DeLao

*Illinois State Medical rance Services, Inc.*



# ISMIS

**MANAGERS OF THE ISMIE MUTUAL INSURANCE COMPANY**

February 20, 2008

**VIA FEDERAL EXPRESS**
**OVERNIGHT DELIVERY**

Ms. Sakie Scott

Dear Ms. Scott:

Due to your excessive absenteeism and resulting failure to adequately perform your job your employment with Illinois State Medical Insurance Services, Inc. has been terminated effective today February 20, 2008. Enclosed please find the Notice of Corrective Action Form setting forth in greater detail the basis for your termination.

Any personal belongings that were in your desk will be sent to your home address. Please note that COBRA information is enclosed and on March 5, 2008 Illinois State Medical Insurance Services, Inc. will send out to you via mail a check representing the balance of your vacation pay.

Sincerely,

Donna Gentile-Karas
Assistant Vice President, Human Resources

Enclosures

cc:    Alan Allphin
       Laura Hutchinson
       File

Illinois State Medical Society        Illinois State Medical Insurance Services, Inc.
ISMIE Mutual Insurance Company

## NOTICE OF CORRECTIVE ACTION

Name:  Sakie Scott                                   Division:  C

Job Title:  Underwriting Secretary                   Date:  2/20/08

---

**Corrective Acton Taken:**

X        Termination

**Performance or behavior in need of correction:**

As of January 29, 2008, Sakie Scott utilized one (1) vacation day, five (5) personal days, and five (5) sick days in 2008.

On January 29, 2008, Ms. Scott contacted her supervisor Laura Hutchinson and advised her that she would be absent indefinitely due to medical issues. On January 29, 2008, Donna Gentile-Karas, the Assistant Vice President of Human Resources spoke with Ms. Scott via telephone and advised her that she was eligible for short term disability and Family and Medical Leave ("FMLA"); however, Ms. Scott would have to complete and provide the information required in the forms and the policies in order to be eligible for either short term disability or FMLA leave.

On January 29, 2008, Human Resources sent Ms. Scott via facsimile the Leave Act Request Form and requested that Ms. Scott complete the form and have the Certification of Physician filled out by her treating physician and returned to Human Resources immediately.

On February 4, 2008, Human Resources received via facsimile the Certification of Physician form completed by Ms. Scott as opposed to a physician as required by the Company policy.

On February 4, 2008, Human Resources sent a letter via facsimile to Dr. Mohammed Martini of Hammond Clinic, Sakie Scott's treating physician requesting that Dr. Martini complete and return the Certification of Physician form. Enclosed with the letter were a Certification of Physician form and a copy of the Authorization for Medical Records and Reports signed by Sakie Scott. Human Resources has not received anything from Dr. Martini.

Ms. Gentile-Karas has had numerous telephone conversations with Ms. Scott advising her that in order to get paid for short-term disability or to take leave pursuant to the FMLA, Ms. Scott must provide a Certification of Physician form completed by her treating physician.

On February 6, 2008, Human Resources sent a letter to Ms. Scott via regular mail and certified mail with detailed instructions of the documentation required in order to process the FMLA leave or short term disability for Ms. Scott. Enclosed with that letter were copies of the Company's Short Term Disability policy, the Company's FMLA policy and the letter sent to Dr. Martini.

On February 12, 2008, Human Resources had still not received a signed Certification of Physician form from Sakie Scott or Dr. Martini. On February 12, 2008, Human Resources sent via Federal Express overnight delivery another letter to Sakie Scott advising her that she has still not provided a fully completed Leave Act Request Form or Certification of Physician form as required to process the FMLA leave request or short term disability and further advising her that if these documents are not received, she will be subject to disciplinary action up to and including termination. The February 12, 2008 letter enclosed a copy of the February 6, 2008 letter and copies of the Company's FMLA policy and short term disability policy.

On February 13, 2008, Ms. Gentile-Karas spoke with Sakie Scott via telephone. Sakie Scott confirmed that she had received both the February 6, 2008 letter and the February 12, 2008 letter from Human Resources. Ms. Gentile-Karas advised Ms. Scott that it was imperative that Ms. Scott provide the Certification of Physician form completed by Dr. Martini, her treating physician immediately.

On February 14, 2008, Human Resources received via fax a Certification of Physician form for Sakie Scott completed by Brian Kraus. Brian Kraus was not previously identified by Sakie Scott as her treating physician. A telephone call was placed to the Hammond Clinic Administrative offices and Ms. Susan Archie confirmed that Brian Kraus was not a doctor, he was a nurse practitioner. Ms. Archie also confirmed that it is not the policy or practice of the Hammond Clinic to have nurse practitioners complete physician certification forms and that those forms should be completed by a physician.

On February 15, 2008, Ms. Gentile-Karas advised Ms. Scott via telephone that the Certification of Physician form that she submitted was unacceptable because it was not completed by a physician.

As of February 19, 2008, Ms. Scott has been absent from work over 4 weeks/21 working days without any indication that she plans to return to work and Human Resources has not received a fully completed Leave Act Request Form with a Certification of Physician completed by a physician. Ms. Scott has not submitted any documentation proving that she is under the active care of a physician identifying the diagnosis/nature of a serious health condition or disability or the expected duration of the serious health condition or disability as required by the Company's short-term disability policy and the Company's FMLA policy.

Because of Sakie Scott's egregious abuse of the required attendance policy and resulting inability to perform her duties, Sakie Scott's employment is terminated effective immediately.

*Illinois State Medical I* ⬤ *rance Services, Inc.*    ⬤



# ISMIS

**MANAGERS OF THE ISMIE MUTUAL INSURANCE COMPANY**

February 20, 2008

Sakie A. Scott


Dear Sakie:

Although you are no longer employed by the Illinois State Medical Insurance Services Inc., you have the option of continuing your health and/or dental benefits under COBRA. If your spouse and/or dependent children were covered under the plan, they also have the option of continuing their benefits.

You have 60 days beyond your coverage termination date of February 29, 2008 to notify us of your election. If you wish to elect coverage for a child born or adopted during the period of COBRA coverage, you must apply for this coverage within 30 days of the event.

If you elect to continue your health and/or dental coverage, benefits will continue until:

▸ The expiration of 18 months following March 1, 2008;
▸ You or your dependent(s) become covered under any other group health plan, and that plan covers a pre-existing condition currently provided under the prior plan;
▸ You or your dependent(s) fail to pay the monthly premium for this coverage;
▸ You or your dependent(s) become eligible for Medicare; or,
▸ Our employee health or dental plan is no longer in force.

Continuation coverage is extended to a disabled individual for an additional 11 months (a maximum of 29 months), if the qualified employee or beneficiary is determined to be disabled under the Social Security Act at the time of the qualifying event or any time during the first 60 days of COBRA coverage. Notice of disability determination must be provided to Illinois State Medical Society within 60 days of the determination and before the expiration of the original 18 month continuation period. The extended maximum COBRA coverage period applies to any qualified beneficiary, not just to the covered employee.

Your first payment will be for the period beginning March 1, 2008, and ending March 31, 2008, and is to be remitted with the enclosed Notice/Election Form. **You will not be invoiced for this coverage. All subsequent payments must be remitted by the 15th of the month preceding the month of coverage.** Checks are made payable to Illinois State Medical Insurance Services Inc., and mailed to:

> Illinois State Medical Insurance Services, Inc.
> Attn:   Human Resources
> 20 N. Michigan Ave., Suite 700
> Chicago, IL 60602

COBRA Notification
Page 2

If this monthly premium payment is not received within 30 days of the first day of the coverage period, your coverage will be canceled.

Regardless of your election, you must complete and return the enclosed Notice/Election Form to Illinois State Medical Insurance Services Inc., Attn: Human Resources, at the above address. If you choose not to continue your coverage, it will automatically end after February 29, 2008.

Please feel free to contact me at (312) 551-2373 should you have any questions concerning the above.

Sincerely,

Chris Majerik
Human Resources Specialist


Enclosures:    COBRA Notice/Election Form
               Certificate of Group Health Plan Coverage

cc:    File

February 20, 2008

I have received notice of my option to continue health care benefits and the necessary information about COBRA to do so.

I understand that it is my responsibility to notify Human Resources if I elect continuation of my health and/or dental insurance.

Signed: _____    Date: _____



**COBRA NOTICE/ELECTION**
Effective 01/01/2004

Name  Sakie A. Scott

Social Security No.  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                              Employee No. 10343

I wish to continue the following employee benefits under the ISMIS Employee Health Plan:

|  | YES | NO |
|---|---|---|
| **Physicians ' Benefits Trust** | | |
| Single Coverage Only (Monthly Premium: $_____) | ☐ | ☐ |
| Single and Dependent Coverage (Monthly Premium: $_____) | ☐ | ☐ |
| **Unicare HMO:** | | |
| Single Coverage Only (Monthly Premium: $_____) | ☐ | ☐ |
| Family Coverage (Monthly Premium: $ 1,305.15 ) | ☐ | ☐ |
| **Ameritas Dental:** | | |
| Single Coverage Only (Monthly Premium: $ _____) | ☐ | ☐ |
| Family Coverage Only (Monthly Premium:  $119.75 ) | | |
| **Ameritas/VSP Vision:** | | |
| Single Coverage Only (Monthly Premium: $_____) | ☐ | ☐ |
| Emp + 1 Coverage Only (Monthly Premium: $_____) | ☐ | ☐ |
| Emp + 2 Coverage Only (Monthly Premium: $_____) | ☐ | ☐ |

_____    _____
Signature of Employee                                                          Date

_____    _____
Signature of Spouse/Dependent(s)                                        Date

**We must receive a completed copy of this notice, whether or not you choose to continue coverage.**

## CERTIFICATE OF GROUP HEALTH PLAN COVERAGE

**Important** - This certificate provides evidence of your prior health coverage. You may need to furnish this certificate if you become eligible under a group health plan that excludes coverage for certain medical conditions that you have before you enroll. This certificate may need to be provided if medical advice, diagnosis, care or treatment was recommended or received for the condition within the 6-month period prior to your enrollment in the new plan.

If you become covered under another group health plan, check with the plan administrator to see if you need to provide this certificate. You may also need this certificate to buy, for yourself or your family, an insurance policy that does not exclude coverage for medical conditions that are present before you enroll.

1. Date of this certificate: __February 20, 2008__

2. Name of group health plan: __Unicare (medical)  Ameritas (dental)__

3. Name of participant: ____Sakie A. Scott__

4. Identification number of participant:  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

5. Name of any dependents to whom this certificate applies: __Gregory & Sergio Scott__

6. Name, address and telephone number of plan administrator or issuer responsible for

   providing this certificate:          Chris Majerik
                                        Illinois State Medical Society
                                        20 N. Michigan, Ste. 700
                                        Chicago, IL 60602
                                        Phone: (312) 782-2749 ext 2373

7. For further information, call:  Chris Majerik, Human Resources Specialist

8. If the individual(s) identified in line 3 and line 5 has at least 18 months of creditable coverage (disregarding periods of coverage before a 63-day break), check here:✓_____

   and skip lines 9 and 10.

9. Date waiting period or affiliation period (if any) began: _____

10. Date coverage began: _____

11. Date coverage will end: __February 29, 2008 and is then eligible for COBRA__

    or check if coverage is continuing as of the date of this certificate: _____

*Note: Separate certificates will be furnished if information is not identical for the participant and each beneficiary.*

*Illinois State Medical I*  *ance Services, Inc.*



February 12, 2008

**VIA FEDERAL EXPRESS**
**OVERNIGHT DELIVERY**

Ms. Sakie Scott

Re:    Medical Leave

Dear Ms. Scott:

Enclosed herewith please find a copy of my letter to you dated February 6, 2008.  Please be advised that as of today, I have not received any response from you nor have I received the fully completed Leave Act Request Form or Certification of Physician as required.  Please send me the fully completed Leave Act Request Form and Certification of Physician immediately; otherwise, we will have no option but to proceed with disciplinary action up to and including termination.

Sincerely,

Donna Gentile-Karas
Assistant Vice President, Human Resources

Enclosures

cc:    Alan Allphin
       Laura Hutchinson
       File

*Illinois State Medical ● rance Services, Inc.* ●



**ISMIS**

MANAGERS OF THE ISMIE MUTUAL INSURANCE COMPANY

February 6, 2008

Ms. Sakie Scott

Re:    Medical Leave

Dear Ms. Scott:

I am writing to request you to provide a completed Leave Act Request Form including a fully completed Certification of Physician. You have been on medical leave since January 21, 2008. On January 21, 2008, you advised that you would be returning to work on January 29, 2008. On January 28, 2008, you advised that you would be on medical leave indefinitely. On January 29, 2008, I sent you via facsimile the Leave Act Request Form and requested that you complete the form and return it to me. On February 4, 2008, I received from you via facsimile a partially completed Leave Act Request Form that was not completed by a physician as required. The Certification of Physician section was partially completed by you, it was not signed by a physician and various questions were left blank.

Please be advised that Human Resources cannot process a request for Medical Leave without a fully completed Leave Act Request Form and certification of your health condition by your treating physician. Please provide the completed documentation no later than **February 8, 2008**.

Enclosed with this letter, please find a copy of the Illinois State Medical Insurance Service, Inc. ("**ISMIS**") Family and Medical Leave policy and Short-Term Disability policy for your information. Please note that in order to be eligible for Medical Leave, you must complete a Leave Act Request form and provide certification of your serious health condition. In order to be eligible for Short-Term Disability you must submit proof that you are under the active care of a physician and such proof must including the diagnosis, the nature of the disability and the expected duration of the disability. Furthermore, in order to demonstrate eligibility for Medical Leave and/or Short-Term Disability, a note from your attending physician must be provided every 14 working days while on Medical Leave or Short-Term Disability.

Enclosed herewith please find a copy of my letter to Dr. Martini, requesting that he provide information regarding your disability so that Human Resources can process your Leave Act Request Form.  Please be advised that it is **not** Human Resources' obligation to obtain this information, it is your obligation to provide the necessary documentation forthwith.  You have been on leave for two weeks and Human Resources has yet to receive the requisite information to process your request.  If I do not receive this information forthwith I will be unable to process your Leave Act Request Form, and I will be unable to process any request for Short-Term Disability.

Please contact me if you have any questions.

Sincerely,

Donna Gentile-Karas
Assistant Vice President, Human Resources

Enclosures

cc:    Alan Allphin
       Laura Hutchinson
       File

| INDEX: | VI.A-5 | PAGE: | 1 of 1 |
|---|---|---|---|
| SECTION: | BENEFITS – INSURANCE | EFFECTIVE: | August 16, 1982 |
| SUBJECT: | SHORT-TERM DISABILITY (STD) | REVISED: | July 1, 2004 |

## POLICY:

Employees are eligible for short-term disability (STD) coverage the first of the month following one year of employment.

STD provides an employee with 60% of their base salary during the medical leave period described below:

To qualify for short-term disability, the employee must:

- Be disabled for a minimum of five consecutive working days.

- Submit proof that they are under the active care of a physician. Such proof shall include the diagnosis/nature and expected duration of the disability;

- Demonstrate eligibility every <u>14</u> working days by submitting a note from their attending physician which includes the information immediately above. Demonstration of eligibility for STD due to maternity will be waived for the first six weeks. At that time, eligibility must be demonstrated by submitting a note from the attending physician, and then every <u>14</u> working days thereafter.

- If requested, employee shall authorize the Company to obtain additional medical information;

- Upon return to work, employee must submit a release from their attending physician describing work limitations, if any.

The STD period of 90 calendar days is retroactive to the date of eligibility and is offset by accumulated sick time, i.e., an employee with 10 days sick time will use those 10 days for the first 10 working days of the 90-day period. The balance of their 90 day period will provide payment at 60% of their base salary. Employee must exhaust accumulated sick time. The employee may choose to retain up to three sick days for use after disability.

There can only be one STD period for the same illness within a 12 month time frame.

All earned vacation and other personal benefits are preserved during STD, unless an employee chooses to use such time thereby foregoing the STD 60% payment. The employee would then receive full pay for the amount of vacation and/or personal time used. However, additional time will not be earned.

All insurance benefits will be maintained during STD.

The cost of STD coverage is paid by the Company.

*Medical*  *urance Services, Inc.*

# ISMIS

**MANAGERS OF THE ISMIE MUTUAL INSURANCE COMPANY**

February 4, 2008

**VIA FACSIMILE TO (219)836-4646**
**AND U.S. MAIL**

Dr. Mohamad Martini
Hammond Clinic LLC
7905 Calumet Avenue
Munster, IN, 46321

      Re:    <u>Patient Sakie Scott</u>

Dear Dr. Martini:

     I am the Vice President of Human Resources for Illinois State Medical Insurance Services, Inc. (**"ISMIS"**). I recently received a Family Medical Leave Act Request Form from Ms. Sakie Scott, an employee of ISMIS. Ms. Scott has indicated that she is currently under your care. Enclosed with this letter you will find a Certification of Physician form which has been signed by Ms. Scott and must be completed by a physician. Please complete the enclosed Certification of Physician form and return to me via facsimile to (312)782-2850 and mail. Enclosed you will also find a copy of the Hammond Clinic LLC HIPAA Disclosure/Disability Department form that has been signed by Ms. Scott.

     Please be advised that we require the following information to be provided:

    (1)    diagnosis/nature of disability;
    (2)    date disability began;
    (3)    whether patient is currently able to work;
    (4)    the estimated duration of the disability/inability to work;
    (5)    whether patient can return to light/restricted work;
    (6)    describe the restrictions and limitations (if any):
    (7)    the estimated duration of light/restricted work (if applicable):
    (8)    your name, address, telephone number, fax number and date.

Please note that Ms. Scott cannot be approved for Family Medical Leave until ISMIS receives the Certification of Physician form completed in its entirety and signed by you. Please also note that written verification of continued disability must be submitted by Ms. Scott every fifteen (15) days and that a written release to return to work must be submitted upon Ms. Scott's return to work.

If you have any questions regarding the completion of the Certification of Physician form please contact me directly.

Yours very truly,

Illinois State Medical Insurance Services, Inc.

Donna Gentile-Karas

cc:    Sakie Scott

Enclosures

..*nois State Medical* ⬤ *ance Services, Inc.* ⬤



**ISMIS**

MANAGERS OF THE ISMIE MUTUAL INSURANCE COMPANY

February 6, 2008

Ms. Sakie Scott

Re:    <u>Medical Leave</u>

Dear Ms. Scott:

I am writing to request you to provide a completed Leave Act Request Form including a fully completed Certification of Physician.  You have been on medical leave since January 21, 2008.  On January 21, 2008, you advised that you would be returning to work on January 29, 2008.  On January 28, 2008, you advised that you would be on medical leave indefinitely.  On January 29, 2008, I sent you via facsimile the Leave Act Request Form and requested that you complete the form and return it to me.  On February 4, 2008, I received from you via facsimile a partially completed Leave Act Request Form that was not completed by a physician as required.  The Certification of Physician section was partially completed by you, it was not signed by a physician and various questions were left blank.

Please be advised that Human Resources cannot process a request for Medical Leave without a fully completed Leave Act Request Form and certification of your health condition by your treating physician.  Please provide the completed documentation no later than **February 8, 2008**.

Enclosed with this letter, please find a copy of the Illinois State Medical Insurance Service, Inc. (**"ISMIS"**) Family and Medical Leave policy and Short-Term Disability policy for your information.  Please note that in order to be eligible for Medical Leave, you must complete a Leave Act Request form and provide certification of your serious health condition.  In order to be eligible for Short-Term Disability you must submit proof that you are under the active care of a physician and such proof must including the diagnosis, the nature of the disability and the expected duration of the disability.  Furthermore, in order to demonstrate eligibility for Medical Leave and/or Short-Term Disability, a note from your attending physician must be provided every 14 working days while on Medical Leave or Short-Term Disability.

Enclosed herewith please find a copy of my letter to Dr. Martini, requesting that he provide information regarding your disability so that Human Resources can process your Leave Act Request Form. Please be advised that it is **not** Human Resources' obligation to obtain this information, it is your obligation to provide the necessary documentation forthwith. You have been on leave for two weeks and Human Resources has yet to receive the requisite information to process your request. If I do not receive this information forthwith I will be unable to process your Leave Act Request Form, and I will be unable to process any request for Short-Term Disability.

Please contact me if you have any questions.

Sincerely,

Donna Gentile-Karas
Assistant Vice President, Human Resources

Enclosures

cc:    Alan Allphin
       Laura Hutchinson
       File

| INDEX: | VI.A-5 | PAGE: | 1 of 1 |
|---|---|---|---|
| SECTION: | BENEFITS – INSURANCE | EFFECTIVE: | August 16, 1982 |
| SUBJECT: | SHORT-TERM DISABILITY (STD) | REVISED: | July 1, 2004 |

## POLICY:

Employees are eligible for short-term disability (STD) coverage the first of the month following one year of employment.

STD provides an employee with 60% of their base salary during the medical leave period described below:

To qualify for short-term disability, the employee must:

- Be disabled for a minimum of five consecutive working days.

- Submit proof that they are under the active care of a physician. Such proof shall include the diagnosis/nature and expected duration of the disability;

- Demonstrate eligibility every 14 working days by submitting a note from their attending physician which includes the information immediately above. Demonstration of eligibility for STD due to maternity will be waived for the first six weeks. At that time, eligibility must be demonstrated by submitting a note from the attending physician, and then every 14 working days thereafter.

- If requested, employee shall authorize the Company to obtain additional medical information;

- Upon return to work, employee must submit a release from their attending physician describing work limitations, if any.

The STD period of 90 calendar days is retroactive to the date of eligibility and is offset by accumulated sick time, i.e., an employee with 10 days sick time will use those 10 days for the first 10 working days of the 90-day period. The balance of their 90 day period will provide payment at 60% of their base salary. Employee must exhaust accumulated sick time. The employee may choose to retain up to three sick days for use after disability.

There can only be one STD period for the same illness within a 12 month time frame.

All earned vacation and other personal benefits are preserved during STD, unless an employee chooses to use such time thereby foregoing the STD 60% payment. The employee would then receive full pay for the amount of vacation and/or personal time used. However, additional time will not be earned.

All insurance benefits will be maintained during STD.

The cost of STD coverage is paid by the Company.

# Hammond Clinic LLC

## HIPAA DISCLOSURE / DISABILITY DEPARTMENT

### REQUEST FOR THE COMPLETION OF PATIENT FORMS

DATE _2/4/08_                    CHART # _____

NAME _Sallie Scott_

SOCIAL SECURITY NUMBER _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_

DATE OF BIRTH _12/20/56_

PHYSICIAN TO SIGN FORM _MARTIN_

INJURY OR ILLNESS (Circle)    DATE OF ONSET _1/21/08_

1ST DAY OF DISABILITY _1/21/08_ — RETURN TO WORK _4/21/08_

_Sallie filled in dates_

HOSPITAL (IF APPLICABLE) _____

ADMISSION DATE _____ DISCHARGE DATE _____

| **PLEASE ALLOW 5 TO 7 WORKING DAYS FOR COMPLETION OF FORM(S)** |
|---|

FAX TO: _Il State Med The Services_ ATTENTION: _Donna Reves_ _Gentle S_

MAIL TO: _312 782 2850_

PICK UP: (PLEASE CIRCLE)
SPECIALTY CENTER        FAMILY WELLNESS _____ ST. JOHN _____

_Sallie Scott_

### PATIENT SIGNATURE

*(Only the patient may sign in accordance with Indiana and Federal law)*

Payment - check # _____        cash _10.00_

Amount collected _10.00_        date _2.4.08_

Employee Signature _low_

Form 30169 - revised 3/05



# Hammond Clinic LLC

☐ 7905 Calumet Avenue     Munster, Indiana 46321     Telephone 219-836-5800
☐ 9800 Valparaiso Court     Munster, Indiana 46321     Telephone 219-934-9800
☐ 11355 West 97th Lane     St. John, Indiana 46373     Telephone 219-365-5577

**FACSIMILE COVER SHEET**

ATTN:

TO: **SAKIE SCOTT**     COMPANY NAME: _____

FAX NUMBER: _312-782-2023_

FROM: _Liz RN / Dr. Prem_

SUBJECT: _back to work note_

DATE: _1/10/08_     TIME: _4:00p_

NUMBER OF PAGES (including cover sheet): _____

If there are any problems with this transmission, please contact: _____

---

# Hammond Clinic LLC

7905 CALUMET AVENUE
MUNSTER, INDIANA 46321
PHONE (219) 836-5800
www.hammondclinic.com

DATE _1/10/08_

TO: _whom it may concern_
    NAME OF FIRM

MR.
MRS.
MISS _Sakie Scott_ _____ HAS BEEN UNDER OUR

CARE SINCE _1/7/08_ FOR _chest pain_ AND IS

NOW RELEASED TO RETURN TO WORK ON _1/10/08_

_Dr. Prem /L Garcia RN_ , M.D.

Form No. 30090

onging to the
r entity named
n to any other
less otherwise
nure, copying,
l. If you have
se documents.

1/01/03

**Hammond Clinic LLC**

P000'0 06  01/22/08 8340935
P07. 2 4  10:16   murphyju
UNIC/HMO/J634
SCOTT SAKIE A                08420580
416 MERRILL
CALUMET CITY IL 60409
SCOTT, GREGORY T
708-539-4203  12/20/56     904

AGE: 51    SEX: M / F
WT:              B/P: 130
TEMP: 98.5    P: 64    RESP: 16

FAMILY DR. _____ Prem    Time called to room: 10³⁵

ALLERGIES: Latex yes/no    Current Medications
1. PCN                1. Toprol XL 100mg BID   5. _____
2. _____            2. micardis 80 mg        6. _____
3. _____            3. HCTZ 10 mg            7. _____
4. _____            4. _____               8. _____

CC/HPI: _____ chest pain, occ. short of breath x 2 days. _____
Stated on scale 1-10 pain is just slite discomfort. _____

ROS: _____

Past/Family/Social/History _____

Examination: _____

Assessment: _____

Plan: _____ 11:00 _____ pulse ox 97% _____

Disposition: RTW date: _____
Dr. # _____    Physician Signature: _____
REF COORD:  ( ) YES    ( ) NO
F/U Appt: _____    Date: _____
Time: _____    Dr.: _____
Nurse's Sig.: _____

The top copy of the form will be sent to Medical Records for posting in the patient's chart, the second copy will be sent to the primary care doctor, and the third copy is for Urgent Care. If the information has to go to Ref Coord. she will get the top copy first and then forward it to Medical Records

Form 31094

| DATE | DR. NO. | PROGRESS NOTES |
|------|---------|----------------|
| Consult Note from Dr. Reviewed by | 111 | 02-04-08 Pt here for B/P check. No problems c̄ meals. ⬛ P-60. Pt brought FMLA papers. advised her to take them to Disability depart. Dr Martini advised to add Norvasc 5 mg, 1 Po Qd #3 call to 708-868-5669. Pt verbally understanding. Pt given and appt made for 2-18-08 for B/P check ———— |

P000103106   02/04/08 8345826
P07262074  10:18   rays
UNIC/HMO/J634
SCOTT SAKIE A         ⬛
CALUMET CITY IL 60409
SCOTT, GREGORY T
708-539-4203  12/20/56      111

?  2-18-08 | 954 | Screen pre/post & DLCO testing done today. —R. Conery, RRT, CPFT

| Consult Note from Dr. Reviewed by | | |

FORM 30466

**Hammond Clinic – Cardiology Clinic**

| Date | Age | Progress Notes |
|------|-----|----------------|
|      | 5i  |                |

Allergies:

Medications: See List - Reviewed

Ht: Wt: B/P: P: R: T:

Consultation Requested by and Information Sent to:

P000103106   01/28/08  7654837
P072620       :22     reisd
UNIC/HMO,0634
SCOTT SAKIE A         08420580
416 MERRILL
CALUMET CITY IL 60409
SCOTT, GREGORY T
708-539-4203   12/20/56

**Reason for visit:** Flu, DM, CABG, HTN

**CC:**

**Social H:** ETOH     Occupation     Sub Abuse     Tobacco (Years)     Packs     Quit

**Past H:**

| DM | HTN | Dyslipidemia | (CAD) | (CABG) | PTCA |
|----|-----|--------------|-------|--------|------|

| CVA | CA | COPD | Asthma | BPH | Arthritis | PVD |
|-----|----|----- |--------|-----|-----------|-----|

**HPI:**

| | | | | Pain in: |
|--|--|--|--|----------|
| Chest Pain | Y | N | Dizziness Y / N | Shoulders Y / N |
| SOB | Y | N | LOC Y / N | Arms Y / N |
| DOE | Y | N | Presyncope Y / N | Neck Y / N |
| PND | Y | N | Leg Swelling Y / N | Jaw Y / N |
| Orthopnea | Y | N | Cough Y / N | Back Y / N |
| Palpitation | Y | N | Claudication Y / N | |

**Details:**

c/o ↑ BP

[handwritten notes - illegible]

Had stress Test 1/9/05 →

[illegible]

**Records Reviewed:** ___ **Labs Reviewed:** ___ **X rays Reviewed:** ___ **Stress Test Reviewed:** ___ **Echo Reviewed:** ___

**Fam H:** M- F- B- S- MGM MGF PGM PGF

**ROS: Sheet Reviewed** Date

| Constitutional | Eyes | ENT | Resp | CV | GU | GI | Neuro | Musc/Skel | Skin | Psych |
|----------------|------|-----|------|-----|-----|-----|-------|-----------|------|-------|
| Fatigue | Discharge | Earache | Cough | Chest Pain | Dysuria | Abd Pain | Confusion | Back Pain | Abscess | Anxiety |
| Fever | Itch | Hoarseness | Dyspnea | Diaphoresis | Frequency | Constipation | Headache | Gout | Eczema | Depression |
| Night sweats | Pain | Nasal Disch | Hemoptysis | DOE | Hematuria | Diarrhea | Parasthesia | Joint Pain | Itch | Insomnia |
| Weakness | Photophobia | Sore throat | Wheeze | Orthopnea | Vag. Bleed | Emesis | Seizures | Joint Swell | Rash | Nervous |
| Wt. Gain | Swelling | Tinnitus | Sputum | Palpitation | Vag. Disch | Melena | Weakness | Myalgia | Ulcers | Forgetful |
| Wt. Loss | Loss of Vision | Vertigo | | | ED | Nausea/vomiting | | Redness | Bruising | |

**Details:**

NORVASC PRESCRIBED ALREADY BY BACEVICH

Form 30063

Rev 12/04

**ISMIE Mutual Insurance Co., Inc.**
**Illinois State Medical Insurance Services, Inc.**
**Illinois State Medical Society**

## CERTIFICATION OF PHYSICIAN

This Certification of Physician form must be completed in order for disability benefits to be approved and processed. Part I is to the completed by the employee, and Part II is to be completed by the attending physician.

### PART I: TO BE COMPLETED BY EMPLOYEE:

Name:

Address:

Home Phone Number:

Social Security Number: -1092

#### Authorization for Medical Records and Reports

I, _____ hereby authorize my physician and any other person associated with my physician, to give to the representative of Illinois State Medical Insurance Services, Inc. any and all information which may be requested regarding my physical condition and treatment rendered and if necessary, allow them, or any physician appointed by them, to examine any x-ray pictures taken of me, or records regarding my condition or treatment.

Signature _____     Date 2/1/08

### PART II: TO BE COMPLETED BY PHYSICIAN:

Patient's Name _____

Diagnosis/Nature of Disability _____

Date Disability Began _____ 1/21/08

DIAGNOSIS: UNCONTROLLED HYPERTENSION;
ATYPICAL CHEST PAIN; CAD / CABG.

Is patient currently able to work?    No

Estimated duration of disability/inability to work?    FROM 01/21/08 TO 2/19/08

Can patient return to light/restricted work?    No

**Describe restrictions and limitations**    getting dizzy due to her
high blood pressure

Estimated duration of light/restricted work    till blood pressure
is better

Physician  Signature _____    Date  2/13/08

Print Name    MOHAMAD  MARTINI, MD.

Address    7905  CALUMET  AVE.

         MUNSTER , IN  46321

Phone Number    219-836-5800    Fax Number  219-836-4684

**Note to Physician:**  Written verification of continued disability must be submitted by employee every
15 days. Also, a written release to return to work must be submitted upon
employee's return to work.

**Return Completed form to:**

Human Resources
Illinois State Medical Insurance Services, Inc.
20 N. Michigan Avenue, Suite 700
Chicago, IL  60602

or Fax (312) 782-2850

**ISMIE Mutual Insurance Co., Inc.**
**Illinois State Medical Insurance Services, Inc.**
**Illinois State Medical Society**

## CERTIFICATION OF PHYSICIAN

This Certification of Physician form must be completed in order for disability benefits to be approved and processed. Part I is to the completed by the employee, and Part II is to be completed by the attending physician.

### PART I:  TO BE COMPLETED BY EMPLOYEE:

Name: _Sakie Scott_

Address:

Home Phone Number:

Social Security
Number: _1092_

### Authorization for Medical Records and Reports

_Sakie Scott_____ hereby authorize my physician and any other person associated with my physician, to give to the representative of Illinois State Medical Insurance Services, Inc. any and all information which may be requested regarding my physical condition and treatment rendered and if necessary, allow them, or any physician appointed by them, to examine any x-ray pictures taken of me, or records regarding my condition or treatment.

_Brian J. Kraus, FNP_____        _2/13/08_

Signature                                                              Date

### PART II: TO BE COMPLETED BY PHYSICIAN:

Patient's Name                         _SAKIE SCOTT_

Diagnosis/Nature of Disability    _UNSTABLE ANGINA VS ANGINA_
                                                  _+ CAD. SP CABG._
                                                  _HYPERTENSION_

Date Disability Began              _JAN 21, 2008_
                                                  _UNKNOWN_

Is patient currently able to work? _NOT AT CURRENT TIME_

Estimated duration of disability/inability to work? _Unknown at present_

Can patient return to light/restricted work? _will determine post testing_

Describe restrictions and limitations _will determine post testing_

Estimated duration of light/restricted work _Unknown at present_

Physician Signature _Brian Kraus FNP_ Date _2/1/08_

Print Name _Brian J. Kraus Cardiology_

Address _7905 Calumet Ave. Munster IN. 46321_

Phone Number _219-836-5800_ Fax Number _____

**Note to Physician:** Written verification of continued disability must be submitted by employee every 15 days. Also, a written release to return to work must be submitted upon employee's return to work.

**Return Completed form to:**

Human Resources
Illinois State Medical Insurance Services, Inc.
20 N. Michigan Avenue, Suite 700
Chicago, IL 60602

or Fax (312) 782-2850



# Memorandum

| | |
|---|---|
| **Date:** | March 1, 2007 |
| **To:** | Block; Fowler; Fritz; Maes; Thiemann |
| **Cc:** | Allphin; Coghlan; Evans; Koves; Smith; Stokes |
| **From:** | Laura C. Hutchinson |
| **Subject:** | Minutes of PUMA Meeting on March 1, 2007 |

1. **Imaging Project:** There is one pending issue: the Renewal packet (headings). Also, establish a PREP Workflow -- implementation target date is April 1st.

2. **Web Site:** March 15th announced in E-News to policyholders and the brokers.

3. **Companion Endorsements:** Automate the addition and deletion of these endorsements. In testing with Ron Fowler.

4. **SIR/Infinity (Keith):** Currently on hold. Design memo has been sent to Steve Maes; billing questions for Claims from IS are still pending answers.

5. **Renewal Letters:** A tail quote will need to be a part of the renewal letters for all policies. For clinics, provide a quote for the corporation and each of the physicians. Target date is 04/01/07.

6. **Dividend Plan:** We continued discussion of implementation issues: calculate at first $1m; determine continuous coverage at the account level; do not include PCF amount. April 1st is the cut-off date for entering retro changes and reinstatements.

7. **Policy Status Types:** The submission binder issue was discussed; Claims should be sent an e-mail notification. Address to Kelly Kehoe and cc: Christine Renfro, Larry Szatkowski and Keith Evans.

8. **Access to PUMA and ImageRight outside of office:** Steve Maes is proceeding with implementation for U/W Management by mid-March.

9. **New PUMA Reports for Allphin:** New Business and Cancellations; excel spreadsheet; target date is 03/01/07. In testing with Ron Fowler. Another report has been added - Clinic Tracking.

10. **PUMA Quote Letters:** Keith distributed quote letters for individuals and groups. Has been assigned to a programmer.

**Absent:** Fritz



PUMA Minutes030107.doc Properties

General | Summary | Statistics | Contents | Custom |

Created:    Thursday, March 01, 2007 1:01:00 PM
Modified:   Thursday, March 01, 2007 1:01:36 PM
Accessed:   Monday, December 03, 2007 9:12:56 AM
Printed:    Thursday, March 01, 2007 12:57:00 PM

Last saved by:      scott
Revision number:    2
Total editing time:  4 Minutes

Statistics:

| Statistic name | Value |
|---|---|
| Pages: | 2 |
| Paragraphs: | 17 |
| Lines: | 52 |
| Words: | 279 |
| Characters: | 1504 |
| Characters (with spaces): | 1803 |

OK    Cancel

# Memorandum

| | |
|---|---|
| **Date:** | March 1, 2007 |
| **To:** | Block; Fowler; Fritz; Maes; Thiemann |
| **Cc:** | Allphin; Coghlan; Evans; Koves; Smith; Stokes |
| **From:** | Laura C. Hutchinson |
| **Subject:** | Minutes of PUMA Meeting on March 1, 2007 |

1. **Imaging Project**: There is one pending issue: the Renewal packet (headings).   Also, establish a PREP Workflow – implementation target date is April 1st.

2. **Web Site**: March 15th announced in E-News to policyholders and the brokers.

3. **Companion Endorsements**: Automate the addition and deletion of these endorsements.  In testing with Ron Fowler.

4. **SIR/Infinity (Keith):** Currently on hold.  Design memo has been sent to Steve Maes; billing questions for Claims from IS are still pending answers.

5. **Renewal Letters:** A tail quote will need to be a part of the renewal letters for all policies.  For clinics, provide a quote for the corporation and each of the physicians.  Target date is 04/01/07.

6. **Dividend Plan:** We continued discussion of implementation issues: calculate at first $1m; determine continuous coverage at the account level; do not include PCF amount.  April 1st is the cut-off date for entering retro changes and reinstatements.

7. **Policy Status Types:** The submission binder issue was discussed; Claims should be sent an e-mail notification.  Address to Kelly Kehoe and cc: Christine Renfro, Larry Szatkowski and Keith Evans.

8. **Access to PUMA and ImageRight outside of office:** Steve Maes is proceeding with implementation for U/W Management by mid-March.

9. **New PUMA Reports for Allphin:**  New Business and Cancellations; excel spreadsheet; target date is 03/01/07.  In testing with Ron Fowler.  Another report has been added - Clinic Tracking.

10. **PUMA Quote Letters:** Keith distributed quote letters for individuals and groups.  Has been assigned to a programmer.


**Absent:** Fritz



**PUMA Minutes030107.doc Properties**

General | Summary | Statistics | Contents | Custom |

Created:    Thursday, March 01, 2007 1:01:00 PM
Modified:   Thursday, March 01, 2007 1:01:38 PM
Accessed:   Monday, December 03, 2007 9:21:36 AM
Printed:    Thursday, March 01, 2007 12:57:00 PM

Last saved by:    scott
Revision number:  2
Total editing time:  4 Minutes

Statistics:

| Statistic name | Value |
| --- | --- |
| Pages: | 2 |
| Paragraphs: | 17 |
| Lines: | 52 |
| Words: | 279 |
| Characters: | 1504 |
| Characters (with spaces): | 1803 |

OK | Cancel

# Memorandum

| | |
|---|---|
| **Date:** | April 5, 2007 |
| **To:** | Block; Fowler; Fritz; Maes; Thiemann |
| **Cc:** | Allphin; Coghlan; Evans; Koves; Smith; Stokes |
| **From:** | Laura C. Hutchinson |
| **Subject:** | Minutes of PUMA Meeting on April 5, 2007 |

1. **Imaging Project:** The fix for Renewal packet headings is pending.    Also, establish a PREP Workflow – implementation target date is now May 1st.

2. **Companion Endorsements:** Automate the addition and deletion of these endorsements. In testing with Ron Fowler.

3. **Renewal Letters:** A tail quote will need to be a part of the renewal letters for all policies. For clinics, provide a quote for the corporation and each of the physicians. Target date is 04/01/07. In testing with Laurel.

4. **Dividend Plan:** Calculate at first $1m; determine continuous coverage at the account level; do not include PCF amount. April 1st is the cut-off date for entering retro changes and reinstatements back into the 07/05 and 07/06 policy years. Free Medical Clinic policies will be included.

5. **PUMA Quote Letters:** Quote letters for individuals are done and groups should be in testing next week with Hugh. Target date is mid April. Keith to review test data.

6. **Non-Renewal Pending Flag:** E-mail sent to Thiemann 03/13/07; has been assigned to a programmer. Should be in testing next week.

7. **Commission:** Commission on renewals on or after 07/01/07 should be increased to 8.5%. To be implemented after this quarter.

8. **Renewal Worksheet:** Add revised line of authority. This has been completed.

9. **PUMA Letters:** E-mail to Thiemann 03/29/07 to add 5 letters to the table. In testing with Fowler.

**Absent:** Fritz

*additions*



**PUMA Minutes032907.doc Properties**

General | Summary | Statistics | Contents | Custom |

Created:    Thursday, August 09, 2002 9:35:00 AM
Modified:   Thursday, August 09, 2007 8:37:03 AM
Accessed:   Wednesday, November 28, 2007 4:15:16 PM
Printed:    Thursday, April 05, 2007 4:00:00 PM

Last saved by:      scott
Revision number:
Total editing time:  3 Minutes

Statistics:

| Statistic name | Value |
|---|---|
| Pages: | 2 |
| Paragraphs: | 17 |
| Lines: | 52 |
| Words: | 260 |
| Characters: | 1325 |
| Characters (with spaces): | 1604 |

OK    Cancel

# Memorandum

| | |
|---|---|
| **Date:** | March 26, 2007 |
| **To:** | Block; Fowler; Fritz; Maes; Thiemann |
| **Cc:** | Allphin; Coghlan; Evans; Koves; Smith; Stokes |
| **From:** | Laura C. Hutchinson |
| **Subject:** | Minutes of PUMA Meeting on March 22, 2007 |

1.  **Imaging Project:** The fix for Renewal packet headings is pending.   Also, establish a PREP Workflow – implementation target date is April 1st.

2.  **Companion Endorsements:** Automate the addition and deletion of these endorsements. In testing with Ron Fowler.

3.  **Renewal Letters:** A tail quote will need to be a part of the renewal letters for all policies. For clinics, provide a quote for the corporation and each of the physicians. Target date is 04/01/07.

4.  **Dividend Plan:** Calculate at first $1m; determine continuous coverage at the account level; do not include PCF amount. April 1st is the cut-off date for entering retro changes and reinstatements back into the 07/05 and 07/06 policy years.

5.  **Policy Status Types:** Submission Pending Report will be in the next executable.

6.  **Access to PUMA and ImageRight outside of office:** Steve Maes is proceeding with implementation for U/W Management.

7.  **New PUMA Reports for Allphin:**   New Business, Cancellations and Clinic Tracking need to be in excel spreadsheets; will be in the next executable.

8.  **PUMA Quote Letters:** Quote letters for individuals are done and groups should be in testing next week with Hugh.

9.  **Non-Renewal Pending Flag:** E-mail sent to Thiemann 03/13/07; has been assigned to a programmer.


**Absent:** Evans



**PUMA Minutes 032207.doc Properties**    ✕

General | Summary | Statistics | Contents | Custom |

PUMA Minutes 032207.doc

Type:      Microsoft Word 97-2003 Document
Location:  Z:\secrtary\1SCOTT SAKIE\PUMA\Minutes\2006 PUMA
Size:      32.0KB (32,768 bytes)

MS DOS name:  PU5717~1.DOC
Created:   Monday, March 26, 2007 7:45:22 AM
Modified:  Monday, March 26, 2007 7:45:13 AM
Accessed:  Wednesday, November 28, 2007 4:45:13 PM

Attributes:  ☐ Read-only   ☐ Hidden
             ☑ Archive     ☐ Encrypt contents

              [ OK ]    [ Cancel ]





Monday, November 19, 2007

## Active Task Assigned Report
### User: : Sakie Scott
### Flow: NEW BUSINESS Step: NEW BUSINESS - INDEX

View Report Description

**Total Task Assigned: 2**

| Number | User Name | File Number | Drawer | Document type | Date Initiated | Available Date | Description | Start Time | Current | Future | Hold |
|--------|-----------|-------------|--------|---------------|----------------|----------------|-------------|-----------|---------|--------|------|
| 1 | Sakie Scott | 64732 | Underwriting | Insured Correspondence | 11/6/2007 9:03:33 AM | 11/16/2007 3:27:58 PM | Reintialize please | 11/16/2007 3:27:31 PM | x | | |
| 2 | Sakie Scott | 64740 | Underwriting | Miscellaneous | 11/19/2007 7:40:50 AM | 11/19/2007 9:20:28 AM | Please reinitialize- see comment from Jon | 11/19/2007 9:20:28 AM | x | | |
| Totals | | | | | | | | | 2 | 0 | 0 |

Version: 3.4.1.5060

Show SQL Statement

**Scott Sakie**

| | |
|---|---|
| **From:** | Scott Sakie |
| **Sent:** | Monday, November 19, 2007 2:26 PM |
| **To:** | Hutchinson Laura |
| **Subject:** | Task Assigned: #64740 - Mategrano |

This task needs to be reinitialized tomorrow.

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL 60602
(312) 853-1617
(312) 782-2023 FAX

**Scott Sakie**

| | |
|---|---|
| **From:** | Scott Sakie |
| **Sent:** | Monday, November 19, 2007 2:24 PM |
| **To:** | Hutchinson Laura |
| **Cc:** | Moorer Tanya; Wideman Greg |
| **Subject:** | #64732 - Congress International |

FYI:  Prior balance will not allow me to reinitialize this policy.  Tanya is looking into matter and will let me know when to reinitialize.

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL  60602
(312) 853-1617
(312) 782-2023 FAX



# Active Task Assigned Report
### User: : Sakie Scott
### Flow: UW MAIL Step: INDEX

View Report Description

## Total Task Assigned: 1

| Number | User Name | File Number | Drawer | Document type | Date Initiated | Available Date | Description | Start Time | Current | Future | Hold |
|--------|-----------|-------------|--------|---------------|----------------|----------------|-------------|-----------|---------|--------|------|
| 1 | Sakie Scott | 06840 | Underwriting | Insured Correspondence | 12/7/2007 1:28:33 PM | 12/7/2007 3:02:33 PM | IMPORTED FROM PRINT DRIVER | 12/7/2007 3:02:33 PM | x | | |
| Totals | | | | | | | | | 1 | 0 | 0 |

Version: 3.4.1.5060

Show SQL Statement

*Sakie*
*Please handle .*



**Active Task Assigned Report**
User: : Sakie Scott
Flow: UW MAIL Step: INDEX

Monday November 05, 2007

View Report Description

**Total Task Assigned: 1**

| Number | User Name | File Number | Drawer | Document type | Date Initiated | Available Date | Description | Start Time | Current | Future | Hold |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Sakie Scott | ~153024 | Underwriting | Insured Correspondence | 10/31/2007 3:45:18 PM | 11/1/2007 2:02:59 PM | IMPORTED FROM PRINT DRIVER | 11/1/2007 2:02:59 PM | x | | |
| Totals | | | | | | | | | 1 | 0 | 0 |

Version: 3.4.1.5060

Show SQL Statement

ImageRight In Process Report

**IMAGERIGHT**

**Active Task Assigned Report**
User: : Sakie Scott
Flow: SUBMISSION MATERIALS Step: SUBMISSION-INDEX

Friday, November 30, 2007

View Report Description

**Total Task Assigned: 1**

| Number | User Name | File Number | Drawer | Document type | Date Initiated | Available Date | Description | Start Time | Current | Future | Hold |
|--------|-----------|-------------|--------|---------------|----------------|----------------|-------------|-----------|---------|--------|------|
| 1 | Sakie Scott | 34859 | Underwriting | New Business Application Worksheet | 11/29/2007 3:30:32 PM | 11/29/2007 3:30:34 PM | RE-INITIALIZE SUBMISSION | 11/29/2007 3:30:35 PM | x | | |
| Totals | | | | | | | | | 1 | 0 | 0 |

Version: 3.4.1.5060

Show SQL Statement

ImageRight In Process Report



### Active Task Assigned Report
User : : UNASSIGNED
Flow: SUBMISSION MATERIALS Step: SUBMISSION-INDEX

View Report Description

*unassigned sql*

**Total Task Assigned: 4**

| Number | User Name | File Number | Drawer | Document type | Date Initiated | Available Date | Description | Start Time | Current | Future | Hold |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | UNASSIGNED | ~159397 | Underwriting | New Business Application Worksheet | 11/30/2007 9:59:12 AM | 11/30/2007 9:59:13 AM | IMPORTED FROM PRINT DRIVER | 11/30/2007 9:59:13 AM | x | | |
| 2 | UNASSIGNED | ~159398 | Underwriting | New Business Application Worksheet | 11/30/2007 10:00:07 AM | 11/30/2007 10:00:07 AM | IMPORTED FROM PRINT DRIVER | 11/30/2007 10:00:07 AM | x | | |
| 3 | UNASSIGNED | ~159399 | Underwriting | New Business Application Worksheet | 11/30/2007 10:00:57 AM | 11/30/2007 10:00:58 AM | IMPORTED FROM PRINT DRIVER | 11/30/2007 10:00:58 AM | x | | |
| 4 | UNASSIGNED | ~159400 | Underwriting | New Business Application Worksheet | 11/30/2007 10:02:02 AM | 11/30/2007 10:02:02 AM | IMPORTED FROM PRINT DRIVER | 11/30/2007 10:02:02 AM | x | | |
| | | | | | | | Totals | | 4 | 0 | 0 |

Version: 3.4.1.1060

Show SQL Statement



**Active Task Assigned Report**

User: : Sakie Scott

Flow: NEW BUSINESS Step: NEW BUSINESS - INDEX

Friday, November 30, 2007

View Report Description

**Total Task Assigned: 1**

| Number | User Name | File Number | Drawer | Document type | Date Initiated | Available Date | Description | Start Time | Current | Future | Hold |
|--------|-----------|-------------|--------|---------------|----------------|----------------|-------------|-----------|---------|--------|------|
| 1 | Sakie Scott | 62900 | Underwriting | Application | 11/29/2007 2:24:16 PM | 11/29/2007 3:03:13 PM | APPLICATION-Willis | 11/29/2007 3:03:13 PM | x | | |
| Totals | | | | | | | | | 1 | 0 | 0 |

Version 3.4.1.5060

Show SQL Statement

*None on time error in imageright*



## Active Task Assigned Report
**User: : UNASSIGNED**
**Flow: NEW BUSINESS Step: NEW BUSINESS - INDEX**

From : November 30, 2007

View Report Description

**Total Task Assigned: 1**

| Number | User Name | File Number | Drawer | Document type | Date Initiated | Available Date | Description | Start Time | Current | Future | Hold |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | UNASSIGNED | –159422 | Underwriting | New Business Application Worksheet | 11/30/2007 10:13:47 AM | 11/30/2007 10:13:47 AM | IMPORTED FROM PRINT DRIVER | 11/30/2007 10:13:47 AM | x | | |
| Totals | | | | | | | | | 1 | 0 | 0 |

Version: 3.4.1.5060

Show SQL Statement

File Date: _May 5, 2008_

Case No: _08CV1457_

ATTACHMENT # _2_

EXHIBIT _B through FF_

**TAB (DESCRIPTION)**

_____



| From | Subject | Received | Size |
|------|---------|----------|------|

**Date: Older**

Hutchinson Laura    RE: Time off    Wed 9/26/2007 9:50 AM    4 KB

Okay 2 hours personal time.  This will leave a balance of .75 hours.
Laura C. Hutchinson Assistant Vice President, Underwriting ISMIE Mutual Insurance Company
312.580.6458 (Direct)

**Hutchinson L...    RE: Request for Vacation Day    Wed 9/19/2007 9:50 AM    4 KB**

Okay
Laura C. Hutchinson Assistant Vice President, Underwriting ISMIE Mutual Insurance Company
312.580.6458 (Direct)

Scott Sakie    Revised Time Off Request    Tue 12/19/2006 10:26 AM    3 KB

Laura, I would like to use two personal days for Thursday and Friday, January 4 – 5 , 2007.  Thank you.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL
60602 (312...

Scott Sakie    Time Off    Tue 12/19/2006 9:33 AM    3 KB

I would like to use my last two hours of vacation time on Friday, December 22, 2006, departing at 2:30 p.m.
I would like to request January 4-5, 2007 off for testing during week.  Will use 2 vacation days for time taken.
Sakie Aneshia Scott Underw...

Scott Sakie    FW: Early Dismissal    Wed 12/6/2006 9:05 AM    4 KB

Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL
60602 (312) 853-1617 (312) 782-2023 FAX

Scott Sakie    Early Dismissal    Wed 12/6/2006 8:56 AM    3 KB

Doctor had emergency procedure.  Appointment cancelled for today.  I have been rescheduled to December 18th.  Will need to leave at
1:30.  Please dock 2 hours pay, will not take lunch.   Total time requested is 3 hours.
Sakie Aneshia Scott Underwritin...

Scott Sakie    RE:  Early Dismissal    Mon 12/4/2006 1:35 PM    4 KB

I will skip my lunch (1 hour) and use .25 of vacation time.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL
60602 (312) 853-1617 (312) 782-2023 FAX

Scott Sakie    RE:  Early Dismissal    Mon 12/4/2006 1:31 PM    4 KB

I will skip my lunch and be docked for the .25. time.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL
60602 (312) 853-1617 (312) 782-2023 FAX

Scott Sakie    Revised FW: Early Dismissal    Mon 12/4/2006 12:40 PM    4 KB

Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL
60602 (312) 853-1617 (312) 782-2023 FAX

Scott Sakie    Early Dismissal    Mon 12/4/2006 12:39 PM    928 B

I need to leave at 3:00 pm on Wednesday, December 6, 2006, to see my cardiologist regarding my ekg.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL
60602 (312) 85...

Scott Sakie    Late Arrival    Thu 8/24/2006 9:07 AM    3 KB

I will work through my lunch today to make up for travel time if that's ok.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL
60602 (312) 853-1617 (312) 782-2023 F...

Scott Sakie    Late Arrival    Fri 7/14/2006 9:09 AM    3 KB

Laura, I will stay and work to make up my 45 minutes this evening.  If there are no tasks then I will deduct .45 minutes from my
personal time.  Thank you.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North ...

Scott Sakie    Time Off    Wed 6/21/2006 3:44 PM    3 KB

I will need to come in a little later tomorrow because of blood test.  I should be in a little after 10:30.  I will not be taking a lunch and
using 1.25 hours of Personal Time.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services...

Scott Sakie    Vacation    Fri 4/7/2006 9:33 AM    3 KB

I would like to take June 5-9 (Monday through Friday) for vacation.  Thank you.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL
60602 (312) 853-1617 (312) 782-20...

Scott Sakie    Time Off    Wed 4/5/2006 8:58 AM    3 KB

I would like to take off ½ vacation day on Friday, April 14th and 1 vacation day on Monday, April 17th.  Thank you.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL ...

Scott Sakie    RE: Early Departure    Thu 1/26/2006 11:14 AM    3 KB

9:00
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL
60602 (312) 853-1617 (312) 782-2023 FAX

| From | Subject | Received | Size |
|------|---------|----------|------|
| Scott Sakie | Early Departure | Thu 1/5/2006 9:29 AM | 3 KB |

Laura, I can stay until 1:25 today instead of 12:25.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617 (312) 782-2023 FAX <end>

| Scott Sakie | Time off | Fri 1/20/2006 10:00 AM | 3 KB |

No more time is needed for my husband unless an emergency arises. My son is scheduled for outpatient surgery on Thursday, January 26th at the Hammond Indiana clinic. According to the doctor, they will inject him with steroids and stitch his ear. We wil...

| Scott Sakie | RE: Early Departure | Thu 1/19/2006 11:20 AM | 4 KB |

Thank you.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617 (312) 782-2023 FAX

| Scott Sakie | Early Departure | Wed 1/18/2006 3:55 PM | 3 KB |

Laura, may I skip my lunch tomorrow and leave at 3:00. Will also work through lunch on Friday.
All test results are in for husband. Meet with Doctor. Thank you.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twen...

| Scott Sakie | Early Departure | Thu 1/12/2006 9:43 AM | 3 KB |

Laura, may I please leave at 3:30 p.m. today to go to hospital. Will skip lunch. Thanks.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617

| Scott Sakie | Time Off | Wed 1/4/2006 9:59 AM | 3 KB |

I would like to take off Monday, January 16th for a personal day. Thank you.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617 (312) 782-2023...

| Scott Sakie | RE: Early Departure | Fri 12/23/2005 1:18 PM | 3 KB |

Thank you.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617 (312) 782-2023 FAX

| Scott Sakie | Early Departure | Fri 12/23/2005 9:14 AM | 3 KB |

Laura, may I please leave at 3:25 this afternoon if there is nothing pending?
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617 (312) 782-2023...

| Scott Sakie | RE: Time Off | Thu 12/15/2005 12:31 PM | 3 KB |

Thank you.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617 (312) 782-2023 FAX

| Scott Sakie | Time Off | Tue 12/13/2005 2:37 PM | 3 KB |

Laura, may I please have December 27th, Tuesday off for a vacation day?
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617 (312) 782-2023 FAX

| Scott Sakie | Early Departure | Fri 12/2/2005 11:16 AM | 3 KB |

Frode, I am leaving at 3:30 and skipping my lunch to go to the hospital for this cold. I feel to bad. Thank you.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL ...

| Scott Sakie | Early Departure | Wed 11/30/2005 9:42 AM | 3 KB |

Michi, I have to go to the doctor today because she won't prescribe any medicine for my congestion without seeing me first because I am a heart patient. I will skip my lunch today and leave at 3:30 p.m. Thank you.
Sakie Aneshia Scott Underwriting Di...

| Scott Sakie | Time off | Tue 11/15/2005 10:48 AM | 3 KB |

Laura, I need to take off November 23rd , if that's ok. If not, I will try to make some other arrangements. Thanks.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, I...

| Scott Sakie | Time | Fri 10/28/2005 9:00 AM | 3 KB |

Michi, I need to leave at 3:30 and skip lunch. The insurance company would not approve my prescription that my doctor doubled up on, so I have to go to the clinic to get samples before they leave. Thanks.
Sakie Aneshia Scott Underwriting Division...

| Scott Sakie | Time Off | Fri 10/14/2005 11:21 AM | 3 KB |

Laura I need to take off Monday, November 7th for a vacation day. If I can, I'll try to make it in the afternoon. If not, I'll will call. Thank you.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Mich...

| Scott Sakie | Time off | Tue 10/11/2005 11:22 AM | 3 KB |

Laura, I need to take off for 2 hours on Monday. Hope to arrive between 11:00 and noon. I will skip lunch on Tuesday and Wednesday to make up.
Dr. needs to discuss my tests with me. Thanks.

| ! D | From | Subject | | ved | Size |
|---|---|---|---|---|---|
| | Scott Sakie | RE: Revised Time Off | | Tu... 21/2004 12:21 PM | 4 KB |

Thank you.
-----Original Message-----
From: Hutchinson Laura

| | Scott Sakie | Revised | | Tue 12/21/2004 10:10 AM | 2 KB |

Laura, I forgot that it was the end of the quarter.
I will ask my doctor to reschedule my tests for following week if that's ok and  I would still like to request to leave early Dec. 29th,
Mon, Tues and Wed time-off.  (Jan. 10th, - Jan....

| | Scott Sakie | Time Off | | Tue 12/21/2004 9:58 AM | 2 KB |

May I leave at 1:30 on December 29th f.for follow-up visit.   I don't generally take a lunch hour anyway.  The cold weather is too much
for me most of the time.  I will gladly make this time up or stay afterwards if the need arises.
Also, I will n...

| | Scott Sakie | RE: Time Off | | Thu 12/2/2004 10:51 AM | 4 KB |

Thank you.
-----Original Message-----
From: Hutchinson Laura

| | Scott Sakie | Time Off | | Thu 12/2/2004 10:20 AM | 2 KB |

Laura, may I please leave at 2:10 pm on Dec 16th, have to see my cardiologist.  Will not take a lunch break during Carol's absence to
make up time.
Thank you. <end>

| | Scott Sakie | FW: Personal Day | | Fri 11/12/2004 8:53 AM | 3 KB |

-----Original Message-----
From: Scott Sakie
Sent: Thursday, November 11, 2004 8:38 AM

| | Scott Sakie | Certificate of Mailing | | Mon 8/30/2004 9:26 AM | 4 KB |

Hi Corliss,
I have to go to the doctor today,leaving at noon.  Can you do the COM for me?  If not, whom shall I ask?
Have a Great Day.

| ! | □ | @ | From | Subject | | Received | ▽ | Size | ▽ |

**Date: Three Weeks Ago**

☐ Hutchinson L...    RE: 1/2 hour makeup time          Fri 11/16/2007 4:43 ...   4 KB
Okay
Laura C. Hutchinson Assistant Vice President, Underwriting ISMIE Mutual Insurance Company
312.580.6458 (Direct)

**Date: Older**

☐ Hutchinson L...    RE: Late Arrival          Thu 10/11/2007 8:5...   4 KB
Okay
Laura C. Hutchinson Assistant Vice President, Underwriting ISMIE Mutual Insurance Company
312.580.6458 (Direct)

Hutchinson Laura   RE: Extended time off        Thu 10/4/2007 4:17 PM   4 KB
Okay. Please note that after these 2 vacation days are used, you will have a zero balance of personal, sick and vacation time until 1/1/08.
Laura C. Hutchinson Assistant Vice President, Underwriting ISMIE Mutual Insurance Company
312.580.6458 (Dire...

☐ Hutchinson L...    **RE: EARLY dISMISSAL**        Thu 10/4/2007 11:0...   4 KB
Okay
Laura C. Hutchinson Assistant Vice President, Underwriting ISMIE Mutual Insurance Company
312.580.6458 (Direct)

Hutchinson Laura   Revised, Late Arrival        Wed 8/1/2007 11:58 AM   3 KB
Jacinth, I am in 11:36 am.
Laura, this time off is for personal time and no lunch on Aug 1st . (2.75 hours)
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 606...

Hutchinson Laura   RE: Revised Time Off        Wed 5/2/2007 9:43 AM   4 KB
Okay
Laura C. Hutchinson Assistant Vice President, Underwriting ISMIE Mutual Insurance Company
312.580.6458 (Direct)

Scott Sakie      Revised Departure Time        Fri 4/6/2007 7:43 AM   3 KB
Laura, I need to change my departure time today for 2:15pm to get to service.
No lunch will be taken and will use remainder for vacation time. I am starting today at 7:45am. Thank you.
Sakie Aneshia Scott Underwriting Division Illinois State Med...

Scott Sakie      Vacation time        Mon 4/2/2007 12:16 PM   3 KB
Laura: I would like to leave early at 3:30 p.m on April 6th, Friday (no lunch) and take off on April 9, 2007 (Monday) for vacation. Thank you.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Av...

Scott Sakie      Late Arrival        Wed 3/21/2007 9:43 AM   3 KB
I am in.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617 (312) 782-2023 FAX <end>

Scott Sakie      RE: Late Arrival        Tue 3/20/2007 4:22 PM   5 KB
Ok. Will do.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617 (312) 782-2023 FAX

Scott Sakie      Late Arrival        Tue 3/20/2007 4:20 PM   3 KB
Laura, I would like to come in at approximately 9:30, Tuesday, March 21, 2007. I will not take a lunch.
Thanks.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 6...

Scott Sakie      Early dismissal        Wed 2/14/2007 11:14 AM   3 KB
Michi, can I leave at 3:30 p.m. I parked on a partial snowbank at station, want to make sure I can get out before dark. Thanks. I am not taking lunch.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North M...

Scott Sakie      Vacation time        Mon 2/5/2007 4:09 PM   3 KB
Laura, I would like to take off Monday, February 12, and Tuesday, February 20. Thank you.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617 (...

Scott Sakie      Late Arrival        Mon 1/22/2007 12:03 PM   3 KB
Laura, I would like to use 3 hours of vacation time. Will start work now. NO lunch. Thanks.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-161...

Scott Sakie      Personal Day        Tue 1/2/2007 8:32 AM   3 KB
I would like to take off January 15, 2006, Monday as a Personal Day.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617 (312) 782-2023 FAX...

| | From | Subject | | |
|---|---|---|---|---|

| | Scott Sakie | RE: Revised FW: Early Dismissal | 12/4/2006 1:21 PM | 5 KB |

Added "December 6, 2006".
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617 (312) 782-2023 FAX

| | Scott Sakie | RE: Doctors statement | Mon 12/4/2006 8:37 AM | 5 KB |

Thank you.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617 (312) 782-2023 FAX

| | Scott Sakie | Vacation Day- November 22, 2006 | Tue 11/14/2006 3:56 PM | 3 KB |

Laura, May I please have November 22nd, next Wednesday off for a vacation day? Thank you.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617 (...

| | Scott Sakie | November 17th | Tue 11/14/2006 3:48 PM | 3 KB |

Laura, May I please take Wednesday, November 22nd off for a Vacation Day.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617 (312) 782-2023 FAX...

| | Scott Sakie | I am in. | Fri 9/29/2006 10:32 AM | 3 KB |

Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617 (312) 782-2023 FAX <end>

| | Scott Sakie | Personal time | Mon 9/25/2006 9:47 AM | 3 KB |

Laura, I need to sign financial aid release for my son for school. Can I leave at 4:00 p.m. today?
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 85...

| | Scott Sakie | RE: S Scott | Fri 9/22/2006 9:57 AM | 5 KB |

Thank you.
Sakie Aneshia Scott
Underwriting Division

| | Scott Sakie | Early Departure | Wed 6/28/2006 1:37 PM | 3 KB |

Laura, I would like to leave at 3:00pm on Friday, June 30th. Something was found on my mother's kidney in test. I am meeting her at doctor's office. No lunch. (Personal Time ½ hour) Thank you.
Sakie Aneshia Scott Underwriting Division Illinois St...

| | Scott Sakie | RE: Time off | Mon 4/24/2006 3:08 PM | 3 KB |

Vacation thank you.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617 (312) 782-2023 FAX

| | Scott Sakie | Time off | Mon 4/24/2006 2:02 PM | 3 KB |

I need to get the results of the bone scan that they took on my foot Thursday, April 27th They wouldn't give them to me over the telephone. I need to leave at 3:00 on Thursday. Thank you.
Sakie Aneshia Scott Underwriting Division Illinois State M...

| | Scott Sakie | Vacation Time | Thu 4/13/2006 8:41 AM | 3 KB |

I would like to take Monday through Friday June 5-9 off for vacation. Thank you.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617 (312) 782-...

| | Scott Sakie | RE: Early Departure | Mon 4/10/2006 11:15 AM | 6 KB |

Thank you, enjoy your Monday as well.
Sakie Aneshia Scott
Underwriting Division

| | Scott Sakie | Early Departure | Mon 4/10/2006 10:47 AM | 3 KB |

Hi Ms. Shepherd, I have to leave class early tomorrow to go back to work. Can I take the test right at 7 and leave right afterwards. Thanks.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenu...

| | Scott Sakie | RE: Vacation | Mon 4/10/2006 9:19 AM | 3 KB |

Thanks.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617 (312) 782-2023 FAX

| | Scott Sakie | Time Off | Mon 4/3/2006 8:49 AM | 3 KB |

I have to leave at 2:00 on April 5th, Wednesday regarding my foot. I am not taking a lunch and will use 1 hour personal time.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700

| | Scott Sakie | RE: Calling in sick | Fri 3/31/2006 8:37 AM | 4 KB |

Okay.
Sakie Aneshia Scott
Underwriting Division

| From | Subject | Received | Size |
|------|---------|----------|------|
| Scott Sakie | Early Departure | 3/28/2006 3:57 PM | 3 KB |

Laura, I don't feel well. May I leave at 4:15. Thank you.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617 (312) 782-2023 FAX <end>

| Scott Sakie | RE: Telephone Coverage During Luncheon | Thu 3/23/2006 5:20 PM | 4 KB |

I'll stay from 12:30 to 1:30
Sakie Aneshia Scott
Underwriting Division

| Scott Sakie | Time Off | Tue 3/21/2006 11:50 AM | 3 KB |

May I leave at 12:00 on Monday, March 27th ?    ½ personal day.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617 (312) 782-2023 FAX <end>

| Scott Sakie | RE: Early Departure | Mon 1/30/2006 3:08 PM | 4 KB |

Ok. I'll take ½ day for personal.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty North Michigan Avenue Suite 700 Chicago, IL 60602 (312) 853-1617 (312) 782-2023 FAX

| Scott Sakie | Early Departure | Mon 1/30/2006 2:15 PM | 3 KB |

Laura, I need to leave at 1:25 on next Monday, February 6th to have my son's stitches removed.  I will work through my lunches to make up time. Thank you.
Sakie Aneshia Scott Underwriting Division Illinois State Medical Services, Inc. Twenty No...

| Scott Sakie | Early Departure | Thu 10/13/2005 8:27 AM | 3 KB |

Laura, the train no longer makes the stop that I need to get to Indiana on time, due to low ridership.  I have to take the 1:35 bus instead.  Need to leave at 1:30.  So sorry for the inconvenience.  Thanks.
Sakie Aneshia Scott Underwriting Division I...

| Scott Sakie | Personal Day | Thu 11/11/2004 8:38 AM | 2 KB |

Laura,
May I please have Wednesday, November 24th off for a Personal Day.  I checked the calendar.  No one that is directly linked to my work for the day is out.  Thanks. <end>

| Scott Sakie | Time off | Wed 10/27/2004 8:36 AM | 2 KB |

Laura,
May I please request a personal day for Monday, November 1st?  Sean and Albert are the only ones scheduled off on our side.
Also, may I skip lunch and wait to pick up my medicine at Walgreens when the pharmacist has it ready this af...

| Scott Sakie | Dental Appointment | Mon 10/18/2004 9:31 AM | 2 KB |

Laura, I have a dental appointment on Thursday, October 21st at 5:00 p.m.  Will need to leave at 3:00 p.m. for the 3:15 train.  I will not go to lunch for that hour taken.
Thank you.  <end>

| Scott Sakie | Sick Day | Wed 9/8/2004 8:27 AM | 2 KB |

Melissa,
Sorry, I forgot to let you know that I took a sick day on August 27th.  Please note in my personnel records.  Laura was out on vacation and the time sheet had already gone in for the time period.  Thanks. <end>

| Scott Sakie | Doctor's Appointment on August 31, 2004 | Tue 8/24/2004 8:54 AM | 2 KB |

Dear Laura,
On August 30th, next Monday, I have to go to the doctor for my follow up to new medicine.  Because blood work is involved, I will need to leave midday.  Shortly after 12:00 p.m.  To make up for the hours, I worked through my lunch yest...



**UNDERWRITING TECHNICIAN**
**WEEKLY ACTIVITY LOG**

Overtime Hours: _____

**Jamie Donovan**

Please complete by Monday, 9:00 am

| August 2004 | | Locum Tenens | AHP Change | Suspended Coverage | Cancellations Received | BORs Processed |
|---|---|---|---|---|---|---|
| . | 23 | 1 | 1 | 0 | 0 | 0 |
| Tues. | 24 | 0 | 7 | 0 | 0 | 0 |
| Wed. | 25 | 1 | 0 | 0 | 5 | 0 |
| Thur. | 26 | 1 | 1 | 1 | 11 | 0 |
| Fri. | 27 | 0 | 0 | 0 | 1 | 0 |
| Totals | | 3 | 9 | 1 | 17 | 0 |

**Other Activities**

17 AHP Letters (M), 3 Peoria Med Soc Letters (M), 1 Peoria Med (W), 11 AHPs (W)

**Jamie Donovan**

# UNDERWRITING TECHNICIAN
## WEEKLY ACTIVITY LOG

Please complete by Monday, 9:00 am

Overtime Hours: _____

| August/September 2004 | Locum Tenens | AHP Change | Suspended Coverage | Cancellations Received | BORs Processed |
|---|---|---|---|---|---|
| . | 30 | 1 | 2 | 0 | 0 | 0 |
| Tues. | 31 | 0 | 2 | 0 | 0 | 0 |
| Wed. | 1 | | | Sick Day | | |
| Thur. | 2 | 2 | 1 | 1 | 0 | 0 |
| Fri. | 3 | 1 | 2 | 1 | 0 | 0 |
| Totals | | 4 | 7 | 2 | 0 | 0 |

**Other Activities**

1/1/05 Off-cycle Prep (Th, F), Peoria Medical Society requests (1-Th, 1-F),

Revised 8/03
z:\secretary\donovan\Excel Documents\Activity Log.xls

## SECRETARY
### Weekly Activity Log

**Name:**

**Sarah Maddock**

| 10-10-05 to 10-15-05 | Loss Histories Screened | New Biz Mailings | Manual Loss Histories | Bryn Mawr LH | Returned Mail | U/W Profiles | Dup Doc Req |
|---|---|---|---|---|---|---|---|
| Monday | | 2 | | | | | |
| Tuesday | | 2 | | | | | |
| Wednesday | | 1 | 5 | | | | 1 |
| Thursday | 1 | | 9 | | | | |
| Friday | 30 | | 10 | | 10 | | 2 |
| **Totals** | 31 | 5 | 24 | 0 | 10 | 0 | 3 |

**Total Documents Typed:**

| GW | JS | FB | LS | RS | JD | SA | Total |
|---|---|---|---|---|---|---|---|
| | | 3 | | | | | |
| | | 2 | | | | | |
| | | 7 | 2 | | | | |
| | | 2 | 2 | | | | |
| | | | | 1 | | | |
| 0 | 0 | 14 | 2 | 1 | 0 | 0 | 17 |

**Projects Worked On:** Filing renewal documents (Brenda) - 20; Request cases and file Certificate of Insurance (Frode);

Greg coverage - finish PREP letters, file charges; order supplies

Reception desk coverage:

Overtime:

| Carryover Assignments: | |
|---|---|
| Request for COI | |
| New Biz Mailings | |
| Letters/memos to be typed | |
| Document Requests | |
| Part-time Ltrs | |
| Loss Histories | XXX |

**Other Activities:**

Name: **Sarah Maddock**

## SECRETARY
### Weekly Activity Log

| 12-26-05 to 12-30-05 | Loss Histories Screened | New Biz Mailings | Policy Renewal Doc | AHP Histories | Loss Bryn Mawr LH | Returned Mail | UPU Return for Address | U/W Profiles | Dup Doc Req |
|---|---|---|---|---|---|---|---|---|---|
| Monday | CLOSED FOR HOLIDAY | | | | | | | | |
| Tuesday | PERSONAL DAY | | | | | | | | |
| Wednesday | 76 | | | | | | | | |
| Thursday | 25 | | | 22 | | | 5 | | |
| Friday | 11 | 13 | | | | | | | |
| Totals | 112 | 13 | 0 | 22 | 0 | 0 | 5 | 0 | 0 |

**Total Documents Typed:**

| | GW | JS | FB | LS | RS | JD | KN | SA | Total |
|---|---|---|---|---|---|---|---|---|---|
| | | | 1 | 1 | | | | | 2 |
| | | 1 | 4 | 2 | | | | | 7 |
| | | | 1 | 1 | | | | 1 | |
| Totals | 0 | 1 | 6 | 4 | 0 | 0 | 0 | 1 | 12 |

Overtime:

Reception desk coverage:

**Projects Worked On:**  State Board Loss History - 1;  Peoria Loss Histories - 6;  New Business Training with Sakie

**Carryover Assignments:**

| Request for COI | |
|---|---|
| New Biz Mailings | |
| Letters/memos to be typed | |
| Document Requests | |
| Part-time Ltrs | |
| Loss Histories | XXX |

**Other Activities:**



Sakie A. Scott

## UNDERWRITING SECRETARY
## WEEKLY ACTIVITY LOG – WEEK OF:   Monday, April 3, 2006

Overtime: 0

| April 2006 | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail | Conversion of 4 to 6 sided folders for prepping |
|---|---|---|---|---|---|---|---|
| MON | 3 | 6 | | | | | 4 |
| TUES | 4 | 1 | 1 | 23 | | | 11 |
| WED | 5 | 0 | | | | | 2 |
| THUR | 6 | 7 | | | 1 | | 2 |
| FRI | 7 | 2 | | | | | 12 |
| TOTAL | | 16 | 1 | 23 | 1 | | 29 |

Other Work:

Print Reports*-

Carryover: 0

Z:\sectiary\scott\activitylog

12/2/6/06

UNDERWRITING SECRETARY
WEEKLY ACTIVITY LOG – WEEK OF:  Monday, December 26, 2005

Sakie A. Scott

Overtime:  0

| December 2005 | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail | UPUs Returned for Signature |
|---|---|---|---|---|---|---|---|
| MON | 26 | HOLIDAY | | | | | |
| TUES | 27 | OFF | | | | | |
| WED | 28 | 4 | | 23 | | | |
| THUR | 29 | 2 | 3 | | | | 33 |
| FRI | 30 | 4 | 3 | | | | |
| | | 10 | 3 | 23 | | | 33 |

Other Work:                                                        Carryover:

Print Cancellation Report*-

Training with Sarah 1 hour daily

Z:\secretary\scott\activity\log

ACTIVITY LOG
@
7/18/2007

**SAKIE SCOTT**

Overtime: 0

| DAY | | NEW BUS. APPS. | FILES PREPPED AND SCANNED | LOSS HISTORIES | TYPING | RETURN LOSS HX | RENEWAL APPS SUBMISSION | PART TIME APPS. (BACKUP) | MAIL (BACKUP) | MIS ENTRIES |
|---|---|---|---|---|---|---|---|---|---|---|
| MONDAY | 9 | OFF | | | | | | | | |
| TUESDAY | 10 | OFF | | | | | | | | |
| WEDNESDAY | 11 | 13 | | 11 | 1 | | 3 | | | |
| THURSDAY | 12 | 15 | 2 | 3 | 1 | | 3 | | | |
| FRIDAY | 13 | 4 | | 4 | | | 1 | | | |
| TOTAL | | 32 | 2 | 18 | 1 | 0 | 7 | 0 | 0 | 0 |

| Other Work: | 0 | | | | Carryover Work: 4 APPLICATIONS | | | | | |



**Scott Sakie**

| | |
|---|---|
| **From:** | Scott Sakie |
| **Sent:** | Friday, December 02, 2005 1:47 PM |
| **To:** | Maddock Sarah |
| **Cc:** | Hutchinson Laura |
| **Subject:** | New Biz Training |

Hi Sarah, would you like to train next week from 3:00 to 3:30 everyday until you are comfortable?

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL  60602
(312) 853-1617
(312) 782-2023 FAX

**Scott Sakie**

| | |
|---|---|
| **From:** | Scott Sakie |
| **Sent:** | Wednesday, November 30, 2005 9:46 AM |
| **To:** | Maddock Sarah |
| **Subject:** | RE: New Biz Training |

Ok.

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, Il. 60602
(312) 853-1617
(312) 782-2023 FAX

**From:** Maddock Sarah
**Sent:** Wednesday, November 30, 2005 9:46 AM
**To:** Scott Sakie
**Subject:** RE: New Biz Training

Sure, I'll come over then.

**From:** Scott Sakie
**Sent:** Wednesday, November 30, 2005 9:44 AM
**To:** Maddock Sarah
**Subject:** New Biz Training

Hi Sarah, would you like to train at 10:00 today?

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL 60602
(312) 853-1617
(312) 782-2023 FAX

**Scott Sakie**

| | |
|---|---|
| **From:** | Scott Sakie |
| **Sent:** | Tuesday, November 22, 2005 8:57 AM |
| **To:** | Hutchinson Laura |
| **Subject:** | FW: Loss History Requests and New Business Screening |

I will begin training Sarah on Tuesday regarding the above subject matter.

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL  60602
(312) 853-1617
(312) 782-2023 FAX

**From:** Maddock Sarah
**Sent:** Monday, November 21, 2005 4:28 PM
**To:** Scott Sakie
**Subject:** RE: Loss History Requests

Sakie-

That time on Tuesday is fine with me.
Thanks!

-Sarah

**From:** Scott Sakie
**Sent:** Monday, November 21, 2005 4:18 PM
**To:** Maddock Sarah
**Cc:** Hutchinson Laura
**Subject:** Loss History Requests

Sarah, we can train on inactive loss history requests on Tuesday, November 29th from 2:15 to 2:45 and 2:45 to 3:45, on new business screening.   Let me know if you are available.  Thanks.

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL  60602
(312) 853-1617
(312) 782-2023 FAX

**Scott Sakie**

| | |
|---|---|
| **From:** | Scott Sakie |
| **Sent:** | Monday, November 21, 2005 4:18 PM |
| **To:** | Maddock Sarah |
| **Cc:** | Hutchinson Laura |
| **Subject:** | Loss History Requests |

Sarah, we can train on inactive loss history requests on Tuesday, November 29th from 2:15 to 2:45 and 2:45 to 3:45, on new business screening.   Let me know if you are available.  Thanks.

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL  60602
(312) 853-1617
(312) 782-2023 FAX



**ISMIE MUTUAL UNDERWRITING WORKFLOW PROCEDURE @ 2/1/07**      Page      3

## II. New Business Screener

1. Scanning Step from File Room: Sent to Screener.

2. PUMA and Image Right should be open.

3. Click on Workflow in Image Right Desktop.

4. Click on Workflow Indexing-keep screen open.

5. Click on Flow Description: New Business.

6. Step Description: Double click on.

7. View Application on Image View.

8. If policy active, go directly to Workflow Indexing and send to UW-Mail or manually route to underwriter.

9. Create PUMA record for new policies. This is the most important step to create the complete New Business process in PUMA before entering information into Workflow Indexing.

10. Prospective Applicant: Click on Desktop. Click on File Open. Click on PROS-Prosp Applic drawer. Enter applicant name or % to show all entries. Select Entry. Click open. Right click on document and cut. Right click on application and paste into application.

    Any folder in the Prospective Applicant Drawer with documents that are over 90 days old and with no documents will be deleted. This job runs every week day morning at 6 AM.

11. Send e-mail to Membership through Outlook.

12. Go back to Workflow Indexing.

13. Drawer: Defaults to UWTG-Underwriting.

14. Current File Number: displays a temporary Image Right number until you select Release document.

15. Policy Number: Enter number from PUMA record. Double tab to Insured Name.

16. Insured Name: Will populate to insured's name.

17. To Userid: Enter the underwriter selected which will automatically send the application to the appropriate Tech.

18. Folder Type: Defaults to New Business/Submission.

19. Document Type: Defaults to APLC-Application.

20. Click on Release to send document to Tech.

21. Message Bar-Task was released successfully. Click Okay.

22. Next application will be on Image View.


### LIST OF EXCEPTIONS FOR NEW BUSINESS SCREENER

- If you want to put a sticky on the application, click on sticky note on Image View toolbar, add your comments, click okay.
- When viewing application in Workflow indexing you can skip an application (this way you can analyze urgency by seeing effective dates) by clicking on Task and scroll down to "Get Next".
- During the Prospective Applicant process after pasting the document into the application you can delete the entry.

**New Business Documentation:**

# NEW BUSINESS SCREENING
## INDIVIDUAL and AHP (Separate Limits)

**A.    RESEARCH:**

1. If applicant is an **existing** ISMIE customer with a policy number **IN FORCE** or **RE- APPLICATION** is indicated, check to see if applicant is applying for services to be provided at a **FREE CLINIC.** If so, **a new policy number will need to be issued. NEVER USE** a prior policy number.

   - "**Manually Route**" the application back to the Underwriter, with a "Sticky Note" reading "**2nd Policy Number Approval Needed**" and type in **2nd Policy Number Needed** in the description of Image right.
     - ➢ If the application is returned as a task for "**Re-Application**"
       - ▪ Open the file in Image Right,
       - ▪ Update the policy number
       - ▪ Place a note in Notepad in PUMA including assigned underwriter's name.
       - ▪ Manually route the application back to Underwriter, or
     - ➢ Set up a new policy number.

2.  If the physician was issued an IPT (Partners in Risk) policy, a new policy number must be assigned.

3.  If the physician was non-renewed, manually route the application to Ron Koves and make an entry in Notepad.

4.  Verify that the employer, (if applicable) has an active policy in PUMA. Make an entry in Notepad.

5.  If the physician was previously insured with ISMIE under "Occurrence" coverage, a new number must be assigned as "Claims Made".

## B.    IMAGERIGHT ENTRY:

1. Click File Open and change drawer from **Underwriting** to **Prospective Applicant** .
Type in **Applicant Name** and Click ok.
If there is any supporting documentation in the Prospective Applicant drawer, cut and paste the document into the New Business temp folder.

2. Scroll to the Signature page of the application.
Click on *Edit*
Click *Page Description* and type Signature Page
Click on *Okay*.

## C.    PUMA ENTRY:

1.  Go to PUMA screen.

2.  At Search Window, enter applicant's name and social security number to see if previously insured.

3.  If the screen indicates that there is no physician listed with this name. *Clear Search Window* (This is very important).

4.  Type in Last Name and First Name of applicant and click enter.

5.  Click on *New Business* button. (The select category button will be displayed.)

6.  Click on the *Physician Professional Liability Insurance button* (Click on the "*Next*" button).

7.  Click  on Policy Category field for your desired category (i.e. *allied health professional, individual or clinic/corporation*).  Click the "*next*" button".

8.  Click on a state and click the "*next*" button.

9.  Click on the selection of a company button which will always be "*ISMIE Mutual*"

and click the "*next*" button.

10. "Claims Made" click finish.

11. Click on *Insured Search button* (to check to see if insured is already listed).

12. Choose the *individual category*.

13. Type insured name in the Insured Search Window under **Search Criteria**.

14. Press **Search** button.

15. If name appears with corresponding social security number, click on the name, then click the **Select** button.

16. If name does not appear, **press** the **Add button** to get the Add New Insured screen.

17. Add first name, last name, middle name (optional).

18. Press OK.

19. The name will automatically be added in the Individual Information window.

20. Tab and type in *Social Security Number,* if provided. If there is no social security number indicated, then click on enter and the computer will generate a Social Security number from the system. When the computer asks you whether to assign a new social security number, answer no and continue to enter information.

21. Tab to "*Title and Degree*" click on the type of degree the physician has indicated on Page 3, Line 14. *This is very important.*

22. Tab to "*Birth date*" and enter the date given.

23. **Add Microsoft Outlook customer** number in appropriate box after entry into Outlook.

24. Tab to "*Gender* " and click on the appropriate selection.

25. Tab to "*license number*" and enter the license number.

26. Tab to the "*board* " button and enter board certification, if any, from the application.

27. Tab to the "*residency*" button and make a selection based on the information provided from the application.

28. Tab to the "*previously insured*" button

If the insurance company is not listed but they have insurance, enter "Other Insurance". If the physician is coming from another to state to practice in Illinois, make the selection of "*out-of-state*", if the physician is just coming out of residency, click on the selection "*First time in practice*". If the physician is not coming out of residency but is still practicing, click on "*Moonlighting*".

29. **Assign Underwriter** field is required.

**For Applicants without a practice relationship:**
Underwriters are assigned on a rotating basis. The checklist is located under SCOTT 1/**Rotating List for Underwriters.doc**.

**For Applicants with a practice relationship:**
The existing Underwriter that is assigned to the practice relationship will be the same Underwriter assigned to the new applicant.

**NOTE:** Indiana applicants are assigned to Jon Olson, Iowa and Missouri applicants are assigned to Larry Szatkowski.

30. **Click** on **Save** button.

31. "**Signature Page Signed**" – Yes or No.

32. Keep Individual Information window open.

33. Press **Policy Address button**.

34. Enter All information.

35. Press **Save**.

36. Enter applicable Notepad entries for date application received, practice relationship, assigned underwriter's name and broker information.

D.    **Entering a PRODUCER ENDORSEMENT:**

   1. Enter policy number on search screen.
   2. Click on *Policy* button
   3. Click on *Endorsement*
   4. Select *Producer Change*
   5. Select *Brokerage* firm
   6. Select broker from list of names
   7. Select *New Business* for commission
   8. Select *Close* and *Refresh* the page on the abstract
   9. Destroy paper endorsement.

E.    **Entering New Business Ratesheet in PUMA**

1. Click on Letters
2. Type in policy number
3. Select *New Business Ratesheet for Ind/AHP*.
4. Fill in all sections of the left column and type last name, date and time at bottom of page.
5. Click on the "SAVE" button. To verify, click on the edit button to verify the ratesheet was saved in PUMA.

### F.   MIS INFORMATION: (for Membership Division) (INDIVIDUAL POLICY ONLY!!!)

*1.*   **Open Inbox** in Microsoft Outlook.

*2.*   Click on **General Forms**

*3.*   Click on Choose Forms and Open Puma New Business.

*4.*   Under "Find Existing Applicant" hit "OK" button.

*5.*   Type in Last Name of Applicant

*6.*   If it is a previous customer, type "Revised" in front of subject line of e-mail and most of the information will appear. Simply fill in the blanks and hit Send.

*7.*   Be sure to enter the customer ID number on the *Individual Rate Sheet in PUMA.*

### G.   RELEASE THE TASK:

*1.*   Enter policy number in Imageright indexing screen.

*2.*   Click on the *release button* so that the application it will go directly to the Technician for processing.

### H.   "PREVIOUSLY INSURED APPLICANT" PROCEDURES

*1.*   Fill out a File Charge and request file from File Room. If the file is returned to you and it is a four-sided folder, it will need to be converted and prepped into a new gold six-sided folder. All documents "PRIOR TO 07/01/95" should be placed under a "DO NOT PREP 07/01/95" sheet. The File should then be forwarded to the File Room for scanning immediately. If the file has no documents to be scanned, then return to file room to be re-filed. Make a note in Notepad indicating that there were no documents to be prepped.

*2.*   If the file is not in the File Room, an entry should be entered into Notepad stating that the original file is missing.

## I.     Determining Whether to use Previous Policy Number

### 1. CANCELLED:

There are four types of policies to be reviewed before determining if an old policy number is to be re-used:

1.) Cancelled without Tail:

Requested effective date must be at least one day after the cancellation date.

2.) Cancelled with Total Tail:

Requested effective date must be at least one day after the cancellation date. If there is an outstanding balance for tail, set up a new policy number. Also, consult with the underwriter to find out if doctor is actually leaving first policy.

3.) Cancelled with Installment Tail:  Same steps as above.

4.) Cancelled with Implied Tail:  **NEVER** use the cancelled policy number – Assign a new number, unless the doctor is joining the same group.

5.) Cancelled with Multiple Policies or Retirement Tail:  Refer to the Position Paper on Multiple Policies and Retirement Tail document located in the Underwriting Manual, Vol. 3, on the Intranet.

### 2. DECLINED:  Review the Billing Summary for any reference to tail and whether its been paid or not.  Assign a new number if there is a balance due.

### 3. NON-RENEWAL:  Discuss with AVP, Support or Underwriting  Director.

# NEW BUSINESS SCREENING
# CORP/CLINIC

## A.     RESEARCH:

1. If there is already a corp/clinic with same name as it appears on the application then,

- "**Manually Route**" the application back to the assigned Underwriter of the President or Business Manager, with a "Sticky Note" reading "**2nd Policy Number Approval Needed**" and type in **2nd Policy Number Needed** in the description of Image right. When the application is returned for processing, complete one of the two items listed below:
  - ➢ If the application is returned as a task for "**Re-Application**"
    - ▪ Open the file in Image Right,
    - ▪ Update the policy number
    - ▪ Place a note in Notepad in PUMA including assigned underwriter's name.
    - ▪ Manually route the application back to Underwriter, or
  - ➢ Set up a new policy number.

## B.   IMAGERIGHT ENTRY:

1. Click File Open and change drawer from **Underwriting** to **Prospective Applicant**.
   > Type in **Applicant Name** and Click ok.
   > If there is any supporting documentation in the Prospective Applicant drawer, cut and paste the document into the New Business temp folder.

2. Scroll to the Signature page of the application.
   > Click on *Edit*
   > Click *Page Description* and type Signature Page
   > Click on *Okay*.

## C.   PUMA ENTRY:

3. Go to PUMA screen.

4. At Search Window, enter corporation/clinic name to see if previously insured.

3. If the screen indicates that there is no other listing in PUMA with this name. *Clear Search Window* (This is very important).

4. Type in name of corp/clinic and click enter.

5. Click on *New Business* button. (The select category button will be displayed.)

6. Click on the *Physician Professional Liability Insurance button* (Click on the "*Next*" button).

7. Click on Policy Category field for your desired category (i.e. *allied health professional, individual or **clinic/corporation***). Click the "*next*" button".

8. Click on a state and click the "*next*" button.

9. Click on the selection of a company button which will always be "*ISMIE Mutual*"

and click the "*next*" button.

10. Choose "Claims Made" and click "Finish".

11. Click on ***Insured Search button*** (to check to see if insured is already listed).

12. Choose the ***Clinic or Corp category***.

13. Type insured name in the Insured Search Window under **Search Criteria**.

14. Press **Search** button.

15. If name appears, click on the name, then click the **Select** button.

16. If corp/clinic name does not appear, **press** the "***Add button***" to get the Add New Insured screen.

17. Tab and type in *Federal Tax ID Number,* if provided. If there is no FEIN number indicated, then click on enter and the computer will generate a FEIN number from the system. When the computer asks you whether to assign a new FEIN number, answer no and continue to enter information.

18. Tab to "***Legal Entity Type***" and enter the type as stated on the application.

19. Tab to "***Business Type***" and click on the appropriate selection.

20. Tab to "***Business Manager***" and enter the name.

21. Tab to the "***President/Partner***" and enter the name.

22. Tab to the "***Underwriter Assigned***" button and assign the Underwriter linked to the President or Business Manager of the Corporation.

**NOTE:** Indiana applicants are assigned to Jon Olson. Iowa and Missouri applicants are assigned to Larry Szatkowski.

23. **Click** on "*Save*" button.

24. Enter applicable Notepad entries for date application received, practice relationship with Business Manager or President/Partner, assigned underwriter's name and broker information.

25. Click on the *Save* button.

26. Keep Individual Information window open.

27. Press "***Policy Address***" button.

ISMIE MUTUAL UNDERWRITING WORKFLOW PROCEDURE @ 2/1/07        Page        12

28. Enter All information.

29. Press **Save**.

## D. Entering a PRODUCER ENDORSEMENT:

1. Enter policy number on clear screen
2. Click on *Policy* button
3. Click on *Endorsement*

4. Select *Producer Change*
5. Select *Brokerage* firm
6. Select broker from list of names
7. Select *New Business* for commission
8. Select *Close* and *Refresh* the page on the abstract.
9. Destroy paper endorsement.

## E. Entering New Business Ratesheet in PUMA

3. Click on Letters
4. Type in policy number
5. Select *New Business Ratesheet for Clinic/ Corp.*
6. Fill in all sections of the left column and type last name, date and time at bottom of page.
7. Click on the "SAVE" button. To verify, click on the edit button to verify the ratesheet was saved in PUMA.

## F. RELEASE THE TASK:

1. Annotate the policy number in the top right corner of the application on Page 1.

2. Click on the *release button* so that the application it will go directly to the Technician for processing.

## G. "PREVIOUSLY INSURED APPLICANT" PROCEDURES

3. Fill out a File Charge and request file from File Room. If the file is returned to you and it is a four-sided folder, it will need to be converted and prepped into a new gold six-sided folder. All documents "PRIOR TO 07/01/95" should be placed under a "DO NOT PREP 07/01/95" sheet. The File should then be forwarded to the File Room for scanning immediately. If the file has no documents to be scanned, then return to file room to be re-filed. Make a note in notepad indicating that there were no documents to be prepped.

4. If the file is not in the File Room, an entry should be entered into Notepad stating that the original file is missing.

## H.    Determining Whether to use Previous Policy Number

### 1. CANCELLED:

There are four types of policies to be reviewed before determining if an old policy number is to be re-used:

1.) Cancelled without Tail:

Requested effective date must be at least one day after the cancellation date.

2.) Cancelled with Total Tail:

Requested effective date must be at least one day after the cancellation date.  If there is an outstanding balance for tail, set up a new policy number.  Also, consult with the underwriter to find out if doctor is actually leaving first policy.

3.)  Cancelled with Installment Tail:  Same steps as above.

4.) Cancelled with Implied Tail:  **NEVER** use the cancelled policy number – Assign a new number, unless the doctor is joining the same group.

5.)  Cancelled with Multiple Policies or Retirement Tail:  Refer to the Position Paper on Multiple Policies and Retirement Tail document in the Underwriting Manual Vol. 3 on the Intranet.

### 2. DECLINED:  Review the Billing Summary for any reference to tail and whether its been paid or not.  Assign a new number if there is a balance due.

### 3. NON-RENEWAL:  Discuss with AVP, Support or Underwriting Director.

## VI. Loss History Screener

1. Scanning Step from File Room: Sent to Screener.

2. PUMA and Image Right should be open.

3. Screener checks policy number and status of policy in PUMA.

4. Screener chooses type of loss history from drop down list which will automatically go to the "To Do List" of the appropriate processor:

   Type

   Active
   Allied Health Professional
   Broker
   Cancelled
   State Board
   Peoria Medical Society
   Physician

5. Processor will edit page description of the task as the name of the requestor.

6. Process loss history and release task to file.

## LIST OF EXCEPTIONS FOR LOSS HISTORY SCREENER

- None

## Loss History Procedure:

## Processing **Active policies**:

1. The request and business reply envelope, if provided, will be scanned into Image Right. The purpose of having a copy of the business reply envelope scanned should make finding the original envelope in the accordion file easier. There is also a supply of labels created and distributed.

2. The loss history and certificates will be generated as normal.

3. The loss history created in Infinity should be imported into Image Right:

   - Folder Type: Loss History
   - Document Type: Loss History Letter

- Policy Number: Enter from request.
- Hit tab key for Insured Name to populate and verify name is the same as the request
- Description: Name of Requestor

4. Two copies of the request and two copies of the Loss History Letter should be printed.

5. A label marked "COPY – Original Sent to 3rd Party" will be affixed to the doctor's copy of the Loss History Letter.

6. The third party should receive the original request, certificate and Loss History Letter.

## Processing **Cancelled policies:**

1. Send loss history letter and request to the 3rd party.  No copy will be sent to the cancelled policyholder.

## **Step by Step Processing Loss Histories and Saving into Image Right**

1. Open the task in the "To Do List."  Highlight the "Loss History" folder in the associated file.
2. Make sure that "Printer Selection" icon in Infinity is set to "ImageRight Printer." Choose either "All Years" or "10 Years" date range, enter policy number and click "Preview Report" to create Loss History in Crystal Reports.  Always choose the "10 Years" date range unless there is a specific request for "All Years" of coverage.
3. When the Loss History appears in Crystal Reports, click on the printer icon and then click "OK."
4. An "Import Document Viewer" window will appear.  Click "Import."  Then, an "Import Images" window will appear.  Make sure that the "Folder Type:" displays as "Loss History," the "Document Type:" is "Loss History Letter," and the policy number is correct.  Click "OK."
5. Using the "Ctrl" key and the mouse, highlight the pages of the newly created Loss History Letter and the associated request in ImageRight.  Hit "Ctrl+D" and re-title the pages with the name of the requestor.  Hit "Ctrl+P" and print both the letter and the request (print twice for active policies).

### **Active Policies**
6. For Active Policies where no certs are required, mail one copy of the letter/request to the requestor (in a 3rd party Business Reply envelope if provided) and one copy of the letter/request to the insured with a "COPY – Original Sent to 3rd Party" sticker on the letter.  All loss history letters should be mailed in envelopes marked "Confidential."

7. For Active Policies where certs are required, print the appropriate certs in PUMA and collate with the associated letter/request. The certificate holder cert is mailed with the letter/request to the requestor (in a 3rd party Business Reply envelope if provided), and the second copy of the letter/request (along with the named insured certificate, if generated) is mailed to the insured with a "COPY – Original Sent to 3rd Party" sticker on the letter. Place any broker copy certs in the broker bins.

## Inactive Policies

8. For Inactive policies, mail the loss history letter to the 3rd party requestor only (in a 3rd party Business Reply envelope if provided) with no certs.

## Broker Requests

9. For Broker Requests, fax or mail all loss history letters directly to the broker as requested. The broker must be the currently contracted producer (visible in PUMA) for each policy.

## MD Requests

10. For MD requests, fax or mail the loss history letter directly to the insured as requested. Requests must be signed by the doctor.

**Note:  Loss history letters are only to be faxed from your PC, not a fax machine.  This procedure is to comply with HIPAA regulations.  Also, do not fax loss histories based on a phone call.  We need to have a written request.**



**Connie Deborah**

| | |
|---|---|
| **From:** | Gentile-Karas Donna |
| **Sent:** | Friday, August 10, 2007 10:35 AM |
| **To:** | Connie Deborah |
| **Subject:** | RE: Underwriting Technician Position |

Hello, I understand that they have selected a candidate already.
Donna

---

**From:** Connie Deborah
**Sent:** Thursday, August 02, 2007 12:39 PM
**To:** Gentile-Karas Donna
**Subject:** Underwriting Technician Position

Hello Donna,

I was wondering if resumes are still being considered for the position. I hand delivered my resume more than two weeks ago, and I haven't heard anything.

Any news?

*8 days later*

8/10/2007



**Scott Sakie**

| | |
|---|---|
| **From:** | Hutchinson Laura |
| **Sent:** | Monday, July 23, 2007 12:25 PM |
| **To:** | Scott Sakie |
| **Cc:** | Connie Deborah |
| **Subject:** | Loss Histories |

Sakie, please help Deborah today with processing her loss histories.
See if you can get 50 done.  Thx.

Laura C. Hutchinson
Assistant Vice President, Underwriting
ISMIE Mutual Insurance Company
312.580.6458 (Direct)
312.782.2023 (Fax)

# ACTIVITY LOG
## @
## 06/25/07

*(handwritten: JUNE 18)*

**SAKIE SCOTT**

Overtime: 0

| DAY | | NEW BUS. APPS. | FILES PREPPED AND SCANNED | LOSS HISTORIES | TYPING | RETURN LOSS HX SUBMISSION | RENEWAL APPS PART TIME (BACKUP) | APPS (BACKUP) PART TIME | MAIL (BACKUP) | MIS ENTRIES |
|---|---|---|---|---|---|---|---|---|---|---|
| MONDAY | 18 | 14 | | | | 4 | | | | |
| TUESDAY | 19 | 7 | | | | 1 | | | | |
| WEDNESDAY | 20 | 12 | | | | 1 | | | | |
| THURSDAY | 21 | 8 | 2 | 124 | 1 | 1 | | | | |
| FRIDAY | 22 | 8 | | | | 2 | | | | |
| TOTAL | | 49 | 2 | 124 | 1 | 9 | | | | 0 |

Other Work: 0

Carryover Work: 3 applications
1 submission

**ACTIVITY LOG**
**@**
**07/02/07**

*JUNE 08*

**SAKIE SCOTT**

Overtime: 0

| DAY | | NEW BUS. APPS | eFILES PREPPED AND SCANNED | LOSS HISTORIES | TYPING | RETURN LOSS EX | RENEWAL APPS SUBMISSION (BACKUP) | PART TIME APPS (BACKUP) | MAIL (BACKUP) | MIS ENTRIES |
|---|---|---|---|---|---|---|---|---|---|---|
| MONDAY | 25 | 7 | | 20 | | | 2 | | | |
| TUESDAY | 26 | 13 | 2 | 17 | | | 2 | | | |
| WEDNESDAY | 27 | 17 | | 4 | 1 | | 1 | | | |
| THURSDAY | 28 | 10 | 2 | 4 | | | | | | |
| FRIDAY | 29 | 7 | | 82 | | | 7 | | | |
| TOTAL | | 54 | 4 | 127 | 1 | 0 | 12 | 0 | 0 | 0 |

| Other Work: | 0 | Carryover Work: 2 applications |
|---|---|---|

UNDERWRITING SECRETARY

WEEKLY ACTIVITY LOG – WEEK OF: Monday, January 22, 2007

Sakie A. Scott

| Jan, 2006 | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail (Backup) | New Business Documents Mailed | Return Loss History Ltrs. | Renewal Applications (Backup) |
|---|---|---|---|---|---|---|---|---|---|
| MON | 22 | 3 | | | | | | | |
| TUES | 23 | 8 | | | | | | | |
| WED | 24 | 4 | | | | | | | |
| THUR | 25 | 1 | | | | | | | |
| FRI | 26 | 0 | | 113 | | | 4 | | |
| TOTAL | | 16 | 0 | 113 | 1 | 0 | 4 | 0 | 0 |

Other Work:

Training with Gina on New Biz-

Carryover: 0 application

## UNDERWRITING SECRETARY
### WEEKLY ACTIVITY LOG – WEEK OF:  Monday, July 24, 2006

Overtime:  .6 hours

Sakie A. Scott
July 31, 2006

| | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail | Conversion of 4 to 6 sided folders for prepping |
|---|---|---|---|---|---|---|
| MON  31 | | | | | 6 | |
| TUES  1 | | | | | 6 | |
| WED  2 | 5 | | | | | |
| THUR  3 | | 2 | | 1 | | |
| FRI  4 | | 2 | | | | |
| | | | | | | |
| TOTAL | 20 | 2 | 567 | 1 | 14 | 0 |

Other Work:

Print Reports*-

Carryover: 75 Membership Entries

Carol's backup – Monday and Tuesday

Z:\secretary\scott\activplog



UNDERWRITING SECRETARY
WEEKLY ACTIVITY LOG – WEEK OF:    Monday, January 16, 2006

Sakie A. Scott

1/16/06

Overtime: 0

| January 2006 | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail | UPUs Returned for Signature |
|---|---|---|---|---|---|---|---|
| MON | 16 | OFF | | | | | |
| TUES | 17 | 6 | | | | | 19 |
| WED | 18 | 1 | | | | | |
| THUR | 19 | 4 | | 23 | 3 | | |
| FRI | 20 | 4 | 1 | 30 | 2 | | |
| | | 15 | 1 | 53 | 5 | | 19 |

Other Work:                                                          Carryover: 0

Print Reports*.
1/18 – Mailed Commission Checks; Revise Check Requests and
Check Forms; Typed Commission Report
1/19-Typed PUMA Minutes
Training with Sarah 1 hour daily

# ACTIVITY LOG
## @ 7/18/2007

**SAKIE SCOTT**

*1/23/08*

OVERTIME  0

| DAY | NEW BUS. APPS. | REINST. | RESPONSES / TYPING | NEW BUS. DOCUMENT MAILED | RETURN LOSS HX | SUBMISSIONS | RENEWAL APPS (BACKUP) | PART TIME APPS (BACKUP) | INCOMING MAIL (BACKUP) | MIS ENTRIES |
|---|---|---|---|---|---|---|---|---|---|---|
| MONDAY 23 | 6 | | | | | 2 | | | | |
| TUESDAY 24 | 8 | | 12 | | | 4 | | | | |
| WEDNESDAY 25 | 3 | | 5 | | | 2 | | | | |
| THURSDAY 26 | 11 | | 2 | | | 3 | | | | |
| FRIDAY 27 | 3 | | | | 1 | | | | 60 | |
| TOTAL | 31 | 0 | 19 | 0 | 1 | 11 | 0 | 0 | 60 | 0 |

Loss Hx / Typing

**Other Work:**   Carryover Work:   MIS Entries 13

| | Carts | Letters |
|---|---|---|
| Loss Hx | | |
| Collating | | |

UNDERWRITING SECRETARY
WEEKLY ACTIVITY LOG – WEEK OF:   Monday, April 10, 2006

Sakie A. Scott

APR 10/06

Overtime: 0

| April 2006 | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail | Conversion of 4 to 6 sided folders for prepping |
|---|---|---|---|---|---|---|---|
| MON | 10 | 8 | | | | | |
| TUES | 11 | 1 | | | | | 4 |
| WED | 12 | 8 | | | | | 11 |
| THUR | 13 | 6 | | 53 | 1 | | 2 |
| FRI | 14 ½ Day Off | 10 | | | | | 12 |
| TOTAL | | 33 | | 53 | 1 | | 29 |

Other Work:                                          Carryover: 0

Print Reports*-

Z:\sacrtary\scott\activity\log

APRIL 06

UNDERWRITING SECRETARY
WEEKLY ACTIVITY LOG – WEEK OF:   Monday, April 17, 2006

Sakie A. Scott

Overtime:  1.25

| April 2006 | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail | Conversion of 4 to 6 sided folders for prepping |
|---|---|---|---|---|---|---|---|
| MON | 17 | Off | | | | | |
| TUES | 18 | Off | | | | | |
| WED | 19 | 10 | | | | | |
| THUR | 20 | 10 | | 68 | 1 | | 10 |
| FRI | 21 | 10 | | 22 | | | |
| TOTAL | | 30 | | 90 | 1 | | 10 |

| Other Work: | | | | Carryover: 0 |
|---|---|---|---|---|
| Print Reports*- | | | | |

Z:\secrtary\scort\activylog

APU 24 DP

UNDERWRITING SECRETARY
WEEKLY ACTIVITY LOG – WEEK OF:   Monday, April 17, 2006

Sakie A. Scott

Overtime: 4 Prepping

| April 2006 | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail | Conversion of 4 to 6 sided folders for prepping |
|---|---|---|---|---|---|---|---|
| MON | 24 | 3 | | | | | |
| TUES | 25 | 2 | 3 | 46 | | | 12 |
| WED | 26 | 2 | | | | | 22 |
| THUR | 27 | 2 | | | 1 | | |
| FRI | 28 | 6 | | | | 12 | |
| TOTAL | | 15 | 3 | 46 | 1 | 12 | 40 |

Other Work:
Carol's Backup: Mail, Correspondence
Print Reports*-

Carryover: 0

UNDERWRITING SECRETARY
WEEKLY ACTIVITY LOG – WEEK OF:  Monday, May 1, 2006

Sakie A. Scott

Overtime:  4 Prepping

| May 2006 | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail | Conversion of 4 to 6 sided folders for prepping |
|---|---|---|---|---|---|---|---|
| MON | 1 | | | | | | 6 |
| TUES | 2 | | | | | | 12 |
| WED | 3 | | | | | | 22 |
| THUR | 4 | | | | | | |
| FRI | 5 | | | | | | |
| TOTAL | | | | | | | 40 |

Carryover: 0

Other Work:
Carol's Backup:  Mail, Correspondence (Monday)
Mail Broker Copies of Ren. Letters.
Print Reports* -

Z:\secrtary\scott\activivylog

UNDERWRITING SECRETARY

WEEKLY ACTIVITY LOG – WEEK OF: Monday, Wednesday, July 18, 2007

Sakie A. Scott

MAY 8/06

Overtime: 4.5Prepping

| May 2006 | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail | Conversion of 4 to 6 sided folders for prepping |
|---|---|---|---|---|---|---|---|
| MON | 8 | 3 | | | | | 20 |
| TUES | 9 | 6 | | | | | 0 |
| WED | 10 | 9 | | | | | 20 |
| THUR | 11 | 6 | | 18 | 1 | | 13 |
| FRI | 12 | 11 | | | | | |
| SAT | 13 | | | | | | 23 |
| TOTAL | | 35 | | 18 | 1 | | 76 |

Other Work:

Carryover: 0

Print Reports*-

Z:\secretary\scott\activitylog

UNDERWRITING SECRETARY
WEEKLY ACTIVITY LOG – WEEK OF:    Wednesday, July 18, 2007

Sakie A. Scott

Overtime:    6hrs. Converting

| May 2006 | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail | Conversion of 4 to 6 sided folders for prepping | Combining Files |
|---|---|---|---|---|---|---|---|---|
| MON | 22 | 9 | | | | | | |
| TUES | 23 | 14 | | | | | | |
| WED | 24 | 3 | | 20 | | | 31 | 4 |
| THUR | 25 | 3 | | 22 | 1 | | | |
| FRI | 26 | 10 | | | | | 23 | |
| SAT | 27 | | | | | | | |
| TOTAL | | 39 | | 42 | 1 | | 54 | 4 |

Other Work: _____    Carryover: 0

Print Reports*– _____

Z:\secretary\scott\activity.log

5/29/06

Sakie A. Scott

UNDERWRITING SECRETARY

WEEKLY ACTIVITY LOG – WEEK OF: Monday, May 29, 2006

Overtime: 6hrs. Converting

| May & June 2006 | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail | Conversion of 4 to 6 sided folders for prepping | Combining Files |
|---|---|---|---|---|---|---|---|
| MON 29 | Holiday | | | | | | |
| TUES 30 | Off | | | | | | |
| WED 31 | 8 | | | | 4 | 8 | 4 |
| THUR 01 | 8 | | | | 8 | 11 | |
| FRI 02 | 9 | 1 | | | 10 | | |
| SAT | 25 | 1 | | | 22 | | |
| TOTAL | | | | | | | 4 |

Other Work:

Carol's Backup (Wed, Thurs, and Fri)

Print Reports*-

Carryover: 0

Z:\secttary\scott\activity\log

UNDERWRITING SECRETARY

WEEKLY ACTIVITY LOG – WEEK OF: Monday, June 12, 2006

Overtime: .6 hours prepping

Sakie A. Scott

| June 2006 | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail | Conversion of 4 to 6 sided folders for prepping |
|---|---|---|---|---|---|---|---|
| MON | 12 | 9 | | | | | |
| TUES | 13 | 13 | | | | | |
| WED | 14 | 11 | | 50 | | | 25 |
| THUR | 15 | 5 | 1 | 15 | 1 | 8 | |
| FRI | 16 | 12 | | | | | |
| SAT | 17 | | | | | | 25 |
| TOTAL | | 50 | 1 | 65 | 1 | 8 | 50 |

Other Work:                                             Carryover: 0

Print Reports* –

Monday-Matched BOR's



**SAKIE SCOTT**                                        OVERTIME 1/2 hour

|  | DAY | NEW BUS. APPS. | REINIT. | LOSS HISTORIES | TYPING | NEW BUS. DOCUMENT MAILED | RETURN LOSS HX | SUBMISSIONS |
|---|---|---|---|---|---|---|---|---|
| **MONDAY** | 16 | OFF | | | | | | |
| **TUESDAY** | 17 | | | | | 10 | | |
| **WEDNESDAY** | 18 | | | 28 | | 8 | | |
| **THURSDAY** | 19 | | | | 1 | 9 | | |
| **FRIDAY** | 20 | | | | | | 0 | |
| **TOTAL** | | 0 | 0 | 28 | 1 | 27 | 0 | 0 |

**Other Work:**                          **Carryover Work:**              **0**

**Loss Hx**
Collating                   Certs                  Letters

**Wednesday** PM-Assisted with Loss History mailing

**ACTIVITY LOG**
**@**
**7/18/2007**

## SAKIE SCOTT

Overtime: 0

| DAY | NEW BUS. APPS. | FILES PREPPED AND SCANNED | LOSS HISTORIES | TYPING | RETURN LOSS BX | SUBMISSION | RENEWAL APPS (BACKUP) | PART TIME APPS (BACKUP) | MAIL (BACKUP) | MIS ENTRIES |
|---|---|---|---|---|---|---|---|---|---|---|
| MONDAY 2 | 7 | | | | | | | | | |
| TUESDAY 3 | 11 | | | | 1 | | | | | |
| WEDNESDAY 4 | 6 | | HOLIDAY | | | 1 | | | | |
| THURSDAY 5 | OFF | 2 | | | | 1 | | | | |
| FRIDAY 6 | OFF | | | | | | | | | |
| TOTAL | 24 | 2 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 |

Other Work: 0

Carryover Work: 0

UNDERWRITING SECRETARY

WEEKLY ACTIVITY LOG – WEEK OF:  Monday, July 17, 2006

Overtime:

Sakie A. Scott

| July 17-21, 2006 | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail | Conversion of 4 to 6 sided folders for prepping |
|---|---|---|---|---|---|---|---|
| MON | 17 | 4 | | | | | |
| TUES | 18 | 11 | | | | | |
| WED | 19 | 12 | | | | | |
| THUR | 20 | 3 | | 25 | 1 | | |
| FRI | 21 | 6 | | | | | |
| | | | | | | | |
| TOTAL | | 36 | | 25 | 1 | | 0 |

Other Work:                                    Carryover: 0

Print Reports*–

Commission Check Mailout – Friday, 07/21

Z:\secetary\scott\activity log

UNDERWRITING SECRETARY
WEEKLY ACTIVITY LOG – WEEK OF:  Monday, August 7, 2006

Overtime:   .0 hours

Sakie A. Scott
July 31, 2006

8/7/06

| | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail | Conversion of 4 to 6 sided folders for |
|---|---|---|---|---|---|---|---|
| MON | 7 | | | | | | |
| TUES | 8 | | | | | | |
| WED | 9 | | | | | | |
| THUR | 10 | | | | | | |
| FRI | 11 | | | | | | |
| TOTAL | | | | | | | 0 |

VACATION ALL WEEK

Other Work:

Print Reports* -

Carryover: 75 Membership Entries

VACATION ALL WEEK

Z:\secretary\scottactivitylog

## UNDERWRITING SECRETARY
## WEEKLY ACTIVITY LOG – WEEK OF:  Monday, August 14, 2006

Sakie A. Scott

*8/14/06*

Overtime: ___ hours

| July 31, 2006 | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail | Conversion of 4 to 6 sided folders for prepping |
|---|---|---|---|---|---|---|---|
| MON | 14 | 6 | | | | | |
| TUES | 15 | 0 | | | | | |
| WED | 16 | 5 | | | | | |
| THUR | 17 | 7 | | 58 | | | |
| FRI | 18 | OFF | | | | | |
| TOTAL | | 18 | 0 | 58 | | | 0 |

Other Work:

MIS Entries

Print Reports*-

Carryover: 0

Z:\secretary\scottactivitylog

UNDERWRITING SECRETARY

WEEKLY ACTIVITY LOG -- WEEK OF: Monday, August 21, 2006

Overtime:  hours

Sakie A. Scott
Aug, 2006

| | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail | Prepping |
|---|---|---|---|---|---|---|---|
| MON | 21 | 2 | | | | | |
| TUES | 22 | 0 | | | | | |
| WED | 23 | 5 | | | | | |
| THUR | 24 | 5 | | 23 | | | |
| FRI | 25 | 6 | LeCour (1) | | 1 | | 56 |
| TOTAL | | 18 | 1 | 23 | 1 | | 56 |

Other Work:
MIS Entries
Print Reports*-

Carryover: 0

Z:\secretary\scottactivitylog

UNDERWRITING SECRETARY

WEEKLY ACTIVITY LOG – WEEK OF:   Monday, August 28, 2006

Sakie A. Scott

Overtime:  8 . hours

| Aug - Sept, 2006 | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail | Prepping |
|---|---|---|---|---|---|---|---|
| MON | 28 | 6 | | | | | |
| TUES | 29 | 3 | | | | | |
| WED | 30 | 3 | | | | | |
| THUR | 31 | 3 | | | | | |
| FRI | 1 | 2 | | 17 | | | |
| TOTAL | | 17 | | 17 | | | 51 |
| | | | | | | | 51 for Week |

Other Work:

MIS Entries

Print Reports*-

Carryover: 0

Z:\secretary\scott\activitylog

UNDERWRITING SECRETARY
WEEKLY ACTIVITY LOG – WEEK OF: Monday, September 4, 2006

Sakie A. Scott

Overtime: 10.25 hours

01/4/06

| Sept. 2006 | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail | Prepping |
|---|---|---|---|---|---|---|---|
| MON | 4 | OFF | | | | | |
| TUES | 5 | 5 | | | | | 5 |
| WED | 6 | 6 | 3 | | | | 10 |
| THUR | 7 | 9 | | 28 | 1 | | 11 |
| FRI | 8 | 1 | | | | | 36 |
| TOTAL | | 21 | 3 | 28 | 1 | | 62 |

| Other Work: | Carryover: 0 |
|---|---|
| MIS Entries | |
| Print Reports*- | |

Z:\secretary\scottactivitylog

UNDERWRITING SECRETARY

WEEKLY ACTIVITY LOG – WEEK OF: Monday, September 11, 2006

Sakie A. Scott

Overtime: 10.5 hours

| Sept, 2006 | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail | Prepping |
|---|---|---|---|---|---|---|---|
| MON | 11 | 1 | | | | | 4 |
| TUES | 12 | 7 | | | | | 5 |
| WED | 13 | 6 | | | | | 10 |
| THUR | 14 | 3 | | | 1 | | 7 |
| FRI | 15 | 2 | | 15 | | | 5 |
| SAT | 16 | | | | | | 11 |
| TOTAL | | 19 | | 15 | 1 | | 42 |

| Other Work: | Carryover: 0 |
|---|---|
| MIS Entries | |
| Print Reports*- | |

Z:\secrtary\scott\activity.log

9/8/06

## UNDERWRITING SECRETARY
### WEEKLY ACTIVITY LOG – WEEK OF:   Monday, September 11, 2006

Overtime: ___ hours

Sakie A. Scott

| Sept, 2006 | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail | Prepping |
|---|---|---|---|---|---|---|---|
| MON | 18 | | | | | | 2 |
| TUES | 19 | | 2 | | | | 6 |
| WED | 20 | | | | | | 8 |
| THUR | 21 | | | 42 | 1 | | 4 |
| FRI | 22 | | | | | | 10 |
| SAT | 23 | | | | | | |
| TOTAL | | | 2 | 42 | 1 | | 30 |

| Other Work: | WEDNESDAY-Match Bor's | Carryover: 0 |
|---|---|---|
| Print Reports*- | | |

Z:\secretary\scottactivitylog

UNDERWRITING SECRETARY

WEEKLY ACTIVITY LOG – WEEK OF:   Monday, September 25, 2006

Overtime:  0 . hours

Sakie A. Scott

| Sept, 2006 | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail | Prepping |
|---|---|---|---|---|---|---|---|
| MON | 25 | 0 | | | | | |
| TUES | 26 | 7 | 2 | | | | |
| WED | 27 | 3 | | | | | 1 |
| THUR | 28 | 12 | | 23 | | 23 | |
| FRI | 29 | 3 | | 23 | 1 | 13 | |
| TOTAL | | 25 | 2 | 23 | 1 | 36 | 1 |

Other Work:  Thursday and Friday Carol's Backup (Mail and Faxes)     Carryover: 0

Print Reports*–

Z:\secrtary\scott\activity.log

UNDERWRITING SECRETARY

WEEKLY ACTIVITY LOG – WEEK OF:   Monday, October 9, 2006

Sakie A. Scott

| Oct, 2006 | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail |
|---|---|---|---|---|---|---|
| MON | 9 | 0 | | 4 | | |
| TUES | 10 | 6 | | 14 | | |
| WED | 11 | 4 | 3 | 6 | | |
| THUR | 12 | 4 | | 10 | 1 | |
| FRI | 13 | 7 | | 13 | | |
| TOTAL | | 21 | 3 | 47 | 1 | |

Other Work:   Commission                    Carryover: 0

Sarah's Training for Imageright

Print Reports*-

Z:\secretary\scottactivitylog

UNDERWRITING SECRETARY

WEEKLY ACTIVITY LOG – WEEK OF:   Monday, October 23, 2006

Sakile A. Scott

| Oct, 2006 | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail |
|---|---|---|---|---|---|---|
| MON | 23 | 2 | | | | |
| TUES | 24 | 10 | 2 | | 1 | |
| WED | 25 | 9 | | 19 | | |
| THUR | 26 | 8 | | | 1 | 41 |
| FRI | 27 | 3 | | | | 38 |
| TOTAL | | 32 | 2 | 19 | 2 | 79 |

| Other Work:   Commission | | | Carryover:  0 |
|---|---|---|---|
| Print Reports*- | | | |

Z:\secretary\scott\activtylog

UNDERWRITING SECRETARY
WEEKLY ACTIVITY LOG – WEEK OF:  Monday, October 30, 2006

Sakie A. Scott

| Oct, 2006 | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail |
|---|---|---|---|---|---|---|
| MON | 30 | 7 | | 9 | | 18 |
| TUES | 31 | 3 | 1 | 6 | | 11 |
| WED | 1 | 6 | | 6 | | |
| THUR | 2 | OFF | | | 1 | |
| FRI | 3 | 1 | | | 1 | |
| TOTAL | | 17 | 1 | 21 | 1 | 29 |

Other Work:  Carol's Backup Mon and Tues

Print Reports*-

Carryover: 0

Z:\secrtary\sscott\activitylog

UNDERWRITING SECRETARY
WEEKLY ACTIVITY LOG – WEEK OF:   Monday, November 6, 2006

Sakie A. Scott

11/04/06

| Nov, 2006 | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail |
|---|---|---|---|---|---|---|
| MON | 06 | 5 | | 7 | | |
| TUES | 07 | 4 | | 13 | | |
| WED | 08 | 4 | | 8 | | |
| THUR | 09 | 4 | | 11 | 1 | |
| FRI | 10 | | 1 | 2 | | |
| TOTAL | | 17 | 1 | 41 | 1 | 0 |
| Other Work: | | | | | Carryover: 3 | |
| Print Reports*- | | | | | | |

Z:\secretary\scott\activitylog

UNDERWRITING SECRETARY

WEEKLY ACTIVITY LOG – WEEK OF:    Monday, November 13, 2006

Sakie A. Scott

| Nov, 2006 | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail |
|---|---|---|---|---|---|---|
| MON | 13 | 0 | | 6 | | |
| TUES | 14 | 2 | | 10 | | |
| WED | 15 | 5 | | | | |
| THUR | 16 | 4 | | | 1 | |
| FRI | 17 | 4 | | | 1 | |
| TOTAL | | 15 | | 16 | 1 | 0 |
| Other Work: | | | | | Carryover: 1 | |
| Print Reports*_ | | | | | | |

Z:\secttary\scott\activitylog

UNDERWRITING SECRETARY
WEEKLY ACTIVITY LOG – WEEK OF:   Monday, December 4, 2006

Sakie A. Scott

| Dec, 2006 | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail |
|---|---|---|---|---|---|---|
| MON | 4 | 3 | | 12 | | |
| TUES | 5 | | | 4 | | 9 |
| WED | 6 | 3 | 1 | 4 | | |
| THUR | 7 | 1 | | 2 | 1 | |
| FRI | 8 | 2 | | | | |
| TOTAL | | 9 | 1 | 22 | 1 | 9 |

Other Work:   Carryover: 0

Print Reports*-

UNDERWRITING SECRETARY

WEEKLY ACTIVITY LOG – WEEK OF:  Monday, December 11, 2006

Sakie A. Scott

| Dec, 2006 | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail | Scanning Project |
|---|---|---|---|---|---|---|---|
| MON | 11 | 2 | | 8 | | | 35 |
| TUES | 12 | 0 | 1 | 2 | | | 107 |
| WED | 13 | 2 | | 9 | | | 47 |
| THUR | 14 | 1 | | 4 | 2 | | 40 |
| FRI | 15 | 3 | | | | | 20 |
| TOTAL | | 8 | 1 | 23 | 2 | 0 | 249 |
| Other Work: | | | | | Carryover: 1 appl. | | |
| Print Reports*- | | | | | | | |

Z:\secrtary\scott\activitylog

UNDERWRITING SECRETARY

WEEKLY ACTIVITY LOG – WEEK OF:   Monday, December 18, 2006

Sakie A. Scott

| Dec, 2006 | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail | Scanning Project |
|---|---|---|---|---|---|---|---|
| MON | 18 | 0 | | 4 | | | |
| TUES | 19 | 6 | | 10 | | 35 | 45 |
| WED | 20 | 0 | | 4 | | | |
| THUR | 21 | 3 | | 9 | 1 | 17 | |
| FRI | 22 | 2 | | 5 | | 3 | |
| TOTAL | | 11 | | 32 | 1 | 55 | 45 |

Other Work:   Carryover: 0 appl.

Tuesday, Thursday and Friday – Carol's Backup

Print Reports*-

Z:\secrtary\scott\activity\log

UNDERWRITING SECRETARY

WEEKLY ACTIVITY LOG – WEEK OF:   Monday, December 25, 2006

Sakie A. Scott

| Dec, 2006 | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail | Scanning Project |
|---|---|---|---|---|---|---|---|
| MON | 25 | | | HOLIDAY | | | |
| TUES | 26 | 3 | | 14 | | | |
| WED | 27 | 1 | | 3 | | | |
| THUR | 28 | 1 | | | | | |
| FRI | 29 | 1 | | | | | |
| TOTAL | | 6 | 0 | 17 | 0 | 0 | 0 |
| Other Work: | | | | | Carryover: 0 appl. | | |

UNDERWRITING SECRETARY

WEEKLY ACTIVITY LOG – WEEK OF: Monday, January 1, 2007



Sakie A. Scott

| Jan, 2006 | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail | Scanning Project | New Business Mailed |
|---|---|---|---|---|---|---|---|---|
| MON | 1 | | | HOLIDAY | | | | |
| TUES | 2 | 2 | | | | | | |
| WED | 3 | 3 | | | | | | |
| THUR | 4 | OFF | | | | | | |
| FRI | 5 | OFF | | | | | | |
| TOTAL | | 5 | 0 | 0 | 0 | 0 | 0 | 3 |

Other Work:

Carryover: 2 new business documents to be mailed. + 8 loss history letters

Z:\secretary\scott\activitylog

UNDERWRITING SECRETARY

WEEKLY ACTIVITY LOG – WEEK OF:  Monday, January 1, 2007

Sakie A. Scott

*JANʃ*

| Jan, 2006 | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail | Scanning Project | New Business Mailed |
|---|---|---|---|---|---|---|---|---|
| MON | 8 | 5 | | | | | | |
| TUES | 9 | OFF | | | | | | |
| WED | 10 | 4 | | | | 15 | | |
| THUR | 11 | 0 | | | | 5 | | |
| FRI | 12 | OFF | | | | | | |
| TOTAL | | 9 | | 5 | | 20 | 0 | 2 |

Other Work:                                                    Carryover:

UNDERWRITING SECRETARY

WEEKLY ACTIVITY LOG – WEEK OF:   Monday, January 1, 2007

Sakie A. Scott

| Jan, 2006 | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail | Scanning Project | New Business Mailed |
|---|---|---|---|---|---|---|---|---|
| MON | 15 | | | | | | | |
| TUES | 16 | | | 28 | | | | |
| WED | 17 | | | | | | | |
| THUR | 18 | | | | | | | |
| FRI | 19 | | | | | | | 2 |
| TOTAL | | | | | | | | |

Other Work:

Training – Thursday/New Biz Mailing w/Carol          Carryover:

Z:\secrtary\scottactivitylog

UNDERWRITING SECRETARY
WEEKLY ACTIVITY LOG – WEEK OF:  Monday, January 29, 2007

Sakie A. Scott

| Jan, 2006 | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail (Backup) | New Business Documents Mailed | Return Loss History Ltrs. | Renewal Applications (Backup) | Submissions |
|---|---|---|---|---|---|---|---|---|---|---|
| MON | 29 | 1 | | | | | | | | |
| TUES | 30 | 2 | 1 | | | | | | | |
| WED | 31 | 1 | | 25 | | | | | | |
| THUR | 1 | 10 | | | | | | | | 3 |
| FRI | 2 | 2 | | | 1 | | 5 | | | 1 |
| TOTAL | | 16 | 1 | 25 | 1 | | 5 | 1 | | 4 |

Other Work:

Training with Gina on New Biz-                    Carryover:  1 submission

UNDERWRITING SECRETARY

WEEKLY ACTIVITY LOG – WEEK OF:  Monday, February 5, 2007

Sakie A. Scott

FEB 5

| | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail (Backup) | New Business Documents Mailed | Return Loss History Ltrs. | Renewal Applications (Backup) | Submissions | Part-time Applications (Backup) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| MON | 5 | 1 | | 14 | | | | | | 1 | |
| TUES | 6 | 2 | | 6 | | | | | | 3 | |
| WED | 7 | 4 | | 20 | | | | | | | |
| THUR | 8 | 3 | | 4 | 1 | | 5 | | | 1 | |
| FRI | 9 | 3 | | 2 | | | 3 | | | | |
| TOTAL | | 13 | | 46 | 1 | | 8 | 0 | 0 | 5 | 0 |

Other Work: | Carryover: 0 application

Z:/secretary/scott/activtylog

UNDERWRITING SECRETARY

WEEKLY ACTIVITY LOG – WEEK OF:  Monday, February 12, 2007

Sable A. Scott

| Feb 2007 | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail (Backup) | New Business Documents Mailed | Return Loss History Ltrs. | Renewal Applications (Backup) | Submissions | Part-time Applications (Backup) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| MON | 12 | | | 25 | | | | | | | |
| TUES | 13 | | | 12 | | | | | | | |
| WED | 14 | 7 | | 25 | 1 | | 7 | | | | |
| THUR | 15 | 2 | | 3 | 1 | | 2 | | | | |
| FRI | 16 | 6 | | | | | 6 | | | 3 | |
| TOTAL | | 15 | | 65 | 1 | 0 | 15 | | 0 | 3 | |

Other Work:

Carryover:  0 application

UNDERWRITING SECRETARY

WEEKLY ACTIVITY LOG – WEEK OF:  Monday, February 19, 2007

Sakie A. Scott

| Feb 2007 | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail (Backup) | New Business Documents Mailed | Return Loss History Ltrs. | Renewal Applications (Backup) | Submissions | Part-time Applications (Backup) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| MON | 19 | Off | | | | | | | | | |
| TUES | 20 | Off | | | | | | | | | |
| WED | 21 | 3 | | 14 | | 10 | 3 | | 30 | 4 | |
| THUR | 22 | 5 | | | | | 5 | | | 1 | |
| FRI | 23 | 8 | | | | | | | | | |
| TOTAL | | 16 | 0 | 14 | | 10 | 8 | | 30 | 1 | 0 |

Other Work:  Backup on Feb 22

Carryover:  0 application

UNDERWRITING SECRETARY

WEEKLY ACTIVITY LOG – WEEK OF:   Monday, February 26, 2007

Sakie A. Scott

| Feb 2007 | | Applications | Reinitialization | Total Loss Hx Processed | Typing | Incoming Mail (Backup) | New Business Documents Mailed | Return Loss History Ltrs. | Renewal Applications (Backup) | Submissions | Part-time Applications (Backup) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| MON | 26 | 3 | | 10 | | | | | | | |
| TUES | 27 | 7 | | 12 | | | | | | 1 | |
| WED | 28 | 2 | | | | | | | | | |
| THUR | 1 | 3 | | 5 | 1 | | 6 | | | 1 | |
| FRI | 2 | 5 | | | | | 3 | | | | |
| TOTAL | | 20 | 0 | 27 | 1 | 0 | 9 | 0 | 0 | 2 | 0 |

Other Work: _____

_____

Carryover: 0 application

mpc 5

UNDERWRITING SECRETARY
WEEKLY ACTIVITY LOG
WEEK OF: MARCH 5, 2007

SAKIE SCOTT

OVERTIME:

| DAY | NEW BUS. APPS. | REINITIALIZE | LOSS HISTORIES | TYPING | NEW BUS. DOCUMENT MAILED | RETURN LOSS HX | SUBMISSIONS | RENEWAL APPS (BACKUP) | PART TIME APPS. (BACKUP) | INCOMING MAIL (BACKUP) | MIS ENTRIES |
|---|---|---|---|---|---|---|---|---|---|---|---|
| MONDAY 5 | 6 | | 6 | 0 | 5 | | 2 | | | | |
| TUESDAY 6 | 5 | | 5 | 0 | 2 | | 2 | | | | |
| WEDNESDAY 7 | 3 | | 2 | 0 | 3 | | 1 | 11 | | | |
| THURSDAY 8 | 1 | | 0 | 0 | 1 | | 3 | | | | |
| FRIDAY 9 | 0 | | 0 | 0 | 0 | | 0 | | | | |
| TOTAL | 15 | 0 | 13 | 0 | 11 | 0 | 8 | 11 | 0 | 0 | 0 |

Other Work:

Carryover Work: 0

# SAKIE SCOTT

## ACTIVITY LOG
## @
## 7/18/2007

| DAY | | NEW BUS. APPS. | REINITIALIZE | LOSS HISTORIES | TYPING | OVERTIME NEW BUS DOCUMENT MAILED | RETURN LOSS HX | SUBMISSIONS | RENEWAL APPS (BACKUP) | PART TIME APPS (BACKUP) | INCOMING MAIL (BACKUP) | MIS ENTRIES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MONDAY | 12 | 2 | 0 | 32 | 0 | | | 1 | | | | |
| TUESDAY | 13 | 5 | 0 | 4 | | | | 1 | | | | 43 |
| WEDNESDAY | 14 | 1 | | 4 | | 4 | | 6 | 1 | | | |
| THURSDAY | 15 | 2 | | 7 | | 8 | | 4 | | | | |
| FRIDAY | 16 | 5 | 0 | 0 | | 3 | 1 | 0 | 0 | 0 | 0 | 0 |
| TOTAL | | 15 | 0 | 47 | 0 | 15 | 1 | 12 | 0 | 0 | 0 | 43 |

OVERTIME: 0

**Other Work:**
Backup Friday Loss History Processing
Mailed 71 letters (DC)

**Carryover Work:** 1

**SAKIE SCOTT**

*3/19/07*

**ACTIVITY LOG**
**@ 7/18/2007**

**OVERTIME**    0

| DAY | NEW BUS. APPS. | REINIT. | LOSS HISTORIES | TYPING | NEW BUS. DOCUMENT MAILED | RETURN LOSS HX | SUBMISSIONS | RENEWAL APPS (BACKUP) | PART TIME APPS. (BACKUP) | INCOMING MAIL (BACKUP) | MIS ENTRIES |
|---|---|---|---|---|---|---|---|---|---|---|---|
| MONDAY 19 | 7 | | 32 | 1 | 4 | | 4 | | | | |
| TUESDAY 20 | 8 | | 6 | | 1 | | 1 | | | | |
| WEDNESDAY 21 | 6 | | 15 | | 2 | | 1 | | | | |
| THURSDAY 22 | 1 | | 3 | 1 | 6 | | 1 | | | | |
| FRIDAY 23 | OFF | SICK | | | | | | | | | |
| TOTAL | 22 | 0 | 56 | 1 | 13 | 0 | 7 | 0 | 0 | 0 | 0 |

**Other Work:**
Backup Friday Loss History Processing

**Loss Hx**        3 steps
Collating          1 Certs        2 Letters

**Carryover Work:**        0

75

## ACTIVITY LOG
### APRIL 2-6, 2007

**SAKIE SCOTT**

| DAY | NEW BUS. APPS. | REINTL. | LOSS HISTORIES | TYPING | NEW BUS. DOCUMENT MAILED | RETURN LOSS HX | SUBMISSIONS | RENEWAL APPS (BACKUP) | PART TIME APPS (BACKUP) | INCOMING MAIL (BACKUP) | MIS ENTRIES |
|---|---|---|---|---|---|---|---|---|---|---|---|
| OVERTIME | | | | | | 0 | | | | | |
| MONDAY 2 | 18 | | 4 | | | | 3 | | | | |
| TUESDAY 3 | 10 | | 2 | | | | 1 | | | | |
| WEDNESDAY 4 | 6 | | | | | | 3 | | | | 23 |
| THURSDAY 5 | 11 | | | | | | | | | | |
| FRIDAY 6 | 1 | | | | 7 | 1 | | | | | |
| TOTAL | 46 | 0 | 6 | 0 | 7 | 1 | 7 | 0 | 0 | 0 | 23 |

**Other Work:**

Carryover Work:

Loss Hx

| Collating | | Certs | | Letters | |

Wednesday AM- Assisted with Loss History mailing

**ACTIVITY LOG @ 7/18/2007**

5/24/07

**SAKIE SCOTT**

OVERTIME: 0

| DAY | NEW BUS. APPS. | REINST. | LOSS RESTORES | TYPING | NEW BUS. DOCUMENT MAILED | RETURN LOSS EX | SUBMISSION | RENEWAL APPS (BACKUP) | APPS. (BACKUP) PART TIME | INCOMING MAIL (BACKUP) | MIS ENTRIES |
|---|---|---|---|---|---|---|---|---|---|---|---|
| MONDAY 21 | 12 | | 11 | | 8 | | 6 | | | | |
| TUESDAY 22 | 7 | | 7 | | 11 | | | | | | |
| WEDNESDAY 23 | 5 | | 4 | | 6 | | 2 | | | | |
| THURSDAY 24 | 4 | | 8 | | 5 | | | | | | |
| FRIDAY 25 | 5 | | 5 | | 10 | | 3 | | | | |
| TOTAL | 33 | 0 | 35 | 0 | 40 | 0 | 11 | 0 | 0 | 0 | 0 |

Other Work:

Carryover Work:

MAY 7

**ACTIVITY LOG**
**@ 05/15/07**

**OVERTIM** 0

**SAKIE SCOTT**

| | DAY | NEW BUS. APPS. | REINIT. | LOSS HISTORIES | TYPING | NEW BUS. DOCUMENT MAILED | RETURN LOSS HX | SUBMISSIONS | RENEWAL APPS (BACKUP) | PART TIME APPS. (BACKUP) | INCOMING MAIL (BACKUP) | MIS ENTRIES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MONDAY | 7 | 6 | | | | | | | | | | |
| TUESDAY | 8 | 5 | | | | 8 | | 5 | | | | |
| WEDNESDAY | 9 | 2 | | 5 | 1 | 11 | | 1 | | | | |
| THURSDAY | 10 | 7 | 2 | 9 | 1 | 13 | | 1 | | | 29 | |
| FRIDAY | 11 | off | | | | | | | | | | |
| TOTAL | | 20 | 2 | 14 | 1 | 32 | 0 | 7 | 0 | 0 | 29 | 0 |
| Other Work: | | | | | Carryover Work: | 4 (mail) | | | | | | |
| | | | | | | 50 MIS Entries | | | | | | |
| Loss Hx | | 29 | | | | | | | | | | |

**ACTIVITY LOG**

@
7/18/2007

SAKIE SCOTT

MAY H

| | DAY | NEW BUS. APPS. | REDIT. | LOSS HISTORIES | TYPING | NEW BUS. DOCUMENT MAILED | RETURN LOSS HX | SUBMISSION | RENEWAL APPS (BACKUP) | PART TIME APPS. (BACKUP) | INCOMING MAIL (BACKUP), MIS ENTRIES |
|---|---|---|---|---|---|---|---|---|---|---|---|
| MONDAY | 14 | OFF | | | | | | | | | |
| TUESDAY | 15 | 11 | | 9 | 1 | 4 | | 2 | | | |
| WEDNESDAY | 16 | 8 | | 6 | | 5 | | 1 | | | |
| THURSDAY | 17 | 6 | | 5 | 1 | 10 | 1 | 1 | | | 29 |
| FRIDAY | 18 | 6 | | | | 3 | 1 | 1 | | | |
| TOTAL | | 31 | 0 | 20 | 1 | 22 | 1 | 4 | 0 | 0 | 29 |

OVERTIME          0

Other Work:                          Carryover Work: 2 new business mailings

29

# ACTIVITY LOG
### @
### 7/18/2007

*MAY 8/07* (handwritten)

**SAKIE SCOTT**

| DAY | NEW BUS. APPS. | FILES PREPPED AND SCANNED | LOSS HISTORIES | TYPING | OVERTIME — NEW BUS. DOCUMENT MAILED | RETURN LOSS HX | SUBMISSION | RENEWAL APPS (BACKUP) | PART TIME APPS. (BACKUP) | MAIL (BACKUP) | MIS ENTRIES |
|---|---|---|---|---|---|---|---|---|---|---|---|
| MONDAY 28 | Holiday | | | | | | | | | | |
| TUESDAY 29 | 11 | 3 | 8 | | 15 | | 2 | 2 | | | |
| WEDNESDAY 30 | 14 | 2 | 5 | 1 | 5 | | 2 | 1 | | 5 | |
| THURSDAY 31 | 9 | 3 | 5 | 1 | 7 | | 1 | 1 | | 4 | |
| FRIDAY 1 | 6 | 4 | 1 | 1 | 10 | | 4 | | | 1 | |
| TOTAL | 40 | 12 | 19 | 1 | 37 | | 9 | 5 | | 10 | |

OVERTIME: 0

Other Work: Carol's Backup Tues-Frid

Carryover Work: 25 MIS Entries
1 returned mail loss history
13 New Business Mailings

# ACTIVITY LOG
### @ 0604/07

**SAKIE SCOTT**

**OVERTIME** 0

| DAY | NEW BUS. APPS. | FILES PREPPED AND SCANNED | LOSS HISTORIES | TYPING | NEW BUS. DOCUMENT MAILED | RETURN LOSS HX | SUBMISSION (BACKUP) | RENEWAL APPS PART TIME APPS. (BACKUP) | MAIL (BACKUP) | MIS ENTRIES |
|---|---|---|---|---|---|---|---|---|---|---|
| MONDAY 4 | 11 | 6 | 6 | | 13 | | 8 | | | 23 |
| TUESDAY 5 | 9 | 1 | | | 13 | | | | | |
| WEDNESDAY 6 | 3 | 3 | | | 8 | | | | | |
| THURSDAY 7 | 12 | 0 | | 2 | 13 | 1 | 2 | | | |
| FRIDAY 8 | 3 | 0 | 15 | | 10 | | 2 | | 9 | |
| TOTAL | 38 | 10 | 21 | 2 | 57 | 1 | 10 | 0 | 9 | 23 |

**Other Work:** Carryover Work: 2 reinitialization

Carol's Backup | Thursday | 2 apps

## ACTIVITY LOG
## @
## 06/18/07

SAKIE SCOTT — June 11

Overtime: 0

| DAY | NEW BUS. APPS | FILES PREPPED AND SCANNED | LOSS HISTORIES | TYPING | RETURN LOSS EX | SUBMISSION | RENEWAL APPS (BACKUP) | APPS (BACKUP) PART TIME | MAIL (BACKUP) | MIS ENTRIES |
|---|---|---|---|---|---|---|---|---|---|---|
| MONDAY 11 | 13 | | 4 | 1 | | 1 | | | | |
| TUESDAY 12 | 17 | | 3 | | | | | | | |
| WEDNESDAY 13 | 6 | | 2 | | | 1 | | | | |
| THURSDAY 14 | 3 | 2 | 2 | | | | | | | |
| FRIDAY 15 | 3 | | | 1 | | 3 | | | | |
| TOTAL | 42 | 2 | 11 | 1 | 0 | 5 | 0 | | 0 | 0 |

Other Work: 0

Carryover Work: 3 reinitializations



**PLUS HIRES**

| ! | From | Subject | | Received | Size |
|---|------|---------|---|----------|------|

✉ Majerik C... New Employee Announcement — Tue 4/11/2006 11:45 AM 4 KB

We are pleased to announce the addition of the following new employee:
Marcia Amemann has joined ISMS/ISMIS/ISMIE Mutual as Secretary to Vice President and General Counsel in the Legal Services Division.
She is working under the d...

✉ Majerik C... New Employee Announcement — Tue 4/11/2006 11:38 AM 4 KB

We are pleased to announce the addition of the following new employee:
Renee Jablonski has joined ISMS/ISMIS/ISMIE Mutual as Claims Service Representative in the Claims Division. She is working under the
direction of Kelly Kehoe an...

✉ Gentile-K... New Employee Announcement — Fri 3/24/2006 9:43 AM 6 KB

We are pleased to announce the addition of the following new employees:
Laura Peterson has joined ISMS/ISMIS/ISMIE Mutual as Education Staff Specialist in the Education Division. She is working under the
direction of Marcella Hollinger and is sta...

✉ Majerik C... New Employee Announcement — Fri 2/3/2006 9:32 AM 4 KB

We are pleased to announce the addition of the following new employee:
Helen Hoesley has joined ISMS/ISMIS/ISMIE Mutual as Secretary to Vice President in the Internal Audit Division. She is working under
the direction of Jim Skinne...

✉ Majerik C... New Employee Announcement — Fri 1/6/2006 2:13 PM 7 KB

We are pleased to introduce Mr. Richard R. King who has joined our organizations in the capacity of Vice President and General Counsel
of ISMS and ISMIE Mutual. Mr. King brings to ISMS and ISMIE extensive credentials and a wealth of experience in l...

✉ Majerik C... New Employee Announcement — Wed 1/4/2006 12:07 PM 4 KB

We are pleased to announce the addition of the following new employee:
Julie Powers has joined ISMS/ISMIS/ISMIE Mutual as Secretary to Vice President in the Health Policy Research and Advocacy Division.
She is working under the dir...

✉ **Majerik ... New Employee Announcement — Tue 11/8/2005 4:1... 4 KB**

We are pleased to announce the addition of the following new employee:
Patrick Gallagher has joined ISMS/ISMIS/ISMIE Mutual as VP Health Policy Research and Advocacy in the Health Policy Research and
Advocacy Division. He is workin...

✉ Majerik C... New Employee Announcement — Thu 10/20/2005 9:14 ... 4 KB

We are pleased to announce the addition of the following new employee:
Kristina Hall has joined ISMS/ISMIS/ISMIE Mutual as Website Coordinator in the Communications Division. She is working under the
direction of Rebecca Swanson and is stationed ...

✉ Majerik C... New Employee Announcement — Thu 10/13/2005 2:36 PM 4 KB

We are pleased to announce the addition of the following new employee:
Gregory Wideman has joined ISMS/ISMIS/ISMIE Mutual as Underwriter in the Underwriting Division. He is working under the direction of
Frode Brudvik and is stationed on the sixt...

✉ Majerik C... New Employee Announcement — Mon 10/10/2005 2:02 ... 4 KB

We are pleased to announce the addition of the following new employee:
Sarah Young has joined ISMS/ISMIE Mutual as Member Outreach Coordinator in the Marketing/Membership Division. She is
working under the direction of Jim Jacobsohn and is ...

✉ Majerik C... New Employee Announcement — Mon 10/10/2005 1:51 ... 4 KB

We are pleased to announce the addition of the following new employee:
Lauren Rueber has joined ISMS/ISMIS/ISMIE Mutual as Secretary, VP Management Services in the Human Resources Division. She is
working under the direction of Diana Role and is ...

✉ Majerik C... New Employee Announcement — Mon 10/10/2005 1:45 ... 4 KB

We are pleased to announce the addition of the following new employee:
Sarah Maddock has joined ISMS/ISMIS/ISMIE Mutual as Underwriting Secretary in the Underwriting Division. She is working under the
direction of Laura Hutchinson and is statione...

✉ Majerik C... New Employee Announcement — Tue 9/6/2005 9:32 AM 4 KB

We are pleased to announce the addition of the following new employee:
Carmen Sallay has joined ISMS/ISMIS/ISMIE Mutual as Internal Auditor in the Internal Audit Division. She is working under the direction
of Doug Batchelder and is stationed on ...

✉ Majerik C... New Employee Announcement — Tue 8/16/2005 2:49 PM 4 KB

We are pleased to announce the addition of the following new employee:
Charlene Vander Zanden has joined ISMS/ISMIS/ISMIE Mutual as Underwriter Trainee in the Underwriting Division. She is working
under the direction of Frode Brudvik and is stat...

✉ Majerik C... New Employee Announcement — Tue 8/16/2005 2:42 PM 4 KB

We are pleased to announce the addition of the following new employee:
Beth McNicholas has joined ISMS/ISMIS/ISMIE Mutual as Underwriter Trainee in the Underwriting Division. She is working under the
direction of Frode Brudvik and is stationed on...

*PROMOTIONS —*

*NEW HIRE*

| !  ☐  0  From    Subject | Received | Size |
|---|---|---|
| Majerik C...  New Employee Announcement | Tue 7/19/2005 12:43 PM  6 KB | |
| We are extremely pleased to announce the addition of a new senior staff member to ISMIE Mutual's management team, responsible for overseeing our financial and reinsurance divisions and for coordinating these functions across divisional lines. The position... | | |
| Majerik C...  New Employee Announcement | Thu 7/7/2005 8:41 AM  4 KB | |
| We are pleased to announce the addition of the following new employee: Jim Myhre has joined ISMS/ISMIS/ISMIE Mutual as Statistical Analyst in the Internal Audit Division. He is working under the direction of Jim Skinner and is stationed on the ei... | | |
| **Majerik ...  New Employee Announcement** | **Mon 6/20/2005 9:5...  4 KB** | |
| We are pleased to announce the addition of the following new employee: Lisa Marie Combes has joined ISMS/ISMIS/ISMIE Mutual as Senior Accountant in the Finance Division. She is working under the direction of Angela Walsh and is stationed on the s... | | |
| Majerik C...  New Employee Announcement | Thu 6/2/2005 10:58 AM  4 KB | |
| We are pleased to announce the addition of the following new employee: Nelle Bradley has joined ISMS/ISMIS/ISMIE Mutual as Meeting Planner in the Risk Management Division. She is working under the direction of Donna Locasto and is stationed on th... | | |
| Majerik C...  New Employee Announcement | Mon 4/25/2005 9:18 AM  4 KB | |
| We are pleased to announce the addition of the following new employee: Heather Ebert has joined ISMS/ISMIS/ISMIE Mutual as Claims Service Representative in the Claims Division. She is working under the direction of Kelly Kehoe and is stationed on... | | |
| Majerik C...  New Employee Announcement | Wed 3/30/2005 2:00 PM  4 KB | |
| We are pleased to announce the addition of the following new employee: William Burns has joined ISMS/ISMIS/ISMIE Mutual as Senior Professional Liability Analyst in the Claims Division. He is working under the direction of Chris Leone and is stati... | | |
| Majerik C...  New Employee Announcement | Wed 3/30/2005 1:52 PM  4 KB | |
| We are pleased to announce the addition of the following new employee: Steven O'Rorke has joined ISMS/ISMIS/ISMIE Mutual as Senior Financial Analyst in the Finance Division. He is working under the direction of Bud Gross and is stationed on the s... | | |
| Majerik C...  New Employee Announcement | Mon 3/21/2005 12:03 ...  4 KB | |
| We are pleased to announce the addition of the following new employee: Sarah Adams has joined ISMS/ISMIS/ISMIE Mutual as Secretary to VP  Management Services in the Human Resources Division. She is working under the direction of Diana Role and is... | | |
| Majerik C...  New Employee Announcement | Thu 2/3/2005 12:03 PM  4 KB | |
| We are pleased to announce the addition of the following new employee: Sarah Renfrow has joined ISMS/ISMIS/ISMIE Mutual as Professional Liability Analyst Trainee in the Claims Division. She is working under the direction of Jeff Beth and is stati... | | |
| Majerik C...  New Employee Announcement | Thu 2/3/2005 11:52 AM  4 KB | |
| We are pleased to announce the addition of the following new employee: Katie Smith has joined ISMS/ISMIS/ISMIE Mutual as Professional Liability Analyst Trainee in the Claims Division. She is working under the direction of Michelle Stenzel and is ... | | |
| Majerik C...  New Employee Announcement | Fri 1/14/2005 3:10 PM  4 KB | |
| We are pleased to announce the addition of the following new employee: Sheila Farmer has joined ISMS/ISMIS/ISMIE Mutual as Records Clerk in the Claims Division. She is working under the direction of Rodney Ward and is stationed on the sixth floor. S... | | |
| Majerik C...  New Employee Announcement | Mon 11/15/2004 9:40 ...  4 KB | |
| We are pleased to announce the addition of the following new employee: Krystin Daniello has joined ISMS/ISMIS/ISMIE Mutual as Claims Service Representative in the Claims Division. She is working under the direction of Kelly Kehoe and is stationed on ... | | |
| **Majerik ...  New Employee Announcement** | **Mon 11/8/2004 11:...  4 KB** | |
| We are pleased to announce the addition of the following new employee: Dan Deutschman has joined ISMS/ISMIS/ISMIE Mutual as Professional Liability Analyst in the Claims Division. He is working under the direction of Tom Witham and is stationed in Spr... | | |
| **Majerik ...  New Employee Announcement** | **Mon 11/8/2004 11:...  4 KB** | |
| We are pleased to announce the addition of the following new employee: Nicole Dykas has joined ISMS/ISMIS/ISMIE Mutual as Professional Liability Analyst in the Claims Division. She is working under the direction of Sandra Nuzzo and is stationed on th... | | |
| **Majerik ...  New Employee Announcement** | **Mon 11/8/2004 11:...  4 KB** | |
| We are pleased to announce the addition of the following new employee: Laura Byrne has joined ISMS/ISMIS/ISMIE Mutual as Professional Liability Analyst in the Claims Division. She is working under the direction of Jeff Beth and is stationed on the si... | | |

| | From | Subject | | Received | Size |
|---|---|---|---|---|---|
| ✉ | Brudvik F... | FW: Kevin Riordan and Karen Roosey | | Fri 7/8/2005 4:00 PM | 1 KB |

We have been advised that Karen Roosey and Kevin Riordan are no longer affiliated with MARSH. Therefore, please keep in mind they are no longer authorized to conduct business on behalf of Marsh clients.
If you have any questions, please let me know....

| ✉ | Member ... | IMIS Record Added | | Mon 6/6/2005 1:53 PM | 641 B |

We have found a match for your record: Cohanim, Nooshin
iMIS ID: 14214
Policy Number: 56156

| ✉ | Majerik C... | Employee Title Change | | Tue 3/1/2005 8:45 AM | 3 KB |

Sarah Christensen, Alice Hayner, and Emily Vetter have changed position titles to Project Coordinators in the Specialties Division. Their previous titles were Administrative Coordinators.
cc:     Harold L. Jensen, M.D....

| ✉ | **Majerik ...** | **Employee Promotion** | | **Tue 4/11/2006 8:3...** | **3 KB** |

We are pleased to announce that Brian Murphy has been promoted to Senior Risk Management Specialist in the Risk Management Division. Brian has been with ISMIS/ISMIS/ISMIE Mutual since April 2000, most recently as Risk Management Specialist.
Please jo...

| ✉ | Majerik C... | Employee Promotion | | Wed 2/8/2006 12:03 PM | 3 KB |

We are pleased to announce that Jacinth Stokes has been promoted to Underwriting Support Manager in the Underwriting Division. Jacinth has been with ISMS/ISMIS/ISMIE Mutual since March 1999, most recently as Underwriter.
Please join us in congratula...

| ✉ | Majerik C... | Employee Promotion | | Wed 2/8/2006 12:00 PM | 3 KB |

We are pleased to announce that Michi Smith has been promoted to Director, Underwriting in the Underwriting Division. Michi has been with ISMS/ISMIS/ISMIE Mutual since August 1992, most recently as Underwriting Manager.
Please join us in congratulatin...

| ✉ | Majerik C... | Employee Promotion | | Wed 2/8/2006 11:57 AM | 3 KB |

We are pleased to announce that Keith Evans has been promoted to Senior Director, Underwriting and Business Development in the Underwriting Division. Keith has been with ISMS/ISMIS/ISMIE Mutual since October 1989, most recently as Director, Business Deve...

| ✉ | Majerik C... | Employee Promotion | | Mon 1/16/2006 9:27 AM | 3 KB |

We are pleased to announce that Ingrid Hubbard has been promoted to Risk Management Technology Specialist in the Risk Management Division. Ingrid has been with ISMS/ISMIS/ISMIE Mutual since January 2003, most recently as Office Assessment Coordinator....

| ✉ | **Majerik ...** | **Employee Promotion** | ' | **Wed 11/30/2005 1...** | **3 KB** |

We are pleased to announce that Marcella Hollinger has been promoted to Director of Risk Management Program Development in the Risk Management Division. Marcella has been with ISMS/ISMIS/ISMIE Mutual since June 2000, most recently as Director of Educat...

| ✉ | Majerik C... | Employee Promotion | | Wed 11/30/2005 11:4... | 3 KB |

We are pleased to announce that Maria Marioni has been promoted to Executive Secretary to Senior Vice President in the Administration Division. Maria has been with ISMS/ISMIS/ISMIE Mutual since December 1990, most recently as Health Policy Research and...

| ✉ | Majerik C... | Employee Promotion | | Thu 11/17/2005 3:34 PM | 3 KB |

We are pleased to announce that Thea Hickey has been promoted to Assistant Director, Accounting in the Finance Division. Thea has been with ISMS/ISMIS/ISMIE Mutual since May 1997, most recently as Accounting Supervisor.
Please join us in congratulat...

| ✉ | Majerik C... | Employee Promotion | | Wed 11/16/2005 9:17 ... | 3 KB |

We are pleased to announce that Ed Thiemann has been promoted to Project Manager in the Information Systems Division. Ed has been with ISMS/ISMIS/ISMIE Mutual since April 1996, most recently as Project Specialist.
Please join us in congratulating Ed...

| ✉ | **Majerik ...** | **Employee Promotion** | | **Tue 11/15/2005 1:...** | **3 KB** |

We are pleased to announce that Keri Staley has been promoted to Senior Programmer Analyst in the Information Systems Division. Keri has been with ISMS/ISMIS/ISMIE Mutual since November 2002, most recently as Programmer Analyst.
Please join us in co...

| ✉ | Majerik C... | Employee Promotion | | Thu 10/20/2005 12:06... | 3 KB |

We are pleased to announce that Pat Jiardina has been promoted to Senior Professional Liability Analyst in the Claims Division. Pat has been with ISMS/ISMIS/ISMIE Mutual since October 2002, most recently as Professional Liability Analyst.
Please jol...

| ✉ | **Majerik ...** | **Employee Promotion** | | **Thu 10/20/2005 12...** | **3 KB** |

We are pleased to announce that Eric Gleason has been promoted to Audit Specialist in the Internal Audit Division. Eric has been with ISMS/ISMIS/ISMIE Mutual since July 1996, most recently as Senior Internal Auditor.
Please join us in congratulating...

| ↑ ▯ ⚏ From | Subject | ▽ | | Received | Size | ▽ |
|---|---|---|---|---|---|---|

| Majerik C... | Employee Promotion | Thu 10/20/2005 9:24 ... | 3 KB |
|---|---|---|---|
| | We are pleased to announce that Katie Gilfillan has been promoted to Senior Risk Management Development Specialist in the Risk Management Division. Katie has been with ISMS/ISMIS/ISMIE Mutual since October 2004, most recently as Risk Management Develop... | | ▽ |

| Majerik C... | Employee Promotion | Thu 10/20/2005 9:21 ... | 3 KB |
|---|---|---|---|
| | We are pleased to announce that Lori O'Connor has been promoted to Communications Coordinator in the Communications Division. Lori has been with ISMS/ISMIS/ISMIE Mutual since September 2002, most recently as Secretary. Please join us in congratulati... | | ▽ |

| Majerik C... | Employee Promotion | Wed 10/5/2005 3:32 PM | 3 KB |
|---|---|---|---|
| | We are pleased to announce that Ruby St. James has been promoted to Senior Professional Liability Analyst in the Claims Division. Ruby has been with ISMS/ISMIS/ISMIE Mutual since October 2001, most recently as Professional Liability Analyst. Please ... | | ▽ |

| Majerik C... | Employee Promotion | Mon 9/19/2005 9:00 AM | 3 KB |
|---|---|---|---|
| | We are pleased to announce that Stephen Murphy has been promoted to Senior Risk Management Development Specialist in the Risk Management Division. Stephen has been with ISMS/ISMIS/ISMIE Mutual since September 2002, most recently as Risk Management Deve... | | ▽ |

| Majerik C... | Employee Promotion | Mon 7/18/2005 9:28 AM | 3 KB |
|---|---|---|---|
| | We are pleased to announce that Sandy Roche has been promoted to Membership Coordinator in the Membership Services Division. Sandy has been with ISMS/ISMIS/ISMIE Mutual since June 2004, most recently as Secretary, Purchasing. Please join us in congr... | | ▽ |

| **Majerik ...** | **Employee Promotion** | **Mon 6/20/2005 10:...** | **3 KB** |
|---|---|---|---|
| | We are pleased to announce that Jamie Donovan has been promoted to Underwriting Trainee in the Underwriting Division. Jamie has been with ISMS/ISMIS/ISMIE Mutual since March 2002, most recently as Underwriting Technician. Please join us in congratul... | | ▽ |

| Majerik C... | Employee Promotion | Wed 5/18/2005 10:10 ... | 3 KB |
|---|---|---|---|
| | We are pleased to announce that Yunjie Liu has been promoted to Systems Programmer in the Information Systems Division. Yunjie has been with ISMS/ISMIS/ISMIE Mutual since April 2001, most recently as Programmer Analyst. Please join us in congratulat... | | ▽ |

| Majerik C... | Employee Promotion | Mon 5/16/2005 8:38 AM | 3 KB |
|---|---|---|---|
| | We are pleased to announce that Spero Argyris has been promoted to Senior Underwriter in the Underwriting Division. Spero has been with ISMS/ISMIS/ISMIE Mutual since May 1996, most recently as Underwriter. Please join us in congratulating Spero on h... | | ▽ |

| Majerik C... | Employee Promotion | Mon 5/2/2005 10:40 AM | 3 KB |
|---|---|---|---|
| | We are pleased to announce that Ron Marchionna has been promoted to Assistant Vice President (Reinsurance) in the Internal Audit Division. Ron has been with ISMS/ISMIS/ISMIE Mutual since March 1988, most recently as Audit Specialist. Please join us ... | | ▽ |

| Majerik C... | Employee Promotion | Fri 4/29/2005 9:22 AM | 3 KB |
|---|---|---|---|
| | We are pleased to announce that Kelley Elwood has been promoted to Director, Media Relations and Officer Outreach in the Communications Division. Kelley has been with ISMS/ISMIS/ISMIE Mutual since November 1995, most recently as Assistant Director, Com... | | ▽ |

| Majerik C... | Employee Promotion | Mon 4/18/2005 11:53 ... | 3 KB |
|---|---|---|---|
| | We are pleased to announce that Rhonda Sturm has been promoted to Senior Professional Liability Analyst in the Claims Division. Rhonda has been with ISMS/ISMIS/ISMIE Mutual since April 2002, most recently as Professional Liability Analyst. Please jo... | | ▽ |

| Majerik C... | Employee Promotion | Tue 4/12/2005 12:37 PM | 2 KB |
|---|---|---|---|
| | We are pleased to announce that Jennifer Fitzgerald has been promoted to Senior Professional Liability Analyst in the Claims Division. Jennifer has been with ISMS/ISMIS/ISMIE Mutual since April 2002, most recently as Professional Liability Analyst.... | | ▽ |

| Majerik C... | Employee Promotion | Tue 4/12/2005 11:51 AM | 2 KB |
|---|---|---|---|
| | We are pleased to announce that LuAnn Minogue has been promoted to Professional Liability Specialist in the Claims Division. LuAnn has been with ISMS/ISMIS/ISMIE Mutual since June 1997, most recently as Professional Liability Analyst. Please join us... | | ▽ |

| Majerik C... | Employee Promotion | Tue 4/12/2005 11:45 AM | 2 KB |
|---|---|---|---|
| | We are pleased to announce that Debbie O'Brien has been promoted to Technical Services Assistant in the Information Systems Division. Debbie has been with ISMS/ISMIS/ISMIE Mutual since February 2001, most recently as Administrative Coordinator. Plea... | | ▽ |

| Majerik C... | Employee Promotion | Mon 2/7/2005 3:22 PM | 2 KB |
|---|---|---|---|
| | We are pleased to announce that Keith Evans has been promoted to Director of Business Development in the Underwriting Division. Keith Evans has been with ISMS/ISMIS/ISMIE Mutual since October 1989, most recently as Assistant Director of Business Develo... | | ▽ |

| Majerik C... | Employee Promotion | Wed 11/17/2004 3:10 ... | 965 B |
|---|---|---|---|
| | We are pleased to announce that Theresa Daniello has been promoted to Senior Professional Liability Analyst in the Claims Division. Theresa Daniello has been with ISMS/ISMIS/ISMIE Mutual since November 2000, most recently as Professional Liability A... | | ▽ |

| ! | D | 0 | From | Subject | Received | ▼ | Size | ▼ |
|---|---|---|------|---------|----------|---|------|---|

Hutchinso... **Training Schedule**                                Tue 10/3/2006 11:51 ...  3 KB
The Mini Office sessions will now take place in the Training Room on the 2nd floor.
Laura C. Hutchinson
Assistant Vice President, Underwriting

**Majerik ...  Employee Departure**                              Mon 10/2/2006 9:3...  3 KB
Sharon Collins of Claims has left employment with ISMS/ISMIS/ISMIE Mutual.  Please refer calls to Rodney Ward at extension 6176.
cc: Harold L. Jensen, M.D.
Alfred J. Clementi, M.D.

Allphin Alan  **ImageRight Training**                           Fri 9/29/2006 3:34 PM   3 KB
All of you received your ImageRight training schedule at Thursday's staff meeting.  This schedule has been designed in an effort to
maintain phone coverage, as well as wisely utilizing our training time and the expertise of the Image Right personnel.  For...

**Majerik ...  New Employee Announcement**                      Fri 9/29/2006 11:5...  4 KB
We are pleased to announce the addition of the following new employee:
James Lee has joined ISMS/ISMIS/ISMIE Mutual as Programmer/Analyst in the Information Systems Division.  He is working under the
direction of Keri Staley and is ...

**Hutchin...  Underwriting Mail**                               Fri 9/29/2006 9:33...  5 KB
Don:
Beginning on Monday, October 2nd, please arrange to have all of Underwriting's mail delivered in a bin to the File Room.
They will be handling it on a permanent basis.

Gentile-K...   **Fall Event**                                  Thu 9/28/2006 4:37 PM   6 KB
ARE YOU READY FOR SOME FUN?
That must mean that it is time to go bowling!  And that is just what the Employee Recognition Committee has planned for you!  The
Company fall event will be held on Friday, November 3, 2006 at 10pin Bowling Lounge.  A...

**Majerik ...  Employee Promotion**                             Wed 9/20/2006 12...  3 KB
We are pleased to announce that Carissa McKenna has been promoted to Professional Liability Analyst in the Claims Division.  Carissa has
been with ISMS/ISMIS/ISMIE Mutual since March 2006, most recently as Professional Liability Analyst Trainee.
Please...

**Maes St...  Infinity problems**                               Mon 9/18/2006 5:3...  12 KB
Yesterday I/S rolled out a new version of Infinity dated 9-15-06.
However, there are a few outstanding issues with Notes Filter and Notes Editor that occurred while Infinity was testing.  Remember, if the
Note Filter screen displays "blank" a...

Majerik C...  **New Employee Announcement**                     Tue 9/12/2006 10:01 ...  4 KB
We are pleased to announce the addition of the following new employee:
Charlotte Johnson has joined ISMS/ISMIS/ISMIE Mutual as Meeting Services Assistant in the Meeting and Travel Services Division.  She is
working under the directi...

**Majerik ...  Employee Departure**                             Fri 9/8/2006 8:19 ...  3 KB
Sarah Christensen of Medical Association Management has left employment with ISMS/ISMIS/ISMIE Mutual.  Please refer calls to Laura
Downes at extension 2480.
cc: Harold L. Jensen, M.D.

**Bules Gi...  FW: Important Underwriting Information**          Thu 9/7/2006 2:05 ...  117 KB
This e-mail was just sent to all ISMIE Producers.
Gina Bules Secretary to Vice President, Underwriting ISMIE Mutual Insurance Company
20 North Michigan Avenue, Suite 700

**Maes St...  Infinity Upgrade 9-7-06 5:00PM**                  Thu 9/7/2006 11:3...  7 KB
If you do not utilize Infinity you can disregard this e-mail.
An Infinity upgrade is scheduled for tonight beginning at 5:00PM.  Please make sure that you have Infinity closed prior to leaving this
evening.  Infinity will be unavailable until 6:00AM...

**Majerik ...  Employee Promotion**                             Fri 9/1/2006 11:40...  3 KB
We are pleased to announce that Beth McNicholas has been promoted to Underwriter in the Underwriting Division.  Beth has been with
ISMS/ISMIS/ISMIE Mutual since August 2005, most recently as Underwriting Trainee.
Please join us in congratulating Beth...

**Majerik ...  Employee Promotion**                             Fri 9/1/2006 9:45 ...  3 KB
We are pleased to announce that Jennifer Mroz has been promoted to Professional Liability Analyst in the Claims Division.  Jennifer has
been with ISMS/ISMIS/ISMIE Mutual since December 2002, most recently as Professional Liability Analyst Trainee.
Pl...

**Majerik ...  Employee Promotion**                             Fri 9/1/2006 9:44 ...  3 KB
We are pleased to announce that Mike Urso has been promoted to Senior Professional Liability Analyst in the Claims Division.  Mike has
been with ISMS/ISMIS/ISMIE Mutual since August 2003, most recently as Professional Liability Analyst.
Please join u...

**Majerik ...  Employee Departure**                             Thu 8/31/2006 9:3...  3 KB
Kristen Miller of Communications has left employment with ISMS/ISMIS/ISMIE Mutual.  Please refer calls to Rebecca Miller at extension
6450.
cc: Harold L. Jensen, M.D.

| ☐ ! � ❘ From | Subject | Received | Size | ▽ |
|---|---|---|---|---|

**Majerik C... Employee Promotion** — Fri 11/12/2004 2:46 PM 929 B

We are pleased to announce that Michelle Kalries Stenzel has been promoted to Claims Manager in the Claims Division. Michelle has been with ISMS/ISMIS/ISMIE Mutual since November 2002, most recently as Senior Professional Liability Analyst. Please j...

**Majerik C... Employee Position Change** — Mon 1/16/2006 9:43 AM 3 KB

Nelle Bradley has changed job positions to Risk Management Office Assessment and Meeting Coordinator in the Risk Management Division. Nelle has been with ISMS/ISMIS/ISMIE Mutual since June 2005, most recently as Risk Management Meeting Planner....

**Majerik C... Employee Departure** — Thu 2/2/2006 8:54 AM 3 KB

Dan Deutschman of Claims has left employment with ISMS/ISMIS/ISMIE Mutual. Please refer calls to Tom Witham at extension 3026.
cc: Harold L. Jensen, M.D.
Alfred J. Clementi, M.D.

**Majerik ... Employee Departure** — Mon 1/23/2006 2:5... 3 KB

Frode Brudvik of Underwriting has left employment with ISMS/ISMIS/ISMIE Mutual. Please refer calls to Sheila Coghlan at extension 2451.
cc: Harold L. Jensen, M.D.

**Majerik C... Employee Departure** — Wed 1/4/2006 8:40 AM 3 KB

Bill Burns of Claims has left employment with ISMS/ISMIS/ISMIE Mutual. Please refer calls to Terese Souders at extension 6468.
cc: Harold L. Jensen, M.D.
Alfred J. Clementi, M.D.

**Majerik C... Employee Departure** — Wed 1/4/2006 8:39 AM 3 KB

Steve Watson of Claims has left employment with ISMS/ISMIS/ISMIE Mutual. Please refer calls to Rodney Ward at extension 6176.
cc: Harold L. Jensen, M.D.
Alfred J. Clementi, M.D.

**Majerik C... Employee Departure** — Thu 12/8/2005 2:28 PM 3 KB

Ayanna Allen of Claims has left employment with ISMS/ISMIS/ISMIE Mutual. Please refer calls to Terese Souders at extension 6468.
cc: Harold L. Jensen, M.D.
Alfred J. Clementi, M.D.

**McGuire ... Employee Departure** — Wed 11/9/2005 8:52 AM 4 KB

Carolyn Lau of Internal Audit has left employment with ISMS/ISMIS/ISMIE Mutual.
Please refer calls to Doug Batchelder at extension 6476.
cc: Harold L. Jensen, M.D.

**Majerik C... Employee Departure** — Mon 10/24/2005 9:01 ... 3 KB

Donna Wilson of Risk Management has left employment with ISMS/ISMIS/ISMIE Mutual. Please refer calls to Audrey Vanagunas at extension 2465.
cc: Harold L. Jensen, M.D.

**Majerik C... Employee Departure** — Mon 10/3/2005 12:19 ... 3 KB

Bobbi Kehoe of Finance has left employment with ISMS/ISMIS/ISMIE Mutual. Please refer calls to Bud Gross at extension 2454.
cc: Harold L. Jensen, M.D.
Alfred J. Clementi, M.D.

**Majerik C... Employee Departure** — Mon 10/3/2005 11:44 ... 3 KB

Cherie Lewis of Claims has left employment with ISMS/ISMIS/ISMIE Mutual. Please refer calls to Michelle Stenzel at extension 2478.
cc: Harold L. Jensen, M.D.
Alfred J. Clementi, M.D.

**Majerik C... Employee Departure** — Tue 9/27/2005 10:38 AM 3 KB

Albert Gapasin of Underwriting has left employment with ISMS/ISMIS/ISMIE Mutual. Please refer calls to Michi Smith at extension 6498.
cc: Harold L. Jensen, M.D.
Alfred J. Clementi, M.D.

**Majerik C... Employee Departure** — Mon 9/19/2005 8:54 AM 3 KB

Joe Madura of Underwriting has left employment with ISMS/ISMIS/ISMIE Mutual. Please refer calls to Laura Hutchinson at extension 6458.
cc: Harold L. Jensen, M.D.

**Majerik C... Employee Departure** — Thu 9/8/2005 11:06 AM 3 KB

Charlene Vander Zanden of Underwriting has left employment with ISMS/ISMIS/ISMIE Mutual. Please refer calls to Frode Brudvik at extension 6445.
cc: Harold L. Jensen, M.D.

**Majerik C... Employee Departure** — Mon 8/1/2005 8:43 AM 3 KB

Beth Weiss of Internal Audit has left employment with ISMS/ISMIS/ISMIE Mutual. Please refer calls to Jim Skinner at extension 2406.
cc: Harold L. Jensen, M.D.
Alfred J. Clementi, M.D.

| ! | □ | Ø | From | Subject | Received ▼ | Size ▽ |
|---|---|---|------|---------|----------|--------|

| ↩ | | | Hutchinso... FW: HIGH PRIORITY - ImageRight | Wed 10/25/2006 8:36 ... 8 KB |
|---|---|---|---|---|

Please have this done this morning and let me know the result.
Laura C. Hutchinson Assistant Vice President, Underwriting ISMIE Mutual Insurance Company
312.580.6458 (Direct)

| ⌐ | | | **Cowan L... Reopened File Scanned** | **Wed 10/25/2006 7... 1 KB** |

24844 is scanned <end>

| ↩ | Ø | | Bules Gina   Revised Producer List | Tue 10/24/2006 3:05 ... 116 KB |

I have just been informed that John Lappe has joined R.T. Nelson as a licensed producer. He has been added to the attached list so
please replace the one sent earlier with the attached.
Gina Bules Underwriting Division ISMIE Mutual Insurance Co...

| ↩ | Ø | | Bules Gina   Attached Producer List | Tue 10/24/2006 2:35 ... 116 KB |

Please note two revisions on the attached list:
1)  The fax number for Marsh USA has been changed; and
2)  Commission Checks for Behnke & Company should now be sent to the attention of Sally Manning as opposed to Ted Miller.

| ⌐ | | | **Majerik ...  Employee Promotion** | **Tue 10/24/2006 10... 4 KB** |

We are pleased to announce that David Lorenz has been promoted to Senior Programmer Analyst in the Information Systems Division.
David has been with ISMS/ISMIS/ISMIE Mutual since October 2002, most recently as Programmer Analyst.
Please join us in c...

| ↩ | | | Cowan Lisa   REOPEN SCAN FILES | Mon 10/23/2006 3:34 ... 2 KB |

Hi Sakie
Your files are scanned  16101 &  25775 <end>

| ↩ | | | Thiemann... RE: HIGH PRIORITY - 63698 | Mon 10/23/2006 11:2... 5 KB |

Please do a shut down and restart and then try again.
Microsoft word on your computer is giving an error
Please let me know if this corrects the issue

| ↩ | | | Thiemann... RE: HIGH PRIORITY - 63698 | Mon 10/23/2006 11:2... 4 KB |

What error are you getting?

From: Scott Sakie

| ↩ | | | Thiemann... RE: HIGH PRIORITY - 63698 | Mon 10/23/2006 11:0... 4 KB |

Sakie, I am able to open this, what problem are you having?

From: Hutchinson Laura

| ⌐ | | | **Majerik ...  Employee Departure** | **Mon 10/23/2006 8:... 4 KB** |

Nelle Bradley of Risk Management has left employment with ISMS/ISMIS/ISMIE Mutual.  Please refer calls to Donna Locasto at extension
1627.
          cc: Harold L. Jensen, M.D.

| ↩ | | | Cowan Lisa   Reopen File | Thu 10/19/2006 4:09 ... 2 KB |

Hi Sakie file 15492 is scanned <end>

| ↩ | | | Cowan Lisa | Fri 10/13/2006 8:45 AM  2 KB |

Hi Sakie
Your files are scanned 14893   63348   and 40273 <end>

| ↩ | | | Gentile-K...  Policy Manual Additions/Leave Form | Thu 10/12/2006 4:22 ... 8 KB |

October 10, 2006
To:     All Employees
From:  Donna Gentile-Karas

| ↩ | | | Maddock ...  Loss History Return Envelopes | Tue 10/10/2006 4:55 ... 8 KB |

Hello Everyone-
As you know, many of the loss history requests we receive through the mail come with pre-addressed return envelopes.  Before the
ImageRight takeover, these envelopes were stapled to the back of the request when opened and mailed al...

| ⌐ | | | **Madura ...  RE: Loss History Letters** | **Mon 10/9/2006 10:... 4 KB** |

Will do.  Deborah and I will determine any extra paper loss histories (given to us last week) this morning, give you any inactives and
forward the ImageRight task to you.

| ↩ | | | Maes Steve  RE: Barcode | Thu 10/5/2006 12:43 ... 3 KB |

Sakie,
There is no need for any more barcodes. The file room people that scan know how to do it without a barcode.
Thanks,

| ↩ | | | Majerik C...  New Employee Announcement | Tue 10/3/2006 3:34 PM  4 KB |

We are pleased to announce the addition of the following new employee:
Melvin Barnes has joined ISMS/ISMIS/ISMIE Mutual as a Risk Management Specialist in the Risk Management Division.  He is working
under the direction of Michelle ...

| ↩ | Ø | | Benedict ...  underwriting workflow.doc | Tue 10/3/2006 1:12 PM  105 KB |

| ! | From | Subject | Received | Size |
|---|------|---------|----------|------|

| | Smith Car... | Correspondence???? | Mon 11/13/2006 2:01 ... | 2 KB |

I have received in the underwriting mail workflow four pages (9 through 12) of an application.  The only clue from whom this information came from is that it was faxed from a Kinkos in Plainfield.  If any one has an idea of what policy this would bel...

| | Nowel Ka... | FW: Dr. Charles Roller #63668 | Mon 11/13/2006 9:39 ... | 8 KB |

Hi Sakie,
I just got a call on this, the office is requesting proof of coverage.  If you could reinitialize the policy this morning, I would appreciate it.  Thanks!

| | Nowel Ka... | Dr. Charles Roller #63668 | Fri 11/10/2006 3:59 PM | 5 KB |

Hi Sakie,
Can you reinitialize this policy and let Tanya know when its complete?  His new business submission is ok to accept.  I have completed an AR in PUMA.

| | Cowan Lisa | file scanned | Fri 11/10/2006 1:25 PM | 2 KB |

25978 <end>

| | Majerik C... | New Employee Announcement | Thu 11/9/2006 8:05 AM | 4 KB |

We are pleased to announce the addition of the following new employee:
David Wichmann  has joined ISMS/ISMIS/ISMIE Mutual as Controller in the Finance Division.  He is working under the direction of Bud Gross and is stationed on the...

| ⌐ | Majerik ... | **Employee Promotion** | **Wed 11/8/2006 4:...** | **4 KB** |

We are pleased to announce that Nicole Dykas has been promoted to Senior Professional Liability Analyst in the Claims Division.  Nicole has been with ISMS/ISMIS/ISMIE Mutual since November 2004, most recently as Professional Liability Analyst.
Please j...

| | Gentile-K... | Holiday Event | Wed 11/8/2006 11:27 ... | 9 KB |

Please join us for lunch, fun, music, dancing, and gifts to celebrate the holiday season!
        Where:        The Mid America Club (located in the Aon Building)
                      200 East Randolph Drive...

| | Cowan Lisa | SCANNED FILES | Tue 11/7/2006 3:43 PM | 2 KB |

62816   32430 <end>

| | Cowan Lisa | FILE SCANNED | Mon 11/6/2006 7:56 AM | 2 KB |

GOOD MORNING
YOUR FILE IS SCANNED 38584 <end>

| | Maddock ... | New Business Applications | Thu 11/2/2006 3:01 PM | 7 KB |

Hi Sakie-
Here is a list of New Business Applications I completed while you were out.  I was unable to submit the Outlook Form for any of them.  My Outlook won't do that for some reason.  I'll have to ask you who to call to fix it when you get bac...

| | Cowens B... | RE: Autumn Sheese-63716 | Thu 11/2/2006 10:33 ... | 4 KB |

NO

From: Scott Sakie

| ⌐ | Majerik ... | **Employee Promotion** | **Thu 11/2/2006 8:4...** | **4 KB** |

We are pleased to announce that Tracey Printen has been promoted to Assistant Director in the Health Policy Research and Advocacy Division.  Tracey has been with ISMS/ISMIS/ISMIE Mutual since October 2001, most recently as Research Associate.
Please jo...

| | Cowan Lisa | file scann | Wed 11/1/2006 11:38 ... | 1 KB |

50250      16101 <end>

| ⌐ | Cowan L... | reopened file | Mon 10/30/2006 4:... | 2 KB |

62330          this is scanned <end>

| | RightFa... | **Your fax has been successfully sent to Kathy Mecham at 1-618-244-3832.** | Mon 10/30/2006 2:... | 635 B |

Your fax has been successfully sent to Kathy Mecham at 1-618-244-3832.
-------------------------------------------------
Time: 10/30/2006 2:30:55 PM

| | Cowan Lisa | REOPENED FILE SCAN | Fri 10/27/2006 4:54 PM | 5 KB |

HI Sakie
These files are scanned 08918
                62815

| ⌐ | Hutchin... | FW: Hunt Line Adjustments | Fri 10/27/2006 11:... | 6 KB |

We can now return to normal ...
The Techs are back in hunt and the Specialists can be out.
Also, the "time off hunt" schedule is active again.

| | Wideman... | Missing Applications | Wed 10/25/2006 11:5... | 4 KB |

Hey Sakie,
Below are the names of the physician's applications for Infinity Healthcare (#54259) that seem to be missing or have not been scanned.  Please let me know what you come up with when you have a chance.

| | From | Subject | Received | Size |
|---|---|---|---|---|

**Date: Last Week**

☐ Renfro ... **Beatrice Ward**        Thu 12/14/2006 8:... **2 KB**

It is with sadness that I inform you that Rodney Ward's mother, Beatrice, passed away early this morning. Once additional information regarding the services is known, I will pass it along.   &lt;end&gt;

Majerik C... New Employee Announcement      Tue 12/12/2006 3:41 ... 4 KB

We are pleased to announce the addition of the following new employee:
Linda Stormont has joined ISMS/ISMIS/ISMIE Mutual as Senior Writer in the Communications Division. She is working under the direction of Rebecca Swanson and is ...

**Date: Two Weeks Ago**

☐ Hutchin... **RE: Early Dismissal**      Mon 12/4/2006 1:5... **5 KB**

Okay
Laura C. Hutchinson Assistant Vice President, Underwriting ISMIE Mutual Insurance Company
312.580.6458 (Direct)

**Date: Three Weeks Ago**

Roberson... Chirag Patel, M.D. #63654      Wed 11/29/2006 4:37 ... 3 KB

Sakie,
Please re-initialize the captioned policy and send to Brenda for re-rating. New effective date is 12/04/06.
Thanks.

Maddock ... New Business Applications      Tue 11/28/2006 5:36 ... 5 KB

Sakie-
This is a list of applications I processed today. They were not entered in outlook.
Learie R. Lindsay, M.D. – 63766

☐ Majerik ... **New Employee Announcement**      Tue 11/28/2006 12... **4 KB**

We are pleased to announce the addition of the following new employee:
Roni Pressler has joined ISMS/ISMIS/ISMIE Mutual as Assistant Vice President, Marketing in the Marketing Division. She is working under the direction of Cheryl ...

Maddock ... New Business Applications      Mon 11/27/2006 6:01 ... 6 KB

Sakie-
This is a list of applications I processed today. They were not entered in outlook.
L.M. Prasad, M.D., S.C. – 63761

**Date: Older**

Majerik C... New Employee Announcement      Tue 11/21/2006 9:12 ... 4 KB

We are pleased to announce the addition of the following new employee:
Teresa Neufeld has joined ISMS/ISMIS/ISMIE Mutual as Vice President, PBT in the Administration Division. She is working under the direction of John Washburn and...

☐ Hutchin... **Sarah will not be in today.**      Fri 11/17/2006 9:0... **3 KB**

Laura C. Hutchinson
Assistant Vice President, Underwriting
ISMIE Mutual Insurance Company

McGuire ... Important Timesheet and Payroll Processing Information      Wed 11/15/2006 3:45 ... 154 KB

Cowan Lisa FILE SCANNED      Wed 11/15/2006 3:21 ... 2 KB

62878 09766 YOUR FILES ARE SCANNED &lt;end&gt;

☐ Stokes J... **FW: Cancellation Requests - Correspondence Screening**      Wed 11/15/2006 1... **6 KB**

Sakie, can I get the updated cancellation spreadsheet? The techs should have it updated by now.
Thanks.
Jacinth

Hutchinso... Cancellation Requests - Correspondence Screening      Wed 11/15/2006 9:41 ... 5 KB

Carol and Sakie:
Please forward all requests for cancellation to Corliss for handling.
This revised work distribution will be in effect from today through January 1, 2007.

Nowel Ka... RE: Dr. Charles Roller #63668      Tue 11/14/2006 8:46 ... 11 KB

Don't worry, I already had it taken care of. I forgot that you were out yesterday.
Thanks!

☐ Stokes J... **Sarah will not be in today.**      Tue 11/14/2006 8:... **4 KB**

Jacinth E. Stokes
Underwriting Support Manager
ISMIE Mutual Insurance Company

Maddock ... New Business Applications      Mon 11/13/2006 5:13 ... 7 KB

Hi Sakie-
Here is a list of New Business Applications I completed while you were out. I was unable to submit the Outlook Form for any of them. My Outlook won't do that for some reason. I'll have to ask you who to call to fix it when you get bac...

| ! ⓘ ⓤ | From | Subject | Received ▼ | Size ▼ |
|---|---|---|---|---|

**Fowler Ron  PUMA Executable 4.1** — Wed 8/23/2006 9:51 AM  3 KB
When you logged in this morning, you should have received PUMA version 4.1.  This version includes:
-ImageRight buttons have been moved to the top toolbar
-Opening up ImageRight will open the policy in the UWTG drawer instead of the UPU drawer...

**Majerik C...  New Employee Announcement** — Mon 8/21/2006 9:13 AM  4 KB
We are pleased to announce the addition of the following new employee:
David Bentley has joined ISMS/ISMIS/ISMIE Mutual as Professional Liability Analyst in the Claims Division.  He is working under the
direction of Chris Leone and ...

**Majerik C...  New Employee Announcement** — Mon 8/21/2006 9:07 AM  4 KB
We are pleased to announce the addition of the following new employee:
Rita LePard has joined ISMS/ISMIS/ISMIE Mutual as Education Staff Specialist in the Education Division.  She is working under the
direction of Marcella Hollinger...

**Hutchinso...  Broker E-Mail Addresses** — Thu 8/17/2006 4:18 PM  31 KB
All of our current broker e-mail addresses may now be added to your Outlook address book.  Attached is a document which explains how
to do it.
Any changes to the master list will be updated by Gina.

**Majerik ...  Employee Promotion** — Thu 8/17/2006 12:...  3 KB
We are pleased to announce that Emily Logue has been promoted to Senior Professional Liability Analyst in the Claims Division.  Emily has
been with ISMS/ISMIS/ISMIE Mutual since August 2004, most recently as Professional Liability Analyst.
Please jol...

**Majerik ...  Employee Departure** — Wed 8/16/2006 11...  3 KB
Davis DeNazarie of Internal Audit has left employment with ISMS/ISMIS/ISMIE Mutual.  Please refer calls to Jim Skinner at extension
2406.
        cc: Harold L. Jensen, M.D.

**Majerik C...  New Employee Announcement** — Thu 8/10/2006 10:03 ...  4 KB
We are pleased to announce the addition of the following new employee:
Laurie Peacock has joined ISMS/ISMIS/ISMIE Mutual as Director, Media Relations and Officer Outreach in the Communications Division.
She is working under the dir...

**Hutchin...  Additional Temp Secretary** — Tue 8/8/2006 5:32 ...  3 KB
Joe Madura has returned from England and will be working with us for a few months.
He will sit in the cubicle outside of Robin's office.
Laura C. Hutchinson

**Majerik C...  Employee Promotion** — Tue 8/8/2006 9:07 AM  3 KB
We are pleased to announce that Henry Naditz has been promoted to Senior Programmer Analyst in the Information Systems Division.
Henry has been with ISMS/ISMIS/ISMIE Mutual since July 1999, most recently as Programmer Analyst.
Please join us in cong...

**Majerik ...  Employee Promotion** — Tue 8/1/2006 11:5...  3 KB
We are pleased to announce that Jamie Donovan has been promoted to Underwriter in the Underwriting Division.  Jamie has been with
ISMS/ISMIS/ISMIE Mutual since March 2002, most recently as Underwriting Trainee.
Please join us in congratulating Jamie ...

**Hutchinso...  FW: Individual Certs** — Fri 7/28/2006 11:26 AM  63 KB
Please make a note on the list that Advocate wants the certs for each of their locations produced in alpha order for Renewal 2007.

From: Hutchinson Laura

**Majerik ...  Employee Promotion** — Wed 7/19/2006 3:...  3 KB
We are pleased to announce that Jenifer Haas has been promoted to Senior Professional Liability Analyst in the Claims Division.  Jenifer
has been with ISMS/ISMIS/ISMIE Mutual since July 2003, most recently as Professional Liability Analyst.
Please jo...

**Majerik ...  Employee Departure** — Mon 7/10/2006 10:...  3 KB
Jennifer Syslo of Claims has left employment with ISMS/ISMIS/ISMIE Mutual.  Please refer calls to Steve Warren at extension 2453.
        cc: Harold L. Jensen, M.D.
             Alfred J. Clementi, M.D.

**Majerik ...  Employee Departure** — Mon 7/10/2006 10:...  3 KB
Laura Peterson of Education has left employment with ISMS/ISMIS/ISMIE Mutual.  Please refer calls to Marcella Hollinger at extension
6442.
        cc: Harold L. Jensen, M.D.

**Majerik ...  Employee Promotion** — Thu 7/6/2006 9:14 ...  3 KB
We are pleased to announce that Keri Staley has been promoted to Project Manager in the Information Systems Division.  Keri has been
with ISMS/ISMIS/ISMIE Mutual since November 2002, most recently as Senior Programmer / Analyst.
Please join us in con...

**Majerik ...  Employee Promotion** — Thu 7/6/2006 9:04 ...  3 KB
We are pleased to announce that Theresa Manyik has been promoted to Senior Programmer Analyst in the Information Systems Division.
Theresa has been with ISMS/ISMIS/ISMIE Mutual since June 2001, most recently as Programmer Analyst.
Please join us in ...

| From | Subject | Received | Size |
|------|---------|----------|------|

**Majerik ... Employee Promotion** — Tue 4/11/2006 8:3... 3 KB

We are pleased to announce that Brian Murphy has been promoted to Senior Risk Management Specialist in the Risk Management Division. Brian has been with ISMS/ISMIS/ISMIE Mutual since April 2000, most recently as Risk Management Specialist. Please jo...

Hutchinso... Conversion of 4 Sided Files — Mon 4/3/2006 3:32 PM 4 KB

Please look for references to "Letter #1, Letter #2 , Letter #3" on the 4 sided files.
If you find any, they must be indicated on the 6 sided files you are converting to.
NOTE: After all the conversions and prepping are done, we will nee...

Hutchinso... Spreadsheets — Fri 3/31/2006 5:27 PM 3 KB

Sakie:
From now on please give Jacinth the cancellation and part-time spreadsheets each Monday.
Laura C. Hutchinson

**Hutchin... Sarah will not be in today.** — Tue 3/28/2006 8:5... 3 KB

Laura C. Hutchinson
Assistant Vice President, Underwriting
ISMIE Mutual Insurance Company

Gentile-K... New Employee Announcement — Fri 3/24/2006 9:43 AM 6 KB

We are pleased to announce the addition of the following new employees:
Laura Peterson has joined ISMS/ISMIS/ISMIE Mutual as Education Staff Specialist in the Education Division. She is working under the direction of Marcella Hollinger and is sta...

Hutchinso... FW: End of Day Distribution Procedure — Fri 3/17/2006 12:01 PM 73 KB

Please keep for your reference.
Laura C. Hutchinson
Assistant Vice President, Underwriting

Majerik C... Employee Promotion — Wed 2/8/2006 12:03 PM 3 KB

We are pleased to announce that Jacinth Stokes has been promoted to Underwriting Support Manager in the Underwriting Division. Jacinth has been with ISMS/ISMIS/ISMIE Mutual since March 1999, most recently as Underwriter.
Please join us in congratula...

Majerik C... Employee Promotion — Wed 2/8/2006 12:00 PM 3 KB

We are pleased to announce that Michi Smith has been promoted to Director, Underwriting in the Underwriting Division. Michi has been with ISMS/ISMIS/ISMIE Mutual since August 1992, most recently as Underwriting Manager.
Please join us in congratulatin...

Majerik C... Employee Promotion — Wed 2/8/2006 11:57 AM 3 KB

We are pleased to announce that Keith Evans has been promoted to Senior Director, Underwriting and Business Development in the Underwriting Division. Keith has been with ISMS/ISMIS/ISMIE Mutual since October 1989, most recently as Director, Business Deve...

Majerik C... New Employee Announcement — Fri 2/3/2006 9:32 AM 4 KB

We are pleased to announce the addition of the following new employee:
Helen Hoesley has joined ISMS/ISMIS/ISMIE Mutual as Secretary to Vice President in the Internal Audit Division. She is working under the direction of Jim Skinne...

Majerik C... Employee Departure — Thu 2/2/2006 8:54 AM 3 KB

Dan Deutschman of Claims has left employment with ISMS/ISMIS/ISMIE Mutual. Please refer calls to Tom Witham at extension 3026.
cc: Harold L. Jensen, M.D.
Alfred J. Clementi, M.D.

**Majerik ... Employee Departure** — Mon 1/23/2006 2:5... 3 KB

Frode Brudvik of Underwriting has left employment with ISMS/ISMIS/ISMIE Mutual. Please refer calls to Sheila Coghlan at extension 2451.
cc: Harold L. Jensen, M.D.

Majerik C... Employee Position Change — Mon 1/16/2006 9:43 AM 3 KB

Nelle Bradley has changed job positions to Risk Management Office Assessment and Meeting Coordinator in the Risk Management Division. Nelle has been with ISMS/ISMIS/ISMIE Mutual since June 2005, most recently as Risk Management Meeting Planner....

Majerik C... Employee Promotion — Mon 1/16/2006 9:27 AM 3 KB

We are pleased to announce that Ingrid Hubbard has been promoted to Risk Management Technology Specialist in the Risk Management Division. Ingrid has been with ISMS/ISMIS/ISMIE Mutual since January 2003, most recently as Office Assessment Coordinator....

Majerik C... New Employee Announcement — Fri 1/6/2006 2:13 PM 7 KB

We are pleased to introduce Mr. Richard R. King who has joined our organizations in the capacity of Vice President and General Counsel of ISMS and ISMIE Mutual. Mr. King brings to ISMS and ISMIE extensive credentials and a wealth of experience in l...

Majerik C... New Employee Announcement — Wed 1/4/2006 12:07 PM 4 KB

We are pleased to announce the addition of the following new employee:
Julie Powers has joined ISMS/ISMIS/ISMIE Mutual as Secretary to Vice President in the Health Policy Research and Advocacy Division. She is working under the dir...

Majerik C... Employee Departure — Wed 1/4/2006 8:40 AM 3 KB

Bill Burns of Claims has left employment with ISMS/ISMIS/ISMIE Mutual. Please refer calls to Terese Souders at extension 6468.
cc: Harold L. Jensen, M.D.
Alfred J. Clementi, M.D.

**Majerik Christi... Employee Promotion**      Tue 10/9/2007 2:03 PM    5 KB

We are pleased to announce that Shirley Martin has been promoted to Project Manager in the Information Systems Division. Shirley has been with ISMS/ISMIS/ISMIE Mutual since April 2000, most recently as Programmer Analyst Specialist. Please j...

**Majerik Christi... Employee Promotion**      Mon 10/8/2007 3:41 PM    4 KB

We are pleased to announce that Jon Olson has been promoted to Underwriting Specialist in the Underwriting Division. Jon has been with ISMS/ISMIS/ISMIE Mutual since May 2002, most recently as Senior Underwriter. Please join us in congratulating J...

Majerik Christine   Employee Promotion      Mon 10/8/2007 12:24 PM    4 KB

We are pleased to announce that Sarah Maddock has been promoted to Underwriting Technician in the Underwriting Division. Sarah has been with ISMS/ISMIS/ISMIE Mutual since October 2005, most recently as Underwriting Secretary. Please join us ...

**Majerik Christi... Employee Promotion**      Fri 10/5/2007 4:21 PM    4 KB

We are pleased to announce that Ingrid Hubbard has been promoted to Senior Risk Management Development Specialist in the Risk Management Division. Ingrid has been with ISMS/ISMIS/ISMIE Mutual since January 2003, most recently as Risk Management Technolog...

Majerik Christine   New Employee Announcement      Wed 10/3/2007 10:59 AM    5 KB

We are pleased to announce the addition of the following new employee:
Walton Soriano has joined ISMS/ISMIS/ISMIE Mutual as Technical Services Assistant in the Information Systems Division. He is working under the direction of Tom ...

Majerik Christine   New Employee Announcement      Wed 10/3/2007 10:48 AM    5 KB

We are pleased to announce the addition of the following new employee:
Meghan O'Donnell has joined ISMS/ISMIS/ISMIE Mutual as HR/Payroll Coordinator in the Human Resources Division. She is working under the direction of Donna Genti...

Majerik Christine   Employee Promotion      Wed 10/3/2007 9:55 AM    4 KB

We are pleased to announce that Lauren Rueber has been promoted to Management Services Assistant in the Human Resources Division. Lauren has been with ISMS/ISMIS/ISMIE Mutual since October 2005, most recently as Secretary, VP Management Services....

**Majerik Christi... Employee Departure**      Fri 9/28/2007 9:16 AM    4 KB

LuAnn Minogue of Claims has left employment with ISMIE Mutual/ISMIS/ISMS. Please refer calls to Terese Souders at extension 6468.
CC:     Harold L. Jensen, M.D.
       Alfred J. Clementi, M.D.

Majerik Christine   Employee Departure      Thu 9/27/2007 9:42 AM    4 KB

Keri Staley of Information Systems has left employment with ISMIE Mutual/ISMIS/ISMS. Please refer calls to Carl Block at extension 2429.
CC:     Harold L. Jensen, M.D.

**Majerik Christi... Employee Promotion**      Fri 9/21/2007 10:14 AM    4 KB

We are pleased to announce that John Maszinski has been promoted to Director/Administration and Planning in the Governmental Affairs Division. John has been with ISMS/ISMIS/ISMIE Mutual since September 2004, most recently as Assistant Director, Adm...

Majerik Christine   New Employee Announcement      Tue 9/18/2007 12:33 PM    5 KB

We are pleased to announce the addition of the following new employee:
Brenda Bennett-Douse has joined ISMS/ISMIS/ISMIE Mutual as Programmer Analyst in the Information Systems Division. She is working under the direction of Hugh Fr...

**Majerik Christi... Employee Promotion**      Wed 8/29/2007 9:20 AM    4 KB

We are pleased to announce that Lisa Marie Combes has been promoted to Senior Accountant/Investment Accountant in the Finance Division. Lisa has been with ISMS/ISMIS/ISMIE Mutual since June 2005, most recently as Senior Accountant. Please jo...

Majerik Christine   Employee Promotion      Fri 8/17/2007 9:08 AM    4 KB

We are pleased to announce that Harry Hausoul has been promoted to Senior Professional Liability Analyst in the Claims Division. Harry has been with ISMS/ISMIS/ISMIE Mutual since August 2003, most recently as Professional Liability Analyst. Pleas...

Majerik Christine   Employee Departure      Thu 8/16/2007 8:45 AM    4 KB

Krystin Daniello of Claims has left employment with ISMIE Mutual/ISMIS/ISMS. Please refer calls to Kelly Kehoe at extension 2428.
CC:     Harold L. Jensen, M.D.
       Alfred J. Clementi, M.D.

**Majerik Christi... Employee Departure**      Fri 8/10/2007 9:00 AM    4 KB

Andrea Hebbring of Finance has left employment with ISMIE Mutual/ISMIS/ISMS. Please refer calls to Angela Walsh at extension 6446.
CC:     Harold L. Jensen, M.D.
       Alfred J. Clementi, M.D.

| ! D 0 | From | Subject | Received | ∇ | Size | ∇ |
|---|---|---|---|---|---|---|

| | Smith Car... | Correspondence???? | Mon 11/13/2006 2:01 ... 2 KB |
|---|---|---|---|

I have received in the underwriting mail workflow four pages (9 through 12) of an application.  The only clue from whom this information came from is that it was faxed from a Kinkos in Plainfield.  If any one has an idea of what policy this would be!...

| | Nowel Ka... | FW: Dr. Charles Roller #63668 | Mon 11/13/2006 9:39 ... 8 KB |
|---|---|---|---|

Hi Sakie,
I just got a call on this, the office is requesting proof of coverage.  If you could reinitialize the policy this morning, I would appreciate it.
Thanks!

| | Nowel Ka... | Dr. Charles Roller #63668 | Fri 11/10/2006 3:59 PM  5 KB |
|---|---|---|---|

Hi Sakie,
Can you reinitialize this policy and let Tanya know when its complete?  His new business submission is ok to accept.  I have completed an AR in PUMA.

| | Cowan Lisa | file scanned | Fri 11/10/2006 1:25 PM  2 KB |
|---|---|---|---|

25978 <end>

| | Majerik C... | New Employee Announcement | Thu 11/9/2006 8:05 AM  4 KB |
|---|---|---|---|

We are pleased to announce the addition of the following new employee:
David Wichmann  has joined ISMS/ISMIS/ISMIE Mutual as Controller in the Finance Division.  He is working under the direction of Bud Gross and is stationed on the...

| | Majerik ... | Employee Promotion | Wed 11/8/2006 4:... 4 KB |
|---|---|---|---|

We are pleased to announce that Nicole Dykas has been promoted to Senior Professional Liability Analyst in the Claims Division.  Nicole has been with ISMS/ISMIS/ISMIE Mutual since November 2004, most recently as Professional Liability Analyst.
Please j...

| | Gentile-K... | Holiday Event | Wed 11/8/2006 11:27 ... 9 KB |
|---|---|---|---|

Please join us for lunch, fun, music, dancing, and gifts to celebrate the holiday season!
Where:     The Mid America Club (located in the Aon Building)
           200 East Randolph Drive...

| | Cowan Lisa | SCANNED FILES | Tue 11/7/2006 3:43 PM  2 KB |
|---|---|---|---|

62816   32430 <end>

| | Cowan Lisa | FILE SCANNED | Mon 11/6/2006 7:56 AM  2 KB |
|---|---|---|---|

GOOD MORNING
YOUR FILE  IS  SCANNED 38584 <end>

| | Maddock ... | New Business Applications | Thu 11/2/2006 3:01 PM  7 KB |
|---|---|---|---|

Hi Sakie-
Here is a list of New Business Applications I completed while you were out.  I was unable to submit the Outlook Form for any of them.
My Outlook won't do that for some reason.  I'll have to ask you who to call to fix it when you get bac...

| | Cowens B... | RE: Autumn Sheese-63716 | Thu 11/2/2006 10:33 ... 4 KB |
|---|---|---|---|

NO

From: Scott Sakie

| | Majerik ... | Employee Promotion | Thu 11/2/2006 8:4... 4 KB |
|---|---|---|---|

We are pleased to announce that Tracey Printen has been promoted to Assistant Director in the Health Policy Research and Advocacy Division.  Tracey has been with ISMS/ISMIS/ISMIE Mutual since October 2001, most recently as Research Associate.
Please jo...

| | Cowan Lisa | file scann | Wed 11/1/2006 11:38 ... 1 KB |
|---|---|---|---|

50250    16101 <end>

| **Previous** | | | |
|---|---|---|---|

| | Cowan L... | reopened file | Mon 10/30/2006 4:... 2 KB |
|---|---|---|---|

62330        this is scanned <end>

| | RightFa... | Your fax has been successfully sent to Kathy Mecham at 1-618-244-3832. | Mon 10/30/2006 2:... 635 B |
|---|---|---|---|

Your fax has been successfully sent to Kathy Mecham at 1-618-244-3832.
-----------------------------------------------------
Time: 10/30/2006 2:30:55 PM

| | Cowan Lisa | REOPENED FILE SCAN | Fri 10/27/2006 4:54 PM  5 KB |
|---|---|---|---|

HI Sakie
These files are scanned 08918
                 62815

| | Hutchin... | FW: Hunt Line Adjustments | Fri 10/27/2006 11:... 6 KB |
|---|---|---|---|

We can now return to normal ...
The Techs are back in hunt and the Specialists can be out.
Also, the "time off hunt" schedule is active again.

| | Wideman... | Missing Applications | Wed 10/25/2006 11:5... 4 KB |
|---|---|---|---|

Hey Sakie,
Below are the names of the physician's applications for Infinity Healthcare (#54259) that seem to be missing or have not been scanned.
Please let me know what you come up with when you have a chance.



## Scott Sakie

**From:** Hutchinson Laura
**Sent:** Friday, August 17, 2007 5:19 PM
**To:** Scott Sakie
**Subject:** Typewriter

Please move the typewriter from the Library to the cubicle behind you.
Thx.

Laura C. Hutchinson
Assistant Vice President, Underwriting
ISMIE Mutual Insurance Company
312.580.6458 (Direct)
312.782.2023 (Fax)





ImageRight Workflow - To Do List

| | | | | | |
|---|---|---|---|---|---|
| LOSS HISTORY - AHP | BENEDICT | LOSS HISTORY | 25592 | Loss History | 12/26/2007 9:25:29 AM | 12/26/2007 |
| LOSS HISTORY - ACTIVE POL | BENEDICT | LOSS HISTORY | 32574 | Loss History | 12/26/2007 9:25:29 AM | 12/26/2007 |
| LOSS HISTORY - PEORIA MED | BENEDICT | LOSS HISTORY | 45448 | Loss History | 12/26/2007 9:30:10 AM | 12/26/2007 |
| LOSS HISTORY - PEORIA MED | BENEDICT | LOSS HISTORY | 40325 | Loss History | 12/26/2007 9:30:11 AM | 12/26/2007 |
| LOSS HISTORY - ACTIVE POL | BENEDICT | LOSS HISTORY | 36264 | Loss History | 12/26/2007 9:30:13 AM | 12/26/2007 |
| LOSS HISTORY - ACTIVE POL | BENEDICT | LOSS HISTORY | 61597 | Loss History | 12/25/2007 9:30:15 AM | 12/25/2007 |
| LOSS HISTORY - AHP | BENEDICT | LOSS HISTORY | 22061 | Loss History | 12/25/2007 9:33:44 AM | 12/25/2007 |
| LOSS HISTORY - ACTIVE POL | BENEDICT | LOSS HISTORY | 02838 | Loss History | 12/25/2007 9:33:47 AM | 12/25/2007 |
| LOSS HISTORY - ACTIVE POL | BENEDICT | LOSS HISTORY | 11003 | IMPORTED FROM PRINT | 12/25/2007 10:18:54 AM | 12/25/2007 |
| LOSS HISTORY - NON-INSURI | BENEDICT | LOSS HISTORY | 34339 | IMPORTED FROM PRINT | 12/26/2007 11:11:31 AM | 12/26/2007 |
| LOSS HISTORY - ACTIVE POL | BENEDICT | LOSS HISTORY | 62830 | IMPORTED FROM PRINT | 12/26/2007 12:30:53 PM | 12/26/2007 |
| LOSS HISTORY - ACTIVE POL | BENEDICT | LOSS HISTORY | 42008 | IMPORTED FROM PRINT | 12/26/2007 12:39:14 PM | 12/26/2007 |
| LOSS HISTORY - AHP | BENEDICT | LOSS HISTORY | 52011 | IMPORTED FROM PRINT | 12/27/2007 8:44:15 AM | 12/27/2007 |
| LOSS HISTORY - NON-INSURI | BENEDICT | AMY LYNN WEI | Loss History | | 12/27/2007 10:22:51 AM | 12/27/2007 |
| LOSS HISTORY - AHP | BENEDICT | LOSS HISTORY | 07472 | Loss History | 12/27/2007 10:22:53 AM | 12/27/2007 |
| LOSS HISTORY - PEORIA MED | BENEDICT | LOSS HISTORY | 16319 | Loss History | 12/27/2007 10:22:59 AM | 12/27/2007 |
| LOSS HISTORY - PEORIA MED | BENEDICT | LOSS HISTORY | 42250 | Loss History | 12/27/2007 10:23:00 AM | 12/27/2007 |
| LOSS HISTORY - PEORIA MED | BENEDICT | LOSS HISTORY | 07560 | Loss History | 12/27/2007 10:23:00 AM | 12/27/2007 |
| LOSS HISTORY - AHP | BENEDICT | LOSS HISTORY | 06512 | IMPORTED FROM PRINT | 12/27/2007 11:14:50 AM | 12/27/2007 |
| LOSS HISTORY - AHP | BENEDICT | LOSS HISTORY | 61015 | IMPORTED FROM PRINT | 12/27/2007 3:36:40 PM | 12/27/2007 |

Sarah's Backlog

Bittner 10/26
10/24/07

Case 1:08-cv-01457 Document 6-2 Filed 05/05/2008 Page 113 of 136

**Active Tasks    Flow: LOSS HISTORY    Step: ALL    User: Sarah Maddock**

Dec 27, 2007

| step | From | flow | file_no | description | date_initiated | availabledate |
|---|---|---|---|---|---|---|
| LOSS HISTORY - PEOR | BENEDICT | LOSS HISTOR | 14381 | Peoria - Active | 12/6/2007 9:21:57 A | 12/6/2007 9:21: |
| LOSS HISTORY - NON-I | BENEDICT | LOSS HISTOR | 56024 | IPT | 12/10/2007 1:50:42 | 12/11/2007 11: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 49769 | Active | 12/10/2007 3:31:28 | 12/11/2007 12: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 19517 | Active | 12/11/2007 9:05:18 | 12/11/2007 12: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 11770 | Active | 12/11/2007 11:05:4 | 12/11/2007 12: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 00713 | Active | 12/11/2007 11:05:5 | 12/11/2007 1:11 |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 48752 | Active | 12/11/2007 10:24:2 | 12/12/2007 1:14 |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 11530 | Active | 12/11/2007 11:10:3 | 12/11/2007 1:18 |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 07865 | Active | 12/11/2007 1:10:00 | 12/11/2007 1:30 |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 21628 | Active | 12/12/2007 8:49:04 | 12/12/2007 10: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 36101 | Active | 12/12/2007 10:24:2 | 12/12/2007 1:11 |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 22808 | Active | 12/12/2007 10:24:3 | 12/12/2007 1:2: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 62296 | Active | 12/12/2007 10:53:11 | 12/12/2007 1:3: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 26209 | Active | 12/13/2007 8:01:46 | 12/13/2007 8:56 |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 52608 | Active | 12/13/2007 10:03:2 | 12/13/2007 3:0: |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 64643 | Active | 12/13/2007 10:08:3 | 12/13/2007 3:1: |

Active Tasks   Flow: LOSS HISTORY   Step: ALL   User: Sarah Maddock

Dec 27, 2007

| step | From | flow | file_no | description | date_initiated | availabledate |
|---|---|---|---|---|---|---|
| LOSS HISTORY - REOR | BENEDICT | LOSS HISTOR | ▓▓ | ▓▓ | ▓▓ | ▓▓ |
| LOSS HISTORY - ACTIv | BENEDICT | LOSS HISTOR | 10834 | Active | 12/13/2007 3:07:36 | 12/13/2007 3:3! |
| LOSS HISTORY - ACTIv | BENEDICT | LOSS HISTOR | ▓▓ | ▓▓ | ▓▓ | ▓▓ |
| LOSS HISTORY - ACTIv | BENEDICT | LOSS HISTOR | 52913 | Active | 12/14/2007 10:57:3! | 12/14/2007 12:4 |
| LOSS HISTORY - ACTIv | BENEDICT | LOSS HISTOR | ▓▓ | ▓▓ | ▓▓ | ▓▓ |
| LOSS HISTORY - ACTIv | BENEDICT | LOSS HISTOR | 41108 | Active | 12/14/2007 10:57:4! | 12/14/2007 12:4 |
| LOSS HISTORY - ACTIv | ▓▓ | LOSS HISTOR | ▓▓ | ▓▓ | ▓▓ | ▓▓ |
| SS HISTORY - ACTIv | BENEDICT | LOSS HISTOR | 62374 | Active | 12/14/2007 10:57:5! | 12/14/2007 1:0( |
| SS HISTORY - ACTIv | BENEDICT | LOSS HISTOR | ▓▓ | ▓▓ | ▓▓ | ▓▓ |
| LOSS HISTORY - ACTIv | BENEDICT | LOSS HISTOR | 62283 | Active | 12/17/2007 11:13:4 | 12/17/2007 11:: |
| LOSS HISTORY - ACTIv | ▓▓ | LOSS HISTOR | ▓▓ | ▓▓ | ▓▓ | ▓▓ |
| LOSS HISTORY - ACTIv | BENEDICT | LOSS HISTOR | 57774 | Active | 12/17/2007 11:28:5! | 12/17/2007 12:: |
| LOSS HISTORY - ACTIv | ▓▓ | LOSS HISTOR | ▓▓ | ▓▓ | ▓▓ | ▓▓ |
| LOSS HISTORY - PEOR | BENEDICT | LOSS HISTOR | 11701 | Peoria - Active | 12/17/2007 11:41:0! | 12/17/2007 12:: |
| LOSS HISTORY - PEOR | BENEDICT | LOSS HISTOR | 17680 | Peoria - Active | 12/17/2007 11:41:0! | 12/17/2007 1:2: |
| LOSS HISTORY - ACTIv | BENEDICT | LOSS HISTOR | 64696 | Active | 12/17/2007 7:40:24 | 12/18/2007 9:4; |
| LOSS HISTORY - ACTIv | ▓▓ | LOSS HISTOR | ▓▓ | ▓▓ | ▓▓ | ▓▓ |
| SS HISTORY - ACTIv | BENEDICT | LOSS HISTOR | 11347 | Active | 12/18/2007 10:21:2! | 12/18/2007 11:1 |
| SS HISTORY - ACTIv | BENEDICT | LOSS HISTOR | 53627 | Active | 12/18/2007 10:21:3! | 12/18/2007 11:: |
| LOSS HISTORY - ACTIv | BENEDICT | LOSS HISTOR | 53138 | ▓▓Confirmation▓▓ | ▓▓ | ▓▓ |
| LOSS HISTORY - ACTIv | BENEDICT | LOSS HISTOR | 09009 | Active | 12/18/2007 11:26:3! | 12/18/2007 12:4 |
| LOSS HISTORY - ACTIv | BENEDICT | LOSS HISTOR | 61978 | Active | 12/18/2007 3:37:14 | 12/18/2007 4:1: |
| LOSS HISTORY - ACTIv | BENEDICT | LOSS HISTOR | 12496 | Active | 12/18/2007 3:37:19 | 12/18/2007 4:1( |
| LOSS HISTORY - ACTIv | BENEDICT | LOSS HISTOR | 26129 | Active | 12/19/2007 12:22:11 | 12/19/2007 3:5' |
| LOSS HISTORY - ACTIv | ▓▓ | LOSS HISTOR | ▓▓ | ▓▓ | ▓▓ | ▓▓ |

**Active Tasks    Flow: LOSS HISTORY    Step: ALL    User: Sarah Maddock**

Dec 27, 2007

| step | From | flow | file_no | description | date_initiated | availabledate |
|---|---|---|---|---|---|---|
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 64398 | Active | 12/20/2007 8:15:28 | 12/20/2007 11:... |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 33300 | Loss History | 12/20/2007 11:03:3 | 12/20/2007 2:2... |
| LOSS HISTORY - PEOR | BENEDICT | LOSS HISTOR | 03855 | Loss History | 12/20/2007 11:03:44 | 12/20/2007 2:3... |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 61442 | Loss History | 12/20/2007 11:03:4 | 12/20/2007 2:3... |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 00713 | Loss History | 12/21/2007 10:55:5 | 12/21/2007 1:3... |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 43330 | IMPORTED FROM P | 12/21/2007 10:41:1 | 12/21/2007 10:... |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 61442 | Loss History | 12/20/2007 11:03:4 | 12/20/2007 2:4... |
| LOSS HISTORY - AHP | BENEDICT | LOSS HISTOR | 23625 | IMPORTED FROM P | 12/20/2007 2:47:29 | 12/20/2007 2:4... |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 63523 | IMPORTED FROM P | 12/21/2007 11:06:1 | 12/21/2007 1:4... |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 32546 | IMPORTED FROM P | 12/26/2007 8:15:03 | 12/26/2007 9:4... |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 62046 | Loss History | 12/26/2007 9:25:18 | 12/26/2007 9:5... |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 41626 | Loss History | 12/26/2007 9:25:23 | 12/26/2007 9:5... |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 25558 | Loss History | 12/26/2007 9:25:29 | 12/26/2007 10:... |
| LOSS HISTORY - AHP | BENEDICT | LOSS HISTOR | 46448 | Loss History | 12/26/2007 9:25:10 | 12/26/2007 10:... |
| LOSS HISTORY - PEOR | BENEDICT | LOSS HISTOR | 38284 | Loss History | 12/26/2007 9:30:13 | 12/26/2007 10:... |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 22061 | Loss History | 12/26/2007 9:33:44 | 12/26/2007 11:... |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 11093 | IMPORTED FROM P | 12/26/2007 10:16:5 | 12/26/2007 1:3... |

# Active Tasks   Flow: LOSS HISTORY   Step: ALL   User: Sarah Maddock

Dec 27, 2007

| step | From | flow | file_no | description | date_initiated | availabledate |
|---|---|---|---|---|---|---|
| ███████ | ███████ | ███████ | ███ | ███████ | ███████ | ███████ |
| LOSS HISTORY - ACTIV | BENEDICT | LOSS HISTOR | 62830 | IMPORTED FROM P | 12/26/2007 12:30:5 | 12/26/2007 3:1₄ |
| ███████ | ███████ | ███████ | ███ | ███████ | ███████ | ███████ |
| LOSS HISTORY - AHP | BENEDICT | LOSS HISTOR | 52011 | IMPORTED FROM P | 12/27/2007 8:44:15 | 12/27/2007 10:₅ |
| ███████ | ███████ | ███████ | ███ | ███████ | ███████ | ███████ |
| LOSS HISTORY - AHP | BENEDICT | LOSS HISTOR | 07472 | Loss History | 12/27/2007 10:22:5 | 12/27/2007 11:₂ |
| LOSS HISTORY - PEOR | BENEDICT | LOSS HISTOR | 42260 | Loss History | 12/27/2007 10:23:0 | 12/27/2007 11:₂ |
| ███████ | ███████ | ███████ | ███ | ███████ | ███████ | ███████ |
| LOSS HISTORY - AHP | BENEDICT | LOSS HISTOR | 06512 | IMPORTED FROM P | 12/27/2007 11:14:5 | 12/27/2007 1:1₁ |
| ███████ | ███████ | ███████ | ███ | ███████ | ███████ | ███████ |

15941 HAVEN AVENUE • ORLAND HILLS, IL 60487
PHONE 708-307-2455 OR (708) 460-8298 • E-MAIL WHBLAKE@GMAIL.COM

# WILLIAM H. BLAKE

## OBJECTIVE

To obtain a position in the business of insurance, in order to increase my knowledge of the industry and allow me to apply my education towards future positions in the field

## RELATED EXPERIENCE

June 2004-August 2004    *3 mos.*    James, Gustafson, & Thompson, Ltd
Naperville, Illinois
**Legal Assistant**
- Typed up subpoenas
- Filed motions at the Cook County, Will County, and DuPage County courthouses
- Created organized records of pleadings from previous cases

## EDUCATION

August 2003- May 2005    University of Illinois at Urbana-Champaign
Urbana, Illinois
**Bachelor of Science in Political Science**
- Grade Point Average: 3.02/4.0

August 2001- May 2003    University of Illinois at Chicago
Chicago, Illinois

## OTHER EXPERIENCE

Sept 2006- present    *1 yr*    Midwest Bank & Trust Company
Downers Grove, Illinois
**Universal Banker**
- Functioning as both a teller and a personal banker
- Providing high quality customer service through processing financial transactions as well as referring customers to bank services
- Opening new depository and certificate accounts

Aug 2002 – Sept 2006    *4 yrs*    Bakers Square
Orland Park, Illinois
**Server**
- Communicated with customers and co-workers to provide the best possible dining experience



COPY

EXHIBIT
C
ALL-STATE LEGAL®

# GREG DAVIS

722 Ward Parkway, Apt. 201
Kansas City, MO 64112
312-545-6207

## EMPLOYMENT

### ISMIE MUTUAL INSURANCE COMPANY
*Underwriting Technician - May 1998 – July 13, 2007*
Provide administrative support for the two Assistant Vice Presidents, Technical and Administrative of Underwriting. Duties include: processing and proofreading reports and correspondence; maintain vital statistical reports including the Closed Claim Reporting system. Prepare agendas and distribute reports for PREP Committee and Committee on Underwriting while coordinating with Meeting Services for the smooth flow of those meetings. I maintain and distribute insurance policies and billing to our policyholders for Professional Liability Insurance and Employment Practice Liability Insurance. Screen incoming PREP materials (QR's, Closed Claim Reports) and set-up Risk Management Records. Provides direct customer service to policyholders by guiding incoming phone calls on the hunt line. Provide back-up to the Secretary of the Vice President of Underwriting.

### EVEREN SECURITIES
*Administrative Assistant - March 1997 - April 1998*
Administrative support for the two Vice Presidents of Corporate Technology and their direct reports. I planned their daily calendar. Set-up meetings, took minutes at the meetings and followed-up on any action items. Met with potential vendors. Made travel arrangements, did their expense reports and other administrative duties when needed. Receptionist duties. Kept supplies for a department of 60 people as well as providing staff support. Responsible for providing daily and monthly Open Ticket Reports.

### IVY APARTMENTS - SENIOR RETIREMENT HOME
*Night Time Office Manager/Assistant to the Director - November 1997 - April 1998 (Part-Time)*
Responsible for night time security. Monitoring the emergency call button that each resident had in their apartment. Receptionist duties. Receive incoming rent checks, sort the mail. Assist the nursing staff with residents on an as needed basis.

### INFORMATION RESOURCES
*Manager - National Product Library - May 1989 - June 1996*
Managed the day to day operations of the department. Responsible for over 200 clients. Responsible for the on time completion of imaging and quality control of all images going into the National Product Library as well as Inventory Control. Trained new personnel on image taking, all aspects of photography. Did on site photo shoots for clients. Responsible for opening a new office in Arkansas. I did the hiring and firing of personnel when needed.

### UNITED STATES AIR FORCE - *Administrative Assistant/Law Enforcement Specialist- 1979 - 1985*

## EDUCATION

Chicago School of Insurance - Introduction to Underwriting - 2000
American Management Association - The Efficient Assistant - 1999
University of Maryland - Political Science - 1980 - 1985
I attended college while I was in the Air Force stationed at Dover AFT, Delaware and continued my education while overseas at Ramstein AFB, Germany.
Butler High School - Graduated 1978

## SKILLS

- Power Point, Harvard Graphics, Visio, and Adobe Photoshop.
- Corel Work Perfect, Lotus 123 and Excel. MS Office 2000.
- I had worked in the accounting departments of an Import Company and for the Teachers Association.
- Attended several management and administrative classes and seminars while in the Air Force and working as Manager of Information Resources.
- I'm a certified CPR instructor and trained in home health care.



ntfileserver\div_fucrystal reports\hurts reports\17.rpt

| Name | Address | Phone | Spouse |
|------|---------|-------|--------|
| Bratstrom, Maria Veronica | 17949 Hood Avenue,  Homewood, IL 60430 | (708)960-4066 | Bratstrom, Sandor |
| Brubaker, Sharon | 3307 W. 78th Place,  Merrillville, IN 46410 | (219)736-0501 | Brubaker, Dennis |
| Bukowiecki, Joanne | 6835 Forestview Drive,  Oak Forest, IL 60452 | (708)535-9562 | Bukowiecki, Kenneth |
| Bules, Gina | 1811 N. 72nd Court,  Elmwood Park, IL 60707 | (708)583-0415 | Bules, Rick |
| Burnett, Alison A | 1624 S. Noble Ave.,  Springfield, IL 62704 | (217)787-6679 | |
| Byrne, Laura M | 10923 S. Longwood Drive, #3  Chicago, IL 60643 | (708)612-3977 | |
| Calhoun, Evelyn | 14129 Parrish Avenue,  Cedar Lake, IN 46303 | (219)374-9894 | Calhoun, Joey |
| Campbell, Terence L | 5532 S. Everett,  Chicago, IL 60637 | (773)752-2763 | |
| Carli, Giovanna | 10528 Ridge Cove, Unit 22A  Chicago Ridge, IL 60415 | (708)361-9697 | |
| Che, Peter | 210 Coyote Trail,  Cary, IL 60013 | (847)830-6881 | Che, Nee pen-lin |
| Chmielewski, Eileen | 123 Harrington Ave., Apt. 1B  Crown Point, IN 46307 | (219)472-1713 | |
| Clement, Katherine | 2431 Oakland Circle, Apt. A  Morris, IL 60450 | (815)955-5950 | |
| Clinkert, Jr., William L | 1365 N. County Line Road,  Michigan City, IN 46360 | (219)210-3356 | Clinkert, Lynne |
| Coghlan, Sheila B | 17341 Grange,  Orland Park, IL 60462 | (708)479-8905 | Green, Bruce |
| Combes, Lisa Marie T | 525 W. Hawthorne Place, #208  Chicago, IL 60657 | (773)975-5680 | |
| Cook, Gail B | 465 Turtle Dove Dr.,  Sherman, IL 62684 | (217)496-3399 | |
| Correa, Maria R | 1912 Nottingham Road,  Woodridge, IL 60517 | (630)541-8478 | Correa, Marc |
| Cowan, Lisa D | 2352 East 70th Street, Apt. 3E  Chicago, IL 60649 | (773)955-8935 | Cowan, Alexander |
| Cowens, Brenda | 15516 S. Drexel,  Dolton, IL 60419 | (708)849-7689 | |
| Dancy, Samantha | 6221 S. Morgan,  Chicago, IL 60621 | (773)470-6303 | |
| Daniello, Theresa K | 231 Hillcrest Avenue,  Addison, IL 60101 | (630)941-9145 | Daniello, Chuck |

Report Run Date: Monday, November 26, 2007
Report Run Time: 11:27:56AM

# Holiday Address List

| Division Name | Address | Phone | Spouse |
|---|---|---|---|
| Adams, Cheryl A | 48 Dogwood Court, Calumet City, IL 60409 | (708)849-5894 | |
| Albin, Susan L | 910 Suffield, Northbrook, IL 60062 | (847)272-8559 | |
| Alphin, Alan J | 5828 Webster Street, Downers Grove, IL 60516 | (630)810-0196 | King, Carole |
| Anderson-Miller, Julia | 1426 West Carmen, Chicago, IL 60640 | (773)275-8156 | Miller, Bruce J. |
| Argyris, Spero G | 1032 Lakewood Drive, Bartlett, IL 60103 | (630)289-7233 | Argyris, Pamela |
| Arnemann, Marcia K | 1660 N. LaSalle Drive, Apt. 2012 Chicago, IL 60614 | (312)440-9927 | |
| Barnes, Melvin L | 14222 S. La Salle St., Riverdale, IL 60670 | (708)250-8218 | |
| Beguiristain, Michelle M | 1154 Cougar Run, Manteno, IL 60950 | (815)468-7198 | Beguiristain, Carlos M. |
| Benbennick, Richard J | 1239 N Race, Arlington Heights, IL 60004 | (847)463-6122 | Benbennick, Brenda |
| Benedict, Corliss | 2300 Windsor Mall, Park Ridge, IL 60068 | (847)698-2734 | ?, ? |
| Bennett, Janet E | 11237 Heather Dr., Dawson, IL 62520 | (217)364-9258 | Bennett, Michael D. |
| Bennett-Douse, Brenda G | 1111 South Laflin, Unit # 1604 Chicago, IL 60607 | (312)733-5379 | Douse, Jerome |
| Benney, David A | 3026 N. Halsted, #3C Chicago, IL 60657 | (309)648-8282 | |
| Blake, William H | 15941 Haven Avenue, Orland Park, IL 60487 | (708)460-8298 | |
| Bleeden, Sarah | 924 N. Noble St., Apt. 2R CHICAGO, IL 60622 | (773)339-7598 | |
| Block, Carl H | 302 Uvedale Rd., Riverside, IL 60546 | (708)442-7422 | Block, Joanna |
| Boone, Holly A | 14151 Chicago Bloomington Tr., Lockport, IL 60491 | (708)301-0225 | ?, ? |
| Bosie, Lou W | 990 Brittin Place, Sherman, IL 62684 | (217)496-2911 | Bosie, Steve |



Date: 2/6/07
To: Alan J. Allphin
From: Laura C. Hutchinson
Subject 2006 INCOMING WORK REPORT

# 2006
# Underwriting
# Incoming Work Report

cc: Coghlan
Evans
Smith
Stokes

| | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Incoming Telephone Calls | 4815 | 4324 | 4863 | 4441 | 5103 | 5657 | 4761 | 4691 | 4316 | 4675 | 4154 | 3889 | 55689 |
| New Business Applications | 72 | 80 | 65 | 101 | 159 | 143 | 128 | 73 | 65 | 71 | 49 | 34 | 1127 |
| Correspondence | 367 | 300 | 420 | 461 | 193 | 432 | 478 | 791 | 249 | 284 | 807 | 585 | 5367 |
| Incoming Faxes | 1263 | 1393 | 1061 | 820 | 1341 | 878 | 865 | 848 | 787 | 776 | 440 | 420 | 10892 |
| E-Mails to UWTG | 50 | 29 | 60 | 88 | 73 | 99 | 87 | 110 | 53 | 286 | 255 | 207 | 1397 |
| Loss History Letters | 1176 | 1489 | 1272 | 1372 | 1404 | 657 | 1250 | 1893 | 1323 | 1296 | 1397 | 913 | 15442 |
| New Business Kits | 4 | 8 | 4 | 8 | 5 | 2 | 0 | 4 | 4 | 0 | 2 | 0 | 41 |
| Premium Checks | 127 | 33 | 126 | 132 | 85 | 98 | 109 | 53 | 62 | 180 | 72 | 135 | 1212 |
| Premium Finance Issues | 57 | 106 | 77 | 16 | 26 | 71 | 49 | 28 | 21 | 11 | 33 | 17 | 512 |
| Premium Adjustments | 58 | 50 | 97 | 80 | 80 | 50 | 50 | 52 | 40 | 27 | 33 | 50 | 667 |
| Returned Mail | 78 | 122 | 100 | 61 | 63 | 84 | 85 | 90 | 15 | 20 | 51 | 37 | 806 |
| BORs | 48 | 54 | 71 | 29 | 89 | 167 | 25 | 22 | 39 | 23 | 41 | 10 | 618 |
| Corp/Clinic Renewal Apps | 30 | 222 | 215 | 41 | 22 | 33 | 16 | 49 | 5 | 13 | 38 | 35 | 719 |
| PREP Submissions | 19 | 22 | 22 | 28 | 25 | 21 | 6 | 10 | 9 | 17 | 7 | 18 | 204 |
| TOTALS | 8164 | 8232 | 8453 | 7678 | 8668 | 8392 | 7909 | 8714 | 6988 | 7679 | 7379 | 6350 | 94693 |

## CERTIFICATE OF SERVICE

I, _____, have read
the foregoing Complaint and certify that I have served the same by hand delivery on
_____ of day May, 2008.


_____

**Sakie Scott, pro se**


Subscribed and sworn to on _____ day of May, 2008
Notary Public


Sakie Aneshia Scott
669 Clyde Avenue #2N
Calumet City, IL  60409
(708) 979-8253
sakiescott@hotmail.com

29

## CERTIFICATE OF SERVICE

I, _____, have read
the foregoing Complaint and certify that I have served the same by hand delivery on
_____ of day May, 2008.


_____

**Sakie Scott, pro se**


                               Subscribed and sworn to on _____ day of May, 2008
                               Notary Public


Sakie Aneshia Scott
669 Clyde Avenue #2N
Calumet City, IL  60409
(708) 979-8253
sakiescott@hotmail.com



## POSITION DESCRIPTION

### ISMIE MUTUAL INSURANCE COMPANY
### ILLINOIS STATE MEDICAL INSURANCE SERVICES, INC.
### ILLINOIS STATE MEDICAL SOCIETY

**Position Title:**    Underwriting Technician

**Status:**    Non-Exempt

**Division:**    Underwriting

**Reports to:**    Underwriting Manager or Assistant Vice President

### Basic Function

Provides technical assistance with appropriate approval and insures that day-to-day activities are handled in a timely manner.

### Specific Position Responsibilities

- General technical support.
- Processes simple new business applications upon approval of the Underwriting Specialist and issues required documentation.
- Processes individual quotes.
- Processes non-premium bearing changes.
- Process all Action Requests by the Underwriters, and completes and enters the Broker of Record Letters and Checklist.
- Processes Moonlighting Resident and Off-Cycle no change renewals and pre-renewal projects as needed.
- Processes Voluntary Cancellations and tail requests; handles survey letters for non-payments.
- Reviews premium adjustments from Finance and checks received in the Division, determines and executes appropriate action.
- Responds to questions/complaints regarding Claim History Letters.
- Manage requests for premium financing and acts as a liaison to the premium finance company.
- Reviews policies canceled for non-payment of premium that request reinstatement of

Job Description subject to continuous changes

coverage; determines and executes appropriate action.
- Prepare agendas, handle mailouts, coordinate meetings, and distribute reports for PREP and Committee on Underwriting.
- Screen incoming PREP materials, maintain spreadsheets, statistical reports, and coordinate monthly board report.
- Provide back up to the secretary to the Vice President of Underwriting.
- Additional responsibilities as required.

## Internal Contacts

File Services, Claims, Finance, Risk Management, Internal Audit, Information Systems, Marketing, Administrative Planning and Business Development.

## External Contacts

Physicians and their office staff or insurance representatives, other insurance carriers, brokers/agents, hospitals, and law firms.

## Desirable Qualifications and Experience

High school or G.E.D  Some college a plus.  Two years of exposure in an Underwriting Division or experience in a similar position, preferably in professional liability.  Proficiency in spreadsheets, MS-Windows, word processing software, the Internet, and other software experience necessary. Ability to perform all responsibilities with high quality and some independence while working in a team environment.  Excellent organization and communication skills with professional telephone demeanor.  Detail oriented, self-motivated, service oriented individual who enjoys a fast-paced, sometimes high-pressure job.

*ON evah*

# POSITION DESCRIPTION

## ISMIE MUTUAL INSURANCE COMPANY
## ILLINOIS STATE MEDICAL INSURANCE SERVICES, INC.
## ILLINOIS STATE MEDICAL SOCIETY

**Position Title:**  Underwriting Secretary

**Status:**  Non-Exempt

**Division:**  Underwriting

**Reports to:**  Underwriting Manager or AVP, support as determined

## Basic Function

To provide secretarial support services to the Underwriting Division.

## Specific Position Responsibilities

- Provides support services to the Underwriting Staff which includes telephone backup, word processing, photocopying, faxing and preparation of clinic proposal folders and look up of proposal physician information.
- Enter group profiles for the submission.
- Screens and processes Claim History and Certificates of Insurance requests for policyholders.
- Screens new business applications, incoming correspondence and Underwriting Profile Update forms; copies applications for mailing with policy documents.
- Accepting simple new business applications and mailing documents.
- Distributes computer output, processes requests for new business kits and other informational materials and handles Certificate of Mailing letters.
- Maintains inventory of division's supplies and prepares purchase orders.
- Establishes and maintains broker identification information for applicable policy computer records and underwriting files.
- Enters policyholder data into the computer system (e.g., rate sheets, action requests).
- Provides quality service to policyholders and staff.
- Additional duties and responsibilities as required.

HS or GED REQUIRES

Revised April 12, 2004
Page 1

Job Description subject to continuous changes

## ROOSEVELT UNIVERSITY

In Cooperation With

## THE NATIONAL CENTER FOR PARALEGAL TRAINING

Chicago, Illinois



To all persons be it known that

### Sakie Scott

has satisfied the requirements for the Generalist
course of study as offered by the

## COLLEGE OF CONTINUING EDUCATION OF ROOSEVELT UNIVERSITY
## LAWYER'S ASSISTANT PROGRAM

In witness whereof we have caused our signatures to be hereunto affixed.

Roosevelt University
College of Continuing Education

The National Center for Paralegal Training   President

March 24, 1990

Date



sakiescott@hotmail.com

# Sakie A. Scott

**Objective**

To secure a challenging position in a company that will afford me the opportunity to utilize my work experience and education.

■

**Experience**

09/2003–02/2008    Chicago State University          Chicago, IL
**Grant Account ant (Part-time)**
- Monitored budget on three grants in Student Support Services department.
- Responsible for AR/AP.
- Supervised part-time staff.
- Maintained schedule for Director.
- Interviewed students for grants.
- Arranged for special events.
- Created an Office Manual.

1998-2003    Law Firm/Arnold Flank Ltd.          Chicago, IL
**Legal Assistant/Corporate Paralegal**
- Prepared all real estate documents for commercial and residents closings.
- Prepared litigation documents.
- Billing.
- Worked with all vendors.
- Created an Office Manual.
- Arranged for court filings.
- Probate inventory.
- Liaison between the attorney and clients.
- Maintained all minute books for corporations, annual reports, bylaws, resolutions, minutes and other corporate documents…..etc.

SCOTT RESUME
PAGE TWO

| | | |
|---|---|---|
| 1993-1998 | Chicago State University | Chicago, IL |

**Executive Assistant (Grant Positions)**
Family Life Center Department
1994-1998
- Responsible for grant budget of $205,000 and monthly distributions.
- Scheduled all meetings and travel arrangements for Director.
- Payroll and File Management.
- Supervised part-time personnel.
- Created office manual.
- Payroll.
- Accounts Payable and Receivable.
- Liaison between Director and outside community organizations.

Office of Sponsored Programs Department
1993-1994
- Typical clerical duties.
- Grant research for faculty.
- Created newsletter.
- Disseminated funding materials.

**Education**          1990 Roosevelt University                    Chicago, IL
ABA Approved Certificate - **Generalists Lawyers Assistant Program**

2006 – South Suburban College          South Holland, IL
Medical Assistant and Biology Courses

GPA 3.0 – Communications
Credits: 56

**Interests**          Reading, arts and crafts, community work.

**Office Experience:**

- Microsoft Office Products:
- Excel, Word, Outlook, Power Point
- All versions of Word Perfect
- Timeslips
- QuatroPro
- Quicken
- ACT
- Typing 70 wpm

11 EAST ADAMS
SUITE 1100
CHICAGO, ILLINOIS 60603

# ARNOLD M. FLANK, LIMITED

(312) 360-0527
FAX (312) 360-0547
E-MAIL AMFGOBLUE @AOL.COM

October 9, 2003

To Whom it may Concern:

Sakie Scott has been my Paralegal/Legal Secretary and Administrative Assistant for the past five years. During that time she managed my office - ordering supplies, maintaining my docket, controlling my document filing and retrieval system and occasionally prepared Invoices for me. She also has dealt resourcefully and adeptly with bureaucrats. She has been able to edit and modify the documents which I create, and, on occasion, she provides thoughtful insight as to the appropriate word or phrase. She has dealt with my clients, both to obtain information, and to answer their questions (without giving legal opinions) when I am not available. The clients feel comfortable dealing with her, and do not feel that they are being "shunted off" to someone else.

Sakie does not get flustered under pressure. She understands the need to drop what she is doing, and to adapt to the needs of my clients, who often have legal problems which must be addressed immediately.

Sakie has learned the requirements of a "corporate" and "estate planning" law practice. This means that she is able to organize the various parts of a transaction, and to make sure that all of the parts are in place before I submit a set of documents to a client. This skill is transferable to any situation where there are multiple parts that must necessarily be assembled to create a finished product for submission to a client. Sakie is able to work independently and meet deadlines. She also has paralegal corporate skills, and can prepare preliminary draft of estate planning documents.

I am sorry that the changing needs of my practice, and the relocation of my practice, will not allow me to bring Sakie with me when I move my office.

Very truly yours,

ARNOLD M. FLANK LIMITED

BY: _____

Arnold M. Flank, President

**Scott Sakie**

| | |
|---|---|
| **From:** | Scott Sakie |
| **Sent:** | Monday, October 24, 2005 1:34 PM |
| **To:** | Majerik Christine |
| **Subject:** | Tech Position |

Hi Chris, Is there any documentation in my file as to why I didn't get the position? If so, may I see it please. Thanks.

**Sakie Aneshia Scott**
Underwriting Division
Illinois State Medical Services, Inc.
Twenty North Michigan Avenue
Suite 700
Chicago, IL 60602
(312) 853-1617
(312) 782-2023 FAX